**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SRI INTERNATIONAL, INC.,<br>a California Corporation, | )<br>)<br>) | |
| Plaintiff and<br>Counterclaim-Defendant, | )<br>)<br>) | |
| v. | )<br>) | C. A. No.: 04-1199 (SLR) |
| INTERNET SECURITY SYSTEMS, INC.,<br>a Delaware Corporation, INTERNET<br>SECURITY SYSTEMS, INC., a Georgia<br>Corporation, and SYMANTEC<br>CORPORATION, a Delaware Corporation, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants and<br>Counterclaim-Plaintiffs. | )<br>) | |

## ANSWER AND COUNTERCLAIMS OF
## INTERNET SECURITY SYSTEMS, INC., A DELAWARE CORPORATION

Defendant Internet Security Systems, Inc., a Delaware corporation ("ISS-DE"),

hereby files this answer to the "First Amended Complaint For Patent Infringement;

Demand For Jury" ("First Amended Complaint") of plaintiff SRI International, Inc.

("SRI"), and its counterclaims against SRI, and in support thereof respectfully shows the

Court as follows:

### ANSWER

ISS-DE responds to the numbered paragraphs of SRI's Amended Complaint as

follows:

### THE PARTIES

1.    On information and belief, ISS-DE admits the averments of paragraph 1.

2.     ISS-DE admits that ISS-DE is incorporated under the laws of Delaware and has a principal place of business at 6303 Barfield Road, Atlanta, Georgia 30328.

3.     ISS-DE makes no response to the averments of paragraph 3 regarding Internet Security Systems, Inc., a Georgia corporation ("ISS-GA"), and believes no response is required from ISS-DE.  ISS-DE and ISS-GA are two separate and distinct corporations.  To the extent SRI's reference to ISS-DE and ISS-GA as "ISS" can be taken as an averment to the contrary, ISS-DE denies such an averment.

4.     ISS-DE makes no response to the averments of paragraph 4 regarding Symantec Corporation ("Symantec") and believes no response is required from ISS-DE.

5.     Paragraph 5 contains no averments to which ISS-DE could respond.

## JURISDICTION AND VENUE

6.     ISS-DE admits that the First Amended Complaint purports to state causes of action under the patent laws of the United States, Title 35 U.S.C. § 1 *et seq.* and that the First Amended Complaint purports to base subject matter jurisdiction on 28 U.S.C. §§ 1331 and 1338(a).

7.     ISS-DE admits that this Court has personal jurisdiction over ISS-DE.  ISS-DE makes no response to the averments of paragraph 7 regarding Symantec and believes no response is required from ISS-DE.

8.     ISS-DE makes no response to the averments of paragraph 8 regarding ISS-GA and believes no response is required from ISS-DE.

9.     ISS-DE admits that venue as to ISS-DE is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c) and 1400.  ISS-DE makes no response to the averments

of paragraph 9 regarding ISS-GA and Symantec and believes no response is required from ISS-DE.

## GENERAL ALLEGATIONS

10.     Upon information and belief, ISS-DE admits that SRI is an independent, not-for-profit research institute.  ISS-DE lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments of paragraph 10.

11.     ISS-DE denies that it manufactures network security systems or directly imports, sells or offers to sell the same throughout the United States and elsewhere.  The term "affiliates" as used by SRI in paragraph 11 is undefined, vague and ambiguous and ISS-DE is unable to determine SRI's intended meaning for purposes of responding to the averments of paragraph 11 regarding "affiliates" and therefore denies them.  ISS-DE makes no response to the averments of paragraph 11 regarding ISS-GA and Symantec and believes no response is required from ISS-DE.

## FIRST CAUSE OF ACTION

### ALLEGED INFRINGEMENT OF
### U.S. PATENT NO. 6,711,615 BY ALL DEFENDANTS

12.     ISS-DE restates and incorporates by reference the replies contained in paragraphs 1 through 11 above.

13.     ISS-DE admits that on March 23, 2004, the United States Patent and Trademark Office ("the PTO") issued U.S. Patent No. 6,711,615 ("the '615 patent") entitled "Network Surveillance," that the '615 patent states on its face it is assigned to SRI and that a copy of the '615 patent is attached to the First Amended Complaint as Exhibit A.  ISS-DE lacks knowledge or information sufficient to form a belief as to the truth of the averments that "SRI is now, and has been since its issuance, the assignee and

sole owner of all right, title, and interest in" the '615 patent. ISS-DE denies the remaining averments of paragraph 13.

14.    ISS-DE denies the averments of paragraph 14 regarding ISS-DE. ISS-DE makes no response to the averments of paragraph 14 regarding ISS-GA and Symantec and believes no response is required from ISS-DE.

15.    ISS-DE denies the averments of paragraph 15 regarding ISS-DE. ISS-DE makes no response to the averments of paragraph 15 regarding ISS-GA and Symantec and believes no response is required from ISS-DE.

16.    ISS-DE admits that it became aware of the '615 patent on or about March 31, 2004. ISS-DE denies the remaining averments of paragraph 16 regarding ISS-DE. ISS-DE makes no response to the averments of paragraph 16 regarding ISS-GA and Symantec and believes no response is required from ISS-DE.

17.    ISS-DE denies the averments of paragraph 17 regarding ISS-DE. ISS-DE makes no response to the averments of paragraph 17 regarding ISS-GA and Symantec and believes no response is required from ISS-DE.

## SECOND CAUSE OF ACTION

### ALLEGED INFRINGEMENT OF
### U.S. PATENT NO. 6,484,203 BY ALL DEFENDANTS

18.    ISS-DE restates and incorporates by reference the replies contained in paragraphs 1 through 11 above.

19.    ISS-DE admits that on November 19, 2002, the PTO issued U.S. Patent No. 6,484,203 ("the '203 patent") entitled "Hierarchical Event Monitoring and Analysis," that the '203 patent states on its face it is assigned to SRI and that a copy of the '203 patent is attached to the First Amended Complaint as Exhibit B. ISS-DE lacks

4

knowledge or information sufficient to form a belief as to the truth of the averments that "SRI is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in" the '203 patent. ISS-DE denies the remaining averments of paragraph 19.

20.    ISS-DE denies the averments of paragraph 20 regarding ISS-DE. ISS-DE makes no response to the averments of paragraph 20 regarding ISS-GA and Symantec and believes no response is required from ISS-DE.

21.    ISS-DE denies the averments of paragraph 21 regarding ISS-DE. ISS-DE makes no response to the averments of paragraph 21 regarding ISS-GA and Symantec and believes no response is required from ISS-DE.

22.    ISS-DE admits that it became aware of the '203 patent on or about March 31, 2004. ISS-DE denies the remaining averments of paragraph 22 regarding ISS-DE. ISS-DE makes no response to the averments of paragraph 22 regarding ISS-GA and Symantec and believes no response is required from ISS-DE.

23.    ISS-DE denies the averments of paragraph 23 regarding ISS-DE. ISS-DE makes no response to the averments of paragraph 23 regarding ISS-GA and Symantec and believes no response is required from ISS-DE.

### THIRD CAUSE OF ACTION

#### ALLEGED INFRINGEMENT OF
#### U.S. PATENT NO. 6,321,338 BY SYMANTEC

24.    ISS-DE restates and incorporates by reference the replies contained in paragraphs 1 through 11 above.

25.    ISS-DE admits that on November 20, 2001, the PTO issued U.S. Patent No. 6,321,338 ("the '338 patent") entitled "Network Surveillance," that the '338 patent

states on its face it is assigned to SRI and that a copy of the '338 patent is attached to the

First Amended Complaint as Exhibit C. ISS-DE lacks knowledge or information

sufficient to form a belief as to the truth of the averments that "SRI is now, and has been

since its issuance, the assignee and sole owner of all right, title, and interest in" the '338

patent. ISS-DE denies the remaining averments of paragraph 25.

      26.    ISS-DE makes no response to the averments of paragraph 26 regarding

Symantec and believes no response is required from ISS-DE.

      27.    ISS-DE makes no response to the averments of paragraph 27 regarding

Symantec and believes no response is required from ISS-DE.

      28.    ISS-DE makes no response to the averments of paragraph 28 regarding

Symantec and believes no response is required from ISS-DE.

      29.    ISS-DE makes no response to the averments of paragraph 29 regarding

Symantec and believes no response is required from ISS-DE.

## FOURTH CAUSE OF ACTION

### ALLEGED INFRINGEMENT OF
### U.S. PATENT NO. 6,708,212 BY SYMANTEC

      30.    ISS-DE restates and incorporates by reference the replies contained in

paragraphs 1 through 11 above.

      31.    ISS-DE admits that on March 16, 2004, the PTO issued U.S. Patent No.

6,708,212 ("the '212 patent") entitled "Network Surveillance," that the '212 patent states

on its face it is assigned to SRI and that a copy of the '212 patent is attached to the First

Amended Complaint as Exhibit D. ISS-DE lacks knowledge or information sufficient to

form a belief as to the truth of the averments that "SRI is now, and has been since its

6

issuance, the assignee and sole owner of all right, title, and interest in" the '212 patent.
ISS-DE denies the remaining averments of paragraph 31.

32.    ISS-DE makes no response to the averments of paragraph 32 regarding
Symantec and believes no response is required from ISS-DE.

33.    ISS-DE makes no response to the averments of paragraph 33 regarding
Symantec and believes no response is required from ISS-DE.

34.    ISS-DE makes no response to the averments of paragraph 34 regarding
Symantec and believes no response is required from ISS-DE.

35.    ISS-DE makes no response to the averments of paragraph 35 regarding
Symantec and believes no response is required from ISS-DE.

## AFFIRMATIVE AND OTHER DEFENSES

### FAILURE TO STATE A CLAIM

36.    The causes of action against ISS-DE in the First Amended Complaint fail
to state a claim upon which relief can be granted.

### NON-INFRINGEMENT

37.    ISS-DE is not infringing, contributing to the infringement of, or inducing
the infringement of, and has not infringed, contributed to the infringement of, or induced
the infringement of either the '615 or '203 patents in this district or elsewhere.

### INVALIDITY

38.    Each of the claims of each of the '615 and '203 patents is invalid for
failure to comply with the Patent Laws of the United States, including the conditions and
requirements for patentability set forth in one or more of 35 U.S.C. §§ 101, 102, 103 and
112.

7

## UNENFORCEABILITY -- INEQUITABLE CONDUCT

39.    The '615 and '203 patents are unenforceable due to the intentional failure of the inventors, and/or their agents, to disclose to the United States Patent and Trademark Office ("PTO"), during prosecution of the '615 and '203 patents, information material to the patentability of the '615 and '203 patents, in violation of Title 37, Code of Federal Regulations § 1.56.

40.    In a Combined Declaration and Power of Attorney filed with the PTO along with the patent applications that matured into the '615 and '203 patents, each of the inventors named on the '615 and '203 patents acknowledged his duty to disclose to the PTO all information that was material to the patentability of each patent application in accordance with 37 C.F.R. § 1.56.  At least one of the inventors named on the '615 and '203 patents, Alfonso Valdes, failed to disclose material prior art of which he was aware to the PTO.

41.    On information and belief, at least as early as May 1995, Mr. Valdes co-authored an article entitled "Next-generation Intrusion Detection Expert System (NIDES) A Summary" (the "NIDES reference").  The NIDES reference is attached hereto as Exhibit A.

42.    The NIDES reference was listed as available in hard copy by request on the SRI Computer Science Laboratory's publicly available website at least as early as July 5, 1997.  See http://web.archive.org/web/19970705040424/www.csl.sri.com/trlist.html, attached hereto as Exhibit B.

8

43.     The NIDES reference was material to the patentability of the alleged
inventions claimed in the '615 and '203 patents because the NIDES reference discloses
the use of NIDES technology to perform network monitoring and intrusion detection,
referred to as "Network NIDES."

44.     The NIDES reference explains that NIDES is a comprehensive system
designed to "operate in real-time to detect intrusions" (Ex. A at 2) and that NIDES
detects such intrusions through the use of "innovative statistical algorithms" and "an
expertsystem rulebase." Id. The NIDES reference discloses that the "NIDES statistical
analysis component maintains historical statistical profiles for each user and raises an
alarm when observed activity departs from established patterns of use for an individual"
(id. at 22) and that "NIDES generates two [pro]files for each subject in which statistical
information (the current or short-term profile and the historical or long-term profile) is
stored." Id. at 11. The NIDES reference further discloses that the "NIDES rulebased
analysis component uses rules that characterize known intrusion types to raise an alarm if
observed activity matches any of its encoded rules." Id. at 22.

45.     The NIDES reference states that Network NIDES is the expansion of the
NIDES technology to perform network monitoring and intrusion detection. As the
NIDES reference notes, "Applying intrusion-detection technology to a networked
computing environment will require expanding its scope to include the ability to detect
network intrusions as well as intrusions into the individual host machines, and to
recognize patterns of activity that are spread among many hosts." Id. at 31. The NIDES
reference explains that the "NIDES technology could be easily extended to perform
network monitoring and intrusion detection in three key areas -- network data collection,

rulebased analysis, and statistical analysis." Id. "In addition, the NIDES architecture could be extended to support multiple cooperative NIDES processes that would each be responsible for a local domain, with a higher-level NIDES process responsible for the network that supports all the local domains." Id.

46.    The NIDES reference goes on to discuss the specific ways in which network data collection, rulebased analysis, and statistical analysis could be extended in Network NIDES. For instance, the NIDES reference indicates that "[a] network monitoring process could be incorporated into NIDES to read network packets and produce canonical NIDES audit records for analysis." Id. The NIDES reference further states that the NIDES rulebase could "be extended to include rules specific to the domain of detecting suspicious network activity," including "Host Name Spoofing," "IP Address Spoofing," and "Doorknob Twisting," and describes the type of network activity that could be monitored by the network intrusion detection system. See id. at 31-32. Finally, the NIDES reference explains that "[t]he NIDES statistical component is easily adaptable to network intrusion detection with a reinterpretation of subject and action but otherwise no algorithmic changes," and that "a set of statistical intrusion-detection measures that are specific to network-level intrusions are easily developed." Id. at 32.

47.    On information and belief, after this litigation commenced, SRI submitted the NIDES reference to the PTO during the prosecution of pending patent applications, U.S. Patent Application Nos. 10/429,611 and 10/805,729, that are related to the '615 and '203 patents.

48.    Despite being aware of the NIDES reference, Mr. Valdes and/or others involved in the prosecution of the applications that matured into the '615 and '203

patents failed to disclose it to the PTO with, on information and belief, an intent to deceive the PTO. Such a failure to disclose material prior art during the prosecution of the applications that matured into the '615 and '203 patents constitutes inequitable conduct before the PTO, and renders the '615 and '203 patents unenforceable.

## COUNTERCLAIMS FOR DECLARATORY JUDGMENT

Counterclaim-plaintiff Internet Security Systems, Inc., a Delaware corporation ("ISS-DE"), asserts the following counterclaims against counterclaim-defendant SRI International, Inc. ("SRI"):

## NATURE OF THE ACTION

1.      ISS-DE incorporates herein by reference the paragraphs set forth above.

2.      This is an action for a declaratory judgment of the noninfringement and invalidity of U.S. Patent Nos. 6,321,338 ("the '338 patent"), 6,484,203 ("the '203 patent"), 6,704,874 ("the '874 patent"), 6,708,212 ("the '212 patent") and 6,711,615 ("the '615 patent"), and the unenforceability of the '338 patent, '203 patent, '212 patent, and '615 patent. The '338, '203, '212 and '615 patents are attached as Exhibits A-D to SRI's "First Amended Complaint For Patent Infringement; Demand For Jury" ("First Amended Complaint"). The '874 patent is attached as Exhibit C hereto.

## THE PARTIES

3.      ISS-DE is a corporation organized and existing under the laws of Delaware, with its principal place of business at 6303 Barfield Road, Atlanta, Georgia 30328.

4.    On information and belief, SRI is a non-profit research corporation organized and existing under the laws of California, with its principal place of business at 333 Ravenswood Avenue, Menlo Park, California 94025.

## JURISDICTION AND VENUE

5.    These Counterclaims arise under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.    This Court has personal jurisdiction over SRI because SRI submitted to the personal jurisdiction of the Court by filing its First Amended Complaint in this action.

7.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and/or 1400 because SRI is subject to personal jurisdiction in this judicial district.

## THE EXISTENCE OF AN ACTUAL CONTROVERSY

8.    An actual controversy exists between ISS-DE and SRI as to the non-infringement and invalidity of the '338, '203, '874, '212 and '615 patents, and the unenforceability of the '338, '203, '212, and '615 patents.  The controversy exists as a result of (1) the allegations made by SRI against ISS-DE in its First Amended Complaint and (2) the infringement accusations made by SRI against the products of ISS-GA.

9.    SRI claims to be the owner, by assignment, of the '338 patent, entitled "Network Surveillance," which issued on November 20, 2001.  The '338 patent names Phillip A. Porras and Alfonso Valdes as the inventors.

10.    SRI claims to be the owner, by assignment, of the '203 patent, entitled "Hierarchical Event Monitoring and Analysis," which issued on November 19, 2002.  The '203 patent names Phillip Andrew Porras and Alfonso Valdes as the inventors.

11.     SRI claims to be the owner, by assignment, of the '874 patent, entitled "Network-Based Alert Management," which issued on March 9, 2004. The '874 patent names Phillip Andrew Porras and Martin Wayne Fong as the inventors.

12.     SRI claims to be the owner, by assignment, of the '212 patent, entitled "Network Surveillance," which issued on March 16, 2004. The '212 patent names Phillip Andrew Porras and Alfonso Valdes as the inventors.

13.     SRI claims to be the owner, by assignment, of the '615 patent, entitled "Network Surveillance," which issued on March 23, 2004. The '615 patent names Phillip Andrew Porras and Alfonso Valdes as the inventors.

14.     The '338, '203, '874, '212 and '615 patents are all related. The '203 patent issued from an application that was a continuation of the application that led to the '338 patent. The '874 patent issued from an application that was a continuation-in-part of the application that led to the '338 patent. The '615 patent issued from an application that was a continuation of the application that led to the '203 patent. The '212 patent issued from an application that was a continuation of the application that led to the '615 patent.

15.     On or about March 31, 2004, SRI contacted Richard Macchia, Senior Vice President and Chief Financial Officer of ISS-GA, by letter, stating that SRI has five issued patents and several other pending applications in the network-based intrusion detection and prevention area, enclosing the '338, '203, '874, '212 and '615 patents, and stating that "SRI believes that a significant number of network-based security products, both software and appliances, infringe multiple claims of SRI's patents." SRI further stated that it believes that SRI's patents are "relevant" to ISS-GA's products, including ISS-

GA's PROVENTIA and REALSECURE security products. The March 31, 2004 letter from SRI is attached hereto as Exhibit D.

16.    On or about April 28, 2004, SRI wrote Mr. Macchia again, stating that "SRI notified ISS that ISS is infringing a number of patents owned by SRI" and that "SRI takes intellectual property matters such as this one very seriously." The April 28, 2004 letter is attached hereto as Exhibit E.

17.    During the April 2004 through August 2004 timeframe, representatives of ISS-GA and SRI communicated on several occasions by telephone and in writing, and on at least one occasion in-person, concerning the '338, '203, '874, '212 and '615 patents. During a telephone conference on or about July 2, 2004, SRI again accused ISS-GA's products of infringing one or more claims of the five patents. On or about July 8, 2004, SRI and ISS-GA entered into a nondisclosure agreement that covered discussions and negotiations regarding a potential patent licensing arrangement and/or settlement of "a dispute concerning" the '338, '203, '874, '212 and '615 patents. Throughout these discussions, SRI repeated its infringement allegations and expressed its willingness to enforce its patents.

18.    As a result of SRI's continued assertions that ISS-GA's products infringe one or more claims of the '338, '203, '874, '212 and '615 patents and SRI's stated willingness to enforce these patents, ISS-GA had a reasonable apprehension that SRI would initiate a patent infringement suit on all five patents if ISS-GA continued marketing and selling its network security products and services. Accordingly, on August 17, 2004, ISS-GA filed a Declaratory Judgment action in the Northern District of

Georgia, Civil Action No. 04-CV-2402-CC (the "Georgia Action"), for non-infringement and invalidity of the '338, '203, '874, '212 and '615 patents.

19.    In response, on August 24, 2004, SRI filed an infringement action in this Court against ISS-GA's parent corporation Internet Security Systems, Inc., a Delaware corporation ("ISS-DE"), and Symantec Corporation ("Symantec"). On April 25, 2005, SRI moved the Court to enter its First Amended Complaint to add ISS-GA as a party to this action. In the memorandum in support of its motion, SRI stated that SRI does not concede that ISS-DE and ISS-GA are separate entities, and, even if they are, it is SRI's position that both ISS-DE and ISS-GA may be liable for any alleged infringement of ISS-GA's products. (DO #34 at 2 ft. 1, 3). Further, SRI argued that it was appropriate to add ISS-GA as a party because "in the declaratory judgment action filed by ISS-GA in Georgia, ISS-GA alleged the invalidity of five SRI patents that SRI expects ISS-DE to allege in counterclaims in this action." Id. at 3. Those five patents are the '338, '203, '874, '212 and '615 patents.

20.    ISS-DE and Symantec consented to SRI's Motion to Amend the Complaint on April 27, 2005. SRI has alleged in its First Amended Complaint that ISS-DE and ISS-GA have been and are now infringing, contributing to the infringement of, or inducing the infringement of the '203 and '615 patents. SRI further alleged in its Complaint that Symantec has been and is now infringing, contributing to the infringement of, or inducing the infringement of the '338, '203, '212 and '615 patents.

21.    The actual controversy between SRI and ISS-DE with respect to the '338, '203, '874, '212 and '615 patents is thus a result of both SRI's allegations of infringement by ISS-DE in the First Amended Complaint and the apprehension of suit

15

created by SRI's repeated statements that it believes that ISS-GA's products infringe the five patents and that both ISS-DE and ISS-GA may be liable for that alleged infringement.

22.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the infringement and validity of the '338, '203, '874, '212, and '615 patents, and the enforceability of the '338, '203, '212, and '615 patents, is necessary and appropriate under the circumstances.

## COUNTERCLAIM COUNT ONE -- NON-INFRINGEMENT

23.    ISS-DE is not infringing, contributing to the infringement of, or inducing the infringement of, and has not infringed, contributed to the infringement of, or induced the infringement of the '338, '203, '874, '212 and '615 patents in this district or elsewhere.

## COUNTERCLAIM COUNT TWO --INVALIDITY

24.    Each of the claims of the '338, '203, '874, '212 and '615 patents is invalid for failure to comply with the Patent Laws of the United States, including the conditions and requirements for patentability set forth in one or more of 35 U.S.C. §§ 101, 102, 103 and 112.

## COUNTERCLAIM COUNT THREE -- UNENFORCEABILITY

25.    The '338, '203, '212 and '615 patents are unenforceable due to the intentional failure of the inventors, and/or their agents, to disclose to the PTO, during prosecution of the '338, '203, '212 and '615 patents, information material to the patentability of the '338, '203, '212 and '615 patents, in violation of Title 37, Code of Federal Regulations § 1.56.

26. In a Combined Declaration and Power of Attorney filed with the PTO along with the patent applications that matured into the '338, '203, '212 and '615 patents, each of the inventors named on the '338, '203, '212 and '615 patents acknowledged his duty to disclose to the PTO all information that was material to the patentability of each patent application in accordance with 37 C.F.R. § 1.56. At least one of the inventors named on the '338, '203, '212 and '615, Alfonso Valdes, failed to disclose material prior art of which he was aware to the PTO.

27. On information and belief, at least as early as May 1995, Mr. Valdes co-authored an article entitled "Next-generation Intrusion Detection Expert System (NIDES) A Summary" (the "NIDES reference"). The NIDES reference is attached hereto as Exhibit A.

28. The NIDES reference was listed as available in hard copy by request on the SRI Computer Science Laboratory's publicly available website at least as early as July 5, 1997. See http://web.archive.org/web/19970705040424/www.csl.sri.com/trlist.html, attached hereto as Exhibit B.

29. The NIDES reference was material to the patentability of the alleged inventions claimed in the '338, '203, '212 and '615 patents because the NIDES reference discloses the use of NIDES technology to perform network monitoring and intrusion detection, referred to as "Network NIDES."

30. The NIDES reference explains that NIDES is a comprehensive system designed to "operate in real-time to detect intrusions" (Ex. A at 2) and that NIDES detects such intrusions through the use of "innovative statistical algorithms" and "an

17

expertsystem rulebase." Id. The NIDES reference discloses that the "NIDES statistical

analysis component maintains historical statistical profiles for each user and raises an

alarm when observed activity departs from established patterns of use for an individual"

(id. at 22) and that "NIDES generates two [pro]files for each subject in which statistical

information (the current or short-term profile and the historical or long-term profile) is

stored." Id. at 11. The NIDES reference further discloses that the "NIDES rulebased

analysis component uses rules that characterize known intrusion types to raise an alarm if

observed activity matches any of its encoded rules." Id. at 22.

31.    The NIDES reference states that Network NIDES is the expansion of the

NIDES technology to perform network monitoring and intrusion detection. As the

NIDES reference notes, "Applying intrusion-detection technology to a networked

computing environment will require expanding its scope to include the ability to detect

network intrusions as well as intrusions into the individual host machines, and to

recognize patterns of activity that are spread among many hosts." Id. at 31. The NIDES

reference explains that the "NIDES technology could be easily extended to perform

network monitoring and intrusion detection in three key areas -- network data collection,

rulebased analysis, and statistical analysis." Id. "In addition, the NIDES architecture

could be extended to support multiple cooperative NIDES processes that would each be

responsible for a local domain, with a higher-level NIDES process responsible for the

network that supports all the local domains." Id.

32.    The NIDES reference goes on to discuss the specific ways in which

network data collection, rulebased analysis, and statistical analysis could be extended in

Network NIDES. For instance, the NIDES reference indicates that "[a] network

18

monitoring process could be incorporated into NIDES to read network packets and produce canonical NIDES audit records for analysis." Id. The NIDES reference further states that the NIDES rulebase could "be extended to include rules specific to the domain of detecting suspicious network activity," including "Host Name Spoofing," "IP Address Spoofing," and "Doorknob Twisting," and describes the type of network activity that could be monitored by the network intrusion detection system. See id. at 31-32. Finally, the NIDES reference explains that "[t]he NIDES statistical component is easily adaptable to network intrusion detection with a reinterpretation of subject and action but otherwise no algorithmic changes," and that "a set of statistical intrusion-detection measures that are specific to network-level intrusions are easily developed." Id. at 32.

33.     On information and belief, after this litigation commenced, SRI submitted the NIDES reference to the PTO during the prosecution of pending patent applications, U.S. Patent Application Nos. 10/429,611 and 10/805,729, that are related to the '338, '203, '212 and '615 patents.

34.     Despite being aware of the NIDES reference, Mr. Valdes and/or others involved in the prosecution of the applications that matured into the '615 and '203 patents failed to disclose it to the PTO with, on information and belief, an intent to deceive the PTO. Such a failure to disclose material prior art during the prosecution of the applications that matured into the '338, '203, '212 and '615 patents constitutes inequitable conduct before the PTO, and renders the '338, '203, '212 and '615 patents unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, ISS-DE requests that the Court enter judgment in its favor and against SRI as follows:

A.     Dismissing the causes of action against ISS-DE in SRI's Amended Complaint with prejudice;

B.     Declaring that ISS-DE is not infringing, contributing to the infringement of, or inducing the infringement of, and has not infringed, contributed to the infringement of, or induced the infringement of the '338, '203, '874, '212 and '615 patents in this district or elsewhere;

C.     Declaring invalid each of the claims of the '338, '203, '874, '212 and '615 patents;

D.     Declaring the '338, '203, '212 and '615 patents unenforceable;

E.     Adjudging that SRI is entitled to no damages for, or injunctive relief against, any alleged infringement by ISS-DE;

F.     Adjudging this to be an exceptional case under 35 U.S.C. § 285 and awarding ISS-DE its reasonable attorneys' fees, costs and expenses;

G.     Awarding ISS-DE its costs, expenses, and reasonable attorneys' fees as provided by law; and

H.    Granting to ISS-DE such other and further relief as the Court deems just

and proper.

OF COUNSEL:

Holmes J. Hawkins III
Natasha H. Moffitt
KING & SPALDING LLP
191 Peachtree Street
Atlanta, GA 30303
Tel: (404) 572-4600

Theresa A. Moehlman
Jeffrey D. Blake
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel.: (212) 556-2100

Dated:  May 23, 2005

683410

POTTER ANDERSON & CORROON LLP

By: _____
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Hercules Plaza 6th Floor
        1313 N. Market Street
        P.O. Box 951
        Wilmington, DE  19899
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson

*Attorneys for Defendant
Internet Security Systems, Inc.,
A Delaware Corporation*

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on May 23, 2005, the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

**VIA HAND DELIVERY**

Timothy Devlin
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE   19899

Richard K. Herrmann
Blank Rome LLP
1201 North Market Street
Suite 800
Wilmington, DE 19801-4226

I hereby certify that on May 23, 2005, I have Federal Expressed the attached document to the following non-registered participants:

**VIA FEDERAL EXPRESS**

Howard G. Pollack
Michael J. Curley
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063

Paul S. Grewal
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Boulevard
Suite 400
Cupertino, CA  95014

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

683314