**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation,   )<br>)<br>Plaintiff and   )<br>Counterclaim-Defendant,   )<br>)<br>v.   )<br>)<br>INTERNET SECURITY SYSTEMS, INC.,   )<br>a Delaware Corporation, INTERNET   )<br>SECURITY SYSTEMS, INC., a Georgia   )<br>Corporation, and SYMANTEC   )<br>CORPORATION, a Delaware Corporation,   )<br>)<br>Defendants and   )<br>Counterclaim-Plaintiffs.   ) | C. A. No.: 04-1199 (SLR) |

**NOTICE OF DEPOSITION OF SRI INTERNATIONAL, INC.
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)**

TO:  Timothy Devlin                         Howard G. Pollack
     Fish & Richardson P.C.                 Michael J. Curley
     919 Market Street, Suite 1100          Fish & Richardson P.C.
     P.O. Box 1114                          500 Arguello Street, Suite 500
     Wilmington, DE 19899                   Redwood City, CA 94063

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants and Counterclaim-Plaintiffs Internet Security Systems, Inc., a Georgia corporation ("ISS-GA"), Internet Security Systems, Inc., a Delaware corporation ("ISS-DE"), and Symantec Corporation ("Symantec"), through its undersigned counsel, will take the deposition by oral examination of Plaintiff and Counterclaim-Defendant SRI International, Inc. ("SRI") on the topics set forth in the attached Schedule A, through one or more of its officers, directors, or managing agents, or other persons designated by SRI to testify on its behalf commencing on January 19, 2006 at 9:00 a.m.  ISS-GA, ISS-DE and Symantec request that SRI provide written

notice, at leave five business days in advance of the deposition, of: (1) the name(s) of each designee who has consented to testify on behalf of SRI; (2) the job title of each such person(s); and the topics set forth in Schedule A on which each such person(s) will testify.

The deposition will take place at the offices of Day Casebeer Madrid & Batchelder LLP, 20300 Stevens Creek Boulevard, Suite 400, Cupertino, CA 95014, or at such other time and place as may be agreed to by counsel. The deposition will be taken before an officer authorized by the laws of the United States to administer oaths and will be recorded by stenographic and videographic means. The deposition will continue from day to day until completed, weekends and holidays excepted, with adjournments as to time and place as may be necessary. Some or all of the deposition testimony may involve real-time computer connection between the deposition taker and court reporter using software such as "LiveNote."

| POTTER ANDERSON & CORROON LLP | MORRIS JAMES HITCHENS & WILLIAMS LLP |
|---|---|
| By: */s/ David E. Moore*<br>    Richard L. Horwitz (#2246)<br>    David E. Moore (#3983)<br>    Hercules Plaza 6th Floor<br>    1313 N. Market Street<br>    P.O. Box 951<br>    Wilmington, DE 19899<br>    Tel: (302) 984-6000<br>    rhorwitz@potteranderson.com<br>    dmoore@potteranderson.com | By: */s/ Richard K. Hermann*<br>    Richard K. Hermann (#406)<br>    222 Delaware Avenue, 10th Floor<br>    P.O. Box 2306<br>    Wilmington, DE 19899<br>    Tel: (302) 888-6800<br>    rhermann@morrisjames.com |
| *Attorneys for Defendants*<br>*And Counterclaim-Plaintiffs*<br>*INTERNET SECURITY SYSTEMS, INC.,*<br>*a Delaware Corporation, and*<br>*INTERNET SECURITY SYSTEMS, INC.,*<br>*a Georgia Corporation* | *Attorneys for Defendants*<br>*and Counterclaim-Plaintiffs*<br>SYMANTEC CORPORATION |
| OF COUNSEL: | OF COUNSEL: |
| Holmes J. Hawkins III<br>Natasha H. Moffitt<br>KING & SPALDING LLP<br>191 Peachtree Street<br>Atlanta, GA 30303<br>Tel: (404) 572-4600 | Lloyd R. Day, Jr.<br>Robert M. Galvin<br>Paul S. Grewal<br>Day Casebeer Madrid & Batchelder LLP<br>20300 Stevens Creek Blvd., Suite 400<br>Cupertino, CA 95014<br>Tel: (408) 873-0110 |
| Theresa A. Moehlman<br>Jeffrey D. Blake<br>KING & SPALDING LLP<br>1185 Avenue of the Americas<br>New York, New York 10036<br>Tel.: (212) 556-2100 | |

Dated: December 22, 2005

# SCHEDULE A

## DEFINITIONS

A.  "SRI" means plaintiff and counterclaim-defendant SRI International, Inc., including its subsidiary companies, predecessors, successors, parents, divisions, affiliates and joint ventures to which it is or was a party as well as its current or former officers, directors, employees, attorneys, agents, consultants, accountants, servants, partners and representatives.

B.  "ISS-GA" means defendant and counterclaim-plaintiff Internet Security Systems, Inc., a Georgia corporation, including its subsidiary companies, predecessors, successors, parents, divisions, affiliates and joint ventures to which it is or was a party as well as its current or former officers, directors, employees, attorneys, agents, consultants, accountants, servants, partners and representatives.

C.  "ISS-DE" means defendant and counterclaim-plaintiff Internet Security Systems, Inc., a Delaware corporation, including its subsidiary companies, predecessors, successors, parents, divisions, affiliates and joint ventures to which it is or was a party as well as its current or former officers, directors, employees, attorneys, agents, consultants, accountants, servants, partners and representatives.

D.  "Symantec" means defendant and counterclaim-plaintiff Symantec Corporation, including its subsidiary companies, predecessors, successors, parents, divisions, affiliates and joint ventures to which it is or was a party as well as its current or former officers, directors, employees, attorneys, agents, consultants, accountants, servants, partners and representatives.

  E. The "asserted patents" means U.S. Patents Nos. 6,321,338, 6,484,203, 6,708,212 and 6,711,615.

  F. The term "EMERALD" means the Event Monitoring Enabling Responses To Anomalous Live Disturbances project referenced in the article "EMERALD: Event Monitoring Enabling Responses To Anomalous Live Disturbances," authored by Phillip A. Porras and Peter G. Neumann, 20th NISCC, October 9, 1997.

  G. The term "DARPA" means "the United States Department of Defense Advanced Research Projects Agency."

  H. The term "Rome Labs" means "the United States Air Force Research Laboratory" and/or the "Rome Research Site" located in Rome, New York.

  I. The term "SPAWAR" means "the Department of the Navy, Space and Warfare Systems Command."

  J. "Foreign Counterpart Application" means any patent application filed anywhere in the world outside the United States that claims priority in whole or in part from an application that resulted in a given patent, that is the basis for a claim of priority in whole or in part (including without limitation claims of benefits under 35 U.S.C. §§ 119(e) or 120) for a given patent, or that discloses the same subject matter as a given patent.

  K. "Related Application" means any application that: (1) is a parent, child or ancestral application related in any way to a given patent; (b) is a continuation application, continuation-in-part application, divisional application, file-wrapper continuation, reexamination proceeding, reissue application, provisional application, or abandoned application of such patent or the application that led to such patent; (c) claims

priority in whole or in part from such patent or the application that led to such patent; (d) is the basis for a claim of priority in whole or in part (including claims of benefit under 35 U.S.C. §§ 119(e) or 120) for a given patent; or (e) shares subject matter with a given patent.

    L.    "Related Patent" means any patent that issued from any Related Application.

    M.    The term "document" shall have the broadest meaning provided by Fed. R. Civ. P. 26 and 34 and shall include all things which come within the meaning of the terms "writings and recordings" used in Fed. R. Evid. 1001. "Document" also includes tangible items such as research and development samples, prototype devices and production samples. "Documents" may be stored in either hardcopy or electronic form. Electronic documents include electronic mail, electronic mail archives, and computer code in any form. A draft, translation or non-identical copy, such as a copy containing comments or notations, is a separate document within the meaning of this term.

    N.    Documents that "refer or relate to" any given matter mean documents that concern, contain, discuss, describe, analyze, embody, comment upon, identify, incorporate, summarize, refer to, relate to, reflect, state, constitute, comprise or are otherwise pertinent to the matter or any aspect thereof.

    O.    The term "concerning" means referring to, relating to, describing, evidencing or constituting.

    P.    "Any" and "all" shall be construed individually to mean each and every.

Q. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request any information or documents which might otherwise be construed to be outside of its scope.

R. As used herein, the terms "identify," "identity," and "identification" when used in reference to an individual entity means to state his or her full name, residence and business telephone numbers, present residence and business addresses if known, and his or her present or last known title, position and business affiliation.

S. As used herein, "including" means "including but not limited to."

T. As used herein, the terms "policy" and "policies" shall mean policies, established procedures, rules, or business methods.

U. As used herein, the terms "practice" and "practices" shall mean customary or habitual procedures, schedules, policies, or business methods.

V. The singular and masculine form of any noun or pronoun shall embrace and be read and applied as embracing the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

## DEPOSITION TOPICS

1. The date(s) and circumstances of the conception of the subject matter claimed in the asserted patents and an identification of any and all evidence that corroborates the date(s) of the conception of the subject matter claimed in the asserted patents.

2. The date(s) and circumstances of the reduction to practice of the subject matter claimed in the asserted patents and an identification of any and all evidence that corroborates the date(s) of the reduction to practice of the subject matter claimed in the asserted patents.

3. Any and all diligence in the reduction to practice of the subject matter claimed in the asserted patents and an identification of any and all evidence that corroborates any and all diligence in the reduction to practice of the subject matter claimed in the asserted patents.

4. The structure, function and operation of the first actual reduction to practice of each claim of the asserted patents.

5. The mode of practicing each claim of the asserted patents that was considered the best mode on November 8, 1998.

6. The publication or making available to the public of the subject matter claimed in the asserted patents on or before November 8, 1997.

7. The preparation and submission of any and all invention disclosure(s) during the prosecution of the applications of the asserted patents and of any and all related applications.

8. All prior art identified by anyone associated with SRI in connection with any analysis or consideration of the claims of the asserted patents or any related patents or patent applications.

9. All activities related to prior art searches conducted for each of the claims of the asserted patents or any related patents or related applications.

10. SRI's ownership of and/or interest in the asserted patents, including, without limitation, all assignments of the asserted patents.

11. Any analysis or testing of any product to determine whether the product falls within the scope of any claim of the asserted patents, including any analysis or testing of ISS-GA products or Symantec products.

12. The research, design, development, implementation and testing of any products, software or systems embodying any of the claims of the asserted patents, including, without limitation, the research, design, development, implementation and testing of any technology, product, software, system or component of EMERALD.

13. Any product, software or system demonstrated, sold, offered for sale or licensed prior to November 9, 1998 which embodies the subject matter of any claim of the asserted patents.

14. The first demonstration, first use and first sale of any technology, product, software, system or component that embodies or implements the subject matter claimed in the asserted patents.

15. The identification, features and functionality of all products, software, components, systems or other technology sold or offered for sale that embody or implement any claim of the asserted patents.

16. All attempts to sell or otherwise commercialize products, software or systems embodying any claim of the asserted patents, including, without limitation, all efforts to sell, offer to sell, or otherwise commercialize any technology resulting from EMERALD, including an identification of when SRI began marketing and/or selling such products, software or systems and the financial results (e.g., revenues, costs or profits), actual or projected, attributable to such products, software or systems.

17. All licenses, attempts to license, or offers to license any products, software or systems embodying any claim of the asserted patents, including, without limitation, all proposed or actual licensing of any technology resulting from EMERALD, including an identification of when SRI began licensing such products.

18. All royalties or other payments made to SRI in connection with the sales or licensing of any products, software or systems embodying any claim of the asserted patents, including, without limitation, all proposed or actual licensing of any technology resulting from EMERALD.

19. The identity of each customer or licensee of EMERALD, and the price paid by each such customer for EMERALD or a license to EMERALD.

20. The content and purpose of any advertising or marketing materials created by SRI concerning or related to EMERALD.

21. The effect of the sales of EMERALD, by SRI or any of its licensees, on the sales and profits of any other SRI products, software, systems and/or services.

22. The cost savings, expenditure reductions, price reductions or other economic benefits realized by SRI customers or licensee, either directly or indirectly, related to their use, implementation and/or availability of EMERALD.

23. All licenses, offers to license, or attempts to license one or more of the asserted patents, any related patents to the asserted patents or any foreign patents or foreign patent applications corresponding in whole or in part to any of the asserted patents, including, without limitation, an identification of all entities that are licensed under any such licenses and the terms of any such licenses, including whether such licenses are exclusive or non-exclusive, whether the payment terms involve an upfront, fully paid royalty or a running royalty, and the actual payment terms.

24. All facts and circumstances surrounding any offers received by or attempts made by SRI to license and/or sell the asserted patents and any documents related to such attempts or offers received.

25. All royalties or other payments made to SRI in connection with the licensing of any of the asserted patents, any related patents to the asserted patents or any foreign patents or foreign patent applications corresponding in whole or in part to any of the asserted patents.

26. SRI's patent and technology licensing policies or practices at all times from 2001 to the present, including any licensing guidelines developed and/or employed by SRI.

27. The identity of any other patents assigned to or held by SRI, whether or not SRI has ever licensed or attempted to license such patents, and the terms of such patent licenses, including the patents and/or technology at issue, the rates charged, and the basis and nature of payment (i.e., lump sum, metered, running royalty).

28. The identity of all licenses made or taken by SRI for intellectual property related to network intrusion detection products, software, systems and/or services, and the

terms of all such licenses including, but not limited to, whether such licenses are exclusive or non-exclusive, whether the payment terms involve an upfront, fully paid royalty or a running royalty, and the actual payment terms.

29. Identification of all contracts between SRI and (1) the United States Government, (2) DARPA, (3) Rome Labs or (4) SPAWAR relating to the design and development of intrusion detection systems, including, without limitation, contract nos. F30602-96-C-0187, F30602-96-C-0294, F30602-96-C-0325, F30602-98-C-0059, F30602-02-C-0024 and N00039-92-C-0015, all funding received by SRI under such contracts, all work performed by SRI under any such contracts, all deliverables made by SRI under such contracts, and the United States Government personnel responsible for awarding, monitoring, supervising, and evaluating such contracts.

30. Identification of any and all materials concerning NIDES or EMERALD on any SRI website accessible to persons not employed by SRI on or before November 9, 1998.

31. Identification of all disclosures to persons not employed by SRI of EMERALD, or any technology resulting from EMERALD, on or before November 9, 1998, including an identification of the date of each such disclosure, the person making the disclosure and the person to whom the disclosure was made.

32. Identification of any and all collaborations between SRI and third parties relating to any intrusion detection research and development that started on or before November 9, 1998, including collaborations with MCNC on the JiNao system, the dates of such collaborations and the persons involved in such collaborations.

33. Any opinions, oral or written, concerning the infringement/non-infringement, validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the asserted patents.

34. Any valuations of any or all of the asserted patents.

35. All facts and circumstances that support or detract from any contention that SRI and either ISS-GA, ISS-DE, Symantec, or Recourse Technologies are or were at any time competitors in the field of network intrusion detection products, software or systems.

36. The identity of all businesses or entities for which SRI allegedly competed with either ISS-GA, ISS-DE, Symantec or Recourse Technologies to sell or license intrusion detection products, software or systems and, for each such entity, the outcome of that competition and any reasons communicated to SRI for that outcome.

37. The identity of all documents demonstrating that SRI and either ISS-GA, ISS-DE, Symantec, or Recourse Technologies competed to sell or license intrusion detection products, software, systems and/or services.

38. All facts and circumstances that support or detract from any contention that any of ISS-GA, ISS-DE or Symantec "was notified of the infringement" of any of the asserted patents, as that phrase is used in 35 U.S.C. § 287(a), before the present suit was filed.

39. All communications, whether written or verbal, between SRI and either ISS-GA, ISS-DE, Symantec, or Recourse Technologies concerning any of the asserted patents or any infringement of the asserted patents prior to the filing of the present suit.

40. All communications, whether written or verbal, between SRI and any third-parties concerning any of the asserted patents, the infringement, validity or enforceability of those patents, damages or any other issue in this litigation.

41. All facts and circumstances concerning any decision by SRI to mark any of its products with the number of any of the asserted patents, including, without limitation, an identification of the features and functionalities in those products covered by any claim in any of the asserted patents, an identification of when such features and functionalities were implemented in any product by SRI, and an identification of what preceded the incorporation of these features and functions (i.e., whether the feature or function was merely absent from the predecessor product or whether it was accomplished through other means).

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on December 22, 2005, the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

**VIA HAND DELIVERY**

Timothy Devlin
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE 19899

Richard K. Herrmann
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899-2306

I hereby certify that on December 22, 2005, I have Faxed and Federal Expressed the attached document to the following non-registered participants:

**VIA FEDERAL EXPRESS**

Howard G. Pollack
Michael J. Curley
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

Paul S. Grewal
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Boulevard
Suite 400
Cupertino, CA 95014

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

683314