IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation,<br><br>　　　　Plaintiff and<br>　　　　Counterclaim-Defendant,<br><br>　　v.<br><br>INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia Corporation, and SYMANTEC CORPORATION, a Delaware corporation,<br><br>　　　　Defendants and<br>　　　　Counterclaim- Plaintiffs. | Civil Action No. 04-CV-1199 (SLR) |

**BRIEF OF DEFENDANTS SYMANTEC AND ISS IN
SUPPORT OF JOINT MOTION TO LIMIT TESTIMONY OF SRI'S EXPERT,
DR. GEORGE KESIDIS, UNDER FEDERAL RULE OF EVIDENCE 702**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel.:   (302) 984-6000
Fax:   (302) 658-1192

OF COUNSEL:

Holmes J. Hawkins III
Natasha H. Moffitt
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel:   (404) 572-4600
Fax:   (404) 572-5134

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS, LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel.: (302) 888-6800

OF COUNSEL:

Lloyd R. Day, Jr.
Robert M. Galvin
Paul S. Grewal
DAY, CASEBEER MADRID &
BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA  95014
Tel: (408) 873-0110
Fax: (408) 873-0220

<table>
<tr><td>

Theresa A. Moehlman
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel.: (212) 556-2100
Fax: (212) 556-2222

Attorneys for Defendant INTERNET
SECURITY SYSTEMS, INC., a Delaware
Corporation and INTERNET SECURITY
SYSTEMS, INC., a Georgia Corporation

</td><td>

Michael J. Schallop
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA 95014
Tel: (408) 517-8000
Fax: (408) 517-8121

Attorneys for Defendant SYMANTEC
CORPORATION, a Delaware Corporation

</td></tr>
</table>

Dated: June 16, 2006

## TABLE OF CONTENTS

PAGE NO.

I. STATEMENT OF THE CASE ..................................................................................... 1

II. SUMMARY OF ARGUMENT .................................................................................... 2

III. STATEMENT OF FACTS ........................................................................................... 2

IV. DR. KESIDIS SHOULD BE PRECLUDED FROM OFFERING EXPERT TESTIMONY RELATING TO THE KNOWLEDGE, SKILL, AND UNDERSTANDING OF A PERSON OF ORDINARY SKILL IN THE ART ON OR BEFORE NOVEMBER 1998 ................................................................................................... 5

    A. The Court's Gatekeeper Function Under Rule 702 And *Daubert* Ensures The Reliability Of Scientific Testimony .............................. 5

    B. Dr. Kesidis' Lack Of Relevant Practical Experience and Academic Training Disqualifies Him As An Expert On The State Of the Art Of Intrusion Detection In And Before 1998 ............................................................................................................. 6

    C. Dr. Kesidis Is Not Qualified To Give Opinions On Claims Construction .................................................................................................. 6

    D. Dr. Kesidis Is Not Qualified To Give Opinions On The Enablement Requirement Of 35 U.S.C. § 102 ........................................... 7

    E. Dr. Kesidis Is Not Qualified To Give Opinions On The Enablement Requirement Of 35 U.S.C. § 112 ........................................... 8

    F. Dr. Kesidis Is Not Qualified To Give Opinions On Obviousness Under 35 U.S.C. § 103 ............................................................ 9

V. CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Adang v. Fischhoff*,
   286 F.3d 1346 (Fed. Cir. 2002) .................................................................................... 8

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003) .................................................................................... 7

*B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*,
   72 F. 3d 1577 (Fed. Cir. 1996) ................................................................................... 10

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ............................................................................................... 5, 11

*Elan Pharm., Inc. v. Mayo Found. for Med. Educ. and Research*,
   346 F.3d 1051 (Fed. Cir. 2003) .................................................................................... 7

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000) ......................................................................................... 5

*Enzo Biochem, Inc. v. Calgene, Inc.*,
   188 F.3d 1362 (Fed. Cir. 1999) .................................................................................... 7

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966) ....................................................................................................... 10

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
   802 F.2d 1367 (Fed. Cir. 1986) .................................................................................... 8

*Kumho Tire Co. Ltd. V. Carmichael*,
   526 U.S. 137 (1999) ..................................................................................................... 5

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................................... 6

*Union Carbide Plastics & Tech. Corp. v. Shell Oil Co.*,
   308 F. 3d 1167 (Fed. Cir. 2002) ................................................................................. 10`

*Waldorf v. Shuta*,
   142 F.3d 601 (3d Cir.1998) .......................................................................................... 5

**Statutes**

35 U.S.C. § 103 (2003) ..................................................................................................... 9, 10

I.  **STATEMENT OF THE CASE**

Plaintiff SRI has sued Defendants Symantec and ISS for infringement of four patents relating to network intrusion detection.[1] In support of its infringement case and to rebut Defendants' invalidity defenses, SRI has proffered Dr. George Kesidis as an expert. Based upon his expert reports, SRI intends to offer at trial a number of opinions relating to the knowledge or skill of a person of ordinary skill in the art on or before November 1998 – the filing date of original patent application from which the patents-in-suit issued.

Dr. Kesidis, however, has admitted he was neither an expert nor a person of ordinary skill in the art in the field of cyber security or intrusion detection prior to November 1998.[2] Dr. Kesidis did not even begin working in the field until at least 2000, and did not publish any work in the field until 2003. Nor did he take sufficient steps to educate himself about the knowledge and skill of a person of ordinary skill in the art prior to November 1998.

By this motion, Defendants do not seek to completely bar Dr. Kesidis from offering expert testimony at trial. Defendants do seek, however, pursuant to Rule 702 of the Federal Rules of Evidence, to preclude Dr. Kesidis from offering certain expert opinions that he is simply not qualified to give by his own admissions. In particular, Dr. Kesidis should be precluded from offering testimony about (a) the knowledge and level of skill in the field of cyber security/intrusion detection prior to November 1998, (b) how one of ordinary skill in the art would have interpreted certain terms of art in November 1998, (c) what would or would not have been obvious to a person of ordinary skill in the art in 1998, and (d) whether a disclosure would have enabled a person of ordinary skill in the art to make and use the claimed inventions prior to November 1998.

---

[1] All referenced exhibits are attached to the Declaration of Robert M. Galvin.

[2] SRI defines the field of art as "cyber security" and defendants have defined the field of art as "intrusion detection." For the purpose of this motion, this difference is not material, because Dr. Kesidis does not meet any party's definition.

1

## II. SUMMARY OF ARGUMENT

1. Dr. Kesidis has admitted that he was not a person of ordinary skill in the field of cyber security or intrusion detection in or before 1998, the effective filing date of the patents-in-suit. Further, Dr. Kesidis has admitted that he did not begin working in the field until 2000.

2. Dr. Kesidis did not sufficiently educate himself about the understanding of a person of ordinary skill in the field in or before 1998.

3. Yet Dr. Kesidis makes numerous statements in his expert reports regarding infringement and validity based on his supposed knowledge of the understanding of a person of ordinary skill in the field in or before 1998.

4. Dr. Kesidis' admissions regarding his lack of relevant experience and insufficient efforts to gain that experience disqualify him from offering any testimony on the understanding of a person of ordinary skill in the field of cyber security or intrusion detection in or before 1998.

## III. STATEMENT OF FACTS

Dr. Kesidis is an Associate Professor of Electrical Engineering and Computer Science and Engineering at Pennsylvania State University. He has been retained by SRI as an expert witness and has submitted expert reports relating to the alleged infringement and validity of the patents-in-suit.

In his expert report, Dr. Kesidis defines the relevant field of art relating to the patents-in-suit variously as "enterprise-deployed cyber security" and "cyber security." Ex. 1 (4/28/06 Expert Report of Dr. George Kesidis on Infringement Regarding Symantec ("Symantec Report") at ¶ 251); Ex. 2 (4/28/06 Expert Report of Dr. George Kesidis on Infringement Regarding ISS ("ISS Report") at ¶ 160). He describes a person of ordinary skill in the art in the following passage:

> Based on my experience, a person of ordinary skill in the art would have either a bachelor's degree in Computer Science, Electrical Engineering, or Computer Engineering and 5-7 years experience in enterprise-deployed cyber

2

> security (or a master's degree in CS, EE, or CE and 3-5 years in same). Such a person would also be familiar with the basic existing techniques of cyber security and their performance and limitations, as well as deployment and maintenance issues of cyber security products.

*Id.*

At his deposition, Dr. Kesidis admitted he did not satisfy his own definition of a person of ordinary skill in the art in November 1998. Ex. 3 (5/25/06 Deposition of George Kesidis ("Kesidis Tr.") Vol. 1 15:3-11). By his own admission, Dr. Kesidis did not begin working in the field of cyber security or intrusion detection until 2000. *Id.* at 16:5-11. Dr. Kesidis did not publish any articles relating to the field of cyber security or intrusion detection until 2003 – five years after the effective filing date for the patents-in-suit. *Id.* at 7:4–8:23.

Dr. Kesidis also admitted that he has never even been involved in the implementation of a system for enterprise-deployed cyber security. *Id.* at 17:19–18:4. Further, Dr. Kesidis admitted that he has never used any of the prior art intrusion detection systems about which he opines. Ex. 3 (5/26/06 Kesidis Tr. Vol. 2 375:20-22).

Dr. Kesidis made little effort to educate himself about the state of the art in cyber security and intrusion detection prior to November 1998. He did not speak with anyone who was in the field at that time to gain the benefit of their experience and understanding of the state of the art. *Id.* at 369:25-370:7. Although he had the opportunity to do so, Dr. Kesidis did not have any substantive communications with Messrs. Porras and Valdes, the inventors of the patents-in-suit. *Id.* at 372:13-373:20. Dr. Kesidis' failure to discuss these issues with SRI's inventors is also significant because Dr. Kesidis has admitted that Messrs. Porras and Valdez have a much more robust understanding of the prior art at issue than he has. *Id.* at 373:6-11. Dr. Kesidis also admitted that he failed to speak with his own professional colleague, Dr. Levitt, who was the principle investigator on a number of the very prior art systems at issue in this case. *Id.* at 373:21-374:22.

3

Apart from "briefly thinking about it and discussing with counsel," Dr. Kesidis did not do any specific research to determine what the level of ordinary skill would have been in the intrusion detection field as of November 9, 1998. Ex. 3 (Kesidis Tr. Vol. 1 at 10:13-18). While Dr. Kesidis apparently read the specific references cited by Defendants as anticipating references and may have read some other references that he could not recall, Dr. Kesidis did not review any other prior art to determine what the general level of ordinary skill would have been in the relevant field as of November 1998. Ex. 3 (Kesidis Tr. Vol. 2 at 369:14-23). In fact, Dr. Kesidis spent a total of only 30-40 hours reviewing the Defendants' invalidity expert reports, reading the cited anticipatory references, and drafting his expert report. *Id.* at 361:11-20.

Despite his lack of knowledge of the state of the art of intrusion detection prior to November 1998, Dr. Kesidis offers opinions relating to a person of "ordinary skill in the art" no less than 90 times in his three expert reports. For example, Dr. Kesidis offers opinions about the following:

- how one of ordinary skill in the art in November 1998 would have understood the meaning of certain terms of art. Ex. 2 (ISS Report at ¶ 46);

- whether certain prior art references, combined with the knowledge and experience of a person of ordinary skill in the art, would have enabled such person prior to November 1998 to practice the claimed inventions. Ex. 4 (5/16/06 Rebuttal Report of Dr. George Kesidis on Validity ("Validity Report") at ¶ 14);

- whether the claimed inventions would have been obvious to a person of ordinary skill in the art prior to November 1998. Ex. 4 (Validity Report at ¶ 4); and

- whether the patent specification would have enabled a person of ordinary skill in the art to make and use the claimed inventions. Ex. 4 (Validity Report at ¶ 5).

4

## IV. DR. KESIDIS SHOULD BE PRECLUDED FROM OFFERING EXPERT TESTIMONY RELATING TO THE KNOWLEDGE, SKILL, AND UNDERSTANDING OF A PERSON OF ORDINARY SKILL IN THE ART ON OR BEFORE NOVEMBER 1998

### A. The Court's Gatekeeper Function Under Rule 702 And *Daubert* Ensures The Reliability Of Scientific Testimony

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702 (2006).

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court interpreted Rule 702 as requiring that "[t]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." The Supreme Court has directed the courts to ensure that experts are qualified to give the opinions expressed. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999) (mandating that the district court determine "whether this particular expert has sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case") (citation omitted). The Third Circuit has construed Rule 702 as embodying "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). The court must therefore determine "whether [a] particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case" before allowing expert testimony to be offered to the jury. *Kumho* at 156; *see also Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir.1998) (citations omitted). The party offering the expert testimony has the burden of proving admissibility. *See Daubert* at 592 n. 10 (citation omitted).

### B. Dr. Kesidis' Lack Of Relevant Practical Experience And Academic Training Disqualifies Him As An Expert On The State Of The Art Of Intrusion Detection In And Before 1998

Dr. Kesidis has admitted that his Ph.D. work had no bearing whatsoever on cyber security. *See* Ex. 3 (Kesidis Tr. Vol. 1, 6:22-7:3). He also admitted that he was not actively practicing in the field of intrusion detection in November of 1998. *See id.* at 10:19-21. He did not even publish his first work in the field until five years after the effective filing date of the patents-in-suit. *See id.* at 15:16-19 Dr. Kesidis has neither the academic training nor practical experience to be qualified to reliably testify about the level of ordinary skill in the cyber security or intrusion detection field in and before 1998. The following detailed analysis will further demonstrate Dr. Kesidis' lack of qualification to give opinions based on the understanding of one of ordinary skill in the art in the cyber security or intrusion detection field on or before November of 1998.

### C. Dr. Kesidis Is Not Qualified To Give Opinions On Claims Construction

Claim terms "are generally given their ordinary and customary meaning," that is, "the meaning that the term would have to a person of ordinary skill in the art in question *at the time of the invention, i.e., as of the effective filing date of the patent application.*" *Phillips* v. *AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc), *cert. denied*, 126 S. Ct. 1332 (2006) (emphasis added). Dr. Kesidis admitted that he was not involved in the intrusion detection field as of November 9, 1998, the effective filing date for all four of the patents-in-suit and presumptive date of invention of the subject matter disclosed therein. *See* Ex. 3 (Kesidis Tr. Vol. 1, 16:5-11). Dr. Kesidis also admitted that he made few, if any, efforts to determine what the level of ordinary skill would have been in the intrusion detection field as of November 9, 1998. *See id.* at 10:13-18. Therefore, Dr. Kesidis is not qualified to give testimony about what one of ordinary skill in the cyber security or intrusion detection field as of November 9, 1998 would have understood any term to mean and he should not be allowed to testify about this topic in the context of

claim constructions.³

### D. Dr. Kesidis Is Not Qualified To Give Opinions On The Enablement Requirement Of 35 U.S.C. § 102

"To serve as an anticipating reference, the reference must enable that which it is asserted to anticipate." *Elan Pharm., Inc. v. Mayo Found. for Med. Educ. and Research*, 346 F.3d 1051, 1054 (Fed. Cir. 2003) (quoting *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354 (Fed. Cir. 2003)). The relevant inquiry is whether the teachings of the prior art reference would have enabled a person of ordinary skill, without undue experimentation, to make and use the claimed invention prior to the date of invention. *See id.* at 1057-56 ("an enablement determination [of a prior art patent] is made ***retrospectively, i.e., by looking back to the filing date of the patent application*** and determining whether undue experimentation would have been required to make and use the claimed invention *at that time*") (quoting *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371-22 (Fed. Cir. 1999)) (emphasis added).

Notwithstanding his lack of qualifications, Dr. Kesidis opines about, *inter alia*, enablement of three prior art references published before 1998 in his reports:

- "The statements in these references . . . did not actually teach one of ordinary skill in the art how to develop such a system." Ex. 4 (Validity Report at ¶ 14).

- "[T]hese references fail to teach one of ordinary skill in the art what to monitor; that is, they fail to teach one of ordinary skill how to selectively filter . . . the information . . . ." *Id.*

Dr. Kesidis is not qualified to give opinion testimony about what the prior art references would have enabled a person of ordinary skill in the art in 1997 or 1998 to make or use because he was not such a person, and because he did not undertake the steps necessary to educate himself about the understanding of such a person as of 1997 or

---

³ The following is a list of paragraphs in Dr. Kesidis' reports where he improperly makes reference to the understanding of one of ordinary skill in the cyber security or intrusion detection field on or before November 9, 1998 as applied to the meaning of terms in claims construction: Ex. 1 (Symantec Report at ¶¶ 53, 54, 64, 234, 238 & 251, Ex. C thereto at pp. 3, 6 & 12, and Ex. F thereto at pp. 1 and 3); and Ex. 2 (ISS Report at ¶¶ 46, 47, 143, 147 & 160, Ex. C thereto at pp. 1 and 8, and Ex. E thereto at pp. 1 and 3).

1998. Dr. Kesidis reviewed the cited prior art references, but he did not even attempt to review the breadth of art that would have been known to a person of ordinary skill in the art prior to November 1998. Ex. 3 (Kesidis Tr. Vol. 2 369:14-23). He had no practical experience during the relevant time period, and he did not speak with those who did. Ex. 3 (Kesidis Tr. Vol. 1 16:5-11 and Vol. 2 369:25-370:7). The 30-40 total hours that Dr. Kesidis spent preparing his opinions relating to Defendants' prior art defenses was simply insufficient to transform him into an expert about the state of the art in cyber security and intrusion detection prior to November 1998. Dr. Kesidis should therefore be barred from giving such testimony.[4]

### E. Dr. Kesidis Is Not Qualified To Give Opinions On The Enablement Requirement Of 35 U.S.C. § 112

Dr. Kesidis not only offers opinions about whether certain prior art references were enabling, he also offers opinions regarding whether the patent specifications of the patents-in-suit would have enabled one of ordinary skill in the art to make the claimed inventions in November 1998. For example, he opines: "Based on my review of the relevant materials, and on my understanding of the level of ordinary skill in the art as of the filing date of the first patent-in-suit, the '338 specification does enable the capture and parsing of network packets to generate an event stream." Ex. 4 (Validity Report at ¶ 20).

"The legal question of enablement involves an assessment of whether a patent disclosure would have enabled one of skill in the art *at the time the application was filed* to make and use the claimed invention without undue experimentation." *Adang v. Fischhoff*, 286 F.3d 1346, 1355 (Fed. Cir. 2002) (citing *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986)) (emphasis added).

---

[4] The following is a list of paragraphs in Dr. Kesidis' reports where he improperly makes reference to the understanding of one of ordinary skill in the cyber security or intrusion detection field on or before November 9, 1998 as applied to the enablement requirement of 35 U.S.C. § 102: Ex. 4 (Validity Report at ¶¶ 12, 22, 23, 24, 25, 26, 31, 32, 34, 36, 39, 42, 43, 46, 47, 57, 60, 68, 72, 73, 92, 103, 104, 118, 120, 128, 134, 140 & 149).

Dr. Kesidis' opinions are unreliable because Dr. Kesidis does not have an "understanding of the level of ordinary skill in the art as of the filing date" of the '338 specification. He was not a person of ordinary skill in computer security or intrusion detection in 1998 and he did not undertake any efforts to learn about the understanding of such a person. Ex. 3 (Kesidis Tr. Vol. 1 15:3-11 and 10:13-18). Dr. Kesidis should not be allowed to give such testimony.[5]

### F. Dr. Kesidis Is Not Qualified To Give Opinions On Obviousness Under 35 U.S.C. § 103

Finally, Dr. Kesidis offers a number of opinions as to whether the differences between the claimed inventions and certain prior art references would have been obvious to one of ordinary skill in the art in November 1998. For example, Dr. Kesidis opines:

- "Thus, EMERALD 1997 would not have taught to one of ordinary skill in the art the use of the specific types of traffic enumerated in many claims of the patents-in-suit, or rendered those claims obvious." Ex. 4 (Validity Report at ¶ 23);

- "In fact, it is not at all clear why one of ordinary skill in the art in 1997 would choose firewall logs as an input to an intrusion detection system." Ex. 4 (Validity Report at ¶ 30);

- "Furthermore, it would not have been obvious to one of ordinary skill in the art how to adapt a NIDES-like approach to the analysis of enterprise network traffic." Ex. 4 (Validity Report at ¶ 49); and

- "Nor would one of ordinary skill in the art at the time of the invention, as opposed to now with the benefit of hindsight, have had any reason to combine ISS RealSecure v. 1.2 with NSM." Ex. 4 (Validity Report at ¶ 99).

35 U.S.C. § 103 states:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious *at the time the invention was made* to a person having ordinary skill in the art to which said subject matter pertains. (emphasis added).

---

[5] The following is a list of paragraphs in Dr. Kesidis' reports where he improperly makes reference to the understanding of one of ordinary skill in the cyber security or intrusion detection field on or before November 9, 1998 as applied to the enablement requirement of 35 U.S.C. § 112: Ex. 4 (Validity Report at ¶¶ 5, 18, 20 & 21).

9

A patent claim is invalid for obviousness under 35 U.S.C. § 103 if the differences between it and the prior art are such that the claimed subject matter as a whole would have been obvious to one of ordinary skill in the art at the time the invention was made. *Union Carbide Plastics & Tech. Corp. v. Shell Oil Co.*, 308 F. 3d 1167, 1187 (Fed. Cir. 2002); 35 U.S.C. § 103 (2003). The factors to consider in determining obviousness include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicators of non-obviousness, more commonly termed secondary considerations. *See Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966); *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F. 3d 1577, 1582 (Fed. Cir. 1996).

Again, Dr. Kesidis lacks the knowledge and experience necessary to qualify him to offer expert testimony on these issues. Nor did he take sufficient steps to inform himself about the scope of the prior art or the level of skill in the art as of the date of the invention. Ex. 3 (Kesidis Tr. Vol. 1 10:13-18). Because Dr. Kesidis was not in the field at the relevant time, his opinions are unreliable. *Id.* at 16:5-11. His lack of qualifications is particularly acute in the context of obviousness. A lay person, albeit with some technical training, is very likely not to appreciate that an invention was obvious in light of the prior art. Allowing a person who was not an expert, a person of ordinary skill, or even a participant in the field as of the date of invention to offer opinions regarding obviousness would be inconsistent with this Court's duty to protect against the submission of unreliable expert testimony to the jury.

Accordingly, Dr. Kesidis should not be allowed to give testimony about the understanding of one of ordinary skill in computer security or intrusion detection in or before 1998 as applied to teachings from the prior art or motivation to combine.[6]

---

[6] The following is a list of paragraphs in Dr. Kesidis' reports where he improperly makes reference to the understanding of one of ordinary skill in the cyber security or intrusion detection field on or before November 9, 1998 as applied to the obviousness under 35 U.S.C. § 103: Ex. 4 (Validity Report at ¶¶ 4, 12, 14, 23, 24, 27, 28, 30, 31, 32, 34, 35, 36, 40, 42, 43, 46, 48, 49, 51, 52, 60, 68, 69, 71, 72, 73, 84, 85, 89, 92, 99, 103, 104,

## V. CONCLUSION

In performing its gate-keeping role under FRE 702 and *Daubert*, the Court should prohibit Dr. Kesidis from offering opinions that are beyond his expertise and that lack any reliable foundation. Accordingly, as explained above, Dr. Kesidis should be precluded from testifying about the level of ordinary skill in the computer security or intrusion detection field as applied to:

- Claims construction for both infringement and validity analysis;
- Enablement under both 35 U.S.C. § 102 & 112; and
- Analysis of obviousness under Section 103 (teaching of prior art, motivation to combine).[7]

Dated: June 16, 2006

POTTER ANDERSON & CORROON LLP

MORRIS, JAMES, HITCHENS & WILLIAMS, LLP

*/s/ Richard L. Horwitz*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel.: (302) 984-6000
Fax: (302) 658-1192

*Mary B. Matterer*
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel.: (302) 888-6800

---

106, 110, 118, 120, 125, 134, & 149).

[7] The following is a list of paragraphs in Dr. Kesidis' reports where he improperly makes reference to the understanding of one of ordinary skill in the cyber security or intrusion detection field on or before November 9, 1998: Ex. 1 (Symantec Report at ¶¶ 53, 54, 64, 234, 238 & 251, Ex. C thereto at pp. 3, 6 & 12, and Ex. F thereto at pp. 1 and 3); Ex. 2 (ISS Report at ¶¶ 46, 47, 143, 147 & 160, Ex. C thereto at pp. 1 and 8, and Ex. E thereto at pp. 1 & 3); and Ex. 4 (Validity Report at ¶¶ 4, 5, 12, 14, 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 32, 34, 35, 36, 39, 40, 42, 43, 46, 47, 48, 49, 51, 52, 57, 60, 68, 69, 71, 72, 73, 84, 85, 89, 92, 99, 103, 104, 106, 110, 118, 120, 125, 128, 134, 140, & 149).

OF COUNSEL:

Holmes J. Hawkins III
Natasha H. Moffitt
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel:   (404) 572-4600
Fax:  (404) 572-5134

OF COUNSEL:

Lloyd R. Day, Jr.
Robert M. Galvin
Paul S. Grewal
DAY, CASEBEER MADRID &
BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA  95014
Tel:  (408) 873-0110
Fax:  (408) 873-0220

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of June, 2006, I electronically filed the foregoing document, **BRIEF OF DEFENDANTS SYMANTEC AND ISS IN SUPPORT OF JOINT MOTION TO LIMIT TESTIMONY OF SRI'S EXPERT, DR. GEORGE KESIDIS, UNDER FEDERAL RULE OF EVIDENCE 702,** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

John F. Horvath, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 16th day of June, 2006, the foregoing document was served via email and via federal express on the following non-registered participants:

Howard G. Pollack, Esq.
Michael J. Curley, Esq.
Fish & Richardson
500 Arguello Street, Suite 500
Redwood City, CA 94063
650.839.5070

Holmes Hawkins, III, Esq.
King & Spalding
1180 Peachtree Street
Atlanta, GA 30309-3521
404.572.4600

Theresa Moehlman, Esq.
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
212.556.2100

            _/s/ Mary B. Matterer_
            Richard K. Herrmann (#405)
            Mary B. Matterer (#2696)
            Morris, James, Hitchens & Williams LLP
            222 Delaware Avenue, 10th Floor
            Wilmington, DE 19801
            (302) 888-6800
            rherrmann@morrisjames.com
            mmatterer@morrisjames.com
            _Counsel for Symantec Corporation_