IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation,<br><br>    Plaintiff and<br>    Counterclaim-Defendant,<br><br>v.<br><br>INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, and SYMANTEC CORPORATION, a Delaware corporation,<br><br>    Defendants and<br>    Counterclaim-Plaintiffs. | C. A. No. 04-1199 (SLR)<br><br>**Public Version** |

**SRI INTERNATIONAL, INC.'S OPENING BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE FROM EVIDENCE THE
TESTIMONY OF DANIEL TEAL**

Dated: June 16, 2006             FISH & RICHARDSON P.C.

John F. Horvath (#4557)
FISH & RICHARDSON P.C.
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Howard G. Pollack (CA Bar No. 162897)
Katherine D. Prescott (CA Bar No. 215496)
FISH & RICHARDSON P.C.
500 Arguello St., Ste. 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff and Counterclaim Defendant
SRI INTERNATIONAL, INC.

## TABLE OF CONTENTS

|     |     | Page |
| --- | --- | --- |
| I.  | INTRODUCTION | 1 |
| II. | NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| III.| STATEMENT OF FACTS | 2 |
| IV. | ANALYSIS | 5 |
|     | A. Mr. Teal Should be Precluded from Presenting Testimony on NetRanger as an Expert and Instead Should Have Been Disclosed as a Fact Witness | 5 |
|     | B. Because Mr. Teal is a Fact Witness, Defendants Should Be Precluded from Relying at Trial on Mr. Teal's Testimony or on Any Testimony or Documents Related to NetRanger Produced Beyond the Close of Fact Discovery | 9 |
|     | C. If the Court Does Not Strike Mr. Teal's Testimony, He Should Be Precluded from Testifying About Matters Not Corroborated by Admissible Documents | 11 |
| V.  | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

Page

**Federal Cases**

*Apotex USA, Inc. v. Merck & Co., Inc.*,
    254 F.3d 1031 (Fed. Cir. 2001) .......................................................................... 11

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
    222 F. Supp. 2d 423 (S.D.N.Y. 2002) ................................................................... 6

*Corning Inc. v. SRU Biosystems*,
    400 F. Supp. 2d 653 (D. Del. 2005) ...................................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ......................................................................................... 5, 6

*Deering v. Winona Harvesting Works*,
    155 U.S. 286 (1894) ............................................................................................ 12

*Finnigan Corp. v. ITC*,
    180 F.3d 1354 (Fed. Cir. 1999) ............................................................... 11, 12, 13

*Fisher v. Ford Motor Co.*,
    178 F.R.D. 195 (N.D. Ohio 1998) ......................................................................... 6

*Gomez v. Rivera Rodriguez*,
    344 F.3d 103 (1st Cir. 2003) ........................................................................ 6, 7, 8

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) .............................................................................................. 6

*Metabolite Labs., Inc. v. Lab. Corp. Of America Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004) ........................................................................... 11

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
    175 F.3d 1356 (Fed. Cir. 1999) ............................................................................. 6

*Morgan v. U.S. Xpress, Inc.*,
    2006 WL 278398, at *2 (M.D. Ga. Feb. 3, 2006) ............................................. 6, 8

*Odetics, Inc. v. Storage Tech. Corp.*,
    185 F.3d 1259 (Fed. Cir. 1999) ............................................................................. 6

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004) ...................................................................... 8

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*,
    998 F.2d 1224 (3d Cir. 1993) ................................................................................ 6

*Price v. Symsek*,
    988 F.2d 1187 (Fed. Cir. 1993) ........................................................................... 11

*Scientific Image Center Mgmt., LLC v. Brandy*,
    2006 WL 827812, at *1 (W.D. Pa. 2006) .............................................................. 7

## TABLE OF AUTHORITIES (cont'd)

**Page**

*Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*,
   183 F.3d 1347 (Fed. Cir. 1999) ............................................................................... 8

*The Barbed-Wire Patent*,
   143 U.S. 275 (1892) ..................................................................................... 11, 13

### State Cases

35 U.S.C. § 102 .......................................................................................................... 11

35 U.S.C. § 282 .......................................................................................................... 11

FED. R. CIV. P. 26(a)(2) ............................................................................................... 7

FED. R. EVID. 702 ........................................................................................................ 8

## I. INTRODUCTION

Daniel Teal – one of *seven* expert witnesses proffered by Defendants – should not be permitted to testify in this case. Mr. Teal's personal knowledge of the purported NetRanger prior art ("NetRanger") render him a *fact* witness, not an *expert* witness. As such, prior to the close of fact discovery, he should have been disclosed as a fact witness, his documents should have been produced, and he should have been made available for deposition. Rather than do that, however, Symantec chose to withhold this information until the last minute by attempting to back-door Mr. Teal's testimony under the pretense of calling him an "expert." Because of its failure to disclose Mr. Teal's existence as a percipient fact witness and provide all relevant information in his possession during fact discovery, Symantec should not be permitted to submit as evidence or rely at trial on any factual statements of Mr. Teal or any documents produced by Mr. Teal beyond the close of fact discovery. Independently, because of the corroboration requirement for oral testimony of alleged prior invention, even if the Court permits Mr. Teal to testify at trial in some limited capacity as a fact witness, he should not be permitted to testify about any aspect of NetRanger that he has not corroborated with documentary evidence. Accordingly, SRI respectfully requests that the court preclude Mr. Teal's testimony.

## II. NATURE AND STAGE OF THE PROCEEDINGS

SRI International, Inc., a California corporation ("SRI"), sued Internet Security Systems, Inc., a Delaware corporation, Internet Security Systems, Inc., a Georgia corporation (collectively, "ISS"), and Symantec Corp., a Delaware Corporation ("Symantec") for infringing U.S. Patent Nos. 6,321,338 ("the '338 patent"), 6,484,203 ("the '203 patent"), 6,711,615 ("the '615 patent"), and 6,708,212 ("the '212 patent") (collectively, "the patents-in-suit"). All fact discovery relevant to the trial on infringement and validity is complete. The parties have exchanged expert reports and have submitted their opening briefs on claim construction. Claim construction and summary judgment hearings are scheduled for August 23, 2006.

1

## III. STATEMENT OF FACTS

On June 15, 2005, Symantec served its Initial Disclosures of "individuals likely to have discoverable information that Symantec may use to support its claims or defenses." [Ex. A[1] at 1]. The Initial Disclosures did not include Daniel Teal among the 56 individuals Symantec listed. [*Id.* at 1-8].

On June 23, 2005, SRI served a First Set of Interrogatories on Symantec. [Ex. B]. Interrogatory No. 6 asked Symantec to "identify the specific statutory bases for the invalidity [of the patents-in-suit]. . ., the factual bases for that contention, any allegedly invalidating prior art or publications, . . . and the three people most knowledgeable about the factual bases for your contention." [*Id.* at 5-6].

**REDACTED**

On November 15, 2005, Symantec served its Second Supplemental Response to SRI's First Set of Interrogatories in which it identified NetRanger as a reference upon which it intended to rely as invalidating prior art. [Ex. D at 6-7]. Symantec did not list Mr. Teal as a person knowledgeable about NetRanger or any other purported prior art reference.

On January 19, 2006, Symantec served its Fourth Supplemental Response to SRI's First Set of Interrogatories in which it again identified NetRanger as a reference upon which it intended to rely as invalidating prior art. [Ex. E at 6-7]. Symantec again did not list Mr. Teal as a person knowledgeable about NetRanger or any other purported prior art reference.

On February 14, 2006, Symantec designated Mr. Teal as a testifying expert witness. Mr. Teal submitted an expert report ("Teal Report") on April 21, 2006. While the report purported to state Mr. Teal's "opinions" concerning the validity of certain

---

[1] All references to Exhibits are Exhibits to the Declaration of Kyle W. Compton in support of this motion.

2

claims of the patents-in-suit, the majority of the report comprises factual exposition concerning the alleged features and functionality, and alleged public use, of NetRanger. Fully 45 out of the 62 paragraphs in the report concern NetRanger, its history, and its operation. [*See generally*, Ex. F].

Fact discovery closed on March 31, 2006. At no time during the fact discovery period was Mr. Teal identified by any party as an individual with relevant factual knowledge, nor were any documents produced by Mr. Teal prior to the close of document discovery, nor was he made available to be deposed as a percipient witness. Instead, on May 12, 2006, and as part of the expert discovery process, SRI served Mr. Teal with a subpoena for documents and a deposition. Mr. Teal, through counsel for Symantec, produced nearly 3,000 pages of documents and several CD's of source code and other software files responsive to the subpoena on May 20, 2006. Only four days later, as part of an overall effort to comply with a June 2 expert discovery cutoff that Defendants insisted upon, SRI deposed Mr. Teal on May 24, 2006.

REDACTED

In his report, Mr. Teal presented several statements about NetRanger that were apparently based on Mr. Teal's memory and were unsupported by references to any recorded evidence. [*See generally*, Ex. F]. For instance, Paragraphs 40-42 contain a description of NetRanger's alleged ability to "provide[] automatic integration and correlation of event/alarm data generated from the analysis of network traffic" without a single citation to evidentiary support. [*Id.* at 13-14]. Other sections concerning the functionality of different versions of NetRanger, its alleged commercial success, and its

3

supposed use by the U.S. government and other customers, are likewise unverified by documentary sources. [*Id.* at 14-15]. In Paragraph 49, the report states, without evidence, that "I remember that some of our customers...purchased NetRanger after they had already purchased the ISS RealSecure product because our system was so reliable." [*Id.* at 16].

At his deposition, Mr. Teal further acknowledged that much of his report derived from his own personal recollections:

> Q. (BY MR. MILLER) When you say you compared the claims to the NetRanger system, what precisely did you compare the claims to? I want to know exactly what you mean by NetRanger system.
> A. I compared the claims to [all of] my knowledge to NetRanger being the original author, architect, original coder of the NetRanger system, being a founder of WheelGroup, going through the user's manuals, refreshing my memory, going through all the documentation that we've discussed here today, and going through that to me it was apparent...that's why I said NetRanger was already doing what I stated NetRanger was already doing.
> Q. Based on your knowledge of the product as a coder of the product, correct?
> A. Correct, based upon my knowledge as the inventor of the system, of the NetRanger system...You know, that also includes my memories of customers using the system.

[Ex. H at 242:8-243:7].

Mr. Teal further testified that he did not "have any documents describing how customers would" use NetRanger to perform "event correlation" but simply that "I know they did it." [*Id.* at 87:7-12]. He claimed to remember various customers performing such functions but admitted "I don't have any proof" or "documents in my possession" that would corroborate his recollection. [*Id.* at 87:18-24]. He later testified that to "the best of [his] recollection", various customers configured NetRanger to enable automatic correlation but that he did not "have copies of those scripts. . . [or] of the SQL queries that they ran." [*Id.* at 95:19-96:5]. Finally, he testified that he "did not have documentation that shows that SQL queries were done automatically" and that he had "no physical evidence...that customers used to" write such scripts. [*Id.* at 168:9-24].

4

In addition, Mr. Teal could not point to any documentary support for his contention that Version 1.3.1 of NetRanger – the version whose user manual Mr. Teal relies upon as invalidating prior art – was sold prior to the critical date of the patents-in-suit. As he testified, "I do not have a document saying Version 1.3.1 was offered for sale." [*Id.* at 192:7-8; *see also*, 189:4-190:9; 197:18-19]. Moreover, Mr. Teal could not identify any evidence of a user manual for Version 1.3.1 being provided to any customers. [*Id.* at 195:11-196:6].

He further testified that he was not aware that he had provided any documentation to support the claim in his expert report that he had sought to integrate a separate product into NetRanger, a combination that he believed rendered the patents-in-suit obvious. [*Id.* at 271:14-25]. He additionally indicated that "I do not have the documentation that would provide combining NetRanger with the statistical analysis detection engine." [*Id.* at 279:20-280:15].

IV. ANALYSIS

### A. Mr. Teal Should Have Been Disclosed as a Fact Witness and Should be Precluded from Presenting Testimony on NetRanger as an Expert

Courts look to Rules 104(a) and 702 of the Federal Rules of Evidence when deciding whether to exclude expert testimony. *See generally*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Rule 104(a) provides: "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b)."

As the court in *Daubert* explained:

> The trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

5

[*Id.* at 592-593].

The party offering the expert testimony bears the burden of establishing admissibility by a preponderance of proof. *Id.* at 592 n.10. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (excluding tire failure analysis expert testimony), the Supreme Court clarified that this gatekeeper function applies to all expert testimony, particularly testimony based on technical and other specialized knowledge. Federal Rule of Evidence 702 was amended following *Kumho* to read as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Third Circuit law[2], the court may exclude expert testimony "if the particular expert does not have sufficient specialized knowledge to assist the jurors." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1238 (3d Cir. 1993). "A witness is not an expert witness merely by virtue of his specialized training and knowledge in a particular field." *Morgan v. U.S. Xpress, Inc.*, 2006 WL 278398, at *2 (M.D. Ga. Feb. 3, 2006) (citing *Fisher v. Ford Motor Co.*, 178 F.R.D. 195, 197 (N.D. Ohio 1998)). Instead, a witness with specialized knowledge and training may be a pure fact witness when he was a direct participant in the events about which he is testifying. *Id.* (citing *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003)).

---

[2] The Federal Circuit applies its own law to substantive patent issues and to procedural issues which pertain to the field of patent law. Otherwise, the Federal Circuit will follow the law of the regional circuit of the district court. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999). Under these general principles, " evidentiary rulings concerning the admissibility of expert testimony are generally governed by the regional circuit law." *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 486 (S.D.N.Y. 2002) (citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999)). However, some courts have ruled that questions of relevance touch on substantive aspects of patent law and, therefore, are governed by the law of the Federal Circuit. *See, e.g., id.*

6

"Whether a witness is a fact witness or an expert witness is not dependent on what label his proponent places on him." *Scientific Image Center Mgmt., LLC v. Brandy*, 2006 WL 827812, at *1 (W.D. Pa. 2006).

The *Gomez* case is especially instructive. There, a municipal lawyer named Piñot held a conversation with the mayor about an employment issue. *Gomez*, 344 F.3d at 108. When both parties sought to call him to testify about the conversation, the district court barred his testimony as an expert witness. *Id.* at 111-12. The First Circuit noted that the definition of an expert witness under Rule 702 and FED. R. CIV. P. 26(a)(2) "does not encompass a percipient witness who happens to be an expert." *Id.* at 113. The court analogized Pinot's situation to a treating physician, whom courts have generally ruled is not an expert witness when "testifying as to his consultation with or treatment of a patient." *Id.* The court then held:

> Like the testimony of a treating physician, Piñot's testimony would have been based on personal knowledge acquired before any litigation had begun. He was an actor with regard to the occurrences from which the tapestry of the lawsuit was woven, and the defendants sought to present his testimony on that basis.

*Id.* Thus, even though Piñot "obviously has specialized knowledge by virtue of his position" as an attorney for the employment agency, "[t]he bottom line is that Piñot was a fact witness, and his first-hand testimony should have been considered under the standards that govern such witnesses." *Id.*

Mr. Teal's situation is quite similar. He intends to testify about the NetRanger software product he helped develop, purportedly more than ten years ago. He is simply a fact witness proffered by Symantec to authenticate and describe a particular piece of prior art. His testimony is based on personal knowledge acquired long before litigation had begun. *See Gomez*, 344 F.3d at 113. Indeed, Symantec needs the admission of Mr. Teal's embellishment of NetRanger's capabilities, which are based on his undocumented personal memories of its development, its alleged pre-critical date use, and on Mr. Teal's

7

"knowledge as the inventor...of the NetRanger system"[3] because the documents themselves fail to provide the required clear and convincing evidence of invalidity.

While Mr. Teal, one of Defendants' seven disclosed experts, appears to be knowledgeable about NetRanger, merely because an individual develops a product does not mean that he should be certified as an "expert" with regard to that product. Such a witness is not providing "scientific, technical, or other specialized knowledge [that] will assist the trier of fact *to understand the evidence* or to *determine a fact* in issue" but is, instead, providing factual evidence himself. FED. R. EVID. 702 (emphasis added). And while Mr. Teal possesses education and experience in the network security realm, his testimony about the development and functionality of NetRanger – particularly where such development and functionality are undocumented – clearly arises from his status as a *fact* witness, not an *expert* witness. *Gomez*, 344 F.3d at 113; *Morgan*, 2006 WL 278398, at *2. Mr. Teal was himself an "actor with regard to the occurrences from which the tapestry" of Symantec's invalidity defense based on NetRanger is woven, and intends to offer percipient testimony about those occurrences. *Gomez*, 344 F.3d at 113.

To the extent Mr. Teal would provide "opinions" concerning the validity of the patents-in-suit in view of NetRanger, such opinions would be irrelevant and inadmissible because they would not aid the jury to understand what the NetRanger references would teach or suggest to *one of ordinary skill* in the art. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 438 (D. Del. 2004) (Jordan, J.) (citing *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1354 (Fed. Cir. 1999)) (rejecting a putative expert who "did not provide any basis for his conclusion that [the claimed invention] would be obvious to one of ordinary skill in the art"). Rather, Mr. Teal's testimony is couched in terms of what he believes, as the designer and inventor of the product, not what the hypothetical person of ordinary skill would understand from the face of the public record. [Ex. H at 242:8-243:7 (invalidity analysis was "based upon my

---

[3] *See* Ex. H at 242:2-243:4.

8

knowledge as the inventor . . . of the NetRanger system.")] *See Corning Inc. v. SRU Biosystems*, 400 F. Supp. 2d 653, 667-668 (D. Del. 2005) (Farnan, J.) (discrediting the opinion testimony of an expert because he and the inventor possessed skill beyond the ordinary level). Because there is a danger that the jury would misunderstand this distinction and thus afford any testimony by Mr. Teal undue weight if he were accorded the label "expert," the Court should decline to qualify Mr. Teal as such and preclude any testimony of his "expert opinions."

SRI therefore respectfully requests that the Court preclude Mr. Teal from presenting testimony as an expert witness.

        **B.**     **Because Mr. Teal is a Fact Witness, Defendants Should Be Precluded from Relying at Trial on Mr. Teal's Testimony or on Any Testimony or Documents Related to NetRanger Produced Beyond the Close of Fact Discovery**

Mr. Teal should have been disclosed by Symantec as a potential testifying fact witness – and made available for deposition and document production – prior to the close of fact discovery. Yet Symantec elected to designate him as an expert, to furnish his report on the day that fact discovery closed, and to provide relevant documents and a deposition only during *expert* discovery. Despite numerous opportunities to disclose Mr. Teal as a percipient witness or even as an individual with knowledge relevant to Symantec's claims or defenses, Symantec withheld his factual knowledge from SRI. That Symantec disclosed Mr. Teal as an expert witness on February 14, 2006 further underscores its failure to identify him as a knowledgeable individual in a Supplemental Initial Disclosure or Interrogatory Response.

REDACTED

This improper withholding of Mr. Teal's identification and documents prevented SRI from conducting full and proper fact

9

discovery upon him. This significant prejudice to SRI warrants Mr. Teal's exclusion from testifying at trial.[4]

Not only did Symantec and Mr. Teal fail to produce his NetRanger documents until long after the close of fact discovery, they did so only in response to a subpoena served by SRI. As Mr. Teal testified, "I did not initially turn over all my files. I did as a result of the subpoena."[5] [Ex. H at 182:2-3]. Symantec is clearly attempting to introduce this factual testimony through the back door, long after the completion of fact discovery, under the pretense of designating Mr. Teal an "expert." Accordingly, Defendants should not be permitted to rely on any Teal or NetRanger documents produced after the close of fact discovery.

Furthermore, Symantec has inappropriately bootstrapped the expert report and testimony of L. Todd Heberlein – another of its three expert witnesses on invalidity – to Mr. Teal's own testimony.

**REDACTED**

Because Defendants other experts purport to rely on facts relevant to NetRanger that they garnered from Mr. Teal's oral explanations, Symantec should have made Mr. Teal and his documents available long before the close of fact discovery, not during expert discovery.

Accordingly, SRI respectfully requests that Defendants be precluded from submitting as evidence or relying at trial on the testimony of Mr. Teal, on any of his

---

[4] In this regard, it bears noting that both Symantec and ISS strenuously objected on grounds of prejudice to the addition of two patent claims that SRI proposed to formally add to the case, despite the fact that that subject matter had formed part of SRI's infringement contentions throughout the course of litigation. [Ex. I]. Defendants argued that "[g]iven the late date, SRI should not be allowed to add new subject matter that cannot be fully investigated during discovery." [*Id.*]. Defendants should be obliged to follow their own rule.

[5] It appears from Mr. Teal's testimony that certain critical materials he now intends to rely upon were, in fact, provided to counsel for Symantec substantially before the close of fact discovery but yet were intentionally withheld from production until response to the subpoena to Mr. Teal. [*See* Ex. H at 211:12-212:14].

10

factual statements related to NetRanger, or on any documents he produced beyond the completion of fact discovery.

### C. If the Court Does Not Strike Mr. Teal's Testimony, He Should Be Precluded from Testifying About Matters Not Corroborated by Admissible Documents

An issued patent is presumed valid under 35 U.S.C. § 282. "An accused infringer, therefore, must prove patent invalidity under the clear and convincing evidentiary standard." *Metabolite Labs., Inc. v. Lab. Corp. Of America Holdings*, 370 F.3d 1354, 1366 (Fed. Cir. 2004). Proof of invalidity under 35 U.S.C. § 102, as with all other bases for invalidity, must be shown by clear and convincing evidence. *See, e.g., Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001) (§ 102(g)); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1367 (Fed. Cir. 1999) (§§ 102(a) and (b)); *Price v. Symsek*, 988 F.2d 1187 (Fed. Cir. 1993) (§§ 102(f) and (g)).

As a general rule, testimony of a purported prior inventor, without more, is insufficient to meet the clear and convincing evidence standard required to invalidate an issued patent. *See Price*, 988 F.2d at 1194-5 (tracing the history of the corroboration requirement and characterizing case law on this issue as "unequivocal"). "'Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information,' and therefore such testimony rarely satisfies the burden upon the interested party, usually the accused infringer, to prove invalidity by clear and convincing evidence." *Finnigan*, 180 F.3d at 1366 (quoting *The Barbed-Wire Patent*, 143 U.S. 275, 284 (1892)). "Mere testimony concerning invalidating activities is received with further skepticism because such activities are normally documented by tangible evidence such as devices, schematics, or other materials that typically accompany the inventive process." *Finnigan*, 180 F.3d at 1366.

The Federal Circuit in *Finnigan* extended the corroboration requirement to public use under Sections 102(a) and 102(b). *Id.* at 1367. The court further required

11

corroboration of the testimony of uninterested witnesses testifying on behalf of interested parties. *Id.* The court held that "[a] witness who testifies to antedating the invention of the patent-in-suit can be expected to derive a sense of professional or personnel [*sic.*] accomplishment in being the first in the field, and in this sense is not uninterested in the outcome of the litigation." *Id.* at 1368. The Federal Circuit reiterated the Supreme Court's "doubt that testimonial evidence alone in the special context of proving patent invalidity can meet the clear and convincing evidentiary standard to invalidate a patent." *Id.* (citing *Deering v. Winona Harvesting Works*, 155 U.S. 286, 300-01 (1894)) In short, "corroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest." *Id.* at 1369.

Here, several key sections of Mr. Teal's expert report lack corroboration. The entirety of Paragraphs 40-42, concerning "automatic integration and correlation" of network traffic data – a crucial feature of the invention disclosed in the patents-in-suit – is devoid of evidentiary support. [Ex. F at 13-14]. Other sections, concerning NetRanger's commercial success and functionality, similarly lack any documentary basis. [*Id.* at 14-15]. Elsewhere, Mr. Teal expressly relies on the fact that he "remember[ed]" aspects of customer use of NetRanger. [*See, e.g., id.* at 16].

During his deposition, Mr. Teal acknowledged that his invalidity analysis relied on his "knowledge as the inventor...of the NetRanger system" and his "memories of customers using the system." [Ex. H at 242:8-243:7]. He also repeatedly conceded that he had no documentation, proof, or evidence of customer use of NetRanger to automatically correlate or integrate network data. [*Id.* at 87:7-12, 18-24; 95:19-96:5; and 168:9-24]. Such an absence of corroboration on this critical aspect of NetRanger's purported functionality infects his testimony with precisely the malady both the Federal Circuit and the Supreme Court cautioned against. *Finnigan*, 180 F.3d at 1366-67.

Mr. Teal's testimony about anticipation and obviousness is likewise tainted by the utter absence of essential documentation. He could not point to any evidence that the

12

NetRanger version whose user manual he relies upon was sold to a single customer. [Ex. H at 189:4-190:9; 192:7-8; 197:18-19]. He was unable even to document any instances of a user manual for Version 1.3.1 being provided to any customers. [*Id.* at 195:11-196:6]. Finally, he testified that he lacked documentation crucial to his contention that the patents-in-suit were obvious. [*Id.* at 271:14-25; 279:20-280:15].

Taken together, Mr. Teal's unsupported contentions simply cannot rise to the level of "clear and convincing" proof needed to invalidate the patents-in-suit. *Finnigan*, 180 F.3d at 1366. Although Mr. Teal is not a party to the suit, he most certainly would derive a sense of professional or personal accomplishment from depicting himself as the originator of SRI's invention. *See id.* at 1368. Mr. Teal himself works in the field of the patents, consulting and developing products, and would potentially benefit by invalidating the SRI patents-in-suit. Mr. Teal has clearly been "prodded by the eagerness" of Symantec to deliver testimony favorable to Defendants – but not trustworthy to the trier of fact. *Id.* at 1366 (quoting *The Barbed Wire Patent*, 143 U.S. at 284). His uncorroborated testimony should therefore be regarded with great skepticism. *Id.* at 1366. Because of the very real danger that the jury will afford Mr. Teal's testimony undue weight that is contrary to legal authority, and because Mr. Teal's unsupported testimony cannot, as a matter of law, support a finding of invalidity, Mr. Teal's testimony regarding his uncorroborated memories should be excluded.

Accordingly, if the Court permits Mr. Teal to testify at all, SRI requests that the Court preclude him from testifying about any aspect of NetRanger that is not corroborated by documentary evidence, as identified above.

///

///

///

13

## V. CONCLUSION

For the reasons stated above, SRI respectfully requests that the Court preclude Mr. Teal from offering any expert testimony in this case. SRI further requests that Defendants be precluded from relying at trial on Mr. Teal's fact testimony or on any testimony or documents related to NetRanger produced beyond the close of fact discovery. In the alternative, SRI requests that the Court preclude Mr. Teal from testifying about any aspect of NetRanger that is not corroborated by documentary evidence.

Dated: June 16, 2006              FISH & RICHARDSON P.C.

By: _____
John F. Horvath (#4557)
FISH & RICHARDSON P.C.
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Howard G. Pollack (CA Bar No. 162897)
Katherine D. Prescott (CA Bar No. 215496)
FISH & RICHARDSON P.C.
500 Arguello St., Ste. 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff/Counterclaim Defendant
SRI INTERNATIONAL, INC.

80034182.doc