K

GEORGE KESIDIS, VOLUME I        MAY 25, 2006

Page 1

UNITED STATES DISTRICT Court

DISTRICT OF DELAWARE

SRI INTERNATIONAL, INC.,
a California corporation

    Plaintiff and
    Counterclaim-Defendant,
vs.                              No. 04-1199 (SLR)

INTERNET SECURITY SYSTEMS, INC.,
a Delaware corporation; INTERNET
SECURITY SYSTEMS, INC., a Georgia
corporation; and SYMANTEC
CORPORATION, a Delaware corporation,

    Defendants and
    Counterclaim-Plaintiffs.   /

DEPOSITION OF GEORGE KESIDIS

VOLUME I

DATE:          May 25, 2006

TIME:          9:13 a.m.

LOCATION:      DAY CASEBEER MADRID & BATCHELDER
               20300 Stevens Creek Boulevard
               Suite 400
               Cupertino, CA 95014

REPORTED BY:   KAREN L. BUCHANAN
               CSR No. 10772

5379fcd1-7246-4de7-a96e-07ab7c2e580c

GEORGE KESIDIS, VOLUME I        MAY 25, 2006

Page 64

| | | |
|---|---|---|
| 11:02:46 | 1 | signature-based attack, would it be relevant to |
| 11:02:46 | 2 | claim 1? |
| 11:02:48 | 3 | MR. POLLACK: Objection. Vague and |
| 11:02:51 | 4 | ambiguous. Claim 1 of the '338? |
| 11:02:52 | 5 | MS. MOEHLMAN: Claim 1 of '338. |
| 11:02:55 | 6 | THE WITNESS: Claim 1 of '338. If a |
| 11:02:57 | 7 | component only used a significant-based attack, would |
| 11:03:14 | 8 | it be relevant to claim 1? Well, let me just -- in |
| 11:03:17 | 9 | answering that question, I'm going to have to stake |
| 11:03:20 | 10 | out an opinion of what "signature" is, what exactly I |
| 11:03:22 | 11 | mean by a "signature-based detection method." And the |
| 11:03:26 | 12 | problem is that there is an uneven meaning to this |
| 11:03:32 | 13 | expression in the literature. And so I'm reluctant to |
| 11:03:34 | 14 | express an opinion about that. |
| 11:03:37 | 15 | The fact is that there may be some attacks |
| 11:03:44 | 16 | when I'm three standard deviations away from the |
| 11:03:50 | 17 | baseline mean that definitely connotes an attack, and |
| 11:03:54 | 18 | it can't be innocuous traffic, then sure, what you |
| 11:03:58 | 19 | essentially have is a statistical story, and it yields |
| 11:04:03 | 20 | a signature, I'm certain, I sound an alert, and I am |
| 11:04:03 | 21 | absolutely certain that there is an attack in play. |
| 11:04:06 | 22 | BY MS. MOEHLMAN: |
| 11:04:08 | 23 | Q. What is your understanding of what the |
| 11:04:13 | 24 | patent specification -- of how the patent |
| | 25 | specification uses the term "signature-based |

5379fcd1-7246-4de7-a96e-07ab7c2e580c

GEORGE KESIDIS, VOLUME I     MAY 25, 2006

Page 65

| | | |
|---|---|---|
| 11:04:17 | 1 | technique"? |
| 11:04:23 | 2 | A.  I think that the patent, for example, in |
| 11:04:33 | 3 | referring to, you know, failed login attempts or |
| 11:04:37 | 4 | pings, and I'm misremembering where in the patent it |
| 11:04:44 | 5 | mentions this, but a classic example of what the |
| 11:04:47 | 6 | patent would call and what's typically called in the |
| 11:04:51 | 7 | literature a signature-based detection rule is three |
| 11:04:54 | 8 | failed login attempts.  And that's know as a |
| 11:04:54 | 9 | signature-based rule. |
| 11:05:05 | 10 | But the truth is that there's two elements to |
| 11:05:06 | 11 | this.  The first is that the fact that a packet to a |
| 11:05:10 | 12 | network monitor will be participating in a failed |
| 11:05:13 | 13 | login attempt may not be evident.  So that, in a |
| 11:05:17 | 14 | sense, is the kind of thing that a network monitor may |
| 11:05:20 | 15 | not -- may have to infer.  It may not actually know. |
| 11:05:24 | 16 | It's more like what a host-based monitor may know, |
| 11:05:28 | 17 | what a network monitor may have to infer for lack of |
| 11:05:30 | 18 | detailed information as to what this packet is |
| 11:05:31 | 19 | actually trying to do. |
| 11:05:34 | 20 | But three failed login attempts may be an |
| 11:05:40 | 21 | attack or the start of an attack.  It may be just an |
| 11:05:42 | 22 | accidental thing.  But it's typically referred to as a |
| 11:05:45 | 23 | signature of something suspicious.  So it's one of |
| 11:05:47 | 24 | those gray areas where you're talking about something |
| | 25 | statistical.  It may actually be even likely that |

GEORGE KESIDIS, VOLUME I      MAY 25, 2006

| | | |
|---|---|---|
| 11:55:32 | 1 | if there is a legal reading of claim 10.  But the way |
| 11:55:36 | 2 | I understand claim 10 is that in addition to deploying |
| 11:55:41 | 3 | network monitors in a particular domain, you're also |
| 11:55:46 | 4 | deploying a hierarchical monitor in that domain. |
| 11:55:48 | 5 | That's the way I read it.  I'm not sure legally what |
| 11:55:48 | 6 | the standard is. |
| 11:55:50 | 7 | MS. MOEHLMAN: |
| 11:55:53 | 8 | Q.  Do you agree or disagree with SRI's proposed |
| 11:56:02 | 9 | construction of network monitor? |
| 11:56:06 | 10 | A.  I had a hand in these constructions, so I |
| 11:56:12 | 11 | would agree.  It's the first -- |
| 11:56:18 | 12 | Q.  And in SRI's construction of network |
| 11:56:21 | 13 | monitor, at the end it says, "Service monitors, |
| 11:56:25 | 14 | domain monitors and enterprise monitors are examples |
| 11:56:27 | 15 | of network monitors."  Do you see that? |
| 11:56:28 | 16 | A.  Mm-hmm. |
| 11:56:39 | 17 | Q.  Do you agree with that? |
| 11:56:39 | 18 | MR. POLLACK:  Objection.  Vague and |
| 11:56:57 | 19 | ambiguous. |
| 11:56:59 | 20 | THE WITNESS:  I think the key thing there is |
| 11:57:06 | 21 | depending on the context of the specific claim.  In |
| 11:57:14 | 22 | the context of the -- of this claim 1, and my plain |
| 11:57:14 | 23 | reading of it, I wouldn't change my previous answer. |
| 11:57:21 | 24 | BY MS. MOEHLMAN: |
| | 25 | Q.  So do you -- |

5379fcd1-7246-4de7-a96e-07ab7c2e580c

GEORGE KESIDIS, VOLUME I    MAY 25, 2006

Page 95

| | | |
|---|---|---|
| 11:57:25 | 1 | A. So in the context of some claims, it may be |
| 11:57:28 | 2 | that domain monitors are referred to as network |
| 11:57:39 | 3 | monitors. But in this specific claim, I think that |
| 11:57:47 | 4 | this definition of network monitor is rather more |
| 11:57:52 | 5 | generic. My reading, literal reading of the claim is |
| 11:57:56 | 6 | that in the second element, the detecting element of |
| 11:58:01 | 7 | claim 1, the network monitor looks at packet traffic |
| 11:58:07 | 8 | and generates reports of suspicious activity. For |
| 11:58:11 | 9 | this specific claim, the hierarchical monitor receives |
| 11:58:14 | 10 | reports of suspicious activity. My understanding of |
| 11:58:24 | 11 | the dependent claim 10 is that if all you were doing |
| 11:58:28 | 12 | was deploying network monitors in the domain, you |
| 11:58:32 | 13 | wouldn't need the dependent claim 10. So -- |
| 11:58:38 | 14 | Q. Is it your understanding that claim terms |
| 11:58:54 | 15 | can be construed differently in different claims? |
| 11:59:07 | 16 | A. Well, certainly not in the same patent. |
| 11:59:11 | 17 | Q. So let me go back to my original question |
| 11:59:14 | 18 | where under the joint claims construction statement |
| 11:59:19 | 19 | that has been marked as Kesidis Exhibit 8, where it |
| 11:59:25 | 20 | states, "Service monitors, domain monitors and |
| 11:59:28 | 21 | enterprise monitors are examples of network |
| 11:59:30 | 22 | monitors," do you agree with that construction, or do |
| 11:59:33 | 23 | you disagree with that construction? |
| 11:59:36 | 24 | MR. POLLACK: Objection. Asked and answered, |
| | 25 | argumentative. |

GEORGE KESIDIS, VOLUME I          MAY 25, 2006

Page 96

| | | |
|---|---|---|
| 11:59:48 | 1 | THE WITNESS:  Well, in the sense that I agree |
| 11:59:53 | 2 | with the construction in a generic sense that these |
| 11:59:58 | 3 | are both network monitors and hierarchical monitors, |
| 12:00:02 | 4 | by which I also include domain monitors in the context |
| 12:00:06 | 5 | of '615, they're ultimately examining, directly |
| 12:00:13 | 6 | examining packet traffic or reports or event streams |
| 12:00:13 | 7 | generated by packet traffic, network traffic data. |
| 12:00:23 | 8 | BY MS. MOEHLMAN: |
| 12:00:25 | 9 | Q.  Do you disagree with it in any sense? |
| 12:00:25 | 10 | MR. POLLACK:  Objection. |
| 12:00:35 | 11 | THE WITNESS:  I think that the domain monitor |
| 12:00:39 | 12 | in this case is -- in my opinion, the domain monitor |
| 12:00:45 | 13 | is something different from a network monitor.  It's |
| 12:00:51 | 14 | something that's instead of looking at packet traffic, |
| 12:00:54 | 15 | it's looking at reports of suspicious activity in the |
| 12:00:54 | 16 | domain.  That's the way I read claim 10. |
| 12:01:01 | 17 | BY MS. MOEHLMAN: |
| 12:01:05 | 18 | Q.  Separate and apart from the claim 10 -- |
| 12:01:08 | 19 | A.  It's in -- you know, called out in this more |
| 12:01:11 | 20 | generic definition of network monitor, I see a domain |
| 12:01:15 | 21 | monitor is different from the network monitor, the |
| 12:01:18 | 22 | specific kind of network monitor that's in play in the |
| 12:01:22 | 23 | detecting element.  So as I see this claim |
| 12:01:26 | 24 | construction, there are different kinds of quote, |
| | 25 | unquote network monitors.  And in the independent |

5379fcd1-7246-4de7-a96e-07ab7c2e580c

GEORGE KESIDIS, VOLUME I        MAY 25, 2006

Page 97

| | | |
|---|---|---|
| 12:01:36 | 1 | claim '615 claim 1, in the detecting element, the |
| 12:01:41 | 2 | network monitor is something that is examining packet |
| 12:01:45 | 3 | data and creating reports of suspicious activity. |
| 12:01:48 | 4 | Q. So it is your opinion that the network |
| 12:01:51 | 5 | monitor called out in claim 1 is not a domain |
| 12:01:52 | 6 | monitor? |
| 12:01:58 | 7 | A. I think that the network monitor called out |
| 12:02:00 | 8 | in claim 1 is -- yeah, is not a domain monitor. |
| 12:02:05 | 9 | That's called out in Claim 10. |
| 12:02:08 | 10 | Q. And is it your opinion that the network |
| 12:02:13 | 11 | monitor called out in claim 1 is not an enterprise |
| 12:02:13 | 12 | monitor? |
| 12:02:16 | 13 | A. The network monitor is not an enterprise |
| 12:02:17 | 14 | monitor, no. |
| 12:02:20 | 15 | Q. Do you understand by this element in claim 1 |
| 12:02:26 | 16 | that the network monitor needs to receive network, |
| 12:02:27 | 17 | raw network traffic data? |
| 12:02:35 | 18 | MR. POLLACK: Okay. Vague and ambiguous. |
| 12:02:35 | 19 | THE WITNESS: The network monitoring called |
| 12:02:35 | 20 | out in claim 1 says, "suspicious network activity |
| 12:02:36 | 21 | based on analysis" -- |
| 12:02:37 | 22 | (Reporter interruption.) |
| 12:02:38 | 23 | THE WITNESS: Sorry. I'm just reading |
| 12:02:41 | 24 | detecting element, "suspicious network activity based |
| | 25 | on an analysis of network traffic data." |

BELL & MYERS, CERTIFIED SHORTHAND REPORTER, INC.   (408) 287-7500

5379fcd1-7246-4de7-a96e-07ab7c2e580c

GEORGE KESIDIS, VOLUME I      MAY 25, 2006

Page 194

| 16:01:36 | 1 | the actual execution, the branch is taken by the |
| 16:01:39 | 2 | finite state machine that's running OSPF, for example, |
| 16:01:43 | 3 | and the entries in the routing information base, and |
| 16:01:47 | 4 | you're able to observe that, and you have a model of |
| 16:01:50 | 5 | it, as well, and you're saying, okay, I'm making a |
| 16:01:54 | 6 | judgment.  This is an abnormal branch; this is a |
| 16:01:57 | 7 | normal branch.  That kind of very detailed, very |
| 16:02:01 | 8 | sophisticated kind of protocol anomaly detection is |
| 16:02:04 | 9 | not possible in a network intrusion detection, in a |
| 16:02:05 | 10 | network sensor. |
| 16:02:08 | 11 | Q.  What is disclosed in the patent exactly that |
| 16:02:12 | 12 | allows you to address the problems associated with |
| 16:02:16 | 13 | detecting intrusions in larger networks? |
| 16:02:26 | 14 | MR. POLLACK:  Objection.  Overbroad, vague |
| 16:02:26 | 15 | and ambiguous. |
| 16:02:28 | 16 | THE WITNESS:  So to respond to that, I would |
| 16:02:32 | 17 | simply enunciate the broad design principles or design |
| 16:02:43 | 18 | objectives of the invention, and that is that the |
| 16:02:52 | 19 | hierarchy, the lowest level at the network service |
| 16:02:57 | 20 | monitor, in the jargon of the patents, to take this |
| 16:03:03 | 21 | torrent of information and create an intermediate |
| 16:03:08 | 22 | event list that the Markush group speaks to, and from |
| 16:03:17 | 23 | that, create reports of suspicious activity and then |
| 16:03:20 | 24 | communicate only those reports to the upper level of |
|  | 25 | the hierarchy.  So what you have is a hierarchy, and |

GEORGE KESIDIS, VOLUME I          MAY 25, 2006

Page 195

| | | |
|---|---|---|
| 16:03:30 | 1 | you have -- each element of the hierarchy is very |
| 16:03:34 | 2 | judicious in the amount of computation it does and the |
| 16:03:42 | 3 | volume of communication that it sends up the ladder. |
| 16:03:45 | 4 | And I think those kinds of considerations are |
| 16:03:50 | 5 | simply not in play in NIDES and JiNao.  And as a |
| 16:03:55 | 6 | result, the statistical techniques, specific |
| 16:04:00 | 7 | statistical techniques you use on the different kinds |
| 16:04:09 | 8 | of data that you're considering in a NIDS -- a network |
| 16:04:13 | 9 | intrusion detection system as opposed to a host-based |
| 16:04:15 | 10 | intrusion detection system are just that:  They're |
| 16:04:16 | 11 | different. |
| 16:04:18 | 12 | MS. MOEHLMAN:  We need to change the tape, so |
| 16:04:20 | 13 | we need to take a break. |
| 16:04:22 | 14 | THE WITNESS:  Oh, I'm sorry. |
| 16:04:23 | 15 | THE VIDEOGRAPHER:  We're going off the |
| 16:04:29 | 16 | record.  The time is 4:04 p.m.  This marks the end of |
| 16:04:37 | 17 | tape number 3 in the deposition of George Kesidis. |
| 16:18:21 | 18 | (Break taken from 4:04 to 4:18 p.m.) |
| 16:18:22 | 19 | THE VIDEOGRAPHER:  We're back on the record. |
| 16:18:25 | 20 | The time is 4:18 p.m.  This marks the beginning of |
| 16:18:25 | 21 | tape No. 4 in the deposition of George Kesidis. |
| 16:18:33 | 22 | BY MS. MOEHLMAN: |
| 16:18:40 | 23 | Q.  Now, you've read a little bit of the |
| 16:18:42 | 24 | RealSecure prior art, have you not? |
| | 25 | A.  Right. |

5379fcd1-7246-4de7-a96e-07ab7c2e580c

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

SRI INTERNATIONAL, INC.,
a California corporation,

          Plaintiff and
          Counterclaim-Defendant,
          vs.                         NO: 04-1199 (SLR)
INTERNET SECURITY SYSTEMS, INC.,
a Delaware corporation; INTERNET
SECURITY SYSTEMS, INC., a Georgia
corporation; and SYMANTEC
CORPORATION, a Delaware corporation,
          Defendants and
          Counterclaim-Plaintiffs.
_____/

DEPOSITION OF GEORGE KESIDIS
VOLUME II

DATE:          Friday, May 26, 2006
TIME:          9:00 A.M.
LOCATION:      DAY, CASEBEER, MADRID & BATCHELDER
               20300 Stevens Creek Boulevard
               Suite 400
               Cupertino, CA 95014

REPORTER:      Patricia Hope Sales, CRR
               CSR License Number C-4423
                    BELL & MYERS
          Certified Shorthand Reporters, Inc.
            50 AIRPORT PARKWAY, SUITE 205
             SAN JOSE, CALIFORNIA 95110
       Telephone: (408) 287-7500 Fax: (408) 294-1211

Page 283

1    claim is referring to a -- an interface between a --

2    say, a third-party network service monitor to the

3    hierarchical monitor.  That is to say, an interface

4    between a network service monitor of one vendor and a

5    hierarchical monitor of another, allowing the network

6    service monitor to meaningfully communicate to the

7    hierarchical monitor for the purposes of -- of

8    detection as described in the independent claim.

9        Q.  What about an API to the network monitor?

10        MR. POLLACK:  Objection.  Vague and ambiguous.

11    BY MS. MOEHLMAN:

12        Q.  Well, let me ask you again:  You disting- --

13    you don't -- you do not believe that the network

14    monitors of claim one are also hierarchical monitors;

15    is that right?

16        MR. POLLACK:  Objection.  Vague and ambiguous,

17    lacks foundation.

18        THE WITNESS:  I -- the network monitors used in

19    the deploying element of claim one are in my opinion

20    what the spec calls "network service monitors."  And

21    the reason why I say that is implicitly in the

22    detecting step, the -- they are looking at network

23    traffic data directly.

24    BY MS. MOEHLMAN:

25        Q.  Okay.  So --

Page 284

1      A.  Whereas the hierarchical monitors implicitly in

2   the automatically receiving step element are looking

3   only at reports of suspicious activity.

4      Q.  Okay.  So now let's go to claim four where it

5   says "wherein the plurality of network monitors,"

6   right?

7          And by that you are interpreting "network

8   monitors" from claim one to be network service

9   monitors?

10     A.  That -- that's correct.

11     Q.  Okay.

12     A.  Yeah.

13     Q.  It says, "The plurality of network monitors

14  include an API for encapsulation of monitor functions."

15         What is that API for encapsulation of monitor

16  functions as to the network service monitors?

17         MR. POLLACK:  Objection.  Asked and answered,

18  vague and ambiguous.

19         THE WITNESS:  I -- I believe that -- I believe

20  this claim is -- is modifying the deploying step of the

21  independent claim to in- -- include on the one hand,

22  for example, modifying the deploying set (sic) of

23  the -- of the --

24         (Reporter clarification.)

25         THE WITNESS:  Sorry.

GEORGE KESIDIS, VOLUME II    MAY 26, 2006

Page 285

1          -- for -- modifying the deploying step of the

2     independent claim, for example, so as to include

3     network monitors from different vendors that may

4     generate reports of suspicious activities in -- in

5     different formats, and in this case adding an interface

6     so as -- an interface that -- that, for example, is --

7     is able to simply translate reports of -- of suspicious

8     activity from one vendor that are interpretable by

9     the -- by the hierarchical monitor -- a hierarchical

10    monitor of another vendor.

11          So they are I believe identifying other objects

12    or processes called "APIs" that are part of the

13    deploying step.

14    BY MS. MOEHLMAN:

15       Q.  You don't read this as requiring that the

16    network service monitors include an API?

17          MR. POLLACK:  Objection.  Vague and ambiguous.

18          THE WITNESS:  You mean whether the API is a

19    necessary part of the network service monitor?

20    BY MS. MOEHLMAN:

21       Q.  Yes.

22       A.  I -- I don't really -- I don't really read that

23    specific limitation in the literal language of the

24    claim.  I -- it's the first time I have considered the

25    question with regard to this claim, and "the plurality

GEORGE KESIDIS, VOLUME II    MAY 26, 2006

Page 286

```
 1    includes," and so it could be that this claim would be

 2    satisfied if there was an API deployed in the network

 3    monitor, or it could be that the API is a separate --

 4    is a separate process or apparatus included in the

 5    plurality.

 6           I'm not sure that -- just reading the language

 7    of the claim with your question in mind for the first

 8    time, that necessarily it implies that the network

 9    monitor itself -- each -- each third-party network

10    monitor needs to include an API.

11    Q.  That -- that wasn't the question.

12    A.  I'm sorry.

13    Q.  Okay?  Do you -- you read the language that

14    says "wherein the plurality of network monitors,"

15    right?  It says "wherein."  It's talking about the

16    plurality of network monitors --

17    A.  Right.

18    Q.  -- identified in claim one.  You understand

19    that, correct?

20    A.  Um-hmm.

21    Q.  Okay.  And it says "network monitors

22    include."  Do you read that language to mean that what

23    follows is going to be part of the network monitors

24    that were referenced in claim one?

25           MR. POLLACK:  Objection.  Asked and answered,
```

Page 328

1      A.  The automatically receiving it?

2          The -- the kind of combination conducted by

3   ISS, that is to say, merely displaying the events at a

4   same console, is -- is not in my opinion what was meant

5   by "integration" in the claim.

6          So I -- I'm assuming that if simply displaying

7   the events as received is construed to be integrating,

8   then I would agree that the -- the "automatically"

9   element would be -- would be met, but I -- I didn't

10  really -- haven't really thought about it too

11  carefully.

12     Q.  Is it your opinion that the RealSecure console

13  in the prior art merely displayed the events as

14  received?

15         MR. POLLACK:  Objection.  Lacks foundation,

16  vague and ambiguous.

17         THE WITNESS:  I believe that for purposes of

18  brevity, that largely identical reports were -- were

19  grouped together for visualization purposes.

20  BY MS. MOEHLMAN:

21     Q.  And by grouping them together, would you

22  consider that to be combining reports received?

23         MR. POLLACK:  Objection.  Vague and ambiguous.

24         THE WITNESS:  Given a -- a plain meaning of the

25  word "combining," sure.

1                  UNITED STATES DISTRICT COURT

2                      DISTRICT OF DELAWARE

3

4

5
   SRI INTERNATIONAL, INC.,
6  a California corporation

7      Plaintiff and
       Counterclaim-Defendant,
8  vs.                                No. 04-1199 (SLR)

9  INTERNET SECURITY SYSTEMS, INC.,
   a Delaware corporation; INTERNET
10 SECURITY SYSTEMS, INC., a Georgia
   corporation; and SYMANTEC
11 CORPORATION, a Delaware corporation,

12     Defendants and
       Counterclaim-Plaintiffs./
13

14            DEPOSITION OF GEORGE KESIDIS

15                    VOLUME III

16

17 DATE:            May 29, 2006

18 TIME:            9:00 a.m.

19 LOCATION:        DAY CASEBEER MADRID & BATCHELDER
                    20300 Stevens Creek Boulevard
20                  Suite 400
                    Cupertino, CA 95014
21
   REPORTED BY:     KAREN L. BUCHANAN
22                  CSR No. 10772

23

24

25

                                                        472

483

1  statistical technique.

2  BY MR. GALVIN:

3      Q.  How could a -- withdraw that.

4          In a statistical technique, would the

5  threshold be empirically determined based on observed

6  activity as opposed to being preset?

7          MR. POLLACK:  Objection.  Vague and

8  ambiguous, lacks foundation.

9          THE WITNESS:  I think certainly if it's --

10  certainly if it's based on empirical activity, it may

11  be hard to classify a particular technique, if the

12  threshold is based on empirical activity as signature.

13  However, if it's not, again, it's one of those gray

14  areas I mentioned earlier, depending on the

15  information that's in play against which you're

16  comparing the threshold, I could see it as being a

17  signature approach or a statistical approach.

18  BY MR. GALVIN:

19      Q.  If a person skilled in the art was trying to

20  determine whether certain activity or a certain

21  technique that they wanted to add to their intrusion

22  detection system fell within the scope of the claims

23  of the SRI patents, particularly, let's say, claim 1

24  of the '212 patent, how would they be able to

25  determine whether this particular technique using

484

1  thresholds fell with -- inside the scope of the claim

2  or outside the scope of the claim?

3       MR. POLLACK:  Objection.  Vague and

4  ambiguous, incomplete hypothetical.

5       THE WITNESS:  Pardon me.  I just want to put

6  claim 1 of the '212 in front of me.

7       I would answer that in the context of this

8  paragraph in column 7 of the '338 patent by, for

9  example, pointing out that I don't think that the

10 input information is the same as what's implicitly in

11 play in the claims for '212, necessarily in play.  I

12 think with reference to statistical detection methods,

13 I think that the kinds of information you're building

14 based on observed network traffic data, the kinds of

15 measures you're taking, such as those listed in the

16 Markush groups of other claims, in and of themselves,

17 the individual packets may be completely innocuous,

18 whereas -- and that really means that the kinds of

19 detections that you -- the kinds of detection

20 techniques that you create using that information tend

21 to be much more statistical in nature than, for

22 example, observing failed login request and saying

23 after three failed login requests, I'm going to trip

24 an alert.  I would refer to the latter as a more

25 signature-based approach -- I'm sorry, as a kind of

486

1    activity.

2    BY MR. GALVIN:

3        Q.  Let's stick with the failed logins.  So I

4    take it you would agree, based on the specification,

5    that a technique that identifies suspicious activity

6    by setting a threshold, let's say three failed

7    logins, would be a signature detection technique?

8            MR. POLLACK:  Objection.  Vague and

9    ambiguous.

10           THE WITNESS:  It's what the patent would --

11   again, reading column 7, it's what the patent

12   specification would call a rudimentary, inexpensive

13   signature analysis technique that involves a

14   threshold.

15   BY MR. GALVIN:

16       Q.  And in -- that example would not be a

17   statistical detection method, correct?

18           MR. POLLACK:  Objection.  Vague and

19   ambiguous.

20           THE WITNESS:  If it's generating a report as

21   a result of the three failed login attempts and

22   calling that report a report of suspicious activity,

23   it would not be termed a statistical method, right.

24   BY MR. GALVIN:

25       Q.  Now, suppose instead of just counting the

1  three failed logins, suppose I decided to set a
2  threshold that stated if the number of failed logins
3  exceeds 5 percent of the total number of logins in a
4  given period of time, I will flag that as suspicious
5  activity.  Is that a statistical detection method or
6  a signature detection method?