IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation,<br><br>    Plaintiff and<br>    Counterclaim-Defendant,<br><br>  v.<br><br>INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, and SYMANTEC CORPORATION, a Delaware corporation,<br><br>    Defendants and<br>    Counterclaim-Plaintiffs. | C. A. No. 04-1199 (SLR)<br><br>**REDACTED** |

**SRI INTERNATIONAL, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE LIVE TRAFFIC ARTICLE IS NOT A SECTION 102(b) PRINTED PUBLICATION**

Dated: June 16, 2006

FISH & RICHARDSON P.C.

John F. Horvath (#4557)
Kyle Wagner Compton (#4693)
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Howard G. Pollack (CA Bar No. 162897)
Katherine D. Prescott (CA Bar No. 215496)
500 Arguello St., Ste. 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff and Counterclaim Defendant
SRI INTERNATIONAL, INC.

I.  **INTRODUCTION**

In an attempt to attack the validity of the patents-in-suit, Defendants rely on a document that simply is not prior art – a draft of the inventors' own "Live Traffic" article submitted to journal reviewers. Via e-mail and temporary posting to an FTP[1] site, a draft of the Live Traffic article was submitted by inventor Phillip Porras for review to selected colleagues, for possible inclusion in an upcoming conference proceeding. The posting of the draft submission on an SRI FTP site was not publicly accessible, as receipt of the specific e-mail identifying the location of the FTP site by its address would have been necessary for anyone to locate it. One of ordinary skill in the art relying on customary research aids (*e.g.,* indexes, search engines) alone and exercising reasonable diligence could not have located the draft submission. Therefore, it was not a "printed publication" within the meaning of Section 102(b) and does not constitute prior art.

II. **NATURE AND STAGE OF THE PROCEEDINGS**

SRI International, Inc. ("SRI") sued Internet Security Systems, Inc., a Delaware corporation, Internet Security Systems, Inc., a Georgia corporation (collectively, "ISS"), and Symantec Corporation ("Symantec") for infringing U.S. Patent Nos. 6,321,338 ("the '338 patent"), 6,484,203 ("the '203 patent"), 6,711,615 ("the '615 patent"), and 6,708,212 ("the '212 patent") (collectively, "the patents-in-suit"). All discovery relevant to the first trial on liability is complete. The parties have exchanged expert reports and have submitted their opening briefs on claim construction. Claim construction and summary judgment hearings are scheduled for August 23, 2006.

III. **STATEMENT OF FACTS**

The '338 patent was awarded on November 20, 2001, on an application filed on November 9, 1998. The '203, '615, and '212 patents are all continuations of the '338 patent, and as such, all of the patents-in-suit share a common specification and priority date. Thus, the critical date for Section 102 (b) references is November 9, 1997.

---

[1] FTP (file transfer protocol) is a protocol used to exchange files over the Internet.

1

In 1997, the Internet Society (ISOC) announced a conference to be held in March of 1998 – the Symposium on Network and Distributed System Security ("SNDSS") – and called for papers. [Ex. A[2]]. ISOC posted a page on its website (http://www.isoc.org) that described the process for submitting papers for consideration for possible presentation at the conference. [Ex. B; Ex. C]. ISOC specified that: "[a]ll submissions and program related correspondence (only) should be directed to the program chair," who was identified as Matt Bishop (of the Department of Computer Science at the University of California at Davis). The email listed for Dr. Bishop was sndss98-submissions@cs.ucdavis.edu. [Id.]. ISOC also specified that "[s]ubmissions must be received by 1 August 1997, and should be made via electronic mail," and that "[a]uthors ... will be notified of acceptance by 1 October 1997. Instructions for preparing camera-ready copy for the proceedings will be sent at that time. The camera-ready copy must be received by 1 November 1997." [Id.]. The instructions implied that only the symposium committee would review the submitted papers. [Id.].

On August 1, 1997, Phillip Porras, one of the named inventors of the patents-in-suit, sent a brief message to Dr. Bishop in an email addressed to sndss98-submissions@cs.ucdavis.edu. [Ex. D at SRIE 0460761].

**REDACTED**

The version of the Live Traffic Paper that was submitted for review by the symposium committee was, in Mr. Porras' words:

**REDACTED**

---

[2] All references to Exhibits are Exhibits to the Declaration of Kyle W. Compton in support of this motion.

2

the submission was selected for publication, a final version of this paper was made available on the SRI website on November 10, 1997, and published in the symposium in March 1998, both after the critical date of November 9, 1997. [Ex. F; Ex. E at 62:14-63:1; 110:5-17]. The published version of the Live Traffic article was incorporated by reference into the specifications of the patents-in-suit. [*See, e.g.,* Ex. G at 12:61-65].

Defendants allege that this paper is prior art, and specifically, that the FTP posting constitutes a printed publication. [Ex. H at 32; Ex. I at 8, Ex. A-5]. Defendants also allege that an html version of the draft submission was made available on SRI's website as of August 25, 1997. [Ex. H at 32; Ex. J]. Defendants do not, however, contend that the e-mail transmission of the draft to Dr. Bishop constituted publication of the draft paper.

## IV.    ANALYSIS

### A.    Legal Standards

#### 1.    Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is available "[i]n a patent case, as in any other." *Knoll Pharm. Co. v. Teva Pharm. USA, Inc.*, 367 F.3d 1381, 1384 (Fed. Cir. 2004).

#### 2.    35 U.S.C. § 102(b) Printed Publication

Under 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent unless ... the invention was patented or described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for patent in the United States." A document is a "printed publication" within the meaning of Section 102(b) "upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter

or art exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation." *Bruckelmyer v. Ground Heaters*, No. 05-1412, 2006 445 F.3d 1374, 1378 (Fed. Cir. 2006) (citing *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981)). When claiming anticipation by a printed publication under Section 102(b), "[t]he party seeking to invalidate patent claims must do so by clear and convincing evidence." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151 (Fed. Cir. 2004) (citing *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1326 (Fed. Cir. 2004)).

"Because there are many ways in which a reference may be disseminated to the interested public, 'public accessibility' has been called the touchstone in determining whether a reference constitutes a 'printed publication' bar under 35 U.S.C. § 102(b)." *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986). "Access involves such factual inquiries as classification and indexing." *Wyer*, 655 F.2d at 226; *In re Cronyn*, 890 F.2d 1158, 1159 (Fed. Cir. 1989); *Hall*, 781 F.2d at 898; *In re Bayer*, 568 F.2d 1357, 1362 (C.C.P.A. 1978). Outside of general indices, in order to satisfy this requirement, the reference must be available by "customary research aids." *Bayer*, 568 F.2d at 1361. If the document "could have been located ...only by one having been informed of its existence ..., and not by means of the customary research aids available," the probability of public knowledge of the contents of the document is "virtually nil" and the reference does not constitute a printed publication. *Bayer*, 568 F.2d at 1362. (citing *In re Tenney*, 254 F.2d 619, 626 (C.C.P.A. 1958)).

A document may qualify as a printed publication under Section 102(b) when "accessibility thereto is restricted to a 'part of the public,' so long as accessibility is sufficient 'to raise a presumption that the public concerned with the art would know of (the invention).'" *Bayer*, 568 F.2d 1357, 1361 (presumption does not arise where access to appellants' thesis was limited to the three members of the reviewing committee). However, the fact that those persons with access to the document could have shown

4

others how to access it does not, without more, create a presumption that the reference was available to the public. *Id.* ("although the board stated that members of the graduate committee could have transmitted the information necessary for obtaining the thesis to others, the record is devoid of any enlightenment concerning that possibility").

### B.  Argument

While the determination of whether a reference constitutes a prior art publication must be made on a case-by-case basis, the evidence that Defendants have identified surrounding the alleged FTP and HTTP posting of the draft Live Traffic article is such that no reasonable jury could find that Live Traffic was publicly accessible before the critical date of November 9, 1997. *See Norian*, 363 F.3d at 1330 (affirming judgment as a matter of law that document did not meet criteria of 102(b) because there was no clear and convincing evidence that it was actually available); *Cronyn*, 890 F.2d at 1159 (noting that "where there are no disputed factual issues, the question whether particular material is a "printed publication" is a question of law). As shown below, Live Traffic cannot constitute a section 102(b) prior art reference.

#### 1.  The draft Live Traffic article temporarily posted at an FTP address is not a printed publication because it was never publicly accessible

Assuming Mr. Porras actually posted a copy of the draft submission of the Live Traffic article at ftp://ftp.csl.sri.com/pub/emerald/ndss98.ps for one week in August 1997, as suggested by his e-mail to Dr. Bishop[3], this FTP posting would not constitute a printed publication as it was not publicly accessible. The most significant factor in assessing "public accessibility" under *Hall* is whether the document in question has been classified and/or indexed such that it can be located by one of ordinary skill in the art with

---

[3] This email is the only evidence Defendants have identified that the article was posted to the FTP site. [Ex. D]. Mr. Porras does not recall doing so. [Ex. E at 111:13-16] and Defendants have not identified any evidence that the document was actually ever uploaded to the specified FTP address or downloaded from it. In view of the clear and convincing standard of proof, SRI submits that these facts alone also compel the granting of this motion.

5

reasonable diligence. *Wyer*, 655 F.2d at 226. Outside of general indices, the reference must be available by "customary research aids." *Bayer*, 568 F.2d at 1361.

Defendants have not identified and cannot identify any evidence that the draft submission of the Live Traffic article placed at the FTP address was ever classified or indexed in any way, by SRI or any other organization. Nor have Defendants identified any other customary research aids, such as search engines,[4] that would have allowed one of ordinary skill in the art exercising reasonable diligence to locate the draft submission during the one week that it was allegedly posted at the FTP address. And there is no evidence that anyone actually accessed the draft article through the FTP site. There is also no evidence that there was any link (whether on the SRI website or on any other website) to the FTP-posted document or any other index of the contents of the FTP site which included the draft submission. Thus there is no evidence of a customary research aid which might have pointed one of ordinary skill in the art exercising reasonable diligence to the FTP location of the draft submission.

As in *Bayer* and *Croyn*, other than dumb luck, the only way one of ordinary skill in the art could have located the draft submission at the FTP site is by having been informed of its existence by either Mr. Porras or those involved in the submission review process such as Dr. Bishop. *See Bayer*, 568 F.2d at 1362; *Cronyn*, 890 F.2d at 1159. In *Bayer*, a thesis was available in a university library if one requested it from the library staff by author, title, or description of its subject matter to the library staff. 568 F.2d at 1358. Additionally, three members of the graduate committee were aware that the thesis was available at the library. *Id.* at 1361. The Court, however, found that the thesis did not constitute a printed publication "since appellant's thesis could have been located in the university library only by one having been informed of its existence by the faculty committee, and not by means of the customary research aids available in the library, the

---

[4] Defendants have identified no evidence that the FTP address was in fact crawled by any search engine and the likelihood of it being crawled, given that the file was only posted at that address, if at all, for one week in August 1997, is negligible.

6

'probability of public knowledge of the contents of the (thesis),' was virtually nil." *Id.* at 1362 (citing *In re Tenney*, 254 F.2d 619, 626 (C.C.P.A. 1958)). Here, unless one was informed of the FTP posting by Mr. Porras or Dr. Bishop, one would have had even less of a chance of finding the FTP posting than of finding the thesis in *Bayer*. In *Bayer*, at least one could have requested it by author's name or even a subject matter description. *Id.* at 1358. Here, the draft submission could only be "requested" by specifying its complete FTP address (ftp://ftp.csl.sri.com/pub/emerald/ndss98.ps) which bears no discernable relationship to either its author or the nature of its specific subject matter.

In *Croyn*, the documents at issue were theses that were available both in a main college library and in a departmental library. The theses were even indexed at both locations by author and title. 890 F.2d 1158, 1159. Nevertheless, the Federal Circuit found that they were not publicly accessible as they were not indexed in a meaningful way – by subject matter or other means such that they were reasonably accessible to the public. *Id.* at 1159, 1161. Here, Defendants cannot point to any index whatsoever, so it is not even necessary to reach the question of whether the index is meaningful. Additionally, like the index in *Croyn*, the FTP address at which the draft submission was allegedly posted is not meaningful in that it does not identify the technical subject matter of the article. Just like the theses in *Bayer* and in *Croyn*, the FTP posting of the draft submission could not have been located by one of ordinary skill using customary research aids and reasonable diligence and therefore it was not publicly accessible.

A document can be considered publicly accessible where "accessibility thereto is restricted to a 'part of the public,' so long as accessibility is sufficient 'to raise a presumption that the public concerned with the art would know of [it].'" *Bayer*, 568 F.2d 1357, 1361. In *Bayer*, the presumption did not arise where access to the thesis was limited to three members of the reviewing committee who could have located it in a library where it was uncatalogued and unshelved. *Id.* Similarly, Mr. Porras submitted the Live Traffic Paper to the symposium committee for review. The paper was made

available only to those members responsible for reviewing it for possible inclusion, and the understanding of both Mr. Porras and the committee was that the version of the paper which was submitted for review was not the "camera-ready version." [Ex. E at 103:24-104:13; Ex. A]. Even the fact that the committee members with access to the document could have shown others how to access it does not, without more, create a presumption that the document was available to the public. *Bayer*, 568 F.2d at 1361 ("although the board stated that members of the graduate committee could have transmitted the information necessary for obtaining the thesis to others, the record is devoid of any enlightenment concerning that possibility"). Here there is nothing to suggest that Dr. Bishop forwarded the e-mail in question or showed others how to access the FTP site. Moreover, it is notable that Defendants do not argue that e-mailing the draft submission itself constituted publication. Access to the FTP site was limited to the same set of people who would have had access to the e-mail, because only by receiving the e-mail would one have been able to locate the draft submission at the FTP address.

2. **The purpose of posting at the FTP address – for private review for future publication – is inconsistent with the § 102(b) bar**

"Intent to make public" and "activity in disseminating information" in the alleged publication are also factors to consider in determining whether a document constitutes a statutory bar under section 102(b). *Wyer*, 655 F.2d at 227. Here, Mr. Porras sent one email to a single person for the purpose of submitting a draft paper for consideration for presentation at the March 1998 symposium. [Ex. D at SRIE 0460761]. In that e-mail, he provided the body of the Live Traffic Paper in postscript format and an address for the temporary FTP location of that same document. *Id.* Mr. Porras was simply submitting this draft paper pursuant to the ISOC procedures for private consideration for potential future publication. Mr. Porras explained:

**REDACTED**

**REDACTED**

[Ex. E at 103:24-104:13]. The fact that Mr. Porras submitted this draft in two formats – via e-email and via an FTP posting – does not change his intent to privately submit a document for what he understood to be confidential consideration for future publication.

    3.    **Defendants cannot produce clear and convincing evidence that an html version of Live Traffic was available on SRI's website as of August 25, 1997**

Defendants also allege that an html version of the draft submission was posted to the SRI website as of August 25, 1997. The only evidence that they identify in support of this allegation is an SRI document entitled "The EMERALD Project." [Ex. J]. This document cannot constitute clear and convincing evidence that the draft submission of the Live Traffic Paper was actually posted to the publicly accessible SRI website as of August 25, 1997. The document was not authenticated or adopted by any SRI witness, and Mr. Porras specifically testified that he did not recognize it. [Ex. E at 111:24-112:2] There is nothing in the single-page document that indicates in any way that the Live Traffic Paper was actually uploaded to the SRI external website as of August 25, 1997. There is nothing on the face of the document or elsewhere in the record to indicate that the "EMERALD project" document was itself actually posted on a public web page as of a date prior to the critical date or ever. There is not even a URL address on the document. This document could have easily been a draft that was never completed or uploaded to the web. Also, it could have been posted to an SRI-internal website, as opposed to SRI's external-facing, public website. Not only is there no clear and convincing evidence that this document or the Live Traffic Paper were available on the web, the evidence actually suggests otherwise. The Internet Archive Wayback Machine archives material posted on the Internet. As searched by Symantec for the purposes of this case, the Wayback Machine archived the contents of the http://www.csl.sri.com (the

public website for SRI's Computer Science Laboratory) on December 26, 1996, February 4, 1997, July 5, 1997 and December 11, 1997 [Ex. K], yet Defendants have not produced any version of the "The EMERALD Project" document posted during that entire time period or a version of the Live Traffic Paper posted prior to the critical date.

Even if "the EMERALD Project" document was posted – and there is no evidence that it was – there is no indication that the phrase "<u>Live Traffic Analysis of TCP/IP Gateways</u>" appearing on the document was a working link or that it was linked to the draft submission in question here as opposed to just an abstract of the paper, draft slides, or some other document bearing the same title. In fact, Mr. Porras testified that his general practice is <u>not</u> to publicly disclose or post articles while they are under submission and that although he was the person at SRI responsible for posting EMERALD information on the web, he does not remember the page in question being posted. [Ex. E at 102:24-104:13; 111:24-112:23].

Accordingly, based on the undisputed facts, Defendants cannot meet their burden to establish by clear and convincing evidence that the Live Traffic Paper is prior art.

## V.    CONCLUSION

For the foregoing reasons, SRI respectfully requests that Court grant partial summary judgment that the Live Traffic article does not constitute a section 102(b) printed publication.

10

Dated: June 16, 2006    FISH & RICHARDSON P.C.

By: _____
John F. Horvath (#4557)
Kyle Wagner Compton (#4693)
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Howard G. Pollack (CA Bar No. 162897)
Katherine D. Prescott (CA Bar No. 215496)
FISH & RICHARDSON P.C.
500 Arguello St., Ste. 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff/Counterclaim Defendant
SRI INTERNATIONAL, INC.

50352581.doc

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2006, I electronically filed the **PUBLIC VERSION** of **SRI INTERNATIONAL, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE LIVE TRAFFIC ARTICLE IS NOT A SECTION 102(b) PRINTED PUBLICATION** with the Clerk of Court the attached document using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel.

| | |
|---|---|
| Richard L. Horwitz<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>1313 North Market Street, 6th Floor<br>P.O. Box 951<br>Wilmington, DE  19899 | Attorneys for Defendant-<br>Counterclaimant<br>Internet Security Systems, Inc., a Delaware corporation, and Internet Security Systems, Inc., a Georgia corporation |
| Richard K. Herrmann<br>Morris James Hitchens & Williams<br>PNC Bank Center<br>222 Delaware Avenue, 10th Floor<br>P.O. Box 2306<br>Wilmington, DE  19899-2306 | Attorneys for Defendant-<br>Counterclaimant<br>Symantec Corporation |

/s/ *John F. Horvath*
John F. Horvath

80034097.doc

Theresa A. Moehlman
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Defendant-Counterclaimant
Internet Security Systems, Inc., a Delaware Corporation, and Internet Security Systems, Inc., a Georgia Corporation

_____
John F. Horvath