IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation, <br><br> Plaintiff and Counterclaim-Defendant, <br><br> v. <br><br> INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, and SYMANTEC CORPORATION, a Delaware corporation, <br><br> Defendants and Counterclaim-Plaintiffs. | C. A. No. 04-1199 (SLR) <br><br><br><br> **REDACTED** |

**SRI INTERNATIONAL, INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO ANTICIPATION
BY COMBINATIONS OF REFERENCES**

Dated: June 16, 2006

FISH & RICHARDSON P.C.

John F. Horvath (#4557)
Kyle Wagner Compton (#4693)
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Howard G. Pollack (CA Bar No. 162897)
Katherine D. Prescott (CA Bar No. 215496)
FISH & RICHARDSON P.C.
500 Arguello St., Ste. 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff and Counterclaim Defendant
SRI INTERNATIONAL, INC.

## TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................. 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ............................... 1

III. BACKGROUND ................................................................................... 2

IV.  ARGUMENT ........................................................................................ 2

     A.   Legal Standards ......................................................................... 2

     B.   None of the alleged host documents incorporates any
          material by reference, as none either uses the phrase
          "incorporated by reference" or particularly identifies any
          material to be incorporated ....................................................... 4

     C.   NetStalker and HP OpenView cannot be treated as a
          single reference ......................................................................... 8

     D.   Public use is not at issue here ................................................... 9

V.   CONCLUSION .................................................................................... 12

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Display Sys., Inc. v. Kent State Univ.,*
   212 F.3d 1272 (Fed. Cir. 2000)......................................................... 3, 4, 5, 7

*Allied Colloids Inc. v. American Cyanamid Co.,*
   64 F.3d 1570 (Fed.Cir. 1995)................................................................ 10

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)................................................................................ 3

*Connell v. Sears Roebuck & Co.,*
   722 F.2d 1542 (Fed. Cir. 1983).............................................................. 2

*Finnigan Corp. v. ITC,*
   180 F.3d 1354 (Fed. Cir. 1999)............................................................. 11

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.,*
   2006 WL 1469517, *18 (N.D.Cal. 2006) ............................................... 3

*In re Saunders,*
   444 F.2d 599 (C.C.P.A. 1971) .............................................................. 4

*Invitrogen Corp. v. Biocrest Mfg., L.P.,*
   424 F.3d 1374 (Fed. Cir. 2005)............................................................. 3

*Nat'l Latex Prods. Co. v. Sun Rubber Co.,*
   274 F.2d 224 (6th Cir. 1959) ................................................................ 4

*Quaker City Gear Works, Inc. v. Skil Corp.,*
   747 F.2d 1446 (Fed. Cir. 1984)............................................................. 4

*Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.,*
   127 F.3d 1065 (Fed. Cir. 1997)............................................................. 3

*W.L. Gore & Assoc., Inc. v. Garlock, Inc.,*
   721 F.2d 1540 (Fed. Cir. 1983)............................................................. 9

## Statutes

35 U.S.C. § 102................................................................... 1, 2, 3, 9, 11

35 U.S.C. § 282 (2000) ............................................................................ 2

FED. R. CIV. P. 56(c) .............................................................................. 3

ii

## I.    INTRODUCTION

Defendants and their experts make many allegations that the claims of the patents-in-suit are "anticipated." However, these allegations are facially defective as a matter of law and must be summarily rejected because they rely on impermissible *combinations* of references, in contradiction to black-letter patent law. Defendants' assertion that the combination of academic articles and the supporting documents to which they cite constitute single prior art references for anticipation is incorrect as a matter of law.

The standard for assessing whether a document has been sufficiently incorporated by reference to be treated as a "single" reference under 35 U.S.C. § 102 is high and is not met here. None of the documents into which incorporation is sought (the "host" documents) uses the phrase "incorporation by reference" or equivalent language. Nor do the host documents identify particular portions of the allegedly incorporated documents, either by citing page ranges, sections of the documents, or otherwise. Instead, as is customary in technical and scientific writing, the host documents cite to earlier documents to provide general background information, description of earlier research, discussion of the problems to be addressed and, in some cases, to distinguish the prior work. This customary treatment does not constitute legal incorporation by reference. SRI therefore seeks summary judgment rejecting Defendants' allegations of "anticipation" by such impermissible combinations of references, including those combinations identified below and summarized in the attached Exhibit A.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

SRI International, Inc. ("SRI") sued Internet Security Systems, Inc., a Delaware corporation, Internet Security Systems, Inc., a Georgia corporation (collectively, "ISS"), and Symantec Corporation ("Symantec") for infringing U.S. Patent Nos. 6,321,338 ("the '338 patent"), 6,484,203 ("the '203 patent"), 6,711,615 ("the '615 patent"), and 6,708,212 ("the '212 patent") (collectively, "the patents-in-suit"). All fact discovery relevant to the first trial on liability is complete. The parties have exchanged expert

1

reports and have submitted their opening briefs on claim construction. Claim construction and summary judgment hearings are scheduled for August 23, 2006.

## III.    BACKGROUND

As set forth in the summary chart attached as Exhibit A, Defendants repeatedly attempt to treat combinations of multiple documents as a single reference for purposes of 35 U.S.C. § 102(b) anticipation. In one particularly egregious example, Mr. Heberlein renders an opinion of anticipation based on the combination of *five* references, arguing that ISM[1] incorporates by reference both DIDS Feb. 1991[2] and DIDS Oct. 1991[3], which in turn allegedly incorporate by reference NSM 1990[4] and NSM 1991.[5] [Heberlein Report at ¶ 177; Ex. B at ¶ 1]. None of the alleged "host documents" identified by Defendants uses the phrase "incorporated by reference" or any variant thereof with respect to the documents that they allegedly incorporate. Nor do the "host documents" point to particular material of interest in the secondary documents. Rather, they cite for background purposes to the entirety of these documents for their discussion of earlier research efforts addressing the general field of computer intrusion detection.

## IV.    ARGUMENT

### A.    Legal Standards

An issued patent is presumed to be valid. 35 U.S.C. § 282 (2000). A party attempting to demonstrate invalidity must do so by clear and convincing evidence. *Connell v. Sears Roebuck & Co.*, 722 F.2d 1542, 1549 (Fed. Cir. 1983). This same standard of proof also applies in the summary judgment context. *Invitrogen Corp. v.*

---

[1]  Heberlein, et al., "Internetwork Security Monitor: An Intrusion-Detection System for Large-Scale Networks" [Ex. G].

[2]  Herberlein, et al., "Intrusion Detection Systems (IDS): A Survey of Existing Systems and A Proposed Distributed IDS Architecture" Feb. 1991 [Ex. E].

[3]  Herberlein, et al., "DIDS (Distributed Intrusion Detection System) – Motivation, Architecture, and An Early Prototype" Oct. 1991 [Ex. F].

[4]  Herberlein, et al., "A Network Security Monitor" 1990 [Ex. C].

[5]  Herberlein, et al., "Towards Detecting Intrusions in a Networked Environment," Proc. 14th Department of Energy Computer Security Group Conference, pp. 17.47-17.65, May 1991 [Ex. D].

*Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Invalidity by anticipation under § 102(b) requires that "the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *See Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). Material not contained in the single, prior art document may only be considered for purposes of anticipation if the requirements for incorporation by reference are met. *Id.; see also Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.*, 127 F.3d 1065, 1069 (Fed. Cir. 1997).[6]

To incorporate a document by reference, the host document must cite any incorporated material "in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein." *See Advanced,* 212 F.3d at 1283. The host document must include the language "incorporation by reference." *See In re De Seversky*, 474 F.2d 671, 673-674 (C.C.P.A. 1973) (refusing incorporation where no "incorporation-by-reference" language existed in the application); 37 C.F.R. 1.57(b)(1) (patent specification must "[e]xpress a clear intent to incorporate by reference by using the root words 'incorporat(e)' and 'reference' (*e.g.,* 'incorporate by

---

[6]    As an initial matter, it is unclear that the incorporation by reference doctrine can even be relied upon by defendants in this context. The only binding authority from the Federal Circuit and predecessor courts addresses incorporation by reference solely in the context of patents or patent applications as the "host document." Such incorporation is provided for expressly by regulation. Thus, seeking to apply incorporation by reference here, the Defendants are implicitly seeking an extension of this law. While SRI is aware of a single district court case applying incorporation by reference outside the context of a patent specification, that case is not binding and clearly distinguishable on its facts from the situation before this Court. *See, Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1469517, *18 (N.D.Cal. 2006).

reference').") The host document must also identify with "detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents." *Advanced*, 212 F.3d at 1282; *see also Seversky*, 474 F.2d at 674 (providing that incorporation by reference requires a statement "clearly identifying the subject matter which is incorporated and where it is to be found"); *In re Saunders*, 444 F.2d 599, 602-03 (C.C.P.A. 1971) (reasoning that a rejection for anticipation is appropriate only if one reference "expressly incorporates a particular part" of another reference); *Nat'l Latex Prods. Co. v. Sun Rubber Co.*, 274 F.2d 224, 230 (6th Cir. 1959) (requiring specific reference to material in an earlier application for that material to be considered part of a later application).

Whether and to what extent material has been incorporated by reference into a host document is a question of law. *See Advanced*, 212 F.3d at 1282-1284, *citing Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1453-54 (Fed. Cir. 1984).

**B.    None of the alleged host documents incorporates any material by reference, as none either uses the phrase "incorporated by reference" or particularly identifies any material to be incorporated**

Defendants cannot show that any of the alleged "host" documents incorporates any other material by reference such that a combination of disparate references can be the basis for Defendants' anticipation arguments. Not a single one of the alleged host documents uses the required phrase "incorporated by reference" or any variant thereon. [Exs. C-N]. Moreover, when citing to other articles, none of the alleged host documents identifies with particularity any specific material in those articles. The alleged "host documents" just cite to the entirety of the other articles, along with similar citations to many other additional articles in the field that are not relied upon by Defendants here. As is customary in technical and scientific writing, these documents are cited to refer readers to discussion of problems to be addressed and others' past and present approaches, considered both good and bad by the authors, to those problems, not to incorporate the documents by reference.

4

For example, Mr. Heberlein argues that the "DIDS references"[7] anticipate the patents-in-suit, but relies on the combination of two DIDS references further incorporating an article NSM 1990. [Ex. B at ¶165; Ex. O at 1]. Mr. Heberlein asserts that NSM 1990 is incorporated by reference into the DIDS references based on his assertion that "NSM was the LAN monitor being used" by DIDS.[8] [Ex. B at ¶ 152]. Mr. Heberlein's assertion does not reflect any "statement" in either DIDS article; it is based on mere citation and on a statement made by Mr. Heberlein, Defendants' expert in this litigation. Nor does Mr. Heberlein point to any use of the phrase "incorporated by reference" or variant thereon in either DIDS article. The citations to NSM 1990 that are made in the DIDS articles are cursory. They are not made with the requisite level of particularity or specificity. In fact, NSM 1990 is cited in the DIDS articles merely as earlier work for purposes of comparison to DIDS. [Ex. E at SYM_P_0069280 (describing NSM as "previous work"), SYM_P_0069292; Ex. F at SYM_P_0077175 (referring to NSM as "work . . . being done elsewhere," and as "our own earlier" work), SYM_P_0077177, SYM_P_0077179]. Also, NSM 1990 is just one of dozens of documents cited in such a manner in the DIDS articles – clearly not all of these cited documents can be incorporated by reference yet, according to defendants' logic, they must be. This position is nonsensical, and shows that Defendants have failed to provide clear and convincing evidence that either of the DIDS articles cites NSM 1990 in a manner that makes clear that NSM 1990 is "effectively part of the host document as if it were explicitly contained therein." *See Advanced,* 212 F.3d at 1283.

This lack of clear and convincing evidence is underscored by the fact that Defendants' own experts, two of which have read and rely on the DIDS references, do

---

[7]    Mr. Heberlein's anticipation argument is already flawed in that he treats two distinct references, DIDS February 1991 [Ex. E] and DIDS October 1991 [Ex. F] as a single document. [ **REDACTED** He provides no basis in his report **REDACTED** for treating these two documents, one of which is a survey article and one of which focuses on DIDS, and which were published six months apart, as a single document.

[8]    Mr. Heberlein's citations to DIDS Oct. 1991 [Ex. F] do not actually support this point.

5

not even agree that they incorporate NSM 1990 by reference. While, as discussed above, Mr. Heberlein contends they do, Dr. Staniford (ISS's expert) does not. Dr. Steniford instead makes the legally permissible (though still factually incorrect) argument that one would be motivated to combine NSM 1990 and the DIDS references and that the claims are allegedly obvious, but not anticipated, by this combination. [Ex Q at 72].

Mr. Heberlein also contends that his ISM article incorporates the DIDS Oct. 1991 article[9] by reference (and also therefore incorporates by reference NSM 1990, as that is allegedly incorporated by reference into the DIDS article), because "ISM cites DIDS" and because ISM purports to extend DIDS into arbitrarily wide networks. [Ex. R at 1, citing Ex. G at SYM_P_0069245, SYM_P_0059246, SYM_P_00692531]. The citations identified by Mr. Heberlein again fail to satisfy the legal standard for incorporation by reference. Mr. Heberlein does not identify any use of the phrase "incorporate by reference" nor does he identify citation in ISM to particular or specific material in either of the DIDS references, let alone the NSM paper.[10] ISM does not cite to the DIDS articles to incorporate them by reference; rather, ISM cites to the DIDS articles, along with many others, as a background description of the state of the art upon which ISM sought to improve. [Ex. G at SYM_P_0069244-45]. This fails to meet the legal standard for incorporation by reference.

Again relying on mere citation to background material as incorporation by reference, Mr. Heberlein opines that EMERALD 1997[11] incorporates both NIDES 1994[12]

---

[9]   Mr. Heberlein does not state which of the two DIDS articles is allegedly incorporated, but the ISM excerpt which he cites makes reference to DIDS Oct. 1991.

[10]   This is particularly problematic for DIDS Feb. 1991 given that it is a survey article describing multiple intrusion detection systems besides DIDS.

[11]   Porras, et al., "Emerald: Event Monitoring Enabling Responses to Anomalous Live Disturbances" 1997 [Ex. J].

[12]   H.S. Javitz and A. Valdes, "The NIDES Statistical Component Description and Justification," Annual Report A010, SRI Project 3131, Contract N00030-92-C-0015, Mar. 7, 1994 [Ex. K].

and Intrusive Activity 1991.[13]  [Ex. B at ¶¶ 262-264; Ex. J at SYM_P_0068837;

SYM_P_0068842].  Like the alleged "host documents" discussed above, EMERALD

1997 only cites to NIDES 1994 and Intrusive Activity 1991 as part of its description of

previous work in the field, not to incorporate either document by reference.  [*Id.* at

SYM_P_0068837 (contrasting NIDES and EMERALD), at SYM_P_0068842

(characterizing Intrusive Activity 1991 as one of "various other efforts" that is directed to

signature-based analysis)].  EMERALD 1997 neither identifies any particular material

within NIDES 1994 or Intrusive Activity 1991 for incorporation nor uses the phrase

"incorporation by reference" or any variation thereon.  Thus, there is no basis to conclude

that NIDES 1994 or Intrusive Activity 1991 is incorporated by reference into EMERALD

1997, and the three references together do not, as a matter of law, support an allegation of

anticipation.

**REDACTED**     Heberlein set forth even more tenuous facts in support of

argument that HP OpenView incorporates Requests for Comment ("RFCs") 1155, 1157,

1213, and 1217[14] by reference.  [Ex. S at 1;          .  HP OpenView makes only

passing mention of RFCs 1213 and 1217.  It never even mentions RFCs 1155 and 1157,

which Mr. Heberlein argues are also incorporated by reference.  Thus, nowhere in HP

OpenView is it "made clear" that the text of the RFCs is intended to be incorporated into

HP OpenView as if it were explicitly contained therein.  *See Advanced,* 212 F.3d at 1283.

HP OpenView neither uses the phrase "incorporate by reference" with respect to the

RFCs nor otherwise refers to any particular material in the RFCs.

---

[13]   L.T. Heberlein, B. Mukherjee, K.N. Levitt, "A Method to Detect Intrusion Activity in
a Networked Environment," Proc. 14th National Computer Security Conference, pp.
362-371, Oct. 1991 [Ex. L].

[14]   RFCs, described more fully below, are a series of publicly-maintained notes about the
Internet.  *See,* RFC 1157, "A Simple Network Management Protocol (SNMP)," May
1990.  RFC 1155, "Structure and and Identification of Management Information for
TCP/IP-based Internets," May 1990.  RFC 1213, "Management Information Base for
Network Management of TCP/IP-based Internets: MIB-II," Mar. 1991.  RFC 1271,
"Remote Network Monitoring Management Information Base," Nov. 1991 [Ex. S].

7

Moreover, to suggest that HP OpenView incorporates RFCs that are not even mentioned suggests the absurd conclusion that it must incorporate all of the nearly 4000 RFCs. [Ex. U]. RFCs are a series of notes, started in 1969, about the Internet. [Ex. V]. These notes discuss many aspects of computer communication and include a trove of history about the development of communication protocols, from which modern Internet technology was derived. *Id.* Nowhere does HP OpenView suggest incorporating any RFCs.

In sum, the alleged host documents relied on by Defendants cite to other documents only as background information. They do not do so with particularity, nor do they use the required "incorporated by reference" language. Defendants thus have not provided any evidence, let alone the required clear and convincing evidence, that any of the alleged "host documents" incorporated by reference the additional material relied upon by Defendants' so-called "anticipation" arguments. *Carella,* 804 F.2d at 135.

## C.    NetStalker[15] and HP OpenView[16] cannot be treated as a single reference

Defendants' experts offer no legally recognized basis for treating the combination of HP OpenView and NetStalker 1996 as a single reference. Defendants' experts do not allege that NetStalker 1996 incorporates HP OpenView by reference or *vice versa.* Rather, Mr. Heberlein **REDACTED** strive to achieve the same result – treatment of two disparate reference as one – by alleging that both were on sale prior to November 9, 1997, and alleging that they worked together through SNMP traps, and that use[17] of the

---

[15]    NetStalker "Installation and User's Guide, Version 1.0.2 (1996) [Ex. N].
[16]    "HP OpenView For Windows®, User Guide for Transcend Management Software, Version 6.1 for Windows® and '97 for Windows NT®" [Ex. M].
[17]    Mr. Heberlein opines that the two disclosed systems are "used together" merely because they both are able to communicate via the SNMP messaging protocol. But SNMP is a generic protocol lacking any specific linking to either HP OpenView or NetStalker 1996. Even though this may suggest the two products could, in theory, be used together, such speculation cannot form the basis of an anticipation absent clear and convincing evidence of an actual public use of the combined products exhibiting all the limitations of a claimed invention.

8

two [NetStalker 1996 and HP OpenView] together act as § 102(b) art.     **REDACTED**

There is, however, no evidence of actual use of the two systems together, and

absent incorporation by reference, which is not even alleged, anticipation can only be

based on "the four corners of a single, prior art document." *Advanced*, 212 F.3d at 1282.

Thus, NetStalker 1996 and HP OpenView, as a matter of law, cannot be combined for

purposes of a §102(b) analysis.

**D.     Public use is not at issue here**

Defendants may attempt to argue in response to this motion that they are really

relying on the combinations of references to collectively describe a "system" that was

allegedly in public use prior to the critical date. It is true that, when invalidity analysis

under 35 U.S.C. § 102(b) revolves around the public use of a prior art system,

publications describing that system's features and functionality may sometimes be

properly considered collectively. However, that is not the present context. Here,

Defendants' experts' opinions do not rely on any evidence of actual public use.

Mr. Heberlein's report contains only several unsupported, conclusory assertions

of "public use" of the systems described in various prior art publications. To date,

Defendants have not produced, nor has SRI had the opportunity to inspect, any of the

alleged "systems" described in the prior art publications on which Mr. Heberlein relies.[18]

Furthermore, Defendants have not provided any documentary evidence, such as invoices

---

[18]  It should be noted that the majority of the references at issue here relate to academic
research in intrusion detection. Even if there were some actual evidence of, for
example, use of DIDS at U.C. Davis – and there is none – it is questionable whether
use in an academic research lab can even be "public use" under the existing law. *See
W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540 (Fed. Cir. 1983) (third-party
(*i.e.* by other than patentee) use does not constitute "public use" where there is no
evidence that the public could learn the invention from the alleged public use). In
*W.L. Gore*, the Federal Circuit held that a third party's secret exploitation of a process
for commercial gain, more than one year before the patent application of another, was
not a § 102(b) public use bar. *Id.* at 1550. Here, there is no evidence that the U.C.
Davis group even attempted to exploit DIDS or GrIDS commercially, rather, the use
of their system was limited to their research lab. Further, Defendants have offered no
evidence that any public user even saw the system let alone could learn the relevant
claimed details of SRI's patents from viewing the alleged prior art prototype systems

9

and shipping labels, news articles, photographs of demonstrations, etc., to support any of

the public use alleged by Mr. Heberlein.

**REDACTED**

For example, Mr. Heberlein's report asserts that DIDS was in public use. [Ex. B

at ¶166]. But Defendants failed to produce DIDS or its source code, and Mr. Heberlein's

report fails to point to any documentary evidence in support of his assertion.

**REDACTED**

Mr. Heberlein's report includes similarly unsupported assertions of public use

regarding GrIDS, HP OpenView combined with the RFCs, and HP OpenView combined

with NetStalker 1996. [Ex. B at ¶¶ 210, 318 and 328]. Again, Defendants failed to

produce any of these systems or any source code from them, and Mr. Heberlein's report

fails to cite any documents in support of his "public use" allegations.

**REDACTED**                                       Nor did Mr.

Heberlein, Dr. Stamford or                     review, rely on or produce any source code or

---

[19] Even if defendants could meet their burden to establish that there was a use of DIDS
at Davis that was potentially public, and they cannot, the DIDS documents
themselves establish that any such use was of an initial prototype to prove out the
concept through testing. *See* Ex. F at 174 ("Our prototype has demonstrated the
viability of our distributed architecture. . .We have tested the system on a sub-
network of Sun SPARCstations and it has correctly identified network users in a
variety of scenarios. Work continues on the design, development, and refinement of
rules. . .")(emphasis added). Accordingly, any such use was primarily for the
purposes of experiment and cannot form a bar under section 102 (b). *See Allied
Colloids Inc. v. American Cyanamid Co.*, 64 F.3d 1570, 1574 (Fed.Cir. 1995)
(holding that the public use bar for patentability requires that its use was not primarily
experimental in purpose.)

10

operating software for any of these systems.[20]  Defendants' experts failure to consider the source code underscores that their opinions are based not on the actual systems, but on articles describing those systems.

Thus, Mr. Heberlein's self-serving declarations notwithstanding, Defendants cannot meet their burden of proving by clear and convincing evidence that any of the prior art systems described in the publications were ever in public use.[21]  Defendants lack any basis to argue anticipation under §102 (b) pubic use, and the only prior art references at issue here are the publications cited and relied upon by Defendants' experts.

/ / /

/ / /

/ / /

---

20

**REDACTED**

---

21  Testimony of a purported prior inventor, without more, is insufficient to meet the clear and convincing evidence standard required to invalidate an issued patent. *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1367 (Fed. Cir. 1999).  *See also generally,* discussion of this corroboration issue in SRI's Motion to Exclude Testimony of Daniel Teal, filed June 16, 2006.

11

## V.     CONCLUSION

For the foregoing reasons, SRI respectfully requests that Court grant partial summary judgment that the combinations of references identified by Defendants and summarized in Exhibit A cannot, as a matter of law, anticipate any of the claims of the patents-in-suit, and that Defendants cannot meet their burden to prove by clear and convincing evidence that DIDS, GrIDS, HP OpenView in combination with the RFCs, or HP OpenView in combination with NetStalker were in public use prior to the critical date

Dated: June 16, 2006                    FISH & RICHARDSON P.C.

By: _____

John F. Horvath (#4557)
Kyle Wagner Compton (#4693)
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114
Telephone:  (302) 652-5070
Facsimile:  (302) 652-0607

Howard G. Pollack (CA Bar No. 162897)
Katherine D. Prescott (CA Bar No. 215496)
FISH & RICHARDSON P.C.
500 Arguello St., Ste. 500
Redwood City, CA 94063
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

Attorneys for Plaintiff/Counterclaim Defendant
SRI INTERNATIONAL, INC.

50352584.doc

12

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2006, I electronically filed the **PUBLIC VERSION** of the **SRI INTERNATIONAL, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO ANTICIPATION BY COMBINATIONS OF REFERENCES** with the Clerk of Court the attached document using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel.

| | |
|---|---|
| Richard L. Horwitz<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>1313 North Market Street, 6th Floor<br>P.O. Box 951<br>Wilmington, DE  19899 | Attorneys for Defendant-<br>Counterclaimant<br>Internet Security Systems, Inc., a<br>Delaware corporation, and Internet<br>Security Systems, Inc., a Georgia<br>corporation |
| Richard K. Herrmann<br>Morris James Hitchens & Williams<br>PNC Bank Center<br>222 Delaware Avenue, 10th Floor<br>P.O. Box 2306<br>Wilmington, DE  19899-2306 | Attorneys for Defendant-<br>Counterclaimant<br>Symantec Corporation |

/s/ *John F. Horvath*
John F. Horvath

80034097.doc