# EXHIBIT   E



C

**Motions, Pleadings and Filings**

United States District Court,
N.D. Georgia,
Atlanta Division.
Kim ADLER and Fredda McDonald, Plaintiffs,
v.
WALLACE COMPUTER SERVICES, INC. and
Robert Young, Defendants.
**No. CIV.A.1:00-CV-1459-RWS.**

Aug. 13, 2001.

Female employees who held positions of sales representative or higher brought putative class action against employer, alleging systemic gender discrimination and sexual harassment in violation of Title VII. Employer moved for summary judgment, and employees moved to compel deposition of employer's general counsel and for reconsideration of previous order denying leave to amend their complaint. The District Court, Story, J., held that: (1) class certification on injunctive relief grounds was not appropriate; (2) class certification on common question grounds was not appropriate; (3) hybrid certification was not warranted; and (4) employer's general counsel waived attorney-client privilege.

Motions granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure** ☜172
170Ak172 Most Cited Cases
Party seeking class certification bears the burden of establishing the propriety of maintaining the suit as a class action. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[2] Federal Civil Procedure** ☜165
170Ak165 Most Cited Cases
Monetary relief predominates in a putative class action, precluding class certification on injunctive relief grounds, unless it is incidental to the equitable relief sought. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[3] Federal Civil Procedure** ☜165

170Ak165 Most Cited Cases
Relief;
Monetary relief sought in a putative class action is "incidental" to injunctive relief, as required to allow class certification on injunctive relief grounds, if damages flow directly from liability to the class as a whole on the claims forming the basis of injunctive or declaratory relief. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[4] Federal Civil Procedure** ☜165
170Ak165 Most Cited Cases
"Incidental damages," required for class action certification on injunctive relief grounds, are automatic once liability is established, and they should be calculable by means of objective standards. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[5] Federal Civil Procedure** ☜165
170Ak165 Most Cited Cases
Damages are not incidental to injunctive relief, precluding class certification on injunctive relief grounds, if they are dependent on the class members' individual circumstances. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[6] Federal Civil Procedure** ☜184.15
170Ak184.15 Most Cited Cases
Compensatory and punitive damages suffered by female employees who held sales representative positions, as result of alleged gender discrimination and sexual harassment in violation of Title VII, were not incidental, and therefore, employees could not be certified as a class on grounds of injunctive relief they sought; damages awards would require fact-specific inquiry into circumstances of each individual employee. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[7] Federal Civil Procedure** ☜165
170Ak165 Most Cited Cases
In order to obtain class certification on grounds that questions of law or fact common to the class predominate over questions affecting individual members, issues subject to generalized proof must predominate over those issues subject to individualized proof. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[8] Federal Civil Procedure** ☜161.2

202 F.R.D. 666
202 F.R.D. 666, 50 Fed.R.Serv.3d 1323
**(Cite as: 202 F.R.D. 666)**

170Ak161.2 Most Cited Cases

**[8] Federal Civil Procedure** 🔑165
170Ak165 Most Cited Cases
A plaintiff seeking class certification on grounds that common questions predominate must prove both that questions of law or fact common to the class predominate over questions affecting individual members, and that class action is superior to other available methods for fair and efficient adjudication of the controversy.    Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[9] Federal Civil Procedure** 🔑184.15
170Ak184.15 Most Cited Cases
Alleged common question of employer's pattern and practice of gender discrimination against female employees who worked as sales representatives did not predominate over issues individual to each employee, such as whether each employee was terminated or denied a promotion based on discrimination, and therefore, class certification of employees' Title VII action on common question grounds was not appropriate.    Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[10] Federal Civil Procedure** 🔑184.15
170Ak184.15 Most Cited Cases

**[10] Jury** 🔑31.2(1)
230k31.2(1) Most Cited Cases
Hybrid certification of female employees' putative class action against employer under Title VII, alleging that employees were terminated from sales representative positions or denied promotions based on their gender, as both an action for equitable relief and damages was not warranted; under the Seventh Amendment, jury would be required to determine individual discrimination issues before court ruled on equitable remedies, and this would result in confusion and burden to court system.    U.S.C.A. Const.Amend. 7;  Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.;    Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[11] Witnesses** 🔑198(1)
410k198(1) Most Cited Cases
The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice.

**[12] Witnesses** 🔑198(1)
410k198(1) Most Cited Cases

Recognition of attorney-client privilege is intended to encourage frank communication with an attorney.

**[13] Witnesses** 🔑222
410k222 Most Cited Cases
Party claiming attorney-client privilege bears the burden of proving the existence of the privilege.

**[14] Witnesses** 🔑198(1)
410k198(1) Most Cited Cases
Party claiming attorney-client privilege must establish the following elements: (1) the holder of privilege is a client; (2) the person to whom communication was made is a member of the bar and that person is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which attorney was informed by the client without the presence of strangers for the purpose of securing legal advice; and (4) the privilege is claimed and not waived by the client.

**[15] Witnesses** 🔑219(3)
410k219(3) Most Cited Cases
The attorney-client privilege might be waived: (1) when a client testifies concerning portions of the attorney-client communication; (2) when a client places the attorney-client relationship directly in issue; and (3) when a client asserts reliance on attorney advice as an element of the defense.

**[16] Witnesses** 🔑219(3)
410k219(3) Most Cited Cases
Testimony of witness who served as both vice president and general counsel for corporate employer, disclosing statements made by other corporate representatives seeking advice from witness in his role as attorney, constituted waiver of attorney-client privilege in Title VII action against employer; employer designated witness as the representative of the corporation for discovery purposes, giving witness ability to waive privilege.    Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.;    Fed.Rules Civ.Proc.Rule 30(b)(6), 28 U.S.C.A.

**[17] Federal Civil Procedure** 🔑928
170Ak928 Most Cited Cases
Generally, a motion for reconsideration should not be used to reiterate arguments that have been made previously, but such a motion should be reserved for extraordinary circumstances, such as the discovery of new evidence, an intervening development or change in the law, or the need to correct a clear error or prevent a manifest injustice.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[18]** Federal Civil Procedure 👝928
170Ak928 Most Cited Cases
A reconsideration motion may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation.

\*668 Benton J. Mathis, Jr., Mary Anne Ackourey, Freeman, Mathis & Gary, Atlanta, GA, for plaintiffs.

Stephen Xavier Munger, Lisa A. Schreter, Christopher Todd Van Dyke, Susan L. Kuss, Jackson, Lewis, Scnitzler & Krupman, Atlanta, GA, for defendants.

### *ORDER*

STORY, District Judge.

Plaintiffs bring this putative class action alleging systemic gender discrimination and **\*669** sexual harassment. Before the Court for consideration are Defendant Wallace Computer Services, Inc.'s ("Wallace") Motion for Summary Judgment [59-1], Defendant Wallace's Motion To Stay Additional Class Discovery [60-1], Plaintiffs' Motion To Compel Deposition Testimony of Steven L. Carson [62-1], Plaintiffs' Motion for Reconsideration [67-1], Plaintiffs' Motion for Leave To File Second Amended Complaint [67-2], Plaintiffs' Motion To Extend Time For Response [71-1], and Plaintiffs' Motion To Deny Motion for Summary Judgment [74-1]. As a preliminary matter, Plaintiffs' Motion To Extend Time for Response [71-1] is hereby **GRANTED** *nunc pro tunc,* and the Court will consider the out-of-time response when ruling on the pending motion for summary judgment. After reviewing the record and considering the arguments of the parties, the Court enters the following Order.

### Background
In this civil rights case, Plaintiffs allege claims of gender discrimination and sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"). Plaintiffs initially sought to represent all female employees in Wallace's sales force, but the parties have agreed to limit the membership of the putative class to female employees since January 1, 1996, who have held a position of sales representative or a higher position in the Wallace sales group. More specifically, Plaintiffs allege a pattern and practice of discrimination in Wallace's employment practices, demonstrated by the treatment of women in

terminations, promotions, pay, and job assignments. The Complaint also alleges that these women were subjected to a hostile work environment. Plaintiffs seek compensatory and punitive damages, back pay and front pay, and injunctive and declaratory relief on their individual claims and on behalf of the putative class.

Wallace's direct sales force is a national force divided into four geographic regions, and each geographic region is headed by a regional vice president ("RVP"). Approximately fourteen general managers report to each RVP. Until recently, regional managers or district managers reported to the RVPs. Defendant Wallace generally promotes from within its own sales force, so a new employee would start as an entry-level sales representative and work her way up the corporate structure. Specific accounts are assigned to sales representatives by management. Since commissions from sales constitute a large portion of a sales representative's income, being assigned a large volume account might be considered a promotion. The next step up the ladder is to the position of district manager, and these employees receive salaries along with certain bonuses as defined by a written policy. Promotions to the district manager position are made by regional and general managers with the approval of the RVP and the vice president of sales. There is no formal application process, and selection criteria are subjective. Plaintiffs allege that women were paid less, assigned less favorable accounts, terminated on the basis of sex, and not promoted to management positions.

In their brief in response to the motion for summary judgment, Plaintiffs include detailed accounts of their individual experiences, but only limited accounts of Adler's and McDonald's experiences will be included here because the summary judgment motion focuses on the class claims. Both Adler and McDonald began employment with Wallace in late 1997, and, in November 1998, both were assigned to work on Delta Air Lines' commercial printing. McDonald was assigned to head the group working on Delta's account. Adler was terminated in February 1999, and McDonald was demoted at the same time. For more details about Plaintiffs' individual claims, see Pl.'s Br. in Resp. to Mot. for Summ. J. at 2-5.

### Motion for Summary Judgment
Defendant Wallace moves for summary judgment in its favor on the class claims asserted in this action, contending that the putative class cannot satisfy the requirements for certification included in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

202 F.R.D. 666
202 F.R.D. 666, 50 Fed.R.Serv.3d 1323
(Cite as: 202 F.R.D. 666)

According to Defendant, Plaintiffs fail to satisfy the requirements of Rule 23(b)(2) because the predominant relief sought is damages. Second, Defendant asserts that no Rule 23(b)(3) class can be certified because individual issues predominate over common ones.

*670 Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material, and a fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[1] As stated previously, class certification is governed by Rule 23, and Plaintiffs bear the burden of establishing the propriety of maintaining a suit as a class action. Rutstein v. Avis Rent-A-Car Systems, Inc., 211 F.3d 1228 (11th Cir.2000), cert. denied sub nom. Zeirei Agudath Israel Bookstore v. Avis Rent-A-Car Sys., Inc., --- U.S. ----, 121 S.Ct. 1354, 149 L.Ed.2d 285 (2001). Title VII cases usually are certified as class actions only after "rigorous analysis." Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). For all putative class actions, every requirement of Rule 23(a), numerosity, commonality, typicality, and adequate representation, must be satisfied. However, in arguing for the dismissal of the class claims in this action, Defendant assumes that Plaintiffs could satisfy these Rule 23(a) requirements. The Court suspects that a question could be raised as to whether the Rule 23(a) commonality and typicality requirements could be met, but this analysis shall proceed under Defendant's assumption for the purpose of this Order. See Fed.R.Civ.P. 23(a) (governing situation where "there are questions of law or fact common to the class" and "the claims or defenses of the representative parties are typical of the claims or defenses of the class"); Murray v. Auslander, 244 F.3d 807, 811 (11th Cir.2001) (stating that showing commonality requires issues that are subject to class-wide proof and explaining that for typicality Plaintiffs must demonstrate that they have same interests and suffered same injuries as class members). Satisfying the commonality requirement would be especially difficult with regard to the hostile work environment claim asserted in this action because that claim includes a subjective component. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21- 22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (requiring plaintiffs in hostile work environment action to show that they subjectively perceived environment to be abusive). Nonetheless, the analysis in this Order focuses on whether the requirements of Rule 23(b) have been met.

Once the four prerequisites of Rule 23(a) are established, a class action may be maintained if at least one of the requirements of Rule 23(b) is satisfied. Defendant argues that this purported class action cannot be maintained under either 23(b)(2) or 23(b)(3) and that a hybrid approach is not appropriate in the present case.

A. Certification Under Rule 23(b)(2)

[2] Under 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). According to the Advisory Committee notes, this type of class action is not appropriate if the predominant relief sought is money damages. Fed.R.Civ.P. 23 advisory committee's note. Monetary relief predominates unless it is incidental to the equitable relief sought. Murray, 244 F.3d at 812 (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir.1998)).

[3][4][5] Since Plaintiffs here seek compensatory and punitive damages in addition to declaratory and injunctive relief, the Court must consider whether the monetary relief is incidental to the injunctive relief requested. According to the Fifth Circuit, monetary relief is incidental if damages "flow directly from liability to the class as a whole on the claims forming the basis of injunctive or declaratory relief." Allison, 151 F.3d at 415 (emphasis in original). Incidental damages are automatic once liability is established, and they should be calculable by means of objective standards. Id. Damages are not incidental to injunctive relief if they are dependent on the class members' individual *671 circumstances. Id. The Allison court concluded that the plaintiffs' claims for compensatory damages were not sufficiently incidental to permit certification of a 23(b)(2) class action because specific individualized proof is necessary when a plaintiff must show actual injury. Id. at 416-17. Furthermore, the court opined that a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

202 F.R.D. 666
202 F.R.D. 666, 50 Fed.R.Serv.3d 1323
**(Cite as: 202 F.R.D. 666)**

finding that a defendant engaged in a pattern and practice of discrimination did not mandate the assessment of punitive damages. *Id.* at 417. The *Allison* court then affirmed the denial of 23(b)(2) class certification on the basis that the claims for compensatory and punitive damages required individualized proof and could not be considered incidental to the injunctive and declaratory relief requested.

The Eleventh Circuit recently considered the same question, citing the *Allison* view with approval. *Murray,* 244 F.3d at 812. The question in *Murray,* a disability discrimination case, was whether the plaintiffs' claims for compensatory damages to remedy "pain and suffering, mental anguish, and humiliation" were incidental to their claims for injunctive and declaratory relief. *Id.* The Eleventh Circuit found that the plaintiffs would not automatically be entitled to compensatory damages as a group remedy simply because liability was established, so a Rule 23(b)(2) class encompassing the damage claims would be inappropriate. *Id.* at 812. Therefore, the putative class's damage claims predominated over the claims for equitable relief because assessing damages would require inquiry into each class member's individual circumstances.

[6] Such is the case here. Even if Plaintiffs could prove that Wallace engaged in a pattern and practice of discrimination against women, every member of the class would not necessarily be entitled to damages. Each class member would have to show actual damage to receive compensation for her loss. One example of an individualized issue that would have to be determined to award compensatory damages is Adler's claim that she has suffered compensable severe emotional distress because of the discrimination she endured. McDonald similarly claims that she has suffered emotional distress and mental anguish as a result of her termination. One can only imagine that other class members could make numerous particularized arguments to support claims for compensatory damages. An award of punitive damages also would require a fact-specific inquiry into the circumstances of each individual plaintiff. These individual damage issues have no place in a class action certified under Rule 23(b)(2) where the focus is intended to be equitable relief. The damages allegedly suffered by the putative class members are not incidental; instead, they are dependent on the subjective differences of each class member's circumstances. For the foregoing reasons, certification of a Rule 23(b)(2) class is not appropriate.

**B. Certification Under Rule 23(b)(3)**

[7][8] Alternatively, a class may be certified under Rule 23(b)(3) if the Rule 23(a) requirements are met and "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and if "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Stated differently, issues subject to generalized proof must predominate over those issues subject to individualized proof. *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997). A plaintiff must satisfy both the "predominance" and "superiority" requirements to fulfill Rule 23(b)(3)'s requirements. *Amchem Prods. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 2245-46, 138 L.Ed.2d 689 (1997). The Rule offers guidance to courts by listing factors pertinent to the necessary inquiry. These factors include: (1) the class member's interest in individual control of her action; (2) pending litigation concerning issues involving class members; (3) desirability of concentrating the claims in one forum; and (4) difficulties expected in managing the class action. Fed.R.Civ.P. 23(b)(3). Rule 23(c)(2) also requires that potential class members be provided notice and a right to opt out of a class certified under Rule 23(b)(3). Plaintiffs in this case contend that the common question of Wallace's pattern and practice of discrimination predominates over the individual issues in the case and that resolution of the class members' claims in a class action is superior to the pursuit of individual lawsuits.

***672** Predominance previously was found lacking in an employment discrimination case because of the individual issues raised by the compensatory and punitive damages claims. *Allison,* 151 F.3d at 419. The Fifth Circuit in *Allison* noted that individual issues in such a case might include the kind of discrimination each plaintiff encountered, the emotional and physical effect of the discrimination on the plaintiff, whether plaintiff sought medical treatment, what type of treatment was received, and the expenses incurred as a result of the discrimination. *Id.* These individual issues would force any court to try the class member's claims separately. *Id.* According to the *Allison* court, the necessity of separate trials to determine the issues unique to each plaintiff created manageability problems. *Id.* Because of these problems, class litigation of the employment discrimination claims was not superior to individual litigation. *Id.* at 420.

The Eleventh Circuit considered Rule 23(b)(3)'s predominance and superiority requirements in two cases alleging a pattern and practice of discrimination. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir.1997); *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228 (11th Cir.2000), *cert. denied sub nom. Zeirei Agudath Israel Bookstore v. Avis Rent-A-Car Sys., Inc.*, --- U.S. ----, 121 S.Ct. 1354, 149 L.Ed.2d 285 (2001). First, in *Jackson*, the plaintiffs alleged that the defendant followed a pattern and practice of race discrimination against customers and employees. 130 F.3d at 1001. The *Jackson* court found that this single common issue did not predominate over the numerous individual issues inherent in such a case. *Id.* at 1005. Some examples of individual issues in the case were whether a patron was denied a room, whether a room was available, and whether there was a legitimate reason unrelated to race for not renting a room to the patron or giving him an inferior room. *Id.* at 1006.

Second, the Eleventh Circuit analyzed predominance and superiority in the context of a disability discrimination case. In *Rutstein*, the plaintiffs alleged that the defendant engaged in a pattern and practice of discriminating against Jewish customers. 211 F.3d at 1230. The court states that in determining whether common questions predominate, the district court should consider "what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Id.* at 1234. When proof of individualized facts is necessary even for initial determinations like liability, class action treatment is not appropriate. *Id.* at 1235-36. Again, the individual issues related to compensatory and punitive damages made class action treatment even less inviting since actual injury must be shown. *Id.* at 1239.

[9] Even with a finding of class-wide discrimination, each plaintiff in the present case must, at the very least, show that she suffered an adverse consequence as a result of discrimination. *See Rutstein*, 211 F.3d at 1237- 38 (addressing class-wide showing of discriminatory pattern and practice in employment cases and noting that each plaintiff must still show consequence like not being hired for job); *see also Cooper v. Federal Reserve Bank*, 467 U.S. 867, 876, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984) (stating that claim for employment discrimination focuses on reason for particular employment decision); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 362, 97 S.Ct. 1843, 1868, 52 L.Ed.2d 396 (1977)

(explaining that after discriminatory policy is proven employer can demonstrate that applicant was denied employment for lawful reasons). Wallace's pattern and practice of discrimination may be relevant in a particular case, but it does not establish that the company discriminated against each member of the putative class. Individual issues still exist in this case. For instance, each plaintiff must show that she was denied a promotion, paid less, or terminated on the basis of discrimination. As to each claim, Defendant would have the opportunity to show that the employee was refused a promotion, paid less, or terminated for a legitimate nondiscriminatory reason. These individual issues related to liability predominate over the one common issue noted by Plaintiffs-Wallace's alleged pattern and practice of discrimination. In fact, Defendant can escape liability as to an individual plaintiff by showing that she would have, for instance, been terminated even in the absence of the pattern and practice of discrimination. Significantly, these individual issues relate only to the claims of systemic gender *673 discrimination. Additional plaintiff-specific issues could be raised with regard to the claim of hostile work environment sexual harassment, especially since that claim requires a showing that the employee perceived the environment to be abusive. The predominance problem here is compounded by the fact that the compensatory and punitive damages requested require individualized proof. Since so many issues in this case cannot be determined on a class-wide basis, the superior method of adjudicating these controversies is separate actions.

Contrary to Plaintiffs' assertion, dismissing the class claims alleged in this case is not tantamount to foreclosing certification of a class action in any case alleging a pattern and practice of employment discrimination. For example, a case seeking purely equitable relief easily could be certified pursuant to 23(b)(2), and a court could fashion an order prohibiting the defendant from discriminating in the future. *Rutstein*, 211 F.3d at 1239 (noting that case requesting equitable remedies is different because equitable relief is possible without showing actual injury to each individual plaintiff). Back pay, since it is considered an equitable remedy, might even be awarded in such an action. A Rule 23(b)(2) class action could provide a remedy for systemic disparate treatment in employment so long as the plaintiffs do not seek compensatory and punitive damages. Hence, the Court is not leaving employees who have experienced discrimination with no viable remedy.

**C. Possibility of Certification as a "Hybrid" Class**

202 F.R.D. 666
202 F.R.D. 666, 50 Fed.R.Serv.3d 1323
**(Cite as: 202 F.R.D. 666)**

Plaintiffs also encourage the Court to consider three other "alternative" certification possibilities. The first, certification for all purposes under Rule 23(b)(3), is not a viable option because this case is not appropriate for Rule 23(b)(3) certification at all. The second option, referred to as "divided certification," proposes the certification of a Rule 23(b)(2) class for the purpose of equitable relief and a Rule 23(b)(3) class for the issue of damages. Because individual issues predominate, Plaintiffs' claims are not amenable to Rule 23(b)(3) certification, especially with regard to the issue of damages. Removing the equitable claims from the picture does not fix the Rule 23(b)(3) certification problem. The final option advocated by Plaintiffs is certifying a Rule 23(b)(2) class for both equitable relief and damages and providing all class members with notice. This option also fails to remedy the problems with certifying this case as a class action. With such a hybrid certification, the Court still would have to face the daunting task of considering each plaintiff's individual circumstances to determine whether Defendant is liable to a particular class member for gender discrimination or for sexual harassment. As discussed in conjunction with 23(b)(3) certification, even if a pattern and practice of discrimination is shown, it does not follow that Defendant is liable to each class member. Furthermore, such a hybrid certification does not resolve the problem with damages since each individual plaintiff would still be required to show actual harm to collect compensatory or punitive damages.

[10] The Seventh Amendment provides the most compelling justification for denying the request for hybrid certification. The Seventh Amendment guarantees the right to a jury trial "in Suits at common law." U.S. Const. amend. VII. The Supreme Court has made clear that the right to a jury trial applies in suits determining both legal rights and administering equitable remedies. *Ross v. Bernhard,* 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970) (quoting *Parsons v. Bedford, Breedlove, & Robeson,* 28 U.S. 433, 447, 3 Pet. 433, 7 L.Ed. 732 (1830)). Because the Civil Rights Act of 1991 expressly grants the right to a jury trial when compensatory damages are requested in Title VII cases, and both parties have demanded such, a jury trial is required. 42 U.S.C. § 1981a(c). In the case sub judice, some factual issues related to the damages claims are also relevant to the asserted equitable claims. The litigants have the right to the determination of these issues by a single jury. *Ross,*

396 U.S. at 538-39, 90 S.Ct. 733 ("[W]here equitable relief and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims.") Thus, adjudicating **\*674** this case would require a jury to determine the individual issues related to Plaintiffs' employment discrimination claims and hostile environment sexual harassment claims before the Court rules on equitable remedies. *See Allison,* 151 F.3d at 423-25 (discussing difficulties in hybrid certification of legal and equitable claims); *Miller v. Hygrade Food Prods. Corp.,* 198 F.R.D. 638, 644 (E.D.Pa.2001). Pursuing this course would result in confusion and be overly burdensome to the resources of the court system.

Accordingly, Defendant's Motion for Summary Judgment [59-1] is hereby **GRANTED**, and Plaintiffs' class claims are dismissed. Since the Court finds class certification improper, Plaintiffs may pursue only their individual claims in this action. Moreover, Defendant's Motion to Stay Additional Class Discovery [60-1] is hereby **GRANTED**. Finally, Plaintiff asserts that the Court should deny Defendant's Motion for Summary Judgment pending further discovery on the class claims. However, based on the causes of action asserted in the Complaint and the relief requested, class treatment is not appropriate as a matter of law. Further development of the facts will not heal the infirmity of the class claims; therefore, Plaintiffs' Motion To Deny the Motion for Summary Judgment [74-1] must be **DENIED**.

**Motion To Compel Deposition of Steven Carson**
Plaintiffs move to compel the testimony of Steven Carson, the Vice President, General Counsel, and Secretary of Defendant Wallace. Defendant designated Mr. Carson as the representative of the corporation pursuant to Federal Rule of Civil Procedure 30(b)(6), and Plaintiffs took Mr. Carson's deposition. Mr. Carson testified regarding the terminations of Adler and McDonald, the investigation of Ms. McDonald's complaint of gender discrimination, and conversations with Wallace representatives about the counterclaim asserted against Plaintiffs in this action. While Mr. Carson was willing to discuss these subjects to some extent, he also asserted attorney-client privilege and refused to answer a number of Plaintiffs' questions concerning the same subject matter. For instance, Mr. Carson described conversations with Wallace management about possible terminations and whether

allegations of sex discrimination could be expected. However, Mr. Carson refused to disclose the legal advice that he offered during these conversations. Plaintiffs assert that Mr. Carson should be compelled to answer these questions because any attorney-client privilege that could have been asserted was waived when Mr. Carson disclosed information during his deposition that would have otherwise been privileged.

[11][12][13][14] "The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." *In re Grand Jury Proceedings 88-9, 899 F.2d 1039, 1042 (11th Cir.1990) (quoting United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.1984)) (en banc).* This privilege is "one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States, 524 U.S. 399, 403, 118 S.Ct. 2081, 2084, 141 L.Ed.2d 379 (1998).* Recognition of attorney-client privilege is intended to encourage frank communication with an attorney. *Swidler & Berlin, 524 U.S. at 403, 118 S.Ct. 2081.* The party claiming the privilege bears the burden of proving the existence of the privilege. *See, e.g., In re Grand Jury Investigation (Schroeder), 842 F.2d 1223, 1225 (11th Cir.1987).* The party claiming the privilege must establish the following elements: (1) the holder of privilege is a client; (2) the person to whom communication was made is a member of the bar and that person is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which attorney was informed by the client without the presence of strangers for the purpose of securing legal advice; and (4) the privilege is claimed and not waived by the client. *In re Grand Jury Proceedings 88-9, 899 F.2d at 1042.* This analysis focuses on waiver of the privilege.

[15][16] The attorney-client privilege might be waived: (1) when a client testifies concerning portions of the attorney-client communication; (2) when a client places the attorney-client relationship directly in issue; and (3) when a client asserts reliance on attorney advice as an element of the defense. *Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1418 (11th Cir.1994).* In the instant *675 case, Mr. Carson served a dual role. First, he was the attorney for the corporation. Second, he served as the corporation's representative for the purpose of discovery. In this second role, Mr. Carson, as the representative of the client, could waive the attorney-client privilege by testifying to portions of the attorney-client communication. In fact, Mr. Carson

did disclose the statements made by other corporate representatives seeking advice from him in his role as attorney. These disclosures waived the privilege, and Mr. Carson cannot now refuse to fill in the remaining facts by claiming attorney-client privilege. Accordingly, Plaintiffs' Motion To Compel Deposition Testimony of Steven L. Carson [62-1] is hereby **GRANTED**.

### Motion for Reconsideration

[17][18] Plaintiffs move for reconsideration of the Court's Order denying leave to amend the Complaint. Alternatively, Plaintiffs renew their motion to amend the Complaint. Generally, a motion for reconsideration should not be used to reiterate arguments that have been made previously, but such a motion should be reserved for extraordinary circumstances, such as the discovery of new evidence, an intervening development or change in the law, or the need to correct a clear error or prevent a manifest injustice. *See, e.g., Deerskin Trading Post, Inc. v. United Parcel Serv. of America, Inc., 972 F.Supp. 665, 674 (N.D.Ga.1997).* Moreover, a reconsideration motion may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation. *Escareno v. Noltina Crucible and Refractory Corp., 172 F.R.D. 517, 519 (N.D.Ga.1994), (citing O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir.1992)).*

Plaintiffs previously sought to amend their Complaint to allege a claim for retaliation, relying on Defendant Wallace's filing of counterclaims in this lawsuit as a retaliatory action. The Court denied leave to amend on the basis that the facts alleged in the proposed amendment to the Complaint did not support the contention that the counterclaims pursued by Defendant Wallace were retaliatory. Plaintiffs purportedly offer evidence acquired after the Court's ruling that shows that Defendant Wallace's actions against Ms. McDonald were motivated by an unlawful animus. Defendant submits that the "new" evidence offered by Plaintiffs was available approximately three months prior to the Court's ruling denying leave to amend. Most importantly, some of the "new" evidence cited is included in the deposition of one of the plaintiffs. Clearly, this information was available to Plaintiffs' counsel when the request for leave to amend the Complaint was filed. In addition, Defendant correctly points out that the insufficient factual allegations offered by Plaintiffs in support of their earlier motion are not an

202 F.R.D. 666
202 F.R.D. 666, 50 Fed.R.Serv.3d 1323
**(Cite as: 202 F.R.D. 666)**

appropriate ground for reconsideration. Plaintiffs have neither shown the Court that there is new evidence not available during the pendency of the motion for leave to amend nor a change in the law, clear error, or manifest injustice. Therefore, the Court declines reconsideration of the earlier Order. Accordingly, Plaintiffs' Motion for Reconsideration [67-1] is hereby **DENIED**, and Plaintiffs' Motion for Leave To File Second Amended Complaint [67-2] is hereby **DENIED**.

### Conclusion

Plaintiff's Motion To Extend Time for Response [71-1] is **GRANTED**, *nunc pro tunc;* Defendant Motion's for Summary Judgment [59-1] is **GRANTED**; Defendant's Motion To Stay Additional Class Discovery [60-1] is **GRANTED**; Plaintiff's Motion To Deny the Motion for Summary Judgment [74-1] is **DENIED**; Plaintiff's Motion To Compel Deposition Testimony of Steven L. Carson [62-1] is **GRANTED**; Plaintiff's Motion for Reconsideration [67-1] is **DENIED**; and Plaintiff's Motion for Leave To File Second Amended Complaint [67-2] is **DENIED**.

202 F.R.D. 666, 50 Fed.R.Serv.3d 1323

**Motions, Pleadings and Filings (Back to top)**

- 1:00CV01459 (Docket) (Jun. 09, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   F

Westlaw.

841 F.Supp. 1393
841 F.Supp. 1393
**(Cite as: 841 F.Supp. 1393)**

**c**
Briefs and Other Related Documents

United States District Court,D. Delaware.
INTERFAITH HOUSING DELAWARE, INC.,
Benjamin R. Pearson, George A. Cheatwood,
Deborah A. Cheatwood, and Carolyn A. Seaton,
Plaintiffs,
v.
The TOWN OF GEORGETOWN, Joseph W. Booth,
John B. Roach, Jr., Sue M. Barlow, and Leroy B.
Tyndall, Defendants,
andDavid M. Bloodsworth and Allan Kujala,
Nominal Defendants.
**Civ. A. No. 93-31 MMS.**

Jan. 12, 1994.

Developer brought suit alleging that town and town
council imposed illegal and unreasonable conditions
upon construction of housing development.    On
developer's motion to compel discovery, the District
Court, Murray M. Schwartz, Senior District Judge,
held that:  (1) council members shared in attorney's
attorney-client privilege;  (2) council member waived
his attorney-client privilege with respect to town
council's authority to impose a particular stipulation
on the development;  (3) council member's statement
was not effective as a waiver of council's attorney-
client privilege;  and (4) council member's statement
did not waive attorney-client privilege as to other
individual council members.

Ordered accordingly.

West Headnotes

**[1] Federal Courts 170B ☞433**

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(C) Application to Particular Matters
            170Bk433 k. Other Particular Matters. Most
Cited Cases
Scope of local government's authority is matter of
state law.

**[2] Witnesses 410 ☞222**

410 Witnesses
    410II Competency

        410II(D) Confidential Relations and Privileged
Communications
            410k222  k.  Evidence  as  to  Nature  and
Circumstances of Communication or Other Subject-
Matter. Most Cited Cases
Under Delaware law, party asserting attorney-client
privilege  has  burden  of  proving  it  applies  to
particular communication.    Rules of Evid., Rule
502(b), Del.C.Ann.

**[3] Witnesses 410 ☞204(2)**

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged
Communications
            410k197 Communications to or Advice by
Attorney or Counsel
                410k204    Mode    or    Form    of
Communications
                    410k204(2) k. Existence, Contents, or
Production of Documents. Most Cited Cases
Documents relating to town's authority to impose
conditions  upon  development  fell  within  purview  of
attorney-client privilege under Delaware law.    Rules
of Evid., Rule 502(b), Del.C.Ann.

**[4] Witnesses 410 ☞199(2)**

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged
Communications
            410k197 Communications to or Advice by
Attorney or Counsel
                410k199 Relation of Attorney and Client
                    410k199(2) k. Parties and Interests
Represented by Attorney. Most Cited Cases
Under Delaware law, entity may be a client for
purposes of attorney-client privilege.    Rules of Evid.,
Rule 502(a)(1), Del.C.Ann.

**[5] Witnesses 410 ☞219(3)**

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged
Communications
            410k219 Waiver of Privilege
                410k219(3)  k.  Communications  to  or
Advice by Attorney or Counsel. Most Cited Cases

841 F.Supp. 1393
841 F.Supp. 1393
(Cite as: 841 F.Supp. 1393)

Participation of individual council members in consultations with town solicitor did not waive attorney-client privilege, under Delaware law, with respect to documents relating to town's authority to impose conditions on development, where individual council members were agents of council and shared common interests with council regarding development. Rules of Evid., Rule 502(b), Del.C.Ann.

**[6] Witnesses 410 ☞199(2)**

410 Witnesses
   410II Competency
     410II(D) Confidential Relations and Privileged Communications
       410k197 Communications to or Advice by Attorney or Counsel
         410k199 Relation of Attorney and Client
         410k199(2) k. Parties and Interests Represented by Attorney. Most Cited Cases
If town council did not waive its attorney-client privilege, communications between town solicitor and individual council members regarding proposed development were protected, under Delaware law, by attorney-privilege. Rules of Evid., Rule 502(b), Del.C.Ann.

**[7] Witnesses 410 ☞199(2)**

410 Witnesses
   410II Competency
     410II(D) Confidential Relations and Privileged Communications
       410k197 Communications to or Advice by Attorney or Counsel
         410k199 Relation of Attorney and Client
         410k199(2) k. Parties and Interests Represented by Attorney. Most Cited Cases
Because of their joint obligations and commonality of interests, members of town council shared in its attorney-client privilege, under Delaware law, when third party sued both town and each council member. Rules of Evid., Rule 502(b), Del.C.Ann.

**[8] Witnesses 410 ☞219(1)**

410 Witnesses
   410II Competency
     410II(D) Confidential Relations and Privileged Communications
       410k219 Waiver of Privilege
         410k219(1) k. In General. Most Cited Cases

Under Delaware law, disclosure of even a part of the contents of privileged communication surrenders privilege as to those communications; however, extent of waiver is limited to subject matter of the disclosed communication. Rules of Evid., Rule 510, Del.C.Ann.

**[9] Witnesses 410 ☞219(3)**

410 Witnesses
   410II Competency
     410II(D) Confidential Relations and Privileged Communications
       410k219 Waiver of Privilege
         410k219(3) k. Communications to or Advice by Attorney or Counsel. Most Cited Cases
Under Delaware law, waiver of attorney-client privilege results from public disclosure of information that was formerly confidential, provided that disclosure was not erroneously compelled, and there was opportunity to assert the privilege. Rules of Evid., Rule 511, Del.C.Ann.

**[10] Witnesses 410 ☞219(3)**

410 Witnesses
   410II Competency
     410II(D) Confidential Relations and Privileged Communications
       410k219 Waiver of Privilege
         410k219(3) k. Communications to or Advice by Attorney or Counsel. Most Cited Cases
Council member's voluntary statement, disclosing significant part of town solicitor's legal advice concerning condition upon housing development, without compulsion or asserting attorney-client privilege, constituted waiver, under Delaware law, of attorney-client privilege as to subject matter of council member's statement, but subject matter of council member's waiver was limited to only the stipulation in question, and did not reach other stipulations or conditions. Rules of Evid., Rule 511, Del.C.Ann.

**[11] Witnesses 410 ☞219(1)**

410 Witnesses
   410II Competency
     410II(D) Confidential Relations and Privileged Communications
       410k219 Waiver of Privilege
         410k219(1) k. In General. Most Cited Cases
Under Delaware law, agent can only waive

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

841 F.Supp. 1393
841 F.Supp. 1393
(Cite as: 841 F.Supp. 1393)

Page 3

corporation's privilege if agent is acting within scope of his or her authority.

**[12] Witnesses 410 ☞219(3)**

410 Witnesses
  410II Competency
    410II(D) Confidential Relations and Privileged Communications
      410k219 Waiver of Privilege
        410k219(3) k. Communications to or Advice by Attorney or Counsel. Most Cited Cases
When a corporation's president makes statement which waives attorney-client privilege, corporation's privilege is also waived.

**[13] Witnesses 410 ☞219(3)**

410 Witnesses
  410II Competency
    410II(D) Confidential Relations and Privileged Communications
      410k219 Waiver of Privilege
        410k219(3) k. Communications to or Advice by Attorney or Counsel. Most Cited Cases
Mayor of city can effect waiver of city's attorney-client privilege.

**[14] Witnesses 410 ☞219(3)**

410 Witnesses
  410II Competency
    410II(D) Confidential Relations and Privileged Communications
      410k219 Waiver of Privilege
        410k219(3) k. Communications to or Advice by Attorney or Counsel. Most Cited Cases
Under Delaware law, town council member's statement was not effective as a waiver of town council's attorney-client privilege, absent evidence of scope of council member's actual or apparent authority to waive the privilege.

**[15] Witnesses 410 ☞219(3)**

410 Witnesses
  410II Competency
    410II(D) Confidential Relations and Privileged Communications
      410k219 Waiver of Privilege
        410k219(3) k. Communications to or Advice by Attorney or Counsel. Most Cited Cases
Under Delaware law as predicted by federal district court, when one of two or more clients with common

interests waives attorney-client privilege in dispute with third party, that one individual's waiver does not affect waiver as to others' attorney-client privilege. Rules of Evid., Rule 502, Del.C.Ann.

*1394 Lawrence A. Hamermesh, and Kurt M. Heyman, of Morris, Nichols, Arsht & Tunnell, Wilmington, DE (James F. Waehler, of Tunnell & Raysor, Georgetown, DE of counsel), for plaintiffs.
Roger A. Akin, and Nanci B. Scoblionko, of Sawyer & Akin, P.A., Wilmington, DE for defendants and nominal defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.
Plaintiffs, Interfaith Housing Delaware, Inc. ["Interfaith"], Benjamin J. Pearson, George A. Cheatwood, and Carolyn A. Seaton, have filed suit against defendants, the Town of Georgetown ["Georgetown"], the individual Town Council members, Joseph W. Booth, Mayor of Georgetown, and John B. *1395 Roach, Jr., Sue H. Barlow, Leroy B. Tyndall, and nominal defendants David M. Bloodsworth and Allan Kujala, alleging they have violated plaintiffs' constitutional and statutory rights by imposing illegal and unreasonable conditions upon Interfaith's construction of a low-to-moderate income housing development known as Bedford Crossings. Currently before the Court is plaintiffs' motion to compel discovery pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. Docket Item ["D.I."] 69. Specifically, plaintiffs move that the Court: (1) declare defendants have waived any attorney-client privilege as to communications on the subject of Georgetown's authority to impose the conditions; (2) compel defendants to produce documents relating to Georgetown's authority to impose the conditions; and (3) award plaintiffs their legal fees, expenses and costs. For the reasons which follow, plaintiffs' motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

In August of 1991, Interfaith entered into a contract to purchase land in Georgetown, Delaware, for the purpose of constructing a 253 unit low-to-moderate income housing development. At that time, the land was zoned MR1, which allowed for multi-family residential housing. D.I. 1 at ¶ 14.

On July 29, 1992, the Georgetown Planning

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

841 F.Supp. 1393
841 F.Supp. 1393
(Cite as: 841 F.Supp. 1393)

Page 4

Commission gave final approval to Interfaith's site plan. Plaintiffs assert that after the Planning Commission approves a site plan, Georgetown's practice has been to consider the plan at the next Town Council meeting, where the Town Council typically adopts the Planning Commission's recommendation. *Id.* at ¶ 21. Plaintiffs allege, however, that defendant Joseph W. Booth ["Booth"], who then presided over the Town Council as Mayor of Georgetown, refused to place the plan on the agenda of the next Town Council meeting. Rather, Booth called for a public hearing. *Id.* at ¶ 22. At the public hearing, Georgetown residents opposed the Interfaith site plan and sought to have conditions imposed upon the proposed development at Bedford Crossings.

Plaintiffs assert that after the public hearing, defendants Leroy B. Tyndall ["Tyndall"] and Sue H. Barlow, members of the Georgetown Town Council who had previously approved the Interfaith site plan in their capacities as members of the Planning Commission, decided they would not ratify the plan without conditions. *Id.* at ¶ 24. At the November 18, 1992 Town Council meeting, defendant John B. Roach, Jr., a town councilperson, introduced twelve conditions for approval of the Bedford Crossings final site plan.[FN1] Mayor Booth and Georgetown's Town Council approved the plan with the twelve conditions. Plaintiffs allege the conditions imposed are arbitrary and effectively prevent the construction of Bedford Crossings. *Id.* at ¶ ¶ 29-31. Plaintiffs further allege the conditions were racially motivated and imposed without authority. *Id.* at ¶ ¶ 38-62.

FN1. The twelve conditions included:
1. Installation of a six foot perimeter fence around the property line before construction began.
2. Sidewalk with curb, gutter, and drainage ten feet from existing public streets before occupancy.
3. Exterior lighting on poles with concrete foundations every 75 feet at a minimum height of 20 feet.
4. Dense evergreens to be planted outside and around the perimeter fence no more than eight feet apart with a minimum height of six feet.
5. Complete and approved recreation plan, including facilities and equipment, prior to beginning construction.
6. All structures east of main interior road not to exceed one story.

7. Interior access roads and parking lots with lanes exceeding 50 feet must have a speed limit not exceeding 15 M.P.H. and speed bumps. No stopping, standing, or parking on such roads.
8. Project management on site 24 hours each day, seven days each week and accessible to both the general public and residents.
9. Storm water storage areas, open ditches, and utilities designed to prohibit entry or access by unauthorized personnel.
10. Designation of proposed stages of construction with start and completion dates for each stage.
11. Site plans approval valid only six months from proposed start date for each phase.
12. A performance bond or other cash security to guarantee compliance with all conditions.
D.I. 1 at 9-10.

During his deposition, defendant Tyndall offered to explain a statement which had **1396** been attributed to him in a newspaper article. The article reported Tyndall said "town police report that most problems at Georgetown Apartments [a low-to-moderate income housing complex] occur after management leaves for the day." Bruce Pringle, *Bedford Crossing to be reconsidered,* News Journal, Jan. 10, 1993 at B5. The deposition proceeded as follows:
A Well, that was Section 8 in the stipulations [the conditions imposed by Georgetown's Town Council], to have management 24 hours a day. And at this meeting, we had to eliminate that Section 8 or stipulation 8 from the proposals.
Q You had to eliminate?
A Yes.
Q Why did you have to eliminate that from the proposals?
A On advice of counsel; it was not within our jurisdiction, that was management concern....

D.I. 69 Exhibit ["Ex."] C, at 85. Counsel for defendants did not assert the attorney-client privilege or object that it had been violated. *See id.*

Plaintiffs argue defendant Tyndall's statement constitutes a waiver of the attorney-client privilege on the subject matter of the Town Council's authority to impose the twelve conditions on the Bedford Crossings plan. Based on this asserted waiver, plaintiffs request that the Court compel defendants to produce correspondence from, and handwritten notes

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of, Georgetown's Town Solicitor. [FN2] *Id.* at ¶¶ 7-8. Defendants respond that (1) Tyndall's statement did not effect a waiver of the attorney-client privilege, and (2) a joint defense privilege applies so that waiver is not possible "absent the consent of all parties to the defense." D.I. 70. In reply, plaintiffs cite principles of corporate agency law for the proposition that Tyndall's statement waived the Georgetown Town Council's attorney-client privilege. D.I. 71 at ¶¶ 7-8.

> FN2. Specifically, plaintiffs seek to compel production of the following documents which defendants assert are privileged: (1) an October 12, 1992 letter from the Town Solicitor to Mayor Booth; (2) a November 16, 1992 letter from the Town Solicitor to Mayor Booth and Georgetown's Town Council; and (3) the Town Solicitor's handwritten notes from the January 11, 1993 Town Council executive session. D.I. 69 ¶ 7.

## II. DISCUSSION

[1] Federal Rule of Evidence 501 states:
Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to its statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501. Plaintiffs' motion to compel seeks documents relating to defendants' defense that the Georgetown Town Council had the authority to impose the twelve conditions upon the Bedford Crossings development. The scope of a local government's authority is a matter of state law. *See* 2 Eugene McQuillin, *Municipal Corporations* §§ 4.01-4, 4.05, 4.132 (3d rev. ed. 1979); E.C. Yokley, *Municipal Corporations* §§ 11, 59, 60 (1956); *cf. Missouri v. Jenkins,* 495 U.S. 33, 51, 110 S.Ct. 1651, 1663, 109 L.Ed.2d 31 (1990) (federal courts must respect a local government where it is ready and willing to act, but for the operation of state law

curtailing municipal power). It follows that the authority of Georgetown's Town Council to impose the conditions on Bedford Crossings is a matter of state law and the attorney-client privilege issues raised by defendants' opposition to the motion to compel must be determined in accordance with Delaware law.

[2][3] The current scope and requisites of the attorney-client privilege in Delaware are defined in Delaware Uniform Rule of Evidence 502. Rule 502(b) provides:
A client has a privilege to refuse to disclose and prevent any other person from **\*1397** disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or the representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

Del.U.R.E. 502(b). This rule differs from the federal rule of attorney-client privilege, and to the extent it differs, the Delaware rule departs from efforts in other jurisdictions to narrow the scope of the privilege. *Ramada Inns, Inc. v. Dow Jones & Co., Inc.,* 523 A.2d 968, 971 (Del.Super.Ct.1986). Nonetheless, the party asserting the attorney-client privilege has the burden of proving it applies to a particular communication.[FN3] *Moyer v. Moyer,* 602 A.2d 68, 72 (Del.1992).

> FN3. Plaintiffs do not contend the attorney-client privilege does not apply to the documents subject to the motion to compel. Rather, plaintiffs assert the privilege has been waived. *See* D.I. 69, 71. Absent any reason to find to the contrary, the Court is satisfied the documents plaintiffs seek fall within the purview of the privilege.

Plaintiffs' motion to compel presents the following issues which the Court will address seriatim: (1) the identity of the Town Solicitor's client or clients; (2) whether Tyndall's statement effected a waiver of the attorney-client privilege; (3) the effect of agency principles on the attorney-client privilege; and (4) the existence of a joint defense or common interest

841 F.Supp. 1393
841 F.Supp. 1393
**(Cite as: 841 F.Supp. 1393)**

defense privilege under Delaware law.

### 1. Identity of the Client(s)

[4] Delaware Uniform Rule of Evidence 502(b) begins: "A *client* has a privilege...." Del.U.R.E. 502(b) (emphasis added). The first question the Court must consider, therefore, is the identity of the Town Solicitor's client. Rule 502(a)(1) provides that: A "client" is a person, public officer or corporation, association or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view of obtaining professional legal services from him.

Del.U.R.E. 502(a)(1). It is fundamental that an entity, such as Georgetown's Town Council, may be a client for purposes of the attorney-client privilege. *Id.* It is equally fundamental, however, that an entity can only act through natural persons. The tension between these two precepts can make determining the precise identity of a client difficult when the client is an entity. *See generally,* John W. Gergacz, *Attorney-Corporate Client Privilege* (2d ed. 1990); *cf. Garner v. Wolfinbarger,* 430 F.2d 1093, 1101 (5th Cir.1970), *cert. denied sub nom., Garner v. First American Life Ins. Co.,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (in analyzing attorney-client privilege issues, "[c]onceptualistic phrases describing the corporation as an entity ... are not useful tools of analysis."). This is such an instance.

[5] Plaintiffs have sued not only the Town of Georgetown, but the individual members of its Town Council. *See* D.I. 1. The Court must, therefore, examine the legal relationship that exists between the Town Council and its individual councilmembers in evaluating attorney-client privilege issues. *See* Del.U.R.E. 502(b)(3); *Kirby v. Kirby,* No. 8604, 1987 WL 14862 (Del.Ch. July 29, 1987) (LEXIS, States library, Del file) (holding the privilege belonged to both the corporate client-a closely held, charitable foundation-and its directors, because at the time of the privileged communication, the directors, collectively, were the client); *In re Grand Jury Investigation,* 918 F.2d 374, 386 n. 20 (3d Cir.1990) (presence of client's agent or person with "commonality of interest" with the client will not vitiate the attorney-client privilege). The individual councilmembers are all agents of the Town Council and share common interests with the Town Council regarding the proposed Bedford Crossings development. Participation of individual

councilmembers in consultations with the Town **\*1398** Solicitor, therefore, does not waive the attorney-client privilege.

[6] Not only does the presence of individual councilmembers not waive the privilege, but confidential communications between councilmembers and the Town Solicitor may also be protected by the attorney-client privilege. *See Upjohn Co. v. United States,* 449 U.S. 383, 394-97, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981); *Bruce v. Christian,* 113 F.R.D. 554, 560 (S.D.N.Y.1986) ("Attorney-client privilege extends to any employee communicating on matters within the scope of his employment when that employee is aware that he is being questioned in confidence in order for his employer to obtain legal advice."). For the Town Council to obtain legal advice regarding Bedford Crossings, individual councilmembers must communicate with the Town Solicitor. If the Town Council does not waive its privilege, therefore, communications between the Town Solicitor and individual councilmembers regarding the Bedford Crossings development are protected by the attorney-client privilege and cannot be discovered.

[7] Each member of Georgetown's Town Council has an obligation to bring independent judgment to bear on the issues confronting the town. Because of their joint obligations and commonality of interest, the members of the Town Council share in its attorney-client privilege when a third party sues both the town and each councilmember. *See Schwartz v. Broadcast Music Inc.,* 16 F.R.D. 31, 32 (S.D.N.Y.1954) (each individual member of an unincorporated association is a client of the association's lawyer). In this limited sense, the attorney representing an entity represents multiple clients.[FN4]

> FN4. The Court's holding addresses only the situation where a third party sues both the town and each member of the town council. The town council can, of course, waive its privilege as well as any protection accorded communications from its council-members. Further, should a dispute arise between various members of the town council, the protection of the attorney-client privilege would not apply because the requisite commonality of interest would be lacking.

### 2. Waiver of the Attorney-Client Privilege

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs assert defendant Tyndall's statement constituted a waiver of the attorney-client privilege with respect to the Town Council's authority to adopt all twelve conditions imposed upon the Bedford Crossings development. Defendants, citing *International Business Machines Corporation v. Sperry Rand Corporation,* 44 F.R.D. 10, 13 (D.Del.1968), respond that Tyndall's statement did not effect a waiver of the attorney-client privilege because it was not a "clear and intentional" waiver. D.I. 70 at ¶ 5.

[8] Under Delaware law, it "is clear that the disclosure of even a part of the contents of a privileged communication surrenders the privilege as to those communications." *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 825 (Del.1992) (citing Del.U.R.E. 510 and *Texaco, Inc. v. Phoenix Steel Corp.,* 264 A.2d 523 (Del.Ch.1970)). Indeed, Delaware Uniform Rule of Evidence 510 provides that a privilege is waived if the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." Del.U.R.E. 510. The extent of the waiver, however, is limited to the subject matter of the disclosed communication. *Citadel Holding Corp.,* 603 A.2d at 825.

[9][10] Tyndall's statement was completely voluntary within the context of Rule 510. In Delaware, waiver of the attorney-client privilege results from public disclosure of information that was formerly confidential, provided the disclosure was not erroneously compelled and there was an opportunity to assert the privilege.[FN5] *See* Del.U.R.E. 511 (claim of privilege not defeated if disclosure was erroneously compelled or if there was no opportunity to claim the privilege); *Citadel Holding Corp.,* 603 A.2d at 825. Because Tyndall disclosed a significant part of the **1399** Town Solicitor's legal advice without compulsion or asserting the privilege, he waived the attorney-client privilege as to the subject matter of his statement.

FN5. A narrow exception to this rule exists when, in the course of producing a heavy volume of documents and after taking reasonable precautions to guard against waiver, a party inadvertently produces a few documents which are attorney-client privileged. *See Monsanto Co. v. Aetna Casualty and Sur. Co.,* No. 88C-JA-118, 1991 WL 53822, at *1-2, 1991 Del.Super. LEXIS 114, at **1-3 (Apr. 8, 1991).

Plaintiffs urge the Court order defendants to produce all documents relating to the subject matter of the Town Council's authority to adopt the twelve conditions imposed upon the Bedford Crossings development. The Court declines. At the time Tyndall waived the attorney-client privilege, he stated the Town Council had to "eliminate that Section 8 or stipulation 8 from the proposals." D.I. 69 Ex. C, at 85. Based on this statement, the Court holds the subject matter of Tyndall's waiver of the attorney-client privilege is limited to stipulation or condition 8; it does not reach the other stipulations or conditions.

### 3. Agency Principles and Waiver of the Privilege

Plaintiffs also assert Tyndall's statement constituted a waiver of the attorney-client privilege by Georgetown's Town Council. Specifically, plaintiffs note that municipal corporations, like private corporations, only act through their agents. A corporation's management, normally its officers and directors, has the power to waive the attorney-client privilege. *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985). Similarly, plaintiffs argue, defendant Tyndall, a member of Georgetown's Town Council, waived the Town Council's privilege. D.I. 71 at ¶ 8.

[11][12][13] The central question plaintiffs' argument presents is the scope of Tyndall's authority as a member of Georgetown's Town Council. An agent can only waive a corporation's privilege if the agent is acting within the scope of his or her authority. *See, e.g., International Boiler Works Co. v. General Waterworks Corp.,* 372 A.2d 176, 177 (Del.1977) ("an agent can bind the principal on an apparent authority basis only if the third person involved reasonably concludes that the agent is acting for the principal."); *Limestone Realty Co. v. Town and Country Fine Furniture & Carpeting, Inc.,* 256 A.2d 676, 678 (Del.Ch.1969) ("one dealing with an agent does so at his peril and must bear the burden of determining for himself the existence or non-existence of the agent's authority...."); *Coker v. Sammons,* 180 A.2d 622, 624 (Del.Super.Ct.1962) (citing Corpus Juris Secundum, the court observed that "to render a municipal corporation liable for the acts of its agents, it must appear that such acts were expressly authorized by the municipal government or that they were performed bona fide in pursuance of a general authority to act for the municipality...."). Thus, when a corporation's president makes a

841 F.Supp. 1393
841 F.Supp. 1393
**(Cite as: 841 F.Supp. 1393)**

statement which waives the attorney-client privilege, the corporation's privilege is also waived. *See Knight v. M.H. Siegfried Real Estate, Inc.,* 647 S.W.2d 811 (Mo.App.1982). Likewise, the mayor of a city can effect a waiver of the city's attorney-client privilege. *Hollins v. Powell,* 773 F.2d 191, 196-97 (8th Cir.1985), *cert. denied,* 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986).

[14] Both a corporation's president and the mayor of a city have clear leadership positions which give them authority to bind their respective principals. One can reasonably assume a mayor or corporate president has the authority to secure an attorney for their principal's legal needs or decide to waive the attorney-client privilege. *See Vela v. Superior Court,* 208 Cal.App.3d 141, 255 Cal.Rptr. 921, 926 (Cal.), *review denied,* (police officer lacks authority to waive the city's attorney-client privilege); *Finkelstein v. Barthelemy,* 678 F.Supp. 1255, 1264 (E.D.La.1988) (mayor is client of city's attorney). At the time he made his statement, however, Tyndall was not the mayor of Georgetown. Because Tyndall was merely one of the members of Georgetown's Town Council, the Court is not convinced that a reasonably prudent person would assume Tyndall had the authority to waive the privilege. Further, plaintiffs have presented no evidence of the scope of Tyndall's authority and whether it includes the authority to waive the attorney-client privilege. In light of Delaware's commitment to the attorney-client privilege and in the absence of evidence of the scope of Tyndall's actual or apparent authority to waive the privilege, the Court holds Tyndall's *1400 statement is not effective as a waiver of the Town Council's attorney-client privilege.

### 4. The Common Interest Rule or Joint Defense Privilege

Finally, the Court must consider the effect of Tyndall's waiver of the attorney-client privilege on the other individual members of the Town Council. Defendants assert that even if Tyndall's statement waived the attorney-client privilege, the "common interest rule" or "joint defense privilege" prevents waiver absent the consent of all the defendants.[FN6] D.I. 70 at ¶ 7. In short, defendants argue that when an attorney represents two or more clients on a matter of common interest, all the clients must waive the attorney-client privilege to constitute a valid waiver.[FN7] The Delaware Supreme Court has not provided guidance as to the validity of this argument. The Court must, therefore, predict how the Delaware

Supreme Court would resolve this issue were it called upon to do so. *Wiley v. State Farm Fire & Casualty Co.,* 995 F.2d 457, 459 (3d Cir.1993). In fulfilling this duty, the Court may consider "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980) (citations omitted).

> FN6. Clearly, this argument can only have merit, where as here, the entity has not waived its attorney-client privilege.

> FN7. The issue confronted by many courts, often called a joint client or common interest exception, is whether communications between two or more clients and one or more lawyers on a matter of common interest waives the confidentiality requirement of the attorney-client privilege. Courts typically hold it does not effect a waiver. 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 503(b)[06] (citing cases). However, when an attorney represents two or more clients on a matter of common interest and litigation between or among the clients ensues, the attorney-client privilege is waived. *See* Del.U.R.E. 502(d)(5).
> The issue before the Court, however, is as follows: an attorney provides advice to an entity client (E), composed of four members (C1), (C2), (C3) and (C4), on a matter of common interest. C1 discloses part of this advice to a third person (X). X brings suit against C1-C4 and E. The Court has ruled that under the facts of this case, C1-C4 share in E's attorney-client privilege and that C1 lacked authority to waive E's privilege. *See supra* sections 1, 3. The Court must also consider whether C1's waiver waives the privilege of C2-C4.

While Delaware courts have not addressed the effect of waiver of privilege by one of two or more clients in a dispute with a third party, Delaware Uniform Rule of Evidence 502 provides that the attorney-client privilege belongs to the client and the client may waive it. Del.U.R.E. 502. This suggests that one client should not be forced unwillingly into a waiver of his or her privilege based on another

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

841 F.Supp. 1393
841 F.Supp. 1393
**(Cite as: 841 F.Supp. 1393)**

Page 9

client's decision to waive the privilege.

Other courts have considered the effect of waiver of privilege by one of two or more clients in a dispute with a third party. In considering this issue, the United States District Court for the District of Wyoming ruled that "waiver of privileges relating to information shared in joint defense communications by one party to such communications will not constitute a waiver by any other party to such communications." _Western Fuels Ass'n Inc. v. Burlington Northern R.R. Co., 102 F.R.D. 201, 203 (D.Wyo.1984)._ The court reasoned that this rule was necessary "to assure joint defense efforts are not inhibited or even precluded by the fear that a party to joint defense communications may subsequently unilaterally waive the privileges of all participants, either purposefully or inadvertently." _Id._ This holding is in accord with the vast majority of other decisions which address the issue. _See, e.g., John Morrell & Co. v. Local Union 304A of United Food and Commercial Workers, AFL-CIO, 913 F.2d 544, 556 (8th Cir.1990), cert. denied, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991)_ (co-defendant could not waive appellee's attorney-client privilege); _Metro Wastewater Reclamation Dist. v. Continental Casualty Co., 142 F.R.D. 471, 478 (D.Colo.1992)_ (applying Colorado law in an environmental coverage dispute, the court ruled that for documents subject to a joint defense privilege, "a waiver **\*1401** of the privilege requires the consent of all parties participating in the joint defense."); _Construction Unlimited Corp. v. Woodfield, 1992 WL 157511, at *2, 1992 Conn.Super. LEXIS 1827, at *4 (June 15, 1992)_ (holding that when an attorney represents multiple clients and a dispute between the attorney and one client later occurs, "there is a waiver of the privilege, but only by the client asserting the liability."); _Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 90 F.R.D. 21, 29 (N.D.Ill.1980), later proceeding sub nom., Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc., 669 F.2d 490 (7th Cir.1982), cert. denied, 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983)_ (holding in a class action derivative suit that "the joint defense privilege cannot be waived without the consent of all the parties to the defense, except in the situation where one of the joint defendants becomes an adverse party in a litigation.").[FN8]

FN8. Likewise, in the criminal context, the Kansas Court of Appeals has ruled that "where several persons employ an attorney and a third party seeks to have

communications made therein disclosed, none of the several persons-not even a majority-can waive this privilege." _State v. Maxwell, 10 Kan.App.2d 62, 691 P.2d 1316, 1320 (1984)._ _Accord In re Grand Jury Subpoenas, 902 F.2d 244, 248-50 (4th Cir.1990)_ (applying Virginia law, the court held "a joint defense privilege cannot be waived without the consent of all parties who share the privilege.").

The Court is aware of only one decision reaching a different result as to the effect of a waiver by one of two or more joint clients on the others' attorney-client privilege. In _Hamilton v. Hamilton Steel Corporation, 409 So.2d 1111 (Fla.Dist.Ct.App.1982),_ several adult children required a performance bond to enter the boat building business. They either forged or obtained their parents' guarantee of the bond issued through the insurance company. After the business failed, the insurance company sued the parents, the children and their respective corporations. At a hearing before the trial judge, the single attorney, who purportedly represented all the defendants, announced a settlement in which the parents would pay $100,000.00. One child was present at the hearing and acquiesced to the settlement. Shortly thereafter, the parents allegedly discovered the existence of the settlement for the first time.

The Florida Court of Appeal ruled the attorney-client privilege did not apply. The court first noted that two exceptions to Florida's attorney-client privilege applied. There was a breach of duty by the attorney and a subsequent dispute between former joint clients. Offering additional reasons for its conclusion, the court stated that "once the privilege is waived, and the horse is out of the barn, it cannot be reinvoked." _Hamilton, 409 So.2d at 1114_ (citation omitted). Thus, the court concluded that once the settlement had been disclosed, some of the clients and the attorney could not later invoke the privilege as to the settlement's details. _Id._

The Court finds the decision of the _Hamilton_ court is not persuasive. It is the sole decision ruling that in a dispute with a third party, waiver of the attorney-client privilege by one joint client is effective against the other joint clients. Further, it appears the court was primarily concerned that it should not "countenance an announced settlement between counsel followed by escape therefrom, if one side arbitrarily reneges and then seals his counsel's lips by invoking the attorney-client privilege." _Id._ The court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

predicted defendants and/or their counsel would have redress against each other for any wrongdoing arising out of the proposed settlement. These factors suggest the Delaware Supreme Court would not be persuaded to adopt the *Hamilton* court's rule of waiver as to all the joint clients.

Scholarly writings which consider the matter also support the view that waiver by one party is not effective to waive the privilege of other parties. In discussing the law of privilege, one text observed: [T]he joint defense doctrine provides only that the privilege is not automatically waived in the case of joint consultations or exchanges of information; each client still retains the right voluntarily to waive the privilege with regard to his confidential communications with his own attorney. Furthermore, despite any commonality of interest that may exist between clients in such situations, a waiver by one does not *1402 effect a waiver as to the others' confidences.

Scott N. Stone & Ronald S. Liebman, *Testimonial Privileges,* § 1.55 Joint Defense, at 95 (1983). *Accord* 2 David W. Louisell & Christopher B. Mueller, *Federal Evidence,* § 210, at 787-88 (1985) ("each client (and of course all together) may invoke the privilege as against third parties").

[15] Based on Delaware's rules of evidence, the decisions of other jurisdictions, and scholarly works which discuss the issue, the Court predicts the Delaware Supreme Court would hold that when one of two or more clients with common interests waives the attorney-client privilege in a dispute with a third party, that one individual's waiver does not effect a waiver as to the others' attorney-client privilege. Accordingly, the Court holds defendant Tyndall's statement did not waive the attorney-client privilege as to the other individual defendants.

### III. CONCLUSION

The Court holds Tyndall's statement waived his attorney-client privilege with respect to the Georgetown Town Council's authority to impose stipulation number eight on the Bedford Crossings development. Accordingly, defendants are ordered to produce any and all documents relating to the Town Council's authority to impose Stipulation 8. This evidence shall be admissible, however, only as to defendant Tyndall, and not as to any other defendant. [FN9] Finally, the Court denies plaintiffs' request for attorney's fees and costs. The issues

presented by plaintiffs' motion to compel are complex, if not matters of first impression in Delaware. This complexity and novelty makes defendants' opposition to the motion substantially justified.

> FN9. The Court is aware of the difficulty its ruling may create at trial, but is confident counsel will be able to resolve any potential problems that may arise.

An appropriate order will issue.

D.Del.,1994.
Interfaith Housing Delaware, Inc. v. Town of Georgetown
841 F.Supp. 1393

Briefs and Other Related Documents (Back to top)

• 1:93cv00031 (Docket) (Jan. 19, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  G

# EXHIBIT   REDACTED
# IN   ITS   ENTIRETY

# EXHIBIT  H

# FISH & RICHARDSON P.C.

500 Arguello Street
Suite 500
Redwood City, California
94063-1526

Telephone
650 839-5070

Facsimile
650 839-5071

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

BY FACSIMILE AND U.S. MAIL

March 28, 2006

Jonathan Loeb
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014

Re:    SRI International Inc. v. Internet Security Systems, Inc., et al.
       USDC-D. Del. - C. A. No. 04-1199 (SLR)

Dear Jonathan:

I write to follow up on my request of March 20, 2006 that Symantec return and/or destroy certain inadvertently produced documents that are subject to the attorney-client privilege and/or work product protection. SRI withdraws its request for the return or destruction of Exhibit 27 which was not objected to at Mr. Abramson's deposition, however please confirm that you have destroyed all other documents as required by ¶20 of the Protective Order.

You were correct to insert a "0" before the production ranges identified in my letter and that several of the ranges identified in my letter contain more then one document. A similar approach would have allowed you to locate SRI 23703 which is actually labeled SRI 023703 and contained within the document that begins at SRI 023646 that was marked as Abramson Exhibit 25 and objected to during Mr. Abramson's deposition.

Very truly yours,

*Katherine D. Prescott*

Katherine D. Prescott

KDP/cdh

50337791.doc