IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation,<br><br>       Plaintiff and<br>       Counterclaim-Defendant,<br><br>   v.<br><br>INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, and SYMANTEC CORPORATION, a Delaware corporation,<br><br>       Defendants and<br>       Counterclaim-Plaintiffs. | C. A. No. 04-1199 (SLR) |

**SRI INTERNATIONAL, INC.'S RESPONSE TO DEFENDANTS'
JOINT MOTION TO LIMIT THE TESTIMONY OF EXPERT, DR. GEORGE
KESIDIS, UNDER FEDERAL RULE OF EVIDENCE 702**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...............................................................................................1

II.     STATEMENT OF FACTS ...............................................................................2

III.    ARGUMENT.....................................................................................................4

         A.      Legal Standards........................................................................................4

         B.      Dr. Kesidis unquestionably meets the qualifications
                    required of an expert under *Daubert* and Rule 702 of the
                    Federal Rules of Evidence .......................................................................5

         C.      There is no requirement that an expert himself have been
                    one of ordinary skill in the art at the time of the filing of
                    the patents-in-suit.....................................................................................6

         D.      Even if Defendants' fictitious requirement were real, Dr.
                    Kesidis is still qualified to testify on all issues .......................................9

                 1.      The level of skill in the cyber security field did
                          not materially change between 1998 and 2000-
                          2001...........................................................................................9

                 2.      Dr. Kesidis undertook a review of the relevant
                          literature and consulted with experts in the field ........................10

IV.    CONCLUSION................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

 **Cases**

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
    222 F. Supp. 2d 423 (S.D.N.Y. 2002)....................................................... 5

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)................................................................... 4, 5, 6

*Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*,
    122 F.3d 1040 (Fed. Cir. 1997)..................................................... 7, 8, 9

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
    404 F. Supp. 2d 575 (D. Del. 2005)............................................... 7

*In re Rouffet*,
    149 F.3d 1350 (Fed. Cir. 1998)....................................................... 7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................ 5

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
    175 F.3d 1356 (Fed. Cir. 1999)....................................................... 5

*Neutrino Dev. Corp. v. Sonosite, Inc.*,
    410 F. Supp. 2d 529 (S.D. Tex. 2006) .......................................... 7, 8, 9

*Odetics, Inc. v. Storage Tech. Corp.*,
    185 F.3d 1259 (Fed. Cir. 1999)...................................................... 5

*Panduit Corp. v. Dennison Mfg. Co.*,
    810 F.2d 1561 (Fed. Cir. 1987)...................................................... 7

*Rohm and Hass Co. v. Mobil Oil Corp.*,
    718 F. Supp. 274  (D. Del. 1989)................................................... 9

*Schneider v. Fried*,
    320 F.3d 396 (3d Cir. 2003)........................................................... 5, 6

*Sims v. Mack Trucks, Inc.*,
    459 F. Supp. 1198 (E.D. Pa. 1978) ............................................... 8

**Statutes**

FED. R. EVID. 702 .............................................................................. 4

## I.     INTRODUCTION

In an ill-conceived effort to impugn the qualifications of SRI's technical expert, Dr. George Kesidis, Defendants confuse two distinct concepts: the credentials necessary for an expert to be qualified under the *Daubert* standard, and the level of ordinary skill in the art applied in various aspects of patent law.  Dr. Kesidis is a world-renowned expert in cyber security, a Ph.D. in electrical engineering and computer science, a tenured professor at Pennsylvania State University, and the author of two books and more than fifty journal articles and conference papers.  He is eminently qualified to opine on the technical issues at stake in this case.

But rather than try to impeach Dr. Kesidis's academic and technical credibility before a jury, Defendants seek to prevent Dr. Kesidis from testifying at all on many of the determinative issues involved in this litigation: claim construction, invalidity, and enablement.  Yet Defendants' theory – that because Dr. Kesidis was supposedly not one of ordinary skill in the art at the time the patents-in-suit were filed, he cannot testify on matters related to that level of skill – is without any legal or logical foundation.  Notably, Defendants cite no case law in support of this proposition since no court has ever barred an expert's testimony on such a basis.  On the contrary, several courts have permitted experts to present their opinions at trial despite lacking ordinary skill in the relevant art.

In this case, however, Dr. Kesidis in fact has the knowledge Defendants assert he lacks.  It is undisputed that Dr. Kesidis was well-versed in the network traffic engineering field – a sibling discipline of cyber security – at the time the patents were filed.  To the extent he did not then possess ordinary skill specifically in the intrusion detection field, that level of skill did not materially change between November 1998 and 2000-2001 when Dr. Kesidis did obtain specific proficiency in the cyber security area.  Furthermore, when he entered the field, Dr. Kesidis consulted with experts in cyber security precisely in order to understand the state of the art and his understanding of the field has continued

to develop in the six years he has been actively conducting related research.  On the whole, Dr. Kesidis possesses more than adequate specialized knowledge to assist the jury in deciding the salient issues that will be placed before it at trial.  Accordingly, SRI respectfully requests that the Court deny Defendants' motion.

## II.    STATEMENT OF FACTS

Dr. Kesidis earned a bachelor's degree in electrical engineering in 1988, a master's degree in electrical engineering and computer science ("EECS") in 1990, and a doctorate in EECS from the University of California at Berkeley in 1992.  [Kesidis Decl.[1] ¶ 2; Ex. A[2] at 1].  He has conducted research into communications and computer networking since beginning his graduate studies at Berkeley in 1990.  [Ex. B at ¶ 6].  He currently serves as a tenured Associate Professor at the Pennsylvania State University's Electrical Engineering and Computer Science Engineering Departments and will become a full professor on July 1, 2006.  [Kesidis Decl. ¶ 4; Ex. A at 1].  Since receiving his Ph.D. in 1992, he has taught courses and written articles on network traffic engineering, packet scheduling, and router control methods.  [*Id.* ¶ 5; Ex. A at 1-5].  Between 1992 and 1998, Dr. Kesidis obtained numerous grants and consulting contracts in the network traffic engineering field.  [Kesidis Decl. ¶ 6; Ex. A at 8-9].

Within this discipline, Dr. Kesidis began conducting research in the specific field of enterprise-deployed cyber security in 2000.  [Kesidis Decl. ¶ 8; Ex. B at ¶ 6; Ex. C at 16:5-10].  At that time, and as part of entering the research field associated with cyber security issues, Dr. Kesidis made efforts to acquaint himself with the state of the art. [Kesidis Decl. ¶  8].  He spent several months during the summer and fall of 2000 surveying the literature in order to familiarize himself with earlier work and attended security-related talks at conferences.  [*Id.* at ¶ 8].  His review focused mostly on articles

---

[1]"Kesidis Decl." refers to the Declaration of Dr. George Kesidis in support of this opposition brief.

[2]All references to Exhibits are Exhibits to the Declaration of Kyle W. Compton in support of this opposition brief.

and conference proceedings from the previous two years.  [*Id.* at ¶ 8].  The review was initially a broad survey of the cyber security field, but he then focused more specifically and read more extensively and further back in time in certain areas.  [*Id.* at ¶ 8].  He specifically recalls reviewing, as part of that early research in 2000, articles about GrIDS, one of the prior art references Defendants rely on.  [*Id.* at ¶ 8].  He also engaged in conversations with numerous individuals widely known for their expertise in cyber security – such as Philip Porras, Felix Wu, and Karl Levitt – at conferences and NSF panels in an effort to ascertain the critical problems in the field, previous approaches proposed to address them, and current promising directions within the field.  [*Id.* at ¶ 8; Ex. C at 11:23-12:15].  By 2001, he and his collaborators had drafted research proposals and papers for submission on the cutting edge problems associated with computer security in large networks.  [*Id.* at ¶ 7; Ex. C at 16:10-11].

In 2002, within two years of entering the cyber security field, Dr. Kesidis was awarded a grant by Cisco Systems, one of the leading networking companies in the world, to explore improved defenses against diffuse worm and more focused Distributed Denial of Service (DDoS) attacks.  [Kesidis Decl. ¶ 9; Ex. B at ¶ 7; Ex. A at 8].  In 2003, Dr. Kesidis began working on a high-profile, multiple-university project on the testing of cyber security defenses.  [Kesidis Decl. at ¶ 10; Ex. B at ¶ 8; Ex. A at 8].  This project, known as EMIST – together with a related project, DETER – has so far received $11 million in funding from the Department of Homeland Security and the National Science Foundation.  [Kesidis Decl. at ¶ 10; Ex. B at ¶ 8; Ex. A at 8].

In addition, Dr. Kesidis has written two books, published more than twenty-five journal articles, and authored over 50 conference papers in the network traffic engineering field, more than one-quarter of which fall specifically within the cyber security discipline.  [Kesidis Decl. at ¶ 12; Ex. A at 2-5].  Dr. Kesidis has been invited to present more than a dozen talks about his research, including at an internal Cisco Systems security summit, at the Department of Homeland Security, and at numerous universities

3

across North America. [Kesidis Decl. at ¶ 13; Ex. A at 6]. In June 2005, he delivered a lecture on the testing of Internet security systems in Tokyo at the 2nd U.S.-Japan Experts Workshop on Critical Information Infrastructure Protection. [Kesidis Decl. at ¶ 13; Ex. A at 6]. Moreover, he serves as a technical program committee co-chair of the IEEE INFOCOM 2007, a major comprehensive networking conference. [Kesidis Decl. at ¶ 14; Ex. A at 12; Ex. B ¶ 9]. He has held similar positions at numerous other IEEE and related conferences. [Kesidis Decl. at ¶ 13; Ex. A at 12; Ex. B at ¶ 9]. In addition, he currently serves as a senior member of the IEEE. [Kesidis Decl. at ¶ 13; Ex. A at 1].

On October 18, 2005, SRI identified Dr. Kesidis as a consultant and provided Defendants with his curriculum vitae. On April 28, 2006, Dr. Kesidis presented his expert reports on infringement by both Defendants. In his reports, he defines a person of ordinary skill in the art as possessing:

> either a bachelor's degree in Computer Science, Electrical Engineering, or Computer Engineering and 5-7 years experience in enterprise-deployed cyber security (or a master's degree in CS, EE, or CE and 3-5 years experience in same). Such a person would also be familiar with the basic existing techniques of cyber security and their performance and limitations, as well as deployment and maintenance issues of cyber security products.

[Kesidis Decl. ¶ 8; Ex. B at ¶ 251]. He examined the meaning of the claims and The Defendants invalidity and enablement arguments with reference to this definition. On May 16, 2006, Dr. Kesidis presented his rebuttal expert report on invalidity. And on May 25, 26, and 29, 2006, Defendants deposed Dr. Kesidis.

## III.    ARGUMENT

### A.    Legal Standards

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court interpreted Rule 702 of the Federal Rules of Evidence as it applies to scientific testimony. FED. R. EVID. 702. The Court held that Rule 702 envisions a flexible inquiry into the relevance and reliability of testimony, focusing "solely on principles and methodology,

not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Court later extended this holding to apply to "technical" and "other specialized" testimony, not just that of a scientific nature. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). In 2000, Rule 702 changed to embody *Daubert* and *Kumho*.[3]

The Third Circuit has held that Rule 702 imposes three requirements on expert testimony: qualification, reliability, and fit. *See, e.g.*, *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).[4] "Qualification refers to the requirement that the witness possess specialized expertise." *Id.* The Third Circuit has "interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert." *Id.* (citations omitted). The second restriction of reliability means that "the expert must have 'good grounds' for his or her belief." *Id.* Finally, fit requires that "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Id.*

**B.    Dr. Kesidis unquestionably meets the qualifications required of an expert under *Daubert* and Rule 702 of the Federal Rules of Evidence**

Dr. Kesidis is fully qualified to render testimony about the critical technical issues involved in this litigation. He earned his Ph.D. in computer science and electrical engineering 14 years ago and has worked continuously in the field of computer network traffic engineering since 1990. [Kesidis Decl. ¶ 2; Ex. A at 1; Ex. B at ¶ 6]. The patents-in-suit specifically address problems associated with detecting suspicious activity in exactly the kinds of high-speed networking environments that have been the subject of

---

[3]    It bears noting that all of the Third Circuit cases cited in Defendants' brief precede the 2000 amendment to Rule 702.

[4]    The Federal Circuit applies its own law to substantive patent issues and to procedural issues which pertain to the field of patent law. Otherwise, the Federal Circuit will follow the law of the regional circuit of the district court. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999). Under these general principles, "evidentiary rulings concerning the admissibility of expert testimony are generally governed by the regional circuit law." *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 486 (S.D.N.Y. 2002) (citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999)). However, some courts have ruled that questions of relevance touch on substantive aspects of patent law and, therefore, are governed by the law of the Federal Circuit. *See, e.g., Id.*

Dr. Kesidis' research.  In addition, Dr. Kesidis has been researching cyber security issues since 2000.  [Kesidis Decl. at ¶ 8; Ex. B at ¶ 6; Ex. C at 16:5-10].  In 2002, within just two years of entering the field, Dr. Kesidis received a sizeable research grant from Cisco Systems, a leading network security company.  [Kesidis Decl. ¶ 9; Ex. B at ¶ 7; Ex. A at 8].  One year later, in 2003, he obtained a significant role in a major multi-university grant from the U.S. Department of Homeland Security and the National Science Foundation.  [Kesidis Decl. at ¶ 10; Ex. B at ¶ 8; Ex. A at 8].  Since entering the field, he has published numerous articles, authored many conference papers, and received multiple grants in the cyber security discipline.  [Kesidis Decl. ¶ 12; Ex. A at 2-5, 8].  He is widely regarded as an expert in the field, as shown by his standing as an IEEE senior member and his invitation by the 2nd U.S.-Japan *Experts* Workshop on Critical Information Infrastructure Protection to address the group on Internet security issues.[5]  [Kesidis Decl. at ¶¶ 13, 14; Ex. A at 1, 6].

In sum, Dr. Kesidis is exceptionally qualified in the fields of network traffic engineering *and* cyber security.  As such, he easily satisfies the liberal requirement of "possess[ing] specialized expertise."  *Schneider*, 320 F.3d at 404.  Defendants have not directly challenged his testimony on either of the other two grounds set forth by the Third Circuit.  He therefore clearly passes the *Daubert* test for admissible expert opinion.  For this reason alone the Court should deny Defendants' motion.

### C.     There is no requirement that an expert himself have been one of ordinary skill in the art at the time of the filing of the patents-in-suit

Defendants appear to confuse the analytically distinct concepts of an expert's qualifications under *Daubert* and its progeny and the hypothetical legal construct of one of ordinary skill in the art.  The entire edifice of The Defendants motion rests on this one shaky foundation.  While Defendants discuss the *general* requirement that claim

---

[5]   This conference was sponsored by National Science Foundation, the Department of Homeland Security, the Japan Science and Technology Agency, and the Ministry of Education, Culture, Sports, Science and Technology. [*See* Ex. D].

construction, invalidity, and enablement all be considered from the viewpoint of one skilled in the art, they cite no case law for the proposition that an expert must *himself* have been one of ordinary skill in the art at the time of the filing of the patents-in-suit.

In fact, courts have held precisely the opposite. *See, e.g.*, *Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529, 550 (S.D. Tex. 2006) ("[t]he [expert] witness himself need not be the hypothetical ordinary artisan."). The Federal Circuit has clarified that the person of ordinary skill is a hypothetical construct, analogous to the "reasonable person" used in tort law. *See, e.g.*, *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1566 (Fed. Cir. 1987). Since this ordinarily skilled artisan is a "theoretical construct," an expert witness need not be such a person in order to testify. *See, e.g.*, *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997) (permitting expert to testify and noting his "substantial credentials as an electrical engineer"); *see also eSpeed, Inc. v. Brokertec USA, L.L.C.,* 404 F. Supp. 2d 575, 579 (D. Del. 2005) (Jordan, J.) (citing *Endress* and admitting testimony of expert with an "adequate understanding" of the technology at issue and "an exceptional grasp of the requisite programming issues").

In *Neutrino* the court rejected a motion to exclude an expert witness who had stopped practicing the relevant art fully 12 years prior to the invention. *Neutrino*, 410 F. Supp. 2d at 538-40. During his deposition, the expert conceded that "many advances" had occurred in the field during those 12 years. *Id.* at 539. Yet because the expert had "kept abreast of developments in the field through consulting, teaching and various other activities," the Court concluded that this significant gap did not disqualify the witness from testifying about obviousness. *Id.* Instead, the Court advised the party challenging the expert to raise the issue of his qualifications at trial during cross-examination. *Id.* In response to a similar challenge to another witness, the Court concluded that "[t]he witness himself need not be the hypothetical ordinary artisan. The hypothetical person of ordinary skill in the art is a legal construct." *Id.* at 550.

A court in this circuit also admitted testimony from an expert witness who did not enter the field until more than a decade after the patent-in-suit was filed. *Sims v. Mack Trucks, Inc.*, 459 F. Supp. 1198, 1213-14 (E.D. Pa. 1978), *rev'd on other grounds*, 608 F.2d 87 (3d Cir. 1979). There, the court credited the expert's contention that "he knew about [the relevant] art and the skill of persons in it as a result of his involvement in the art some years later." *Id.* at 1214. In permitting the expert to testify, the court declined to hold that "experience in the pertinent art at the time of invention is the only way one can acquire familiarity with the art at that time sufficient to make him a reliable expert as to obviousness." *Id*. at 1214.

Here too, as in *Neutrino* and *Sims*, Defendants contend that Dr. Kesidis lacked the requisite skill at the time of patent filing. *Neutrino*, 410 F. Supp. 2d at 539; *Sims*, 459 F. Supp. at 1214. Yet, as the *Neutrino* and *Sims* courts concluded, Dr. Kesidis need not have had that level of skill at that time. *Neutrino*, 410 F. Supp. 2d at 550; *D. Sims*, 459 F. Supp at 1214 ; *see also Endress*, 122 F.3d at 1042. Instead, it was sufficient for him to obtain currency in the field at the relevant time "through consulting, teaching and various other activities" in order to capably define the level of skill and to apply it to the patents. *See Neutrino*, 410 F. Supp. 2d at 539.[6]

Dr. Kesidis has met all of these requirements more than adequately. As Defendants concede, in his expert reports, Dr. Kesidis provided a definition of the key "theoretical construct" of one of ordinary skill in the art – namely, someone with a certain level of education background and experience in the field of cyber security – that he applied consistently in construing the claims at issue and in examining The Defendants

---

[6]    Indeed, if Defendants' position were accepted, no expert testimony could be offered in cases involving basic genetics, the principles and behavior of electricity, or the operation of internal combustion engines, since few if any testifying experts were practicing in these disciplines at the time they were developed.

invalidity arguments.  [Br.[7] at 7 n.3, 8 n.4, 9 n.5, 10 n.6].  *See Endress*, 122 F.3d at 1042.

It is unquestioned that Dr. Kesidis has attained renown in the field of cyber security and

that he has established fluency in the field through university-level teaching, publishing

widely, speaking publicly, and organizing global conferences.  *Cf. Neutrino*, 410 F. Supp.

2d at 539.  The gap between the filing of the patents-in-suit and his practicing in the

cyber security field—a little more than one year—is much smaller than that of either

*Neutrino* or *Sims*.  On the whole, the fact that Dr. Kesidis was not working specifically in

the cyber security field at the time of patent filing in no way undermines his fitness to

render expert testimony.  *See Neutrino*, 410 F. Supp. 2d at 539; *Sims*, 459 F. Supp. at

1214.  If Defendants believe differently, they are free to challenge his credibility at trial.

*See Neutrino*, 410 F. Supp. 2d at 539.

      **D.**      **Even if The Defendants fictitious requirement were real, Dr. Kesidis is still qualified to testify on all issues**

            **1.**      **The level of skill in the cyber security field did not materially change between 1998 and 2000-2001**

Even if the Court were to credit The Defendants illogical theory, which the case

law has consistently rejected, Dr. Kesidis is intimately familiar with the level of ordinary

skill in the cyber security field even as of the filing date of the patents.  Nowhere in their

brief do Defendants allege any differences in the level of skill in the art between

November 1998 and 2000-2001, when Dr. Kesidis entered the cyber security area.

Indeed, there was no material change in the level of ordinary skill in the cyber security

field during that time period.  [Kesidis Decl. ¶ 15].  *Cf. Rohm and Hass Co. v. Mobil Oil

Corp.*, 718 F. Supp. 274, 287 n.33  (D. Del. 1989) (Latchum, J.) (in invalidity context,

applying identical definition of level of skill in the art when that level "did not change

significantly" between early 1971 and late 1975).  Accordingly, for all intents and

purposes, Dr. Kesidis is acquainted from first-hand experience with the level of ordinary

---

[7] "Br" refers to Defendants' Opening Brief in Support of Defendants' Joint Motion to Limit the Testimony of Expert, Dr. George Kesidis, Under Fed. R. Evid. 702.

skill in the art at the time of the filing of the patents-in-suit.

2.     **Dr. Kesidis undertook a review of the relevant literature and consulted with experts in the field**

In addition, Dr. Kesidis is fully qualified to testify about the level of ordinary skill in the cyber security field as of November 1998 because he took appropriate steps to educate himself about it long before being retained to act as an expert witness in this case. [Kesidis Decl. ¶ 8]. During his deposition, Dr. Kesidis testified that he consulted with experts in the field such as Philip Porras and Karl Levitt as early as the Fall of 2002 about cyber security issues. [Ex. C at 11:23-12:15]. These discussions represent only a small sample of the various steps Dr. Kesidis took to familiarize himself with the state of the art of cyber security. [Kesidis Decl. ¶¶ 7, 8]. He also spent several months during 2000 surveying the relevant literature. [*Id.* at ¶ 8].

Defendants argue that Dr. Kesidis did nothing to ascertain the level of skill in the art. [Br. at 4]. Yet their selective reading of his deposition transcript reveals only that he did not "do any specific research" or consult with anyone in order to determine "in doing [his] reports *in connection with this lawsuit*, what one of skill in the art would have known as of November 9th, 1998." [Ex. C at 10:3-18 (emphasis added)]. Defendants never asked Dr. Kesidis about the thorough efforts he made *outside* the context of the litigation to acquaint himself with the level of skill in the art at the relevant time. [*See* Kesidis Decl. ¶ 8]. The Defendants repeated questioning about the materials he reviewed *in preparing his expert report* likewise shed little light on Dr. Kesidis's prior and ongoing review of the relevant literature. [Ex. C at 368:11-370:7]. That Dr. Kesidis declined to consult with others *during this litigation* in order to preserve his objectivity and the independence of his analysis, in no way undermines the preparations he undertook when entering the field and his continued review of the literature during the six years he has been actively researching, teaching and writing in the field.

Therefore, to the extent any gaps existed in Dr. Kesidis' knowledge of the field of

the patents in November 1998, he successfully filled those gaps through appropriate consultation and review of the literature as part of his extensive work in the field, notwithstanding The Defendants narrow deposition questioning.  For this reason, too, The Defendants motion should be denied.

## IV.    CONCLUSION

For the reasons set forth above, SRI respectfully requests that the Court deny The Defendants motion to limit Dr. Kesidis's expert testimony.

Dated:  June 30, 2006                            FISH & RICHARDSON P.C.


By:  */s/ John F. Horvath*
    John F. Horvath (#4557)
    919 N. Market St., Ste. 1100
    P.O. Box 1114
    Wilmington, DE 19889-1114
    Telephone:  (302) 652-5070
    Facsimile:  (302) 652-0607

    Howard G. Pollack (CA Bar No. 162897)
    Katherine D. Prescott (CA Bar No. 215496)
    FISH & RICHARDSON P.C.
    500 Arguello St., Ste. 500
    Redwood City, CA 94063
    Telephone:  (650) 839-5070
    Facsimile:  (650) 839-5071

    Attorneys for Plaintiff/Counterclaim Defendant
    SRI INTERNATIONAL, INC.

50355860.doc

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 30, 2006, I electronically filed the **SRI INTERNATIONAL, INC.'S RESPONSE TO DEFENDANTS' JOINT MOTION TO LIMIT THE TESTIMONY OF EXPERT, DR. GEORGE KESIDIS, UNDER FEDERAL RULE OF EVIDENCE 702**with the Clerk of Court the attached document using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel.

| | |
|---|---|
| Richard L. Horwitz<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>1313 North Market Street, 6th Floor<br>P.O. Box 951<br>Wilmington, DE 19899 | Attorneys for Defendant-<br>Counterclaimant<br>Internet Security Systems, Inc., a<br>Delaware corporation, and Internet<br>Security Systems, Inc., a Georgia<br>corporation |
| Richard K. Herrmann<br>Morris James Hitchens & Williams<br>PNC Bank Center<br>222 Delaware Avenue, 10th Floor<br>P.O. Box 2306<br>Wilmington, DE 19899-2306 | Attorneys for Defendant-<br>Counterclaimant<br>Symantec Corporation |

I hereby certify that on June 30, 2006, I have mailed by Federal Express, the document(s) to the following non-registered participants:

| | |
|---|---|
| Holmes J. Hawkins, III<br>King & Spalding LLP<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309 | Attorneys for Defendant-<br>Counterclaimant<br>Internet Security Systems, Inc., a<br>Delaware corporation, and Internet<br>Security Systems, Inc., a Georgia<br>corporation |
| Paul S. Grewal<br>Renee DuBord Brown<br>Day Casebeer Madrid & Batchelder, LLP<br>20300 Stevens Creek Boulevard, Suite 400<br>Cupertino, CA 95014 | Attorneys for Defendant-<br>Counterclaimant<br>Symantec Corporation |

Theresa A. Moehlman                    Defendant-Counterclaimant
King & Spalding LLP                    Internet Security Systems, Inc., a
1185 Avenue of the Americas            Delaware Corporation, and Internet
New York, NY 10036                     Security Systems, Inc., a Georgia
                                       Corporation


                                       /s/ *John F. Horvath*
                                       John F. Horvath