## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation, | |
| Plaintiff and Counterclaim-Defendant, | |
| v. | Civil Action No. 04-CV-1199 (SLR) |
| INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia Corporation, and SYMANTEC CORPORATION, a Delaware corporation, | |
| Defendants and Counterclaim- Plaintiffs. | |

## SYMANTEC CORPORATION'S OPPOSITION TO SRI INTERNATIONAL, INC.'S MOTION TO EXCLUDE FROM EVIDENCE THE EXPERT OPINION OF DANIEL TEAL

Richard K. Herrmann (#405)
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel: (302) 888-6800
Fax: (302) 571-1750

*Attorneys for Defendant and Counterclaim Plaintiff Symantec Corporation*

OF COUNSEL:

Lloyd R. Day, Jr. (*pro hac vice*)
Robert M. Galvin (*pro hac vice*)
Paul S. Grewal (*pro hac vice*)
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014
Tel: (408) 873-0110
Fax: (408) 873-0220

Michael J. Schallop (*pro hac vice*)
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA 95014
Tel: (408) 517-8000
Fax: (408) 517-8121

Dated: June 30, 2006

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................1

II.  STATEMENT OF FACTS .....................................................................2

III.  ARGUMENT ........................................................................................6

    A.  Mr. Teal's intimate, first-hand knowledge of anticipating prior art qualifies him as an expert on the meaning of the art to one of ordinary skill...........................................................6

    B.  Rule 26 explicitly relieves Symantec of the burden of supplementing disclosures and responses with information otherwise made known to SRI including the identity of experts who may provide fact testimony. ..............................10

    C.  The quality of Symantec's corroboration of Mr. Teal's public use testimony is an issue for the jury, not the Court...................12

IV.  CONCLUSION....................................................................................16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aguayo v. Universal Instruments Corp.,*
356 F. Supp. 2d 699 (S.D. Tex. 2005) ....................................................... 16

*Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g,*
57 F.3d 1190 (3d Cir. 1995) ..................................................... 9

*Conoshenti v. Public Serv. Elec. & Gas Co.,*
364 F.3d 135 (3d Cir. 2004) ................................................ 13

*Daubert v. Merrell Dow Pharm., Inc.,*
509 U.S. 579 (1993).................................................... 16

*Endress & Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.,*
122 F.3d 1040 (Fed. Cir. 1997) ............................................ 1, 6, 7

*eSpeed, Inc. v. BrokerTec USA, LLC,*
404 F. Supp. 2d 575 (D. Del. 2005).................................................... 7

*Finnegan Corp. v. Int'l Trade. Comm'n,*
180 F.3d 1354 (Fed. Cir. 1999) ........................................ 12

*Freedom Wireless, Inc v. Boston Communics. Group, Inc.,*
369 F. Supp. 2d 155 (D. Mass. 2005)................................................ 7

*Gomez v. Rivera Rodriguez,*
344 F.3d 103 (1st Cir. 2003)................................................ 9

*Heidelberger Druckmaschinen AG v. Ohio Elec. Engravers Inc.,*
No. 98 CV 7946, 2000 WL 631382 (N.D. Ill. May 12, 2000) ..................................... 7

*Moore v. Wesbar Corp.,*
701 F.2d 1247 (7th Cir. 1983) .................................................. 8

*Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.,*
262 F.3d 1344 (Fed. Cir. 2001) ........................................ 16

*Steckyk v. Bell Helicopter Textron, Inc.,*
295 F.3d 408 (3d Cir. 2002) ................................................ 1, 10

**Statutes**

35 U.S.C. § 102.................................................... 6

35 U.S.C. § 103.................................................... 6

Fed. R. Civ. P. 26 .................................................. 10

## TABLE OF AUTHORITIES (CONT.)

**Page**

Fed. R. Civ. P. 26(a) ............................................................................................ 12

Fed. R. Civ. P. 702 .............................................................................................. 6

Fed. R. Civ. P. Rule 26(e) ............................................................................... 1, 11

Fed. R. Evid. 703 ................................................................................................ 10

## I.    __INTRODUCTION__

Symantec has retained Daniel Teal as an expert on a network intrusion detection system known as the NetRanger Security Management System ("NetRanger"). Confronted with Mr. Teal's well-recognized understanding of the NetRanger system, SRI contends that Mr. Teal's intimate, first-hand knowledge of NetRanger acquired prior to this litigation actually ***disqualifies*** him as an expert on the scope and content of the NetRanger prior art.  SRI then contends that Mr. Teal should be precluded from offering testimony on NetRanger as a fact witness, because Symantec did not further identify Mr. Teal by amending its initial disclosures and interrogatory responses pursuant to Fed. R. Civ. P. 26(e) after Mr. Teal was disclosed as an expert witness according to Fed. R. Civ. P. 26(a)(2) and the expert disclosure schedule set by the Court.

The Federal Circuit has explicitly rejected the notion that a technical expert's extraordinary knowledge renders him unfit to offer opinion testimony on the understanding of one of ordinary skill in the art.  *See Endress & Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997).  Even if that were not the law (which it is), the Third Circuit has explicitly affirmed that "[u]nder Rule 703 of the Federal Rules of Evidence, experts may rely on facts from firsthand knowledge or observation." *Steckyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002). In any event, Rule 26(e) puts to rest SRI's claim that Symantec should have undertaken the wasteful time and expense of disclosing Mr. Teal's identity multiple times.  Under Rule 26(e), a party is obligated to supplement its disclosures and responses only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Here, Symantec and a third-party produced over 70 documents identifying Mr. Teal and his work on NetRanger as early as

1

November 2005, six months before the final May 12, 2006 deadline for Rule 26(e)

supplementation under the Court's Scheduling Order. In response to SRI's invalidity

contention interrogatory asking for three individuals most knowledgeable about

Symantec's invalidity claims, Symantec explicitly referred to its forthcoming expert

disclosures, to which SRI did not object. If that were not sufficient, Symantec then wrote

to SRI to identify Mr. Teal as one such expert on February 14, 2006, almost three months

before the Rule 26(e) deadline.

As a last gasp at relief, SRI argues that Mr. Teal's testimony on the public use of

NetRanger is not adequately corroborated by documentary evidence. SRI's articulation

of Symantec's burden in meeting the standard for corroboration at this stage of the

litigation is misguided as a matter of law and ignores the voluminous documentary

support for his testimony. In any event, the quality of Symantec's corroboration of Mr.

Teal's public use testimony is more than sufficient to survive SRI's disguised summary

judgment motion. SRI's motion should therefore be denied.

## II.     STATEMENT OF FACTS

SRI's assertion that Mr. Teal is "simply a fact witness proffered by Symantec to

authenticate and describe a particular piece of prior art"[1] ignores Mr. Teal's other

impeccable credentials in the fields of computer network security and intrusion detection.

After receiving a Bachelor of Science degree in Electrical Engineering in 1989

from the Massachusetts Institute of Technology, Daniel Teal served as an officer in the

United States Air Force, where his responsibilities included protecting Air Force

---

[1] SRI's Opening Brief in Support of Its Motion to Exclude from Evidence the Testimony of Daniel Teal ("Opening Br.") at 7 [D.I. 274].

networks and computer systems from potential intruders.[2]  From 1993-1994, Mr. Teal

served as the Air Force program manager, senior technical engineer, and system architect

for the Distributed Intrusion Detection System (DIDS), a real-time system for detecting

and monitoring intrusion attempts against Air Force networks by outside attackers and

malicious internal users.[3]

In 1995, Mr. Teal co-founded the WheelGroup Corporation ("WheelGroup"),

which designed and developed the pioneering network-based intrusion detection system

known as "NetRanger."[4]  From 1995 to 1998, Mr. Teal served as WheelGroup's Chief

Scientist, and was both the main system architect and the primary software

engineer/developer for the initial versions of the NetRanger product.[5]  After WheelGroup

was acquired by Cisco Systems, Incorporated in 1998, Mr. Teal served as a senior

software engineer for Cisco until 1999 and was responsible for research and development

tasks for various network security products including NetRanger.[6]  Mr. Teal subsequently

co-founded CoreTrace Corporation, a computer security firm, and currently serves as

President of CoreTrace.[7]

Underscoring Mr. Teal's reputation as a computer network security and intrusion

detection expert, Mr. Teal is identified in over 70 documents produced from the files of

Symantec's designated custodians and subpoenaed third parties (other than Mr. Teal

---

[2] 4/19/06 Expert Report of Daniel Teal ("Teal Rep.") ¶ 3, 6 [Declaration of Paul S. Grewal in Support of Opposition to Exclude Expert Opinion of Daniel Teal ("Grewal Decl.") Ex. A].

[3] *Id.* ¶ 6 [Grewal Decl. Ex. A].

[4] *Id.* ¶ 4.

[5] *Id.*

[6] *Id..*

[7] *Id.* ¶ 1.

himself).  For example, on November 15, 2005, third party Dorothy Denning produced a piece written in 1991 by Mr. Teal and others entitled "DIDS (Distributed Intrusion Detection System)-Motivation, Architecture, and an Early Prototype."[8]  On December 6, 2005 Symantec produced another publication co-authored by Mr. Teal entitled "NetRanger High-Level Overview Version 1-1."[9]  SRI's own document production, dating back to October 2005, included no less than 63 unique documents referencing Mr. Teal.[10]

In light of Mr. Teal's significant computer network security and intrusion detection experience, Symantec retained Mr. Teal as a testifying expert in this matter.  In accordance with Fed. R. Civ. P. 26(a)(2)(C) and 26(e), Paragraph 2(c) of the Court's Scheduling Order, and Symantec's response to SRI's invalidity contention interrogatory,[11] Symantec disclosed Mr. Teal as an expert on February 14, 2006.[12] Pursuant to the parties' stipulated deadline for tendering reports on issues for which they have the burden of proof, Symantec tendered a 20-page expert report from Mr. Teal on April 19, 2006.[13]  Mr. Teal's expert report addressed a variety of issues pertaining to NetRanger, including its documentation,[14] functionality,[15] and commercial success.[16]  Mr.

_____

[8] DD_0000018-DD_0000034 [Grewal Decl. Ex. B].

[9] SYM_P_0531123-SYM_P_0531139 [Grewal Decl. Ex C].

[10] Grewal Decl. ¶ 3.

[11] Symantec Corporation's Second Supplemental Responses to SRI International, Inc.'s Interrogatories Nos. 6 and 11 [D.I. 275, Ex. D].

[12] 2/14/06 Letter from Jonathan Loeb to Katherine Prescott [Grewal Decl. Ex. D].

[13] Teal Rep. [Grewal Decl. Ex. A].

[14] *Id.* ¶¶ 12-26.

[15] *Id.* ¶¶ 27-43.

[16] *Id.* ¶¶ 44-49.

Teal further expressed the opinion that each of the asserted claims of United States Patent Nos. 6,484,203 ("the '203 patent"), 6,711,615 ("the '615 patent"), and 6,708,212 ("the '212 patent") was disclosed by the NetRanger prior art "in detail sufficient to enable one of ordinary skill in the art to practice the claimed invention without undue experimentation" or was obvious to "one of ordinary skill in the art" in light of NetRanger in combination with other prior art references.[17]  Mr. Teal also discussed his experience with the Air Force's Automated Security Incident Management Program and its deployment of the Network Security Monitor developed by Todd Heberlein at the University of California at Davis.[18]

Pursuant to the Court's Scheduling Order, as amended by stipulation of the parties, Symantec tendered Mr. Teal for deposition on May 24, 2006.[19]  Less than two weeks before the deposition, SRI served Mr. Teal with a subpoena requesting a wide array of documents, including "[a]ll documents concerning NetRanger" and "[a]ll documents concerning WheelGroup."[20]  With SRI's full consent as to timing, Mr. Teal produced 2,884 pages (filling approximately one-and-a-half banker's boxes) responsive to the subpoena on May 19, 2006.[21]

Mr. Teal then appeared at deposition on May 24.  He was questioned for over six-and-a-half hours on a wide range of topics, including his knowledge about the field of

---

[17] *Id.* ¶¶ 50-52, 53-61.

[18] *Id.* ¶ 62.

[19] 5/16/06 Letter from Renee Brown to Michael Rosen [Grewal Decl. Ex. E].

[20] 5/12/06 Subpoena for Daniel M. Teal [Grewal Decl. Ex. F].

[21] 5/19/06 Letter from Paul Grewal to Michael Rosen et al. [Grewal Decl. Ex. G].

intrusion detection,[22] his specific experiences at WheelGroup and Cisco,[23] his opinion of the validity of the asserted patents,[24] and the basis for his opinions.[25] Recognizing SRI's right to depose Mr. Teal for up to ten hours, counsel for Symantec offered to tender Mr. Teal for the balance of the time allotted on another day prior to the Court-ordered deadline for expert discovery.[26] SRI did not accept this offer, choosing instead to allow the deadline to pass without comment.

## III.  ARGUMENT

### A.  Mr. Teal's intimate, first-hand knowledge of anticipating prior art qualifies him as an expert on the meaning of the art to one of ordinary skill.

Grudgingly conceding that Mr. Teal "appears to be knowledgeable about NetRanger,"[27] SRI nevertheless argues that because "Mr. Teal's testimony is couched in terms of what he believes, as the designer and inventor of the product," his opinions "concerning the validity of the patents-in-suit in view of NetRanger . . . would be irrelevant and inadmissible because they would not aid the jury to understand what the NetRanger references would teach or suggest to *one of ordinary skill* in the art."[28] SRI's argument, however, conflates the "skill" that qualifies an expert to offer opinion testimony under Fed. R. Civ. P. 702 with the "ordinary skill in the art" applicable to anticipation and obviousness determinations under 35 U.S.C. §§ 102 and 103.

---

[22] *See, e.g.,* Teal Tr. at 26:15-22; 62:5-13 [Grewal Decl. Ex. H].

[23] *See, e.g., id.* at 29:16-30:12; 68:5-69:23.

[24] *See, e.g., id.* at 171:20-172:13.

[25] *See, e.g., id.* at 292:19-293:8.

[26] *Id.* at 282:9-16.

[27] Opening Br. at 8 [D.I. 274].

[28] *Id.* [D.I. 274] (emphasis in original).

In *Endress & Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, the Federal Circuit addressed this very issue, and specifically rejected the notion that "a person of *exceptional* skill in the art would be disqualified from testifying as an expert because not ordinary enough." 122 F.3d at 1042. The defendants in *Endress* argued that the plaintiff's expert, a professor of electrical engineering, was not "a person of ordinary skill in the art" and therefore "unqualified to testify as an expert witness at all" on the appropriate scope of the inventions claimed in the patent-in-suit. *Id.* The Federal Circuit disagreed, explaining that "[t]he 'person of ordinary skill in the art' is a theoretical construct used in determining obviousness under § 103, and is not descriptive of some particular individual." *Id.* It then held that in light of the expert's "substantial credentials as an electrical engineer . . . the decision to permit him to testify was well within the discretion of the trial judge." *Id.* Other courts, including the District of Delaware, have applied *Endress* in similarly rejecting the flawed notion that the patent law's hypothetical "person of ordinary skill in the art" standard somehow precludes experts of extraordinary skill like Mr. Teal from testifying. *See e.g. eSpeed, Inc. v. BrokerTec USA, LLC*, 404 F. Supp. 2d 575, 581 (D. Del. 2005) (noting "the Federal Circuit's determination that the person of ordinary skill in the art is a hypothetical person"); *Freedom Wireless, Inc. v. Boston Communics. Group, Inc.*, 369 F. Supp. 2d 155, 157 n.1 (D. Mass. 2005) ("As an inventor, Hogan would qualify as one of exceptional skill in the art and would have been competent to testify as to what would have been obvious to one of ordinary skill in the art."); *Heidelberger Druckmaschinen AG v. Ohio Elec. Engravers Inc.*, No. 98 CV 7946, 2000 WL 631382, at 4 n.4 (N.D. Ill. May 12, 2000) ("One with greater than ordinary skills can still provide useful testimony as to the hypothetical person of ordinary skill."). Indeed, prior to *Endress*, the Seventh Circuit rejected a challenge to an engineering

7

professor's expert testimony on precisely the same grounds, noting that "[a]lthough he is a person of more than the 'ordinary skill' required by the statute, he is in many ways well suited to assist the court in deciding what would be obvious to such a person." *Moore v. Wesbar Corp.*, 701 F.2d 1247, 1253 (7th Cir. 1983).

Mr. Teal's "skill" under Fed. R. Civ. 702 is unassailable. He holds an undergraduate degree in electrical engineering, and has worked for the past 17 years in the field of computer networking security and intrusion detection. He is the inventor of the very NetRanger system that anticipates and renders obvious three of the four patents-in-suit. He co-founded a company to commercialize NetRanger, and authored numerous NetRanger publications. He based his opinions not only on his own experience with NetRanger, but, as made clear in a deposition excerpt relied upon by SRI, his review of NetRanger user manuals and other NetRanger documentation:

> Q.    (BY MR. MILLER): When you say you compared the claims to the Netranger System, what, precisely, did you compare the claims to? I want to know exactly what you mean by "NetRanger system."
>
> A.    I compared the claims to all my knowledge, to NetRanger, being the original author, architect, original coder of the NetRanger system, being a founder of WheelGroup, going through the user's manuals, refreshing my memory, going through all the documentation that we've discussed here today; and going through that, to me, it was apparent there were the – when I reached those conclusions, that why I said NetRanger was already doing what I stated NetRanger was already doing.
>
> Q.    Based on your knowledge of the product as a coder of the product, correct?
>
> A    Correct, based upon your knowledge as the inventor of the system, of the NetRanger system––
>
> Q.    Based on all of the documents taken together?
>
> A.    Based on all of the documents taken together.[29]

---

[29] Teal Tr. at 257:4-25 [Grewal Decl. Ex. H].

He further based his opinions on the validity of the patents-in-suit in light of the

NetRanger references on the meaning of those references to one of ordinary skill in the

art:

> Q.  (BY MR. MILLER)  Okay.  Are you doing that with NetRanger and HP
> OpenView?  Are you performing an obviousness analysis as to any claim
> of the patents-in-suit by combining HP OpenView, which you say is a
> third-party product, and NetRanger?
>
> MS. BROWN:  Objection, the document speaks for itself.
>
> A.  I would point out in my expert report, right here, "It would have been
> obvious *to one of ordinary skill* to combine statistical profiling methods
> for anomaly detection," and its described, "with NetRanger if a
> commercial grade was available."  I don't see where I'm talking about HP
> OpenView when I'm stating this here.[30]

In short, he is precisely the type of witness qualified under Fed. R. Evid. 702 to offer his

testimony on anticipation and obviousness in the form of an expert opinion.[31]

---

[30] *Id.* at 253:3-17 (emphasis added).

[31] SRI's reliance on *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003) is
inapposite.  In *Gomez*, a party sought to preclude a witness with specialized knowledge
from offering testimony regarding disputed facts based on the opposing party's failure to
tender a report of the witness's proposed testimony pursuant to Fed. R. Civ. P.
26(a)(2)(B).  Observing that the witness would testify only as to events in which he was a
direct participant, and that his proposed fact testimony therefore did not fall within the
scope of opinion testimony under Fed. R. Civ. P. 702, the First Circuit reversed the trial
court and held that no report was required.

In this case, Mr. Teal's testimony goes beyond "his personal role in the unfolding events
at issue."  344 F.3d at 114.  Mr. Teal will offer expert testimony on the meaning of
various NetRanger prior art references to the hypothetical person of ordinary skill in the
art.  Teal Rep. at ¶¶ 50-61 [Grewal Decl. Ex. A].  This testimony clearly falls within the
scope of Rule 702, *see Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton
Harbor Eng'g*, 57 F.3d 1190, 1202 n.16 (3d Cir. 1995) ("The essential difference
[between Rule 701 and 702], however, is that a qualified expert may answer hypothetical
questions."), which is why in recognition of its obligations under Rule 26(a)(2)(B),
Symantec tendered a 20-page report of Mr. Teal's proposed testimony, along with
exhibits.

**B.**     **Rule 26 explicitly relieves Symantec of the burden of supplementing disclosures and responses with information otherwise made known to SRI including the identity of experts who may provide fact testimony.**

Unable to dispute that Symantec (1) produced 70 documents referencing Mr. Teal as early as November 2005, (2) referred SRI—without any objection by SRI—to its forthcoming expert disclosures in response to SRI's interrogatory requesting the identification of the three individuals most knowledgeable about Symantec's invalidity claims, (3) disclosed Mr. Teal as an expert three months before the final deadline for Fed. R. Civ. P. 26(e) supplementation, (4) provided an extensive expert report from Mr. Teal in accordance with the Court's Scheduling Order and (5) tendered Mr. Teal for ten hours of deposition in accordance with that same Order, SRI argues instead that Symantec should have supplemented its Rule 26(a)(1) initial disclosures and interrogatory responses to disclose Mr. Teal separately as a fact witness because "he intends to testify about the NetRanger software product he helped develop."[32]  But this argument flies in the face of explicit language in Fed. R. Evid. 703 authorizing experts to rely on firsthand knowledge or observation and equally explicit language in Fed. R. Civ. P. 26 that relieves Symantec of the burden of such redundant exercises.

"Under Rule 703 of the Federal Rules of Evidence, experts may rely on facts from firsthand knowledge or observation." *Steckyk*, 295 F.3d at 414.  Indeed, if the facts or data are of the type "reasonably relied upon" by experts in the relevant field, the facts or data need not even be independently admissible in evidence. *See id.*  SRI's argument suggests that experts disclosed pursuant to Fed. R. Civ. P. 26(a)(2) may not testify based on such firsthand knowledge or observation unless they are separately disclosed as fact

---

[32] Opening Br. at 7 [D.I. 274].

witnesses under Fed. R. Civ. P. 26(a)(1). Nothing in Rule 26 or Rule 703, however, imposes any such restriction. Moreover, the Court's Scheduling Order rejects such a notion entirely by providing in Section 2(g) that within one month of the close of expert discovery, parties must disclose "any expert witness *who is also expected to give fact testimony*."[33]

In any event, under Rules 26(e)(1) and 26(e)(2), a party must "supplement at appropriate intervals its disclosures under subdivision (a) only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). SRI focuses the Court's attention exclusively on the general duty to supplement, without any mention of the fact that Rule 26(e) does not apply where, as here, the responding party has long been aware of the "additional or corrective information."

Here, third party Dorothy Denning produced documents to SRI identifying Mr. Teal and his work on NetRanger in November 2005. That same month, Symantec produced its own documents referencing Mr. Teal and NetRanger. In fact, SRI received over 70 documents referencing Mr. Teal.[34] Nor was Mr. Teal previously unknown to SRI, as confirmed by SRI's own document production, which included at least 63 documents referring to Mr. Teal.[35] After Symantec identified Mr. Teal as an expert in writing on February 14, 2006, SRI elected to delay serving any subpoena on Mr. Teal. On April 21, 2006, again in accordance with the Court's Scheduling Order, Symantec served a 20-page expert report from Mr. Teal outlining his opinions and the factual bases

---

[33] 6/30/05 Scheduling Order at 4 (emphasis added) [Grewal Decl. Ex. I].

[34] Grewal Decl. ¶ 4.

[35] Grewal Decl. ¶ 3.

for those opinions. Just 12 days before his deposition was scheduled, SRI finally

subpoenaed Mr. Teal for documents on a wide variety of issues, and in accordance with

the subpoena, Mr. Teal produced 2,884 pages of responsive material. Mr. Teal then

appeared for deposition for up to ten hours, only to be dismissed by SRI after less than

seven hours without any request that he return for the balance of his scheduled time.

Under such circumstances, SRI has no basis whatsoever for claiming that Symantec is

guilty of "improper withholding of Mr. Teal's identification and documents" and that this

"prevented SRI from conducting full and proper fact discovery upon him."[36]

**C.    The quality of Symantec's corroboration of Mr. Teal's public use testimony is an issue for the jury, not the Court.**

In a final effort to shield the jury from Mr. Teal's NetRanger expertise, SRI

challenges the sufficiency of Symantec's evidence corroborating Mr. Teal's testimony on

public use of NetRanger. A public use challenge to the validity of a patent under 35

U.S.C. §§ 102(a) and 102(b) indeed requires corroboration of witness testimony, and it is

Symantec's burden at trial to prove such public use by clear and convincing evidence.

---

[36] SRI's suggestion that Symantec, rather than Mr. Teal, should have produced documents from Mr. Teal's files pursuant to Fed. R. Civ. P. 34 is flawed for several reasons. First, Fed. R. Civ. P. 26, not Rule 34, governs the production of data and other information considered by a retained expert in forming his opinions. Under Fed. R. Civ. P. 26(a)(2)(C), these materials are to be made "at the times and in the sequence directed by the court." By disclosing Mr. Teal's bases for his opinion in accordance with the Court's Scheduling Order, Symantec has satisfied this obligation. Second, even if Mr. Teal's documents fall outside of Rule 26(a)(2)(C) (which they do not), SRI has conceded the documents lie outside of Symantec's possession, custody, and control, by serving a subpoena on Mr. Teal under Fed. R. Civ. P. 45 rather than a motion to compel production of documents on Symantec under Fed. R. Civ. 37(a). Finally, to the extent that Mr. Teal's files are under Symantec's possession, custody or control (which they are not), Mr. Teal—like SRI's expert George Kesidis—was not among those document custodians agreed to by the parties from whose files documents were to be collected, reviewed, and produced, *see* 9/20/05 Letter from Jonathan Loeb to Gina Steele [Grewal Decl. Ex. J], or the five additional Symantec custodians that SRI was entitled to designate. *See* 11/30/05 Letter from Katherine Prescott to Jonathan Loeb [Grewal Decl. Ex. K].

*See Finnegan Corp. v. Int'l Trade. Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999). But a motion challenging the sufficiency of evidence upon the close of fact discovery is a motion for summary judgment, and in deciding a motion for summary judgment the Court should "resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party." *Conoshenti v. Public Serv. Elec. & Gas Co.,* 364 F.3d 135, 140 (3d Cir. 2004). With such doubts resolved and inferences drawn in Symantec's favor, or even without, Symantec's evidence corroborating Mr. Teal's testimony on public use of NetRanger is more than sufficient for a reasonable jury to find the '203, '212 and '615 patents invalid under 35 U.S.C. §§ 102(a), 102(b) and 103.

Claiming that "several key sections of Mr. Teal's expert report lack corroboration,"[37] SRI first contends that "[t]he entirety of Paragraphs 40-42, concerning 'automatic integration and correlation' of network traffic data . . . is devoid of evidentiary support."[38] But even a cursory review of Mr. Teal's report belies SRI's contention. As Mr. Teal himself identified in detailed claim charts attached as Ex. E of his report, numerous user's guides, overviews, and government test materials produced by Symantec describe how the NetRanger "Director" automatically received and integrated alarms from NetRanger "NSXs" that combined a packet filtering device and a network traffic sensor.[39] For example, in a document titled "NetRanger Real-Time Network Intrusion Detection Performance and Security Test," the National Security Agency provides "an overview of the security functionality" of NetRanger in exhaustive detail. This document was dated April 30, 1997, more than a year before the application for the first patent-in-

---

[37] Opening Br. at 12 [D.I. 274].

[38] *Id.*

[39] Teal Rep. Ex. E [Grewal Decl. Ex. A].

suit was filed, and specifically addressed the system's integration and correlation functionality," noting in Appendix B that "[i]nstead of multiple alarms for an alarm condition that is identical to a previous alarm condition (with identical parameters – Source IP, Target IP)—only one alarm ICON was generated."[40]  Similarly, in "NetRanger Capabilities and Test Scenerios," dated February 24, 1997, Wheel Group described how "[t]he Director consolidates duplicate alarms into a single icon and Open-View database entry. . . . This significantly reduces the number of alarm icons an operator must keep track of.  The consolidation threshold for duplicate alarms is configurable."[41]  As Mr. Teal explained in his deposition, the computer code itself, known as "SQL queries," further confirmed that NetRanger correlated reports of suspicious activity.[42]

Nor is it accurate at all, as SRI further claims, that "other sections, concerning NetRanger's commercial success and functionality, similarly *lack any documentary basis*."[43]  Once again, Mr. Teal himself identified numerous documents substantiating his proposed testimony,[44] including detailed sales reports, customer purchase orders, press

_____

[40] SYM_P_0074340 [Grewal Decl. Ex. L]; *see also*  SYM_P_0077357, SYM_P_0077370 [Grewal Decl. Ex. M] ("NetRanger Overview" depicting same).

[41] SYM_P_0074313 [Grewal Decl. Ex. L].

[42] Teal Tr. at 101:17-104:12 [Grewal Decl. Ex. H]; SYM_P_0074926-SYM_P_0074947 [Grewal Decl. Ex. N] (describing SQL database queries included in NetRanger used to correlate alarms).

[43] Opening Br. at 12 (emphasis added) [D.I. 274].

[44] Of course, there is no requirement that Mr. Teal's testimony on the commercial success of NetRanger, a prior art reference, be corroborated at all, as the commercial success of NetRanger is irrelevant to its public use and therefore the anticipation or obviousness of the patents-in-suit in view of NetRanger.  In any event, as discussed below, Symantec has provided substantial evidence corroborating his testimony on NetRanger's substantial commercial success.

releases, high-level overviews, and no less than four separate user's guides.[45] The sales

report and purchase orders identify in precise terms specific NetRanger customers, end

users, purchase dates, and purchase amount.[46] In addition, these documents, along with

various press releases,[47] confirm that each version of NetRanger described in the various

user's guides was offered and sold to customers.[48] The high level overview[49] and user's

guides provide hundreds of pages of extensive details on the functionality of the

NetRanger system, including, for example, its performance capabilities,[50] its

communication system,[51] its director system,[52] and dozens of other operational features.[53]

    These documents also corroborate Mr. Teal's opinion that the patents-in-suit were

obvious. For example, regarding Claim 7 of the '615 patent, the documents describe how

NetRanger in combination with the "EMERALD 97" and "Statistical Methods"

references practiced each of the claim limitations, such as "deploying a plurality of

---

[45] SYM_P_0526566-SYM_P_0526735 [Grewal Decl. Ex. O]; SYM_P_0075283-SYM_P_0075535) [Grewal Decl. Ex. P]; SYM_P_0071736-SYM_P_0071953 [Grewal Decl. Ex. Q]; SYM_P_0074948-SYM_P_0075282 [Grewal Decl. Ex. R].

[46] Teal Report, Ex. C at C-1-C-10 [Grewal Decl. Ex. A].

[47] SYM_P_0078627-SYM_P_0078630; SYM_P_0077928-SYM_P_0077931; SYM_P_0074722-SYM_P_0074723; SYM_P_0074647-SYM_P_0074648; SYM_P_0074525-SYM_P_0074526 [Grewal Decl. Ex. S].

[48] ISS_02126304-ISS_02126307 (describing WheelGroup partnership with IBM Global Services to distribute NetRanger); ISS_02126320-ISS_02126327 (describing NetSolve May through September 1997 deployment of NetRanger); ISS_02126355-ISS_02126367 (February 1997 Fortune Magazine article on NetRanger); ISS_02126350-ISS_02126354 (May 1997 description of NetRanger) [Grewal Decl. Ex. T].

[49] SYM_P_0531123-SYM_P_0531139 [Grewal Decl. Ex. C].

[50] SYM_P_0526566-SYM_P_0526735 at I-5 [Grewal Decl. Ex. O].

[51] *Id.* at I-9.

[52] *Id.* at I-20.

[53] *Id.* at I-21-E-4.

network monitors in the enterprise network,"[54] "detecting, by the network monitors, suspicious network activity,"[55] and "utilizing a statistical detection method."[56]

While SRI may take issue with Mr. Teal's credibility, "[t]he Advisory Committee Note for Rule 56 of the Federal Rules of Civil Procedure explicitly recognizes that summary judgment is inappropriate in circumstances where credibility is an issue." *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 262 F.3d 1344, 1357 (Fed. Cir. 2001) (Dyk, J., dissenting). Cross-examination and impeachment, not summary judgment, provide the appropriate means of protecting SRI's interest from an erroneous finding of invalidity. *Cf. Aguayo v. Universal Instruments Corp.*, 356 F. Supp. 2d 699, 746 (S.D. Tex. 2005) ("The 'corroboration rule' applies to counterbalance the self-interest of a testifying inventor, but cross-examination and impeachment normally protect patentees from erroneous findings of invalidity.").

## IV.    CONCLUSION

SRI's frustration at the strength of Mr. Teal's testimony is no basis to exclude him from trial. If SRI wishes to highlight any weaknesses it perceives in Mr. Teal's testimony, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" Mr. Teal's testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). SRI's motion to exclude Mr. Teal's testimony should be denied.

---

[54] SYM_P_0077357, SYM_P_0077367, SYM_P_0077364 [Grewal Decl. Ex. M], SYM_P_0074265 [Grewal Decl. Ex. L at 4].

[55] SYM_P_0074298 [Grewal Decl. Ex. L].

[56] SYM_P_0068936-SYM_P_0068942 [Grewal Decl. Ex. U].

Dated:  June 30, 2006

By:   _/s/ Richard K. Herrmann_ _____
Richard K. Herrmann (#405)
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel: (302) 888-6800
Fax: (302) 571-1750
rherrmann@morrisjames.com

_Attorneys for Defendant and Counterclaim-
Plaintiff Symantec Corporation_

OF COUNSEL:

Lloyd R. Day, Jr. (_pro hac vice_)
Robert M. Galvin (_pro hac vice_)
Paul S. Grewal (_pro hac vice_)
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA  95014
Tel:  (408) 873-0110
Fax: (408) 873-0220

Michael J. Schallop (_pro hac vice_)
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA  95014
Tel:  (408) 517-8000
Fax:  (408) 517-8121

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2006, I electronically filed the foregoing document, **SYMANTEC CORPORATION'S OPPOSITION TO SRI INTERNATIONAL, INC.'S MOTION TO EXCLUDE FROM EVIDENCE THE EXPERT OPINION OF DANIEL TEAL,** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

John F. Horvath, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE  19801

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE  19801

Additionally, I hereby certify that on the 30th day of June, 2006, the foregoing document was served via email and by Federal Express on the following non-registered participants:

Howard G. Pollack, Esq.
Michael J. Curley, Esq.
Fish & Richardson
500 Arguello Street, Suite 500
Redwood City, CA  94063
650.839.5070

Holmes Hawkins, III, Esq.
King & Spalding
191 Peachtree Street
Atlanta, GA  30303
404.572.4600

Theresa Moehlman, Esq.
King & Spalding LLP
1185 Avenue of the Americas
New York, NY  10036-4003
212.556.2100

_____*/s/ Richard K. Herrmann*_____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801
(302) 888-6800
rherrmann@morrisjames.com

*Counsel for Symantec Corporation*