# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SRI INTERNATIONAL, INC.,
a California Corporation,

   Plaintiff and
   Counterclaim-Defendant,

  v.

INTERNET SECURITY SYSTEMS, INC.,
a Delaware corporation,
INTERNET SECURITY SYSTEMS, INC.,
a Georgia Corporation, and
SYMANTEC CORPORATION,
a Delaware corporation,

   Defendants and
   Counterclaim- Plaintiffs.

Civil Action No. 04-CV-1199 (SLR)

## DEFENDANTS' JOINT OPPOSITION TO SRI INTERNATIONAL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO ANTICIPATION BY COMBINATION OF REFERENCES

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel.: (302) 984-6000
Fax: (302) 658-1192

OF COUNSEL:
Holmes J. Hawkins III
Natasha H. Moffitt
KING & SPALDING LLP
191 Peachtree St.
Atlanta, GA 30303
Tel: (404) 572-4600
Fax: (404) 572-5145

Theresa A. Moehlman
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel.: (212) 556-2100
Fax: (212) 556-2222

Attorneys for Defendant
INTERNET SECURITY SYSTEMS, INC.,
a Delaware Corporation and
INTERNET SECURITY SYSTEMS, INC.,
a Georgia Corporation

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
& WILLIAMS, LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel: (302) 888-6800
Fax: (302) 571-1750

OF COUNSEL:
Lloyd R. Day, Jr. (*pro hac vice*)
Robert M. Galvin (*pro hac vice*)
Paul S. Grewal (*pro hac vice*)
DAY CASEBEER MADRID
& BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014
Tel: (408) 873-0110
Fax: (408) 873-0220

Michael J. Schallop (*pro hac vice*)
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA 95014
Tel: (408) 517-8000
Fax: (408) 517-8121

Attorneys for Defendant
SYMANTEC CORPORATION

Dated: June 30, 2006

TABLE OF CONTENTS

Page No.

I.     INTRODUCTION ................................................................................... 1

II.    SRI'S MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD
       BE DENIED .......................................................................................... 1

       A.     Legal Standard ......................................................................... 1

       B.     Defendants Will Not Assert Certain Printed Publications Can Be
              Combined for Purposes of Anticipation .......................................... 3

       C.     Defendants Have Identified Printed Publications That Are
              Properly Combined for Purposes of Anticipation Based on
              Incorporation by Reference ........................................................... 5

       D.     SRI Is Not Entitled to Summary Judgment on Defendants
              Anticipation Defenses Based on Prior Public Use............................. 7

              1.     Defendants' evidence of prior public use is corroborated. ................ 8

              2.     DIDS Was in Public Use ........................................................... 9

                     a)     DIDS was in public use at UC Davis.................................... 10

                     b)     DIDS was in public use outside of UC Davis....................... 11

              3.     GrIDS Was in Public Use ......................................................... 13

              4.     HP OpenView Was in Public Use ............................................... 14

III.   CONCLUSION..................................................................................... 14

TABLE OF AUTHORITIES

Page No.

**Cases**

*Advanced Display Sys., Inc. v. Kent State Univ.,*
   212 F.3d 1272 (Fed. Cir. 2000) ................................................................ 2

*Baxter Int'l, Inc. v. Cobe Lab., Inc.,*
   88 F.3d 1054 (Fed. Cir. 1996) ............................................................... 10

*CFM Corp. v. Dimplex North America Ltd.,*
   2005 U.S. Dist. LEXIS 5562 (N.D. Ill. 2005) ....................................... 2

*Conoshenti v. Public Serv. Elec. & Gas Co.,*
   364 F.3d 135 (3d. Cir. 2004) ................................................................... 2

*In re Saunders,*
   444 F.2d 599 (C.C.P.A. 1971) ................................................................ 4

*Invitrogen Corp. v. Biocrest Mfg., L.P.,*
   424 F.3d 1374 (Fed. Cir. 2005) .............................................................. 3

*Netscape Communs. Corp. v. Konrad,*
   295 F.3d 1315 (Fed. Cir. 2002) .............................................................. 3

*Rheox, Inc. v. United Catalysts, Inc.,*
   1995 WL 526542 (D. N.J. 1995) ........................................................... 2

**Statutes**

35 U.S.C. § 102(b) ....................................................................................... 2

35 U.S.C. § 103 ............................................................................................ 7

Fed. R. Civ. P. 56(c) .................................................................................... 1

## I.    INTRODUCTION

SRI's motion for partial summary judgment focuses on whether certain prior art publications can be properly combined for purposes of anticipation based on the doctrine of incorporation by reference.  But SRI seeks sweeping relief that is far beyond what it is entitled.  While there are certain combinations of publications identified by SRI that Defendants will not press at trial as anticipatory references,[1] other combinations satisfy the requirements for incorporation by reference set forth by the Federal Circuit.  While these references do not use the words "incorporation by reference," they identify with particularity the specific material to be incorporated in a manner that makes clear that the cited material should be considered as part of the reference.

SRI's motion, however, is not limited to challenging incorporation by reference of certain printed publications.  SRI also seeks judgment precluding Defendants from presenting anticipation defenses based on prior public use of DIDS, GrIDS, and HP OpenView.  SRI's claim that there is no documentary evidence to support a finding of prior public use is demonstrably false.  To the contrary, the evidence plainly supports a finding of prior public use.  At a minimum, there is a genuine issue of material fact regarding public use of these prior art systems that cannot be resolved by summary judgment.  SRI's motion should therefore be denied.

## II.    SRI'S MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED

### A.    Legal Standard

For summary judgment to be entered in its favor, SRI must prove that "no genuine issue exists as to any material fact" and that it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must "resolve all factual doubts and draw all

---

[1] *See infra* at 3.

reasonable inferences in favor of the nonmoving party." *Conoshenti v. Public Serv. Elec. & Gas Co.,* 364 F.3d 135, 140 (3d. Cir. 2004).

A patent is invalid for anticipation if the claimed invention was described in a printed publication or in public use or on sale in the United States more than one year before the filing date of the patent application. *See* 35 U.S.C. § 102(b). Anticipation based upon a printed publication requires "the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys., Inc. v. Kent State Univ.,* 212 F.3d 1272, 1282 (Fed. Cir. 2000). Material not explicitly contained in the prior art document may be considered for purposes of anticipation if such material is incorporated by reference. *Id.* Incorporation by reference "provides a method for integrating material from various documents into a host document – a patent or ***printed publication*** – by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein." *Id.* (emphasis added). In order to incorporate a document by reference, the host document "must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in various documents." *Id.* Incorporation by reference has been found in cases in which the host document did not expressly use the phrase "incorporation by reference" or the like. *See, e.g., CFM Corp. v. Dimplex North America Ltd.*, 2005 U.S. Dist. LEXIS 5562 (N.D. Ill. 2005); *Rheox, Inc. v. United Catalysts, Inc.*, 1995 WL 526542 (D. N.J. 1995). Whether material has been effectively incorporated by reference into a host document is a question of law. *Advanced Display*, 212 F.3d at 1283.

Anticipation based on prior public use includes "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *Netscape Communs. Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002) (internal quotations omitted). "The proper test for the public use prong of the § 102(b) statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005)

**B.     Defendants Will Not Assert Certain Printed Publications Can Be Combined for Purposes of Anticipation**

SRI has challenged several anticipatory combinations based on incorporation by reference that Defendants do not intend to argue at trial constitute a single anticipatory reference. For example, Defendants will not contend at trial that (a) the ISM 1992[2] publication incorporates by reference the earlier DIDS references; (b) the EMERALD 1997[3] publication incorporates by reference the Intrusive Activity 1991[4] reference; (c) the HP OpenView[5] manual incorporates by reference RFCs 1155, 1157, 1213, and 1271; or (d) NetStalker 1996[6] incorporates by reference the HP OpenView manual.

Defendants, however, do intend to argue at trial that ISM 1992, EMERALD 1997,

---

[2] Heberlein et al., "Internetwork Security Monitor: An Intrusion-Detection System for Large-Scale Networks" 1992 [Compton Decl., Ex. G, D.I. 281]. All citations to publications are to the exhibits attached to Declaration of Kyle Wagner Compton in Support of SRI's Motion for Partial Summary Judgment of No Anticipation by Combination of References ["Compton Decl.", D.I. 281].

[3] Porras, et al., "Emerald: Event Monitoring Enabling Responses to Anomalous Live Disturbances" 1997 [Compton Decl., Ex. J, D.I. 281].

[4] Heberlein, et al., "A Method to Detect Intrusion Activity in a Networked Environment" 1991 [Compton Decl., Ex. L, D.I. 281].

[5] "HP OpenView for Windows®, User Guide for Transcend Management Software, Version 6.1" [Compton Decl., Ex. M, D.I. 281].

[6] NetStalker "Installation and User's Guide, Version 1.0.2 (1996) [Compton Decl., Ex. N, D.I. 281].

HP OpenView, and NetStalker 1996, individually, are anticipatory references that either explicitly or inherently disclose inventions claimed in the patents-in-suit.[7]  In addition, Defendants also contend that it would have been obvious to one of ordinary skill in the art to combine the references identified above given the clear suggestion to combine in the references themselves.  *See In re Saunders*, 444 F.2d 599, 603 (C.C.P.A. 1971) (sustaining an obviousness rejection involving the combination of an internally-cited reference because "it would not have been necessary for one skilled in the art to have gone any further than another part of [the cited reference] to find the specified proportions of the appealed claims.").  Since SRI does not seek summary judgment with respect to those defenses, Defendants should be entitled to submit evidence relating to these references at trial for purposes of anticipation and obviousness, even if the Court were to grant SRI's motion.

---

[7] In the case of NetStalker 1996, Defendants contend that the disclosure of Netstalker's ability to generate SNMP traps (an alarm sent to a network management system) inherently disclosed to one of ordinary skill in the art, or at a minimum rendered obvious, the use of a network management system with NetStalker.  SNMP—Simple Network Management Protocol—was, and is, the protocol for raising alerts in a network management system.  *See* Craig Zacker and Paul Doyle et al., "Upgrading and Repairing Networks" (Que Corporation 1996) at 979 [Galvin Decl. Ex. A]; Karen Watterson, "Understanding SNMP," WindowsITPro (May 1997) [Galvin Decl. Ex. B].  HP OpenView was a leading network management system, though not the only one, existing prior to November 1997.  *See* Computer Dictionary (Que Corporation 1998) at 604 [Galvin Decl. Ex. C]; RealSecure, "Market Requirements Document – September 1997 – v0.2" (September 1997) at p. 2 [Galvin Decl. Ex. D].  Defendants will not, however, contend that the NetStalker 1996 manual incorporates by reference the HP OpenView manual.

**C.    Defendants Have Identified Printed Publications That Are Properly Combined for Purposes of Anticipation Based on Incorporation by Reference**

Defendants do contend, however, that certain prior art publications satisfy the incorporation by reference standard set forth by the Federal Circuit.  In particular, Defendants contend: (a) DIDS Oct. 1991[8] incorporates by reference NSM 1990[9]; and (b) EMERALD 1997 incorporates by reference NIDES 1994.[10]

DIDS Oct. 1991 described a system that was an extension of the work described in NSM 1990 and that was developed by the same research group at UC Davis.[11]  Since DIDS Oct. 1991 described subsequent work from the same research group, it is not surprising that the authors would seek to incorporate by reference their earlier work, rather than reproducing details about the earlier NSM system.

SRI asserts Defendants' proof of incorporation by reference rests on just a "mere citation" and Mr. Heberlein's assertion that "NSM was the LAN monitor being used by DIDS."[12]  According to SRI, "NSM 1990 is cited in the DIDS articles merely as earlier work for purposes of comparison to DIDS," and that there is nothing that would distinguish NSM 1990 from the "dozens of documents" cited in the DIDS articles.[13]

A review of DIDS Oct. 1991, however, reveals that the authors clearly and specifically sought to incorporate portions of NSM 1990 into their later paper.  The

---

[8] Heberlein et al., "DIDS (Distributed Intrusion Detection System) – Motivation, Architecture, and an Early Prototype" Oct. 1991 [Compton Decl., Ex. F, D.I. 281].

[9] Heberlein et al., "A Network Security Monitor" 1990 [Compton Decl., Ex. C, D.I. 281].

[10] Javitz & Valdes, "The NIDES Statistical Component Description and Justification" 1994 [Compton Decl., Ex. K, D.I. 281].

[11] Compton Decl., Ex. F at 167, D.I. 281 ("Our own earlier work on the Network Security Monitor (NSM) . . . .").

[12] SRI's Brief at 5, D.I. 280.

[13] *Id.*

article describes DIDS as comprising three major components: the DIDS director, a host monitor, and a LAN monitor.[14] DIDS Oct. 1991 then describes the LAN monitor as follows: "The LAN monitor is currently a subset of UC Davis' Network Security Monitor [3]."[15] The bracketed [3] corresponds to the citation for NSM 1990. Rather than restating the features of the LAN monitor described in NSM 1990, the authors specifically referenced the paper in order to effectively incorporate by reference its description into DIDS Oct. 1991. DIDS Oct. 1991 also directed the reader to the relevant portion of NSM 1990 (the description of a LAN monitor) that should be treated as part of DIDS Oct. 1991. Based on this disclosure, DIDS Oct. 1991 effectively incorporated by reference NSM 1990.

EMERALD 1997 similarly incorporates by reference earlier work – NIDES 1994 – authored by the same research group, rather than repeat details from that earlier work. EMERALD 1997 describes the earlier NIDES work as follows: "This research led to the development of the NIDES statistical profile-based anomaly-detection subsystem (NIDES/Stats), which employed a wide range of multivariate statistical measures to profile the behavior of individual users [9]."[16] The bracketed [9] is a citation to the NIDES 1994 publication. EMERALD 1997 goes on to state,

> *While NIDES/Stats has been reasonably successful* profiling users and later applications, *it will be extended to the more general subject class typography required by EMERALD*. Nonetheless, the underlying mechanisms are well suited to the problem of network anomaly detection, with some adaptation. The required modifications center around extensive reworking of NIDES/Stats to abstract and generalize its definition of measures and profiles, the streamlining of its profile management, and the adaptation of the configuration and reporting mechanisms to EMERALD's

---

[14] *See* Compton Decl., Ex. F at 169, D.I. 281.

[15] *Id.* at 171.

[16] Compton Decl., Ex. J, D.I. 281 at SYM_P_0068837.

highly interoperable and dynamic message system interface.[17]

Again, while EMERALD 1997 does not use the phrase "incorporate by reference," it does specifically identify a portion of NIDES 1994 (the NIDES statistical profile-based anomaly-detection subsystem) that the authors sought to effectively incorporate by reference into EMERALD 1997.

Because these references satisfy the Federal Circuit's test for incorporation by reference, for purposes of determining anticipation, the referenced text of NSM 1990 should be considered part of the DIDS Oct. 1991 publication and the referenced text of NIDES 1994 should be considered part of the EMERALD 1997 publication. If the Court were to determine that requirements for incorporation by reference were not satisfied, Defendants should, at a minimum, be permitted to argue that it would have been obvious under 35 U.S.C. § 103 to combine the references based upon the explicit teaching in the host documents.

**D.     SRI Is Not Entitled to Summary Judgment on Defendants'
        Anticipation Defenses Based on Prior Public Use**

In addition to challenging incorporation by reference, SRI also moves for partial summary judgment that "DIDS, GrIDS, HP OpenView in combination with the RFCs, or HP OpenView in combination with NetStalker" were not in public use prior to the critical date."[18] With respect to these prior art references, SRI's opening brief incredibly states that "[p]ublic use is not at issue here."[19] On the contrary, these prior art references were all in public use prior to the critical date, as shown by documentary evidence produced in this litigation as well as the declarations filed with this motion.

---

[17] *Id.* (emphasis added).

[18] SRI International, Inc.'s Motion for Partial Summary Judgment of No Anticipation by Combination of References, D.I. 279 at 2.

[19] SRI's Opening Brief, D.I. 280 at 9.

1.     **Defendants' evidence of prior public use is corroborated.**

SRI claims that Defendants' evidence of prior public use rests solely on the uncorroborated, oral testimony of Defendants' expert witnesses.[20]  SRI also repeatedly implies that, in order to survive summary judgment, Defendants' public use evidence must be corroborated by the actual source code of the underlying prior art systems.  Neither assertion is correct.

As discussed below, the public use of the prior art systems is, in fact, corroborated.  In addition to the oral testimony of Defendants' experts, who had personal experience with the development and public use of certain prior art systems,[21] Defendants have submitted with this opposition a declaration from a third-party witness who also confirms the public use of one of these systems.[22]  Public use is further corroborated by written, contemporaneous documents.  The deployment and use of the prior art systems were described in peer-reviewed journals or commercially distributed manuals.  For example, in the case of DIDS, a master's thesis describing use of DIDS at UC Davis before the critical date directly corroborates the testimony.[23]

SRI can point to no authority requiring the production of source code for the prior art systems.  Defendants did not develop the particular prior art systems at issue, and thus are not in the position to produce such source code.  Given that some of these systems were developed approximately 15 years ago, it is not surprising that locating such source

---

[20] SRI's Opening Brief, D.I. 280 at 9-10.

[21] *See* 6/30/06 Heberlein Declaration; Staniford Declaration.

[22] *See* Frincke Declaration.

[23] Terrance Lee Goan Jr., "Towards a Dynamic System for Accountability and Intrusion Detection in a Networked Environment," M.S. Thesis, Division of Computer Science, University of California, Davis, 1992 [SYM_P_0598736-95] [Galvin Decl. Ex. E].

code is now difficult, though source code for at least DIDS has been recently located.[24] Because source code alone is often indeterminate with respect to how an executable computer program would actually run in operation, descriptions of actual use or user manuals instructing particular uses are often more probative with respect to public use. At best, the lack of such source code may be relevant to weighing the evidence in support of Defendants' defenses, but it does not establish the absence of a genuine issue of material fact regarding public use.

## 2.    DIDS Was in Public Use

SRI attempts to paint DIDS as a mere academic research project that was confined to a secret laboratory at UC Davis.[25]  In reality, the DIDS team at UC Davis successfully implemented a working version of DIDS that they put into public use in a number of different contexts.  This public use was part of the broader effort of the DIDS team to disseminate both the ideas and source code underlying DIDS to a wide audience. Furthermore, because the DIDS work was funded by government agencies, the DIDS team was expected to (and did) deliver the DIDS source code to those government agencies.[26]

---

[24] While going back through his records, Symantec's expert, Mr. Heberlein, recently discovered some magnetic computer tapes labeled "DIDS," which appear to contain at least portions of the source code of DIDS.  *See* 6/30/06 Heberlein Decl. ¶ 19.  A copy of the contents of these tapes are being produced to SRI along with copies of slides of screenshots of a computer running DIDS that Mr. Heberlein also discovered.

[25] *See* SRI's Opening Brief, D.I. 280 at 9 n. 18.  SRI asserts that two DIDS publications "comprise the only DIDS evidence that [Mr. Heberlein] relies on in support of his invalidity contentions."  SRI Opening Brief, D.I. 280 at 10.  However, Mr. Heberlein's expert report and his deposition testimony make clear that he is also separately relying upon the public use of DIDS.  *See* DIDS Invalidity Chart [Compton Decl., Ex. O, D.I. 281]; 6/8/06 Heberlein Tr. 272:7-9 ("DIDS was being used outside of Davis and outside of Livermore prior to November of '97.") [Galvin Decl. Ex. L].

[26] 6/30/06 Heberlein Decl. ¶ 5.

### a)    DIDS was in public use at UC Davis.

From at least as early as September 1991 until October 1992, DIDS was in use at the Security Lab in the Computer Science Department at UC Davis, and deployed in order to detect network intrusions.[27] The UC Davis lab was accessible to undergraduate students, graduate students, and faculty.  A group of twenty students and faculty regularly used the lab.[28]  No one entering or working in the lab had an obligation to keep the use of DIDS confidential.  No one was asked to sign a non-disclosure agreement, nor was there any expectation that the use of DIDS be kept secret.[29]  On the contrary, the use of DIDS at the lab was expected to generate excitement about DIDS and spawn published research papers and theses that would describe the use of DIDS to a wide audience.[30]  In addition to the published papers describing DIDS,[31] students published master's theses describing the work.  For example, Terrence Lee Goan's 1992 master's thesis, "Towards a Dynamic System for Accountability and Intrusion Detection in a Networked Environment," described the use of DIDS at UC Davis: "Currently DIDS monitors a collection of Sun workstations interconnected by an Ethernet local area network (LAN)."[32]  Screenshots showing the DIDS system in operation in 1991 have also been recently located.[33]

This public use of DIDS at UC Davis is very similar to the public use found in *Baxter Int'l, Inc. v. Cobe Lab., Inc.,* 88 F.3d 1054 (Fed. Cir. 1996).  Like *Baxter*, DIDS

---

[27] 6/30/06 Heberlein Decl. ¶ 13.

[28] 6/30/06 Heberlein Decl. ¶ 13.

[29] 6/30/06 Heberlein Decl. ¶ 13.

[30] *See* 6/30/06 Heberlein Decl. ¶ 13.

[31] *See* Compton Decl., Exs. E, F and G, [D.I. 281].

[32] Terrance Lee Goan Jr., "Towards a Dynamic System for Accountability and Intrusion Detection in a Networked Environment," M.S. Thesis, Division of Computer Science, University of California, Davis, 1992 [SYM_P_0598736-95] at SYM_P_0598751 [Galvin Decl. Ex. E].

[33] *See* 6/30/06 Heberlein Decl. ¶ 19 and Ex. A (DIDS Screenshots).

was openly used in a publicly accessible research laboratory in which members of the lab who used or observed DIDS in operation were not under a duty of confidentiality. *Id.* at 1058. SRI's argument that the public use of DIDS at UC Davis cannot be an invalidating public use because it was "experimental" is without merit. The "experimental use" exception to public use is designed to allow the inventor, or people under the inventor's direction, to continue to develop and reduce to practice the invention. As the Federal Circuit explained in *Baxter*, "public testing before the critical date by a third party for his own unique purposes of an invention previously reduced to practice and obtained from someone other than the patentee, when such testing is independent of and not controlled by the patentee, is an invalidating public use, not an experimental use." *Id.* at 1060-61. Here, DIDS was a working system (i.e., it was reduced to practice) for detecting network intrusions deployed at UC Davis by third parties who were not under the inventors' control. It was therefore a public use, not an experimental use by the patentee.

### b)    DIDS was in public use outside of UC Davis

Because the researchers at UC Davis were expected to disseminate information about DIDS to the public, they went beyond the UC Davis campus to both demonstrate DIDS to wider audiences and put DIDS to use at other locations. Perhaps the most notable public demonstration of DIDS occurred at the 1992 National Computer Security Conference (NCSC) held in Baltimore, Maryland.[34] NCSC is an annual conference open to the public.[35] At the conference, the UC Davis team held a multi-day public demonstration of DIDS.[36] The UC Davis team set up a network of computers and

---

[34] *See* Frincke Decl.¶ 4; 6/30/06 Heberlein Decl. ¶¶ 16-17.

[35] In addition to the demonstration, the UC Davis researchers gave presentations about their continuing work in the field of network intrusion detection. *See* 6/30/06 Heberlein Decl., Ex. B (slides from 1992 NCSC presentation).

[36] *See* 6/30/06 Heberlein Decl. ¶ 16.

installed DIDS on that network.[37]  During the initial days of the demonstration, the UC

Davis team operated DIDS while the conference attendees watched as DIDS detected

attacks launched by the team.[38]  On the last day of the demonstration, conference

attendees were allowed to test DIDS themselves.[39]  The attendees were allowed to launch

attacks against the network and watch DIDS detect those attacks in real-time.[40]  This

hands-on demonstration was open to any member of the public attending the conference,

and was not subject to any confidentiality obligations.[41]

DIDS was also put into use at several government facilities.  For example, in 1992

DIDS was publicly used at Lawrence Livermore National Laboratory and at Kelly Air

Force Base.[42]   In each instance, no one was required to sign a non-disclosure agreement,

and there was no expectation that the use of DIDS at the location be kept secret.[43]  At

Lawrence Livermore, DIDS successfully detected an attack directed at Lawrence

Livermore computers.[44]  By 1994, the Air Force had installed DIDS on 133 computers.[45]

In addition to use accessible to the public, there is also evidence that DIDS was

commercially exploited.  While SRI argues that DIDS was never commercially exploited,

UC Davis developed DIDS pursuant to government contract.  At the close of the contract,

the researchers delivered the source code of a working computer program as part of that

---

[37] *See* Frincke Decl. ¶ 4; 6/30/06 Heberlein Decl. ¶ 16.

[38] *See* Frincke Decl. ¶ 4-5; 6/30/06 Heberlein Decl. ¶ 16.

[39] *See* 6/30/06 Heberlein Decl. ¶ 16.

[40] 6/30/06 Heberlein Decl. ¶¶ 16.

[41] *See* Frincke Decl. ¶¶ 4-6; 6/30/06 Heberlein Decl. ¶ 17.

[42] *See* 6/30/06 Heberlein Decl. ¶¶ 14-15; Todd Heberlein, Notes from February 11, 1992 [HEB_0004436-39] [Galvin Decl. Ex. J].

[43] 6/30/06 Heberlein Decl. ¶ 14.

[44] 6/30/06 Heberlein Decl. ¶ 14.

[45] *See* 6/30/06 Heberlein Decl. ¶ 5; Todd Heberlein, Notes from March 15, 1994 [HEB_0004252] [Galvin Decl. Ex. K].

contract.[46]  When the government assigned a new prime contractor for the project in

1994, UC Davis delivered the DIDS source code to a for-profit company, Trident Data

Systems.[47]  Trident's goal was to commercialize DIDS.[48]  Documents produced by SRI

show that SRI was aware that Trident was attempting to commercialize DIDS.[49]

### 3.    GrIDS was in public use

Prior to the critical date, GrIDS was in use at the Computer Science Department

of UC Davis.[50]  GrIDS was installed on at least 30 computers across five different

laboratories within the department.[51]  Both faculty and students knew that GrIDS was

monitoring computer activity, and no effort was made to keep the use of GrIDS secret or

confidential.[52]  To the contrary, students and employees were notified of the GrIDS

deployment.[53]  No one using the labs was made to sign a non-disclosure agreement, nor

was there any expectation that the use of GrIDS at the labs be kept secret.[54]  Like DIDS,

the use of GrIDS at UC Davis was therefore a public use.

---

[46] 6/30/06 Heberlein Decl. ¶ 5.

[47] *See* 6/30/06 Heberlein Decl. ¶ 18.

[48] *See* 6/30/06 Heberlein Decl. ¶ 18.

[49] *See* "Statement of Work (SOW) for Arca Systems Inc. and Associates Support to Trident Data Systems, Inc." (July 26, 1993) [SRI 027600-01] at p. 1 ("The first phase will be concerned with 'productizing' the current DIDS prototype into a 'shrink wrapped' form that is supportable and can be distributed and field to Air Force customers.") [Galvin Decl. Ex. F]; Phil Porras, Web page entitled "UC Davis" (April 23, 1996) [SRI 094671-72] at p. 1 ("DIDS is currently being implemented as a deployable product by Trident Data Systems.") [Galvin Decl. Ex. G].

[50] *See* Staniford Decl. ¶ 8; GrIDS Emails [Staniford Decl. Ex. B]

[51] Staniford Decl. ¶ 8.

[52] Staniford Decl. ¶ 9-10.

[53] Staniford Decl., Ex. B at 5-8 (July 17, 1997 email describing policy that "[a]ll users with accounts on that machine have been notified in writing of the GrIDS monitoring").

[54] *See* Staniford Dec. ¶ 10.

### 4.    HP OpenView was in public use

SRI's opening brief fundamentally mischaracterizes the relationship between HP OpenView and related RFCs. The RFCs at issue—1155, 1157, 1213, and 1271— together define a set of standards for network management (SNMP, MON, RMON I, and RMON II). By supporting these standards as specified by the RFCs at issue, HP OpenView *itself* embodied the standards specified by the RFCs.[55] Thus, in the context of public use, it is nonsensical for SRI to talk about "HP OpenView combined with the RFCs" as if the RFCs were a distinct set of software components. Because HP OpenView supported the RFCs at issue, public use of HP OpenView *alone* would constitute a public use of the standards described by the RFCs.

HP OpenView was clearly in public use. It was a commercial software product sold by Hewlett Packard to customers around the world. The HP OpenView manual is evidence of the capabilities of the system when used. Additional documents evidence that HP OpenView was used or sold in the United States prior to the critical date.[56] At a minimum, there is a genuine issue of material fact regarding public use of HP OpenView prior to November 1997.

### III.    CONCLUSION

SRI's motion for partial summary judgment of no anticipation should be denied. Defendants have shown that at least with respect to the DIDS Oct. 1991 and EMERALD 1997 references, the standards for incorporation by reference have been met. In addition,

---

[55] *See* HP Open View for Windows User Guide [SYM_P_0080944- SYM_P_0081098] at SYM_P_0081033 (describing support for SNMP and MIB), SYM_P_0081051 (describing support for MIB-2 and RMON), SYM_P_0081052 (describing support for RFC 1213 and RFC 1271) [Compton Decl., D.I. 281].

[56] *See* NetRanger User's Guide Version 1.3.1, WheelGroup Corporation (1997) at 3-10 – 3-14, 3-20 [Galvin Decl. Ex. H]; Expert Report of Dan Teal ¶ 18 [Compton Decl., Ex. F, D.I. 275]; Mark A. Miller, "Managing Internetworks with SNMP (M&T Books 1997) [SYM_P_0503966-4693] at 39-41 [Galvin Decl. Ex. I].

SRI has failed to prove that there are no genuine issues of material fact regarding public use of DIDS, GrIDS, and HP OpenView.  To the contrary, there is overwhelming evidence that those systems were in public use in the United States more than one year before the filing date of the patents-in-suit.

Dated:  June 30, 2006

POTTER ANDERSON & CORROON LLP

      */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel.:   (302) 984-6000

OF COUNSEL:
Holmes J. Hawkins III
Natasha H. Moffitt
KING & SPALDING LLP
191 Peachtree Street
Atlanta, GA 30303
Tel:     (404) 572-4600


Theresa A. Moehlman
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel.: (212) 556-2100

Attorneys for Defendant
INTERNET SECURITY SYSTEMS, INC.,
a Delaware Corporation and
INTERNET SECURITY SYSTEMS, INC.,
a Georgia Corporation

MORRIS, JAMES, HITCHENS & WILLIAMS, LLP


      */s/ Richard K. Herrmann*
Richard K. Hermann (#405)
Mary B. Matterer (#2696)
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel.:  (302) 888-6800

OF COUNSEL:
Lloyd R. Day, Jr.
Robert M. Galvin
Paul S. Grewal
DAY, CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA  95014
Tel:  (408) 873-0110

Michael J. Schallop
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA 95014
Tel:  (408) 517-8000

Attorneys for Defendant
SYMANTEC CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2006, I electronically filed the foregoing document, **DEFENDANTS' JOINT OPPOSITION TO SRI INTERNATIONAL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO ANTICIPATION BY COMBINATION OF REFERENCES,** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

John F. Horvath, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 30th day of June, 2006, the foregoing document was served via email and by Federal Express on the following non-registered participants:

Howard G. Pollack, Esq.
Michael J. Curley, Esq.
Fish & Richardson
500 Arguello Street, Suite 500
Redwood City, CA 94063
650.839.5070

Holmes Hawkins, III, Esq.
King & Spalding
191 Peachtree Street
Atlanta, GA 30303
404.572.4600

Theresa Moehlman, Esq.
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
212.556.2100

      */s/ Richard K. Herrmann*
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com

*Counsel for Symantec Corporation*