IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SRI INTERNATIONAL, INC., a California
Corporation,

        Plaintiff and
        Counterclaim-Defendant,

   v.

INTERNET SECURITY SYSTEMS, INC.,
a Delaware corporation, INTERNET
SECURITY SYSTEMS, INC., a Georgia
corporation, and SYMANTEC
CORPORATION, a Delaware corporation,

        Defendants and
        Counterclaim-Plaintiffs.

C. A. No. 04-1199 (SLR)

**REDACTED**

**SRI INTERNATIONAL, INC.'S RESPONSE TO DEFENDANT ISS'S MOTION
FOR SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF
THE SRI PATENTS-IN-SUIT ARE NOT INFRINGED OR, IN
THE ALTERNATIVE, ARE INVALID**

Dated: June 30, 2006

FISH & RICHARDSON P.C.

John F. Horvath (#4557)
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Howard G. Pollack (CA Bar No. 162897)
Katherine D. Prescott (CA Bar No. 215496)
500 Arguello St., Ste. 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff and Counterclaim Defendant
SRI INTERNATIONAL, INC.

## TABLE OF CONTENTS

                                                                                    **PAGE**

I.    INTRODUCTION ...................................................................................... i

II.   ARGUMENT ........................................................................................... 2

      A.    Summary judgment legal standard................................................. 2

      B.    ISS is not entitled to summary judgment regarding the
            infringement or validity of the claims of the '615 and
            '203 patents ............................................................................. 2

            1.    "integrating the reports of suspicious activity" ............................ 3

                  a.    Genuine disputes as to material facts
                        exist regarding whether Fusion *integrates*
                        reports of suspicious activity ....................................... 3

                  b.    Regardless of claim interpretation,
                        genuine issues as to material facts remain
                        with respect to the validity of the claims
                        in light of the alleged prior art ISS
                        RealSecure Console ..................................................... 6

            2.    ISS's proposed construction of monitor
                  improperly reads limitations from the preferred
                  embodiment into the claims........................................... 9

            3.    Evidence exists from which a reasonable jury
                  could conclude that ISS directly infringes the
                  claims of the patents-in-suit by *its sale and use of*
                  the accused products ................................................... 9

      C.    ISS is not entitled to summary judgment regarding
            infringement of the '338 patent................................................ 12

            1.    Genuine issues of material fact remain regarding
                  whether Proventia ADS determines whether the
                  difference between the short-term statistical
                  profile and the long-term statistical profile
                  indicates suspicious network activity.......................... 12

            2.    Genuine issues of material fact remain regarding
                  whether Proventia ADS receives network
                  packets handled by a network entity............................. 15

III.  CONCLUSION....................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page**

*Adickes v. S. H. Kress & Co.,*
     398 U.S. 144 (1970)..................................................................................................2

*Anderson v. Liberty Lobby, Inc.,*
     477 U.S. 242 (1986)..................................................................................................2

*Applied Medical Resources Corp. v. U.S. Surgical Corp.,*
     448 F.3d 1324 (Fed. Cir. 2006)..................................................................................2

*Intel Corp. v. U.S. International Trade Commission,*
     832 F.2d 821 (Fed. Cir. 1991)....................................................................................9

*Moleculon Research Corp. v. CBS, Inc.,*
     793 F.2d 1261 (Fed. Cir. 1986)................................................................................11

**Statutes**

Fed. R. Civ. P. 56(c) ......................................................................................................2

## I. INTRODUCTION

ISS alleges that SRI must choose between infringement of the asserted claims of the '203 and '615 patents by the Fusion Attack Pattern Component – introduced by ISS in 2003 – and anticipation by the ISS RealSecure Console that was introduced at least five years earlier. SRI need not do so and, indeed, ISS's argument is a non-sequitur.

### REDACTED

These alleged "similarities," however, have never been raised before and are irrelevant to the contentions made by the parties and the experts in their reports.

### REDACTED

In contrast, the alleged prior art RealSecure Console merely displayed reports on a central user interface, leaving it up to the human user to assess any potential interrelationships.

### REDACTED

ISS also argues that it is entitled to summary judgment because there is allegedly no evidence of use of the Fusion Attack Pattern Component and therefore allegedly no direct infringement. But ISS fails to mention that half of the asserted claims of the '203 and '615 patents are apparatus claims for which actual use by customers is not required to prove infringement.

### REDACTED

Not only is this use direct infringement, it is also strong circumstantial evidence of further direct infringement by ISS's customers.

With respect to the Proventia ADS's infringement of the '338 patent, ISS raises three reasons why it should be granted summary judgment. One alleged reason

**REDACTED** was never

raised before and is contradicted by ISS's own expert. The other reasons

**REDACTED** – involve genuine disputes of material fact.

ISS's motion for summary judgment that the asserted claims are not infringed or, in the alternative, are invalid should be denied because genuine issues of material fact remain and based on the evidence a reasonable jury could find in favor of SRI.

## II.     ARGUMENT

### A.     Summary judgment legal standard

Summary judgment is only appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1331 (Fed. Cir. 2006). All evidence presented by the non-movant is to be taken as true and all reasonable inferences must be drawn in the non-movant's favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). Moreover, the appropriate level of proof required for a summary judgment motion is commensurate with the level of proof that would be required if the case went to trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (requiring application of the "clear and convincing" standard to summary judgment motions in libel cases).

### B.     ISS is not entitled to summary judgment regarding the infringement or validity of the claims of the '615 and '203 patents

The claims of the '615 and '203 patents are generally directed to a hierarchical system for the detection of network intrusions. The claims require the deployment of a plurality of network monitors that analyze specific types of network traffic to generate

2

reports of suspicious activity and a hierarchical monitor that automatically receives and integrates those reports.

**REDACTED**

1.    **"integrating the reports of suspicious activity"**

        a.    **Genuine disputes as to material facts exist regarding whether Fusion *integrates* reports of suspicious activity**

    ISS argues that it does not infringe the claims of the '615 and '203 patent because allegedly the Fusion APC does not "integrate" reports of suspicious activity under SRI's construction, which requires combining of the reports into a functional unit.[2]

                **REDACTED**      based on the testimony of ISS's

---

[1]    Unless otherwise specified, Exhibits referenced in this responsive brief are attached to the supporting declaration of Kyle Wagner Compton.

[2]    ISS's argument as to non-infringement is based on SRI's proposed construction of "integrating reports of suspicious activity." ISS does not argue that its Fusion product would not infringe if Defendants' construction of this phrase is adopted.

witnesses, as well as ISS documents, and the opinion of SRI's expert Dr. Kesidis, a

reasonable jury could conclude that        REDACTED

constitute functional units resulting from the combination of reports of suspicious

activity. Therefore, at a minimum there is a factual dispute as to whether Fusion's APC

combines reports of suspicious activity into another "functional unit." This factual

dispute precludes summary judgment of non-infringement of the '615 and '203 patents.

In arguing otherwise, ISS relies on the Declaration of Paul Griswold. Mr.

Griswold's current declaration characterizes the Fusion APC as

REDACTED        [Griswold Decl. (D.I. 296) at ¶17].

During his deposition, however, Mr. Griswold, as ISS's 30(b)(6) designee regarding

Fusion 2.0, explained




REDACTED




4

**REDACTED**

is another functional unit and is the result of an integration step as recited in the claims. [Ex. C at ¶¶62-64; Ex. D]. A reasonable jury could agree. In contrast, ISS's expert provided the conclusory opinion that

**REDACTED**

Nothing in the claims requires that the functional unit be a new "event" per se.

Mr. Griswold's testimony and declaration, the ISS documents describing Fusion 2.0, and the experts' opinions all make clear that at least two genuine issues of material fact remain – what Fusion APC generates and whether what it generates is a functional unit so as to satisfy SRI's proposed construction of "integrating." Such factual issues must be decided by the jury. They preclude a finding of summary judgment of non-infringement.

5

b.    **Regardless of claim interpretation, genuine issues as to material facts remain with respect to the validity of the claims in light of the alleged prior art ISS RealSecure Console**

Assuming SRI's interpretation of "integrating," ISS attempts to show invalidity by asserting for the first time that

**REDACTED**

[ISS Br. (D.I. 291) at 22]. ISS's focus on SiteProtector is misleading. SiteProtector is neither accused of performing integration itself nor was it ever identified as prior art or relied upon by Defendants in their contentions or expert reports.

**REDACTED**

Regardless, ISS's chain of reasoning presumes that disputed factual issues that must be resolved by a jury have, in fact, already been resolved in ISS's favor. For example,

**REDACTED**

[ISS Br. at 22]. This is particularly true given that ISS has never previously made this assertion or relied on this alleged roll-up functionality as prior art. SRI's expert has already opined that the ISS product that existed prior to the critical date and was cited by Defendants' experts as relevant, specifically the RealSecure Console, does not anticipate or render obvious any of the asserted claims. There is no invalidity, in part because RealSecure

---

[3]    Indeed, as explained in SRI's claim construction briefing, *display* of information to a human operator – even display of "alerts" – has nothing to do with the patents-in-suit in this case, which are directed to the automatic processing of data, particularly in an analysis hierarchy as claimed in the '203 and '615 patents.

was incapable of automatically receiving and integrating reports of suspicious activity, and the allegations concerning the "roll-up functionality" do not impact this opinion. [Ex. F at ¶¶94, 95; Kesidis Decl. ¶24] Thus under SRI's proposed construction of integration, there remain material factual issues regarding the teaching of the prior art actually relied upon by Defendants and its relationship, if any, with the accused products. Those issues must be resolved by a jury.

Turning to ISS's proposed construction of "integrating" as "combining", that construction should not be adopted for the reasons discussed in detail in SRI's claim construction briefing (D.I. 265-266 and Contemporaneous filings), including because the ISS construction ignores portions of its dictionary definition as well as the context of the term in the claims. Even if the ISS construction were adopted, however, summary judgment that the alleged prior art RealSecure Console anticipates all the asserted claims of the '615 and '203 patents cannot be granted.

### REDACTED

The claimed inventions are not about centralized management and display to a human; they are about automatic centralized analysis, including integration or correlation of reports of suspicious activity, by a computer. And ISS's own construction of "integrating" is not "co-displaying", it is "combining." A reasonable jury could conclude that simultaneous display of information to a human operator does not constitute integrating or combining even under Defendants' proposed construction.[4]

---

[4] Contrary to ISS's wishes, SRI's expert did not concede otherwise. Dr. Kesidis did agree that what ISS considered to be combination – mere display – occurs "automatically." [Moore Decl. (D.I. 293), Ex. E at 327:2-328:11]. He also explained

Additional genuine issues of material fact exist with respect to dependent claim limitations. For the reasons discussed above with respect to why co-display is not integration under either parties' construction, a reasonable jury could also conclude that co-display is not correlation under either parties' construction.[5] [Ex. F at ¶¶94, 95]. Disclosure of correlation is required to anticipate dependent claims 2 and 14 of the '615 patent and claims 2 and 13 of the '203 patent. Claims 3 and 14 of the '203 patent and claims 3 and 15 of the '615 patent require that countermeasures be invoked *as part of* the integration of reports of suspicious activity. The alleged countermeasures identified by ISS's expert are, at most, responses taken by RealSecure engines in reaction to individual reports of suspicious activity, and not as part of the integration of several reports of suspicious activity. [*See* Ex. F ¶97; Ex. G at 48:24-49:10; Ex. H at 24:17-25]. Similarly, claims 4 and 15 of the '203 patent and claims 4 and 16 of the '615 patent require an API (Application Programming Interface) for encapsulation of monitor functions and integration of third party tools. ISS's expert points to the ability of the alleged prior art RealSecure product to interact with decision support systems and HP OpenView as allegedly disclosing this feature. [Moore Decl. Ex. J]. The claim, however, is not satisfied by just any interaction with a third party system, it specifically requires an API for encapsulation of monitor functions.

## REDACTED

[Ex. F ¶98; Ex. G at 42:4-11, 50:20-23]. On the basis of this evidence alone, summary judgment on the API claims is inappropriate.

---

that in the abstract, grouping reports together could be considered "combining." But the word "integrating" which ISS contends should be interpreted to mean "combining" occurs in the context of the claims, not in the abstract. In the context of the claims, which do not relate to data display but analysis, "combining" does not include co-display.

[5] SRI proposes that the correlating limitation means "combining reports based on underlying commonalities between them." Defendants propose that it be interpreted to mean "determining relationships among the reports of detected suspicious network activity."

Summary judgment that the alleged prior art RealSecure Console anticipates the claims of the '203 and '615 patents cannot be granted under either parties' construction of integrating, as a reasonable jury could conclude that the RealSecure Console's co-display of the events does not in either case constitute integration of the reports of suspicious activity. With respect to dependent claims, disputes of material fact as to the disclosure of certain additional limitations further preclude summary judgment.

> ### 2. ISS's proposed construction of monitor improperly reads limitations from the preferred embodiment into the claims

ISS attempts to escape infringement by proposing a strained construction of the phrase "monitor." As discussed in detail in SRI's claim construction briefing (D.I. 265-266 and Contemporaneous filings), ISS's proposed construction of "monitor" is improper. Without justification, it selectively imports features of the preferred embodiment into the claims. If ISS's proposed construction is rejected, as it should be, ISS and its expert do not dispute that ISS sensors and Fusion are monitors meeting the requirements of the claims as construed by SRI.

> ### 3. Evidence exists from which a reasonable jury could conclude that ISS directly infringes the claims of the patents-in-suit by its sale and use of the accused products

SRI accuses the attack pattern component (Fusion APC) of Fusion 2.0 together with ISS sensors of infringing the claims of the '615 and '203 patents. The asserted claims include both method and apparatus claims.[6] To show infringement of apparatus claims the law does not require that a claimed feature be used, merely that it exist and be capable of use. *Intel Corp. v. U.S. Int'l Trade Comm'n*, 832 F. 2d 821, 832 (Fed. Cir.

---

[6] Claims 12, 13, 15, 16, and 17 of the '203 patent and claims 13, 14, 16, 17, and 18 of the '615 patent are apparatus claims addressed to an "enterprise network monitoring system." The remainder of the asserted claims (claims 1, 2, 4-6 of the '203 patent and claims 1, 2, 4-6 of the '615 patent) are method claims addressed to a "computer-automated method of hierarchical event monitoring and analysis with an enterprise network." With respect to the hierarchical limitation, the apparatus claims specify "one or more hierarchical monitors in the enterprise network *adapted to* automatically receive and integrate the reports of suspicious network activity." The claims themselves thereby emphasize what is true for all apparatus claims – only structure with the capability is required to infringe, not actual use of that structure.

·1991). Notwithstanding the long-established law, ISS argues that it is entitled to summary judgment because SRI allegedly cannot show that any customer has *used* the Fusion APC. Because there is simply no legal basis for ISS's argument, it should be rejected. Regardless, SRI has identified direct evidence of use of the Fusion APC feature by ISS itself and abundant circumstantial evidence that would allow a reasonable jury to conclude that ISS's customers use the Fusion APC feature as well.

ISS repeatedly claims that

## REDACTED

In fact Dr. Kesidis has never limited his infringement opinion for Fusion 2.0 to when Fusion APC is operating or running as opposed to simply present. [*See generally,* Ex. C at pp.15-41; Ex. D; Ex. O]. SRI contends that while the *method claims* are only infringed when Fusion APC is used, Fusion 2.0, regardless of whether Fusion APC is running, infringes the asserted *apparatus claims* as Fusion 2.0 is capable of performing the required functions. The evidence summarized in Dr. Kesidis' infringement report and his opinions based on this evidence are alone sufficient to defeat summary judgment as to the asserted apparatus claims. [*See generally,* Ex. C at pp.15-41; Ex. D; Ex. O].

If ISS argues (and its cursory arguments are unclear), that SRI cannot establish the sale of the combination of ISS products that infringe the apparatus claims, ISS is again wrong.

[Ex. I at 26:23-28:2; 31:10-34:8; 35:15-36:9; 39:21-40:23; 41:19-43:18; 46:8-51:23; 52:10-52:21; 86:7-87:11; 87:20-89:5]. Ex. J at 25:8-19; 26:6-20; 27:16-28; 28:22-29:3; 29:9-24; 30:17-31:3; 31:17-22; 32:14-21].

10

REDACTED

[Ex. B at 24:21-27:25]. Accordingly, this evidence is sufficient to establish that ISS has sold "systems" that embody the asserted apparatus claims.

With respect to the asserted method claims, a reasonable jury could find that ISS's customers have directly infringed these claims. There is substantial circumstantial evidence suggesting use by customers.[8] *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (direct infringement may be proved by circumstantial evidence).

REDACTED

These facts and this evidence, taken together, would be sufficient for a reasonable jury to conclude that infringing use is occurring.

SRI can also establish direct infringement of the method claims by ISS's own use of its products

REDACTED

is sufficient evidence of direct infringement to preclude summary judgment.

───────────────

REDACTED

11

C.    ISS is not entitled to summary judgment regarding infringement of the '338 patent

The '338 patent is directed to a particular statistical technique for the detection of suspicious network activity. Its claims require a system of network surveillance that receives network packets handled by a network entity, builds a long-term statistical profile and a short-term statistical profile based on certain measures of the network packets, and compares the profiles to determine whether the difference indicates suspicious network activity.

ISS's Proventia ADS infringes the claims of the '338 patent.

REDACTED

Therefore, Proventia ADS infringes the claims of the '338 patent. [Ex. C at ¶¶139-149,152-159].

ISS raises three reasons why it allegedly does not infringe and is entitled to summary judgment of non-infringement. For each reason, material factual issues remain that preclude a finding for summary judgment of non-infringement. Moreover, even assuming the truth of the alleged facts as presented by ISS, a reasonable jury could still find in favor of SRI.

1.    Genuine issues of material fact remain regarding whether Proventia ADS determines whether the difference between the short-term statistical profile and the long-term statistical profile indicates suspicious network activity

ISS's Opening Brief alleges that Proventia ADS does not

REDACTED

First, ISS argues that

REDACTED

12

**REDACTED**

[ISS Br. at 25] does not constitute

determining the difference between a short term profile and *a long term profile.* Even the

facts as alleged by ISS show otherwise and, as discussed below, both ISS's and SRI's

experts agree. Second, ISS argues that under its proposed claim construction, which

requires use of a historically adaptive threshold, Proventia ADS cannot infringe because

**REDACTED**    While ISS's proposed construction is incorrect for the

reasons discussed in SRI's claim construction briefing, even if adopted, summary

judgment is precluded by material factual issues regarding

**REDACTED**

With regard to its initial argument,

**REDACTED**

**REDACTED**

---

10    In his discussion of properties of statistical distributions, ISS expert, Dr. Staniford
provides background information on mean and standard deviation. [*See* Ex. S at 30].
ISS does not dispute that the determination of mean and standard deviations of the
byte/packet measures are statistical profiles and, while Defendants have argued that
the claims should be construed to require further limitations from the specification
regarding the profiles, ISS does not rely on that proposed construction in its present
motion.

13

¶11].

**REDACTED**

ISS's second alleged basis that Proventia ADS does not infringe relies on its proposed importation of the use of a "historically adaptive" or "empirically determined" threshold into the asserted claims. Reading this characteristic of the preferred embodiment into the claims is wholly unjustified for the reasons discussed in SRI's claim construction briefing; it is a transparent attempt to create a non-infringement argument. [*See* Contemporaneous briefing and D.I. 265-266]. Even assuming the construction proposed by ISS, material factual issues remain

**REDACTED**

---

[11]  ISS should be precluded from presenting this non-infringement argument as it was not previously identified in its expert reports or contention interrogatory responses.

14

**REDACTED**

This contradiction in and of itself raises a material issue of

fact regarding how the accused product works.

Given either of these sets of alleged facts, however, a reasonable jury could

conclude that

**REDACTED**

Thus a reasonable jury could find that Proventia ADS uses historically

adaptive thresholds.  Even under ISS's own claim construction, therefore, summary

judgment is not appropriate.[12]

> **2.    Genuine issues of material fact remain regarding whether
> Proventia ADS receives network packets handled by a network
> entity**

The claims of the '338 patent require "receiving network packets *handled by* a

network entity."  They do not require receiving network packets *from* a network entity, as

ISS appears to newly interpret them in its attempt to create a non-infringement argument.

ISS never asserted as part of claim construction that "packets handled by" must be

---

[12]    Of course, if ISS's proposed construction requiring a historically adaptive threshold is
rejected – and it should be – ISS implicitly concedes that the determining step is
present in the accused ADS products.

construed as "packets from" or receiving packets solely through being "directly connected with" a network entity. Because this implicit claim construction argument is untimely, and contrary to the plain English meaning of the words, it must be rejected.

ISS argues that

**REDACTED**

But ISS cites no evidence or expert opinion in support of this conclusion. At the very least, there is a material factual issue as to this point. The ISS Proventia ADS User Guide shows Proventia ADS tapping the "wire" between a switch and a firewall. [Ex. N at 6].

**REDACTED**

Consistent with this evidence, and the plain meaning of "handled by," SRI's expert has opined that the accused products, when operating with a tap, do in fact receive network packets handled by a network entity. [Ex. C at ¶142]. A reasonable jury could agree and therefore summary judgment is inappropriate.

---

13

**REDACTED**

## III.    ,CONCLUSION

For the foregoing reasons, SRI respectfully requests that the Court deny ISS's motion for summary judgment that the asserted claims of the SRI patents-in-suit are not infringed or, in the alternative, are invalid.

Dated: June 30, 2006                    FISH & RICHARDSON P.C.


By: _____
    John I. Horvath (#4557)
    FISH & RICHARDSON P.C.
    919 N. Market St., Ste. 1100
    P.O. Box 1114
    Wilmington, DE 19889-1114
    Telephone:  (302) 652-5070
    Facsimile:  (302) 652-0607

    Howard G. Pollack (CA Bar No. 162897)
    Katherine D. Prescott (CA Bar No. 215496)
    FISH & RICHARDSON P.C.
    500 Arguello St., Ste. 500
    Redwood City, CA 94063
    Telephone:  (650) 839-5070
    Facsimile:  (650) 839-5071

Attorneys for Plaintiff and Counterclaim Defendant
SRI INTERNATIONAL, INC.

50355911.doc

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2006, I electronically filed the **REDACTED – SRI INTERNATIONAL, INC.'S RESPONSE TO DEFENDANT ISS'S MOTION FOR SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF THE SRI PATENTS-IN-SUIT ARE NOT INFRINGED OR, IN THE ALTERNATIVE, ARE INVALID** with the Clerk of Court the attached document using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel.

Richard L. Horwitz
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899

Attorneys for Defendant-
Counterclaimant
Internet Security Systems, Inc., a
Delaware corporation, and Internet
Security Systems, Inc., a Georgia
corporation

Richard K. Herrmann
Morris James Hitchens & Williams
PNC Bank Center
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306

Attorneys for Defendant-
Counterclaimant
Symantec Corporation

/s/ *John F. Horvath*
John F. Horvath

80034097.doc