IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia Corporation, and SYMANTEC CORPORATION, a Delaware corporation,<br><br>    Defendants and Counterclaim- Plaintiffs. | Civil Action No. 04-CV-1199 (SLR)<br><br>**PUBLIC VERSION**<br><br>THIS DOCUMENT CONTAINS MATERIALS WHICH ARE CLAIMED TO BE CONFIDENTIAL AND COVERED BY A PROTECTIVE ORDER. THIS DOCUMENT SHALL NOT BE MADE AVAILABLE TO ANY PERSON OTHER THAN THE COURT AND OUTSIDE COUNSEL OF RECORD FOR THE PARTIES |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO LIMIT TESTIMONY OF SRI'S EXPERT, DR. GEORGE KESIDIS, UNDER FEDERAL RULE OF EVIDENCE 702**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel.: (302) 984-6000

OF COUNSEL:
Holmes J. Hawkins III
Natasha H. Moffitt
KING & SPALDING LLP
191 Peachtree St.
Atlanta, GA 30303
Tel: (404) 572-4600

Theresa A. Moehlman
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel.: (212) 556-2100
Fax: (212) 556-2222

Attorneys for Defendant
INTERNET SECURITY SYSTEMS, INC.,
a Delaware Corporation and
INTERNET SECURITY SYSTEMS, INC.,
a Georgia Corporation

Dated: July 10, 2006
Redacted Version: July 14, 2006

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS
 & WILLIAMS, LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899-2306
Tel: (302) 888-6800

OF COUNSEL:
Lloyd R. Day, Jr. (*pro hac vice*)
Robert M. Galvin (*pro hac vice*)
Paul S. Grewal (*pro hac vice*)
DAY CASEBEER MADRID
 & BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014
Tel: (408) 873-0110

Michael J. Schallop (*pro hac vice*)
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA 95014
Tel: (408) 517-8000
Fax: (408) 517-8121
Attorneys for Defendant
SYMANTEC CORPORATION

**TABLE OF CONTENTS**

|   |   | Page No. |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | SRI HAS NOT MET ITS BURDEN OF SHOWING THAT DR. KESIDIS' REASONING IS SCIENTIFICALLY VALID | 2 |
| | A. SRI Never Confronts Dr. Kesidis' Admission That, Despite All His Academic and Professional Experiences, He Was Not Familiar With the State of the Art in the Intrusion Detection Field in 1998 Before He Was Retained in 2005 | 2 |
| | B. SRI Fails to Establish that Dr. Kesidis Adequately Investigated the State of the Art in Intrusion Detection in 1998 After He Was Retained in 2005 | 7 |
| | C. Dr. Kesidis' Present Expertise Does Not Relieve Him of the Responsibility of Conducting a Scientifically Valid Investigation of the the Level of Skill in the Intrustion Detection Art in 1998 | 8 |
| III. | CONCLUSION | 10 |

## TABLE OF AUTHORITIES

**PAGE NO.**

**Cases**

*Daubert v. Merrill Dow Pharms, Inc.*,
   509 U.S. 578 (1993) ............................................................................................. 2, 4

*Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*,
   122 F.3d 1040 (Fed. Cir. 1997) .................................................................................. 8

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
   404 F.Supp.2d 575 (D. Del. 2005) ............................................................................. 8

*In re TMI Litig.*,
   199 F.3d 158 (2000) .................................................................................................... 4

*Izume Prods. Co. v. Koninkline Philips Elecs. N.V.*,
   315 F. Supp. 2d 589 (D. Del. 2004) ........................................................................... 8

*Neutrino Dev. Corp. v. Sonosite, Inc.*,
   410 F.Supp.2d 529 (S.D. Tex. 2006) ......................................................................... 8

*Oddi v. Ford Motor Co.*,
   234 F.3d 136 (3d Cir. 2000) ....................................................................................... 4

*Sims v. Mack Trucks, Inc.*,
   459 F.Supp. 1198 (E.D. Pa. 1978) ............................................................................. 9

I.  **INTRODUCTION**

By his candid admissions in deposition, SRI's expert Dr. Kesidis has put SRI in a conundrum that SRI refuses to confront. When asked whether he was at all familiar with the state of the intrusion detection art[1] in November 1998 *before he was retained* by SRI in 2005, Dr. Kesidis admitted that *he was not*:

REDACTED

When asked whether he did anything *after he was retained* to determine the level of ordinary skill in the art in November 1998, Dr. Kesidis admitted that other than speaking with counsel and "briefly thinking about it," *he had not*:

REDACTED

Rather than explain exactly how REDACTED and REDACTED qualified Dr. Kesidis to render opinions about the level of ordinary skill in the field of intrusion detection in November 1998, SRI instead acts as if these admissions were never made. In particular, SRI points to certain experiences Dr. Kesidis has had

---

[1] SRI has defined the field of art as "cyber security" and Defendants have defined the field of art as "intrusion detection." For the purpose of this motion, this difference in description is not material, because Dr. Kesidis does not meet any party's definition.

[2] Kesidis Tr. 367:3-8 [D.I. 292, Ex. 3] (Unless otherwise specified, all referenced exhibits are attached to the previously submitted Declaration of Robert M. Galvin [D.I. 292]).

[3] *Id.* at 10:13-18.

1

with intrusion detection since 2000 and argues that the level of ordinary skill in the art "did not materially change" between 1998 and 2000. By his admission that he wasn't familiar with the state of the art in 1998 when he was retained in 2005, however, Dr. Kesidis has acknowledged that these experiences did not inform him of the level of ordinary skill in the art in 1998 *in any way*.

In a final effort to save Dr. Kesidis' testimony on the level of ordinary skill in the art in 1998, SRI claims that Defendants wish to preclude such testimony based on Dr. Kesidis' present expert skill. But this argument is nothing more than a red herring. Dr. Kesidis' present expertise may have qualified him to investigate the understanding of those of ordinary skill in the intrusion detection art in 1998. That expertise does not, however, excuse his failure to undertake any such investigation after he was retained for this case.

In light of Dr. Kesidis' admissions that he was not familiar with the state of the intrusion detection art in 1998 at the time he was retained in 2005, and that after he was retained he did nothing more than speak to counsel and to "briefly think about it," there would be nothing "scientifically valid" about any testimony from Dr. Kesidis on the level of ordinary skill in the field of intrusion detection in 1998. *Daubert v. Merrill Dow Pharms, Inc.*, 509 U.S. 578, 593 (1993). Dr. Kesidis should therefore be precluded from offering any such opinion testimony.

## II.  SRI HAS NOT MET ITS BURDEN OF SHOWING THAT DR. KESIDIS' REASONING IS SCIENTIFICALLY VALID

### A.  SRI Never Confronts Dr. Kesidis' Admission That, Despite All His Academic and Professional Experiences, He Was Not Familiar With the State of the Art in the Intrusion Detection Field in 1998 Before He Was Retained in 2005

In a commendable display of candor, Dr. Kesidis admitted that his academic and professional experience prior to his involvement in this case in 2005 did not familiarize him with the state of the art in intrusion detection as of 1998:



**REDACTED**

Dr. Kesidis did not qualify his admission in any way. He did not, for example, suggest that he was otherwise familiar with the art in 1998 based on his unspecified consultations with intrusion detection experts and his literature review survey upon his 2000 entry into the field, or his limited intrusion detection research and other work since 2001.

Nor could he. Dr. Kesidis may have conducted research, obtained grants, published articles, given talks and participated in committees in the field of intrusion detection, but he has admitted that all of these activities took place well after the priority application for the patents-in-suit was filed in 1998.[5] Dr. Kesidis did not begin conducting research in the field of intrusion detection until 2000.[6] He did not receive his first grant in the field until 2002.[7] He did not publish his first paper in intrusion detection until 2003.[8] Because he did not enter the field until 2000, he did not give any talks or participate in any committees until after 2000. In fact, the only intrusion detection talk given by Dr. Kesidis that was specifically identified did not take place until 2005.[9] Similarly, the only specific intrusion detection committee work identified in his supplemental declaration did not take place until 2005.[10]

---

[4] *Id.* at 367:3-8.

[5] *Id.* at 16:5-11 (did not begin researching cyber security until 2000), 9:2-17 (earliest grant in the field was in 2002), and 7:4–8:23 (earliest publication or talk in the field was in 2003).

[6] Res. Br. at 2 [D.I. 344].

[7] *Id.* at 3.

[8] Kesidis Tr. 8:20-23 [D.I. 292, Ex. 3].

[9] Res. Br. at 4 [D.I. 344].

[10] Kesidis Decl. ¶ 14 [D.I. 348].

Rather than confront the reality of Dr. Kesidis' admission, SRI argues, in effect, that its own expert simply got it wrong. In particular, SRI maintains that, despite Dr. Kesidis' clear admission to the contrary in his deposition, Dr. Kesidis' activities since 2000 coupled with his general education and experience in electrical engineering and network traffic engineering nevertheless informed him of the state of the art in 1998 by the time he was retained in 2005. The Third Circuit, however, has held that admissions by an expert at deposition are more than sufficient to preclude that expert from testifying, *Oddi v. Ford Motor Co.*, 234 F.3d 136, 153-54 (3d Cir. 2000), and has further rejected the notion that "a District Court must provide a plaintiff with an open-ended and never-ending opportunity to meet a *Daubert* challenge until plaintiff 'gets it right.'" *Id* at 154 (quoting *In re TMI Litig.*, 199 F.3d 158, 159 (2000)).

Even if it were proper to ignore an expert's own admission at deposition about his qualifications, a careful examination of Dr. Kesidis' qualifications reveals their failure to educate Dr. Kesidis on the state of the art in intrusion detection in 1998. The failure of SRI's evidence is dispositive because, SRI, as the party offering the expert testimony, has the burden of proving admissibility. *See Daubert* at 592 n.10.

First, Dr. Kesidis' education and experience in electrical engineering and the "sibling discipline" of network traffic engineering provide insufficient specialized knowledge of the level of ordinary skill in the particular field of intrusion detection. Network traffic engineering and intrusion detection are two separate fields, and expertise in network traffic engineering does not imply expertise in intrusion detection in any way.[11] Indeed, Dr. Kesidis acknowledged as much when he admitted that, in spite of his electrical engineering education and network traffic engineering experience prior to 1998, he did not have even ordinary skill in the art of intrusion detection at that time:



---

[11] 7/10/06 Declaration of L. Todd Heberlein ("Heberlein Decl.") ¶ 14.

REDACTED

Second, Dr. Kesidis did not gain a sufficient understanding of the level of ordinary skill in intrusion detection in 1998 from his activities after entering the intrusion detection field in 2000. SRI points to his survey of literature in the Summer and Fall of 2000 and his attendance at unspecified security-related talks.[13] SRI also points to unspecified conversations with those in the field such as Phillip Porras, Felix Wu and Karl Levitt.[14] SRI admits, however, that Dr. Kesidis did not consult with these individuals until the Fall of 2002, and SRI offers no evidence that any of the literature surveyed or talks attended by Dr. Kesidis demonstrated, or even discussed, the state of the art in 1998.[15] In fact, as Dr. Kesidis has acknowledged, many systems that were part of the art in 1998 were rendered obsolete by 2000.[16]

Nor does SRI offer any evidence that any of Dr. Kesidis' other work "within two years of entering the cyber security field"[17] shed any light on the level of understanding in the field in 1998. Dr. Kesidis is not an intrusion detection historian and none of the publications, talks, grants, or courses listed on his curriculum vitae indicates that he has

---

[12] Kesidis Tr. 15: 3-11 [D.I. 292, Ex. 3].

[13] Res. Br. at 2, 10-11 [D.I. 344].

[14] Id. at 3.

[15] Id. at 10; see generally Res. Br. [D.I. 344].

[16] See Kesidis Tr. 375:20-24 REDACTED [D.I. 292, Ex. 3].

[17] SRI specifically cites to a 2002 grant awarded to Dr. Kesidis by Cisco Systems, work by Dr. Kesidis beginning in 2004 on projects known as EMIST and DETER, various publications by Dr Kesidis, unspecified talks on cyber security, a 2005 presentation in Tokyo by Dr. Kesidis on internet security, and general committee and conference work at IEEE. Res. Br. 3-4 [D.I. 344].

completed any work in the history of intrusion detection or the level of understanding in the field in 1998.[18] In response, SRI claims that "there was no material change in the level of ordinary skill in the cyber security field" between 1998 and 2000-2001.[19] But the only support for SRI's claim is Dr. Kesidis' own declaration wherein he states,

**REDACTED** As discussed above, Dr. Kesidis has acknowledged that he has never undertaken any specific effort to understand the baseline of the level of skill in the art in 1998, rendering any comparison from him against that baseline unreliable.

In any event, it is clear that there were important changes in the state of the art between 1998 and 2000.[21] For instance, many important commercial and open source intrusion detection tools, such as "Snort," were introduced during that time.[22] These changes resulted in changes in the level of ordinary skill in the art.[23] While the amount of education and experience for one of ordinary skill in the art may not have changed, the quality of that education and experience did change.[24] Because Dr. Kesidis' experience before his involvement in this case did nothing to inform him of those changes, his prior experience cannot qualify him to offer an opinion on the state of the art before the changes occurred.

---

[18] *See generally* Compton Decl. Ex. A [D.I. 345].
[19] Res. Br. at 9 [D.I. 344].
[20] Kesidis Decl. ¶ 15 [D.I. 348].
[21] Heberlein Decl. ¶ 15.
[22] *Id.*
[23] *Id.*
[24] *Id.*

B.  **SRI Fails to Establish that Dr. Kesidis Adequately Investigated the State of the Art in Intrusion Detection in 1998 After He Was Retained in 2005**

Because he was not familiar with the state of the art in 1998 before being retained by SRI in 2005, Dr. Kesidis needed to familiarize himself with the state of the art in 1998 in order to have an adequate basis to testify about the level of ordinary skill in the art at that time. But as discussed in Defendants' opening brief, Dr. Kesidis' deposition revealed that his efforts to learn about the state of the art in 1998 were inadequate.

REDACTED

When pressed, Dr. Kesidis only specifically remembered reading the anticipating references cited by Defendants.[26] While Dr. Kesidis claims that he may have read some other references, he could not recall any of them specifically during his deposition.[27] Although he had the opportunity to do so, Dr. Kesidis did not speak with anyone who was in the field in 1998 to gain the benefit of their experience and understanding of the state of the art.[28] In fact, apart from REDACTED Dr. Kesidis did not do any specific research to determine what the level of ordinary skill would have been in the intrusion detection field as of November 9, 1998.[29]

Against this backdrop, any testimony from Dr. Kesidis on the state of the art in intrusion detection in 1998 would be "based solely on his subjective belief," just like the

---

[25] *See* Kesidis Tr. 10:13-18 [D.I. 292, Ex. 3].
[26] *Id.* at 369:14-23.
[27] *Id.* at 367:21-368:9.
[28] *Id.* at 369:25-370:7; 372:13-373:20.
[29] *Id.* at 10:13-18.

proposed testimony from Dr. Benedict excluded by this Court in *Izume Prods. Co. v. Koninkline Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 602 (D. Del. 2004). In that case, the Court noted that absent "some form of support," such testimony "does not meet the test for admissibility." *Id.* No less than the proposed testimony of Dr. Benedict in *Izume*, Dr. Kesidis' subjective belief about the state of the art in intrusion detection in 1998 does not meet the basic requirements for admissibility under Fed. R. Evid. 702.

    **C.    Dr. Kesidis' Present Expertise Does Not Relieve Him of the Responsibility of Conducting a Scientifically Valid Investigation of the the Level of Skill in the Intrustion Detection Art in 1998**

In a final effort to save Dr. Kesidis' testimony on the state of the intrustion detection art in 1998, SRI "rebuts" an argument that Defendants have never made. Citing *Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F.Supp. 2d 529, 550 (S.D. Tex. 2006), *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997), and *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 404 F.Supp. 2d 575, 580 (D. Del. 2005), SRI contends that "there is no requirement that an expert must himself have been one of ordinary skill at the time of the filing of the patents-in-suit."[30]

Defendants agree, so much so that they did not argue such a requirement in their opening brief. What Defendants have argued, and what SRI has not even addressed, let alone rebutted, is that Dr. Kesidis has failed to apply his present expertise in any scientifically valid investigation of the level of ordinary skill in the intrusion detection art at the time the patents-in-suit were filed.

Under SRI's reasoning, Dr. Kesidis' present expertise alone qualifies him to offer testimony on the state of the intrusion detection art almost eight years ago. But as this Court noted in *Izume*, regardless of an expert's *present* qualifications, a party must always establish that in reaching his conclusions the expert relied on a scientifically valid methodology. *See Izume*, 315 F. Supp. 2d at 602. In this case, Dr. Kesidis has admitted

---

[30] SRI's Resp. Br. at 7.

that he did nothing more to understand the state of the art in intrusion detection in 1998 than **REDACTED** This does not satisfy SRI's burden of demonstrating the reliability of Dr. Kesidis' opinion "by a preponderance of the evidence." *Id.* at 601.

Dr. Kesidis' failure to conduct a scientifically valid investigation stands in marked contrast to the investigation conducted by the expert in *Sims v. Mack Trucks, Inc.*, 459 F.Supp. 1198 (E.D. Pa. 1978), another of the cases relied on by SRI for its "rebuttal." Like Dr. Kesidis, the expert in *Sims* was not involved in the field at the relevant time. *Id.* at 1214. But unlike Dr. Kesidis, the expert in *Sims* established that "he knew about that art and the skill of the persons in it as a result of his involvement in the art some years later and his experience then with the vehicles designed [at the earlier relevant time]." *Id.* Here, Dr. Kesidis' involvement in the art "some years later and his experience then" with intrusion detection systems did nothing to inform of the intrusion detection art in 1998. As he admitted in his deposition, he has never been involved in the implementation of a system for enterprise-deployed cyber security.[31] He also admitted that he has never used any of the prior art intrusion detection systems about which he opines.[32] This later admission is not surprising, given Dr. Kesidis' statement that prior art systems **REDACTED**

In light of these admissions, Dr. Kesidis cannot in any reasonable sense be said to have acquired a "scientifically valid" understanding of the art of intrusion detection in 1998. SRI's protestations notwithstanding, nothing about Dr. Kesidis' present expertise changes that fact.

---

[31] Kesidis Tr. 17:19–18:4 [D.I. 292, Ex. 3].
[32] *Id.* at 375:20-22.
[33] *Id.* at 375:20-24.

## III. CONCLUSION

Dr. Kesidis was not a person of ordinary skill in the relevant art in 1998. He did not take sufficient steps to learn about the level of skill in the relevant art in 1998. Because he is therefore not qualified under Fed. R. Civ. 702 to testify about the level of ordinary skill in the intrusion detection art in 1998, Defendants' motion should be granted.

Dated: July 10, 2006

POTTER ANDERSON & CORROON LLP

/s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel.: (302) 984-6000
Fax: (302) 658-1192

OF COUNSEL:

Holmes J. Hawkins III
Natasha H. Moffitt
KING & SPALDING LLP
191 Peachtree Street
Atlanta, GA 30303
Tel: (404) 572-4600
Fax: (404) 572-5145

Theresa A. Moehlman
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel.: (212) 556-2100
Fax: (212) 556-2222

Attorneys for Defendant INTERNET SECURITY SYSTEMS, INC., a Delaware Corporation and INTERNET SECURITY SYSTEMS, INC., a Georgia Corporation

MORRIS, JAMES, HITCHENS & WILLIAMS, LLP

/s/ Richard K. Herrmann
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel.: (302) 888-6800

OF COUNSEL:

Lloyd R. Day, Jr.
Robert M. Galvin
Paul S. Grewal
DAY, CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014
Tel: (408) 873-0110
Fax: (408) 873-0220

Michael J. Schallop
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA 95014
Tel: (408) 517-8000
Fax: (408) 517-8121

Attorneys for Defendant SYMANTEC CORPORATION, a Delaware Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of July, 2006, I electronically filed the foregoing document, **REDACTED REPLY BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO LIMIT TESTIMONY OF SRI'S EXPERT, DR. GEORGE KESIDIS, UNDER FEDERAL RULE OF EVIDENCE 702**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

| | |
|---|---|
| John F. Horvath, Esq.<br>Fish & Richardson, P.C.<br>919 North Market Street, Suite 1100<br>Wilmington, DE 19801 | Richard L. Horwitz, Esq.<br>David E. Moore, Esq.<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>1313 North Market Street, 6th Floor<br>Wilmington, DE 19801 |

Additionally, I hereby certify that on the 14th day of July, 2006, the foregoing document was served via email on the following non-registered participants:

| | |
|---|---|
| Howard G. Pollack, Esq.<br>Michael J. Curley, Esq.<br>Fish & Richardson<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>650.839.5070 | Holmes Hawkins, III, Esq.<br>King & Spalding<br>191 Peachtree St.<br>Atlanta, GA 30303<br>404.572.4600<br><br>Theresa Moehlman, Esq.<br>King & Spalding LLP<br>1185 Avenue of the Americas<br>New York, NY 10036-4003<br>212.556.2100 |

　　　　　　　　　　　　　　　　　　　　　/s/ Richard K. Herrmann
　　　　　　　　　　　　　　　　　　Richard K. Herrmann (#405)
　　　　　　　　　　　　　　　　　　Mary B. Matterer (#2696)
　　　　　　　　　　　　　　　　　　Morris, James, Hitchens & Williams LLP
　　　　　　　　　　　　　　　　　　222 Delaware Avenue, 10th Floor
　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　(302) 888-6800
　　　　　　　　　　　　　　　　　　rherrmann@morrisjames.com
　　　　　　　　　　　　　　　　　　mmatterer@morrisjames.com
　　　　　　　　　　　　　　　　　　*Counsel for Symantec Corporation*