## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SRI INTERNATIONAL, INC., a California Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C. A. No. 04-1199 (SLR) |
| INTERNET SECURITY SYSTEMS, INC., a Delaware Corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia Corporation, and SYMANTEC CORPORATION, a Delaware Corporation, | ) ) ) ) ) ) | PUBLIC VERSION |
| Defendants and Counterclaim-Plaintiffs. | ) ) ) | |

## DEFENDANT ISS'S REPLY BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS
## OF THE SRI PATENTS-IN-SUIT ARE NOT INFRINGED OR,
## IN THE ALTERNATIVE, ARE INVALID

OF COUNSEL:

Holmes J. Hawkins III
Natasha H. Moffitt
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5134

Theresa A. Moehlman
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel.: (212) 556-2100
Fax: (212) 556-2222

Dated: July 10, 2006
Public Version Dated: July 17, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants Internet Security Systems, a Delaware Corporation and Internet Security Systems, a Georgia Corporation*

## TABLE OF CONTENTS

I.  OVERVIEW ................................................................................................1

    A.  Hierarchical Architecture Claims..............................................................1

    B.  Statistical Detection Claims ......................................................................2

II.  HIERARCHICAL ARCHITECTURE CLAIMS.............................................4

    A.  Under Defendants' Construction of *Monitor*,
        SRI Admits There Is No Infringement.......................................................4

    B.  Under SRI's Construction of *Monitor*, There Are No Issues
        Of Material Fact And Summary Judgment Is Appropriate .......................5

        1.  Under SRI's Construction of *Integrating* And
            *Correlating*, There Is No Infringement By ISS's Products ...........8

        2.  Under Defendants' Constructions Of *Integrating* And
            *Correlating*, Prior Art RealSecure Invalidates...........................11

    C.  SRI Faces The Same Dilemma With The Dependent Claims....................13

III.  STATISTICAL DETECTION CLAIMS.........................................................15

    A.  SRI Cannot Now Re-Write The Claim Element
        *Receiving Network Packets Handled By A Network Entity* ...................15

    B.  ██████████████████████████████ .......................17

    C.  ████████████████ .............................................18

IV.  CONCLUSION.............................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Bicon, Inc. v. Straumann Co.,*
   441 F.3d 945 (Fed. Cir. 2006)..................................................................... 16

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,*
   214 F.3d 1302 (Fed. Cir. 2000).................................................................. 17

*Hoffer v. Microsoft Corp.,*
   405 F.3d 1326 (Fed. Cir. 2005).................................................................. 13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)...................................................................................... 1

*Unique Concepts, Inc. v. Brown,*
   939 F.2d 1558 (Fed. Cir. 1991)................................................................... 17

## Other Authorities

35 U.S.C. § 102(b) ........................................................................................... 1

## I.    OVERVIEW

Although SRI's Answering Brief is long on attorney argument, it fails to come forward with any specific facts showing there is a genuine issue of material fact for trial. SRI cannot defeat ISS's Motion For Summary Judgment simply by stating a fact is challenged or arguing there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### A.    Hierarchical Architecture Claims

1.    SRI does not dispute that under Defendants' construction of *monitor*, there is no infringement of the claims of the '203, '615 and '212 patents and summary judgment is appropriate.

2.    Under SRI's construction of *monitor*, there are still no issues of material fact. SRI does not dispute that the prior art RealSecure system was on-sale before November 1997 and is, therefore, prior art under 35 U.S.C. § 102(b). ████████

a. Under SRI's construction of *integrating* and *correlating*, a "functional unit" must be generated. As SRI's expert explained, a "functional unit" is a meta-alert that can be sent on to other monitors for further processing. ████

████████████████████████████████████████████

███████████████████████████████████

b. ████████████████████████████

███████████████████████████████████

███████████████████████████████████████

█████████████

c. Should the Court find invalidation of the independent claims, SRI tries to rely on dependent claims. However, it faces the same dilemma – the current ISS products and prior art ISS products stand or fall together. There is either no infringement or the claims are invalid.

## B. Statistical Detection Claims

1. SRI does not dispute that its limits '338 patent infringement assertions to Proventia ADS operating in tap mode. ███████████████████████

██████████████████████████████████████████

████████████████████████████████

_____

██████████████████████████████████████

███████████████████████

███████████████████████████████

████████████████████████████████████

██████████████████████████ But if that were enough, there

would have been no need to specify *handled by a network entity* in the claims because all

network packets transmitted over the internet are handled at some point by some network

entity. Under well-established law, all words in a claim are to be given meaning. SRI's

argument would render that phrase superfluous and is, therefore, incorrect.

    2.    Moreover, ADS does not meet the claim language calling for *determining*

*whether the difference between the short-term and long-term statistical profile indicates*

*suspicious network activity.*

    a.    Under Defendants' construction of this term, the *determination* is

made based on whether the difference exceeds a threshold that is empirically determined

to indicate suspicious activity based on the historically adaptive deviation between the

two. This technique requires no prior knowledge of what constitutes suspicious activity;

the algorithm statistically derives the threshold. ██████████████████

███████████████████████████████

███████████████████████████

---

2    At the time the applications were filed, it was common for network intrusion agents to receive packets through a network entity, such as a router. ████████████ ████████████ Ex. B [NetStalker Manual] at p. 1-4, filed contemporaneously herewith.

3    SRI suggests that there is some sort of conflict between ISS's expert report and Mr. Song's declaration. There is none. ████████████████████████ ████████████████████

(continued)

 SRI confuses concepts when it argues that what is considered "normal" activity may change over time. That is not the relevant inquiry here -- the issue is whether the amount of difference over normal that is considered suspicious statistically adapts according to the empirical data. ▮▮▮▮▮▮▮▮▮▮

b. ADS also does not meet the claim limitations regarding long-term and short-term statistical profiles. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ Thus, for this additional reason, there is no infringement of the '338 claims by ADS.

## II.    HIERARCHICAL ARCHITECTURE CLAIMS

### A.    Under Defendants' Construction of *Monitor*, SRI Admits There Is No Infringement

SRI does not dispute that ISS products do not infringe the '203, '615 or '212 patent claims under Defendants' construction of *monitor*. Thus, if the Court adopts Defendants' construction, there are no disputed issues of fact regarding infringement and summary judgment should be granted.

---

▮▮▮▮▮▮▮▮▮▮ SRI cannot create a fact issue out of an editing mistake.

**B.    Under SRI's Construction of *Monitor*, There Are No Issues Of Material Fact And Summary Judgment Is Appropriate**

Nor are there any genuine issues of fact if SRI's construction of *monitor* is adopted.   SRI limits its argument to a sole claim element of the independent claims of the '203, '615 and '212 patents – *integrating the reports of suspicious network activity.*

███████████████████████████████████████████████████████

███████████████████████████  SRI has come forward with no countervailing evidence and therefore summary judgment is appropriate.

As set forth in ISS's opening brief (D.I. 291), the prior art RealSecure Console included the functionality of combining events based on source, destination and event type.   It showed these events to the user in an Activity Tree window:



(Hall Decl. (D.I. 298) Ex. C [NT User's Guide] at ISS_02126189.)   In one of the examples shown in the figure (highlighted in yellow), RealSecure Console had received

and combined different events having the underlying commonality that event type "pop2"
was sent from "bigbox" to destination "vajra."   The two such events were combined.
This was done automatically.  (Hall (D.I. 298) Decl. ¶ 5.)    Thus, contrary to SRI's
assertion (SRI Br. (D.I. 335) at p. 1), prior art RealSecure automatically assessed
interrelationships among reports for the user.

---

[4]      "Hall 2d Decl." refers to the Second Declaration of Don Hall, filed
contemporaneously herewith.



Contrary to SRI's assertion, this use of the "roll-up" techniques has been disclosed to SRI during discovery.

---

<sup>5</sup>

While SRI points to training demonstrations of APC, any damages from such an alleged use are at best *de minimis* and necessarily speculative. Further, contrary to SRI's assertions, it must show direct infringement of all asserted '203 and '615 claims, which are either method or system claims. SRI cites to the law relating to *apparatus* claims in arguing that a product need only be capable of infringing use. This law is inapposite to *system* claims. As with method claims, SRI must prove direct infringement by use of the complete system. *See Decca, Ltd* v. *United States*, 225 Ct. Cl. 326, 337 (Ct. Cl. 1980) ("Direct infringement does not occur until a system, comprised of two or more transmitters and one or more receivers, has been constructed and is available for use."); *Strumskis* v. *United States*, 474 F.2d 623, 628, 175 (Ct. Cl. 1973), cert. denied, 414 U.S. 1067 (1973).



SRI has come forward with no specific facts to contest this showing. The best

SRI can do ███████████████████████████████████████████

███████████████████████████████  ████████████████████

███████████████████████████████████████████

████████████████████████████████   SRI cannot defeat summary

judgment with an argument ████████████████████████████████

████ *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (1986).

### 1.   Under SRI's Construction Of *Integrating* And *Correlating*, There Is No Infringement By ISS's Products

SRI has offered the following constructions of *integrating and correlating*:

| Claim Term | SRI's construction |
|---|---|
| automatically receiving and integrating the reports of suspicious activity | without user intervention, receiving reports and combining those reports into another functional unit. |
| wherein integrating comprises correlating intrusion reports reflecting underlying commonalities | combining the reports based on underlying commonalities between them. |

---

[6]    SRI attempts ████████████████████████████████████



██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ SRI's expert has conceded that the

events with the same source and destination reflect underlying commonalities:

███████████████████████████████████████████
█████████████████████████████████

██████████████████

████████████████████████████████████████

███████

████████████████████████████

██████████████████████████████████████

██████████████████████████ As discussed, SRI's expert explained ████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

███ ████████████████████████████████

████████████████████████████████████████

████████ Thus, neither infringes the claims.

SRI now seeks to argue ██████████████████████

██████████████████████  ████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Thus, prior art RealSecure

would invalidate the claims.

ISS believes that if a "functional unit" is required, it should be defined as a meta-

alert that can be further analyzed by other monitors, as set forth by SRI's expert.  Without

that definition, it is unclear what that term means.  (*See* Defendants' Joint Opening Claim

Construction Brief (D.I. 267) at pp. 26-27.)

This ambiguity under SRI's claim construction illustrates exactly why

Defendants' construction of *monitor* that uses the definition provided in the patent should

be adopted.  Under Defendants' construction, the claims cohere and allow an analysis

hierarchy of monitors of any depth or breadth to be formed.   Generic monitors are

configured to send their reports to other monitors in the analysis hierarchy for further

analysis.  Because they produce such reports, there is no ambiguity as to what a

"functional unit" should be – it is the reports.  In fact, there is no need to put such a

requirement in the *integrating* step because it is set forth in an earlier claim step, which

requires "*generating, by the monitors, reports of suspicious activity.*"  (*See, e.g.*, June 16,

2006 Moore Decl. (D.I. 293) Ex. A ['203 patent] claim 1, col. 14:31-32.)

This point is further illustrated by SRI's argument that ████████████████

████████████████████████████████████████████████

████████████████████ SRI points to the preamble of the hierarchical architecture claims

calling for *method of hierarchical event-monitoring and analysis.*  This is the notion of

forming an analysis hierarchy of generic monitors of any depth or breadth.

If sensors feeding a centralized management system are not what the "claimed inventions are about", then neither the prior art RealSecure system, nor the current ISS SiteProtector with APC, infringes. Both have the architecture of sensors feeding centralized management systems. They stand or fall together. As SRI's expert conceded,



2.    **Under Defendants' Constructions Of *Integrating* And *Correlating*, Prior Art RealSecure Invalidates**

| Claim Term | Defendants' Construction |
| --- | --- |
| automatically receiving and integrating the reports of suspicious activity | automatically receiving and combining the reports of detected suspicious network activity. |
| wherein integrating comprises correlating intrusion reports reflecting underlying commonalities | determining relationships among the reports of detected suspicious network activity |

 As admitted

by SRI's expert,

Similarly, as discussed above, Dr. Kesidis

Therefore, prior art RealSecure, which determined commonalities among the reports would meet Defendants' construction of *correlating* as determining relationships among the reports of detected suspicious network activity.

Thus, under SRI's construction of *monitor* and Defendants' construction of *integrating* and *correlating*, prior art RealSecure invalidates all asserted independent

claims of the '203 and '615 patents, as well as the dependent claims reciting the *correlating* step -- '203 claims 2 and 13 and '615 claims 2 and 14.

### C.    SRI Faces The Same Dilemma With The Dependent Claims

If the Court finds there is no infringement, there is no need to look at the dependent claims. A dependent claim, which is more limited in scope than the independent claim from which it depends, cannot be infringed when the broader independent claim is not infringed. *Hoffer* v. *Microsoft Corp*, 405 F.3d 1326, 1331 (Fed. Cir. 2005).

Assuming the Court needs to address the dependent claims, they again are either not infringed or invalid. The dependent claims including the *correlating* limitations have been addressed above ('203 claims 2 and 13 and '615 claims 2 and 14).

Dependent '203 claims 3 and 14 of the '203 patent and '615 claims 3 and 15 recite:

> wherein integrating further comprises invoking countermeasures to a suspected attack.

The *integrating* step is performed by the hierarchical monitor -- under SRI's construction, that would be SiteProtector with APC or RealSecure Console. As set forth in Defendants' construction, *countermeasure* is defined in the patent as including passive responses such as report dissemination to administrators. ████████████████████

████████████████████████████

███████████████████████████████

███████████████████████████ Therefore, these claims would be invalid.

[REDACTED]

The only other dependent claims at issue relate to an API; these claims are '203 claims 4 and 15 and '615 claims 4 and 15. They recite

> *wherein the network monitors include an API for encapsulation of monitor functions and integration of third-party tools.*

Under SRI's claim constructions, *network monitor* would be the sensors. But SRI has put forth no argument that the sensors have an API. The only accusation SRI has made about APIs concerns the Third Party Module. [REDACTED]

[REDACTED]

Therefore, there is no infringement.

[REDACTED]

[REDACTED] Thus, there is no infringement of these claims.

---

[7]      As discussed in Defendants' Joint Claim Construction Answering Brief (D.I. 362 at pp. 20-21), an API is a standard term of art that means a standard interface specification for communication. SRI's construction of this term (D.I. 265 at pp. 34-36) is confusing and does get the main point across. [REDACTED]

[REDACTED]

### III.    STATISTICAL DETECTION CLAIMS

#### A.    SRI Cannot Now Re-Write The Claim Element
*Receiving Network Packets Handled By A Network Entity*

The two asserted independent '338 claims (claims 1 and 24) require *receiving network packets handled by a network entity* (claim 1) and *receive network packets handled by a network entity* (claim 24).

As explained in the patent specification, network entities are gateways, routers, firewalls and proxy servers:



At the time of the patent application filing, it was common in the art for an intrusion detection agent to receive packets from routers. For example, NetStalker was linked to specific routers.

███████████████████████████████████████████████████████

█████████████████████████

    SRI now wants to delete this phrase from its claims. ████████████████████

████████████████████████████████████████████████████

██████████████████████  Thus, if SRI meant to cover a direct tap, it would have

simply specified *receiving network packets*. But SRI added the phrase *handled by a*

*network entity* to indicate the association with a network entity.  Consistent with the

disclosure in the specification, each service and domain monitor (16a - 16f) shown in

figure 1 is linked to a network entity, as highlighted in yellow:



## FIG. 1

(Moore Decl. (D.I. 293, June 16, 2006) Ex. A ['203 patent] Fig. 1.)

    SRI cannot now re-write its claims to render the phrase *handled by a network*

*entity* meaningless.  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-951 (Fed.Cir. 2006)



("claims are interpreted with an eye toward giving effect to all terms in the claim.");

*Elekta Instrument S.A.* v. *O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305, 1307

(Fed.Cir. 2000) (claim language "only within a zone extending between latitudes 30°-

45°" does not encompass a device with radiation sources extending between 14° and 43°

because "[a]ny other conclusion renders the reference to 30° superfluous"); *Unique*

*Concepts, Inc.* v. *Brown*, 939 F.2d 1558, 1563 (Fed.Cir. 1991) ("When the language of a

claim is clear, as here, and a different interpretation would render meaningless express

claim limitations, we do not resort to speculative interpretation based on claims not

granted.")

    Thus, Proventia ADS does not infringe the '338 patent claims.

**B.**    ███████████████████████████████

    Every independent '338 claim requires determining whether the difference

between the short-term and long-term statistical profile indicates suspicious network

activity. Under Defendants' construction, this determination depends upon whether the

difference between the short-term and long-term statistical profile exceeds a threshold

that is empirically determined to indicate suspicious activity based on the historically

adaptive deviation between the two. This construction achieves the advantage of

requiring no prior knowledge of what constitutes suspicious activity. Without the

historically adaptive threshold, the claims become indefinite as to how the determination

of suspicious activity is made.



SRI argues

That may be, but it does not help SRI here. The relevant inquiry is whether the system adapts the amount over normal that is considered to be suspicious.

C.



Thus, this provides another reason as to why ADS does not infringe the '338 claims.

## IV.    CONCLUSION

For the foregoing reasons, and the reasons set forth in ISS's Opening Brief, ISS respectfully requests that the Court grant this motion that (1) the asserted claims of the '203 and '615 patents are not infringed, or, alternatively, are invalid and (2) the claims of the '338 patent are not infringed.  SRI has put forth no statements regarding the '212 patent.  Therefore, ISS also requests that the Court grants its motion that this patent is not infringed.

OF COUNSEL:

Holmes J. Hawkins III
Natasha H. Moffitt
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5134

Theresa A. Moehlman
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel.: (212) 556-2100
Fax: (212) 556-2222

Dated:  July 10, 2006
Public Version Dated:  July 17, 2006

741305

POTTER ANDERSON & CORROON LLP

By:    /s/ David E. Moore
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Hercules Plaza 6th Floor
        1313 N. Market Street
        Wilmington, DE 19801
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

*Attorneys for Defendants Internet Security
Systems, a Delaware Corporation and Internet
Security Systems, a Georgia Corporation*

20

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 17, 2006, the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

John Horvath
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE   19899

Richard K. Herrmann
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306

I hereby certify that on July 17, 2006, I have Electronically Mailed the attached document to the following non-registered participants:

Howard G. Pollack
Michael J. Curley
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
pollack@fr.com
curley@fr.com

Paul S. Grewal
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Boulevard
Suite 400
Cupertino, CA  95014
pgrewal@daycasebeer.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

683314