IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation,<br><br>　　　Plaintiff and<br>　　　Counterclaim-Defendant,<br><br>　v.<br><br>INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, and SYMANTEC CORPORATION, a Delaware corporation,<br><br>　　　Defendants and<br>　　　Counterclaim-Plaintiffs. | C. A. No. 04-1199 (SLR)<br><br>**PUBLIC VERSION** |

**SRI INTERNATIONAL, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE *LIVE TRAFFIC* ARTICLE IS NOT A SECTION 102(b) PRINTED PUBLICATION**

Dated: July 10, 2006

FISH & RICHARDSON P.C.

John F. Horvath (#4557)
Kyle Wagner Compton (#4693)
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Howard G. Pollack
Katherine D. Prescott
500 Arguello St., Ste. 500
Redwood City, CA 94063

Attorneys for Plaintiff and Counterclaim Defendant
SRI INTERNATIONAL, INC.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..............................................................................................................1

II. THE LIVE TRAFFIC ARTICLE WAS NOT PUBLICLY
ACCESSIBLE UNTIL NOVEMBER 10, 1997 .................................................................2

    A. No reasonable jury could conclude that there is clear and
convincing evidence that *Live Traffic's* substance was
publicly accessible prior to November 10, 1997. .....................................................2

    B. The *Live Traffic* draft temporarily posted at an FTP
address is not a printed publication because it was never
publicly accessible. ...................................................................................................7

III. CONCLUSION ..................................................................................................................8

## **TABLE OF CONTENTS**

**Page**

**Cases**

*In re Bayer,*
    568 F.2d 1357 (C.C.P.A. 1978) .................................................................................... 8

*In re Cronyn,*
    890 F.2d 1158 (Fed. Cir. 1989) ..................................................................................... 8

*In re Klopenstein,*
    380 F.3d 1345 (Fed. Cir. 2004) ..................................................................................... 8

I.  **INTRODUCTION**

SRI's motion for summary judgment requires resolution of one question – was the substance of the *Live Traffic* article publicly available prior to November 9, 1997? As the Defendants have failed to identify any, let alone clear and convincing, evidence suggesting that the *Live Traffic* reference they assert as prior art was publicly available prior to November 10, 1997, summary judgment in SRI's favor is warranted. Indeed, as explained below on page 6, it appears that Defendants have deliberately withheld from the Court and SRI a key piece of evidence from the Internet Archive showing that their primary argument is baseless. SRI found this evidence in researching the specifics of the contentions in Defendants' opposition to SRI's motion; SRI had no occasion to find it earlier, because SRI had no reason to believe either that Defendants' own exhaustive efforts at mining the Internet Archive would have failed to find this document or that, having found it, Defendants would have withheld it from the Court.

As for what is contained in their opposition, the Defendants urge that *Live Traffic's* substance was publicly available as of August 1, 1997 on both a web site and a ftp site. But there is simply no evidence that the version of *Live Traffic* cited by Defendants as 'prior art" was posted on the web prior to November 10, 1997. In fact, the evidence that the Defendants identify – an index of available downloads from the Internet Archive – along with the authors' testimony, contemporaneous emails, and other archived web materials that Defendants had access to but choose to ignore, all compel the conclusion that *Live Traffic* was first posted on November 10, 1997. A copy of *Live Traffic* would not have been on the web in August 1997 as alleged by the Defendants because, as explained by one of its authors, at that time it was still an article under submission for publication. The evidence shows that, at most, an abstract of the article may have been made available in August, 1997. After the article was accepted for publication and placed in "camera-ready" format, it was made publicly available for the first time by being placed in full on the web on November 10, 1997. The timing of the

1

patent filing in relation to this date is not a coincidence. Because the inventors recognized at the time that this article disclosed many of their inventions, they made sure to apply for a patent within one year of making this article publicly available, submitting the related application 364 days later. With respect to the alleged FTP posting, there is no evidence that any one could have actually found it without having been informed of its precise ftp address and, therefore, the posting cannot meet the legal standard required for "publication".

## II. THE LIVE TRAFFIC ARTICLE WAS NOT PUBLICLY ACCESSIBLE UNTIL NOVEMBER 10, 1997

### A. No reasonable jury could conclude that there is clear and convincing evidence that *Live Traffic's* substance was publicly accessible prior to November 10, 1997.

As SRI explained in its opening brief, the evidence establishes that the Live Traffic paper was not made available publicly until November 10, 1997. While,

**REDACTED**

as explained below, this submission was not a publication. The co-author of the *Live Traffic* article who would have been responsible for its posting and who was SRI's 30(b)(6) witness on the subject further explained that:

**REDACTED**

[Compton Decl.[1] Ex. E at 103:24-104:13]. *Live Traffic* was not accepted for publication until October 2, 1997. [*See* Compton Reply Decl.[2] Ex. B (SRI e-mail regarding the

---

[1] Declaration of Kyle Wagner Compton in support of SRI's motion for partial summary judgment that the Live Traffic article is not a § 102(b) printed publication. (D.I. 272).

[2] Declaration of Kyle Wagner Compton in support of SRI's Reply on its motion for partial summary judgment that the Live Traffic article is not a section 102(b) printed publication, filed contemporaneously. SRI only recently obtained this document from the same internet archive location Defendants identified. It was not in SRI's files or possession during discovery.

2

acceptance for publication)]. Thus in August 1997 it would still have been under submission.

After acceptance of *Live Traffic* for publication, Mr. Porras was required to submit a "camera-ready" version by November 1, 1997. [Compton Decl. Ex. C]. The full substance of *Live Traffic* was then posted on the web on November 10, 1997. Posting on this date is shown by the table of available downloads located by the Defendants in the Internet Archive. [Moore Decl, Ex. R (D.I. 368)].[3] On the Internet Archive, the phrase "Live Traffic Analysis of TCP/IP Gateways (HTML)" in this table is linked to a complete version of *Live Traffic*. [*See* Compton Reply Decl., Ex. C, ¶ 3]. The table dates the link as November 10, 1997.[4] Mr. Porras, a co-author of *Live Traffic*, the person responsible for web postings related to the paper, and SRI's 30(b)(6) designee on the topic confirmed that *Live Traffic* was first posted to the web on November 10, 1997.[5] [Compton Decl. Ex. E at 62:8-24]. Contemporaneous e-mail is consistent with this timing.

**REDACTED**

---

[3] 

**REDACTED**

[4] The Defendants assert that "[t]his table indicated that Mr. Porras posted *Live Traffic* in html format on August 1, 1997." [Opp. Br. at 10 (D.I. 367)]. This is simply incorrect. The date August 1, 1997 does not appear anywhere in this table and the date associated with the phrase "Live Traffic Analysis of TCP/IP Gateways (HTML)" is November 10, 1997. [Moore Decl., Ex. R]. Moreover, the fact that this phrase is associated with the date November 10, 1997 in Ex. R to the Moore Declaration and to August 1, 1997 in Ex. J to the Compton Declaration suggests that the content linked to this phrase was likely updated and different in November than it had been in August. Why else would the phrase be associated with a new date?

[5] The Defendants allege that Mr. Porras was not properly prepared to testify as a 30(b)(6) witness regarding the web posting of *Live Traffic*. [Opp. Br. at 7; Motion to

**REDACTED**

3

**REDACTED**

[Compton Reply Decl., Ex. D at SRIE 0052257 (emphasis added)].

The first posting of *Live Traffic* on November 10, 1997 is also confirmed by

**REDACTED**

Thus, even prior to the filing of the patents-in-suit and long before this litigation, SRI recorded that the first *Live Traffic* posting occurred on November 10, 1997. In fact, it was because of this date and the statutory requirement that patents must SRI was diligently

**REDACTED**

[Compton Reply Decl., Exs. F and G], which it filed on November 9, 1998 – 364 days after the first public availability of *Live Traffic*.

In support of their assertion that the *Live Traffic* article was allegedly posted on the web in August 1997, Defendants rely almost entirely on argument based on one document, "The EMERALD Project" [Compton Decl., Ex. J], which they characterize as

---

6   Resort to the contract file is not necessary to SRI's motion for summary judgment. The contract file merely reinforces the evidence already discussed.

7   The e-mail containing this invention disclosure form was originally withheld as privileged. While the e-mail content is privileged, the invention disclosure form therein is not and was inadvertently withheld. Attached as Ex. E to the Compton Reply Declaration is a redacted version of the e-mail.
Porras informed the Defendants that information in SR___ .
**REDACTED**         Compton Decl. Ex. E at 62:14-24; 110:5-17].

4

a "webpage that indexes available materials on EMERALD" and claim "establishes that the *Live Traffic* paper was posted in html format as of August 1, 1997." [Opp. Br.[8] at 2, 6]. The EMERALD Project document, however, cannot and does not establish that the *Live Traffic* article was actually posted and publicly available on the web prior to November 10, 1997.[9]

First, the Defendants identify no evidence that the EMERALD Project document itself was actually posted on the web – there is no indication on the face of the document such as a http or www address, and the Defendants could not locate it in the Internet Archive. [Compton Decl., Ex. J]. They were, however, able to locate a similarly formatted document, but as discussed further below this document shows that the *Live Traffic* article was first posted on November 10, 1997. [Moore Decl., Ex. R]. Thus, it supports SRI's position.

Second, even assuming that the EMERALD Project document Defendants rely upon was posted to the web in August 1997—an assumption not supported by clear and convincing evidence-- that still does not prove that the *Live Traffic* paper was itself posted in August 1997. The EMERALD Project document contains the text "<u>Live Traffic Analysis of TCP/IP Gateways</u> (HTML)." [Compton Decl., Ex. J]. This phrase alone provides no indication that it was linked to the full text of *Live Traffic,* as opposed to a page containing an abstract, table of contents, or even a "site under construction" notice. The rest of the evidence, which Defendants ignore, establishes conclusively that, in fact, the link did not lead to the full text of *Live Traffic.*

---

[8] Answering Brief of Defendants ISS and Symantec to SRI's Motion for Partial Summary Judgment that the Live Traffic Article is Not a Section 102(b) Printed Publication. (D.I. 367).

[9] Defendants further criticize Mr. Porras for not remembering this document or reviewing it prior to his deposition, from among the hundreds of thousands of documents produced by SRI in this matter. However, collectively Mr. Porras' personal recollections, the internal investigation made by SRI's IT personnel (of which Mr. Porras was informed), and the invention disclosure in the contract file were the best information SRI had on the critical issue.

One piece of evidence is particularly critical and conclusively shows that Defendants' contention of an August 1997 posting is wrong. While the Defendants clearly exhaustively mined the Internet Archive of SRI's web site and produced several thousand pages from those public records, including documents that "[t]he January [1998] sweep picked up" (Opp. Br. at 7, n. 5), one archived document from that January 1998 sweep was noticeably absent from their production. A document does exist in the Internet Archive that bears the title "Live Traffic Analysis of TCP/IP Gateways" and is dated August 1, 1997 but *it is not* the *Live Traffic* paper Defendants base their invalidity contentions on. Rather it is only a one page abstract and introduction that does not contain the material Defendants need for their invalidity contention. [*See* Compton Reply Decl., Ex. A (http://web.archive.org/web/19980124003236/http://www.csl.sri.com/emerald/traffic-short.html)]. The only logical and reasonable inference that can be made is that it is this document, which on its face is dated August 1, 1997, which is entitled "Live Traffic Analysis of TCP/IP Gateways," and which is in HTML format, that is the only thing that could possibly have been linked to the phrase "Live Traffic Analysis of TCP/IP Gateways (HTML)" in the EMERALD Project document Defendants rely upon. [*Compare* Compton Reply Decl., Ex. A *with* Compton Decl., Ex. J]. Even more problematic for the Defendants is the fact that this document ends with a note stating that "[t]his paper will appear in the Proceedings of the *1998 Symposium on Network and Distributed System Security.* A final version will appear on this web page *by November 1997*. Please check back then if you would like a copy." [Compton Reply Decl., Ex. A (emphasis added)]. Thus contrary to the Defendants' assertion that what was posted in August 1997 contained content "essentially the same as that in the version published in the Symposium" [Opp. Br. at 7-8], the only evidence of actual posting of information related to *Live Traffic* on the web in August 1997 conclusively establishes otherwise.[10]

---

[10] It is quite troubling that this document, which conclusively shows that Defendants'

6

Thus, all the contemporaneous evidence, even that relied upon by the Defendants – archived web pages, e-mail, the invention disclosure form, and Mr. Porras' testimony -- shows that *Live Traffic* was first posted to the web in full on November 10, 1997. No other conclusion is possible from this evidence. Defendants' argument that it was posted earlier is based on a misleading presentation of the evidence, unwarranted assumptions and attorney rhetoric. Even taking all reasonable inferences from *all* the evidence in Defendants' favor, there are no genuine issues of material fact that can be in dispute and the only conclusion that can be reached by a reasonable fact-finder is that *Live Traffic* is not prior art.

> **B.     The *Live Traffic* draft temporarily posted at an FTP address is not a printed publication because it was never publicly accessible.**

The Defendants also contend that *Live Traffic* was publicly available as it was allegedly posted at ftp://csl.sri.com/publ/emerald/ndss98.ps for one week and this ftp address was provided to the submission committee. [Opp. Br. at 2, 3-5; Compton Decl. Ex. D]. The reasons why such a posting, assuming it did occur, was not publicly accessible have been detailed in SRI's Opening Brief (Opening Br.[11] at 5-9) and in response to the Defendants' own summary judgment argument (Response Br.[12] at 17-21) and will not be repeated here.

The Defendants do not raise any new, relevant issues. Rather they generally describe the accessibility of SRI's computer science lab's home ftp site and various postings on it, but never specifically address the posting in question – ftp://csl.sri.com/publ/emerald/ndss98.ps – because there is no evidence regarding its

---

contention of publication is false and which was easily obtained from the very same source as the thousands of pages of web material produced by Defendants during discovery, was not itself produced by Defendants to SRI or the Court.

[11]  Opening Brief in Support of SRI's Motion for Partial Summary Judgment that the Live Traffic Article is Not a Section 102(b) Printed Publication. (D.I. 271).

[12]  SRI Response to Defendants' Joint Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C. §§ 102 & 103. (D.I. 339).

7

public accessibility. Also lacking in relevance is Defendants' discussion of the organization of SRI's ftp site in 2006 [Opp. Br. at 3; Moore Decl., Ex. F]. There is no evidence regarding whether the present day directory structure bears any relationship to the structure in 1997, nine years ago. Moreover, there is no evidence that all posted documents are visible through the directory structure or that the particular document in question was. Thus, the fact that persons may have been aware of the site does not suggest, let alone establish, that they could have found the particular document in question on that site unless specifically directed to it. Mr. Porras's mentions of the site in his presentations clearly do no such thing. Finally, even if there were a directory in 1997 similar to the 2006 version, the directory structure does not constitute a meaningful index because, as in *In re Cronyn*, 890 F.2d 1158, 1159, 1161 (Fed. Cir. 1989), the directory is not organized by subject matter, but rather by various criteria including software module name (i.e., eXpert-BSM) and type of document (i.e., presentations). [Moore Decl., Ex. F].[13] Thus, Defendants have failed to identify any evidence that the temporary, ftp-posted document was actually publicly accessible. Therefore summary judgment in SRI's favor is warranted.

**CONCLUSION**

For the foregoing reasons and those set forth in SRI's Opening Brief and Response Brief, SRI respectfully requests that the Court grant its motion for partial summary judgment that the *Live Traffic* article is not a section 102(b) printed publication and may not be relied upon as prior art against the patents-in-suit.

---

[13] Defendants reliance on *In re Klopenstein*, 380 F.3d 1345 (Fed. Cir. 2004) is misplaced. That case involved the "display" of information in full public view at a conference where interested individuals could see the material displayed simply by walking by. Posting something on a computer server, even if it could potentially be accessed and viewed by someone who was directed to or found the link to it, is simply not the sort of "display" that case addressed. Rather, a non-indexed web posting is much more like the situation in *In re Bayer*, 568 F.2d 1357, 1361 (C.C.P.A. 1978) wherein a thesis was made known only to three members of a reviewing committee even though others could have be able to access the thesis in the library if told how to do so.

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel. In addition, the document will be served by hand on Delaware counsel as follows:

| | |
|---|---|
| Richard L. Horwitz<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>1313 North Market Street, 6th Floor<br>P.O. Box 951<br>Wilmington, DE  19899 | Attorneys for Defendant-<br>Counterclaimant<br>Internet Security Systems, Inc., a<br>Delaware corporation, and Internet<br>Security Systems, Inc., a Georgia<br>corporation |
| Richard K. Herrmann<br>Morris James Hitchens & Williams<br>PNC Bank Center<br>222 Delaware Avenue, 10th Floor<br>P.O. Box 2306<br>Wilmington, DE  19899-2306 | Attorneys for Defendant-<br>Counterclaimant<br>Symantec Corporation |

I hereby certify that on July 17, 2006, I have sent the foregoing document by Federal Express overnight delivery to the following non-registered participants:

| | |
|---|---|
| Holmes J. Hawkins, III<br>Natasha Horne Moffitt<br>King & Spalding LLP<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309 | Attorneys for Defendant-<br>Counterclaimant<br>Internet Security Systems, Inc., a<br>Delaware corporation, and Internet<br>Security Systems, Inc., a Georgia<br>corporation |
| Paul S. Grewal<br>Robert M. Galvin.<br>Lloyd R. Day, Jr.<br>Day Casebeer Madrid & Batchelder, LLP<br>20300 Stevens Creek Boulevard, Suite 400<br>Cupertino, CA  95014 | Attorneys for Defendant-<br>Counterclaimant<br>Symantec Corporation |

| | |
|---|---|
| Theresa A. Moehlman<br>Bhavana Joneja<br>King & Spalding LLP<br>1185 Avenue of the Americas<br>New York, NY 10036 | Defendant-Counterclaimant<br>Internet Security Systems, Inc., a<br>Delaware Corporation, and Internet<br>Security Systems, Inc., a Georgia<br>Corporation |

/s/ *John F. Horvath*
John F. Horvath

80034097.doc

Dated: July 10, 2006                         FISH & RICHARDSON P.C.

                                             By: */s/ John F. Horvath*
                                                 John F. Horvath (#4557)
                                                 Kyle Wagner Compton (#4693)
                                                 919 N. Market St., Ste. 1100
                                                 P.O. Box 1114
                                                 Wilmington, DE 19899-1114
                                                 Telephone: (302) 652-5070
                                                 Facsimile: (302) 652-0607

                                                 Howard G. Pollack
                                                 Katherine D. Prescott
                                                 500 Arguello St., Ste. 500
                                                 Redwood City, CA 94063

                                             Attorneys for Plaintiff/Counterclaim Defendant
                                             SRI INTERNATIONAL, INC.

SRI - 710 Life Traffic brief - FINAL.doc