IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation,<br><br>        Plaintiff and<br>        Counterclaim-Defendant,<br><br>    v.<br><br>INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, and SYMANTEC CORPORATION, a Delaware corporation,<br><br>        Defendants and<br>        Counterclaim-Plaintiffs. | C. A. No. 04-1199 (SLR)<br><br><br><br>**PUBLIC<br>VERSION** |

**SRI INTERNATIONAL, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NO ANTICIPATION BY
COMBINATIONS OF REFERENCES**

Dated: July10, 2006

FISH & RICHARDSON P.C.

John F. Horvath (#4557)
Kyle Wagner Compton (#4693)
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Howard G. Pollack
Katherine D. Prescott
500 Arguello St., Ste. 500
Redwood City, CA 94063

Attorneys for Plaintiff and Counterclaim Defendant
SRI INTERNATIONAL, INC.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.    ARGUMENT ........................................................................................3

    A.    Legal standards. ..................................................................3

    B.    SRI's summary judgment motion should be granted as to every alleged combination based on "incorporation by reference." ............................................................................4

        a.    NSM 1990 and DIDS Oct. 1991 .........................................5

        b.    Emerald 1997 and NIDES 1994 .........................................6

    C.    Defendants cannot establish prior public use based on the record evidence. ...............................................................8

        1.    Well after the close of fact and expert discovery, Defendants offer new factual declarations from their experts, and even new factual witnesses, in an attempt to prove § 102(b) public use art. .............................9

        a.    Defendants' evidence is untimely. ....................................9

        b.    Allowing the late-produced evidence would severely prejudice SRI. .........................................11

        2.    Even if considered, Defendants' late evidence cannot preclude summary judgment. ............................................12

        a.    DIDS ....................................................................13

        b.    GrIDS ...................................................................14

        c.    HP OpenView .......................................................15

    D.    Defendants argue Inherency for the first time. .........................16

III.    CONCLUSION...................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

 **Cases**

*Akzo N.V. v. U.S. ITC,*
    808 F.2d 1471 (Fed. Cir. 1986)...........................................................................12

*In re De Seversky,*
    474 F.2d 671 (C.C.P.A. 1973) ...............................................................................3

*Invitrogen Corp. v. Clontech Labs., Inc.,*
    429 F.3d 1052 (Fed.Cir. 2005)......................................................................12, 13

*National Latex Prods. Co. v. Sun Rubber Co.,*
    274 F.2d 224 (6th Cir. 1959) .................................................................................3

*Praxair, Inc. v. ATMI, Inc.,*
    2005 WL 3159054, at *4 (D. Del. 2005) ...........................................................9, 10

*Quaker City Gear Works, Inc. v. Skil Corp.,*
    747 F.2d 1446 (Fed. Cir. 1984)..............................................................................4

*See Advanced Display Sys., Inc. v. Kent State Univ.,*
    212 F.3d 1272 (Fed. Cir. 2000)............................................................3, 4, 5, 6, 7

Telemac Cellular Corp. v. Topp Telecom.,
    247 F. 3d 1316 (Fed. Cir. 2001).................................................................12, 13, 15

*Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.,*
    127 F.3d 1065 (Fed. Cir. 1997)..............................................................................3

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.,*
    721 F.2d 1540 (Fed. Cir. 1983).............................................................................12

**Statutes**

35 U.S.C. § 102 (b) ...................................................................................1, 3, 12

**Rules**

37 C.F.R. 1.57 ....................................................................................................3

FED. R. CIV. P. 26 ...............................................................................................10

## I.     INTRODUCTION

Defendants cannot avoid SRI's motion for partial summary judgment.  The record evidence does not support 35 U.S.C. § 102(b) invalidity based on either ***combinations*** of references allegedly incorporated by reference into one another, or alleged ***public use*** of the "prior art systems."  Rather than supporting their original contentions and relying on the evidence actually produced during the discovery period -- and following the pattern of their other oppositions -- Defendants now largely change their contentions and try to present new evidence.  It is far too late for this approach, and the fact that Defendants feel it necessary to try it provides another reason why SRI's motion should be granted.

As for Defendants' incorporation-based arguments, the standard for establishing that a document has been sufficiently incorporated by reference into another document as to be treated as a "single" reference under § 102 is high, and is simply not met here.  None of the documents into which incorporation is sought by Defendants (the "host" documents) uses the phrase "incorporation by reference" or equivalent language.  Nor do the host documents specifically identify particular portions of the allegedly incorporated documents, either by citing page ranges, sections of the documents, or otherwise.  Instead, as is customary in technical and scientific writing, the host documents cite to earlier documents to provide general background information, description of earlier research, discussion of the problems to be addressed and, in some cases, to distinguish the prior work as different from the present discussion.  This treatment does not constitute legal incorporation by reference.  SRI therefore seeks summary judgment rejecting Defendants' allegations of "anticipation" by such impermissible combinations of references, including those combinations identified below and summarized in the attached Exhibit A.[1]

---

[1]     *See* Declaration of Kyle Wagner Compton in Support of SRI International's Reply In Support Of Its Motion For Partial Summary Judgment Of No Anticipation By Combinations Of References ("Compton Reply Decl.").

Instead of standing by their original contentions, Defendants seek to essentially reopen the factual record by proffering new factual declarations from their experts, by offering new documentary evidence after the close of fact discovery, and by advancing novel attorney arguments never asserted before. Specifically, in opposition to SRI's motion, Defendants and their experts offer new evidence for the first time in support of their allegations that the claims of the patents-in-suit are "anticipated" by "public use." Defendants also seek to "reserve" arguments for trial, again raised for the first time in their opposition, that several prior art references *inherently* anticipate the claimed inventions.

Defendants should be precluded from manufacturing new evidence and new legal bases for invalidity because fact discovery and expert discovery closed months ago. Expert reports have been exchanged. Depositions have been completed. Defendants have had nearly a full year to identify prior art references and the factual bases for invalidity. Allowing Defendants to advance new theories and evidence at this late stage would severely and unduly prejudice SRI. SRI is fully occupied preparing for trial, the date for which is already set. The purpose of summary judgment is to narrow the issues in the case if possible, not to allow a party to raise completely new contentions.[2]

Properly excluding Defendants' newly offered evidence and legal theories, SRI's motion for partial summary judgment of no anticipation by combinations of references stands basically uncontested. Defendants have fallen far short of providing clear and convincing evidence in support of their incorporation by reference and prior public use arguments. SRI's partial summary judgment motion should therefore be granted, narrowing the issues to be presented to the jury for consideration at trial.

---

[2] Defendants' behavior is also the height of hypocrisy, as the Court will recall that Defendants' insistence on sticking to the case schedule, including specifically the expert discovery schedule, required the Court's attention on more than one occasion.

## II.    ARGUMENT

### A.    Legal standards.

Invalidity by anticipation under § 102(b) requires that "the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *See Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). Material not contained in the single, prior art document may only be considered for purposes of anticipation if the requirements for incorporation by reference are met. *Id.; see also Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.*, 127 F.3d 1065, 1069 (Fed. Cir. 1997).

To incorporate a document by reference, the host document must cite any incorporated material "in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein." *See Advanced Display Sys.*, 212 F.3d at 1283. The host document must include the language "incorporation by reference." *See In re De Seversky*, 474 F.2d 671, 673 (C.C.P.A. 1973) (refusing incorporation where no "incorporation-by-reference" language existed in the application); 37 C.F.R. 1.57(b)(1) (patent specification must "[e]xpress a clear intent to incorporate by reference by using the root words 'incorporat(e)' and 'reference' (*e.g.*, 'incorporate by reference').") The host document must also identify with "detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents." *Advanced Display*, 212 F.3d at 1282; *see also De Seversky*, 474 F.2d at 674 (providing that incorporation by reference requires a statement "clearly identifying the subject matter which is incorporated and where it is to be found"); *National Latex Prods. Co. v. Sun Rubber Co.*, 274 F.2d 224, 230 (6th Cir. 1959) (requiring specific reference to material in an earlier application for that material to be considered part of a later application). Whether and to what extent material has been incorporated by reference into a host document is a question of law. *See Advanced*

*Display Sys.*, 212 F.3d at 1282 -1284, *citing Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1453-54 (Fed. Cir. 1984).

**B.    SRI's summary judgment motion should be granted as to every alleged combination based on "incorporation by reference."**

Defendants cannot show that any of the alleged "host" documents relied upon in their experts' reports and listed in Exhibit A incorporates any other material by reference such that a combination of disparate references can form the basis for Defendants' anticipation arguments.  Indeed, Defendants no longer even contest the impropriety of the majority of the combined references formerly relied upon by their experts.[3]  Granting partial summary judgment as to the expressly disavowed or uncontested "combinations" listed in SRI's motion is, therefore, proper.

Defendants now only rely on two combinations of references[4], one of which was not expressly relied upon in any of their experts' reports.  But these remaining combinations still suffer from the same legal deficiency -- they do not meet the high legal standard for incorporation by reference.  Neither of the alleged host documents uses the required phrase "incorporated by reference" or any variant thereof.  [*See* Ex. F to Declaration of Kyle Wagner Compton in Support of SRI International's Motion for Partial Summary Judgment of No Anticipation by Combination of References ("Compton Decl."); *see* Ex. J to Compton Decl.].[5]  Moreover, when citing to disparate articles, none of the alleged host documents identifies *with particularity* any specific material to be incorporated from those articles.  The alleged "host documents" just cite to the entirety of the other articles, along with similar citations to many additional articles in the field that

---

[3]    *See* Defendants' Joint Opposition at 3 (D.I. 357).

[4]    Defendants rely on two combinations under an "incorporation by reference" theory: (1) NSM 1990 and DIDS Oct. 1991; and (2) Emerald 1997 and NIDES 1994.  *See also,* Exhibit A, detailing the combinations formerly relied upon by Defendants' experts.

[5]    Unless otherwise noted, all exhibits are attached to the Declaration of Kyle Wagner Compton in Support of SRI International's Motion for Partial Summary Judgment of No Anticipation by Combinations of References ("Compton Decl.") (D.I. 281).

are not relied upon by Defendants. As is customary in technical and scientific writing, these documents are cited to refer readers to discussion of problems to be addressed and others' past and present approaches to those problems -- considered both good and bad by the authors -- not to incorporate the documents by reference.

### a.    NSM 1990 and DIDS Oct. 1991

Defendants' alleged combination of NSM 1990 [*see* Ex. C to Compton Decl.] and DIDS Oct. 1991 falls far short of meeting the standard for incorporation by reference. Defendants' Joint Opposition fails to even try to explain what "specific material" of NSM 1990 is incorporated by reference into DIDS Oct. 1991. *See Advanced Display Sys.*, 212 F.3d at 1282 (requiring that the host document identify with "detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents."). Rather, Defendants merely argue that DIDS Oct. 1991 incorporates NSM 1990 merely by referencing its capability to be used as a LAN Monitor. But the ***entire*** NSM 1990 article describes a "LAN Monitor," and DIDS Oct. 1991 fails to identify with particularity what "specific material" is to be incorporated. Nor do Defendants cite to or quote any material from the DIDS Oct. 1991 reference that mentions any specific portions of the NSM paper, let alone cites to page references or specific subject matter.

Moreover, nowhere does DIDS Oct. 1991 suggest, let alone state "in a manner that makes clear", that NSM 1990 is effectively part of the host document. *See Advanced Display Sys.*, 212 F.3d at 1283. Defendants fail to point to any use of the phrase "incorporated by reference" or variant thereon in the DIDS Oct. 1991 article. In fact, NSM 1990 is cited in the DIDS articles merely as earlier work for purposes of comparison to DIDS. [*See* Ex. E to Compton Decl. at SYM_P_0069280 (describing NSM as "previous work"), SYM_P_0069292; Ex. F to Compton Decl. at SYM_P_0077175 (referring to NSM as "work . . . being done elsewhere," and as "our

5

own earlier" work), SYM_P_0077177, SYM_P_0077179 ]. None of these citations comes close to the legal requirement for incorporation by reference.

Rather than attempt to satisfy the applicable legal standard, Defendants effectively propose changing it by suggesting a subjective test, whereby incorporation would depend upon an examination of the authors' subjective *intent to incorporate*. [*See* Defendants' Joint Opposition (D.I. 357) at 5]. But the Federal Circuit requires objectively clear language that "makes clear that the material is effectively part of the host document as if it were explicitly contained therein." *See Advanced Display Sys.*, 212 F.3d at 1283. Weighing the subjective intent of authors, often involving decades-old documents, would be an unworkable standard.

Thus, Defendants have failed to produce clear and convincing evidence that DIDS Oct. 1991 incorporates NSM 1990 by reference. SRI's partial summary judgment motion should therefore be granted, thus precluding Defendants from combining DIDS Oct. 1991 and NSM 1990 for use as a single reference to argue anticipation. [*See* Exs. C and F to Compton Decl.].

### b.    Emerald 1997 and NIDES 1994

Similarly, Defendants' new combination of Emerald 1997 and NIDES 1994 ("new" because Defendants do not also add Intrusive Activity 1991, as they had previously argued) likewise falls short of meeting the standard for incorporation by reference. [*See* Exs. J and K to Compton Decl.]. Defendants argue that Emerald 1997 identifies the "particular material" to be incorporated as "that portion" of NIDES 1994 related to "statistical profile-based anomaly-detection." [*Id.*]. But as with the NSM 1990 article's treatment of the "LAN Monitor," the NIDES 1994 article is devoted *in its entirety* to describing a statistical profile-based anomaly detection system. [*See* Ex. K to Compton Decl.]. That much is clear from its title: "the NIDES *Statistical Component* Description and Justification." Nowhere does Emerald 1997 identify with particularity any specific sections or pages of the 47-page NIDES 1994 reference to be incorporated,

nor do Defendants even attempt to show such particularity. Indeed, the portion of the EMERALD 1997 reference quoted by Defendants speaks about "NIDES" in general and does not cite to any particular NIDES reference, even though at least three different NIDES references are cited elsewhere in the paper. [*See* Ex. J to Compton Decl. at SYM_P_0068843 (references [1], [2] and [9])]. There is simply no incorporation of any specific part of any NIDES-related reference anywhere in the Emerald 1997 paper, let alone the required specific incorporation of the one reference Defendants choose to rely upon.

Moreover, nowhere does the Emerald 1997 article suggest, let alone "state in a manner that makes clear", that NIDES 1994 in particular is "effectively part of the host document." *See Advanced Display Sys.*, 212 F.3d at 1283. Defendants concede that Emerald 1997 does not use the phrase "incorporation by reference" or its variant. To the contrary, Emerald 1997 specifically cites to the NIDES 1994 reference in discussing earlier, different work. [*See* Ex. J to Compton Decl. at SYM_P_0068837]. Moreover, NIDES based its intrusion detection on analysis of audit logs, which is different than the input contemplated by Emerald 1997. [*Id.*]. It is clear NIDES 1994 is not expressly incorporated because Emerald 1997 explicitly states that "extensive reworking" would be required to adapt the NIDES technology for use within the new environment contemplated by Emerald 1997. [*See* Exs. J and K of Compton Decl.].

As with its argument regarding DIDS Oct. 1991 [ *see* Ex. F to Compton Decl ], Defendants suggest the authors of EMERALD 1997 [*see* Ex. J to Compton Decl.]. "sought to effectively incorporate" some unidentified "portion" of NIDES 1994. [*See* Ex. K to Compton Decl. . *See also,* Defendants' Joint Opposition at 5-6]. Not only is this discussion clearly insufficient to establish the necessary particularity the law requires, but the clear language of Emerald 1997 shows an objective intent to distinguish and improve upon NIDES, rather than suggesting that any NIDES reference should be incorporated into the disclosed subject matter.

7

Thus, Defendants should be precluded from combining Emerald 1997 and NIDES 1994 for use as a single reference to allege anticipation.

**C.     Defendants cannot establish prior public use based on the record evidence.[6]**

As explained in SRI's opening brief, Defendants simply failed to produce sufficient evidence during discovery to prove by clear and convincing evidence that DIDS, GRIDS or HP OpenView combined with the RFCs or NetStalker [*see* Exs. F, H, I, M, N, and V to Compton Decl.] were in public use prior to the critical date. The Defendants based their original public use contentions only on several unsupported, conclusory assertions by their experts of "public use" of the systems described in various prior art publications. Defendants had not produced, nor did SRI have the opportunity to inspect, any of the actual "systems" allegedly in public use.[7] Furthermore, Defendants did not provide any documentary evidence, such as invoices and shipping labels, news articles, photographs of demonstrations, etc., or identify any individuals allegedly knowledgeable of the purportedly public events, to support any of the alleged public uses. During his deposition, for example, Mr. Heberlein could not cite any production documents to support his allegations of public use. [*See, generally,* Ex. P to Compton Decl. at 126-127; 149; 208-209; 218]. Based on the insufficiency of the evidence presented in the expert reports, Defendants cannot establish public use and SRI's motion for partial summary judgment should be granted.

---

[6]     It should be noted at the outset that DIDS, GrIDS and HP OpenView [*see* Exs. F, H, I, and M to Compton Decl.] are all distinguishable from the claimed inventions on several grounds. SRI's present motion is not directed to the lack of merit of Defendants' contentions as to these references per se, but rather to confining the dispute to an analysis of the documents themselves, thus significantly narrowing the issues for trial and preventing jury confusion.

[7]     Defendants' Opposition mischaracterizes SRI's motion as demanding production of **source code** underlying the alleged prior art systems. To the contrary, SRI's motion points out that Defendants' not only failed to produce any source code, but also failed to produce even the alleged anticipatory publicly used prior art system. SRI was therefore unable to examine or otherwise discover the factual bases for the prior art's allegedly anticipatory features.

1.    **Well after the close of fact and expert discovery, Defendants offer new factual declarations from their experts, and even new factual witnesses, in an attempt to prove § 102(b) public use art.**

a.    **Defendants' evidence is untimely.**

When faced with SRI's motion pointing out the complete lack of evidence on the issue of public use, Defendants now seek to reopen the factual record and supplement with several factual declarations, one from a previously unidentified third-party, and new documents -- all of which clearly could and should have been disclosed during fact discovery.[8] Defendants simply should not be permitted to flout this Court's scheduling orders, which they have previously used aggressively to serve their own strategic interests, and thus should be precluded from relying on any of this late-produced evidence. Summary judgment, especially in the context of this Court's schedule, is about narrowing the issues for trial, not reopening discovery and expanding the scope of the case.

Indeed, on the subject of invalidity discovery, this Court recently held that prior art references and the intent to rely thereon must be disclosed during fact discovery:

> "Prior art references must be disclosed during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference. It is undisputed that the two references at issue, and the intent to rely on them for invalidating the asserted claims, *were not disclosed to plaintiffs by defendants until after the close of fact discovery. Therefore, these references are excluded* from defendants' invalidity case." *Praxair, Inc. v. ATMI, Inc.,* 2005 WL 3159054, at *4 (D. Del. 2005) (emphasis added)

During discovery, Defendants raised only the printed publications as to DIDS and GrIDS as alleged prior art. The notion of "public use" was invoked for the first time in Defendants' expert reports.[9] As in *Praxair*, Defendants here seek to introduce evidence

---

[8]    A chart summarizing Defendants' late-produced "evidence" is attached to the Compton Reply Decl. as Exhibit B.

[9]    As explained above, and in SRI's opening brief, even that untimely "evidence" was clearly insufficient to support defendants' burden of proof on invalidity.

of public use many months after the close of fact discovery. Even more egregious in this case the further evidence sought to be relied upon in Defendants' Joint Opposition to summary judgment was not disclosed until after *expert* discovery. Such evidence is clearly untimely and, as in *Praxair*, should be excluded from Defendants' invalidity case.

As early as June 23, 2005, Defendants were served with interrogatories requesting that they identify all factual bases they intended to rely upon to assert that any of the claims of the patents-in-suit is invalid. Defendants had ample opportunity to produce evidence of public use during the fact discovery period, but failed to do so. Of particular note is the proffered Declaration of Deborah Frinke (D.I. 360). Ms. Frinke was never disclosed as an individual having relevant factual knowledge -- she is not listed in Defendants' Rule 26 disclosures nor in their interrogatory responses. Nor was Ms. Frinke even mentioned in Defendants' experts' reports. The first time SRI was informed of Ms. Frinke's existence and alleged knowledge was when its counsel was served with the present declaration. As such, any purported testimony from Ms. Frinke, either in the form of the present declaration or at trial, clearly must be excluded.

Further, given that Defendants now want their experts to rely upon and testify about the late-produced declarations and documents, any such expert testimony must be precluded as untimely in view of the schedule for expert discovery. None of the alleged material provided in the declarations and documents supporting Defendants' opposition to this motion was identified or presented in the expert reports. The rule in this Court is clear: if material is absent from the expert's report, the expert will not be permitted to testify about it at trial. *See* FED. R. CIV. P. 26(a)(2)(B) ("The [expert] report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore") This is equally true of "factual" testimony as for "opinions", because the factual bases of the experts opinions also must be fully and fairly disclosed in the report. Defendants cannot seek to have their experts base opinions of invalidity on the late-produced material.

**b.**    **Allowing the late-produced evidence would severely prejudice SRI.**

Fact discovery in this case closed on March 31, 2006. Expert discovery closed June 6, 2006. Since the close of expert discovery, SRI has had to oppose five motions brought by Defendants and complete claim construction briefing. The trial in this matter is set to begin October 30, 2006.

SRI's preparations for trial would be severely prejudiced should Defendants be permitted to rely on this late-produced evidence. With discovery closed, SRI is now unable to independently verify the newly alleged facts, or to discover facts related to Defendants' new arguments. SRI has sought to discover Defendants' bases for invalidity for over a year, and, in conducting discovery, has reasonably relied on Defendants' failure to identify factual bases for any public use. Since the fact discovery period closed over three months ago, SRI has no ability to conduct additional discovery of Defendants or third-parties to explore the new allegations and evidence raised in Defendants' Joint Opposition. Similarly, the period for expert discovery is now closed, so SRI is unable to explore the factual bases for Defendants' experts' new declarations.

Nor would reopening discovery cure this prejudice. SRI has already expended countless hours on discovery, and deposed all the experts on the bases for their invalidity opinions disclosed in their reports. To require SRI to re-depose the experts, and depose the newly identified Ms. Frinke, as well as any additional individuals who might be identified in the new documents or as a result of these further depositions will severely impede SRI's trial preparation. The entire purpose of discovery deadlines is to prevent trial by ambush and to allow the parties adequate time to prepare an orderly, coherent trial presentation. Accepting Defendants' disregard for the schedule and the rules frustrates their very purpose. Now is the time the parties and the Court should be narrowing the issues for trial, not improperly expanding its scope.[10] Accordingly, the

---

[10]    SRI reminds the Court that, when SRI requested to add two additional claims to its infringement contentions during expert discovery, Defendants refused claiming undue

Court should strike the late-produced declarations and documents and preclude Defendants from relying on them to oppose summary judgment or at trial.

> **2.    Even if considered, Defendants' late evidence cannot preclude summary judgment.**

Even if allowed, Defendants' untimely evidence, attorney argument, and belated factual declarations do not create a triable issue of fact sufficient to avoid summary judgment of no public use. Anticipation under § 102(b) public use requires "that each and every element of the claimed invention be disclosed in a prior art reference." *Akzo N.V. v. U.S. ITC,* 808 F.2d 1471 (Fed. Cir. 1986), citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1554 (Fed. Cir. 1983). In addition, the prior art reference "must be enabling, thus placing the allegedly disclosed matter in the possession of the public." *Id.*

Defendants have failed to point to any record evidence sufficient to withstand summary judgment. First, the Federal Circuit has held that conclusory declarations by expert witnesses, without more, do no not constitute evidence sufficient to survive summary judgment. *See Telemac Cellular Corp. v. Topp Telecom.,* 247 F. 3d 1316, 1329 (Fed. Cir. 2001) ("Conclusory statements offered by (defendants) experts . . . are not evidence and are not sufficient to establish a genuine issue of material fact."). Second, the Federal Circuit has similarly held that "attorney argument is no substitute for evidence." *See Invitrogen Corp. v. Clontech Labs., Inc.,* 429 F.3d 1052, 1068 (Fed.Cir. 2005) (establishing that "Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony. It does not, and cannot, support [a party's] burden on summary judgment.") And while Defendants have asserted invalidity based on printed publications and provided claim charts citing portions of those publications, they provide no linking evidence that the

---

prejudice. The Court agreed and denied SRI's request. Defendants are now effectively trying to add several new prior art references even later in the case. It is hard to see how SRI could not be prejudiced if equal standards are applied.

teaching of those publications either were present in the "uses" alleged or, through those uses, were disclosed to the public in a manner to place the allegedly disclosed matter in the public's possession.

### a.  DIDS

The bulk of the "evidence" proffered by Defendants should not even be considered "evidence" under *Telemac* because it is offered in the form of conclusory expert declarations unsupported by any record evidence.  In particular, Defendants rely on no less than ten conclusory factual statements from the newly filed declaration of Mr. Heberlein.  [*See* Defendants' Joint Opposition at n. 27-49, at 11-13, citing 6/30/06 Heberlein Decl. (D.I. 359)].  For example, Defendants rely on Mr. Heberlein's conclusory assertion that "around 20 individuals . . . had access to the lab." [6/30/06 Heberlein Decl. at ¶ 13 (D.I. 359)].  Similarly, Mr. Heberlein makes the assertion that users of the lab were under no confidentiality requirements.  *Id.*  Mr. Heberlein's declaration was obviously crafted to provide self-serving statements to support Defendants: "Our intent in conducting the demonstration was to share the details of DIDS to members of the public." [*Id.* at ¶ 17].  In each of these examples, Mr. Heberlein fails to support his assertions with any contemporaneous evidence.  None of Mr. Heberlein's conclusory assertions constitutes "evidence" that can be used to avoid summary judgment.  *See Telemac*, 247 F. 3d at 1329.

Neither should Defendants' unsupported attorney arguments be considered "evidence" under *Invitrogen*.  *See Invitrogen,* 429 F.3d at 1068.  Defendants propound several unsupported attorney arguments in their Opposition.  [*See* Defendants' Joint Opposition at 9-13].  For example, Defendants attempt to rely on a student's thesis allegedly describing the DIDS work.  While making a conclusory citation to the thesis, Defendants fail to provide any evidence that the thesis was itself available to the public or that its descriptions suggest in any way that the specific elements of the asserted claims were actually presented to the public in any manner.  As to their attorney argument that

DIDS "was commercially exploited," Defendants merely offer evidence that

<strong>REDACTED</strong>               [<em>Id.</em> at 12-13].  This says

nothing about its public availability or about how the teaching of any commercialized

system, if indeed there were one, related to the claimed invention.

Even if credited, Defendants' late produced evidence establishes nothing more

than that some version of a DIDS system was "in use" in a computer lab.  This alone is

insufficient to satisfy the public use requirements of the law.  Defendants offer no

evidence to show that the features claimed in the patents-in-suit were embodied in a

specific DIDS system in a lab or were apparent to anybody in the lab--for example,

whether it was apparent to others that DIDS was monitoring specific types of network

traffic, let alone the specific types enumerated in the '203, '212, and '615 patents.  As a

further example, Defendants rely on a prior art document relating to the alleged use of

DIDS

<strong>REDACTED</strong>

But Defendants are silent as to the enabling nature of that document or the

use it allegedly reflects.  Nor is there documentary evidence supporting the improperly

submitted Frinke declaration or any evidence linking the features allegedly

"demonstrated" with any of the claimed inventions.

Even if considered, therefore, Defendants' late evidence fails to provide sufficient

clear and convincing evidence that any public disclosure of "DIDS" sufficiently

describing to the public the claimed limitations of the asserted claims ever occurred prior

to the critical date.

<strong>b.    GrIDS</strong>

Defendants similarly fail to identify record evidence sufficient to overcome

summary judgment of no public use of GrIDS.

14

Defendants rely on at least five conclusory factual statements from the newly-filed declaration of Dr. Staniford. [*See* Defendants' Joint Opposition, n. 50-54, at 13, citing 6/30/06 Staniford Declaration (D.I. 361)]. For example, Defendants rely on Dr. Staniford's conclusory assertion that "both faculty and students knew that GrIDS was monitoring computer activity." None of Dr. Staniford's conclusory assertions constitutes "evidence" that can be used to avoid summary judgment. *See Telemac*, 247 F. 3d at 1329. But, even if believed, Dr. Staniford's statements are insufficient to avoid summary judgment because they provide no evidence that any one knew *how* GrIDS was operating or that it had the features and functions Dr. Staniford alleges are relevant to the claimed inventions. Simply asserting that something was "operating" in "public view" is insufficient to satisfy the public use bar without a specific showing that such a use placed the particular claimed subject matter in the possession of the public. Because Defendants cannot make such a showing, even with consideration of the improper, late-produced factual evidence, SRI's motion as to the lack of a public use of GrIDS should be granted.

### c.    HP OpenView

Defendants raise a further new contention regarding HP OpenView.[11] Although throughout the case Defendants asserted that HP OpenView only invalidated in combination with other references, they now assert for the first time that HP OpenView itself "embodied" the subject matter of the RFCs.[12] But Defendants fail to identify any evidence in support of this allegation and it is contrary to their experts' previous statements. [*See e.g.*, Heberlein report at ¶ 316 ("network management applications such as HP OpenView were publicly used with all of the noted RFCs.")]. Because their present argument is inconsistent with their original position, and neither is supported by actual evidence as opposed to unsupported expert conclusions or attorney argument,

---

[11]  Defendants have abandoned the contention that HP OpenView was used together with NetStalker and that such alleged combination constituted a public use.

[12]  RFCs are a series of notes, started in 1969, about the Internet. Nearly 4,000 RFCs are in existence today.

Defendants cannot raise a material issue of fact sufficient to avoid summary judgment that HP OpenView was not in public use prior to the critical date and did not embody the asserted claims.

### D.    Defendants argue Inherency for the first time.

Knowing that all of their other arguments attempting to bolster the disclosure of the various references are wanting, Defendants raise yet another new argument never before disclosed in any contention or expert report. Specifically, Defendants state for the first time that they "intend to argue at trial" that ISM 1992, HP OpenView and NetStalker 1996 each inherently disclose and therefore alone anticipate inventions claimed in the patents-in-suit. [*See* Exs. G, M, and N to Compton Decl.]. Because these arguments have never before been raised and do not form any part of the experts' opinions as disclosed in their expert reports, Defendants must be precluded from asserting these inherency arguments at trial.

/ / /

/ / /

/ / /

## III.     CONCLUSION

For the foregoing reasons, SRI respectfully requests that Court grant partial summary judgment that the combinations of references identified by Defendants and summarized in Exhibit A cannot, as a matter of law, anticipate any of the claims of the patents-in-suit.  SRI further requests partial summary judgment that Defendants cannot meet their burden to prove by clear and convincing evidence that any of DIDS, GrIDS or HP OpenView (alone or in combination with the RFCs or NetStalker) were in public use prior to the critical date.

Dated:  July 10, 2006                     FISH & RICHARDSON P.C.


                                          By:  /s/ John F. Horvath
                                               John F. Horvath (#4557)
                                               Kyle Wagner Compton (#4693)
                                               919 N. Market St., Ste. 1100
                                               P.O. Box 1114
                                               Wilmington, DE 19899-1114
                                               Telephone:  (302) 652-5070
                                               Facsimile:  (302) 652-0607

                                               Howard G. Pollack
                                               Katherine D. Prescott
                                               500 Arguello St., Ste. 500
                                               Redwood City, CA 94063

                                          Attorneys for Plaintiff/Counterclaim Defendant
                                          SRI INTERNATIONAL, INC.


SRI - 710 Combo brief - FINAL.doc

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel.  In addition, the document will be served by hand on Delaware counsel as follows:

Richard L. Horwitz
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899

Attorneys for Defendant-
Counterclaimant
Internet Security Systems, Inc., a
Delaware corporation, and Internet
Security Systems, Inc., a Georgia
corporation

Richard K. Herrmann
Morris James Hitchens & Williams
PNC Bank Center
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306

Attorneys for Defendant-
Counterclaimant
Symantec Corporation


I hereby certify that on July 17, 2006, I have sent the foregoing document by Federal Express overnight delivery to the following non-registered participants:


Holmes J. Hawkins, III
Natasha Horne Moffitt
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309

Attorneys for Defendant-
Counterclaimant
Internet Security Systems, Inc., a
Delaware corporation, and Internet
Security Systems, Inc., a Georgia
corporation

Paul S. Grewal
Robert M. Galvin.
Lloyd R. Day, Jr.
Day Casebeer Madrid & Batchelder, LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA  95014

Attorneys for Defendant-
Counterclaimant
Symantec Corporation

Theresa A. Moehlman
Bhavana Joneja
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Defendant-Counterclaimant
Internet Security Systems, Inc., a
Delaware Corporation, and Internet
Security Systems, Inc., a Georgia
Corporation


/s/ *John F. Horvath*
John F. Horvath


80034097.doc