IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation,<br><br>　　　　　Plaintiff and<br>　　　　　Counterclaim-Defendant,<br><br>　v.<br><br>INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia Corporation, and SYMANTEC CORPORATION, a Delaware corporation,<br><br>　　　　　Defendants and<br>　　　　　Counterclaim- Plaintiffs. | Civil Action No. 04-CV-1199 (SLR)<br><br>PUBLIC VERSION<br><br>**THIS DOCUMENT CONTAINS MATERIALS WHICH ARE CLAIMED TO BE CONFIDENTIAL OR RESTRICTED CONFIDENTIAL - CONFIDENTIAL SOURCE CODE AND COVERED BY A PROTECTIVE ORDER. THIS DOCUMENT SHALL NOT BE MADE AVAILABLE TO ANY PERSON OTHER THAN THE COURT AND OUTISDE COUNSEL OF RECORD FOR THE PARTIES** |

## DECLARATION OF GEOFFREY M. GODFREY IN SUPPORT OF DEFENDANT'S JOINT REPLY MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY

Original Dated:  July 10, 2006

REDACTED VERSION:  July 19, 2006

I, Geoffrey M. Godfrey, declare as follows:

1.      I am a member of the law firm of Day Casebeer Madrid & Batchelder LLP, counsel for Defendant Symantec Corporation. I am admitted to practice law before all courts of the State of California.

2.      I make this declaration of my own personal knowledge. If called to testify as to the truth of the matters stated herein, I could and would do so competently.

3.      Attached hereto as Exhibit QQ is a true and correct copy of Plaintiff SRI's Second Supplemental Responses to Defendant Symantec's First Set of Interrogatories [Nos. 1-12].

4.      Attached hereto as Exhibit RR is a true and correct copy of selected pages of the 03/09/2006 and 03/10/2006 Deposition of Phillip Porras (hereinafter "Porras Tr.") and the 03/30/2006 30(b)(6) Deposition of Phillip Porras (hereinafter "Porras 30(b)(6) Tr.").

5.      Attached hereto as Exhibit SS is a true and correct copy of selected pages of the 05/26/2006 and 05/29/2006 Deposition of George Kesidis (hereinafter "Kesidis Tr.").

6.      Attached hereto as Exhibit TT is a true and correct copy of selected pages of the 03/23/2006 Deposition of Alfonso Valdes (hereinafter "Valdes Tr.").

7.      Attached hereto as Exhibit UU is a true and correct copy of selected pages of the 01/27/2006 Deposition of Y. Frank Jou (hereinafter "Jou Tr.").

8.      Attached hereto as Exhibit VV is a true and correct copy of selected pages of the 03/31/2006 Deposition of Peter G. Neumann (hereinafter "Neumann Tr.").

9.      Attached hereto as Exhibit WW is a true and correct copy of SRI's Supplemental Response to Symantec's Interrogatories Nos. 12 and 15, dated Dec. 15, 2005.

10.     Attached hereto as Exhibit XX is a true and correct copy of SRI's Supplemental Response to Symantec's Interrogatories Nos. 1 and 12 (First Set of Interrogatories), 13 and 15 (Second Set of Interrogatories), dated May 05, 2006.

11.     Attached hereto as Exhibit YY is a true and correct copy of pages 19-20 of R.

Bace, INTRUSION DETECTION (Macmillan Technical Publishing 2000).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: July 10, 2006

By: _____
Geoffrey M. Godfrey

# EXHIBIT QQ

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT RR

# EXHIBIT   REDACTED
# IN  ITS   ENTIRETY

# EXHIBIT SS

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT TT

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT UU

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

C.A:04-1199 (SLR)

SRI INTERNATIONAL, INC.,                )
a California Corporation                )
                                        )
     Plaintiff and                      )
     Counterclaim Defendant,            )
                                        )
          v.                            )
                                        )
INTERNET SECURITY SYSTEMS, INC., )
a Delaware Corporation, INTERNET )
SECURITY SYSTEMS, INC., a Georgia)
Corporation, and SYMANTEC               )
CORPORATION, a Delaware                 )
Corporation,                            )
                                        )
     Defendants and                     )
     Counterclaim-Plaintiffs.           )
— — — — — — — — — — — — — — — )

COPY

VIDEOTAPED DEPOSITION

OF

Y. FRANK JOU

At Raleigh, North Carolina                    Reported by:
January 27, 2006 - 9:53 a.m.             Debra D. Bowden

# capitalreporting

PO Box 97696              8360 Six Forks Road       919.398.7775 ph
Raleigh, NC 27624         Suite 101                 919.398.7741 fax
                          Raleigh, NC 27615

www.capreporting.com                        capreporting@aol.com

171

```
 1         fruit even though if the time or resource
 2         is allowed at that point in time.
 3   Q.    If you go back to the architecture
 4         document, J18, on page 3.
 5   A.    Page 3.  Okay.
 6   Q.    And if you go to Section 2.1.
 7   A.    Um-hmm.
 8   Q.    And you go to the third paragraph.
 9   A.    Um-hmm.
10   Q.    The middle of it.  And you say, "While it
11         is not within the scope of this project, we
12         expect that the detection analysis
13         functions implemented in the local
14         subsystem can be extended to a global level
15         and correlate intrusion events among
16         several routers."  Do you see that?
17   A.    Um-hmm.
18   Q.    And then it goes on to say, "The management
19         capability which is based on SNMP framework
20         can logically be further extended among
21         management notes in a hierarchical fashion
22         to establish a status map for an autonomous
23         system."
24   A.    Um-hmm.
```

172

1   Q.   Now, while your DARPA project was limited

2          in time and funding, did you create the

3          design such that it could be extended in

4          this hierarchical fashion?

5   A.   I would not say created, because the SNMP

6          network by its nature is to monitor remote

7          system.

8   Q.   Um-hmm.

9   A.   And be able to reflect a healthy -- the

10         healthy -- the status of the network, you

11         know, it's healthy, whether it's healthy or

12         it's, you know, under stress.  That was the

13         intent of the SNMP framework.  And our

14         thinking at that point in time was to take

15         advantage of this SNMP by the fact that

16         it's able to monitor several systems in a

17         distributive fashion.  And you know, the

18         challenge at that point was how do you

19         correlate.  I think that was the main

20         technical challenge at that point in time

21         in terms of how do you collect -- collect

22         of the local detection result was not an

23         issue.  The issue was how do you come up

24         with the intelligence, how do you correlate

173

1     all the relevant information and be able

2     to, you know, derive a certain logical or

3     reasonable conclusion, and able to, based

4     upon this result, take action accordingly.

5     I think that was the challenge, and the --

6     you know, we did look into that aspect.

7     But however at that point we did not have a

8     very promising, you know, development at

9     that time.  At the conclusion of the

10    project.  So that was, you know, the open

11    question at that point.

12  Q.   And if you just saw the term correlate --

13  A.   Um-hmm.

14  Q.   -- what would that mean to you?

15       MS. PRESCOTT:  Objection to form.

16  A.   Correlate means how do you put two or more

17    than two input together and derive

18    meaningful information, or intelligence,

19    out of these different infrastreams of

20    information, and be able to come up with

21    certain rationale or logic that what this,

22    you know, behavior manifests to itself.

23       Probably that's kind of lengthy or

24    wordy, but that's my understanding of this

174

1   word, correlation.

2        MS. MOEHLMAN:  Okay, let me go off

3   the record for two minutes.

4        VIDEOGRAPHER:  Going off the record,

5   the time is 15:31.

6        (Continuing after recess.)

7        VIDEOGRAPHER:  Back on the record,

8   the time is 1534.

9        MS. MOEHLMAN:  Thank you very much

10  for your time today.  We are concluded.

11       THE WITNESS:  Okay.  My pleasure.

12       VIDEOGRAPHER:  This concludes volume

13  one of the deposition of Y. Frank Jou.  The

14  videographer was Bob Collier for the firm

15  of Capital Reporting of Raleigh, North

16  Carolina.  The deposition was held at the

17  offices of Smith Moore, Raleigh, North

18  Carolina, on January 27th, 2006.  The

19  number of tapes used was three.  The time

20  is 15:34.

21            [DEPOSITION CONCLUDED]

22

23

24

# EXHIBIT VV

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT WW

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SRI INTERNATIONAL, INC., a California
Corporation,

        Plaintiff,

    v.

INTERNET SECURITY SYSTEMS, INC.,
a Delaware corporation, INTERNET
SECURITY SYSTEMS, INC., a Georgia
corporation, and SYMANTEC
CORPORATION, a Delaware corporation,

        Defendants.

Case No. 04-1199-SLR

## SRI INTERNATIONAL, INC.'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES NO. 12 AND NO. 15

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff SRI International, Inc. ("SRI") supplements its response to Defendant Symantec Corporation's ("Symantec") Interrogatory No. 12 as follows:

## GENERAL OBJECTIONS

SRI incorporates by reference all of its General Objections to Symantec's Interrogatories Nos. 12 and 15.

## RESPONSE

### INTERROGATORY NO. 12:

For each asserted claim of the asserted patents, describe in detail all evidence of "secondary considerations" that support your contention that the subject matter of the claim is non-obvious under 35 U.S.C. § 103. The term "secondary considerations" in this interrogatory is in accordance with the manner in which it was used in *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). Your description should include an identification of evidence of commercial success, long-felt need, copying by others, attempts by others to solve any problem addressed by the accused patents, and acceptance in the industry or by

1

the public of any claimed invention.

For each asserted claim your answer should also include an identification of the three SRI employees (excluding attorneys) most knowledgeable about any such evidence of non-obviousness (listed in order from most knowledgeable to least knowledgeable) and an identification of all documents concerning such evidence.

RESPONSE TO INTERROGATORY NO. 12 (AUGUST 29, 2005):

SRI objects to this request on the grounds that it prematurely seeks SRI's contentions and the subject of expert testimony. SRI will abide by the schedule set forth by the Court's to respond fully to this interrogatory.

SRI further states that it will produce documents in its possession regarding any secondary considerations of non-obviousness that SRI is able to locate after a reasonable search and that could be arguably responsive to the request. SRI incorporates information contained in these documents pursuant to Fed. R. Civ. P. 33(d). The person most knowledgeable about the secondary considerations for the patents-in-suit is Peter Neumman.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (OCTOBER 18, 2005):

SRI incorporates by reference its original response to Interrogatory No. 12. SRI provides the following additional information:

Documents with the following bates numbers ranges may contain information responsive to this interrogatory: SRI 000193-003207; SRI 003629-006630; SRI 007864-008974; SRI 016450-017430; SRI 018203-018434; SRI 019552-020262; SRI 027996-028715; SRI 029381-030492; SRI 037164-037391; SRI 044105-044106; SRI 044130-044131; SRI 044193; SRI 044196-044199; SRI 044295; SRI 050529-051726; SRI 053609-053624; SRI 053701-055815; SRI 075959-078987.

SRI further states that discovery in this case is ongoing. SRI reserves the right to supplement this response as additional information and documents become available.

2

FURTHER SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12
(NOVEMBER 18, 2005):

SRI incorporates by reference its original and first supplemental response to
Interrogatory No. 12. SRI provides the following additional response:

SRI objects to this interrogatory as premature. The identification of secondary
considerations of non-obviousness is only required once Symantec has made a prima
facie showing of obviousness. SRI will provide a further response to this interrogatory at
the time the Court's scheduling order has set for providing rebuttal contentions. In the
event that Symantec makes an obviousness argument, SRI intends to rely at least on a
showing of commercial success and long felt need.

THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12
(DECEMBER 15, 2005):

SRI incorporates by reference its previous responses to Interrogatory No. 12. SRI
provides the following additional response:

SRI intends to rely on at least the following objective indicia of non-obviousness:
commercial success of the accused products, praise in the marketplace (e.g., DARPA),
long-felt need, and failure by others. The fact that many other research groups were
attempting to create a practical solution to the problem of network intrusion detection, but
that none were successful before SRI's inventions (See SRI's Response to Symantec's
Invalidity Contentions) is strong evidence of non-obviousness.

INTERROGATORY NO. 15:

Identify each limitation of each claim of each of the asserted patents that SRI
contends is not disclosed in the Network NIDES publication.

3

RESPONSE TO INTERROGATORY NO. 15

SRI objects that the phrase "Network NIDES publication" is vague and ambiguous in that the publication describes a host-based system rather than a network system. SRI objects to this request in that it prematurely seeks SRI's contentions and expert testimony. To the extent that Symantec provides SRI with contentions regarding any assertion that Symantec has about the invalidity of the patents-in-suit in light of the article "*Next-generation Intrusion Detection Expert System (NIDES) A Summary*," by Debra Anderson, Thane Frivold and Alfonso Valdes, Jan. 27, 1995, SRI will respond according to the procedural schedule the Court has set forth in this litigation.

Subject to, and without waiving the foregoing objections and general objections, SRI states that the claimed inventions of the patents-in-suit are not disclosed in the article "*Next-generation Intrusion Detection Expert System (NIDES) A Summary*," by Debra Anderson, Thane Frivold and Alfonso Valdes, Jan. 27, 1995.

SRI further states that its investigation is ongoing and that it reserves the right to supplement its response to this interrogatory as appropriate.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15

SRI Incorporates by reference, its previous responses to Interrogatory No. 15 and further states that because Defendants' bear the burden of proof on invalidity, to the extent Defendants assert a detailed invalidity contention based in whole or in part on the cited article, SRI will provide a further response to this interrogatory at the time the Court's scheduling order has set for providing rebuttal contentions.

SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15 (DECEMBER 15, 2005):

SRI incorporates by reference its previous response to Interrogatory No. 15 and its discussion of "*Next-generation Intrusion Detection Expert System (NIDES) A*

*Summary,"* by Debra Anderson, Thane Frivold and Alfonso Valdes, Jan. 27, 1995, in section 6 of its Response to Symantec Invalidity Contentions.

Dated: December 15, 2005                 FISH & RICHARDSON P.C.


By: _____
       Timothy Devlin (#4241)
       John F. Horvath (#4557)
       FISH & RICHARDSON P.C.
       919 N. Market St., Ste. 1100
       P.O. Box 1114
       Wilmington, DE 19889-1114
       Telephone: (302) 652-5070
       Facsimile: (302) 652-0607

       Howard G. Pollack (CA Bar No. 162897)
       Gina M. Steele (CA Bar No. 233379)
       Katherine D. Prescott (CA Bar No. 215496)
       Michael J. Curley (CA Bar No. 230343)
       FISH & RICHARDSON P.C.
       500 Arguello Street, Suite 500
       Redwood City, California 94063
       Telephone: (650) 839-5070
       Facsimile: (650) 839-5071

       Attorneys for Plaintiff
       SRI INTERNATIONAL, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2005, I served a copy of SRI

INTERNATIONAL, INC.'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES

NO. 12 AND NO. 15 to the following in the manner indicated:

**BY EMAIL & FEDERAL EXPRESS**               Attorneys for Defendant
Richard L. Horwitz                                            INTERNET SECURITY SYSTEMS,
Potter Anderson & Corroon LLP                     INC.
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899
Facsimile:  (302) 658-1192

**BY EMAIL & FEDERAL EXPRESS**               Attorneys for Defendant
Richard K. Herrmann Esq.                              SYMANTEC CORPORATION
Morris James Hitchens & Williams
PNC Bank Center
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306
Facsimile:  (302) 571-1750

**BY EMAIL & FEDERAL EXPRESS**               Attorney for Defendant
Paul S. Grewal                                               SYMANTEC CORPORATION
Day Casebeer Madrid & Batchelder, LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, California  95014

**BY EMAIL & FEDERAL EXPRESS**               Attorneys for Defendant
Holmes Hawkins, III                                       INTERNET SECURITY SYSTEMS,
King & Spalding                                             INC.
191 Peachtree Street, N.E.
Atlanta, GA  30303-1763

Katherine D. Prescott

50317258.doc

6

# EXHIBIT XX

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT YY

# INTRUSION DETECTION

Rebecca Gurley Bace



MACMILLAN
TECHNICAL
PUBLISHING
U·S·A

# *Intrusion Detection*

Rebecca Gurley Bace

Published by:
Macmillan Technical Publishing
201 West 103rd Street
Indianapolis, IN 46290 USA

Copyright ©2000 by Macmillan Technical Publishing

All rights reserved. No part of this book may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photo-copying, recording, or by any information storage and retrieval system, without written permission from the publisher, except for the inclusion of brief quotations in a review.

International Standard Book Number: 1-57870-185-6

Library of Congress Catalog Card Number: 99-63273

03  02  01  00        7  6  5  4  3  2

Interpretation of the printing code: The rightmost double-digit number is the year of the book's printing; the rightmost single-digit number is the number of the book's printing. For example, the printing code 00-1 shows that the first printing of the book occurred in 2000.

*Composed in Galliard and MCPdigital by Macmillan Technical Publishing*

*Printed in the United States of America*

## Trademark Acknowledgments

All terms mentioned in this book that are known to be trademarks or service marks have been appropriately capitalized. Macmillan Technical Publishing cannot attest to the accuracy of this information. Use of a term in this book should not be regarded as affecting the validity of any trademark or service mark.

## Warning and Disclaimer

This book is designed to provide information about intrusion detection. Every effort has been made to make this book as complete and as accurate as possible, but no warranty or fitness is implied.

The information is provided on an as-is basis. The authors and Macmillan Technical Publishing shall have neither liability nor responsibility to any person or entity with respect to any loss or damages arising from th information contained in this book or from the use of the discs or programs that may accompany it.

## Feedback Information

At Macmillan Technical Publishing, our goal is to create in-depth technical books of the highest quality and value. Each book is crafted with care and precision, undergoing rigorous development that involves the unique expertise of members from the professional technical community.

Readers' feedback is a natural continuation of this process. If you have any comments regarding how we could improve the quality of this book, or otherwise alter it to better suit your needs, you can contact us at networktech@mcp.com. Please make sure to include the book title and ISBN in your message.

We greatly appreciate your assistance.

**PUBLISHER**
*David Dwyer*

**EXECUTIVE EDITOR**
*Linda Ratts Engelman*

**MANAGING EDITOR**
*Gina Brown*

**PRODUCT MARKETING MANAGER**
*Stephanie Layton*

**ACQUISITIONS EDITOR**
*Karen Wachs*

**DEVELOPMENT EDITOR**
*Katherine Pendergast*

**PROJECT EDITOR**
*Alissa Cayton*

**COPY EDITOR**
*June Waldman*

**INDEXER**
*Larry Sweazy*

**ACQUISITIONS COORDINATOR**
*Jennifer Garrett*

**MANUFACTURING COORDINATOR**
*Chris Moos*

**BOOK DESIGNER**
*Louisa Kluczink*

**COVER DESIGNER**
*Aren Howell*

**COMPOSITORS**
*Scan Communications Group, Inc.*

*Amy Parker*

# OVERVIEW

Introduction    1

1   The History of Intrusion Detection    7

2   Concepts and Definitions    27

3   Information Sources    45

4   Analysis Schemes    79

5   Responses    121

6   Vulnerability Analysis: A Special Case    135

7   Technical Issues    155

8   Understanding the Real-World Challenge    173

9   Legal Issues    195

10   For Users    217

11   For Strategists    235

12   For Designers    255

13   Future Needs    275

Appendix A    Glossary    289

Appendix B    Bibliography    297

Appendix C    Resources    315

Appendix D    Checklist    321

Index    323

# CONTENTS

*Introduction*                                                                   *1*

   *Defining Intrusion Detection*                                   *3*

   *By Way of Introduction*                                         *4*

**1  *The History of Intrusion Detection***                                       *7*

   *1.1  Audit: Setting the Stage for Intrusion Detection*          *7*

      1.1.1    Differences between Financial and Security Audit    9

      1.1.2    Audit as a Management Tool                        9

      1.1.3    EDP Audits and Early Computer Security            10

      1.1.4    Audit and Military Models of Computer Security    11

   *1.2  The Birth of Intrusion Detection*                            *12*

      1.2.1    Anderson and the Audit Reduction Problem          12

      1.2.2    Denning, Neumann, and IDES                        14

      1.2.3    A Flurry of Systems through the 1980s             15

      1.2.4    Integrating Host and Network-Based
            Intrusion Detection                               21

      1.2.5    The Advent of Commercial Products                 23

   *1.3  Conclusion*                                                  *24*

   *Endnotes*                                                       *25*

**2  *Concepts and Definitions***                                                *27*

   *2.1  An Introduction to Intrusion Detection*                      *27*

   *2.2  Security Concepts*                                           *28*

      2.2.1    A Cultural View of Computer and Network Security    28

      2.2.2    Practical Definition of Computer Security         29

      2.2.3    Formal Definition of Computer Security            29

      2.2.4    Trust                                             30

      2.2.5    Threat                                            30

      2.2.6    Vulnerability                                     31

      2.2.7    Security Policy                                   32

      2.2.8    Other Elements of the System Security Infrastructure    33

      2.2.9    How Security Problems Occur                       35

   *2.3  Intrusion Detection Concepts*                                *37*

      2.3.1    Architecture                                      37

      2.3.2    Monitoring Strategy                               38

      2.3.3    Analysis Type                                     38

      2.3.4    Timing                                            40

      2.3.5    Goals of Detection                                40

      2.3.6    Control Issues                                    42

2.3.7    Determining Strategies for Intrusion Detection    43

2.4    Conclusion    43

Endnotes    44

3    Information Sources    45

3.1    The Organization of this Chapter    45
3.1.1    Which Source Is the Right Source?    46
3.1.2    Enduring Questions    46

3.2    Host-Based Information Sources    47
3.2.1    Operating System Audit Trails    47
3.2.2    Approaches to Structuring Audit Trails    48
3.2.3    Problems with Commercial Audit Systems    48
3.2.4    Pros and Cons of Operating System Audit Trails    49
3.2.5    Content of Audit Trails    49
3.2.6    Audit Reduction    57
3.2.7    System Logs    58
3.2.8    Applications Information    60
3.2.9    Target-Based Monitoring    65

3.3    Network-Based Information Sources    67
3.3.1    Why Network Sources?    67
3.3.2    Network Packets    67
3.3.3    TCP/IP Networks    68
3.3.4    Packet Capture    70
3.3.5    Network Devices    73
3.3.6    Out-of-Band Information Sources    73

3.4    Information from Other Security Products    74
3.4.1    An Example of a Security Product Data Source    74
3.4.2    Organization of Information Prior to Analysis    75
3.4.3    Other System Components as Data Sources    76

3.5 Conclusion    76

Endnotes    77

4    Analysis Schemes    79

4.1    Thinking About Intrusions    79
4.1.1    Defining Analysis    79
4.1.2    Goals    80
4.1.3    Supporting Goals    81
4.1.4    Detecting Intrusions    82

4.2    A Model for Intrusion Analysis    83
4.2.1    Constructing the Analyzer    84

| | | | |
|---|---|---|---|
| | 4.2.2 | Performing Analysis | 88 |
| | 4.2.3 | Feedback and Refinement | 89 |
| *4.3* | *Techniques* | | *91* |
| | 4.3.1 | Misuse Detection | 91 |
| | 4.3.2 | Anomaly Detection | 100 |
| | 4.3.3 | Alternative Detection Schemes | 110 |
| *4.4* | *Conclusion* | | *117* |
| | *Endnotes* | | *117* |
| **5** | **Responses** | | **121** |
| | *5.1* | *Requirements for Responses* | *121* |
| | | 5.1.1 Operational Environment | 123 |
| | | 5.1.2 System Purpose and Priorities | 123 |
| | | 5.1.3 Regulatory or Statutory Requirements | 124 |
| | | 5.1.4 Conveying Expertise to Users | 124 |
| | *5.2* | *Types of Responses* | *125* |
| | | 5.2.1 Active Responses | 125 |
| | | 5.2.2 Passive Responses | 128 |
| | *5.3* | *Covering Tracks During Investigation* | *130* |
| | | 5.3.1 Fail-Safe Considerations for Response Components | 130 |
| | | 5.3.2 Handling False Alarms | 130 |
| | | 5.3.3 Archive and Report | 131 |
| | *5.4* | *Mapping Responses to Policy* | *131* |
| | | 5.4.1 Immediate | 132 |
| | | 5.4.2 Timely | 132 |
| | | 5.4.3 Long-Term—Local | 132 |
| | | 5.4.4 Long-Term—Global | 133 |
| | *5.5* | *Conclusion* | *133* |
| | *Endnotes* | | *134* |
| **6** | ***Vulnerability Analysis: A Special Case*** | | ***135*** |
| | *6.1* | *Vulnerability Analysis* | *136* |
| | | 6.1.1 Rationale for Vulnerability Analysis | 136 |
| | | 6.1.2 COPS—An Example of Vulnerability Analysis | 136 |
| | | 6.1.3 Issues and Considerations | 140 |
| | *6.2* | *Credentialed Approaches* | *140* |
| | | 6.2.1 Definition of Credentialed Approaches | 141 |
| | | 6.2.2 Determining Subjects for Credentialed Approaches | 141 |
| | | 6.2.3 Strategy and Optimization of Credentialed Approaches | 142 |

6.3   *Noncredentialed Approaches*                                          *144*
  6.3.1   Definition of Noncredentialed Approaches                     144
  6.3.2   Methods for Noncredentialed Vulnerability Analysis           144
  6.3.3   Testing by Exploit                                           144
  6.3.4   Inference Methods                                            145
  6.3.5   A Historical Note                                            145
  6.3.6   Architecture of SATAN                                        147
  6.3.7   Fail-Safe Features                                           149
  6.3.8   Issues Associated with SATAN                                 149

6.4   *Password-Cracking*                                                   *150*
  6.4.1   Concepts of Operation                                        150
  6.4.2   Password Crackers as Vulnerability Analysis Tools            151

6.5   *Strengths and Weaknesses of Vulnerability Analysis*                  *151*
  6.5.1   Strengths of Credentialed Analysis Techniques                151
  6.5.2   Strenghts of Noncredentialed Analysis Techniques             152
  6.5.3   Disadvantages                                                152

6.6   *Conclusion*                                                          *153*

*Endnotes*                                                                  *153*

7   **Technical Issues**                                                    *155*

7.1   *Scalability*                                                         *155*
  7.1.1   Scaling over Time                                            155
  7.1.2   Scaling over Space                                           156
  7.1.3   Case Study—GrIDS                                             157

7.2   *Management*                                                          *157*
  7.2.1   Network Management                                           158
  7.2.2   Sensor Control                                               159
  7.2.3   Investigative Support                                        159
  7.2.4   Performance Loads                                            160

7.3   *Reliability*                                                         *160*
  7.3.1   Reliability of Information Sources                           161
  7.3.2   Reliability of Analysis Engines                              162
  7.3.3   Reliability of Response Mechanisms                           163
  7.3.4   Reliability of Communications Links                          164

7.4   *Analysis Issues*                                                     *165*
  7.4.1   Training Sets for AI-Based Detectors                         165
  7.4.2   False Positives/Negatives in Anomaly Detection               165
  7.4.3   Trends Analysis                                              166
  7.4.4   Composition of Policies                                      166

7.5   Interoperability                                          167
  7.5.1   CIDF/CRISIS Effort                            169
  7.5.2   Audit Trail Standards                         169

7.6   Integration                                              171

7.7   User Interfaces                                          171

7.8   Conclusion                                               172

Endnotes                                                       172

**8  Understanding the Real-World Challenge**                  **173**

8.1   The Roots of Security Problems                           173
  8.1.1   Problems in Design and Development            174
  8.1.2   Problems in Management                        178
  8.1.3   Problems in Trust                             181

8.2   Through a Hacker's Eyes                                  185
  8.2.1   Identifying a Victim                          185
  8.2.2   Casing the Joint                              186
  8.2.3   Gaining Access                                186
  8.2.4   Executing the Attack                          187

8.3   Security versus Traditional Engineering                  191
  8.3.1   Traditional Engineering                       191
  8.3.2   Security Engineering                          191
  8.3.3   Rules of Thumb                                192

8.4   Rules for Intrusion Detection Systems                    192

8.5   Conclusion                                               194

Endnotes                                                       194

**9  Legal Issues**                                           **195**

9.1   Law for Geeks                                            196
  9.1.1   Legal Systems                                 197
  9.1.2   Legislation                                   198
  9.1.3   Civil Litigation/Tort Law                     199
  9.1.4   Complications in Applying Law to Cyberspace   201

9.2   Rules of Evidence                                        203
  9.2.1   Types of Evidence                             203
  9.2.2   Admissibility of Evidence                     204
  9.2.3   Restrictions and Exceptions                   205
  9.2.4   Provisions for Handling Evidence              205
  9.2.5   Rules of Evidence as Applied to System Logs
    and Audit Trails                           206

9.3   Laws Relating to Monitoring Activity                     207
  9.3.1   When a System Administrator Monitors a System 207

9.3.2   When Law Enforcement Agents Monitor a System     208
9.3.3   Notification of Monitoring     208
9.4   *What Real Cases Have Taught Us*     208
9.4.1   The Mitnick Case     209
9.4.2   The Rome Lab Case     212
9.4.3   Lessons Learned     214
9.5   *Conclusion*     215
*Endnotes*     216
10   *For Users*     217
10.1   *Determining Your Requirements*     217
10.1.1   Your System Environment     217
10.1.2   Goals and Objectives     218
10.1.3   Reviewing Your Policy     218
10.1.4   Requirements and Constraints     219
10.2   *Making Sense of Products*     220
10.2.1   Understanding the Problem Space     220
10.2.2   Is the Product Scalable?     221
10.2.3   How Did You Test This?     221
10.2.4   Is This Product a Tool or Is It an Application?     222
10.2.5   Buzzwords versus Wisdom     223
10.2.6   Anticipated Life of Product     224
10.2.7   Training Support     224
10.2.8   Prioritized Goals of Product     224
10.2.9   Product Differentiation     225
10.3   *Mapping Policy to Configurations*     225
10.3.1   Converting Policy to Rules     225
10.3.2   Subject-Objects to Real World     226
10.3.3   Monitoring Policy versus Security Policy     227
10.3.4   Testing Assertions     227
10.4   *Show Time! Incident Handling and Investigation*     227
10.4.1   Scout's Honor     228
10.4.2   Best Practices     228
10.4.3   When the Balloon Goes Up     229
10.4.4   Dealing with Law Enforcement     230
10.4.5   Expectations     231
10.4.6   Damage Control     231
10.4.7   Dealing with Witch Hunts     232
10.5   *Conclusion*     232
*Endnotes*     233

*For Strategists*                                                        235

  *11.1  Building a Case for Security*                         235
    11.1.1  Assembling Information                     236
    11.1.2  What Is the Organization Trying to Accomplish?   236
    11.1.3  How Does Security Fit Into Overall Business Goals?   236
    11.1.4  Where Does Information Security Fit Into the
    Corporate Risk-Management Program?                237
    11.1.5  What Do We Need to Secure the System?       238
    11.1.6  Finding Allies                             239
    11.1.7  Overcoming Management Resistance           241

  *11.2  Defining Requirements for IDS*                       242
    11.2.1  Revisiting Goals and Objectives            242
    11.2.2  What Are the Threats?                      242
    11.2.3  What Are Our Limitations?                  243
    11.2.4  Considerations in Adopting Intrusion Detection
    and System Monitoring                             243

  *11.3  Marketing Hype versus Real Solutions*                244
    11.3.1  What Product Is Best Fitted to Us and Our Goals?   244
    11.3.2  How Painful Is This Product to Install?    245
    11.3.3  How Painful Is This Product to Run?        245
    11.3.4  What Are the Expectations of the Personnel?   246
    11.3.5  Who Was the Dream Customer for
    Whom This Product Was Designed?                   246

  *11.4  Integrating Security Into a Legacy Environment*     246
    11.4.1  Assessing the Existing Systems             247
    11.4.2  Leveraging Investments in Security         247
    11.4.3  Dealing with "Wetware"—the Humans
    in the System                                    248
    11.4.4  Handling Conflicts                         249

  *11.5  Dealing with the Effects of Corporate Transitions*   250
    11.5.1  Mergers and Acquisitions                  250
    11.5.2  Strategic Partners                         250
    11.5.3  Globalization                              251
    11.5.4  Expansion and Contraction                  251
    11.5.5  Going from Private to Public               252

  *11.6  Conclusion*                                          252

*Endnotes*                                                               253

*For Designers*                                                           *255*

   *12.1   Requirements*                                       *256*
      12.1.1   Good versus Great Intrusion Detection      256
      12.1.2   Different Approaches to Security            258
      12.1.3   Policies—One Size Does Not Fit All          260

   *12.2   Security Design Principles*                       *262*
      12.2.1   Economy of Mechanism                        262
      12.2.2   Fail-Safe Defaults                          263
      12.2.3   Complete Mediation                          263
      12.2.4   Open Design                                 263
      12.2.5   Separation of Privilege                     264
      12.2.6   Least Privilege                             264
      12.2.7   Least Common Mechanism                      265
      12.2.8   Psychological Acceptability                 265

   *12.3   Surviving the Design Process*                     *265*
      12.3.1   Establishing Priorities                     265
      12.3.2   On Threat Curmudgeons                       266
      12.3.3   Striking and Maintaining Balance            267

   *12.4   Painting the Bull's Eye*                          *268*
      12.4.1   Gauging Success                             268
      12.4.2   False Starts                                269
      12.4.3   Testing Approaches                          269
      12.4.4   Measuring Network-Based Performance         270

   *12.5   Advice from the Trenches*                         *271*
      12.5.1   Use Good Engineering Practices              271
      12.5.2   Secure Sensors                              272
      12.5.3   Pay Attention to Correct Reassembly         272
      12.5.4   Don't Underestimate Hardware Needs          272
      12.5.5   Don't Expect Trusted Sources of Attack Data 272
      12.5.6   Think Through Countermeasures               273
      12.5.7   No Support for Forensics                    273
      12.5.8   Support Modern Security Features            273

   *12.6   Conclusion*                                       *273*

   *Endnotes*                                                *274*

*Future Needs*                                                            *275*

   *13.1   Future Trends in Society*                         *276*
      13.1.1   Global Villages and Marketplaces            276
      13.1.2   Privacy as an Economic Driver               276
      13.1.3   A Different Kind of War                     277

|  | 13.1.4 | Sovereignty | 277 |
| *13.2* | | *Future Trends in Technology* | *277* |
|  | 13.2.1 | Changes in the Network Fabric | 277 |
|  | 13.2.2 | Open Source Software | 278 |
|  | 13.2.3 | Advances in Wireless Networking | 278 |
|  | 13.2.4 | Ubiquitous Computing | 279 |
| *13.3* | | *Future Trends in Security* | *279* |
|  | 13.3.1 | Management | 279 |
|  | 13.3.2 | Privacy-Sparing Security | 281 |
|  | 13.3.3 | Information Quality versus Access Control | 282 |
|  | 13.3.4 | Crypto, Crypto Everywhere . . . | 282 |
|  | 13.3.5 | The Erosion of Perimeters | 282 |
|  | 13.3.6 | Liability Transfer versus Trust Management | 283 |
| *13.4* | | *A Vision for Intrusion Detection* | *283* |
|  | 13.4.1 | Capabilities | 283 |
|  | 13.4.2 | Highly Distributed Architectures | 284 |
|  | 13.4.3 | 911 for Security Management | 285 |
|  | 13.4.4 | Ubiquitous Information Sources | 285 |
|  | 13.4.5 | Silicon Guards | 285 |
|  | 13.4.6 | Emphasis on Service, Not Product | 286 |
| *13.5* | | *Conclusion* | *286* |
| *Endnotes* | | | *287* |
| ***Appendix A Glossary*** | | | ***289*** |
| ***Appendix B Bibliography*** | | | ***297*** |
| ***Appendix C Resources*** | | | ***315*** |
| *Books* | | | *315* |
|  | | Intrusion Detection and Associated Technologies | 315 |
|  | | Security References and Textbooks | 315 |
|  | | Information Warfare, Critical Systems, and National Policy | 316 |
|  | | Introduction to Computer and Network Security | 316 |
|  | | Cryptography | 316 |
|  | | Firewalls | 316 |
|  | | War Stories | 317 |
|  | | Specific Application Venues | 317 |
|  | | Cybercrime and Law Enforcement | 317 |
|  | | For Fun | 317 |

*WWW Resources*                                      *317*
   Security Portals                              318
   Vulnerability Information Sources              318
   Organizations                                 318
   Government Sites                               319
   Academic Sites                                319
   Commercial Products, Services, and Research    319
   Miscellaneous Intrusion Detection References   320
*Appendix D Checklist*                               *321*
*Index*                                              *323*

runs on a Sybase database management system, using some of Sybase's internal triggers and other features.

NADIR remains one of the most successful and durable intrusion detection systems of the 1980s and has been extended to monitor systems beyond the ICN at Los Alamos. NADIR continues to monitor the ICN at the time of this publication, and the team continues to modify the system to accommodate new threats and target systems. The principal architect for NADIR is Kathleen Jackson.

### 1.2.3.6  NSM

The Network System Monitor (NSM) was developed at the University of California at Davis to run on a Sun UNIX workstation. It represented the first foray into monitoring network traffic and using that traffic as the primary data source. Before this time, most intrusion detection systems consumed information from operating system audit trails or keystroke monitors. The general architecture of the NSM is still reflected in many commercial intrusion detection products at the time of this publication. The NSM functioned by doing the following:

- Placing the system's Ethernet network interface card into promiscuous mode (in which each network frame generates an interrupt, thereby allowing the monitoring system to listen to all traffic, not just those packets addressed to the system)

- Capturing network packets

- Parsing the protocol to allow extraction of pertinent features as shown in Figure 1.4

- Using a matrix-based approach to archive and analyze the features, both for statistical variances from normal behavior and for violations of pre-established rules

NSM was a significant milestone in intrusion detection research because it was the first attempt to extend intrusion detection to heterogeneous network environments. It was also one of the first intrusion detection systems to run on an operational system (the computer science department local area network at UC Davis). In a widely cited, two-month test of NSM, it monitored more than 111,000 connections on the network segment, correctly identifying more than 300 of them as intrusions. The system administrators for the network discovered less than one percent of these intrusions. This test emphasized the need for and the effectiveness of intrusion detection systems as part of the protection suite. Principal architects for NSM were Karl Levitt, Todd Heberlein, and Biswanath Mukherjee of the University of California at Davis.[15]

20 | **Intrusion Detection**



## 1.2.3.7   *Wisdom and Sense*

Wisdom and Sense[16] was an anomaly detection system developed by the Safeguards and Security Group at Los Alamos National Laboratory in partnership with Oak Ridge National Laboratory. Wisdom and Sense was the second pass at an intrusion detection system for mainframes (the initial system, called ALAP, was fielded by the U.S. Department of Energy in several of the department's facilities). Wisdom and Sense operated on a UNIX platform and analyzed audit data from Digital Equipment Corporation VAX/VMS systems. Wisdom and Sense performed statistical, rule-based analyses that were quite different from other systems of the time. The system used *nonparametric techniques* (which are statistical techniques that make no assumptions about the distribution of the data) to derive its own rulebase from archival audit data. Wisdom and Sense then compared subsequent activity to this rulebase, looking for exceptions. The rulebase was structured into

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2006, I electronically filed the foregoing document, **REDACTED VERSION OF DECLARATION OF GEOFFREY M. GODFREY IN SUPPORT OF DEFENDANTS' JOINT REPLY MOTION FOR SUMMARY JUDGMENT REGARDING INVALIDITY**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

John F. Horvath, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE  19801

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE  19801

Additionally, I hereby certify that on the 19th day of July, 2006, the foregoing document was served via email on the following non-registered participants:

Howard G. Pollack, Esq.
Michael J. Curley, Esq.
Fish & Richardson
500 Arguello Street, Suite 500
Redwood City, CA  94063
650.839.5070

Holmes Hawkins, III, Esq.
King & Spalding
191 Peachtree Street
Atlanta, GA  30303
404.572.4600

Theresa Moehlman, Esq.
King & Spalding LLP
1185 Avenue of the Americas
New York, NY  10036-4003
212.556.2100

_____/s/ Richard K. Herrmann_____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801
(302) 888-6800
rherrmann@morrisjames.com

*Counsel for Symantec Corporation*