IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation, | Civil Action No. 04-CV-1199 (SLR) |
| Plaintiff and Counterclaim Defendant, | **PUBLIC VERSION** |
| v. | THIS DOCUMENT CONTAINS MATERIALS WHICH ARE CONFIDENTIAL OR RESTRICTED CONFIDENTIAL - SOURCE CODE AND COVERED BY A PROTECTIVE ORDER.  THIS DOCUMENT SHALL NOT BE MADE AVAILABLE TO ANY PERSON OTHER THAN THE COURT AND OUTSIDE COUNSEL OF RECORD FOR THE PARTIES |
| INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, and SYMANTEC CORPORATION, a Delaware corporation, | |
| Defendants and Counterclaim-Plaintiffs. | |

## REPLY BRIEF IN SUPPORT OF SYMANTEC'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Richard K. Herrmann (#405)
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899-2306
Tel: (302) 888-6800
Fax: (302) 571-1751

*Attorneys for Defendant and Counterclaim-Plaintiff Symantec Corporation*

OF COUNSEL:

Lloyd R. Day, Jr. (*pro hac vice*)
Robert M. Galvin (*pro hac vice*)
Paul S. Grewal (*pro hac vice*)
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014
Tel: (408) 873-0110
Fax: (408) 873-0220

Michael J. Schallop (*pro hac vice*)
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA 95014
Tel: (408) 517-8000
Fax: (408) 517-8121

Dated: July 10, 2006
Redacted Date: July 19, 2006

# TABLE OF CONTENTS

PAGE NO.

I.   INTRODUCTION .................................................................................1

II.  ARGUMENT........................................................................................2

   A.   SRI Has Not Identified Sufficient Evidence to Enable a Jury
        Reasonably to Find that Symantec Infringes any Asserted
        Claim of the '338 Patent.........................................................2

       1.   SRI concedes that the ManHunt Products' accused
            method of generating Flow Alerts does not infringe the
            '338 claims. ..............................................................2

       2.   SRI's new "inference of infringement" theory lacks the
            evidentiary support necessary to survive summary
            judgment. .................................................................4

   B.   Symantec Does Not Infringe any Asserted Claim of the '212
        Patent or Claim 7 of the '615 Patent Because Symantec's
        Accused Products Do Not Practice the "Statistical Detection
        Method" Limitation. ..............................................................11

   C.   SRI Has Offered No Evidence that Symantec or any Particular
        Third Party Ever Has Combined the Accused SGS and
        Manager Products in the Manner Alleged to Infringe the '212,
        '203 and '615 Claims.............................................................15

       1.   SRI has failed to establish direct infringement of the
            '212, '203, or '615 patents by Symantec based on any
            combination of the accused SGS and Manager
            Products. ..................................................................15

       2.   SRI has failed to establish indirect infringement of the
            '212, '203, or '615 patents by Symantec based on
            combinations of the accused SGS and Manager
            Products by any third party...........................................16

   D.   The Parties Agree that Symantec Does Not Infringe the '212,
        '203, and '615 Patents Under Defendants' Proposed
        Constructions for "Network Monitor" and "Hierarchical
        Monitor."...........................................................................20

III. CONCLUSION.....................................................................................20

## TABLE OF AUTHORITIES

PAGE NO.

CASES

Cyrix Corp. v. Intel Corp.,
    846 F. Supp. 2d 522 (E.D. Tex. 1994) ............................................................ 19

Dynacore Holdings Corp. v. U.S. Phillips Corp.,
    363 F.3d 1263 (Fed. Cir. 2004) ...................................................................... 17

Fantasy Sports Props., Inc. v. SportsLine.com, Inc.,
    287 F.3d 1108 (Fed. Cir. 2002) ...................................................................... 19

High Tech. Med. Instrumentation, Inc. v. New Image Indus., Inc.,
    49 F.3d 1551 (Fed. Cir. 1995) ........................................................................ 19

Hill v. City of Scranton,
    411 F.3d 118 (3d Cir. 2005) ........................................................................... 10

Intel Corp. v. Int'l Trade Comm'n,
    946 F.2d 821 (Fed. Cir. 1991) ........................................................................ 19

Lemelson v. United States,
    752 F.2d 1538 (Fed. Cir. 1985) ...................................................................... 19

McKesson Info. Solutions LLC v. Trizetto Group, Inc.,
    2006 U.S. Dist. LEXIS 16086 (D. Del. 2006) ............................................. 2, 8

MOSAID Techs. Inc. v. Samsung Elecs. Co.,
    362 F. Supp. 2d 526 (D.N.J. 2005) .................................................................. 3

Novartis Corp. v. Ben Venue Labs, Inc.,
    271 F.3d 1043 (Fed. Cir. 2001) ..................................................................... 5, 7

TechSearch L.L.C. v. Intel Corp.,
    286 F.3d 1360 (Fed. Cir. 2002) ........................................................................ 7

Thomas v. Great Atl. & Pac. Tea Co.,
    233 F.3d 326 (5th Cir. 2000) .......................................................................... 10

## I.    INTRODUCTION

Having failed to uncover any concrete evidence establishing a genuine issue of material fact, SRI attempts to save its infringement claims against Symantec by offering a perplexing combination of unsupported testimony from its expert, inapposite case law, and irrelevant arguments that draw attention away from the key issues rather than addressing them. But these distractions cannot cure SRI's failure of proof.

Clinging to a new "inference of infringement" theory that SRI's expert cobbled together during his deposition after conceding non-infringement under the original theory disclosed in his expert report, SRI has nevertheless provided no *evidence* that Symantec's accused ManHunt Products practice each and every limitation of the '338 claims, even under SRI's proposed constructions. Nor has SRI provided evidence establishing a genuine issue of disputed fact whether the accused SGS 5400 and ManHunt Products practice the "statistical detection method" required by the '212 claims and '615 claim 7, as opposed to "signature" methods that the patents explicitly distinguish. Furthermore, SRI has failed to identify evidence showing that Symantec itself has directly infringed the '203, '212 or '615 patents by combining the accused SGS and Manager Products, that any particular Symantec customer has directly infringed by combining these products, or that Symantec's customers necessarily must combine these products.

At a minimum, because SRI has not even alleged infringement under Defendants' proposed constructions, summary judgment of Symantec's non-infringement on all of SRI's asserted claims should be granted if Defendants' proposed constructions are adopted. Additionally, because SRI does not dispute that the accused SGS and Manager Products are capable of substantial non-infringing uses, summary judgment of Symantec's non-infringement under 35 U.S.C. § 271(c) should be granted as to those products.

1

As shown below and in Symantec's opening brief, SRI's infringement case is illusory. It relies on unsupported hypotheses, not facts. The Court can and should put an end to it now, before an expensive and time-consuming trial, by granting Symantec's motion for summary judgment of non-infringement in its entirety.

## II.     ARGUMENT

### A.     SRI Has Not Identified Sufficient Evidence to Enable a Jury Reasonably to Find that Symantec Infringes any Asserted Claim of the '338 Patent.

SRI bears the burden of identifying sufficient evidence to enable a jury reasonably to find that infringement has occurred. *See McKesson Info. Solutions LLC v. Trizetto Group, Inc.*, 2006 U.S. Dist. LEXIS 16086, at *6 (D. Del. 2006).

SRI does not contest that summary judgment of non-infringement is warranted for the '338 claims under Defendants' proposed constructions.[1] Therefore, if the Court adopts any of Defendants' proposed constructions for the disputed '338 claim terms, summary judgment that Symantec does not infringe these claims should be entered.

But even if none of Defendants' proposed constructions is adopted, summary judgment is still appropriate, for the reasons discussed below.

### 1.     SRI concedes that the ManHunt Products' accused method of generating Flow Alerts does not infringe the '338 claims.

In his infringement report, SRI's expert, Dr. Kesidis, alleged that the ManHunt Products' method for generating Flow Alerts (sometimes referred to as "netflow alerts") infringed the '338 claims. This was the only infringement theory for the '338 claims set forth in Dr. Kesidis' report. SRI has subsequently admitted that this accused netflow alert process

---

[1] *See* SRI's Response to Symantec's Summary Judgment Motion of Non-Infringement ("Res. Br.") at 11-14 [D.I. 333]; Expert Report of Dr. George Kesidis on Infringement ("Kesidis Rep.") ¶¶ 21, 231-50 [D.I. 288, Ex. G].

does not infringe the '338 claims.[2]

Realizing that any infringement theory it hopes to prove at trial using expert testimony from Dr. Kesidis must be grounded in an expert report explaining that infringement position on a limitation-by-limitation basis, *cf. MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 542-44 (D.N.J. 2005) (granting summary judgment of no infringement by equivalents where plaintiff's expert report failed to provide a particularized, limitation-by-limitation infringement analysis), SRI now maintains that the non-infringing netflow alert process was not the only ManHunt functionality accused of infringing the '338 claims in its expert report. But even a quick review of Dr. Kesidis' expert report demonstrates that SRI's position lacks credibility.

The relevant section of SRI's expert report is at pages 72-74. Every single paragraph of the infringement analysis begins by expressly identifying the netflow alert process as the allegedly infringing functionality:



When this infringement analysis is summarized elsewhere in the report, the same netflow alert

---

[2] *See* Opening Brief in Support of Symantec's Motion for Summary Judgment of Non-Infringement ("Open Br.") at 10-12 [D.I. 287]; Declaration of Dr. George Kesidis ("Kesidis Decl.") ¶ 23 [D.I. 348]; Res. Br. at 11 n.15 [D.I. 333].

[3] Kesidis Rep. ¶¶ 235-37, 239-40 (emphasis added) (Paragraph 238 of Dr. Kesidis' report addresses claim construction issues and does mention any accused products.); *see also id.* at ¶¶ 244-46 (referencing netflow alert source code, REDACTED [D.I. 288, Ex. G].

process is identified as the allegedly infringing functionality:

REDACTED

    [4] Exhibit F of SRI's infringement report (the '338 infringement chart) likewise

identifies the netflow alert process as the allegedly infringing functionality.[5]

    SRI has conceded that there are no netflow alerts or flow alert processes associated

with the ManHunt products other than the Flow Alert process that SRI admits does not

infringe.[6] SRI's expert also has admitted that the "Flow Alert" terminology is *not* used to refer

to the functionality that SRI suggests might infringe under its new "inference" theory

(discussed below).[7] When SRI's expert report is considered in light of SRI's admissions

concerning the meaning of the term Flow Alert/netflow alert, it is simply not reasonable to

conclude that SRI's expert report accused something other than the ManHunt Products' Flow

Alert process of infringing the '338 claims.

    Having submitted an expert report accusing only the Flow Alert process of infringing

the '338 claims, and having subsequently abandoned that theory, SRI's expert should not now

be permitted to present at trial a new infringement theory relating to different functionality of

the accused ManHunt Products. Instead, the Court should grant summary judgment that the

accused ManHunt Products do not infringe the '338 claims.

        **2.**      **SRI's new "inference of infringement" theory lacks the evidentiary support necessary to survive summary judgment.**

    Even if SRI had disclosed its new infringement theory in Dr. Kesidis' report, this

"inference of infringement" theory lacks the factual foundation required to survive summary

judgment. In its opening brief, Symantec summarized SRI's new infringement theory for the

---

[4] *Id.* at ¶ 43 (emphasis added).

[5] *Id.* at Ex. F.

[6] *See* Open Br. at 10-12 [D.I. 287]; Kesidis Decl. ¶ 23 [D.I. 348]; Res. Br. at 11 n.15 [D.I. 333].

'338 claims, which was advanced for the first time during Dr. Kesidis' deposition.[8] Symantec recounted Dr. Kesidis' admissions that SRI's new infringement theory is based on unverified inferences drawn from high-level documents which, by themselves, do not establish that the accused ManHunt Products practice the '338 claims.[9] Symantec also explained how, following cases such as *Novartis Corp. v. Ben Venue Labs, Inc.*, 271 F.3d 1043 (Fed. Cir. 2001), summary judgment of non-infringement should be granted in light of the uncontested lack of evidentiary support for SRI's new infringement theory.[10]

In its answering brief, SRI did not dispute that the standards outlined in *Novartis* should be applied to this issue. In fact, SRI did not discuss any cases in the '338 section of its brief. Nor did SRI make any effort in its answering brief to remedy the lack of evidentiary support its expert had conceded during deposition. Instead, SRI expressly acknowledged that its new theory is based on a mere "inference of infringement."[11]

More than one month passed between the time of Dr. Kesidis' deposition, during which he admitted not knowing whether the ManHunt Products actually can operate in the allegedly infringing manner he speculated they might,[12] and the time SRI filed its answering brief. This

---

[7] *See* Kesidis Decl. ¶ 23 [D.I. 348].

[8] Open Br. at 14 [D.I. 287].

[9] *Id.* at 14-17.

[10] *Id.* at 17-21.

[11] Res. Br. at 12 [D.I. 333].

[12] *See, e.g.*, Kesidis Tr. 452:2-6

REDACTED

468:16-24

REDACTED          468:4-9

468:25-469:4       REDACTED

[D.I. 288, Ex. E]

provided ample opportunity for SRI and its expert to analyze Symantec's source code to determine whether the accused products were actually capable of operating in a manner which allegedly infringed under SRI's new theory. Symantec even identified the relevant source code files and a method of analysis in its opening brief.[13] But instead of analyzing the relevant source code in their possession, SRI and its expert chose to remain ignorant about how the accused products actually operate.

The "inference of infringement" urged by SRI cannot preclude summary judgment because it is an unreasonable inference. As an initial matter, SRI still has not identified which parts of the accused ManHunt Products allegedly practice the '338 claim limitations of "*comparing* at least one long-term and at least one short-term statistical profile" and "*determining whether the difference* between the short-term statistical profile and the long-term statistical profile *indicates suspicious network activity*" under SRI's new theory. In its answering brief, SRI identifies a tool— **REDACTED** ·—which it hypothesizes might be used in carrying out these "comparing" and "determining" steps, but SRI does not identify which part of the ManHunt Products allegedly uses this tool to perform these steps.[14]

This gap in SRI's new infringement theory is reflected in the source code discussion in SRI's answering brief. SRI identifies source code files which allegedly practice the steps of "receiving network packets" ( **REDACTED** ) and "building" the long-term and short term statistical profiles but does not identify any source code files that allegedly perform the "comparing" and "determining" steps.[15] SRI had no choice but to ignore

---

[13] Open Br. at 20 n.47 (citing Bennett, Suzuki, and Hansen declarations) [D.I. 287].

[14] *See* Res. Br. at 12-13 [D.I. 333].

[15] *See id.* at 13-14.

this issue in its answering brief, because it could not identify something that does not exist.[16]

As explained in Symantec's opening brief, a reasonable fact finder cannot evaluate infringement without a coherent theory identifying which components of the accused product allegedly practice each limitation of the asserted claims.[17]  In light of its failure even to *identify* source code files that might use the *REDACTED* tool to perform the "comparing" and "determining" limitations, SRI's assertion that "the functionality described in the technical documentation is borne out in and corroborated by the source code"[18] is exactly the type of conclusory opinion that the Federal Circuit rejected in the cases cited in Symantec's opening brief.  *See Novartis*, 271 F.3d at 1054; *TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371-75 (Fed. Cir. 2002).

In an attempt to sidestep its responsibility to identify with specificity the components of the accused products that allegedly practice each claim limitation, SRI points to some high-level documents which it alleges describe relevant functionality of the accused products and suggests that a fact finder can "infer" that the "comparing" and "determining" steps must be performed (by some unidentified component) in order for that functionality to be achieved.[19]  But even if this "inference of infringement" approach were permissible (which it is not), SRI provides no evidence from which a fact finder reasonably could make the inference urged by SRI.

Two of the three high-level documents from which SRI seeks to draw its "inference of

---

[16] *See* Declaration of Jeffery Hansen ("Hansen Decl.") ¶¶ 53-61 [D.I. 288, Ex. F]; Declaration of Jeremy F. Bennett ("Bennett Decl.") ¶¶ 7-8 [D.I. 288, Ex. P]; Declaration of Brandon Suzuki ("Suzuki Decl.") ¶¶ 7-8 [D.I. 288, Ex. Q]; Hernacki Tr. 89:2-4 [D.I. 288, Ex. I].

[17] Open Br. at 18 [D.I. 287].

[18] Res. Br. at 13-14 [D.I. 333].

[19] *Id.* at 12-13.

7

infringement" concern versions of ManHunt not accused of infringement.[20]  Acknowledging this weakness, SRI suggests in a footnote that *Symantec* bears the burden of proving that these documents do *not* accurately reflect the functionality of the accused products (which these documents do not address).[21]  This is incorrect.  As the patentee opposing a non-infringement summary judgment motion, SRI bears the burden of identifying sufficient evidence to enable a jury reasonably to find that infringement has occurred.  *See McKesson Info. Solutions*, 2006 U.S. Dist. LEXIS 16086, at *6.  Documents describing different, non-accused products do not provide a sufficient evidentiary basis for a jury reasonably to find that the accused products infringe.  In any event, there is substantial evidence indicating that these two documents describing non-accused products do not accurately reflect how the accused products function, or show that they function in any allegedly infringing manner.[22]

The third high-level document from which SRI seeks to draw its "inference of infringement" concerns a different part of ManHunt that SRI has not accused of infringing the '338 claims.  Specifically, the excerpt from SRI's Ex. X mentioning "unusual spikes in traffic volume" is plainly addressing ManHunt's mechanism for detecting denial of service ("DoS") and distributed denial of service ("DDoS") flood attacks, not the FlowChaser subsystem.[23]

---

[20] SRI's Ex. C [D.I. 334] concerns a pre-3.0 version of ManHunt released by Recourse Technologies, while SRI's Ex. T [D.I. 334] addresses proposed functionality of SNS 5, a future version which has not been released.  Neither of these versions of ManHunt/SNS is accused of infringement.  *See* Kesidis Rep. ¶ 3 [D.I. 288, Ex. G].

[21] Res. Br. at 12 n.18 [D.I. 333].

[22] *See, e.g.*, Bennett Tr. 175:15-178:13 (addressing SRI's Ex. C) [Declaration of Paul S. Grewal In Support of Symantec's Non-Infringement Summary Judgment Reply Brief ("07/10/06 Grewal Decl."), Ex. A]; Hansen Decl. ¶¶ 69, 55, 57 (addressing SRI's Ex. T) [D.I. 288, Ex. F].

[23] *See* SYM_P_0036890 REDACTED

                     (emphasis added) [D.I. 334, Ex. X].  SRI suggests that Dr. Hansen identified this excerpt as a reference to the flow data store functionality.  Res. Br. at 13 [D.I. 333].  But Dr. Hansen made no such statement in the deposition transcript cited by SRI [D.I. 334, Ex. V].  In fact, on the very next page of Dr. Hansen's deposition transcript—which

ManHunt's flood detection mechanism is an entirely different component which SRI has accused of infringing the '212 claims, not the '338 claims.[24] Just as a jury could not reasonably infer infringement from documents describing the functionality of non-accused products, a jury could not reasonably infer infringement from a document describing the functionality of ManHunt's flood detection component, which is a separate component not accused of infringing the '338 claims.

Not only is the "inference of infringement" urged by SRI unsupported by the evidence—it is contrary to it. As detailed in Symantec's opening brief, the REDACTED query, which SRI hypothesizes might be used as part of a process that infringing the '338 claims,[25] cannot be used by the accused ManHunt Products for any purpose, no matter how those products are deployed and configured.[26]

Instead of offering evidence that contradicts the sworn testimony of three witnesses who analyzed the relevant source code, SRI attempts to create the illusion of a factual dispute by arguing that "Symantec merely offers the opinion of its expert that the source code does not do what the documents say it does," and that one must "question the completeness of the source code" that Symantec's expert reviewed.[27] But to create a genuine issue of disputed fact, SRI needed to come forward with *evidence* suggesting that the REDACTED query is utilized in an infringing manner. Merely questioning the truthfulness of Symantec's expert who, unlike SRI's expert, actually analyzed the relevant

---

SRI omitted—Dr. Hansen stated that this excerpt was most likely referring to the streak detection component (which is another name for ManHunt's DoS/DDoS flood detection mechanism). *See* Hansen Tr. 122:20-124:8 [07/10/06 Grewal Decl., Ex. B].

[24] *See* Kesidis Rep. ¶¶ 66, 69, 81-84, 235-46 [D.I. 288, Ex. G]; Res. Br. at 3-6 [D.I. 333].

[25] Res. Br. at 13-14 [D.I. 333].

[26] *See* Open Br. at 19-20 (discussing relevant evidence) [D.I. 287].

[27] Res. Br. at 14 [D.I. 333].

source code does not create a genuine dispute of fact. *See Hill v. City of Scranton*, 411 F.3d 118, 124-125 (3d Cir. 2005) (drawing all reasonable inferences in favor of the non-moving party does not involve "making credibility determinations"); *Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000) ("[A] motion for summary judgment cannot be defeated solely by conclusional allegations that a witness lacks credibility."). This is especially true in this case, where two additional witnesses—the architect of the ManHunt products and the co-author of the FlowChaser Data Store Specification—both stated under penalty of perjury that they had reviewed all the relevant source code for the ManHunt Products and, like Symantec's expert, had concluded that the REDACTED query cannot be utilized by the accused products.[28]

This is not a "battle of the experts" case. Rather, SRI asks this Court to discount the sworn testimony of three individuals who have actually analyzed the relevant source code in favor of the unsupported hypothesis of SRI's expert, who chose not to review the relevant source code (despite having ample opportunity to do so), whose conclusory infringement opinion is based entirely on an "inference" drawn from high-level documents concerning products and components not accused of infringing the '338 claims, and who admitted having no basis to refute the evidence contradicting his unconfirmed hypothesis.[29] On this record,

---

[28] Bennett Decl. ¶ 8 [D.I. 288, Ex. P]; Suzuki Decl. ¶ 8 [D.I. 288, Ex. Q]. SRI suggests it is "at odds with common sense" for a software product to include code which is not actually utilized by the product. Res. Br. at 14 [D.I. 333]. But this is not odd at all. In large commercial software development efforts, scheduling, budgetary, and other constraints often result in certain planned features not being fully implemented in particular product releases. In other instances, certain features are supported in early versions of a product, but are "discontinued" in later releases due to performance problems. This may explain why SRI's "inference of infringement" theory depends on documents describing non-accused versions of ManHunt/SNS.

[29] *See* Kesidis Tr. 452:15-22 REDACTED

[D.I. 288, Ex. E].

there is no genuine issue of disputed fact.

Finally, SRI's new "inference of infringement" theory suffers from an additional failure of proof which Symantec highlighted in its opening brief. SRI does not contest that, by default (i.e., "out-of-the-box"), the ManHunt Products do not utilize any of the queries listed in the FDS Specification document.[30] Thus, even if some of those queries could be used as part of an infringing method (which they cannot), to avoid summary judgment of non-infringement SRI needed to establish at least one instance where the ManHunt Products have been used in an infringing manner.[31] By failing to address this issue in its answering brief, SRI tacitly conceded that it has no such evidence.

For the multiple reasons set forth above and in Symantec's opening brief, under either party's proposed constructions, the Court should grant summary judgment that Symantec does not infringe any asserted claim of the '338 patent.

**B.      Symantec Does Not Infringe any Asserted Claim of the '212 Patent or Claim 7 of the '615 Patent Because Symantec's Accused Products Do Not Practice the "Statistical Detection Method" Limitation.**

Consistent with its position throughout this case, SRI does not dispute in its answering brief that summary judgment of non-infringement is warranted for the '212 claims and '615 claim 7 under Defendants' proposed construction for "statistical detection method."[32] Therefore, if the Court adopts Defendants' proposed construction, summary judgment that Symantec does not infringe these claims should be entered.

SRI does not dispute that the patents distinguish between "statistical" and "signature" detection methods, and that any reasonable construction of the term "statistical detection

---

[30] *See* Open Br. at 20 (discussing relevant evidence) [D.I. 287]; Res. Br. at 11-14 [D.I. 333].

[31] *See* Open Br. at 20 [D.I. 287].

[32] *See* Open Br. at 6, 21-22 [D.I. 287]; Res. Br. at 3-6 [D.I. 333].

11

method" must exclude signature detection methods.[33] Nor does SRI dispute that the accused

flood detection method in the SGS 5400 Series and ManHunt Products operates as described

by Dr. Hansen.[34] Most importantly, SRI does not dispute that the accused flood detection

method utilizes a rudimentary, fixed threshold that is preset by a human being based on *a priori*

knowledge concerning the exact count or percentage of a particular type of network traffic data

that is suspicious. In fact, the only relevant issue that SRI does dispute is whether this type of

detection method consisting of comparing network traffic data to a rudimentary, fixed threshold

determined in advance by a human being is a "signature" detection method within the context

of the patents (and therefore not the claimed "statistical detection method").

     As explained in Symantec's opening brief, there is no genuine dispute of fact on this

issue because SRI's own expert, Dr. Kesidis, acknowledged that the patents teach that

comparing a count or ratio to a fixed numerical threshold is a signature detection method, not a

statistical detection method.[35] SRI attempts to manufacture a genuine issue of fact by re-

characterizing Dr. Kesidis' prior admissions as being much narrower in scope and applying

only to comparisons of "inherently/innately suspicious" events to a fixed threshold. But this re-

interpretation is both contrary to the evidence and irrelevant.

     First, SRI does not cite any evidence to support its conclusory assertion that failed login

requests, pings, etc. are "innately suspicious" events.[36] In fact, Dr. Kesidis testified exactly the

---

[33] *See* Open Br. at 6, 22 [D.I. 287]; Res. Br. at 3-6 [D.I. 333].

[34] *See* Hansen Decl. ¶¶ 87-91 [D.I. 288, Ex. F].

[35] *See* Open Br. at 22-23 (discussing relevant evidence) [D.I. 287]. In its answering brief, SRI asserts that the percentage calculation performed by the accused flood detection method is "a basic statistical construct and comparing this statistically derived quantity to a threshold may be a statistical detection method, even when the threshold is 'fixed.'" Res. Br. at 4 [D.I. 333]. But this conclusory argument, which SRI fails to support with any evidence, is contrary to the teaching of the patents, as well as the prior testimony of both parties' experts. *See* Open Br. at 22-23 [D.I. 287].

[36] *See* Res. Br. at 5-6, n.8 [D.I. 333]; Kesidis Decl. ¶ 17 [D.I. 348].

opposite during his deposition.[37]

Second, it is irrelevant whether particular patterns of failed login requests, pings, etc. are "innately suspicious," because the particular patterns (i.e., counts or percentages of network traffic) that the accused flood detection mechanism looks for are no different.  Dr. Kesidis argues that the "*individual* network packets" counted by the accused flood detection mechanism are "inherently non-suspicious."[38]  But according to Dr. Kesidis, so too are *individual* failed login attempts.[39]  Just like the signature matching detection method described in the patents, the accused flood detection method looks for fixed *patterns* of events that a human being has pre-defined as suspicious.  There is no genuine dispute that this is how the accused flood detection mechanism operates.[40]

Seeking to downplay the admissions of its expert highlighted in Symantec's opening brief, SRI makes several additional arguments which merely serve to draw attention away from the relevant issues.  For example, SRI alleges that Symantec's own documents use the adjective "statistical" to refer to the accused flood detection method.[41]  But even if SRI's cited evidence supported this proposition,[42] this fact would be irrelevant.  *Cf. Medtronic Minimed, Inc. v. Smiths Med. MD, Inc.*, 2005 U.S. Dist. LEXIS 10583, at * 79 (D. Del. 2005) ("[I]t is improper for [patentee] to argue that literature from [accused infringer's] commercial embodiment of the

---

[37] *See* Kesidis Tr. 486:3-487: 

[38] Kesidis Decl. ¶ 18 (emphasis added) [D.I. 348].

[39] *See id.* ¶ 17.

[40] *See* Open Br. at 23-24 [D.I. 287].

[41] Res. Br. at 4 [D.I. 333].

[42] SRI's Ex. C [D.I. 334] concerns the non-accused version 2.11, while SRI's Ex. D [D.I. 334] is authored by a third party, not by Symantec.

invention should be used to construe the terms."). What matters is whether the accused products utilize a "statistical detection method" (a term having no inherent meaning to one of ordinary skill in the art[43]) *as that term is used in the patents*. As discussed above, it is undisputed that the claimed "statistical detection method" does not encompass "signature" detection methods. Therefore, regardless of how "statistical" might be used in other contexts, summary judgment of non-infringement should be granted if there is no genuine issue of fact that the accused flood detection method is a signature detection method (and therefore not a "statistical detection method") in the context of these patents.

SRI also attempts to create the illusion of disputed fact by mischaracterizing SYMC's position as depending on the proposition that "all detection methods involving threshold comparisons are necessarily not statistical."[44] But Symantec has never argued that any use of any threshold to detect suspicious network activity cannot be a "statistical detection method."[45] Symantec's non-infringement argument depends on a much narrower proposition, namely, that in the context of the patents comparing simple counts or ratios of observed network traffic data to a known, fixed threshold—i.e., a threshold that has been encoded by a human to represent suspicious network activity, not one that has been statistically derived or learned by the system—is a signature detection method (and therefore not a "statistical detection method").

Finally, SRI suggests that summary judgment should be denied because "the evidence shows that the ManHunt products' FlowChaser subsystem also uses a statistical detection method."[46] But SRI has never before alleged infringement of the '212 claims and '615 claim 7

---

[43] *See* Joint Claim Construction Response Brief of Defendants ISS and Symantec ("Claim Construction Res. Br.") at 32 [D.I. 362].

[44] Res. Br. at 5 [D.I. 333].

[45] *See, e.g.*, Claim Construction Res. Br. at 39 [D.I. 362].

[46] Res. Br. at 6 [D.I. 333].

based on the FlowChaser subsystem.[47] Nor is there any evidentiary support for such a theory, as is clear from the FlowChaser discussion in Symantec's opening brief. Also, it is undisputed that the FlowChaser subsystem is not part of the SGS 5400 Series products.[48] Thus, even if SRI could avoid summary judgment of non-infringement based on an entirely new and unsubstantiated infringement theory put forward for the first time in an answering brief, this particular theory provides no basis to avoid summary judgment of non-infringement as to the SGS 5400 Series products.

For the reasons set forth above and in Symantec's opening brief, under either party's proposed construction, the Court should grant summary judgment that Symantec does not infringe the '212 asserted claims or '615 claim 7.

      **C.**    **SRI Has Offered No Evidence that Symantec or any Particular Third Party Ever Has Combined the Accused SGS and Manager Products in the Manner Alleged to Infringe the '212, '203 and '615 Claims.**

          **1.**    **SRI has failed to establish direct infringement of the '212, '203, or '615 patents by Symantec based on any combination of the accused SGS and Manager Products.**

Having only accused the SGS and Manager Products of infringing the '212, '203 and '615 claims when they are combined together with one another, SRI maintains that it "has adduced evidence of direct infringement by Symantec's own, internal deployment of the accused products."[49] But, as pointed out weeks earlier by Symantec's expert, none of the three documents relied on by SRI its answering brief demonstrates, or even suggests, that Symantec has ever combined the accused SGS and Manager Products.[50] Dr. Kesidis essentially conceded

---

[47] *See* Open Br. at 21 n.53 and accompanying text [D.I. 287].

[48] *See id.* at 9.

[49] Res. Br. at 7; *see also id.* at 9-10 [D.I. 333].

[50] *See* Hansen Decl. ¶¶ 113-15 [D.I. 288, Ex. F].

as much during his deposition.[51]  The first document discusses deployment and testing of a ManHunt Product (the SNS 7100 Series), not any SGS or Manager Products.[52]  The second document, a transcript of the deposition of Symantec employee William Luk, likewise addresses the SNS 7100 Series, but not any SGS or Manager Products.[53]  Likewise, the third document consists of excerpts from a student training guide which do not identify any SGS Product, let alone describe any combination of the accused SGS and Manager Products.[54]

Because SRI has offered no evidence establishing that Symantec has successfully combined the SGS and Manager Products in the manner that SRI contends to be infringing, the Court should enter summary judgment of no direct infringement by Symantec based on the accused combination of these products.

> 2.   **SRI has failed to establish indirect infringement of the '212, '203, or '615 patents by Symantec based on combinations of the accused SGS and Manager Products by any third party.**

At a minimum, Symantec is entitled to summary judgment of no contributory infringement under 35 U.S.C. § 271(c), because SRI does not dispute that the accused SGS and Manager Products have substantial non-infringing uses.[55]  However, summary judgment of no indirect infringement for the SGS and Manager Products is also warranted on other grounds.

SRI does not dispute that liability for inducing infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c) requires proof of direct infringement. Yet, even after having subpoenaed and deposed Symantec sales personnel and four Symantec customers, SRI still points to no evidence from which a reasonable jury could find that any

---

[51] *See* Kesidis Tr. 543:17-545:19 [D.I. 288, Ex. E].

[52] *See* D.I. 334, Ex. N; Hansen Decl. ¶ 114 [D.I. 288, Ex. F].

[53] *See* D.I. 334, Ex. O; Hansen Decl. ¶ 114 [D.I. 288, Ex. F].

[54] *See* D.I. 334, Ex. P.

[55] *See* Open Br. at 6, 29 [D.I. 287]; Res. Br. at 7-11 [D.I. 333].

particular Symantec customer has directly infringed the '212, '203, or '615 claims by combining the accused SGS and Manager Products.

Instead, SRI attempts to shirk its burden by arguing that, because the accused SGS and Manager Products "are capable" of directly infringing these claims if combined together to form a claimed apparatus or used together to perform a claimed method,[56] and because Symantec "supports and encourages its customers to use these products together,"[57] SRI does not need to provide evidence that any particular customer has in fact infringed these claims by combining the separate SGS and Manager Products. This is legally wrong.

As Symantec demonstrated in its opening brief, SRI has not properly established direct infringement by any Symantec customer under either of the two paths set forth in *Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004) (holding that plaintiff must either demonstrate that customers' use of a product would "necessarily infringe," or "point to a specific instance of direct infringement and restrict its suit to liability stemming from that specific instance"). In no expert report, discovery response, or pleading has SRI identified *any* specific Symantec customer that it contends has combined an accused SGS Product with an accused Manager Product so as to directly infringe an asserted method or apparatus claim. Even in its answering brief, SRI could not identify any Symantec customer that has combined the accused SGS and Manager Products in the allegedly-infringing manner.[58]

Nor can SRI establish under the second *Dynacore* approach that Symantec's customers

---

[56] Res. Br. at 8 [D.I. 333].

[57] *Id.* at 10.

[58] The best evidence SRI could muster is an email mentioning a customer's plans for a possible future deployment of SGS and Manager Products—in Taiwan. Even if this document established that these products had actually been combined, which it does not, such a

*necessarily* combine an accused SGS Product with an accused Manager Product in the allegedly-infringing manner whenever they deploy and use an SGS Product. To the contrary, it is undisputed that the accused SGS and Manager Products are separate products which can be deployed and used apart from one another.[59] In fact, most customers that have purchased an accused SGS Product have not purchased any accused Manager Product.[60] Moreover, deposition evidence in this case suggests that customers do not always deploy the accused products they have purchased from Symantec.[61]

SRI attempts to salvage its claims from *Dynacore* by pointing to the "admissions" of Symantec employee Paul Agbabian that one specific customer REDACTED deployed a Manager Product together with at least one accused *ManHunt* Product.[62] But even SRI admits that this evidence "does not directly show the combination of the manager products with Symantec's *SGS* sensors"—a completely separate class of products.[63]

Unable to meet the *Dynacore* standard for proving indirect infringement, SRI resorts to mischaracterizations and inapposite case law. For example, SRI claims that "Symantec's argument improperly attempts to import an additional limitation into the apparatus claims: a method step requiring 'using' the SGS network monitors with the manager products."[64] But this is not accurate. SRI's failure of proof is not that it has failed to demonstrate any actual use of an apparatus claim limitation that is described as merely being "programmable" or "capable"

---

combination wholly outside the United States would not constitute direct infringement of a United States patent under the express text of 35 U.S.C. § 271(a).

[59] *See* Open Br. at 6, 29 [D.I. 287]; Res. Br. at 7-11 [D.I. 333].

[60] *See* 07/10/06 Grewal Decl., Ex. C (identifying customers who have purchased the accused SGS and/or Manager Products).

[61] *See* Lynch Tr. 27:17-28:17 [07/10/06 Grewal Decl., Ex. D].

[62] Res. Br. at 9 [D.I. 333].

[63] *Id.* (emphasis added).

[64] *Id.* at 7.

of infringing use, *cf. Cyrix Corp. v. Intel Corp.*, 846 F. Supp. 2d 522, 536 (E.D. Tex. 1994) (citing *Intel Corp. v. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991)), but rather that SRI has failed to demonstrate even one instance in which "the claimed combination has been *assembled* and is used or is available for use." *Lemelson v. United States*, 752 F.2d 1538, 1548 (Fed. Cir. 1985) (emphasis added); *see also Fantasy Sports Props., Inc. v. SportsLine.com, Inc.*, 287 F.3d 1108, 1117-18 (Fed. Cir. 2002) (stressing the "programmable" language of the claim in *Intel* "does not stand for the proposition . . . that infringement may be based upon a finding that an accused product is merely capable of being modified in a manner that infringes the claims of a patent"); *High Tech. Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555-56 (Fed. Cir. 1995) (distinguishing *Intel* based on permissive language of the claims at issue in that case).

SRI contends that even if it has no direct evidence of any combination of the SGS and Manager Products by customers, it can prove such a combination by "circumstantial evidence." The problem for SRI is that it has discovered no evidence—circumstantial or otherwise. Rather, SRI relies on the naked contention that one of Symantec's customers surely must combine the accused SGS and Manager Products in an infringing manner, even though no customer *necessarily* must combine these products to use them as intended, and even though there is no evidence that any customer has *in fact* ever directly infringed the claims in this manner. SRI's "proof" of direct infringement by a Symantec customer amounts to an unsupported plea that "Symantec customers directly infringe the method clams" because "[a]fter all, that is why they buy these Symantec products."[65] But SRI's unsubstantiated assurance is no substitute for evidence, and does not establish a genuine issue of fact sufficient to avoid summary judgment.

---

[65] *Id.* at 10.

Because there is insufficient proof as a matter of law of direct infringement by any third party's combination of the accused SGS and Manager Products, the Court should enter summary judgment that Symantec is not liable for indirect infringement of the '212, '203, or '615 claims based on its SGS and Manager Product activities.

**D.    The Parties Agree that Symantec Does Not Infringe the '212, '203, and '615 Patents Under Defendants' Proposed Constructions for "Network Monitor" and "Hierarchical Monitor."**

In its opening brief, Symantec showed how, under Defendants' proposed constructions for "network monitor" and "hierarchical monitor," the following undisputed material facts establish non-infringement of the '212, '203, and '615 patents as a matter of law:

- The ManHunt Products' Analysis Framework does not share the same generic code base as the ManHunt Products' sensors.
- The Manager Products do not share the same generic code base as the SGS Products.[66]

In its answering brief, SRI did not contest either of these undisputed material facts. Nor did SRI contest that summary judgment of non-infringement is warranted for these claims under Defendants' proposed construction.[67] Therefore, if the Court adopts Defendants' proposed constructions for "network monitor" and "hierarchical monitor," summary judgment that Symantec does not infringe any asserted claims of the '212, '203 and '615 patents should be entered.

**III.    CONCLUSION**

For the reasons explained in Symantec's opening brief and above, the Court should grant summary judgment that Symantec does not infringe any of SRI's asserted claims.

---

[66] *See* Open Br. at 30-31 [D.I. 287].

[67] *See* Res. Br. at 2-3 [D.I. 333].

Dated: July 10, 2006

By: _____ */s/ Mary B. Matterer* _____
     Richard K. Herrmann (#405)
     Mary B. Matterer (#2696)
     Morris, James, Hitchens & Williams, LLP
     222 Delaware Avenue, 10th Floor
     P.O. Box 2306
     Wilmington, DE 19899-2306
     Tel: (302) 888-6800
     Fax: (302) 571-1751

     *Attorneys for Defendant and Counterclaim-*
     *Plaintiff Symantec Corporation*

OF COUNSEL:

Lloyd R. Day, Jr. (*pro hac vice*)
Robert M. Galvin (*pro hac vice*)
Paul S. Grewal (*pro hac vice*)
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014
Tel: (408) 873-0110
Fax: (408) 873-0220

Michael J. Schallop (*pro hac vice*)
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA 95014
Tel: (408) 517-8000
Fax: (408) 517-8121

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2006, I electronically filed the foregoing document, **REDACTED REPLY BRIEF IN SUPPORT OF SYMANTEC'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT,** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

John F. Horvath, Esq.
Fish & Richardson, P.C.
919 North Market Street, Suite 1100
Wilmington, DE 19801

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 19th day of July, 2006, the foregoing document was served via email on the following non-registered participants:

Howard G. Pollack, Esq.
Michael J. Curley, Esq.
Fish & Richardson
500 Arguello Street, Suite 500
Redwood City, CA 94063
650.839.5070

Holmes Hawkins, III, Esq.
King & Spalding
191 Peachtree St.
Atlanta, GA 30303
404.572.4600

Theresa Moehlman, Esq.
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
212.556.2100

_____*/s/ Mary B. Matterer*_____
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com
*Counsel for Symantec Corporation*