IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation,<br><br>    Plaintiff and<br>    Counterclaim-Defendant,<br><br>v.<br><br>INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, and SYMANTEC CORPORATION, a Delaware corporation,<br><br>    Defendants and<br>    Counterclaim-Plaintiffs. | C. A. No. 04-1199 (SLR)<br><br>**PUBLIC VERSION** |

**SRI INTERNATIONAL, INC.'S OPPOSITION TO ISS'S MOTION TO PRECLUDE SRI, BASED ON ITS CONDUCT IN DISCOVERY, FROM DISPUTING THE EVIDENCE ESTABLISHING THAT THE *LIVE TRAFFIC* PAPER IS A 102(b) INVALIDATING REFERENCE**

Dated: July 17, 2006

FISH & RICHARDSON P.C.

John F. Horvath (#4557)
Kyle Wagner Compton (#4693)
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Howard G. Pollack
Katherine D. Prescott
500 Arguello St., Ste. 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff and Counterclaim Defendant
SRI INTERNATIONAL, INC.

1

**TABLE OF CONTENTS**

|     |     | PAGE |
| --- | --- | --- |
| I.  | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 1 |
| III.| ARGUMENT | 4 |
|     | A. SRI fully prepared a 30(b)(6) designee to testify to the date and circumstances of the posting of *Live Traffic* on its website | 4 |
|     | B. SRI's 30(b)(6) witness testified as to the dates and circumstances of the posting of *Live Traffic* on its website | 6 |
|     | C. SRI's interrogatory responses set forth its contentions that *Live Traffic* is not prior art and that, even if it were, it would not invalidate all the claims at issue | 7 |
|     | D. The evidence does not establish that *Live Traffic* was posted on SRI's website prior to November 9, 1997 | 8 |
| IV. | CONCLUSION | 9 |

## I. INTRODUCTION

SRI and Phillip Porras fully complied with their discovery obligations in this case. With respect to the current motion, during fact discovery, SRI provided all documents and information in its possession, custody and control concerning the date on which *Live Traffic*[1] was first posted on SRI's internet site. This evidence, as well as additional evidence from the Internet Archive that has been available to ISS since the beginning of this case, conclusively establishes that the *Live Traffic* paper was first posted on the Internet on November 10, 1997 – less than one year before the priority date for the patents-in-suit. Accordingly, the *Live Traffic* paper is not prior art to those patents.

Knowing that the Defendants' contention – that the *Live Traffic* paper was posted in August 1997 – is, on the merits, conclusively false, ISS seeks instead to "preclude" SRI from "challenging" what ISS and Symantec have claimed is "evidence" of an earlier posting. In effect, ISS seeks the sanction of issue preclusion on the critical legal issue of the prior art status of the *Live Traffic* paper. But despite ISS's pile of self-serving attorney letters, the facts show without doubt that SRI fully complied with its discovery obligations. Indeed, in view of Defendants' own conduct during discovery, ISS's present motion is frivolous and has been brought in a futile attempt to win by procedural gamesmanship that which Defendants cannot win on the merits.

## II. FACTUAL BACKGROUND

During discovery, the Defendants requested documents and testimony concerning when various materials were first posted to SRI's publicly-accessible web site, including specifically *Live Traffic*. In response, SRI provided the entire archive file of its web site for the relevant time period, to the extent it still existed. SRI also provided all the documents, including electronic mail, from the members of the EMERALD project team,

---

[1] P. Porras and A. Valdes, "*Live Traffic Analysis of TCP/IP Gateways,*" Network and Distributed Systems Security Symposium, March 1998 ("*Live Traffic*").

including the inventors of the patents-in-suit and *Live Traffic* authors, Phillip Porras and Al Valdes. This material amounted to over half a million pages.

In response to deposition notice topics pursuant to Rule 30(b)(6), and subject to objections on the scope and form of such request, SRI designated Mr. Porras to provide information regarding SRI's procedures and posting of material concerning the EMERALD project on SRI's web site during the relevant time frame. [Prescott Decl.[2] Exs. A-C]. As he explained in deposition, Mr. Porras was the individual who wrote the paper in question and was the person responsible for posting information about SRI's EMERALD project on the SRI web site during the relevant time frame. [Ex. D at 20:19-22; 112:18-23; 119:4-7]. To supplement Mr. Porras' personal recollections, SRI conducted an electronic search of its internal electronic archives of the web site. [Ex. D at 25:21-27:5]. SRI also reviewed its contract files associated with the government contracts to which EMERALD related. [Ex. D at 62:8-63:1; 110:13-17; Compton Reply Decl.[3] Ex. E].

In addition to and before being deposed as a 30(b)(6) witness, Mr. Porras was also deposed for two 7-hour days as a percipient fact witness. Mr. Porras spent many hours reviewing documents prior to his initial deposition on March 9, 2006. [Ex. E at 25:2-27:6]. He also spent two full days in meetings with SRI's outside counsel and SRI's Director of Intellectual Property, David Stringer-Calvert, who coordinated SRI's document collection. [Ex. E at 25:2-27:6; 31:21-33:14]. Subsequent to Mr. Porras' two-day individual deposition – in which Defendants chose not to show him any documents about *Live Traffic's* posting – and in preparation for his 30(b)(6) deposition, Mr. Porras

---

[2] Declaration of Katherine D. Prescott in Support of SRI's Opposition to ISS's Motion to Preclude SRI, Based on its Conduct in Discovery, From Disputing the Evidence Establishing That the *Live Traffic* Paper is a 102(b) Invalidating Reference (filed contemporaneously). Unless otherwise specified all referenced exhibits are attached to the Prescott Declaration.

[3] Declaration of Kyle Wagner Compton in Support of SRI's Reply on its Motion for Partial Summary Judgment That the Live Traffic Article is Not a Section 102(b) Printed Publication. [D.I. 368].

2

re-reviewed some of the material he had previously reviewed in preparation for his individual deposition, and spent an additional full day meeting with outside counsel and SRI legal staff. [Ex. D at 11:22-12:1; 17:25-18:14]. During this 30(b)(6)-specific preparation, Mr. Porras was informed of the electronic searching done by SRI personnel of the web site archives and that the result of the search failed to show any *Live Traffic* posting before November 9, 1997 (the date set out in Defendants' 30(b)(6) Topic No. 30). [Ex. D at 25:21-26:5; 113:18-22; Ex. B]. During this preparation, Mr. Porras also reviewed documents from SRI's contract file specifically regarding *Live Traffic's* posting – one of which expressly stated that the first date *Live Traffic* was posted was November 10, 1997. [Ex. D at 62:8-63:1; 110:13-17; Compton Reply Decl. Ex. E].

With regard to SRI's "policies" and "procedures," Mr. Porras testified that he was the individual responsible for posting material on the web related to EMERALD as well as the "procedures" for such postings. [Ex. D at 20:19-22; 112:18-23; 119:4-7]. Mr. Porras further testified that, his own personal practice was not to post on a publicly accessible site, papers that were under submission for publication. [Ex. D at 103:24-104:13]. Mr. Porras confirmed that he did send the draft *Live Traffic* paper to the review committee, but such submissions are private. [Ex. D at 103:24-104:2; 104:7-12; 110:22-111:20]. When confronted with Defendants' "evidence", *i.e.*, the single page document listing "available downloads" as of August 25, 1997, Mr. Porras admitted he did not recollect that document and had not seen it during his preparation. [Ex. D at 111:21-112:8, 113:3-6]. Mr. Porras, however, also testified that, based on his own personal practice at the time and today, it would be "highly unlikely" that the full version of the draft paper under submission would have been posted in August 1997[4]:

---

[4] Defendants seek in their motion to twist Mr. Porras' words. While Mr. Porras testified that the version of the paper which his email suggests he temporarily posted to an SRI *ftp* cite *for the review committee* would be essentially the same content as the paper that was eventually published, he did not equate that ftp version with the mention in the "downloads" page for the web site. On that question, he repeatedly said it was "highly unlikely" that the complete version would have been posted in August 1997.

3

**REDACTED**

[Ex. D at 103:16-104:2 (objections omitted; emphasis added); *see also* Ex. D at 104:14-106:3]. As explained in SRI's briefing on the other two motions before the Court on this issue[5], the Internet Archive relied upon by Defendants establishes that, in fact, the link shown in the downloads page for August 25, 1997 led to an abstract and introduction to the article and not the full article itself. [Compton Reply Decl. Ex. A; Reply Br. at 6]. Indeed, that August 1, 1997 abstract expressly states that the full article will not be available until November 1997, a fact confirmed by Mr. Porras' own email that Defendants chose *not* to show to him during his 3-day deposition. [Compton Reply Decl. Exs. A, D]. Mr. Porras' testimony is thus entirely consistent with the documentary record. That he refused to agree with Defendants' self-serving and demonstrably false version of events is no reason to exclude the evidence.

### III. ARGUMENT

**A. SRI fully prepared a 30(b)(6) designee to testify to the date and circumstances of the posting of *Live Traffic* on its website**

Defendants sought testimony from SRI as to its knowledge of the "dates and circumstances" of the first *Live Traffic* posting. SRI designated Mr. Porras, an author of the paper and the individual responsible for web postings related to the EMERALD project. [Ex. D at 19:21-22; 112:20-23; 119:4-6]. In preparation for that testimony and otherwise, Mr. Porras reviewed thousands of pages of documents and spent three full

---

[5] *See generally*, SRI's Opening Brief In Support Of Its Motion For Partial Summary Judgment That The Live Traffic Article Is Not A Section 102(B) Printed Publication ("Opening Br.") [D.I. 271]; SRI's Response to Defendants' Joint Motion For Summary Judgment Of Invalidity Pursuant To 35 U.S.C. §§ 102 & 103 ("Response Br.") [D.I. 341] at 2-3, 17-21; and SRI's Reply in Support Of Its Motion For Partial Summary Judgment That The Live Traffic Article Is Not A Section 102(B) Printed Publication ("Reply Br.") [D.I. 367].

days meeting with SRI's counsel and SRI legal staff. [Ex. E at 25:2-27:6; 31:21-33:14; Ex. D at 11:24-12:1].[6] Mr. Porras spoke with Dr. Stringer-Calvert about SRI's investigation into when *Live Traffic* was first posted on SRI's website and he reviewed the contract file confirming that *Live Traffic* was first disclosed on November 10, 1997. [Ex. D at 11:24-12:1; 17:25-18:22; 25:21-27:5; 62:8-63:1; 110:13-17; Compton Reply Decl. Ex. E]. There was no need for Mr. Porras to consult additional SRI employees, as he consulted with the two best sources of information – himself, the person who posted the document, and Dr. Stringer-Calvert, the person who led the investigation as to when it was posted. Mr. Porras also consulted the best documentary evidence available to SRI – the *Live Traffic* paper itself[7] and the file covering the relevant time period from the government contract to which the patents-in-suit relate,

**REDACTED** [Ex. D at 17:25-18:22; 21:23-22:8; 25:24-27:5; 62:8-63:1; 110:13-17; Compton Reply Decl. Ex. E]. Thus contrary to ISS's allegations, SRI fully prepared Mr. Porras to testify as to the dates when SRI first posted *Live Traffic* on its website.

ISS criticizes Mr. Porras for having not reviewed two particular pages[8] of the more than three quarters of a million pages that SRI produced in total.[9] Unlike the

---

[6] In its characterization of Mr. Porras' preparation, ISS completely ignores the substantial preparation Mr. Porras had undertaken for his deposition as an individual witness, all of which, plus two days of testimony, occurred prior to the 30(b)(6)-specific preparation ISS "describes" and complains about.

[7] Defendants specifically identified the document marked as "SYM-P-0068844-SYM-P-00688651" as the document on which they sought testimony. [Ex. A; Brown Declaration (D.I. 301), Ex. I]. On its face this document is dated November 10, 1997 and was printed on October 22, 2004.

[8] *See* Exhibits L and M to the Moore Declaration in Support of ISS's Motion to Preclude SRI, Based on its Conduct in Discovery, From Disputing the Evidence Establishing That the *Live Traffic* Paper is a 102(b) Invalidating Reference [D.I. 366]. If Defendants desired testimony as to these particular exhibits, they could have easily identified them by production number in advance of the 30(b)(6) deposition, just as they did with *Live Traffic*, or showed them to Mr. Porras during his individual deposition sessions earlier in the discovery process. Instead, Defendants' surprised SRI and Mr. Porras with them during the third day he was deposed, giving SRI no time to investigate them or their relevance to the topic at hand – which turned out to be zero.

contract file which Mr. Porras did consult as part of his preparation, however, these two pages do not confirm when *Live Traffic* was first posted to the web. [*See generally*, Opening, Response, and Reply Briefs]. Thus, it is irrelevant whether Mr. Porras reviewed these two pages as part of his preparation. Regardless, Defendants had the opportunity to show and in fact did show Mr. Porras these pages during his deposition. [Ex. D at 110:22-122:1]. The documents did not affect Mr. Porras' memory, do not change the other evidence of which he was aware, and do not affect his ultimate testimony as to the date when *Live Traffic* was first posted to the web.

### B. SRI's 30(b)(6) witness testified as to the dates and circumstances of the posting of *Live Traffic* on its website

ISS asserts that "Mr. Porras could not confirm when *Live Traffic* was posted to the SRI websites." [ISS Br.[10] at 8]. This is incorrect. ISS cites one portion of Mr. Porras' testimony where he explains that he could not remember, amongst the many other details and dates on which Defendants sought testimony, the exact date of *Live Traffic*'s posting, only that it would "have been after we had a final camera-ready version of it" and that he would have to refresh his memory to offer a more precise date. [ISS Br. at 8; Ex. D at 20:19-21:4]. ISS completely ignores that Mr. Porras immediately did refresh his memory and then testified that "it was November 10th [1997] that we believe the first posting [to www.csl.sri.com] occurred." [Ex. D at 62:8-24]. The fact that ISS does not like the substance of SRI's testimony regarding the date and circumstances of the posting of *Live Traffic* does not mean that Mr. Porras was unprepared.

---

[9] Defendants' designees did not review or recognize all the documents related to the topics on which they had been designated. [*See e.g.*, Ex. F at 10:16-11:8; 33:12-18; 41:7-13; 49:22-50:5; 88:13-21; 92:19-93:2; 101:4-16; 104:3-20].

[10] ISS's Opening Brief In Support Of Its Motion To Preclude SRI, Based On SRI's Conduct During Discovery, From Disputing The Evidence Establishing That The *Live Traffic* Paper Is A §102(b) Invalidating Reference. [D.I. 365].

ISS also alleges that after Mr. Porras' deposition it complained[11] that SRI did not fulfill its 30(b)(6) obligations with respect to *Live Traffic* and that ISS would seek preclusion. [ISS Br. at 11]. That is not accurate. In reality, ISS stated:

> With respect to Topic 6 of Defendants' December 19 Rule 30(b)(6) Notice, *to the extent* Mr. Porras was unable to identify the dates and circumstances of when SRI first made the listed publications available on its website, ISS will seek preclusion of any rebuttal by SRI to evidence indicating the public availability of those references as of a certain date.

[Moore Decl. Ex. P (emphasis added)]. As discussed above, Mr. Porras was able to and did identify the dates and circumstances of *Live Traffic*'s availability on SRI's website thus ISS's comment does not apply to *Live Traffic*.

### C. SRI's interrogatory responses set forth its contentions that *Live Traffic* is not prior art and that, even if it were, it would not invalidate all the claims at issue

ISS's November 2005 invalidity contentions alleged invalidity based on a version of *Live Traffic* dated November 10, 1997. [Moore Decl. Ex. U at 1 of *Live Traffic* Appendix]. In response, SRI set forth its contention that *Live Traffic* was not prior art. [Moore Decl. Ex. V at 8]. Nothing more was necessary. Regardless of disclosure, unless a reference is prior art, it cannot invalidate. Even after the submission of ISS's expert report with citation to excerpts of Mr. Porras' testimony, nothing more was necessary because Mr. Porras' testimony did not show that *Live Traffic* was publicly accessible prior to November 9, 1997, such that it could arguably be prior art. [Moore Decl Ex. W at 32; Ex. D at 111, 120-122]. Mr. Porras' testimony, in fact, established otherwise.

---

[11] ISS also repeatedly complains that Mr. Porras was not deposed in his 30(b)(6) capacity until the second to last day of fact discovery. [ISS Br. at 1, 6]. While this complaint is irrelevant to this motion, the timing of Mr. Porras' 30(b)(6) deposition was Defendants' choice. The parties worked cooperatively to schedule three days of deposition of Mr. Porras – March 9, 10, and 30. SRI specifically suggested that Defendants begin with deposition of Mr. Porras in his 30(b)(6) capacity [Ex. I], but Defendants elected to wait until March 30 to explicitly cover the 30(b)(6) topics. Also, Defendants indicated that they would seek further depositions of a prepared witness after the close of discovery if they were not satisfied with Mr. Porras' level of preparation on the topics on which he was designated. [Ex. J]. That Defendants did not seek additional depositions reflects their true belief that Mr. Porras was an adequate 30(b)(6) designee.

SRI also supplemented its contentions to incorporate the expert report of Dr. George Kesidis. In that report, Dr. Kesidis did not opine on the issue of whether *Live Traffic* was prior art, because expert testimony is not necessary or appropriate to resolution of that issue.[12] Instead, assuming that *Live Traffic* was determined to be prior art, Dr. Kesidis opined that *Live Traffic* did not invalidate certain dependent claims of the patents-in-suit, including those requiring APIs for encapsulation of monitor functions and integration of third-party tools. [Ex. M at ¶44]. Throughout discovery, SRI's contentions regarding *Live Traffic* have been consistent and clear -- *Live Traffic* is not prior art and therefore cannot invalidate any claims of the patents-in-suit. SRI additionally contends that, if *Live Traffic* is prior art, the API features of certain dependent claims are not disclosed. SRI's interrogatory responses were supplemented in a timely manner to reflect this contention.

### D. The evidence does not establish that *Live Traffic* was posted on SRI's website prior to November 9, 1997

As already detailed in SRI's briefing on the other two motions before the Court on this issue, all the evidence -- the author's testimony, contemporaneous emails, SRI documents, and archived web materials -- consistently shows that *Live Traffic* was not publicly available until November 10, 1997, after it had been accepted for publication and the camera-ready version had been finalized. [*See generally*, Opening, Response, and Reply Briefs]. ISS correctly points out that "the one [version of *Live Traffic*] submitted for publication, the html version found by archive.org [dated November 10, 1997] and the version published in the Symposium [in March 1998]" all had essentially the same content. [ISS Br. at 11]. However, this observation is irrelevant to the question of what content, if any, was publicly available in August 1997. Also contrary to ISS's characterization [ISS Br. at 4, 10], Mr. Porras did not testify that anything titled "*Live Traffic*," let alone something with the same content as the Symposium version, was

---

[12] Nor did Symantec's expert, Todd Heberlein, take a position on whether Live Traffic was prior art. [Ex. K ¶261; Ex. L at 186:25-187:16].

8

posted on the web in August 1997 [Ex. D at 62:8-63:1, 103:8-104:23; 119:24-119:3] and the evidence shows otherwise. The evidence conclusively establishes that a full copy of *Live Traffic* was not publicly available until November 10, 1997 and, therefore, it is not prior art to the patents-in-suit. [*See* generally Opening, Response, and Reply Briefs].

## IV. CONCLUSION

For the foregoing reasons, SRI respectfully requests that the Court deny ISS's motion to preclude SRI from disputing the evidence establishing that the Live Traffic paper is a 102(b) invalidating reference.

Dated: July 17, 2006

FISH & RICHARDSON P.C.

By: _____
John H. Horvath (#4557)
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Howard G. Pollack (CA Bar No. 162897)
Katherine D. Prescott (CA Bar No. 215496)
FISH & RICHARDSON P.C.
500 Arguello St., Ste. 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Plaintiff/Counterclaim Defendant
SRI INTERNATIONAL, INC.

SRI 717 brief.doc

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2006, I electronically filed the **PUBLIC VERSION of SRI INTERNATIONAL, INC.'S OPPOSITION TO ISS' MOTION TO PRECLUDE SRI, BASED ON ITS CONDUCT IN DISCOVERY, FROM DISPUTING THE EVIDENCE ESTABLISHING THAT THE *LIVE TRAFFIC* PAPER IS A 102(b) INVALIDATING REFERENCE** with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel. In addition, the document will be served by hand on Delaware counsel as follows:

| | |
|---|---|
| Richard L. Horwitz<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>1313 North Market Street, 6th Floor<br>P.O. Box 951<br>Wilmington, DE 19899 | Attorneys for Defendant-Counterclaimant<br>Internet Security Systems, Inc., a Delaware corporation, and Internet Security Systems, Inc., a Georgia corporation |
| Richard K. Herrmann<br>Morris James Hitchens & Williams<br>PNC Bank Center<br>222 Delaware Avenue, 10th Floor<br>P.O. Box 2306<br>Wilmington, DE 19899-2306 | Attorneys for Defendant-Counterclaimant<br>Symantec Corporation |

I hereby certify that on July 24, 2006, I have sent the foregoing document by Federal Express overnight delivery to the following non-registered participants:

| | |
|---|---|
| Holmes J. Hawkins, III<br>Natasha Horne Moffitt<br>King & Spalding LLP<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309 | Attorneys for Defendant-Counterclaimant<br>Internet Security Systems, Inc., a Delaware corporation, and Internet Security Systems, Inc., a Georgia corporation |

| | |
|---|---|
| Paul S. Grewal<br>Robert M. Galvin.<br>Lloyd R. Day, Jr.<br>Day Casebeer Madrid & Batchelder, LLP<br>20300 Stevens Creek Boulevard, Suite 400<br>Cupertino, CA 95014 | Attorneys for Defendant-<br>Counterclaimant<br>Symantec Corporation |
| Theresa A. Moehlman<br>Bhavana Joneja<br>King & Spalding LLP<br>1185 Avenue of the Americas<br>New York, NY 10036 | Defendant-Counterclaimant<br>Internet Security Systems, Inc., a<br>Delaware Corporation, and Internet<br>Security Systems, Inc., a Georgia<br>Corporation |

/s/ *John F. Horvath*
John F. Horvath

SRI 724 brief cos.doc