**EXHIBIT 6**

**DEFENDANTS' STATEMENT OF ISSUES OF LAW REMAINING TO BE
LITIGATED**

Symantec and ISS ("Defendants") submit the following issues of law remaining to be

litigated.  Should the Court determine that any issue identified in this list is more properly

considered an issue of fact, Defendants request that it be so considered.  To the extent that

Defendant's respective statements of issues of fact contain issues of law, those issues are

incorporated herein by reference.  Defendants reserve the right to revise this list in light of the

Court's decisions on claim construction and pending motions.  Defendants also reserve the

right to modify or supplement this Statement to the extent necessary to fairly respond to any

new issues that SRI raises in its Statement of Issues of Law.

This Statement of Law addresses only the liability phase.  Damages and willfulness

have been bifurcated by the Court and will be addressed separately.

Issues of claim construction have already been briefed and heard by the Court.

**I.      STANDING TO SUE AS OWNER OF THE PATENTS-IN-SUIT**

"Whether a party has standing to sue in federal court is a question of federal law."

*Paradise Creations, Inc. v. U V Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003).  The party

invoking the jurisdiction of the federal court has the burden of proving it has standing.  *See*

*Ortho Pharm. Corp. v. Genetics Inst.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995) ("[I]t is well

established . . . that before a federal court can consider the merits of a legal claim, the person

seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.")

(quoting *Witmore v. Arkansas*, 495 U.S. 149, 154 (1990)).  In a patent infringement suit, the

plaintiff bears the burden of proving that it owned the patents-in-suit when it filed the

complaint. *Depuy, Inc. v. Zimmer Holdings, Inc.*, 384 F. Supp. 2d 1237, 1238 (N.D. Ill. 2005); *Pinpoint, Inc. v. Amazon.com, Inc.*, 347 F. Supp. 2d 579, 581 (N.D. Ill. 2004).

The United States has title to all inventions of a contractor conceived or first actually reduced to practice in the performance of work under a funding agreement. *See* 35 U.S.C. §§ 201-202; *TM Patents, L.P. v. International Business Machines Corp.*, 121 F. Supp. 2d 349, 368 (S.D.N.Y. 2000). A contractor conducting research under a government funding agreement can, under 35 U.S.C. § 202, elect to obtain title to any inventions developed under or derived from those agreements. *See TM Patents*, 121 F. Supp. 2d at 368. However, the contractor must notify the Government of inventions made under the contract within a "reasonable time." *See id.*; *see also* 35 U.S.C. § 202(c)(1). The contractor must also make a written election within a certain amount of time concerning whether the contractor will retain title to a subject invention. *See* 35 U.S.C. § 202(c)(2) (stating that the written election must be made "within two years after disclosure to the Federal agency (or such additional time as may be approved by the Federal agency)"). Failure to comply with the conditions of section 202 may result in the Government acquiring title. *See TM Patents*, 121 F. Supp. 2d. at 368; *see also* 35 U.S.C. § 202(c).

In order to retain title to the inventions, the contractor (or the inventor, if the contractor does not elect to retain title) must also comply with the requirements of the Federal Acquisition Regulations. *See* 48 C.F.R. § 52.227-11. These requirements include that the contractor execute or have executed and promptly deliver to the Federal agency all instruments necessary to establish or confirm the rights the Government has throughout the world in the subject inventions to which the contractor elects to retain title. *See* 48 C.F.R. § 52.227-11(f)(1).

## II.    INVALIDITY OF THE SRI PATENTS-IN-SUIT

A patent is presumed valid, and the challenging party must prove invalidity by clear and convincing evidence.  35 U.S.C. § 282; *Iron Grip Barbell Co., Inc. v. USA Sports, Inc*., 392 F.3d 1317, 1320 (Fed. Cir. 2004).  The presumption of section 282, however, is only "a procedural device which places on [the challenger] the initial burden of going forward to establish a prima facie case on that issue."  *Cable Elec. Prods., Inc. v. Genmark Inc.*, 770 F.2d 1015, 1022 (Fed. Cir. 1985).  When a party presents evidence establishing a prima facie case of invalidity, the patentee must come forward with evidence to counter the challenge to the presumption of section 282.  *Id.*

Where the reference has previously been considered by a U.S. Patent and Trademark Office Examiner, an element of deference is given to the decision of the examiner.  *American Hoist & Derrick Co. v. Sowa & Sons, Inc*., 725 F.2d 1350, 1358-59 (Fed. Cir. 1984).  However, the law recognizes that there are references previously considered by an Examiner which contain "disclosure so poignantly impacting upon patentability as to render virtually irrelevant the fact of its consideration by the examiner."  *Lear Siegler, Inc. v. Aeroquip Corp*., 733 F.2d 881, 886 n.4 (Fed. Cir. 1984).

### A.    Conception and reduction to practice

In order to antedate (or establish priority of) an invention prior to the filing date of the application from which the patents-in-suit claim priority, SRI must show either an earlier reduction to practice, or an earlier conception followed by a diligent reduction to practice.  *See Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993).  Conception and reduction to practice are questions of law, based on related factual findings.  *Hybritech Inc. v. Monoclonal*

*Antibodies, Inc.,* 802 F.2d 1367, 1376 (Fed. Cir. 1986).  Conception and reduction to practice must be proven by clear and convincing evidence.  *Price*, 988 F.2d at 1190-91.

Conception requires proof that the inventor formed "a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice," and that the idea was "so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (citations omitted). "Conception must be proved by corroborating evidence which shows that the inventor disclosed to others his 'complete thought expressed in such clear terms as to enable those skilled in the art' to make the invention." *Kridl v. McCormick*, 105 F.3d 1446, 1449-50 (Fed. Cir. 1997).  Where a party seeks to show conception though oral testimony of an inventor, it must produce independent evidence corroborating that testimony.  *Price*, 988 F.2d at 1195. Such evidence is to be evaluated under a rule of reason.  *Id.*

To prove actual reduction to practice, "an inventor must establish that he 'actually prepared the composition and knew it would work.'" *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 592 (Fed. Cir. 1997) (citations omitted).  The inventor must also have "contemporaneous recognition and appreciation of the invention represented" by the claims. *Estee Lauder Inc.*, 129 F.3d at 593 (citations omitted).

**B.     Anticipation**

35 U.S.C. § 102 states in pertinent part:

A person shall be entitled to a patent unless-

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

…

(e) the invention was described in … a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent[1]…

Anticipation is a question of fact, *see In re King*, 801 F.2d 1324, 1326 (Fed. Cir. 1986). "A patent is invalid for anticipation when the same device or method, having all the elements contained in the claim limitations, is described in a single prior art reference." *Crown Operations Int'l, Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002). "If a device was 'known or used by others' in this country before the date of invention or if it was 'in public use' in this country more than one year before the date of application, it qualifies as prior art." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997). A public use challenge under 35 U.S.C. §§ 102(a) or (b) requires corroboration of witness testimony. *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999); *see also In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004); *Novo Nordisk Pharm., Inc. v. Bio-Tech. Gen Corp.,* 424 F.3d 1347, 1355 (Fed. Cir. 2005); *In re Baxter Travenol Labs.*, 952 F.2d 388, 390 (Fed. Cir. 1991).

"A reference is a 'printed publication' within the meaning of section 102(b) if it was 'available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, [could] locate it." *American Stock Exchange, LLC v. Mopex Inc.*, 250 F. Supp. 2d 323, 328 (S.D.N.Y. 2003) (citing *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981). "If accessibility is proved, there is no requirement to show that particular members of the public actually received the information." *Constant v. Advanced Micro-*

---

[1] Recent amendments to 35 U.S.C. § 102(e) do not affect the issues in this case.

*Devices, Inc.,* 848 F.2d 1560, 1569 (Fed. Cir. 1988). A reference that is only temporarily displayed, and is not distributed or indexed, may still constitute a "printed publication." *See In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004). "The § 102 publication bar is a legal determination based on underlying fact issues, and therefore must be approached on a case-by-case basis." *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986).

A prior art reference may anticipate without expressly disclosing a particular limitation if that limitation is inherently present in the reference. *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268-69 (Fed. Cir. 1991). The legal standard for inherency is met when the prior art reference describes and enables an embodiment which necessarily includes the claimed subject matter. *See Akamai Techs. Inc. v. Cable & Wireless Internet Servs. Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003). "[A]nticipation does not require actual performance of suggestions in a disclosure. Rather, anticipation only requires that those suggestions be enabling to one of skill in the art." *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001).

In order to anticipate, a prior art disclosure must enable one of skill in the art to practice the invention without undue experimentation. *See Novo Nordisk Pharm., Inc. v. Bio-Tech Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005). Whether a prior art reference is enabled is a question of law based on underlying factual findings. *Id*. at 1355. The patentee bears the burden to show that a prior art reference is not enabled. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003); *Novo Nordisk Pharm., Inc. v. Bio-Tech Gen. Corp.*, 2004 U.S. Dist. LEXIS 14960, at *73 (D. Del. 2004).

The Federal Circuit has explicitly noted that the public use or on sale inquiry does not require an additional enablement finding. *In re Epstein*, 32 F.3d 1559, 1567-68 (Fed. Cir. 1994).

### C.    Obviousness

35 U.S.C. § 103 states in pertinent part:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made.

A patent claim is invalid for obviousness under 35 U.S.C. § 103 if the differences between it and the prior art are such that the claimed subject matter as a whole would have been obvious to one of ordinary skill in the art at the time the invention was made. *See Union Carbide Plastics & Tech. Corp. v. Shell Oil Co*., 308 F.3d 1167, 1187 (Fed. Cir. 2002). "Whether a claimed invention is unpatentable as obvious under 35 U.S.C. § 103 is a question of law based on underlying findings of fact." *Okajima v. Bourdeau*, 261 F.3d 1350, 1354 (Fed. Cir. 2001) (citations omitted).  Those facts include:  (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicators of non-obviousness, more commonly termed secondary considerations. *See Graham* v. *John Deere Co.*, 383 U.S. 1, 17-18 (1966); *see also Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1348 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1379 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu Star, Inc.*, 950 F.2d 714 (Fed. Cir. 1991); *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999).

Obviousness may be shown either by a combination of references, or a modification of a single reference. *See Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576-77 (Fed. Cir. 1991). For the purpose of an obviousness inquiry, the hypothetical "person of ordinary skill in the art" is attributed "knowledge of all prior art in the field of the inventor's endeavor and of prior art solutions for a common problem even if outside that field." *In re Nilssen*, 851 F.2d 1401, 1403 (Fed. Cir. 1988).

Although the issue is currently under review by the Supreme Court, some Federal Circuit case law suggests that there must be a motivation to combine prior art references.[2] The standard is "whether a person of ordinary skill in the art, possessed with the understandings and knowledge reflected in the prior art, and motivated by the general problem facing the inventor, would have been led to make the combination recited in the claims." *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006). A suggestion or motivation to combine prior art references may be implicit, as well as explicit, in the prior art. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999). Such a suggestion or motivation to combine can also "derive solely from the existence of a teaching, which one of ordinary skill in the art would be presumed to know, and the use of that teaching to solve the same or similar problem which it addresses." *In re Oetiker*, 977 F.2d 1443, 1448 (Fed. Cir. 1992) (Nies, C.J., concurring). Obviousness can be found on the basis of a "problem [that] was within the general knowledge of those of ordinary skill in the art," even if the patent is not directed at "the identical problem

---

[2] *See KSR Int'l, Co. v. Teleflex, Inc.*, No. 04-1350 (Cert. Granted 6/26/06). Question Presented: Whether the Federal Circuit erred in holding that a claimed invention cannot be held "obvious," and thus unpatentable under 35 U.S.C. sec. 103(a), in the absence of some proven "teaching, suggestion or motivation" that would have led a person of ordinary skill in the art to combine the relevant prior art teachings in the manner claimed?

addressed in [the] prior art." *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1322-23 (Fed. Cir. 2005).

Objective considerations that relate to obviousness or nonobviousness of the subject matter of the asserted claims of the patents include (i) whether products practicing those claims were commercially successful and whether there is a nexus between the invention and any commercial success, (ii) whether there was any long felt need for the claimed invention, and whether the claimed invention satisfied that long felt need, (iii) whether the claimed invention was or was not praised by others in the field and (iv) whether the accused products were developed independently. *See Cross Medical Products,* 424 F.3d at 1322-23; *Ormco Corp. v. Align Tech., Inc.*, No-05-1426, 2006 U.S. App. LEXIS 22306, at *30-33 (Fed. Cir. Aug. 30, 2006). Objective indications are only relevant to obviousness if there is a logical connection, or nexus, between them and the specific invention covered by the patent claims. *Ormco Corp.,* 2006 U.S. LEXIS 22306 at *31. The existence of secondary considerations "does not control the obviousness determination." *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed. Cir. 1997).

### D.    Failure to Disclose The Best Mode

35 U.S.C. § 112 ¶ 1 states that "[t]he specification … shall set forth the best mode contemplated by the inventor of carrying out his invention." "Determining whether a patent fails to comply with the best mode requirement and is thus invalid involves two factual inquiries." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1064 (Fed. Cir. 1998). "First, it must be determined whether, at the time the patent application was filed, the inventor had a best mode of practicing the claimed invention." *United States Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996). "Second, if the inventor had a best

mode of practicing the claimed invention, it must be determined whether the specification adequately disclosed what the inventor contemplated as the best mode so that those having ordinary skill in the art could practice it." *Id*. The first inquiry is subjective and the second is objective. *Nobelpharma*, 141 F.3d at 1064; *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1321 (Fed. Cir. 2006); *see also Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998); *Dana Corp. v. IPC Ltd. P'ship*, 860 F.2d 415 (Fed. Cir. 1988); *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1532 (Fed. Cir. 1991); *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 940 (Fed. Cir. 1990).

It is immaterial whether there is an intent to conceal the best mode. *See United States Gypsum*, 74 F.3d at 1215-16; *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 789-90 (Fed. Cir. 1995).

A generic disclosure encompassing the best mode may be insufficient: "[e]ven though there may be a general reference to the best mode, the quality of the disclosure may be so poor as to effectively result in concealment." *Spectra-Physics, Inc. v. Coherent, Inc*., 827 F.2d 1524, 1536 (Fed. Cir. 1987).

"Where there exists joint inventorship, a best mode disclosure is equally necessary, even if only one of the inventors contemplates a best mode." *Scaltech, Inc. v. Retec/Tetra, L.L.C.*, No. H-95-4190, 2000 U.S. Dist. LEXIS 21598, at *22 (S.D. Tex. Sept. 8, 2000).

### E.    Lack of Enablement

35 U.S.C. § 112, ¶ 1 states that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same… ." This paragraph requires in

part that the patent specification provide an "enabling" disclosure. Enablement is a question of law based on underlying factual findings. *Bruning v. Hirose*, 161 F.3d 681, 686 (Fed. Cir. 1998).

A patent disclosure will "satisfy the enablement requirement only if one skilled in the art, after reading their disclosures, could practice the invention claimed in the [relevant patent] without undue experimentation." *Chiron Corp. v. Genentech, Inc*., 363 F.3d 1247, 1253 (Fed. Cir. 2004). Undue experimentation "is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). These factual considerations include "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d at 737. There is no enablement when "the teachings set forth in the specifications provide no more than a 'plan' or 'invitation' for those of skill in the art to experiment." *Enzo Biochem, Inc. v. Calgene, Inc*., 188 F.3d 1362, 1374-75 (Fed. Cir. 1999).

In addition, "the enabling disclosure of the specification [must] be commensurate in scope with the claim under consideration." *In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983). "[A] patentee cannot always satisfy the requirements of section 112, in supporting expansive claim language, merely by clearly describing one embodiment of the thing claimed." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005); *see also PIN/NIP, Inc. v. Platte Chem. Co.,* 304 F.3d 1235, 1247 (Fed. Cir. 2002); *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1479 (Fed. Cir. 1998).

### F.    Failure to Describe The Invention

35 U.S.C. § 112, ¶ 1 states that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same… ."  This paragraph also requires in part that the specification contain a "written description" of the invention. Satisfaction of the written description requirement is a question of fact, judged from the perspective of one of ordinary skill in the art as of the relevant filing date.  *See Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

In order to fulfill the written description requirement of section 112, the specification must "describe an invention and do so in sufficient detail that one skilled in the art can clearly conclude that 'the inventor invented the claimed invention.'"  *Regents of the Univ. of Cal. v. Eli Lilly and Co., 119* F.3d 1559, 1566 (Fed. Cir. 1997) (citations omitted).  The application itself must describe the invention, and must do so in sufficient detail that one skilled in the art can clearly conclude that the inventor was in possession of the claimed invention as of the filing date sought.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).  The test is whether possession of the claimed invention is shown at the time of the earliest application to which priority is claimed.  *Vas-Cath,* 935 F.2d at 1563-64.   Claims may be no broader than the supporting disclosure, and a narrow disclosure will limit claim breadth. *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1480 (Fed. Cir. 1998); *see also LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005).

To be adequately supported by the disclosure, claimed subject matter must be explicitly or inherently disclosed in the original application.  While the meaning of terms, phrases, or

diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, the question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.  *Martin v. Mayer,* 823 F.2d 500, 504 (Fed. Cir. 1987) (stating that it is "not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure … it is a question whether the application necessarily discloses that particular device.").

### G.    Indefiniteness

A patent claim is invalid as indefinite if it does not "particularly point out and distinctly claim the subject matter which the applicant claims as his invention."  35 U.S.C. § 112.  If the scope of a claim limitation cannot be determined from the language of the claims themselves, the specification, and the prosecution history, the claim fails to meet the definiteness requirement of 35 U.S.C. § 112.  Indefiniteness is a question of law.  *Atmel Corp. v. Info. Storage Devices*, 198 F.3d 1374, 1378 (Fed. Cir. 1999).

The test for indefiniteness turns on whether a person of ordinary skill in the art would understand what is claimed, and what is not claimed, in light of the specification.  *Morton Int'l, Inc. v. Cardinal Chem. Co*., 5 F.3d 1464, 1469-70 (Fed. Cir. 1993); *Amgen, Inc. v. Chugai Pharma Co*., 927 F.2d 1200, 1217 (Fed. Cir. 1991); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986).  The claims at issue must be sufficiently precise to allow a potential competitor to determine whether or not he is infringing.  *Morton*, 5 F.3d at 1470.

### III.    UNENFORCEABILITY OF THE SRI PATENTS-IN-SUIT

Inequitable conduct is a violation of the duty of disclosure as set forth in 37 C.F.R. § 1.56 ("Rule 56"), the Rules of Practice of the United States Patent and Trademark Office.

Because a patent by its very nature is infected with the public interest, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [Patent] Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability." 37 C.F.R. § 1.56 ("Rule 56"). Inequitable conduct may occur by omission, such as failing to disclose a material prior art reference to the Patent Office, or commission, such as by making a material misrepresentation to a patent examiner. *Merck & Co. v. Danbury Pharmacal, Inc.,* 873 F.2d 1418, 1420 (Fed. Cir. 1989). A patent that has been obtained by inequitable conduct is deemed unenforceable. *Id.* at 1420. Materiality and intent must both be proven by clear and convincing evidence. *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc*., 863 F.2d 867, 872 (Fed Cir. 1988). "A finding of inequitable conduct is 'an equitable determination' and, therefore, 'is committed to the discretion of the trial court.'" *Syngenta Seeds, Inc. v. Monsanto Co*., 404 F. Supp. 2d 584, 590 (D. Del. 2005).

Inequitable conduct requires a finding that the patentee or one of its agents failed to disclose material information to the patent examiner and that this failure was done with an intent to deceive. *E.g., Molins PCL v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed. Cir. 1995); *Baxter Int'l. v. McGaw*, 149 F.3d 1321, 1327 (Fed. Cir. 1998). The standard for determining materiality is "based in part on the standard of materiality articulated in the PTO's Rule 56, which describes the duty of candor and good faith, otherwise known as the duty of disclosure, before the PTO." *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006). A misrepresentation or omission is material if there is a substantial likelihood that a reasonable examiner would consider the information important in deciding whether to allow the application to issue as a patent. *Elk Corp. of Dallas v. GAF Bldg. Materials Corp*., 168

F.3d 28, 31 (Fed. Cir. 1999); *see also Digital Control*, 437 F.3d at 1314-16 (discussing the applicability of both the Rule 56 and "reasonable examiner" standards for materiality). Furthermore, "materiality 'is not limited to matters reflected in the claims of a patent.'" *Purdue Pharma L.P. v. Endo Pharm. Inc.,* 438 F.3d 1123, 1132 (Fed. Cir. 2006) (citations omitted).

Generally, evidence of intent to deceive is "inferred from the facts and circumstances surrounding the applicant's overall conduct." *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997). "Direct evidence of intent to deceive or mislead the PTO is 'rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances.'" *Purdue Pharma*, 438 F.3d at 1133-34 (citing *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1329 (Fed. Cir. 1998)).

As the Federal Circuit has stated "this court has inferred the requisite intent to deceive when a patentee has withheld highly material information such as a key prior art reference and knew or should have known of its materiality." *Purdue Pharma*, 438 F.3d at 1134. An inference of intent arises when the patentee or its agent fails to provide a credible explanation for its failure to disclose a known material reference. *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005) (upholding finding of intent to deceive where patentee withheld material prior art that it had disclosed to the FDA, and offered no credible, good faith explanation for the withholding); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256-1257 (Fed. Cir. 1997) (upholding finding of intent to deceive where patentee and its counsel knowingly withheld a prior art reference relating to a point of novelty and made no effort to offer a good faith explanation of

why it was never cited); *see also Paragon Podiatry Lab.*, 984 F.2d at 1193 (upholding finding of intent to deceive where there was evidence of a knowing failure to disclose pre-critical date commercial sales of the patented device and no explanation was offered).

Although as a general rule a party has no affirmative duty to search for relevant prior art, the Federal Circuit has stated that "one should not be able to cultivate ignorance, or disregard numerous warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art." *FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 526 n.6 (Fed. Cir. 1987); *see also Brasseler, U.S.A., I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) ("Where an applicant knows of information the materiality of which may so readily be determined, he or she cannot intentionally avoid learning of its materiality, even through gross negligence; in such cases the district court may find that the applicant should have known of the materiality of the information.").

Intent to deceive will be more readily inferred if an undisclosed reference is highly material. *Baxter Int'l*, 149 F.3d at 1327 (noting that the more material the omission, the less evidence of intent will be required in order to find that inequitable conduct has occurred). "[A] patentee facing a high level of materiality and clear proof that it knew or should have known of the materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." *Critikon*, 120 F.3d at 1257.

Conduct pertaining to one patent can taint another patent. *See Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933). This principle has been applied in a variety of contexts. *See, e.g., Consol. Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990) ("Consolidated's concealment of the [best mode] from the '917 patent permeated the

prosecution of the other patents-in-suit and renders them unenforceable."); *Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990) ("the duty of candor extends through the patent's entire prosecution history.").

## IV.    **INFRINGEMENT**

35 U.S.C. § 271(a) states:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

A determination of infringement under 35 U.S.C. § 271 (a) requires a two-step analysis. Initially, the claims at issue are interpreted to define their scope. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).  Claim construction is a matter of law to be decided by the Court.  *TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1369 (Fed. Cir. 2002); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979-81 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996).  Next, the evidence must be examined to ascertain whether the properly interpreted claim has been infringed by the accused product.  *Kegel Co. v. AMF Bowling, Inc.,* 127 F.3d 1420, 1425 (Fed. Cir. 1997).  Whether the claims, as construed by the Court, are infringed is a question of fact.  *TechSearch,* 286 F.3d at 1369; *Markman,* 52 F.3d at 979-81.  Infringement requires proof by a preponderance of the evidence.  *Kahn v. Gen'l Motors Corp.,* 135 F.3d 1472, 1476-77 (Fed. Cir. 1998); *Kegel,* 127 F.3d at 1425.

### A.    **Literal Infringement**

"To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *Netword, LLC v. Centraal Corp.,* 242 F.3d 1347, 1353 (Fed. Cir. 2001).  In other words, the properly construed claim must read on the accused device exactly.  *Cortland Line Co. v. Orvis Co.,* 203 F.3d 1351, 1358 (Fed. Cir. 2000).

The absence of a single limitation is fatal to the patentee's case. *Mas-Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1211 (Fed. Cir. 1998). If an independent patent claim is not infringed it follows as a matter of law that any claims depending from that claim also are not infringed. *Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1199 (Fed. Cir. 1994).

Further, all of the limitations of the claim must read on the accused device "as-is." "A device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim… . The question is not what [a device] might have been made to do, but what it was intended to do and did do." *High Tech Med. Instrumentation v. New Image Indus.,* 49 F.3d 1551, 1555 (Fed. Cir. 1995) (citation omitted). A method claim is not infringed by the sale of a device that is merely capable of being used in an infringing manner. Actual infringing use must be shown. *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1322 (Fed. Cir. 2005); *Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 773-75 (Fed. Cir. 1993).

**B.    Infringement Under the Doctrine of Equivalents**

Where there is no literal infringement, a patentee may in some circumstances resort to the doctrine of equivalents. "For infringement by equivalency, all of the elements of the claimed invention or an equivalent thereof must be present in the accused system." *Netword,* 242 F.3d at 1354. "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Searfoss v. Pioneer Consol. Corp.,* 374 F.3d 1142, 1150 (Fed. Cir. 2004) (citation omitted). The doctrine of equivalents applies if the "substitute element matches the function, way and result of the claimed element." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40 (1997). "A finding of equivalence is a determination of fact … . Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence."

*Viskase Corp. v. American Nat'l Can Co.,* 261 F.3d 1316, 1324 (Fed. Cir. 2001) (citing *Graver*

*Tank & Mfg. v. Linde Air Prods. Co*., 339 U.S. 605, 609-10 (1950)).

In a recent opinion, the Federal Circuit has reinforced its holding that generalized

evidence in support of infringement under the doctrine of equivalents is insufficient and that

specific evidence of equivalents must be presented for each claim limitation:

> The expert declaration and other evidence relied on by [plaintiff] supporting
> infringement by equivalents are generalized and do not provide particularized
> testimony and linking argument on a limitation-by-limitation basis. For this
> reason the evidence did not raise a genuine issue of material fact. Summary
> judgment of non-infringement under the doctrine of equivalents regarding
> metafiles was therefore proper.

*Network Commerce, Inc. v. Microsoft Corp.,* 422 F.3d 1353, 1363 (Fed. Cir. 2005); *see also*

*PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1364 (Fed. Cir. 2005).

There are legal limitations on the doctrine of equivalents. No range of equivalents is

permissible where it encroaches upon the subject matter described by the prior art, or would be

obvious in light of the prior art. *Wilson Sporting Goods, Co. v. David Geoffrey & Assocs.,* 904

F.2d 677, 684-85 (Fed. Cir. 1990). Because the equivalents inquiry is conducted for each

limitation, any theory of equivalents that would result in the vitiation of a claim limitation must

fail as a matter of law. *Warner-Jenkinson,* 520 U.S. at 39 n.8*; Tronzo v. Biomet, Inc.,* 156 F.3d

1154, 1160 (Fed. Cir. 1998). A patentee may not assert equivalents over an embodiment of

the invention that is disclosed in the written description but is not claimed in the patent,

because the patentee has dedicated that embodiment to the public by disclosing it and not

specifically claiming it. *Maxwell v. J. Baker,* 86 F.3d 1098, 1106-08 (Fed. Cir. 1996). Finally,

"where the patent document expressly identifies a role for a claim limitation, the doctrine of

equivalents cannot be used to capture subject matter that does not substantially fulfill that

role." *K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1367 (Fed. Cir. 1999).

### C.    Direct Infringement

Method claims are only directly infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use. *Ormco Corp. v. Align Tech., Inc.,* 2006 U.S. LEXIS 22306, at *28 (Fed. Cir. 2006); *Joy Techs., Inc. v. Flakt, Inc.* 6 F.3d 770, 773 (Fed. Cir. 1993).

Similarly, for system claims, SRI must prove direct infringement by use of the complete system. *See Decca, Ltd.* v. *United States*, 640 F.2d 1156, 1168 (Ct. Cl. 1980) ("Direct infringement does not occur until a system, comprised of two or more transmitters and one or more receivers, has been constructed and is available for use."); *Strumskis* v. *United States*, 474 F.2d 623, 627 (Ct. Cl. 1973), cert. denied, 414 U.S. 1067 (1973).

### D.    Indirect Infringement

#### a.    Proof of Direct Infringement

Liability for indirect infringement requires proof of direct infringement. *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) ("Absent direct infringement of the patent claims, there can be neither contributory infringement, nor inducement of infringement."); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274-76 (Fed. Cir. 2004). Liability for indirect infringement of a method claim or of a claim based on an accused combination of products requires proof of direct infringement.

Such direct infringement may be shown in one of two ways. First, SRI may identify a specific direct infringer and prove that such third party's use of the method or accused combination constitutes direct infringement of an asserted claim. The consequence of proceeding under this theory of indirect infringement is that SRI must "tie their claims for damages or injunctive relief . . . to ***the identified act***." *Dynacore*, 363 F.3d at 1274 (emphasis

in original).  Alternatively, SRI may prove the necessary direct infringement more broadly by demonstrating that third party customers will inevitably and necessarily use the method or create the accused combination in such a way that infringes an asserted claim.  *Id.* at 1274-76. Furthermore, in order to demonstrate direct infringement via an accused combination, SRI must prove that "the claimed combination has been ***assembled*** and is used or is available for use."  *Lemelson v. United States*, 752 F.2d 1538, 1548 (Fed. Cir. 1985) (emphasis added); s*ee also Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1117-18 (Fed. Cir. 2002).  Merely selling components that may be combined in an infringing manner is insufficent proof that an accused combination apparatus has been assembled.  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc*., 424 F.3d 1293, 1310-12 (Fed. Cir. 2005).

### b.    Inducement of Infringement

35 U.S.C § 271(b) states:  "Whoever actively induces infringement of a patent shall be liable as an infringer."  Active inducement of infringement requires knowledge of the patent. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) (one cannot have intent to infringe a patent without having knowledge of the patent).  Thus, no liability exists for acts that occur before the alleged inducer has knowledge of the patent*.  See Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998).  In addition, inducement requires proof that the defendant "knew or should have known his actions would induce actual infringements" – a standard that requires at least some awareness that the acts performed by the direct infringer would infringe a patent.  *Manville Sales*, 917 F.2d at 553.