# EXHIBIT 18

## SYMANTEC'S STATEMENT OF MISCELLANEOUS ISSUES AND MOTIONS IN LIMINE (L.R. 16.4(D)(13))

A.     SEPARATE TRIALS FOR SYMANTEC AND ISS CASES

Symantec requests, pursuant to Federal Rule of Civil Procedure 42(b), that the Symantec and ISS cases be tried separately to different juries in order to simplify the trial and minimize juror confusion.[1]

Symantec and ISS are separate, unrelated companies selling different lines of products that are accused of infringement. SRI has asserted infringement of 4 patents and 90 different claims in this action. SRI recently indicated that it will seek to try 32 representative claims from the four patents-in-suit. However, only 2 of the 4 patents and 14 of the 32 representative claims are asserted against both Symantec and ISS. One patent (the '338 patent) is only currently asserted against ISS,[2] and another patent (the '212 patent) is only asserted against Symantec. The majority of SRI's representative claims are asserted against one defendant, but not the other. Given this substantial divergence regarding the claims-in-suit against each defendant, there is little judicial economy in trying the cases together.

To the contrary, given the technical complexity of these cases, trying the Symantec and ISS cases together would not be efficient and would likely lead to juror confusion. *Cf. Stambler*

---

[1] Under Rule 42(b), "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Enzo Life Scis., Inc. v. Digene Corp.*, No. 02-212-JJF, 2003 U.S. Dist. LEXIS 10202, at *14 (D. Del. June 10, 2003) (quoting *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987)).

[2] As discussed below, SRI has withdrawn its allegation that Symantec directly or indirectly infringes the '338 patent based upon the manufacture, use, or sale of certain Symantec products. However, SRI has refused to promise not to assert the '338 patent against Symantec or its customers based upon all past and present activity relating to Symantec's products.

*v. RSA Sec., Inc.*, No. 01-065-SLR, 2003 U.S. Dist. LEXIS 2555, at *6 (D. Del. Feb. 20, 2003) ("The court finds that in this case (a case with complex technology [related to computer security] and numerous accused products as to each defendant) separate trials are appropriate to avoid jury confusion.").

The infringement cases against Symantec and ISS are completely different. SRI's infringement allegations against Symantec involve 9 different product series (comprising 20 separate products), while SRI's infringement allegations against ISS involve 11 different product series. Since Symantec and ISS make and sell different products, there is no overlap in the issues to be decided relating to infringement. Completely different documentary and testimonial evidence will be relevant for each defendant with respect to the alleged infringement. Each defendant will present different expert witnesses in support of their noninfringement defenses.

Given the sheer number of different products to consider from different defendants, there is a substantial risk of jury confusion if the infringement cases are tried together. It will be extremely difficult for a single jury to keep track of the different products and services offered by the defendants and remember which arguments and defenses apply to each defendant, particularly where different claims are asserted against each. For example, both Symantec and ISS offer different services under exactly the same name — "Managed Security Services" — and SRI has alleged that these services are evidence that defendants induce infringement by their respective customers. Jurors would be required to understand and recall the difference between "Managed Security Services" offered by Symantec and "Managed Security Services" offered by ISS in order to properly assess SRI's infringement claims.

Similarly, trying the defendants' invalidity defenses together is also not efficient and is likely to lead to juror confusion. Given the substantial difference in the patents and claims

2

asserted against each defendant, the focus of Symantec and ISS's invalidity defenses will necessarily be different. While both defendants are likely to rely on some of the same prior art references, each defendant will have to show how such references anticipate a different set of claims. Defendants also have retained different expert witnesses, which could further lead to confusion or duplication of testimony at trial.

Having separate trials minimizes the risk that one defendant will be substantially prejudiced as a result of jury confusion. *See Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D. Del. 2004) ("Further, there is a substantial risk of prejudice to CMT were the jury to believe that CMT is somehow linked to Hango. . . . The interests of justice will thus be served by severing CMT and Hango and conducting separate trials."). Symantec therefore requests that the Court separately try (a) SRI's infringement claims against ISS and ISS's invalidity defenses and (b) SRI's infringement case against Symantec and Symantec's invalidity defenses.

### B.   IDENTIFICATION AND NARROWING OF REPRESENTATIVE CLAIMS

SRI has asserted 61 different claims from 3 different patents against Symantec. SRI recently identified 25 representative claims that it proposes to try against Symantec. Given the time constraints that the Court will impose at trial, Symantec requests that a representative set of no more than 5 claims be selected for trial. SRI should select up to 4 claims to be tried, and Symantec as the defendant and counter-claimant should be entitled to select no more than 1 representative claim to be tried.

### C.   SYMANTEC'S COUNTERCLAIM FOR NON-INFRINGEMENT AND INVALIDITY OF THE '338 PATENT

After the hearing on Symantec's motion for summary judgment of noninfringement, SRI withdrew its claim for infringement of the '338 patent against Symantec's current products. SRI

refused, however, to confirm that it would not assert the claims of the '338 patent in the future against Symantec or its customers based upon any past or present Symantec activity. Given SRI's failure to make such a representation, Symantec could not dismiss its counterclaim for declaratory judgment relating to the '338 patent.

If the Court grants Symantec's pending motion for summary judgment of noninfringement with respect to the '338 patent, this issue will be moot. Similarly, if SRI is willing to provide the requested covenant not to sue and to dismiss its claim for infringement with prejudice, Symantec will dismiss its counterclaim with respect to the '338 patent with prejudice. However, if neither event occurs, Symantec contends that the Court has jurisdiction to hear Symantec's claim for declaratory judgment with respect to the '338 patent. In the event of a joint trial with ISS, Symantec reserves the right to assert its counterclaim for declaratory judgment of non-infringement and invalidity with respect to the '338 patent.

### D. INEQUITABLE CONDUCT DEFENSE

Symantec also has pled an inequitable conduct defense. The timing and procedure for presenting this defense to the Court should be addressed at the pretrial conference.

### E. MOTIONS IN LIMINE

1. Preclude Dr. Kesidis from testifying about (a) the level of ordinary skill in the computer security or intrusion detection field prior to November 1998; (b) what would or would not have been obvious to a person of ordinary skill in the art in 1998, and (c) whether the patent disclosure would have enabled a person of ordinary skill in the art to make and use the claimed inventions prior to November 1998. (Previously briefed and submitted to Court).

2. Limit Dr. Kesidis's testimony to the opinions and statements identified in his expert reports.

3. Preclude SRI from calling Michael Skroch as a witness, given that SRI did not identify this witness until August 23, 2006, SRI has been unable to produce the witness for deposition, and Symantec has been unable to independently schedule Mr. Skroch's deposition.

4. Exclude evidence of revenues or profits associated with Symantec's products given the Court's decision to bifurcate damages from liability case.

5. Exclude evidence of communications between parties regarding the patents-in-suit given the Court's decision to bifurcate willfulness determination from the liability case.

6. Admit into evidence the affidavits of Paul Hickman, from Internet Archive, attesting to the dates of the public availability of material on the Internet.

7. The timing for exchanging demonstratives intended to be used in opening statements and closing arguments.