**EXHIBIT 25**

**SYMANTEC'S PROPOSED JURY INSTRUCTIONS**


**TABLE OF CONTENTS**

Symantec's Proposed General Instructions Nos. 1.0 - 1.20

Symantec's Proposed Instructions on Infringement Nos. 2.0 – 2.10

Symantec's Proposed Instructions on Validity Nos. 3.0 - 3.18

## GENERAL INSTRUCTIONS

**SYMANTEC'S PROPOSED INSTRUCTION NO. 1.3**

### BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used.

The first burden of proof standard requires that, in order for a party to prevail, you must be persuaded that what the party seeks to prove is more probably true than not true. The second burden of proof standard is a higher one. It requires that you must be persuaded that it is highly probable that what the party seeks to prove is true.

You may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt." That requirement is the highest burden of proof. It does not apply to a patent case such as this one, and you should, therefore, put it out of your mind.

I will now give you some background about the nature of this case and the issues you will be deciding. For each issue, I will instruct you as to the burden of proof that will apply. At the end of the trial I will review for you the burden of proof to apply, either the more probable than not standard or the highly probably standard, to each issue in this case.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 7.1.

**SYMANTEC'S PROPOSED INSTRUCTION NO. 1.9**

## DEMONSTRATIVES

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  The remainder of the exhibits (including charts, exemplars and animations) were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called demonstratives, have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard and the documents that were admitted into evidence when you saw the demonstratives that is the evidence in the case.

**AUTHORITIES**

*ACS v. Medtronic*, C.A. No. 98-80 (SLR) (Charge to the Jury, February 17, 2005, "Demonstrative Exhibits").

**SYMANTEC'S PROPOSED INSTRUCTION NO. 1.15**

**THE PARTIES**

Plaintiff is SRI International, Inc., which I have referred to as "SRI." SRI is a California corporation with its primary offices in Menlo Park, California.

SRI claims to be the owner of U.S. Patent No. 6,321,338, which I will refer to as "the '338 patent," U.S. Patent No. 6,484,203, which I will refer to as "the '203 patent," U.S. Patent No. 6,711,615, which I will refer to as "the '615 patent," and U.S. Patent No. 6,708,212, which I will refer to as "the '212 patent." I may also refer to these patents collectively as the "patents-in-suit."

The Defendant is Symantec Corporation (referred to as "Symantec"). Symantec is a company that is engaged in the development and/or sale of network security products.

Symantec is entitled to a trial on the merits.

**AUTHORITIES**

Delaware Jury Instruction 2.1 (adapted to fit this case); *Syngenta Seeds, Inc. v. Monsanto Co.*, C.A. No. 02-1331-SLR (Charge to the Jury, December 10, 2004, "The Parties") (adapted to fit this case).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 1.16**

## ISSUES TO BE DECIDED

I will now give you some information about the issues that will be presented to you at this trial and the law that you must follow in reaching your verdict. At the close of the trial, you will be given a verdict form and questions that you must answer in reaching your verdict. I will give you more specific instructions then to follow as you deliberate to reach your verdict.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 3.

**SYMANTEC'S PROPOSED INSTRUCTION NO. 1.17**

## CLAIMS IN GENERAL

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.

Claims are usually divided into parts or steps, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

There are two types of claims at issue in this case -- system claims and method claims. A system claim recites a system having certain claimed limitations. A method claim recites a series of steps that must be performed.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 7 (adapted to fit this case).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 1.18**

<u>**DEPENDENT AND INDEPENDENT CLAIMS**</u>

There are two different types of claims in a patent. The first type is called an "independent" claim. An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 1 of the '203 patent is an independent claim. You know this because claim 1 does not refer to any other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

On the other hand, claim 2 is a dependent claim. If you look at claim 2, it refers to claim 1. Therefore, to determine what claim 2 covers, you must consider both the words of claims 1 and 2 together.

**AUTHORITIES**

Delaware Jury Instruction 3.3 (adapted to fit this case); *IMX v. LendingTree* ("Dependent and Independent Claims") (adapted to fit this case).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 1.19**

<u>**OPEN ENDED OR "COMPRISING" CLAIMS**</u>

Several claims of the patents-in-suit use the transitional term "comprising." "Comprising" is interpreted the same as "including" or "containing."  In patent claims, comprising means that the claims are open ended.  This means that the claim is not limited to products that include only what is in the claim and nothing else.

If you find that the accused products include all of the limitations in any of the asserted claims that use the term "comprising," the fact that they may also include additional elements or components is irrelevant.  The presence of additional elements or components does not mean that the method or product does not infringe a patent claim.

Similarly, if you find that the prior art includes all of the limitations in any of the asserted claims that use the word "comprising," the fact that it may also include additional elements is irrelevant.

**AUTHORITIES**

Delaware Jury Instruction 3.11 (adapted to fit this case); *Syngenta Seeds v. Monsanto* ("Open Ended or 'Comprising' Claims") (adapted to fit this case).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 1.20**

**CLAIM CONSTRUCTION**

In deciding whether or not the claims of the patents-in-suit are infringed or invalid, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patents are infringed, and whether or not the patents are invalid. The claims of the patents must be interpreted the same way for the purposes of determining infringement and invalidity.

You must ignore any different interpretation given to these terms by the witnesses or attorneys.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term. I instruct you that the following claim terms have the following definitions:

"Monitor" and "network monitor" shall mean [insert after Markman ruling]

"Hierarchical monitor" and "hierarchically higher network monitor" shall mean [insert after Markman ruling]

"Hierarchical event monitoring [and analysis]" shall mean [insert after Markman ruling]

"Service monitor" shall mean [insert after Markman ruling]

"Domain monitor" shall mean [insert after Markman ruling]

"Enterprise monitor" shall mean [insert after Markman ruling]

"Peer-to-peer relationships" shall mean [insert after Markman ruling]

"Deploying a plurality of network monitors" shall mean [insert after Markman ruling]

"Based on analysis of network traffic data *selected from one or more of the following categories*…" shall mean [insert after Markman ruling]

"Based on analysis of network traffic data *selected from* the following categories…" shall mean [insert after Markman ruling]

"Automatically receiving and integrating the reports of suspicious activity" shall mean [insert after Markman ruling]

"Correlating" and "correlates" shall mean [insert after Markman ruling]

"Responding" and "invoking countermeasures" shall mean [insert after Markman ruling]

"Building at least one long-term … statistical profile from at least one measure of the network packets" shall mean [insert after Markman ruling]

"Building at least one … short term statistical profile from at least one measure of the network packets" shall mean [insert after Markman ruling]

"Determining whether the difference between the short-term statistical profile and the long-term statistical profile indicates suspicious network activity" shall mean [insert after Markman ruling]

"A statistical detection method" shall mean [insert after Markman ruling]

"A signature matching detection method" shall mean [insert after Markman ruling]

"Proxy server" shall mean [insert after Markman ruling]

"API" shall mean [insert after Markman ruling]

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 7.1; *IMX v. LendingTree* ("Claim Construction") (adapted to fit this case); *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384-391 (1996); *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc*., 262 F.3d 1258, 1267 (Fed. Cir. 2001); *Interactive Gift Express, Inc. v. Compuserve, Inc.,* 256 F.3d 1323, 1331 (Fed. Cir. 2001); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys*., 242 F.3d 1337, 1341 (Fed. Cir. 2001); *AFG Indus., Inc. v. Cardinal IG Co*., 239 F.3d 1239, 1244-45

(Fed. Cir. 2001); *Hill-Rom Co. v. Kinetic Concepts, Inc.,* 209 F.3d 1337, 1340-41 (Fed. Cir. 2000); *Pitney Bowes, Inc. v. Hewlett-Packard Co*., 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp*., 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc*., 138 F.3d 1448, 1455-56 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc); *Rival Co. v. Sunbeam Corp*., 987 F. Supp. 1167, 1171 (W.D. Miss. 1997) aff'd without op., 185 F.3d 885 (Fed. Cir. 1999); *Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.,* No. 95C 7255, 1997 WL 187326, at *2 (N.D. Ill. April 11, 1997).

**INFRINGEMENT**

**SYMANTEC'S PROPOSED INSTRUCTION NO. 2.0**

**PLAINTIFF'S CONTENTIONS—DIRECT INFRINGEMENT**

In this case, SRI alleges two groups of Symantec products directly infringe.

The first group consists of the "ManHunt Products" (which are specifically, ManHunt 3.0, Symantec Network Security 4.0, Symantec Network Security 7100 Series, and iForce IDS). SRI alleges that Symantec's manufacture, use, sale, or offer to sell the ManHunt Products directly infringes claims 1-6 and 14-17 of the '212 patent; claims 1, 2, 4, 6, 12, 13, 15 and 17 of the '203 patent; and claims 1, 2, 4, 7, 13, 14 and 16 of the '615 patent.

The second group comprises a combination of the Symantec Gateway Security, or "SGS" products (which are specifically, SGS 5400, 5600, and 1600 Series) combined with the "Manager Products" (specifically, Incident Manager 3.0 and the Security Information Manager 9500 Series). Regarding the combinations, SRI alleges that Symantec's manufacture, use, sale, or offer to sell the SGS 5400 in combination with the Incident Manager 3.0, or the SGS 5400 in combination with the Information Manager 9500 directly infringes claims 1-6 and 14-17 of the '212 patent; claims 1, 2, 4, 6, 12, 13, 15 and 17 of the '203 patent; and claims 1, 2, 4, 7, 13, 14 and 16 of the '615 patent. In other words, all of the same claims alleged against the ManHunt Products. SRI also alleges that Symantec's manufacture, use, sale, or offer to sell the SGS 5600 in combination with the Incident Manager 3.0, or the SGS 5600 in combination with the Information Manager 9500 directly infringes claims 1, 2, 4, 6, 12, 13, 15 and 17 of the '203 patent; and claims 1, 2, 4, 13, 14 and 16 of the '615 patent. Finally, SRI alleges that Symantec's manufacture, use, sale, or offer to sell the SGS 1600 in combination with the Incident Manager 3.0, or the SGS 1600 in combination with the Information Manager 9500 directly infringes

claims 1, 2, 4, 6, 12, 13, 15 and 17 of the '203 patent; and claims 1, 2, 4, 13, 14 and 16 of the '615 patent.

Remember that only the claims of a patent can be infringed.  You must compare the above claims of the '615, '203, and '212 patents, as I have defined them, to the accused products, and determine whether or not there is infringement.  You should not compare Symantec's products with any specific example set out in the patents-in-suit, or with SRI's product or process.  The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

SRI has the burden of proving, by the more probable than not standard, that Symantec has infringed at least one of the asserted claims either literally or under the doctrine of equivalents.

**AUTHORITIES**

35 U.S.C. §§ 271-281 (1984 & Supp. 2001); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293 (Fed. Cir. 2005); *Warner-Jenkinson Co. v. Hilton Davis Chemical Co*., 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl.*

*Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 2.1**

<u>**PATENT INFRINGEMENT GENERALLY—DIRECT INFRINGEMENT**</u>

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called "direct infringement."  In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers."

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. I will first discuss direct infringement.

Whether or not Symantec knew that what it was doing was an infringement does not matter.  A person may be found to be a direct infringer of a patent even if he or she believes in good faith that what he or she is doing is not an infringement of any patent, and even if he or she does not even know of the patent.

To prove direct infringement based on Symantec's Manager Products operating in combination with Symantec's SGS 5400, SGS 5600, or SGS 1600, SRI must establish that Symantec itself has deployed these separate products together to form the claimed system or to perform the claimed method.  Merely selling two separate, non-infringing products to a customer who might combine these products to form an allegedly infringing system is not an act of direct infringement.

SRI has the burden of proving, by the more probable than not standard, that Symantec has infringed at least one of the asserted claims either literally or under the doctrine of equivalents.

**AUTHORITIES**

35 U.S.C. §§ 271-281 (1984 & Supp. 2001); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293 (Fed. Cir. 2005); *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 2.2**

**LITERAL INFRINGEMENT**

There are two ways in which a patent claim may be directly infringed. First, a claim may be literally infringed. Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For an accused product or method to literally infringe an asserted claim, the subject matter of the claim must be found in the accused product or method. In other words, an asserted claim is literally infringed if the accused product or method includes each and every limitation in the patent claim. Literal infringement must be determined with respect to each asserted claim individually by comparing the accused product or method to each of the asserted claims. If the accused product or method omits any single limitation recited in a given claim, that product or method does not literally infringe that claim. You must determine literal infringement with respect to each asserted claim and each accused product or method individually.

Therefore, in determining whether Symantec's ManHunt Products, or Symantec's Manager Products operating in combination with either SGS 5400, SGS 5600, or SGS 1600 literally infringe any asserted claim, you should take the following steps:

First, you should determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their ordinary meaning; and

Second, you should compare the accused product or system, element by element, to each of the limitations of the asserted claim.

If you find each and every limitation of the asserted claim in the accused product or system, you must return a verdict of literal infringement as to that claim.

If you did not find each and every limitation of the asserted claim in the accused product or system, you may not return a verdict of literal infringement as to that claim.

You must repeat the above analysis with every asserted claim.

Remember the question is whether the accused product or system infringes any of the asserted claims, and not whether the accused product or system is similar or even identical to an SRI product or method.  Accordingly, you must be certain to compare the accused product or system with the claims it is alleged to infringe and not with any product or method of SRI.

Finally, to hold Symantec liable for infringement on the method claims, SRI must prove actual use of the infringing method by someone.  A method claim is not infringed by the sale of a device that is merely capable of being used in an infringing manner.  Actual use of each of the claimed steps must be shown.  This same rule applies to indirect infringement, which I will tell you about a little later.

**AUTHORITIES**

*IMX v. LendingTree* ("Literal Infringement") (adapted to fit this case); *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1322 (Fed. Cir. 2005); *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002); *Joy Technologies, Inc. v. Flakt, Inc.,* 6 F.3d 770, 773-75 (Fed. Cir. 1993); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1374 (Fed. Cir. 1991); *Met-Coil Systems Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed. Cir. 1986); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,* 418 F. Supp. 2d 1021, 1040 (D. Ind. 2006).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 2.4**

**PLAINTIFF'S CONTENTIONS—INDIRECT INFRINGEMENT**

In this case, SRI alleges two groups of Symantec products indirectly infringe.

The first group consists of the "ManHunt Products" (which are specifically, ManHunt 3.0, Symantec Network Security 4.0, Symantec Network Security 7100 Series, and iForce IDS). SRI alleges that Symantec induced its customers to infringe claims 1-6 and 14-17 of the '212 patent; claims 1, 2, 4, 6, 12, 13, 15 and 17 of the '203 patent; and claims 1, 2, 4, 7, 13, 14 and 16 of the '615 patent, by the customers' use of the ManHunt Products.

The second group comprises a combination of the Symantec Gateway Security, or "SGS" products (which are specifically, SGS 5400, 5600, and 1600 Series) combined with the "Manager Products" (specifically, Incident Manager 3.0 and the Security Information Manager 9500 Series). Regarding the combinations, SRI alleges that Symantec induced its customers to infringe claims 1-6 and 14-17 of the '212 patent; claims 1, 2, 4, 6, 12, 13, 15 and 17 of the '203 patent; and claims 1, 2, 4, 7, 13, 14 and 16 of the '615 patent by the customers' use of the SGS 5400 in combination with the Incident Manager 3.0, or the SGS 5400 in combination with the Information Manager 9500. SRI also alleges that Symantec induced its customers to infringe claims 1, 2, 4, 6, 12, 13, 15 and 17 of the '203 patent; and claims 1, 2, 4, 13, 14 and 16 of the '615 patent by the customers' use of the SGS 5600 in combination with the Incident Manager 3.0, or the SGS 5600 in combination with the Information Manager 9500. Finally, SRI alleges that Symantec induced its customers to infringe claims 1, 2, 4, 6, 12, 13, 15 and 17 of the '203 patent; and claims 1, 2, 4, 13, 14 and 16 of the '615 patent by the customers' use of the SGS 1600 in combination with the Incident Manager 3.0, or the SGS 1600 in combination with the Information Manager 9500.

**SYMANTEC'S PROPOSED INSTRUCTION NO. 2.5**

## INDIRECT INFRINGEMENT

As I have told you, in addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. There are two types of indirect infringement -- inducing infringement and contributory infringement. Of the two, only inducing infringement is at issue in this case. You will receive instruction on inducement after this general instruction.

In general, to prove indirect infringement of the system and method claims-at-issue by Symantec's ManHunt Products, or by Symantec's Manager Products operating in combination with Symantec's SGS 5400, SGS 5600, or SGS 1600, SRI must establish either that (1) Symantec customers necessarily infringe, or (2) a specific Symantec customer made or used the accused combination.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 8.12; *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263 (Fed. Cir. 2004); *Aro Mfg. Co.* v. *Convertible Top Replacement Co.*, 365 U.S. 336, 340-41 (1961); *Arthur A. Collins, Inc.* v. *N. Telcom Ltd.*, 216 F.3d 1042, 1049 (Fed. Cir. 2000); *Porter* v. *Farmers Supply Serv., Inc.*, 790 F.2d 882, 884-86 (Fed. Cir. 1986).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 2.6**

**INDUCING INFRINGEMENT**

The act of encouraging or inducing others to infringe a patent is called "inducing infringement."

In this case, SRI accuses Symantec of actively inducing Symantec's customers to infringe the asserted claims of the '203, '615, and '212 patents by use of the ManHunt Products, or by use of the Manager Products in combination with either the SGS 5400, SGS 5600, or SGS 1600.

SRI must prove that Symantec purposefully caused, urged or encouraged its customers to infringe the patents-in-suit. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which, as I've just told you, can occur unintentionally. Thus, in order to prove inducement, SRI must prove that it is more probable than not that Symantec knew of the patents-in-suit and encouraged or instructed its customers to use the ManHunt Products, or the Manager Products in combination with the SGS 5400, SGS 5600, or SGS 1600 in a manner that infringes the patents-in-suit. SRI must also prove that it is more probable than not that a Symantec customer infringed the patent. Symantec can be an inducer even if Symantec thought that what it was encouraging or instructing the customer to do was not an infringement.

There can be no inducing infringement unless someone is directly infringing the patent. Thus, in order to prove that Symantec induced Symantec's customers to infringe, SRI must prove it is more probable than not that a Symantec customer has directly infringed at least one of the asserted claims of the '203, '615, or '212 patent.

To prove direct infringement by an Symantec customer, SRI must prove it is more probable than not that a Symantec customer performed each and every step of a claimed method

or made or used a system that satisfied each and every limitation of a claimed system.  If the Symantec customer omitted a single step or limitation recited in a claim, then you must find that the customer did not directly infringe that claim.  You must consider each of the patent claims separately.

Since SRI asserts that Symantec induced patent infringement, SRI must prove four things by the more probable than not standard:

First, Symantec encouraged or instructed a customer on how to use the ManHunt Products, or the Manager Products in combination with the SGS 5400, SGS 5600, or SGS 1600 in a manner that you, the jury, find infringes the asserted claims of the '203, '615, or '212 patent.

Second, Symantec knew of the '203, '615, or '212 patent.

Third, Symantec knew or should have known that its encouragement or instructions would likely result in the customer doing that which you find to be an infringement of the '203, '615, or '212 patent.

Fourth, the customer infringed either the '203, '615, or '212 patent.

If, and only if, you are persuaded of each of these four things may you find that Symantec induced patent infringement.


**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 3.1.2, 8.12.1; Delaware Jury Instruction 2.2 (adapted to fit this case); *IMX v. LendingTree* ("Plaintiff's Contentions") (adapted to fit this case); 35 U.S.C. § 271(b) (1984);  *Micro Chem., Inc. v. Great Plains Chem. Co.,* 194 F.3d 1250, 1261 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1311-12 (Fed. Cir. 1998); *Insituform Techs., Inc. v. Cat Contracting, Inc.,* 161 F.3d 688, 695 (Fed. Cir. 1998); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.,* 72 F.3d 872, 876 n.4 (Fed. Cir. 1995); *Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 774-76 (Fed. Cir. 1993); *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553-54 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 2.10**

## <u>SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS</u>
## <u>IS NOT PERMITTED</u>

Resort to the doctrine of equivalents to find infringement is not permitted if you find that the defendants are merely practicing what was in the prior art prior to the patented invention or that which would have been obvious in light of what was in the prior art.  This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have lawfully obtained from the Patent Office.  Accordingly, to find infringement under the doctrine of equivalents you must find that the patent owner has proven that he could have obtained from the Patent Office a hypothetical patent claim, similar to the existing claim, but broad enough to literally cover the accused device or method.

**AUTHORITIES**

Delaware Jury Instruction 3.10 (first paragraph).

<u>VALIDITY</u>

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.0**

<u>**AFFIRMATIVE DEFENSE OF INVALIDITY GENERALLY**</u>

Only a valid patent may be infringed.  For a patent to be valid, the invention claimed in the patent must be new, useful and non-obvious.  A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "non-obvious" have special meanings under the patent laws.  I will explain these terms to you as we discuss Symantec's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described.  In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Symantec has challenged the validity of the claims of the patents-in-suit on a number of grounds.  Although the patents-in-suit were granted by the Patent and Trademark Office, it is your job to determine whether or not the legal requirements for patentability were met; that is, it is your job to determine whether or not the patents are invalid.

I will now explain to you Symantec's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 10.1 (explaining that the instruction on the presumption of validity is omitted because instructing the jury on the presumption in addition to informing it of the clear and convincing burden of proof may cause the jury confusion) (citing Fed. R. Evid. 301; *DMI, Inc. v. Deere & Co.,* 802 F.2d 421, 427 (Fed. Cir. 1986); *Avia Group Int'l, Inc. v. L.A. Gear Cal.,* 853 F.2d 1557, 1562 (Fed. Cir. 1988)); *see also American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359 (Fed. Cir. 1984) ("When an attacker, in sustaining the burden imposed by [35 U.S.C.] § 282, produces prior art or other evidence not considered in the PTO, there is, however, no reason to defer to the PTO so far

as its effect on validity is concerned."); *Morton Int'l v. Cardinal Chem. Co.,* 5 F.3d 1464, 1471-2 (Fed. Cir. 1993); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1534 (Fed. Cir. 1983).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.1**

## PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art." Symantec must prove by the highly probable standard that these items are prior art. In order to do so, Symantec must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

First, anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

Second, anything that was in public use or on sale in the United States more than one year before the application for the patent was filed. In this case, that means anything that was in public use or on sale in the United States before November 9, 1997.

Third, anything that was patented or described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed.

Fourth, anything that was invented by another person in this country before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention.

Fifth, anything that was described in a patent that issued from a patent application filed in the United States or certain foreign countries before the inventor made the invention.


**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 10.6 (adapted to fit this case).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.2**

## PRIOR ART – DATE OF INVENTION

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention." I will now explain to you how to determine this date.

There are two parts to the making of an invention. The first part is that the inventors have the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventors have formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The second part is the actual making of the invention, which is referred to as "reduction to practice." An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

If an inventor's testimony is used to establish conception or an actual reduction to practice, it must be corroborated by independent evidence. Corroboration can consist of the testimony of a witness, other than an inventor, or documentary evidence of surrounding facts and circumstances independent of information received from the inventor.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice." In this case, that date is November 9, 1998. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There are, however, two circumstances under which art dated before the application filing date is not prior art. The first occurs when the inventors on the patent actually reduced the invention to practice before the date of the art. This is sometimes referred to as an "actual

reduction to practice," and art dated after an actual reduction to practice is not prior art to the patent claims.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventors conceived of the invention before the date of the art and exercised reasonable diligence from just before the date of the art up to the date of the inventors' reduction to practice.  In that case, art dated after the conception date is not prior art to the patent claims.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose. Reasonable diligence means that the inventors worked continuously on reducing the invention to practice.  Interruptions necessitated by the everyday problems and obligations of the inventors or others working with him or her do not prevent a finding of diligence.

I will now describe the specific requirements for the prior art categories relied on by Symantec in this case.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 10.6.1 (modified to explain the corroboration requirement); *Medichem, S.A. v. Rolabo,* S.L., 437 F.3d 1157, 1171 (Fed. Cir. 2006); *Mycogen Plant Sci., Inc.* v. *Monsanto Co.*, 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Singh* v. *Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Genentech Inc.* v. *Chiron Corp.*, 220 F.3d 1345, 1351 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1370 (Fed. Cir. 2000); *Bruning* v. *Hirose*, 161 F.3d 681, 684-85 (Fed. Cir. 1998); *Cooper* v. *Goldfarb*, 154 F.3d 1321, 1326-31 (Fed. Cir. 1998); *Hyatt* v. *Boone*, 146 F.3d 1348, 1352-55 (Fed. Cir. 1998); *Estee Lauder Inc.* v. *L'Oreal, S.A.*, 129 F.3d 588, 592-93 (Fed. Cir. 1997); *Mahurkar* v. *C.R. Bard, Inc.*, 79 F.3d 1572, 1577-79 (Fed. Cir. 1996); *Burroughs Wellcome Co.* v. *Barr Labs.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994); *Griffith* v. *Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987); *Bey* v. *Kollonitsch*, 806 F.2d 1024, 1026 (Fed. Cir. 1986); *Morgan* v. *Hirsch*, 728 F.2d 1449, 1452 (Fed. Cir. 1984).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.3**

<u>**PRIOR ART – PRIOR KNOWLEDGE OR PUBLIC USE**</u>

The prior public use of a claimed invention may be prior art to the patent claims under two different circumstances.  The first is where the invention was known to or used by someone other than the inventors before the date of invention by the inventors on the patent.  The second is where the invention was publicly used by the inventors, the patent owner, or anyone else more than one year before the application for the patent was filed.  In this case, that date would be November 9, 1997.

In both circumstances, the public use must have been in the United States.  Prior public use or knowledge of the claimed invention outside the United States is not prior art to a patent claim.

Use or knowledge by someone other than the inventors may be prior art if it was before the date of invention by the inventor on the patent, or more than one year before the filing of the application for the patent.  In either case, a prior use by someone other than the inventors or the patent owner will not be prior art unless it was public.  Private or secret knowledge or use by another is not prior art.

If the prior use was more than one year before the filing date of the application for the patent, then the date of invention for the patent claims is irrelevant.  A public use more than one year before the patent application was filed will be prior art regardless of the date of invention.

A prior use more than one year before the application filing date by the inventors or the patent owner will be prior art if it was for commercial purposes, even if it was done in secret.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 10.6.4; *Woodland Trust* v. *Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Lockwood* v. *Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.4**

**PRIOR ART – ON-SALE OR OFFERED FOR SALE**

The sale or offer for sale in the United States of a product may be prior art to a patent claim covering the product or a method of making the product if the product was sold or offered for sale more than one year before the application for the patent was filed. In this case, that date is November 9, 1997. The date of invention for the patent claims is irrelevant to this category of prior art. If the sale or offer for sale of a product is more than one year before the patent application was filed, then the product or method of making it may be prior art, regardless of the date of invention.

If the sale or offer for sale was of a product or system, then it may be prior art regardless of who made the offer.

In order for there to be an offer for sale, two requirements must be met. First, the product must have been the subject of a commercial offer for sale. Second, the product must be "ready for patenting."

Even a single offer for sale to a single customer may be a commercial offer, even if the customer does not accept the offer.

An invention is ready for patenting if the product offered for sale has been developed to the point where there was reason to expect that it would work for its intended purpose. The product may be ready for patenting even if it is not ready for commercial production, or has not been technically perfected.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 10.6.5 (adapted to fit this case); *Pfaff* v. *Wells Elecs., Inc.*, 525 U.S. 55 (1998); *Space Systems/Loral, Inc.* v. *Lockheed Martin Corp.*, 271 F.3d 1076, 1080 (Fed. Cir. 2001); *Scaltech, Inc.* v. *Retech/Tetra, LLC*, 269 F.3d 1321 (Fed. Cir. 2001); *Group One, Ltd.* v. *Hallmark Cards, Inc.*, 254 F.3d 1041, 1046-47 (Fed. Cir.

2001); *Robotic Vision Sys., Inc.* v. *View Eng'g, Inc.*, 249 F.3d 1307 (Fed. Cir. 2001); *Monon Corp.* v. *Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257-61 (Fed. Cir. 2001); *Vanmoor* v. *Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000); *STX, LLC* v. *Brine, Inc.*, 211 F.3d 588, 590 (Fed. Cir. 2000); *Zacharin* v. *United States*, 213 F.3d 1366, 1370 (Fed. Cir. 2000); *Brasseler, U.S.A.I, L.P.* v. *Stryker Sales Corp.*, 182 F.3d 888, 889 (Fed. Cir. 1999); *Cont'l Plastic Containers* v. *Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1077 (Fed. Cir. 1998); *D.L. Auld Co.* v. *Chroma Graphics Corp.*, 714 F.2d 1144, 1147 (Fed. Cir. 1983); *W.L. Gore & Assocs., Inc.* v. *Garlock, Inc.*, 721 F.2d 1540, 1548-50 (Fed. Cir. 1983).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.5**

## <u>PRIOR ART – PRINTED PUBLICATION</u>

Printed publications from anywhere in the world are prior art if the printed publications were published, either before the inventors made the claimed invention or more than one year before the application for the patent was filed.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it.  It is not necessary that the publication be available to every member of the public.  Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles or scholarly papers that are distributed or available to those skilled in the field of the invention.

The date that a printed publication becomes prior art is the date that it becomes available to the public.

If a printed publication was published more than one year before the application for the patent was filed, then that publication will be prior art, regardless of the date of invention for the patent claims.  The date of invention is irrelevant to this category of prior art.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 10.6.7; *Mahurkar* v. *C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996); *N. Telecom, Inc.* v. *Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990); *In re Cronyn*, 890 F.2d 1158, 1159-61 (Fed. Cir. 1989); *Constant* v. *Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568-69 (Fed. Cir. 1988); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986); *Mass. Inst. of Tech.* v. *AB Fortia*, 774 F.2d 1104, 1108-09 (Fed. Cir. 1985); *In re Wyer*, 655 F.2d 221, 225 (C.C.P.A. 1981).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.6**

**<u>PRIOR ART – PRIOR PATENTS AND PATENT APPLICATIONS</u>**

An issued patent may be prior art to a patent claim under a number of different circumstances.  First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued either before the inventor made the claimed invention, or more than one year before the application for the patent was filed.

If a patent issued anywhere in the world more than one year before the application for the patent was filed, then that patent may be prior art, regardless of the date of invention of the claimed invention.  The date of invention is irrelevant to this category of prior art.

A U.S. patent or published U.S. patent application may be prior art to a patent claim, even if the patent issued or the patent application was published after the date of invention of a claimed invention.  This occurs when the patent application for the U.S. patent was filed by another person before the inventor made the claimed invention.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 10.6.9; 35 U.S.C. § 102(a), (b), and (e) (1984 & Supp. 2001); *Lamb-Weston, Inc.* v. *McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Chu*, 66 F.3d 292, 296-97 (Fed. Cir. 1995); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Baxter Int'l, Inc.* v. *Cobe Labs., Inc.*, 88 F.3d 1054, 1062 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452 (Fed. Cir. 1991).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.7**

**PRIOR ART REFERENCES AND PRIOR PUBLIC USE**

Symantec contends that the asserted claims of the patents-in-suit are anticipated by the following prior art publications and systems or products:

- P. Porras and A. Valdes, "Live Traffic Analysis of TCP/IP Gateways,"  ("*Live Traffic*" various versions);

- P. Porras and P. Neumann, "EMERALD:  Event Monitoring Enabling Responses to Anomalous Live Disturbances," Proceedings of the 20th National Information Systems Security Conference, pp. 353-365, October 9, 1997 ("*Emerald 1997*");

- D. Anderson, T. Frivold, and A. Valdes, "Next-generation Intrusion Detection Expert System (NIDES) A Summary," Computer Science Laboratory, SRI-CSL-95-07, May 1995 ("*Network NIDES*");

- Y. Frank Jou et al., "Architecture Design of a Scalable Intrusion Detection System for the Emerging Network Infrastructure," Technical Report CDRL A005, Dept. of Computer Science, North Carolina State University, April 1997 ("*JiNao Report*");

- Y. Frank Jou and S. Felix Wu, "Scalable Intrusion Detection for the Emerging Network Infrastructure, IDS Program Review," SRI, July 1997 ("*JiNao Slides*");

- L. Todd Heberlein et al., "A Network Security Monitor," Proc. 1990 IEEE Computer Society Symposium on Research in Security and Privacy, pp. 296-304, May 1990 ("*NSM 1990*");

- L.T. Heberlein, B. Mukherjee, K.N. Levitt, "Internetwork Security Monitor," Proc. of the 15th National Computer Security Conference, pp. 262-271, October 1992 ("*ISM 1992*");

- B. Mukherjee, L.T. Heberlein, K.N. Levitt, "Network Intrusion Detection," IEEE Network, Vol. 8 No. 3, pp. 26-41, June 1994 ("*NID 1994*");

- Steven R. Snapp et al., "Intrusion Detection Systems (IDS):  A Survey of Existing Systems and a Proposed Distributed IDS Architecture," CSE-91-7, Feb. 1991 ("*DIDS Feb. 1991*");

- Steven R. Snapp et al., "DIDS (Distributed Intrusion Detection System) – Motivation, Architecture, and An Early Prototype," Proc. 14th National Computer Security Conference, pp. 167-173, October 1991 ("*DIDS Oct. 1991*");

- S. Staniford-Chen et al., "GrIDS – A Graph Based Intrusion Detection System for Large Networks," 19th National Information Systems Security Conference, pp. 361-370, October 1996 ("*GrIDS 1996*");

- Steven Cheung et al., "The Design of GRIDS:  A Graph-Based Intrusion Detection System," Technical Report, UC Davis Department of Computer

Science, Davis California, May 14, 1997 ("*GrIDS 1997*");

- Frank Edward Feather, "Fault Detection in an Ethernet Network via Anomaly Detectors," Ph.D. thesis, Carnegie Mellon University, May, 1992 ("*Feather Thesis*");

- "HP OpenView for Windows User Guide for Transcend Management Software, Version 6.1 for Windows and '97 for Windows NT," 3Com, October 1997 ("*HP OpenView for Windows User Guide*");

- "NetStalker, Installation and User's Guide, Version 1.0.2" (May 1996);

- "RealSecure Release 1.0 for Windows NT 4.0 A User's Guide and Reference Manual";

- "NetRanger User's Guide Version 1.3.1," WheelGroup Corporation, 1997 ("*NetRanger Manual*");

- U.S. Pat. No. 5,825,750, to Horace C. Thompson, entitled "Method and apparatus for maintaining security in a packetized data communications network," filed on March 29, 1996 and issued on October 20, 1998 ("*the '750 patent*");

- Network Security Monitor ("NSM");

- Distributed Intrusion Detection System ("DIDS");

- Graph-based Intrusion Detection System ("GrIDS");

- NetRanger;

- ISS RealSecure;

- HP OpenView; and

- NetStalker.

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.8**

**ANTICIPATION/LACK OF NOVELTY**

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent on the basis of "anticipation" must prove anticipation by the highly probable standard. Symantec's burden to show anticipation is more easily carried when the prior art relied on by Symantec was not before the patent examiner during examination of the patent.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. However, the description used in an item of prior art does not have to be in the same words or use the same terminology as the patent. What is required is that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field. In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is

inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person.  Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.

In this case, Symantec contends the claims-at-issue are invalid because they are anticipated by prior public use, prior knowledge, prior sale, prior patenting, and prior printed publications.

If you find that Symantec has proven that it is highly probable that the claims-at-issue are anticipated, then you must find that the claims are invalid.

**AUTHORITIES**

Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 10.8; *Ecolochem, Inc.* v. *S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co.* v. *IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs.* v. *Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp.* v. *Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *American Hoist & Derrick Co.* v. *Sowa & Sons, Inc*., 725 F.2d 1350, 1359 (Fed. Cir. 1984); *RCA Corp. v. Applied Digital Data Systems, Inc.*, 730 F.2d 1440, 1444 (Fed. Cir. 1984); *C.R. Bard, Inc.* v. *M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998); *W.L. Gore & Assocs., Inc.* v. *Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983); *DataQuill Ltd. v. Handspring, Inc*., 2003 WL 737785, *7 (N.D. Ill. 2003).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.9**

<u>**OBVIOUSNESS**</u>

Symantec also contends that the asserted claims are invalid as being obvious.  In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.

The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or nonobviousness of the asserted claims, the following steps should be taken by you:

First, you should determine the scope and content of the prior art;

Second, you should identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

Third, you should consider the level of ordinary skill in the pertinent art at the time the invention of each asserted claim was made; and

Fourth, you should consider objective evidence of nonobviousness, if any.

Against this background, you will then make your decision as to whether the subject matter of the asserted claims would have been either obvious or nonobvious to a person of ordinary skill in the pertinent art.

**AUTHORITIES**

*IMX v. LendingTree* ("Obviousness").

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.10**

## SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in arriving at your decision on the issue of whether or not the asserted claims are obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem the inventor faced. The scope and content of the prior art includes references that would be considered by a person with ordinary skill in the art to solve a particular problem. A person of ordinary skill in the art knows of all such references.

The prior art in this case includes all prior art listed in the instruction titled "Prior Art References and Prior Public Use" and all other prior art presented at trial.

**AUTHORITIES**

*IMX v. LendingTree* ("Scope and Content of the Prior Art").

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.11**

## DIFFERENCES OVER THE PRIOR ART

In reaching your conclusion as to whether or not the claimed invention was obvious, you should consider any difference or differences between the prior art and the claimed invention. When doing so, each claim must be considered in its entirety and separately from the other claims.

Although it is proper for you to note any differences between the claimed invention and the prior art, you must still determine the obviousness or nonobviousness of the invention as a whole.

**AUTHORITIES**

*IMX v. LendingTree* ("Differences Over the Prior Art").

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.13**

## OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

## (SECONDARY CONSIDERATIONS)

In making your decision as to the obviousness or nonobviousness of the asserted claims of each patent-in-suit, you must consider the following objective evidence which may tend to show nonobviousness of the claims at issue:

1.      Commercial success or lack of commercial success of products covered by the patent;

2.      A long felt need in the art which was satisfied by the invention of the patent;

3.      The failure of others to make the invention;

4.      Copying of the invention by others in the field;

5.      Unexpected results achieved by the invention;

6.      Praise of the invention by Symantec or others in the field; and

7.      The taking of licenses under the patent by others.

There must be a connection between the evidence showing any of these factors and the inventions of the asserted claims if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those described in the asserted claims, then any commercial success may have no relation to the issue of obviousness.


**AUTHORITIES**

*IMX v. LendingTree* ("Objective Criteria Concerning Obviousness (Secondary Considerations)").

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.14**

**OBVIOUSNESS -- HINDSIGHT AND THE SUGGESTION TO COMBINE OR MODIFY**

A critical step in analyzing the patentability of claims pursuant to the obviousness analysis is casting the mind back to the time of invention. Close adherence to this methodology is important to avoid the temptation to rely on hindsight; that is, to consider an invention obvious because of what we now know instead of what was known by people of skill in the art at the time of invention.

The motivation to combine the prior art references need not be express. The teaching, motivation or suggestion to combine may be implicit from the prior art as a whole, rather than expressly stated in the references. To find this implicit motivation, you may look to the knowledge of one of ordinary skill in the art or the nature of the problem to be solved to determine what might have been suggested by the reference to those of ordinary skill in the art.

A single prior art reference can satisfy the obviousness inquiry if there is a sufficient implicit or express suggestion or motivation to modify the teachings of that reference.

**AUTHORITIES**

*Beckson Marine v. Nfm, Inc.,* 292 F.3d 718 (Fed. Cir. 2002); *In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000); *WMS Gaming, Inc. v. International Game Tech.,* 184 F.3d 1339 (Fed. Cir. 1999); *In re Dembiczak*, 175 F.3d 994 (Fed. Cir. 1999); *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp*., 72 F.3d 1577 (Fed. Cir. 1996).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.16**

## WRITTEN DESCRIPTION

Every patent specification must contain a written description of the inventions claimed in the patent.  The purpose of the written description requirement is to make sure that, at the time the application for the patent was originally filed, the inventor had possession of the invention as claimed in the issued patent.  Requiring an adequate description of the invention guards against the inventor's overreaching by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.  Put another way, satisfaction of the description requirement insures that subject matter presented in the form of a claim subsequent to the filing date of the application was sufficiently disclosed at the time of filing so that date of invention can fairly be held to be the filing date of the application.

The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the application for patent adequately described the invention that is ultimately claimed in the issued patent.  To satisfy the written description requirement, the words, structures, figures, and diagrams in the patent specification must fully set forth the claimed invention.  It is not sufficient if the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose.  The application must describe the invention in a manner that is commensurate with the scope of subject matter as it is claimed in the issued patent.  Each claim of a patent must be separately analyzed for compliance with the written description requirement.

Sometimes a written description may fail to disclose details concerning the preferred embodiment.  If the undisclosed details were the only known way of carrying out the claimed

invention, then the failure to disclose such details was not merely the failure to disclose one example of the claimed invention.  It was a failure to disclose the actual teaching of the patent.

Incorporation by reference provides a method for integrating material from certain other documents into a patent specification by citing such material in a manner that makes clear what specific material is being made part of the patent specification as if it were explicitly contained therein.  To incorporate material by reference, the patent specification must identify with detailed particularity both the specific material that is being incorporated from the other document and where that material is contained in the referenced document.

For purposes of adequately describing the teachings necessary to practice the claimed invention, a patent application may not simply incorporate materials by reference if the materials incorporated by reference are not generally available to the public.  Nor may a patent applicant rely on incorporation by reference to disclose materials that are essential to understanding the teachings of the patent unless the incorporation by reference specifically refers to essential materials found in a U.S. patent or an allowed U.S. patent application.

**AUTHORITIES**

Model Patent Jury Instructions for the Northern District of California 4.2a; *Chiron Corp.* v. *Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004); *Enzo Biochem, Inc.* v. *Gen-Probe Inc.*, 285 F.3d 1013, 1018 (Fed. Cir. 2002); *Turbocare Div. of Demag Delaval Turbomachinery Corp.* v. *General Elect. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001); *Advanced Display Systems, Inc. v. Kent State University*, 212 F.3d 1272, 1282-83 (Fed. Cir. 2000); *Tronzo* v. *Biomet Inc.*, 156 F.3d 1154, 1158-60 (Fed. Cir. 1998); *Gentry Gallery, Inc.* v. *Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Lockwood* v. *Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1562 (Fed. Cir. 1991); *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1455 -56 (Fed. Cir. 1984); *General Elec. Co. v. Brenner*, 407 F.2d 1258, 1261-62, 159 USPQ 335, 337 (D.C. Cir. 1968).

**SYMANTEC'S PROPOSED INSTRUCTION NO. 3.18**

<u>**BEST MODE**</u>

If one or more of the inventors knew of a best way, or "mode," of making, using and/or practicing any of the inventions claimed in the patents-in-suit at the time the application for the patent was filed, then the patent specification must contain a description that is sufficient to enable a person of ordinary skill in the art to identify and practice that best mode of the invention.  This is called the "best mode" requirement.

The purpose of the best mode requirement is to ensure that the public obtains a complete disclosure of the best mode of making, using or practicing an invention known to the inventor. The best mode requirement prevents an inventor from obtaining a patent while, at the same time, withholding from the public his or her preferred way of making or using the claimed invention.

In deciding whether the inventors in this case fulfilled their obligation to disclose the best mode, you must separately address two questions:

(1)  As of the date the patent application was filed on November 9, 1998, did the inventors contemplate a way—or mode—of making, using, or practicing the claimed invention that they preferred or considered to be better than any other mode?

If, as of the date the patent application was filed on November 9, 1998, you find that none of the inventors contemplated the use of a best mode for making, using, or practicing any of the inventions claimed in any of the claims-in-suit – you should stop there.  The patent cannot be invalid for failure to disclose a mode that none of the inventors contemplated as their best mode when the application was filed.  If, however, as of the date the application for patent was filed, you find that one or more of the inventors contemplated the use of a best mode for making, using or practicing any of the inventions claimed in the claims-in-suit, then you must consider the next question.

(2)  Does the patent specification describe the invention in a manner sufficient to enable a person of ordinary skill in the art to identify, make, use and practice the best mode

contemplated by the inventors?  This question is objective.  It depends, not on what the inventors thought or understood, but rather on what a person of ordinary skill in the art would have understood and learned by reading the patent specification at the time the application for patent was filed.

A patent describes the best mode if a person of ordinary skill in the art would have been able to practice or implement the best mode without undue experimentation by reading the patent specification when it was filed.  The appropriate question is not whether the inventors referred to the best mode.  Rather, the appropriate question is whether the inventors' disclosure was adequate to enable one skilled in the art to make, use and practice the best mode contemplated by the inventors.

Finally, it is not necessary that the inventors have an intent to conceal their best mode.  Specific intent to deceive or conceal is not required.

**AUTHORITIES**
Federal Circuit Bar Ass'n Model Patent Jury Instruction No. 10.4; *Mentor H/S, Inc.* v. *Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Eli Lilly & Co.* v. *Barr Labs., Inc.*, 222 F.3d 973, 980-84 (Fed. Cir. 2000); *N. Telecom Ltd.* v. *Samsung Elecs. Co.*, 215 F.3d 1281, 1285-89 (Fed. Cir. 2000); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535-37 (Fed. Cir. 1987); *United States Gypsum Co.* v. *Nat'l Gypsum Co.*, 74 F.3d 1209, 1212, 1215-16 (Fed. Cir. 1996); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 790 (Fed. Cir. 1995); *Glaxo Inc.* v. *Novopharm Ltd.*, 52 F.3d 1043, 1049-52 (Fed. Cir. 1995); MPEP 608.01(v); *Transco Prods. v. Performance Contracting, Inc.*, 38 F.3d 551, 559 n. 10 (Fed. Cir. 1994); *Envirex, Inc. v. FMC Corp.*, 1993 WL 572321, *13-14 (E.D. Wis.,1993); *Christianson v. Colt Industries Operating Corp.*, 609 F. Supp. 1174, 1179-83 (N.D. Ill. 1985); *White Consol. Industries, Inc. v. Vega Servo-Control, Inc.*, 214 U.S.P.Q. 796, 824 -826 (S.D. Mich. 1982), *aff'd*, 713 F.2d 788 (Fed. Cir. 1983).