IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation, ) ) ) Plaintiff, ) ) v. ) ) INTERNET SECURITY SYSTEMS, INC., ) a Delaware Corporation, INTERNET ) SECURITY SYSTEMS, INC., a Georgia ) Corporation, and SYMANTEC ) CORPORATION, a Delaware Corporation, ) ) Defendants and ) Counterclaim-Plaintiffs. ) | C. A. No. 04-1199 (SLR)  **PUBLIC VERSION** |

**DEFENDANTS' JOINT MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:
Holmes J. Hawkins III
Bradley A. Slutsky
Natasha H. Moffitt
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309

Theresa A. Moehlman
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036

*Attorneys for Defendants Internet Security Systems, a Delaware Corporation, and Internet Security Systems, a Georgia Corporation*

Dated: November 13, 2006
Public Version Dated: November 15, 2006

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS JAMES HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
rherrmann@morrisjames.com
mmatterer@morrisjames.com

OF COUNSEL:
Lloyd R. Day, Jr.
Robert M. Galvin
Paul S. Grewal
DAY, CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Blvd.
Cupertino, California 95014

Michael J. Schallop
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, California 95014

*Attorneys for Defendant Symantec Corporation*

Defendants Internet Security Systems, Inc., a Delaware corporation, Internet Security Systems, Inc., a Georgia corporation (collectively "ISS"), and Symantec Corporation ("Symantec")[1] respectfully move this Court, pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927, for an order awarding Defendants the reasonable attorneys' fees and expenses they incurred in connection with this litigation together with interest.

## BACKGROUND

Plaintiff SRI International, Inc. ("SRI") filed this suit on August 26, 2004 and, over the following two years, accused Defendants of infringing four United States patents: U.S. Patent Nos. 6,484,203 ("the '203 patent"), 6,708,212 ("the '212 patent"), 6,321,338 ("the '338 patent"), and 6,711,615 ("the '615 patent"). (D.I. 1). From the outset of this litigation, Defendants mounted a steadfast defense against SRI's claims based on the invalidity, unenforceability, and non-infringement of these patents. (D.I. 38-40).

On October 17, 2006, this Court found that the four patents-in-suit are anticipated *as a matter of law* under 35 U.S.C. § 102(b) as a result of SRI's *own* publication of SRI's *Live Traffic* paper on the Internet and SRI's *Emerald 1997* paper.[2] (D.I. 471). The Court also found that Symantec did not infringe the '338 patent. (D.I. 469). Unfortunately, Defendants' vindication comes at a very late stage in the litigation, only <u>after</u> SRI forced Defendants to spend more than two years in disruptive litigation, participating in over 90

---

[1] ISS and Symantec are sometimes collectively referred to herein as "Defendants."

[2] The Court entered judgment in favor of Defendants and against SRI on October 27, 2006. (D.I. 473).

depositions, reviewing and producing over 6 million pages of documents,[3] and preparing for trial -- all the while incurring millions of dollars in fees and expenses to defend against alleged inventions that SRI itself publicized more than one year before applying for the patents, without informing the USPTO or Defendants of that fact.

The circumstances in this case demonstrate that SRI's assertion of the patents-in-suit against Defendants has been frivolous and vexatious from the start, and that an award of attorneys' fees and expenses is warranted. SRI's internal documents show that it had proof of its own invalidating public disclosure of the *Live Traffic* paper on its FTP site in August 1997. (*See* SRIE 0460761, attached hereto as Ex. A). SRI also was intimately familiar with the *Live Traffic* and *Emerald 1997* papers -- the two publications that the Court held anticipated the patents-in-suit. The named inventors themselves authored these SRI papers, which described at length the *same* EMERALD system described in the patents using virtually the *same* terminology and diagrams as in the patents.[4] (*See Live Traffic* paper, attached hereto as Ex. B; *Emerald 1997* paper, attached hereto as Ex. C).

I. **SRI'S ATTEMPTS TO DRIVE UP DEFENDANTS' LITIGATION COSTS**

Notwithstanding SRI's command of these facts prior to and during the litigation and its awareness of its invalidating public disclosure of the *Live Traffic* paper in August 1997, SRI vexatiously pressed forward with the litigation. In an effort to "beat down" Defendants during discovery by running up millions of dollars in attorneys' fees and

---

[3] ISS alone produced over four million pages in this litigation, which amount does not include the source code it made available electronically for all of the accused products at issue in this litigation.

[4] Indeed, SRI copied entire figures and paragraphs from the papers into SRI's later-filed patent specification.

2

costs, SRI sought sweeping discovery and millions of documents relating to products that had not been accused in the litigation. (*See* SRI's First Set Of Requests For Prod. to ISS-GA, attached hereto as Ex. D, at 4 (defining "Accused Products" as encompassing ***all*** intrusion detection, prevention, and analysis products, *including but not limited to* Proventia and SiteProtector, that were made, used, sold, offered for sale, or imported from 2001 to present); SRI's First Set of Requests for Prod. to Symantec, attached hereto as Ex. E, at 4 (defining "Accused Products" as encompassing ***all*** computer network intrusion detection, prevention or analysis software products, *including but not limited to* ManHunt, Symantec Security Gateway, Symantec EventManager for Intrusion Protection and Symantec Security Management System)).

SRI also withheld from Defendants its infringement contentions relating to certain patents and patent claims until expert discovery -- more than five months after SRI's infringement contentions were due.[5] (*See* Expert Report Of Dr. George Kesidis On Infringement, attached hereto as Ex. F, at 1 (asserting for the first time that ISS infringes the '338 patent, and that ISS infringes 33 additional claims of the '203 and '615 patents)).

Despite ISS's production of millions of pages of documents relating to products spanning eight ISS product lines, SRI, once faced with Defendants' prior art contentions, confined its infringement contentions against ISS to: (1) a single feature of a single version of a single ISS product (the Attack Pattern Component of SecurityFusion version

---

[5] The Court ultimately rejected SRI's belated attempt to assert the new patent claims. (*See* 05/17/06 Hearing Tr. (D.I. 242) at 45:5-19; 06/21/06 Order (D.I. 304) (stating that SRI's "request to add claims 74 and 79 of the '615 patent is denied, as the record contains no compelling evidence that inclusion of the claims could not have occurred timely or that inclusion now, after the close of both fact and expert discovery, would not unduly prejudice defendants")).

3

2.0) when operating in combination with ISS's sensors, and (2) ISS's new ADS product released in March 2006. (*See* Ex. F at 1).

In addition, SRI continued to press its infringement contentions on the '338 patent against Symantec, well after SRI's own expert admitted that he simply "did not know" whether it was more likely than not that Symantec's ManHunt Products actually performed the claimed steps of the patent. (*See* Opening Br. in Supp. of Symantec's Mot. for Summ. J. of Non-Infring. (D.I. 287) at 2-3). Dr. Kesidis' deposition was taken on May 25, 26 and 29, 2006. However, it was not until September 8, 2006 -- after the completion of all summary judgment briefing and argument -- that SRI first indicated it would not be pressing the '338 patent at trial against Symantec. (*See* 09/08/06 letter from T. Miller to P. Grewal, attached hereto at Ex. G).[6] By forcing Symantec to continue to defend against baseless infringement accusations through the end of summary judgment briefing, SRI again needlessly drove up Defendants' costs.

Similarly, SRI continued to press its infringement contentions on the '212 patent after it was well aware that the *Emerald 1997* reference was anticipatory. At his March 23, 2006 deposition, the inventor Mr. Valdes conceded that all of the limitations of the independent claims of the '212 patent were disclosed in *Emerald 1997*. (*See* Defs.' Opening Br. in Supp. of Joint Mot. for Summ. J. of Invalidity (D.I. 299), Brown Decl. Ex. U (D.I. 301) at 466-67; Defs.' Joint Reply Br. in Supp. of Mot. for Summ. J. of Invalidity (D.I. 400) Godfrey Decl. Ex. TT (D.I. 402) at 450-451). SRI's briefing tried to deny this fact, but the Court found that the inventor did so testify. (*See* D.I. 471 at 19

---

[6] In addition, SRI's failure to provide an adequate stipulation regarding possible future assertion of the '338 claims against Symantec necessitated Symantec's request that the Court resolve its summary judgment claims regarding the '338 patent. (*See* 09/26/06 letter from R. Herrmann to the Honorable Sue L. Robinson (D.I. 461)).

4

n.21). Yet SRI continued to press this patent, despite the fact that SRI had no proof to support its argument that *Emerald 1997* was not enabled, other than unsupported claims from their expert, Dr. Kesidis. The Court's Opinion specifically noted the dearth of SRI's proof on this patent, explaining:

> Dr. Kesidis provided no analysis regarding the alleged differences between EMERALD 1997 and the disclosure of the '212 patent, nor any supporting evidence for his interpretation that EMERALD 1997 was a mere statement of an "intent to try."

(D.I. 471 at 21). Despite SRI's knowledge of the relevance of the *Emerald 1997* paper and the inventor's own admissions about its anticipatory nature, SRI continued to press the '212 patent, again unjustifiably raising Defendants' costs.

## II. SRI'S REFUSAL TO INVESTIGATE AND ADDRESS THE IMPLICATIONS OF THE *LIVE TRAFFIC* PUBLICATION

SRI should not have filed this lawsuit. Prior to filing this lawsuit, SRI either completely failed to investigate or chose to ignore its own internal documents demonstrating an early, invalidating 102(b) publication of *Live Traffic*. (*See* Ex. A (SRIE 0460761); D.I. 368 Ex. G (SRI 105589-105609); D.I. 368 Ex. H (SRIE 0053253, SRIE 0053201, SRIE 0051584); D.I. 368 Ex. K (SRIE 0053363, SRIE 0053367)).

Even after Defendants filed invalidity contentions claiming that the *Live Traffic* paper was 102(b) prior art, SRI and its counsel willfully turned a blind eye to SRI's early August 1997 *Live Traffic* publication, unjustifiably asserting that "the earliest date alleged for availability of [the *Live Traffic* paper] is November 10, 1997, less than one year before the filing date." (*See* 12/15/05 SRI's Resps. to Def. ISS-GA's Second Set of Interrogs., attached hereto as Ex. H, at 8; 05/05/06 SRI's Supp. Resp. To ISS-GA's Interrogs., attached hereto as Ex. I, at 11-12).

Defendants then noticed a 30(b)(6) deposition on the topic of the publication of *Live Traffic*. In December 2005, Defendants issued a Rule 30(b)(6) notice seeking SRI's testimony on:

> 4.  SRI's practices and policies for posting information to websites accessible to individuals not employed by SRI, including www.csl.sri.com, www.sdl.sri.com, and ftp.csl.sri.com, and for archiving or otherwise saving such information.
>
> 6.  The dates and circumstances when SRI first made the following publications available on websites accessible to individuals not employed by SRI, including an identification of the website, the person who posted each publication to the website, and the person responsible for the decision to post each publication to the website.
>
>     . . .
>
>     P. Porras and A. Valdes, "Live Traffic Analysis of TCP/IP Gateways," http://www.sdl.sri.com/projects/emerald/live-traffic-html, Internet Society's Networks and Distributed Systems Security Symposium, Nov. 10, 1997 [SYM_P_0068844- SYM_P_00688651].
>
> 7.  The dates and circumstances when the documents listed in Topic 6 above were first published and/or disclosed to individuals not employed by SRI.

(*See* 12/16/05 FRCP 30(b)(6) Notice, attached hereto as Ex. J, at 7-8). Defendants requested the testimony on these topics early on so they would have an opportunity to conduct further discovery. (*See* 01/11/06 letter from J. Loeb and J. Blake to K. Prescott, attached hereto as Ex. K; 01/18/06 letter from J. Loeb and J. Blake to K. Prescott, attached hereto as Ex. L).

However, SRI obstructed Defendants' efforts to obtain deposition discovery relating to SRI's early disclosures by designating witnesses who were not knowledgeable or adequately prepared on the relevant topics. SRI initially designated David Gutelius to testify on SRI's behalf concerning the materials posted to SRI's websites. When Defendants realized that Mr. Gutelius was an employee "new to SRI" as of July 2000,

6

and therefore unlikely able to testify concerning postings predating the critical date of the patents, Defendants complained about SRI's designation. (*See* 01/13/06 letter from J. Blake to K. Prescott, attached hereto as Ex. M). SRI waited until the *day before* Dr. Gutelius' deposition to inform Defendants by phone that it was changing the designee -- Mr. Porras would now testify concerning materials posted to SRI's website on or before November 9, 1997. SRI, however, waited to provide Mr. Porras until *the second to last day of fact discovery* -- depriving Defendants of any opportunity to conduct follow-up discovery.

Given the late date, Defendants wrote to SRI to express their hopes of getting a properly prepared witness and listed all topics on which SRI had designated Mr. Porras, including the dates of posting *Live Traffic* to the SRI website. (*See* 03/20/06 letter from J. Loeb and J. Blake to K. Prescott, attached hereto as Ex. N). Notwithstanding, Mr. Porras was not adequately prepared to testify concerning these important topics, particularly given the fact that he had not reviewed any of the documents evidencing his early posting of the *Live Traffic* paper.

When questioned about his preparation, Mr. Porras testified that the only people he met with were his attorneys and that the only documents he *may* have looked at were the deposition notices and the *Live Traffic* and *Emerald 1997* papers themselves. (*See* Porras 30(b)(6) Dep. Tr., attached hereto as Ex. O, at 11:22-12:13; 18:8-24). When questioned about his preparation to answer questions regarding when *Live Traffic* was posted on the Internet, Mr. Porras responded that all he did was look at a "snapshot" of *Live Traffic* and briefly discuss it with counsel. (*See* Ex. O at 21:23-22:11). Not surprisingly, when asked whether he recalled posting the *Live Traffic* paper to the FTP

site in August 1997, Mr. Porras simply could not recall. (*See* Ex. O at 111:1-20; Ex. A (SRIE 0460761)).

It was not until SRI's June 16, 2006 summary judgment briefing that SRI even acknowledged and made any effort to rebut the invalidating disclosure of the *Live Traffic* paper on its FTP site. (*See* SRI's Opening Br. In Supp. Of Its Mot. For Partial Summ. J. That The Live Traffic Article Is Not A Section 102(b) Printed Publ. (D.I. 271) ("SRI's Opening Br.") at 5-9). Even then, SRI only disputed the public nature of the disclosure. (*See id.*).

Tellingly, SRI *did not* dispute on summary judgment that the *Live Traffic* paper anticipated all of the asserted claims of the four patents-in-suit,[7] nor could it do so. As SRI conceded in its summary judgment filings, the inventors recognized -- before they even filed for the first patent -- that the *Live Traffic* paper disclosed many of their alleged inventions. (*See* SRI's Reply In Supp. Of Its Mot. For Partial Summ. J. That The Live Traffic Article Is Not A Section 102(b) Printed Publ. (D.I. 377) ("SRI's Reply Br.") at 2). Given the inventors' admitted recognition of the materiality of their prior publication to the patentability of their "inventions," it is inconceivable and inexcusable that no one at SRI or SRI's counsel investigated this issue prior to filing this lawsuit, or investigated this issue during the pendency of this lawsuit, despite repeated requests for such information from Defendants.[8]

---

[7]   *See* D.I. 471 at 7 n.11 (noting that although SRI averred at the summary judgment hearing that certain dependant claims of the patents-in-suit would survive, "[a] careful review of plaintiff's submission, however, indicates that no such arguments regarding the dependant claims were presented [in SRI's briefing].").

[8]   In addition, the inventors did not disclose to the USPTO during the prosecution of the patents-in-suit the highly material fact that they had published the *Live Traffic* paper

As Defendants demonstrated in their summary judgment papers, SRI's arguments concerning the alleged public inaccessibility of the *Live Traffic* paper were unsupported by the record evidence. Indeed, the overwhelming evidence in this case revealed that SRI -- and specifically, Mr. Porras -- published the *Live Traffic* paper in August 1997 on a publicly-accessible FTP site. (*See* Ans. Br. Of Defs. ISS And Symantec To SRI's Mot. For Partial Summ. J. That The Live Traffic Article Is Not A Section 102(b) Printed Publ. (D.I. 367) ("Defs.' Ans. Br.") at 3-5). SRI's FTP site was widely known to the members of the intrusion detection field, in part due to SRI's own advertisement of the FTP site. (*See id.* at 3-5). Even Mr. Porras admitted that the FTP site was publicly available. (*See id.* at 3; Ex. O at 16:24-17:1).

Despite SRI's knowledge of its own invalidating disclosure of the *Live Traffic* paper, SRI unreasonably and vexatiously persisted in pursuing its claims in this litigation. As the Court observed, it is at least ironic that SRI, which claims to be a pioneer in protecting information from unauthorized detection, sought to argue that information freely available on the Internet in a location publicized as containing such information, was not publicly accessible to those skilled in the art of intrusion detection. (*See* D.I. 471 at 18 n.19) Nevertheless, because SRI hid this fact and then, when it was exposed, sought to hide from this fact, Defendants were forced to bear significant and unwarranted expense in their defense of this lawsuit over the course of more than two years. Accordingly, an award of reasonable attorneys' fees and expenses is just and appropriate in this case.

---

before the critical date. Equally as egregious and inexplicable, however, is the inventors' disclosure to the USPTO during the prosecution of certain of the patents-in-suit of the *later-published* version of the *Live Traffic* paper (purportedly published *after* the critical date in December 1997).

## ARGUMENT AND CITATION TO AUTHORITIES

I. **THIS IS AN EXCEPTIONAL CASE AND AN AWARD OF ATTORNEYS' FEES IS WARRANTED UNDER 35 U.S.C. § 285.**

The award of attorneys' fees in a patent case is governed by 35 U.S.C. § 285, which states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]ttorney fees … include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit," including expenses. *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983).

The purpose of this statute is "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit," as well as to deter plaintiffs from improperly bringing clearly unwarranted suits for patent infringement. *See Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000). As the Federal Circuit has recognized:

> Provisions for increased damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285 are available as deterrents to blatant, blind, willful infringement of valid patents. **The *only* deterrent to the equally improper bringing of clearly unwarranted suits on obviously invalid or unenforceable patents is Section 285.**

*Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988), *overruled in part on other grounds by West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 111 S. Ct. 1138, 113 L.Ed.2d 68 (1991) (emphasis added).

Although an award of attorneys' fees under section 285 is within the sound discretion of the district court, "such discretion … may only be exercised upon a specific finding of exceptional circumstances." *See Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.*, 738 F.2d 1237, 1242 (Fed. Cir. 1984). An exceptional case must be

10

established by clear and convincing evidence. *Multi-Tech, Inc. v. Components, Inc.*, 708 F. Supp. 615, 620 (D. Del. 1989).

A court's decision whether to award attorneys' fees involves a two step inquiry. *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1468 (Fed Cir. 1997). First, a court must determine whether the case is an exceptional case. *See id.* Second, it must determine whether an award of attorneys' fees is warranted. *See id.*

In awarding attorneys' fees to a prevailing accused infringer, courts have recognized that exceptional circumstances include, *inter alia*, cases involving inequitable conduct during the prosecution of a patent, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit. *See Bayer,* 738 F.2d at 1242; *Multi-Tech,* 708 F. Supp. at 620 ("In general, '[t]here must be some finding … of unfairness, bad faith, inequitable conduct, vexatious litigation or some similar exceptional circumstances' before an award of attorneys' fees is appropriate."); *see also Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455 (Fed. Cir. 1985) (noting that inequitable conduct is not a prerequisite to an award of attorneys' fees under section 285, even though it is often a basis for a district court in finding that a case is "exceptional"). Factors that may influence a court's decision to award attorneys' fees include the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to the fair allocation of the burden of litigation as between winner and loser. *Isco Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 511 (D. Del. 2003).

### A. The Fact That SRI Ignored Its Own Publication On The Internet Of Invalidating Prior Art Makes This An Exceptional Case.

SRI's vexatious and unjustifiable continuation of this lawsuit against Defendants despite being aware of its own invalidating 102(b) disclosure of the *Live Traffic* paper on the Internet makes this case exceptional. Indeed, the Federal Circuit has recognized that a patent holder's continuance of a suit despite its knowledge of invalidating 102(b) art can render a case exceptional and give rise to an award of attorneys' fees. *See Hughes v. Novi Am., Inc.*, 724 F.2d 122, 123-25 (Fed. Cir. 1984) (acknowledging that attorneys' fees may be awarded against a patent plaintiff for continuing a suit in bad faith).

SRI clearly knew, or should have known upon reasonable investigation, that its suit against Defendants was frivolous.[9] *See Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993) ("A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless."). Yet, SRI pressed forward with the litigation, unjustifiably denying in the face of record evidence that the *Live Traffic* paper was published prior to November 10, 1997. (*See* Exs. H-I).

Even during the summary judgment phase of this case, SRI continued to ignore indisputable evidence and to advance wholly unsupported arguments concerning the alleged inaccessibility of the *Live Traffic* publication on the FTP site. Inexplicably, many of SRI's arguments were belied by the testimony of its own witness, Mr. Porras, who unequivocally testified that the FTP site was publicly available, and that he advertised the FTP site as a source of information for the EMERALD project. (*See* Defs.' Ans. Br. (D.I. 367) at 3-5).

---

[9] It is telling that SRI *did not* dispute in its summary judgment briefing that the *Live Traffic* paper anticipated all of the asserted claims of the four patents-in-suit.

12

Defendants have been forced to bear millions of dollars in attorneys' fees and expenses in the defense of this lawsuit as a result of SRI's pursuit of its frivolous claims in this litigation. SRI's improper assertion of its invalid patents is precisely the type of improper and exceptional conduct that Section 285 is designed to prevent. *Mathis*, 857 F.2d at 754. Accordingly, an award of attorneys' fees and expenses is appropriate in this case.

### B. Several Other Factors Counsel In Favor Of Awarding Defendants Their Reasonable Attorneys' Fees And Expenses In This Case.

A number of other factors in awarding attorneys' fees and expenses also are present in this case. *See Isco Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 511 (D. Del. 2003). For one, this was not a close case. This Court concluded *as a matter of law* and under a *clear and convincing standard* that all asserted claims of the four patents-in-suit were invalid in view of SRI's prior publication of the *Live Traffic* and *Emerald 1997* papers. As a result, the Court properly disposed of this case in its entirety on summary judgment.

In addition, SRI did not dispute in its summary judgment papers that the *Live Traffic* paper described the inventions disclosed in the four patents-in-suit. Indeed, unlike many patent cases, this is not a case where the parties could reasonably disagree about whether the two references anticipated the patents-in-suit. The invalidating references were authored by the named inventors. They described, using the same terminology in the patents, the same EMERALD system described in the patents. And, SRI admitted that the inventors recognized -- before they even filed for the first patent -- that the *Live Traffic* paper disclosed many of their alleged inventions.

13

Instead, SRI suddenly produced in connection with its summary judgment papers -- long after the close of fact discovery -- an invention disclosure form dated October 22, 1998, which SRI alleged "records" the first date of the Live Traffic posting. (SRI's Reply Br. (D.I. 377) at 4). SRI purposefully did not produce this document to Defendants during discovery, even though SRI admittedly knew about this document at the Rule 30(b)(6) deposition of Mr. Porras. (See id. at 4 n.7).

SRI also disputed (albeit unreasonably): (1) whether SRI's August 1997 posting on SRI's FTP site was publicly accessible; and (2) whether the *Emerald 1997* paper was sufficiently enabling to anticipate the claims of the '212 Patent. (*See* SRI's Opening Br. (D.I. 271) at 5-9; SRI's Resp. To Defs.' Joint Mot. For Summ. J. Of Invalid. (D.I. 339) at 14-17). SRI's arguments with respect to these two issues were refuted by the record evidence and ultimately rejected by the Court.

Put simply, SRI -- not Defendants -- was in the best position to understand the nature of the events surrounding its posting of the *Live Traffic* paper to the FTP site, and to come forward with legitimate record evidence during discovery to refute Defendants' claim that the posting constituted an invalidating 102(b) disclosure. SRI's failure to come forward with *any* such evidence, while at the same time seeking discovery of millions of documents and taking over 20 depositions of Defendants' representatives and their customers, underscores the unreasonableness and harassing nature of SRI's continued pursuit of its claims in this action.

SRI has severely injured Defendants, having forced them to defend, at great expense, this litigation. It would be grossly unjust for Defendants to have to bear the burden and expense of SRI's frivolous patent infringement claims in this case when SRI

14

itself invalidated its own patents but ignored that fact. Accordingly, Defendants respectfully submit that an award of attorneys' fees and expenses is warranted under 35 U.S.C. § 285.

## II. AN AWARD OF ATTORNEYS' FEES ALSO IS WARRANTED UNDER 28 U.S.C. § 1927.

An award of attorneys' fees also is warranted under 28 U.S.C. § 1927. Section 1927 provides that a court can levy sanctions upon a party's counsel where he or she unreasonably and vexatiously increases the costs of the proceedings:

> [a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. §1927. The purpose of such sanctions is to deter counsel from delaying judicial proceedings intentionally and unnecessarily. *USA Video Tech. Corp. v. Movielink, LLC*, No. 03-368-KAJ, 2005 U.S. Dist. LEXIS 32529, at *9 (D. Del. Dec. 13, 2005) (citing *LaSalle Nat'l Bank v. First Conn. Holding Group, LLC*, 287 F.3d 279, 288 (3d Cir. 2002)).

In the instant case, sanctions under this section are warranted because SRI's counsel willfully and in bad faith asserted patents that they knew -- or reasonably should have known -- were invalid. Bad faith exists where an attorney pursues a baseless claim that they should have known was frivolous. *See Murphy v. Housing Auth. And Urban Redev. Agency*, 51 Fed. Appx. 82, 83 (3d Cir. 2002) (citing *Murphy v. Housing Auth. And Urban Redev. Agency*, 158 F. Supp. 2d 438 (D.N.J. 2001)). "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as

15

harassment." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002).

As set forth in more detail above, both SRI and its counsel were aware of SRI's invalidating 102(b) disclosure of the *Live Traffic* paper during the course of this litigation. Nonetheless, SRI and its counsel turned a blind eye to the invalidating disclosure, while forging ahead with discovery, forcing Defendants to produce millions of documents and participate in more than 90 depositions of Defendants' representatives, their customers, and others.

It was only when SRI faced the summary judgment stage of this litigation that SRI's counsel addressed SRI's disclosure of the *Live Traffic* paper on the Internet. As set forth above, many of SRI's counsel's arguments challenging the public accessibility of the *Live Traffic* posting were belied by the record evidence in this case.

SRI's counsel's inability to come forward with *any* legitimate record evidence supporting their contention that the *Live Traffic* paper was not publicly accessible underscores the unreasonableness of their continued pursuit of SRI's claims in this action. As a result of SRI's counsel's persistence in pursuing baseless patent claims, SRI's counsel has unreasonably and vexatiously multiplied the costs of these proceedings. SRI's counsel's misconduct has severely injured Defendants, having forced them to defend at a great expense this frivolous litigation. It would be grossly unjust for Defendants to have to bear the burden and expense of SRI's frivolous patent infringement claims in this case. Accordingly, Defendants respectfully request that the Court award Defendants their reasonable attorneys' fees and expenses pursuant to 28 U.S.C. § 1927.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court award Defendants their reasonable attorneys' fees and expenses incurred in this action together with interest. Affidavits detailing the amounts incurred are attached as Exhibits P and Q.

| | |
|---|---|
| POTTER ANDERSON & CORROON LLP | MORRIS JAMES HITCHENS & WILLIAMS LLP |
| By: /s/ Richard L. Horwitz<br>Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>Hercules Plaza 6th Floor<br>1313 N. Market Street<br>Wilmington, Delaware 19801<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com | By: /s/ Richard K. Herrmann<br>Richard K. Herrmann (#405)<br>Mary B. Matterer (#2696)<br>222 Delaware Avenue, 10th Floor<br>Wilmington, Delaware 19801<br>rherrmann@morrisjames.com<br>rnmatterer@morrisjames.com |
| OF COUNSEL:<br><br>Holmes J. Hawkins III<br>Bradley A. Slutsky<br>Natasha H. Moffitt<br>KING & SPALDING LLP<br>1180 Peachtree Street<br>Atlanta, Georgia 30309<br><br>Theresa A. Moehlman<br>KING & SPALDING LLP<br>1185 Avenue of the Americas<br>New York, New York 10036 | OF COUNSEL:<br><br>Lloyd R. Day, Jr.<br>Robert M. Galvin<br>Paul S. Grewal<br>DAY, CASEBEER MADRID & BATCHELDER LLP<br>20300 Stevens Creek Blvd.<br>Cupertino, California 95014<br><br>Michael J. Schallop<br>Symantec Corporation<br>20330 Stevens Creek Blvd.<br>Cupertino, California 95014 |
| *Attorneys for Defendants Internet Security Systems, a Delaware Corporation, and Internet Security Systems, a Georgia Corporation* | *Attorneys for Defendant Symantec Corporation* |

Dated: November 13, 2006
Public Version Dated: November 15, 2006

762269 / 29282

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on November 15, 2006, the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF, which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

John Horvath
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE  19899

Richard K. Herrmann
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306

I hereby certify that on November 15, 2006, I have Electronically Mailed the attached document to the following:

Howard G. Pollack
Michael J. Curley
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
pollack@fr.com
curley@fr.com

Paul S. Grewal
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Boulevard
Suite 400
Cupertino, CA  95014
pgrewal@daycasebeer.com

/s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com

683314