IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SRI INTERNATIONAL, INC., a California
Corporation,

        Plaintiff and
        Counterclaim-Defendant,

    v.

INTERNET SECURITY SYSTEMS, INC.,
a Delaware corporation, INTERNET
SECURITY SYSTEMS, INC., a Georgia
corporation, and SYMANTEC
CORPORATION, a Delaware corporation,

        Defendants and
        Counterclaim-Plaintiffs.

C. A. No. 04-1199 (SLR)

**PUBLIC VERSION**

## SRI INTERNATIONAL'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

Dated:  December 12, 2006

FISH & RICHARDSON P.C.
John F. Horvath (#4557)
Kyle W. Compton (#4693)
919 N. Market St., Ste. 1100
P.O. Box 1114
Wilmington, DE 19889-1114

Howard G. Pollack
Katherine D. Prescott
500 Arguello St., Ste. 500
Redwood City, CA 94063

Attorneys for Plaintiff and Counterclaim Defendant
SRI INTERNATIONAL, INC.

cc:    Richard L. Horwitz, Esq. (by hand)\
        Richard K. Herrmann, Esq. (by hand)
        Holmes J. Hawkins, III, Esq. (by Federal Express)\
        Paul S. Grewal, Esq. (by Federal Express)
        Theresa A. Moehlman, Esq. (by Federal Express)

## TABLE OF CONTENTS

Page(s)

I.    BACKGROUND .................................................................................................2

II.   The circumstances of this case do not justify The extraordinary
      measure of awarding attorneys' fees.........................................................6

      A.    SRI's pursuit of this case was not frivolous.............................................8

            1.    Arguing that the '212 patent was valid in light of
                  the cited reference *EMERALD 1997* was
                  reasonable .............................................................................8

            2.    Until spring 2006, SRI had no reason to suspect
                  that *Live Traffic* was possibly disclosed prior to
                  November 10, 1997......................................................................9

            3.    SRI has legitimate arguments that if a version of
                  *Live Traffic* was temporarily placed on the ftp
                  server "as a backup", there was no invalidating
                  publication..................................................................................10

            4.    Finding a 102(b) bar based on the patentee's
                  actions does not itself render a suit frivolous.............................12

      B.    SRI's defense of its intellectual property was not an
            attempt to drive up Defendants' costs.........................................13

III.  CONCLUSION.................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

*Apple Computer, Inc. v. Articulate System, Inc.,*
234 F.3d 14 (Fed. Cir. 2000)..............................................................7, 9, 11, 15

*In re Croyn,*
890 F.2d 1158 (Fed. Cir. 1989)...................................................................10, 11

*Everpure, Inc. v. Cuno, Inc.,*
875 F.2d 300 (Fed. Cir. 1989)...........................................................7, 9, 11, 15

*Forest Laboratories, Inc. v. Abbott Laboratories,*
339 F.3d 1324 (Fed. Cir. 2003)..................................................................6, 7

*Gardco Manufacturing, Inc. v. Herst Lighting Co.,*
820 F.2d 1209 (Fed. Cir. 1987)........................................................................8

*Glaxo Group Ltd. v. Apotex, Inc.,*
376 F.3d 1339 (Fed. Cir. 2004)..................................................................2, 8

*Hughes v. Novi America, Inc.,*
724 F.2d 122 (Fed. Cir 1984).........................................................................12

*Mach. Corp. of Am. v. Guffiber AB,*
774 F.2d 467 (Fed. Cir. 1985).........................................................................6

*Revlon, Inc. v. Carson Products Co.,*
803 F.2d 676 (Fed. Cir. 1986).........................................................................6

*Speedplay, Inc. v. Bebop, Inc.,*
211 F.3d 1245 (Fed. Cir. 2000)................................................................7, 12

*Union Pacific Resources Co. v. Chesapeake Energy Corp.,*
236 F.3d 684 (Fed. Cir. 2001).........................................................................15

### STATUTES

35 U.S.C. § 102(b) ..........................................................................................11

35 U.S.C. §285 .................................................................................................8

28 U.S.C. § 1927...............................................................................................8

Fed. R. Civ. P. 30(b)(6)....................................................................................4

Defendants seek the extraordinary relief of an extraordinary amount of attorneys' fees **REDACTED** mply because they prevailed on summary judgment. Defendants ignore SRI's proper investigation of the facts, the legitimate arguments that SRI advanced, the novelty of the factual scenario with respect to prior publication, and their own actions during this litigation. Defendants also ignore that SRI prevailed on many issues in the case, including claim construction, and defeated many of Defendants' other summary judgment motions. This case is not exceptional and no award of fees is warranted, particularly an inflated **REDACTED** award that would cripple a non-profit research institute that is trying to legitimately enforce a pioneering portfolio of patents in an area of fundamental research.

Defendants' assertion that SRI litigated this case in bad faith because it was aware of *EMERALD 1997* is particularly meritless. SRI cited this reference to the PTO during the prosecution of the patents-in-suit. All the patents, including the '212 patent, were allowed over it. SRI therefore was entitled to and did rely in good faith on the statutory presumption of validity. The Court's ultimate conclusion on summary judgment to the contrary does not impact the reasonableness of SRI's position.

As for the Court's decision that *Live Traffic* invalidated the patents-in-suit,[1] there are no grounds to conclude that SRI litigated that issue in bad faith.

## REDACTED

During this litigation, SRI reasonably relied on the Invention Disclosure Form and had no reason to suspect that *Live Traffic* had been

---

[1] With respect, SRI continues to believe the Court's legal and factual conclusions in this regard are incorrect and has appealed the grant of summary judgment to the Court of Appeals for the Federal Circuit.

made available earlier – for one week, as a "back up" – until Defendants suggested otherwise in spring 2006 by highlighting one sentence of a 1997 e-mail (the "ps e-mail") suggesting *Live Traffic* was temporarily placed on a ftp server before November 10, 1997.

Once Defendants alerted SRI to this sentence, SRI determined that, based on the existing caselaw and the totality of the facts, it was far from a foregone conclusion that placement of *Live Traffic* on a ftp server as described in the "ps e-mail" rendered it publicly accessible as required to be prior art.    **REDACTED**

reinforced SRI's argument that *Live Traffic* was not accessible to the relevant public. That this Court ultimately rejected SRI's argument does not make even that argument, let alone SRI's entire case, frivolous.

I.    **BACKGROUND**

The application that led to the issuance of all the patents-in-suit was filed on November 9, 1998. D.I. 1, Ex. C. SRI cited *EMERALD 1997* as prior art for the Patent and Trademark Office ("PTO") to consider in determining whether to issue the patents-in-suit. The PTO granted all the patents-in-suit over the disclosure in *EMERALD 1997*. The patents-in-suit were thus presumed valid over *EMERALD 1997* in particular. *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F. 3d 1339, 1348 (Fed. Cir. 2004). As explained in SRI's summary judgment briefing and further below, SRI believed (and still believes) the facts and law justify that presumption and show that the PTO was correct.

With regard to *Live Traffic*.

**REDACTED**

---

[2]    As explained in SRI's reply brief in support of its motion for summary judgment regarding *Live Traffic* (D.I. 377), the e-mail containing this IDF was originally withheld as privileged. While the e-mail content was privileged, the IDF therein was not and was inadvertently withheld. SRI did not purposefully hide this document from Defendants. In fact, Mr. Porras even referenced it during his deposition on March 30, 2006. D.I. 420, Ex.D at 62:21-22. This IDF is entirely consistent with

**REDACTED**

Declaration of

John F. Horvath in support of SRI's Opposition to Defendants' Motion for Attorneys'

Fees and Expenses ("Horvath Decl."), Ex. A. This IDF ultimately led to the filing and

prosecution of the patents-in-suit.

inventors knew of where SRI disc

**REDACTED**

*Id.* Accordingly, the priority

application that led to the issuance of the patents-in-suit was filed on November 9, 1998 –

364 days after the invention had been described on the web.

Nearly six years later, on August 17, 2004, ISS-GA sued SRI in the Northern

District of Georgia seeking a declaratory judgment that the patents-in-suit were not

infringed and/or were invalid. Horvath Decl., Ex.B. In response, on August 26, 2004,

SRI filed this case and the Northern District of Georgia eventually transferred ISS's suit

to Delaware. D.I. 1; Horvath Decl., Ex. C.

In November 2005, more than a year after the case began, Defendants first set

forth their invalidity contentions. They asserted that *Live Traffic* invalidated the patents-

in-suit. Horvath Decl. Exs. D, E. Defendants' contentions, however, cited to a version of

*Live Traffic* that on its face indicated that it had been posted on SRI's web (not ftp) site

on November 10, 1997 and no earlier. Horvath Decl. Exs. D, E, J, K. Neither Defendant

alleged that *Live Traffic* was publicly available prior to November 10, 1997; nor did

Defendants identify any evidence in support of such an allegation. Therefore, SRI

responded that the *Live Traffic* reference to which Defendants pointed was not a § 102(b)

prior art reference. *See e.g.,* D.I. 474, Ex. H.

---

SRI's positions in this case.

3

Later in discovery, Defendants sought testimony from SRI about its policies and practices for posting to and archiving information from various websites, and the dates and circumstances of the posting or other first disclosure of several articles, including *Live Traffic*. D.I. 474, Ex. J at Topic Nos. 4, 6-7. SRI designated Mr. Porras, an author of *Live Traffic*, to provide some of this testimony.[3]

## REDACTED

as the date on which *Live Traffic* was first placed on the Internet. Neither Mr. Porras, SRI, nor SRI's attorneys had any reason to doubt the accuracy of the IDF.

Defendants appear to suggest that SRI orchestrated the scheduling of Mr. Porras' deposition to preclude full discussion of the posting of *Live Traffic* and any follow up discovery. The facts, however, show otherwise. SRI worked cooperatively with Defendants to schedule three full days for Mr. Porras' deposition – March 9, 10, and 30 of 2006. SRI suggested that Defendants begin the deposition of Mr. Porras in his 30(b)(6) capacity [Horvath Decl., Ex. F], but Defendants chose not to do so. They elected to wait until March 30, 2006 to cover the 30(b)(6) topics on which Mr. Porras had

---

[3]    SRI initially designated its Information Technology Systems project manager, Mr. Gutelius, on these topics. Corporate designees do not need to have pre-existing personal knowledge of the information on which they are designated, but may instead educate themselves to provide the requested information. FED. R. CIV. P. 30(b)(6). Mr. Gutelius had been employed at SRI for over five years. In attempting to prepare himself to provide requested information from earlier time periods, he reviewed SRI's archives of content made available on the Internet. It became apparent during that review that due to the limited nature of the archives, Mr. Gutelius would not be able to have complete knowledge on all topics demanded by Defendants in time for his scheduled deposition. Thus SRI immediately designated an alternate witness.

been designated. They also chose not to discuss with Mr. Porras in his personal capacity, during the first two days of his deposition, the "ps e-mail" that he had authored and sent. Thus it was at Mr. Porras' third day of deposition on March 30, 2006 that Defendants highlighted for the first time the one sentence, from amongst the millions of pages the parties exchanged, on which this case ultimately was decided –

**REDACTED**

When Mr.

Porras was confronted with this nine year old e-mail, he was forthright.

**REDACTED**

D.I. 420, Ex.

D at 110:18-111:20.

On April 10, 2006, after the completion of written discovery and after the close of deposition discovery with respect to SRI and Symantec, ISS supplemented its interrogatory responses to allege for the first time that *Live Traffic* was publicly available prior to November 10, 1997. Specifically, ISS stated: "A postscript version of this paper was publicly available on SRI's website as of August 1, 1997 (Porras Rule 30(b)(6) deposition (March 30, 2006) at p. 111) and a html version of this paper was publicly available on SRI's website as of August 25, 1997 (Porras Rule 30(b)(6) (March 30, 2006) deposition at pp. 120-122)." D.I. 206, Ex. A. Symantec did not allege that *Live Traffic* was publicly available prior to November 10, 1997 until it provided an expert report on April 21, 2006. D.I. 226, Ex. H. At no time did either Defendant, by letter or otherwise, suggest that in light of these allegations SRI's pursuit of this case was frivolous or that they would seek fees.

In light of Defendants' supplemental invalidity contentions, SRI reevaluated its validity positions. SRI determined that it was not at all clear that the alleged html posting actually occurred or that temporary placement of a file on a ftp server "as a backup" in

5

1997 constituted "publication." In fact, SRI believed in good faith, and still does believe, that the evidence compelled the opposite conclusion, and SRI therefore sought summary judgment on the issue. D.I. 271, 377.

In October 2006, the Court rejected Defendants' claim constructions, denied ISS's motion for summary judgment of non-infringement, and denied Symantec's motion for summary judgment of non-infringement of three of the asserted patents. D.I. 468, 469. The Court, however, found that one of the patents-in-suit, the '212 patent, was anticipated by the cited reference *EMERALD 1997*. D.I. 471. The Court also found that all the patents-in-suit were anticipated by the temporary placement of *Live Traffic* on SRI's ftp server in August 1997, because the Court found that such placement constituted publication. D.I. 471. SRI respectfully disagrees with the Court's conclusions and has filed a notice of appeal to have the Court of Appeals for the Federal Circuit review the decision. D.I. 475.

## II.    THE CIRCUMSTANCES OF THIS CASE DO NOT JUSTIFY THE EXTRAORDINARY MEASURE OF AWARDING ATTORNEYS' FEES

Attorneys' fees are not routinely assessed against a losing party. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003) ("In interpreting [35 U.S.C.] §285, [the Federal Circuit has] been mindful of the limited circumstances in which an award of attorneys' fees is appropriate. *See Mach. Corp. of Am. v. Guffiber AB*, 774 F.2d 467, 572 (Fed. Cir. 1985). The Senate Report accompanying § 285's predecessor statute, which is applicable to the present statute as well, states "[i]t is not contemplated that the recovery of attorneys' fees will become an ordinary thing in patent suits."); *Revlon, Inc. v. Carson Products Co.*, 803 F.2d 676, 679 (Fed. Cir. 1986). "In the context of fee awards to prevailing accused infringers, [the Federal Circuit has] observed that § 285 is limited to circumstances in which it is necessary to prevent "a gross injustice" to the accused infringer, *see Mach. Corp.*, 774 F.2d at 472 (*quoting* S. Rep. No. 79-1503 (1946)), and [has] upheld findings of exceptionality to prevent such an injustice only

6

when the patentee has procured its patent in bad faith (*i.e.*, committed inequitable conduct before the Patent Office) or has litigated its claim of infringement in bad faith." *Forest Labs.*, 339 F.3d at 1329. Similarly, 28 U.S.C. § 1927 provides for attorneys' fees only when an attorney "multiplies the proceedings in any case unreasonably and vexatiously" such as by pursuing a claim in bad faith.

Mere rejection of a patentee's arguments, including on summary judgment, does not compel the conclusion that the patentee litigated its claim in bad faith. *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 17, 19, 27 (Fed. Cir. 2000) (affirming denial of attorneys' fees where case was summarily decided on various grounds including that patentee had already granted the accused infringer a license to the patents); *Everpure, Inc. v. Cuno, Inc.*, 875 F.2d 300, 302-304 (Fed. Cir. 1989) (affirming denial of attorneys' fees where case was summarily decided on the ground that there was no direct infringement because of the doctrine of permissible repair). Nor does a Section 102(b) bar to patentability based on the patentee's own actions automatically lead to a conclusion of bad faith and the award of attorneys' fees. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1260 (Fed. Cir. 2000) (affirming denial of attorneys' fees where Court ruled that the asserted patent was invalid due to an on-sale bar "based on an invoice that [Plaintiff] produced during trial" and that "predated by two months the date previously given for [Plaintiff's] first sale.").

Here there has been no injustice to ISS or Symantec to justify an award of attorneys' fees. SRI obtained and litigated its patents in good faith. There has been no finding of inequitable conduct and, contrary to any suggestion in Defendants' briefing in support of their motion for attorneys' fees and expenses (D.I. 474 at 8-9), Defendants never even alleged that anyone committed inequitable conduct with respect to *EMERALD 1997*, *Live Traffic* or the "ps e-mail."[4] Moreover, throughout this litigation, SRI has

---

[4]    Any attempt to make such allegations at this point is untimely. Furthermore, there is no evidence of intent to deceive given the disclosure of *EMERALD 1997* to the PTO,

7

made legitimate and legally and factually cogent arguments that its patents were valid, enforceable and infringed. As detailed further below, the Court's decision on summary judgment that the patents were invalid does not render SRI's validity arguments baseless. The circumstances of this case do not come close to justifying an award of attorneys' fees.

### A.    SRI's pursuit of this case was not frivolous

Defendants' claim of entitlement to attorneys fees under either 28 U.S.C. § 1927 or 35 U.S.C. §285 rests almost entirely on the argument that this lawsuit was baseless because SRI allegedly knew or should have known that the asserted patents were invalid in light of the alleged temporary placement of *Live Traffic* on a ftp server in August 1997. D.I. 474 at 12, 15. Defendants also argue that SRI drove up their costs by asserting the '212 patent in bad faith after SRI "was well aware that the *EMERALD 1997* reference was anticipatory." *Id.* at 4.

#### 1.    Arguing that the '212 patent was valid in light of the cited reference *EMERALD 1997* was reasonable

SRI never knew or should have known that *EMERALD 1997* was anticipatory.[5] Abiding by its duty to disclose known material information, SRI cited *EMERALD 1997* to the Examiner during prosecution of the '212 patent. After considering *EMERALD 1997*, the PTO issued the claims of the '212 patent. An issued patent is presumed valid. *Glaxo Group*, 376 F. 3d at 1348 (the accused infringer "has the burden of showing

the contents of the 1998 IDF, and the testimony of the inventors and patent prosecutors. Regardless, even when inequitable conduct is found, a case is not necessarily exceptional and attorneys' fees are not automatically awarded to the accused infringer. *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed. Cir. 1987).

[5] While the Court commented that Mr. Valdes (one of the named inventors) agreed that the limitations of claim 1 of the '212 patent were disclosed in *EMERALD 1997* (D.I. 471 at 19 n. 21), the Court did not find that he testified that *EMERALD 1997* actually enabled one to practice the claimed invention – the basis for SRI's position that *EMERALD 1997* did not anticipate the '212 patent. In fact, he testified expressly to the contrary. Horvath Decl., Ex. G at 552:2-557:23. Thus contrary to Defendants' argument (D.I. 474 at 5), the inventors never admitted that *EMERALD 1997* anticipated the '212 patent.

8

invalidity by clear and convincing evidence." "This burden is 'especially difficult' when, as is the present case, the infringer attempts to rely on prior art that was before the patent examiner during prosecution").

Independent of the PTO's assessment of the validity of the '212 patent in light of *EMERALD 1997*, SRI also reasonably relied on its expert's well-supported analysis. SRI's expert grounded his opinion that *EMERALD 1997* would not have enabled one of ordinary skill in the art to practice the inventions claimed in the '212 patent on the facts that (1) undescribed significant adaptation was required to go from the IDES/NIDES description in *EMERALD 1997* to the claimed enterprise network statistical analysis and (2) there were significant differences between the '212 patent specification and *EMERALD 1997*'s disclosure. D.I. 340, Ex. B at ¶¶ 24, 26. SRI pointed out some of those differences to the Court at the summary judgment hearing. D.I. 454 at 86:7-87:3. While the Court found otherwise, a losing summary judgment argument is not inherently one that was made in bad faith. *Apple Computer*, 234 F.3d at 17, 19, 27; *Everpure*, 875 F.2d at 304. Like the PTO, SRI has always believed and continues to believe based on the facts and the applicable law that the claims of the '212 patent are not invalid in view of the limited teaching of *EMERALD 1997*.

### 2. Until spring 2006, SRI had no reason to suspect that *Live Traffic* was possibly disclosed prior to November 10, 1997

When SRI filed this lawsuit it had no reason to believe that *Live Traffic* had been placed on the Internet in any manner prior to November 10, 1997.

## REDACTED

During this case in 2004-2006, Mr. Porras did not remember placing *Live Traffic* on a web or ftp server prior to November 10, 1997. This is hardly surprising, since the Court's decision rests on a posting that lasted for only one week "as

a back up". Nor did SRI's Internet archives, while having only limited content from the

relevant time period, contain any suggestion of an earlier posting. Thus SRI and its

attorneys had no reason to doubt the date of first disclosure set forth in the 1998 IDF.

That SRI did not locate the one sentence that suggests *Live Traffic* was

temporarily placed on a ftp server in August 1997 from amongst the over three quarters

of a million pages it produced in this case does not mean that SRI's factual investigation

prior to filing this lawsuit or in response to Defendants' 30(b)(6) notice was

unreasonable. SRI relied on the **REDACTED**

With the IDF in hand, there was no reason for SRI to

read through hundreds of thousands of old e-mails to see if, by chance, any of them might

have mentioned placing *Live Traffic* on the Internet.[6] Thus, until Defendants used **REDACTED**

at Mr. Porras' third day of deposition near the end of fact discovery, SRI had no

reason to doubt the 1998 IDF or know that *Live Traffic* was possibly placed on the ftp site

ftp://ftp.csl.sri.com/pub/emerald/ndss98.ps for one week in 1997.

> ### 3.   SRI has legitimate arguments that if a version of *Live Traffic* was temporarily placed on the ftp server "as a backup", there was no invalidating publication

Pursuing this litigation after defendants contended that *Live Traffic* had been

temporarily placed on an ftp server prior to November 10, 1997 was not frivolous. Given

that there was (and is) no caselaw addressing publication in the context of ftp postings,

and that "determination of whether a reference is a "printed publication" under § 102 (b)

involves a case-by-case inquiry into the facts and circumstances surrounding the

reference's disclosure to persons of skill in the art" (D.I. 471 at 11; *see also, In re Croyn*,

890 F.2d 1158 (Fed. Cir. 1989)), SRI had legitimate arguments that temporary, non-

---

[6]   Although of course, in preparation for the depositions of Mr. Porras and others, SRI
searched and reviewed many e-mails and other documents. The fact that a single e-
mail was missed or its significance was not recognized is not surprising, and certainly
does not render this case "exceptional."

indexed placement on a ftp server did not constitute publication under 35 U.S.C.
§ 102(b). SRI will not repeat those arguments in detail here as they have already been
briefed. D.I. 271, 339, 377, 419.

In summary though, given the limited Internet search tools available in 1997 and
the facts that (1) *Live Traffic* was at most placed on the FTP server temporarily for one
week and "as a backup"; (2) the specific location on the server was only provided to one
person outside SRI; (3) Mr. Porras did not intend to publish *Live Traffic* by placing it on
the server; and (4) *Live Traffic* was not indexed, for example as an article in a library is
usually indexed[7], SRI was reasonable in its argument that an interested person of ordinary
skill in the art exercising reasonable diligence would not have been able to locate *Live
Traffic* on the ftp server. That ftp.csl.sri.com may have been publicly accessible (D.I. 474
at 9, 12) does not make it frivolous to argue that a temporary posting at
ftp://ftp.csl.sri.com/pub/emerald/ndss98.ps was not publicly accessible. Although a
library's doors may be open to the public, not every item inside the library is publicly
accessible. *In re Croyn*, 890 F.2d 1158. The fact that nobody claims to have ever
downloaded *Live Traffic* from the ftp server reinforces the reasonableness of SRI's
argument, as do

**REDACTED**

See e.g., Horvath Decl., Exs. H, I. These e-mails suggest that, despite actual
interest, people of ordinary skill interested in the subject matter were nevertheless unable
to locate *Live Traffic*.

While this Court ultimately rejected SRI's argument on summary judgment, a
losing argument is not inherently a frivolous one that justifies an award of attorneys' fees.
*Apple Computer*, 234 F.3d at 17, 19, 27; *Everpure,* 875 F.2d at 304 (affirming denial of
attorneys' fees where case was summarily decided, in part because of the novelty of the

---

[7]     The Court apparently relied on the present-day organization of the ftp site as a proxy
for the "index" at the relevant time. D.I. 471 at 14.

factual situation). Moreover, given the case-specific nature of publication decisions, the novelty of the factual scenario, and evidence that prior to November 10, 1997, people interested in *Live Traffic* were unable to locate it, SRI's arguments that *Live Traffic* was not publicly accessible and thus not prior art had merit. As SRI's arguments were not frivolous, this case is not exceptional and attorneys' fees are not appropriate.

### 4.    Finding a 102(b) bar based on the patentee's actions does not itself render a suit frivolous

While continuing with a suit despite knowledge of invalidating 102(b) art may under some circumstances render a case exceptional and give rise to an award of attorneys' fees (Brief at 12, *citing Hughes v. Novi Am., Inc.*, 724 F.2d 122, 123-25 (Fed. Cir 1984)), not all findings of Section 102(b) bars, and certainly not the facts of the present case, justify such an award. *Speedplay*, 211 F.3d at 1260 (affirming denial of attorneys' fees where defendant argued that patentee should have known its action was unfounded because of a statutory bar). In *Hughes*, where a fee award was affirmed, the 102(b) bar was based on widespread sales more than two years before filing the patent application, the inventor making intentional misrepresentations to the PTO, and the patentee having no good faith belief that the accused product infringed. *Hughes*, 724 F.2d at 124-25. In contrast, here the 102(b) bar was based on temporary placement of a back-up copy on an ftp server for one week, nobody intentionally misrepresented information to the PTO, and SRI had a good faith belief that Defendants infringed as evidenced by the Court's complete denial of ISS's motion for summary judgment of non-infringement and denial of Symantec's motion for summary judgment with respect to three of the patents-in-suit.[8]  SRI's actions have not been egregious – it made a

---

[8]    In fact, based on the Court's claim construction ruling (D.I. 468), the non-infringement theories expressed in Dr. Hansen's non-infringement report (D.I. 288, Ex. F), and the Court's observation that apparatus claims do not require actual deployment (D.I. 469 at 3 fn 4), Symantec has no basis at all to argue non-infringement of the '203 and '615 patents. Thus, but for the Court's adverse decision on two technical and fact-specific issues that could just as well have gone the other way, instead of writing this opposition, SRI would just have concluded a trial in

12

reasonable investigation into the circumstances of *Live Traffic*'s placement on the Internet, had plausible arguments as to why temporary placement on an ftp server was not a publication, and its infringement allegations were well-founded. Just as in *Speedplay*, attorneys fees are therefore unjustified.

**B.     SRI's defense of its intellectual property was not an attempt to drive up Defendants' costs**

SRI and its attorneys pursued this case in good faith and Defendants have presented no evidence of bad faith. In an attempt to create the illusion of vexatiousness, Defendants cobble together snapshots of SRI's defense of its intellectual property and characterize it as an effort by the non-profit SRI to "beat down" two large public corporations by attempting to "drive up" their litigation costs. D.I. 474 at 2. These allegations are groundless.

For example, Defendants complain that SRI engaged in "sweeping discovery." D.I. 474 at 3. SRI engaged, however, in the discovery necessary to assess the scope of Defendants' infringement. Defendants never sought a protective order limiting the scope of SRI's discovery because there was no basis to do so. In fact, Defendants themselves exacerbated the costs associated with discovery in this case by, for example, designating over twenty individuals to testify as 30(b)(6) witnesses; repeatedly preparing and presenting more than one 30(b)(6) designee on the same topic after first presenting unprepared witnesses; using virtually all of their allocated deposition hours whether they needed the time or not, including redundant questioning by lawyers from both Defendants of the same witnesses; often having several attorneys per Defendant and even several experts attend fact depositions; having <u>seven</u> different experts submit reports in contrast to SRI's one; and asserting dozens of marginally relevant prior art references. Moreover, it was not until after the completion of written discovery and after the close of

---

which Defendants would have been largely without an infringement defense. That the difference between victory and defeat is so fine a line in this case shows on its face that this is not an exceptional case (on either side).

13

deposition discovery with respect to SRI and Symantec that Defendants alleged *for the first time* that *Live Traffic* was publicly available prior to November 10, 1997.

Defendants also allege that SRI drove up ISS's costs by hiding the ball with respect to its infringement contentions. D.I. 474 at 3-4. The facts on which they base this complaint show otherwise, and show that SRI does not pursue meritless positions. For example, Defendants complain that SRI sought discovery on eight ISS product lines, but then in its expert reports only accused (1) one feature of an ISS product in combination with ISS sensors and (2) a new ADS product. D.I. 474 at 3-4. ISS fails to mention that the accused ISS sensors themselves encompass several product lines and that SRI had previously identified the accused combination in its November 2005 infringement contentions. ISS also complains that SRI did not disclose certain infringement contentions until expert reports. D.I. 474 at 3. This is true. As SRI does not assert baseless positions, SRI did not assert infringement of certain claims until it had the information it believed necessary to assert them – information that could not have been obtained earlier because either the product had not yet been released (and thus ISS refused to produce responsive discovery) and/or because the responsive information had to be obtained from third parties in view of ISS's claim to not have custody or control over documentation about one of the product lines it was selling. Moreover, it bears repeating that Symantec itself first raised the *Live Traffic* publication issue in its own expert reports, making ISS's claim of prejudice because SRI did the same thing (on another issue) ring hollow.

Finally Defendants allege that SRI drove up Symantec's costs by asserting that it infringed the '338 patent. As detailed in SRI's opposition to Symantec's motion for summary judgment of non-infringement (D.I. 333 at 11-14), SRI's assertion was well grounded – based on reasoned inferences from statements in Symantec technical documents and source code. That the Court found non-infringement of this one patent on summary judgment or that as trial approached SRI chose to withdraw its '338 patent

14

claims against Symantec to narrow the issues for the jury does not change the fact that it was reasonable for SRI to make the assertion. *Union Pacific Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 694 (Fed. Cir. 2001)(affirming denial of attorneys' fees and noting that "Claims . . . frequently are dropped and amended during the course of a lawsuit. Moreover, sound judicial policy encourages a narrowing of issues."); *Apple Computer*, 234 F.3d at 17, 19, 27; *Everpure,* 875 F.2d at 304. There is absolutely no evidence that this case was pursued in bad faith or that SRI or its attorneys improperly attempted to increase Defendants' litigation costs. Indeed, the notion that a non-profit research institute such as SRI would embark on a strategy of driving up litigation costs in a battle with two large, billion-dollar companies is simply absurd.

## III.    CONCLUSION

For the foregoing reasons, SRI respectfully requests that the Court deny Defendants' Motion for Attorneys' Fees and Expenses.

15

Dated: December 5, 2006                FISH & RICHARDSON P.C.


By: */s/ John F. Horvath*
    John F. Horvath (#4557)
    Kyle Wagner Compton (#4693)
    FISH & RICHARDSON P.C.
    919 N. Market St., Ste. 1100
    P.O. Box 1114
    Wilmington, DE 19889-1114
    Telephone: (302) 652-5070
    Facsimile: (302) 652-0607

    Howard G. Pollack
    Katherine D. Prescott
    500 Arguello St., Ste. 500
    Redwood City, CA 94063
    Telephone: (650) 839-5070
    Facsimile: (650) 839-5071

Attorneys for Plaintiff/Counterclaim Defendant
SRI INTERNATIONAL, INC.

80039690.doc

16

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2006, I electronically filed with the Clerk of

Court the PUBLIC VERSION of SRI INTERNATIONAL'S OPPOSITION TO

DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND EXPENSES using

CM/ECF which will send electronic notification of such filing(s) to the following

Delaware counsel.  In addition, the filing will also be sent via hand delivery:

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899

Attorneys for Defendant-
Counterclaimant
Internet Security Systems, Inc., a
Delaware corporation, and Internet
Security Systems, Inc., a Georgia
corporation

Richard K. Herrmann
Mary B. Matterer
Morris James Hitchens & Williams
500 Delaware Avenue, 15th Floor
P.O. Box 2306
Wilmington, DE  19899-2306

Attorneys for Defendant-
Counterclaimant
Symantec Corporation


I hereby certify that on December 12, 2006, I have mailed by Federal Express, the

document(s) to the following non-registered participants:

Holmes J. Hawkins, III
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Email: hhawkins@kslaw.com

Attorneys for Defendant-
Counterclaimant
Internet Security Systems, Inc., a
Delaware corporation, and Internet
Security Systems, Inc., a Georgia
corporation

Paul S. Grewal
Renee DuBord Brown
Day Casebeer Madrid & Batchelder, LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA  95014
Email: pgrewal@daycasebeer.com
Email: rbrown@daycasebeer.com

Attorneys for Defendant-
Counterclaimant
Symantec Corporation

Theresa A. Moehlman
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
Email:  tmoehlman@kslaw.com

Defendant-Counterclaimant
Internet Security Systems, Inc., a
Delaware Corporation, and Internet
Security Systems, Inc., a Georgia
Corporation


/s/ John F. Horvath
John F. Horvath

Document1