## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SRI INTERNATIONAL, INC., a  )
California Corporation,  )
                                )
      Plaintiff,  )
                                )   C. A. No. 04-1199 (SLR)
     v.  )
                                )   **PUBLIC VERSION**
INTERNET SECURITY SYSTEMS, INC.,  )   **DATED:  December 19, 2006**
a Delaware Corporation, INTERNET  )
SECURITY SYSTEMS, INC., a Georgia  )
Corporation, and SYMANTEC  )
CORPORATION, a Delaware Corporation,  )
                                )
      Defendants and  )
      Counterclaim-Plaintiffs.  )

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
## JOINT MOTION FOR ATTORNEYS' FEES AND EXPENSES

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:
Holmes J. Hawkins III
Bradley A. Slutsky
Natasha H. Moffitt
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309

Theresa A. Moehlman
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036

*Attorneys for Defendants Internet Security*
*Systems, a Delaware Corporation, and Internet*
*Security Systems, a Georgia Corporation*

Dated:  December 12, 2006

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
rherrmann@morrisjames.com
rmatterer@morrisjames.com

OF COUNSEL:
Lloyd R. Day, Jr.
Robert M. Galvin
Paul S. Grewal
DAY, CASEBEER MADRID &
BATCHELDER LLP
20300 Stevens Creek Blvd.
Cupertino, California 95014

Michael J. Schallop
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, California 95014

*Attorneys for Defendant Symantec*
*Corporation*

Defendants Internet Security Systems, Inc., a Delaware corporation, Internet Security Systems, Inc., a Georgia corporation (collectively "ISS"), and Symantec Corporation ("Symantec")[1] hereby respectfully file this reply memorandum in further support of their "Joint Motion For Attorneys' Fees And Expenses" (the "Motion").

## INTRODUCTION

As set forth in detail herein and in Defendants' Motion (D.I. 474), SRI has, throughout the course of this litigation, vexatiously pursued its claims against Defendants despite being fully aware of the invalidity of the patents-in-suit. The facts giving rise to the patents' invalidity have always been in SRI's sole possession, custody, and control. Rather than affirmatively investigating and disclosing SRI's invalidating 102(b) publication, SRI willfully turned a blind eye to the record evidence and pressed forward with its spurious claims -- apparently hoping that one or both of the "billion-dollar" defendants would eventually settle out.

By its own admissions, SRI *did not* investigate the facts relating to its 102(b) publication of the *Live Traffic* paper on the Internet. (*See* Opp. (D.I. 480) at 10 ("[T]here was no reason for SRI to read through hundreds of thousands of old e-mails to see if, by chance, any of them might have mentioned placing *Live Traffic* on the Internet.")). SRI now tries to justify its lack of diligence on this critical issue by claiming that it relied upon the content of an Invention Disclosure Form -- a document that SRI never produced to Defendants during discovery. ███████████████

███████████████████████████████████████████

████████████████████████████████████████

---

██████████████ SRI does not cite to -- and cannot cite to -- *any* record evidence to support its claims. (*See* Opp. (D.I. 480) at 1). Indeed, SRI's refusal to produce this document during discovery, despite its purported reliance on it in the defense of its case, deprived Defendants of the opportunity to challenge the authenticity of the Invention Disclosure Form and the veracity of SRI's claims.

Notwithstanding the lack of discovery on this issue, it was unreasonable for SRI to rely exclusively on the Invention Disclosure Form as "proof" that *Live Traffic* was first published on the Internet on November 10, 1997. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

It is completely unreasonable for SRI to make false statements in an Invention Disclosure Form, and then to rely on those false statements during litigation as "proof" of a reasonable investigation.

In short, SRI's failure to investigate critical issues in this case and its continued pursuit of unsupportable claims make this an exceptional case. Attorneys' fees are warranted under both 35 U.S.C. § 285 and 28 U.S.C. § 1927.[2]

---

[2]     To the extent that the Court is concerned with SRI's assertion that a full award of fees would "cripple a non-profit research institute" (*see* Opp. (D.I. 480) at 1) the Court could grant a partial award of fees that would still serve the vital interest of deterring plaintiffs from improperly bringing clearly unwarranted suits for patent infringement.

I.    **SRI'S FAILURE TO CONDUCT A REASONABLE INVESTIGATION INTO THE TIMING OF ITS INVALIDATING 102(b) DISCLOSURE MAKES THIS AN EXCEPTIONAL CASE, AND AN AWARD OF FEES IS WARRANTED.**

A case is exceptional and an award of fees is appropriate where, as here, a patentee fails to investigate the timing of its invalidating 102(b) disclosure. *See L. F. Strassheim Co. v. Gold Medal Folding Furniture Co.*, 477 F.2d 818, 824 (7th Cir. 1973). In *L. F. Strassheim*, the Seventh Circuit awarded fees to an accused infringer, even in the absence of a finding of deliberate fraud, where the patentee did not diligently investigate the timing of its first sale of the patented device -- both at the time the patentee filed for a patent and during litigation initiated by the accused infringer. *See id.* at 821-825. In reaching its conclusion, the court deemed significant "the ready availability of the true facts" to the patentee when the patent application was filed, the patentee's failure to identify the correct dates associated with its first sale of the patented device in its discovery responses, and the patentee's failure to produce critical documents during discovery. *See id.* at 821-823. As in *L. F. Strassheim*, SRI's failure to conduct a reasonable investigation into, and provide discovery on, the circumstances surrounding its invalidating publication of *Live Traffic* make this an exceptional case.

A.    **SRI Failed To Perform A Reasonable Investigation Into, And Provide Proper Discovery Relating To, The Timing Of Its Invalidating Disclosure.**

The circumstances of this case reveal that SRI and its attorneys did not conduct a reasonable investigation into when SRI first published the *Live Traffic* paper -- despite their obligations to the USPTO, to this Court, and to Defendants to do so. *See, e.g.,* 37 C.F.R. 1.56 (relating to a patent applicant's duty to disclose material information to the USPTO); *3M Innovative Props. Co. v. Tomar Elecs.*, No. 05-756 (MJD/AJB), 2006 WL

3

2670037, at *6 (D. Minn. Sept. 8, 2006) (recognizing that "parties are under a duty to complete a reasonable investigation when presented with the opposing party's interrogatories and document requests."). ███████████████████

███████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████

Significantly, SRI *does not* dispute that evidence of SRI's invalidating disclosure was in SRI's possession when SRI filed and prosecuted its patent applications with the USPTO, when SRI initiated this litigation against Defendants, when SRI responded to Defendants' discovery requests, and when SRI presented Mr. Porras as its Rule 30(b)(6) witness to testify concerning SRI's publication of the *Live Traffic* paper. Indeed, Mr. Porras, one of the named inventors on the patents-in-suit, personally published the *Live Traffic* paper to the FTP site in August 1997; he was clearly aware of his own public posting. (*See id.*). While SRI conveniently claims that "[d]uring this case in 2004-2006, Mr. Porras did not remember placing *Live Traffic* on a web or ftp server prior to November 10, 1997,"[3] even a cursory review of Mr. Porras' electronic files at SRI would have alerted SRI and its attorneys to the prior publication. Indeed, SRI produced this critical email *from Mr. Porras' own files* during this litigation, and SRI easily identified the specific portion of its production containing Mr. Porras' documents. (*See* 02/09/2006 letter from K. Rubens to N. Moffitt, attached hereto as Exhibit A, at 2). A simple search

---

[3]    *See* Opp. (D.I. 480) at 9. SRI's unusual qualification that "during this case in 2004-2006" Mr. Porras did not remember placing *Live Traffic* on the Internet begs the question:  What did Mr. Porras remember before SRI filed suit?

string -- ███████████ -- would have easily uncovered the email in Mr. Porras' personal

files. Accordingly, contrary to SRI's assertions throughout its brief, SRI had *every*

reason to know that *Live Traffic* was published on the Internet before the critical date.

Despite having in its possession these critical facts, SRI failed to provide proper

discovery on its invalidating 102(b) disclosure. As a preliminary matter, SRI incredibly

faults Defendants for not alleging in their first set of invalidity contentions that *Live*

*Traffic* was publicly available prior to November 10, 1997. (*See* Opp. (D.I. 480) at 3).

SRI once again has failed to investigate the facts. Defendants could not possibly have

known anything about SRI's prior publication of the *Live Traffic* paper by November 15,

2005 (the date on which Defendants' invalidity contentions were due under the

Scheduling Order) because SRI had not yet produced the critical email evidencing the

102(b) disclosure. Indeed, SRI delayed producing this critical document until February

9, 2006. (*See* Ex. A).

The record demonstrates that SRI and its attorneys did not adequately prepare Mr.

Porras to provide 30(b)(6) testimony relating to the dates and circumstances when SRI

posted the *Live Traffic* article on the Internet. (*See* Mot. (D.I. 474) Ex. J at 7-8 [Topic

No. 6 of Rule 30(b)(6) Notice]). ████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████ (*See* Mot. (D.I. 474) Ex. O at 21:23-22:11, D.I.

420, Ex. E at 25:2-27:6). SRI's implication that Mr. Porras "reviewed hundreds of

documents and spent three full days meeting with SRI's counsel and legal staff" in

preparing himself to testify at his 30(b)(6) deposition on this topic is belied by Mr.

Porras' own testimony.[4]  (*Compare* Opp. (D.I. 480) at 4 *with* Mot. (D.I. 474) Ex. O at 21:23-22:11).

The record also demonstrates that even when SRI had *actual* notice of ISS's claim that SRI's August 1997 publication on the FTP site was an invalidating disclosure, SRI did nothing to rebut ISS's claim.  In fact, SRI unjustifiably maintained in its supplemental interrogatory responses that "the earliest date alleged for availability of [the *Live Traffic* paper] is November 10, 1997, less than one year before the filing date." (*See* Mot. (D.I. 474) Ex. I at 11-12).  At no time did SRI supplement its discovery responses to disclose the Invention Disclosure Form or any of the "substantive" arguments SRI now advances to justify its continued assertion of the patents-in-suit.

### B.    SRI Unreasonably Relies On An Invention Disclosure Form, Which It Never Produced During Discovery, To "Justify" Its Failure To Investigate.

SRI and its attorneys now seek to justify their failure to investigate the facts surrounding SRI's invalidating disclosure by relying on the content of an October 22, 1998 "Invention Disclosure Form," which SRI's attorneys argue ██████████████

████████████████████████████████████████████████

████████ SRI's reliance on this document is wholly unreasonable.

### 1.    SRI Failed To Provide Discovery On The Invention Disclosure Form.

As a threshold matter, SRI ***never produced*** the Invention Disclosure Form to Defendants during discovery, despite SRI's claimed reliance thereon throughout the defense of its case and in "preparing" Mr. Porras for his deposition:

---

[4]    Indeed, SRI disingenuously cites to Mr. Porras' personal deposition as "evidence" of what Mr. Porras did to prepare for his 30(b)(6) deposition. (*See* Opp. (D.I. 480) at 4 (citing D.I. 420 Ex. E)).

- "During this litigation, SRI reasonably relied on the Invention Disclosure Form...." (*see id.* at 1);

- "Mr. Porras even referenced [the Invention Disclosure Form] during his deposition on March 30, 2006.[5]  This IDF is entirely consistent with SRI's positions in this case." (*see id.* at 2 n.2 (citations omitted));



- "With the IDF in hand, there was no reason for SRI to read through hundreds of thousands of old e-mails to see if, by chance, any of them might have mentioned placing *Live Traffic* on the Internet." (*see id.* at 10).

Given SRI's admitted familiarity with and purported reliance on this document during discovery, it is simply incredible that SRI maintains that its failure to disclose this document until July 10, 2006 -- just one day before SRI filed its reply brief in support of its summary judgment concerning *Live Traffic* -- was "inadvertent."  SRI should be precluded from relying on this document to "justify" its failure to investigate its case.

> ## 2.    Contrary To SRI's Assertions, The Invention Disclosure Form Does Not Establish When SRI "First" Published The *Live Traffic* Paper.

The unreasonableness of SRI's reliance on this document is underscored by the fact that the Invention Disclosure Form clearly does not identify *all* the circumstances in which the "invention" was disclosed to third parties.  ████████████

████████████████████████████████

---

[5]    SRI's assertion that Mr. Porras referenced the Invention Disclosure Form during his deposition is belied by SRI's own cite to the record in its opposition brief. ███████

████████████████████████████████████████



Tellingly, SRI does not cite to *any* record evidence in this case to support these claims, nor can it.

Given the ambiguity of what is disclosed in the Invention Disclosure Form, it was unreasonable for SRI and its counsel to rely on this form as "conclusive evidence" of when the *Live Traffic* article was first disclosed.

## II.    SRI'S CONTINUED ASSERTION OF THE '338 PATENT AGAINST SYMANTEC WAS NOT WELL-GROUNDED.

SRI's continued assertion of the '338 patent against Symantec well after SRI's own expert testified that he could not determine whether Symantec's ManHunt Products

actually performed the claimed steps of the patent was not "well-grounded." (*See* Opp. (D.I. 480) at 14-15). Tellingly, SRI does not address in its opposition brief why it delayed until September 8, 2006 -- more than three months after Dr. Kesidis' deposition and after the completion of all summary judgment briefing and argument -- to inform Symantec that it would not be pressing the '338 patent at trial against Symantec. (*See* Mot. (D.I. 474) Ex. G). SRI's attempt to spin its withdrawal of its frivolous claim as a narrowing of the issues for the jury is simply unsupportable in light of Dr. Kesidis' deposition.[6]

### III. SRI'S CONTINUED ASSERTION OF THE '212 PATENT AFTER IT WAS AWARE THAT *EMERALD 1997* WAS ANTICIPATORY WAS NOT WELL-SUPPORTED.

It was not reasonable for SRI to blindly rely upon the rebuttable presumption of the '212 patent's "validity" after it had every reason to believe during this litigation that the *Emerald 1997* reference was anticipatory.[7] At his March 23, 2006 deposition, one of the named inventors, Alfonso Valdes, conceded that all of the limitations of the independent claims of the '212 patent were disclosed in *Emerald 1997*. (*See* Defs.' Opening Br. in Supp. of Joint Mot. for Summ. J. of Invalidity (D.I. 299), Brown Decl. Ex. U (D.I. 301) at 466-67; Defs.' Joint Reply Br. in Supp. of Mot. for Summ. J. of Invalidity (D.I. 400) Godfrey Decl. Ex. TT (D.I. 402) at 450-451). While SRI has tried to deny this fact, this Court concluded that the inventor did so testify. (*See* D.I. 471 at 19 n.21). Notwithstanding SRI's inventor's belief that the '212 patent was invalid, SRI

---

[6]    Indeed, SRI has not even appealed this Court's ruling on the '338 patent to the Court of Appeals for the Federal Circuit.

[7]    Defendants note that the USPTO has now granted petitions for reexamination of all four patents-in-suit in light of the *Emerald 1997* reference.

continued to assert this patent in this litigation, its attorneys unreasonably arguing --

without support -- that *Emerald 1997* was not enabled.

SRI's claim in its opposition brief that it "reasonably relied on its expert's well-

supported analysis" is unsupported by the record.  Indeed, the Court's Opinion

specifically noted the dearth of SRI's proof on this patent, explaining:

> Dr. Kesidis provided no analysis regarding the alleged differences between
> EMERALD 1997 and the disclosure of the '212 patent, nor any supporting
> evidence for his interpretation that EMERALD 1997 was a mere statement of an
> "intent to try."

(D.I. 471 at 21).

## CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' Joint Motion

For Attorneys Fees And Expenses, Defendants respectfully request that the Court award

Defendants their reasonable attorneys' fees and expenses incurred in this action together

with interest.

10

MORRIS JAMES HITCHENS &
WILLIAMS LLP
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
rherrmann@morrisjames.com
rnmatterer@morrisjames.com

OF COUNSEL:
Lloyd R. Day, Jr.
Robert M. Galvin
Paul S. Grewal
DAY, CASEBEER MADRID &
BATCHELDER LLP
20300 Stevens Creek Blvd.
Cupertino, California 95014

Michael J. Schallop
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, California 95014

*Attorneys for Defendant Symantec
Corporation*

Dated:  December 12, 2006
Public Version:  December 19, 2006
768467 / 28434

POTTER ANDERSON & CORROON LLP

By:   */s/ David E. Moore*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

OF COUNSEL:
Holmes J. Hawkins III
Bradley A. Slutsky
Natasha H. Moffitt
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309

Theresa A. Moehlman
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036

*Attorneys for Defendants Internet Security
Systems, a Delaware Corporation, and
Internet Security Systems, a Georgia
Corporation*

*Filing On Behalf Of All Defendants.*

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on December 19, 2006, the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF, which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

John Horvath
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE   19899

Richard K. Herrmann
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306

I hereby certify that on December 19, 2006, I have Electronically Mailed the attached document to the following:

Howard G. Pollack
Michael J. Curley
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
pollack@fr.com
curley@fr.com

Paul S. Grewal
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Boulevard
Suite 400
Cupertino, CA  95014
pgrewal@daycasebeer.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

683314