## EXHIBIT 6

## DEFENDANTS' STATEMENT OF ISSUES OF LAW REMAINING TO BE LITIGATED

Symantec and ISS ("Defendants") submit the following issues of law remaining to be litigated. Should the Court determine that any issue identified in this list is more properly considered an issue of fact, Defendants request that it be so considered. To the extent that Defendants' respective statements of issues of fact contain issues of law, those issues are incorporated herein by reference. Defendants reserve the right to revise this list in light of the Court's decisions on any pending motions. Defendants also reserve the right to modify or supplement this Statement to the extent necessary to fairly respond to any new issues that SRI raises in its Statement of Issues of Law.

This Statement of Law addresses only the liability phase. Damages and willfulness have been bifurcated by the Court and will be addressed separately. Issues of claim construction have already been decided by the Court. (D.I. 468)

## I.     INVALIDITY OF THE SRI PATENTS-IN-SUIT

### A.     The Presumption of Validity and Burden of Proof in Light of Reexamination and Rejection by the Examiner

All of the patents-in-suit are the subject of pending reexaminations. In addition to declaring the reexaminations based on "substantial questions of patentability," the PTO has also issued non-final office actions rejecting all claims as anticipated and/or obvious over the prior art. In order to give due deference to these decisions by the PTO, and to fairly account for the lack of deference owed the PTO's original allowance of the patents in light of the reexamination proceedings and initial rejection of all pending claims, an adjustment to the standard jury instructions regarding the presumption of validity and/or burden of proof is necessary.

The presumption of validity is defined by statute, 35 U.S.C. § 282, and was codified in recognition of the then-current practice of courts. *See* H.R. Rep. No. 82-1923, at 10 (1952). The rationale for the presumption is "that the PTO, in its expertise, has approved the claim." *See KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1745 (2007). The Federal Circuit has interpreted the presumption of validity to require that the challenger prove facts relating to invalidity by clear and convincing evidence, even though that standard is not specified in the statute. *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984).

The Federal Circuit has acknowledged that "[w]hen an attacker, in sustaining the burden imposed by § 282, produces prior art or other evidence *not* considered in the PTO, there is, however, *no reason to defer* to the PTO so far as *its* effect on validity is concerned. Indeed, new prior art not before the PTO may so clearly invalidate a patent that the burden is fully sustained merely by proving its existence and applying the proper law . . . ." *Hoist*, 725 F.2d at 1360-61. Nonetheless, the Federal Circuit has held that the presumption of validity and the clear and convincing standard of proof remain unchanged, despite the fact the PTO may not have previously considered the prior art or evidence raised by a challenger. *Hoist*, 725 F.2d at 1360; *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1050 (Fed. Cir. 1988).

In the Supreme Court's recent decision in KSR, however, the Court acknowledged that when a patent's validity is challenged with prior art that was not before the PTO, "the rationale underlying the presumption—that the PTO, in its expertise, has approved the claim—seems much diminished . . . ." *KSR*, 127 S. Ct. at 1745. The Supreme Court's view is in accord with the view of the other regional circuit court of appeals before the creation of the Federal Circuit. *See, e.g.*, *Penn Int'l Indus., Inc. v. New World Mfg. Inc.*, 691 F.2d 1297, 1300-01 (9th Cir. 1982) ("The basis for the presumption—that the Patent Office has compared the claim of the

patent with the prior art and used its expertise to determine validity—can no longer exist when substantial evidence of prior art not considered by the Patent Office is placed in evidence at trial."); *U.S. Expansion Bolt Co. v. Jordan Industries, Inc.*, 488 F.2d 566, 569 (3d Cir. 1973) ("Since the defendants came forward with significant prior art not considered by the Patent Office, the presumption of validity attaching to plaintiff's patent in this case is weakened.").

Here, the rationale underlying the presumption of validity and the application of a heightened burden of proof is even more diminished. This is not a case where the PTO has failed to consider particular prior art raised by a challenger. Rather, in response to a petition by the challenger, the PTO has not only declared a reexamination, but also issued office actions rejecting all of the claims-in-suit as anticipated and/or obvious. To ignore those subsequent decisions by the PTO would mean that the court would give full and substantial deference to the PTO's issuance of the patents-in-suit, but absolutely no deference or acknowledgement that the same administrative agency has preliminarily determined that its prior determinations were erroneous. As one court noted, the re-examination "determination must be given deference just as other determinations by the PTO." *Amoco Corp. v. Exxon Chem. Co.*, No. C87-242A, 1987 U.S. Dist. LEXIS 14196, at *11 (N.D. Ga. 1987). Application of the presumption of validity and the clear and convincing standard in this context selectively gives deference to one Examiner's decision, but fails to account for the PTO's subsequent administrative proceedings. "The innate function of the reexamination process is to increase the reliability of the PTO's action in issuing a patent by reexamination of patents thought 'doubtful.'" *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985) (quoting House Report at 3). When a patent is subject to both reexamination and litigation, one of the auxiliary functions of the reexamination is "to free the

court from any need to consider prior art without the benefit of the PTO's initial consideration." *Id.*

While Defendants can point to no prior case holding that the burden of proof should be diminished in light of a reexamination and rejection of claims, Defendants submit that this is the correct result in light of the Supreme Court's recent pronouncement in *KSR* and the rationale underlying the presumption of validity and burden of proof — deference to the PTO.

Defendants are aware of at least two district court decisions, decided before *KSR*, which have held that the existence of a reexamination does not affect the presumption of validity or alter the clear and convincing burden of proof. *See E.I. Du Pont De Nemours v. Phillips Petroleum Co.*, 656 F. Supp. 1343, 1354 (D. Del. 1987); *Amoco Corp. v. Exxon Chem. Co.*, No. C87-242A, 1987 U.S. Dist. LEXIS 14196, at *11 (N.D. Ga. 1987). However, even in those cases, the courts recognized that the rulings made during the reexamination proceedings should be considered in determining invalidity. For example, in *Du Pont*, Judge Latchum of this Court noted that "[t]he fact that the reissue/reexamination examiner rejected the claim is only one piece of the total evidence presented at trial which this Court must consider in determining whether [Defendant] has met its burden of providing invalidity." 656 F. Supp. at 1354; *see also Amoco*, 1987 U.S. Dist. LEXIS 14196 at * 11 ("Thus, the grant of the reexamination request by the PTO does not affect the statutory presumption of validity ***but simply serves as evidence which goes toward overcoming that presumption***.").

Defendants therefore request that the Court either (1) instruct the jury that Defendants need only prove invalidity by a preponderance of the evidence with respect to those issues on which PTO has initially rejected the claims during reexamination, or (2) instruct the jury that it may consider the PTO's decision to declare re-examinations and initially reject the claims-in-

suit when determining whether or not Defendants have rebutted the presumption of validity

and proven invalidity by clear and convincing evidence. *See, e.g., Power Integrations, Inc. v.*

*Fairchild Semiconductor Int'l, Inc.*, 2007 WL 2893391, at *1 (D. Del. 2007) ("To the extent

that [Defendant] wishes to make an argument to the jury that, on the facts of this case, the prior

art was not disclosed, and therefore, the presumption of validity is more easily overcome, the

Court concludes that such argument would be appropriate.").

### B.    Conception and reduction to practice

In order to antedate (or establish priority of) an invention prior to the filing date of the

application from which the patents-in-suit claim priority, SRI must show either an earlier

reduction to practice, or an earlier conception followed by a diligent reduction to practice. *See*

*Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993). Conception and reduction to practice

are questions of law, based on related factual findings. *Hybritech Inc. v. Monoclonal*

*Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986). Conception and reduction to practice

must be proven by clear and convincing evidence. *Price*, 988 F.2d at 1190-91.

Conception requires proof that the inventor formed "a definite and permanent idea of

the complete and operative invention, as it is hereafter to be applied in practice," and that the

idea was "so clearly defined in the inventor's mind that only ordinary skill would be necessary

to reduce the invention to practice, without extensive research or experimentation." *Burroughs*

*Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (citations omitted).

"Conception must be proved by corroborating evidence which shows that the inventor

disclosed to others his 'complete thought expressed in such clear terms as to enable those

skilled in the art' to make the invention." *Kridl v. McCormick*, 105 F.3d 1446, 1449-50 (Fed.

Cir. 1997). Where a party seeks to show conception though oral testimony of an inventor, it

must produce independent evidence corroborating that testimony. *Price*, 988 F.2d at 1195.

Such evidence is to be evaluated under a rule of reason. *Id.*

To prove actual reduction to practice, "an inventor must establish that he 'actually prepared the composition and knew it would work.'" *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 592 (Fed. Cir. 1997) (citations omitted). The inventor must also have "contemporaneous recognition and appreciation of the invention represented" by the claims. *Estee Lauder Inc.*, 129 F.3d at 593 (citations omitted).

### C. Anticipation

35 U.S.C. § 102 states in pertinent part:

A person shall be entitled to a patent unless-

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or
…
(e) the invention was described in … a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent[1]…

Anticipation is a question of fact, *see In re King*, 801 F.2d 1324, 1326 (Fed. Cir. 1986).

"A patent is invalid for anticipation when the same device or method, having all the elements contained in the claim limitations, is described in a single prior art reference." *Crown Operations Int'l, Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002). "If a device was 'known or used by others' in this country before the date of invention or if it was 'in public use' in this country more than one year before the date of application, it qualifies as prior art."

---

[1] Recent amendments to 35 U.S.C. § 102(e) do not affect the issues in this case.

*Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997). A public use challenge under 35 U.S.C. § 102(a) or (b) requires corroboration of witness testimony. *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999); *see also In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004); *Novo Nordisk Pharm., Inc. v. Bio-Tech. Gen Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005); *In re Baxter Travenol Labs.*, 952 F.2d 388, 390 (Fed. Cir. 1991).

"A reference is a 'printed publication' within the meaning of section 102(b) if it was 'available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, [could] locate it." *American Stock Exchange, LLC v. Mopex Inc.*, 250 F. Supp. 2d 323, 328 (S.D.N.Y. 2003) (citing *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981)). "If accessibility is proved, there is no requirement to show that particular members of the public actually received the information." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1569 (Fed. Cir. 1988). A reference that is only temporarily displayed, and is not distributed or indexed, may still constitute a "printed publication." *See In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004). "The § 102 publication bar is a legal determination based on underlying fact issues, and therefore must be approached on a case-by-case basis." *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986).

A prior art reference may anticipate without expressly disclosing a particular limitation if that limitation is inherently present in the reference. *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268-69 (Fed. Cir. 1991). The legal standard for inherency is met when the prior art reference describes and enables an embodiment which necessarily includes the claimed subject matter. *See Akamai Techs. Inc. v. Cable & Wireless Internet*

*Servs. Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003).  "[A]nticipation does not require actual

performance of suggestions in a disclosure.  Rather, anticipation only requires that those

suggestions be enabling to one of skill in the art."  *Bristol-Myers Squibb Co. v. Ben Venue*

*Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001).

In order to anticipate, a prior art publication must enable one of skill in the art to

practice the invention without undue experimentation.  *See Novo Nordisk Pharm., Inc. v. Bio-*

*Tech Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005).  Whether a prior art publication is

enabled is a question of law based on underlying factual findings.  *Id.* at 1355.  The patentee

bears the burden to show that a prior art reference is not enabled.  *See Amgen Inc. v. Hoechst*

*Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003); *Novo Nordisk Pharm., Inc. v. Bio-*

*Tech Gen. Corp.*, 2004 U.S. Dist. LEXIS 14960, at *73 (D. Del. 2004).

The Federal Circuit has explicitly noted that the public use or on sale inquiry does not

require an additional enablement finding.  *In re Epstein*, 32 F.3d 1559, 1567-68 (Fed. Cir.

1994).

**D.    Obviousness**

35 U.S.C. § 103 states in pertinent part:

(a) A patent may not be obtained though the invention is not identically
disclosed or described as set forth in section 102 of this title, if the differences
between the subject matter sought to be patented and the prior art are such that
the subject matter as a whole would have been obvious at the time the invention
was made to a person having ordinary skill in the art to which said subject
matter pertains.  Patentability shall not be negatived by the manner in which the
invention was made.

The ultimate question of obviousness is a legal determination based on underlying

facts.  *KSR Int'l, Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1745 (2007); *Graham v. John Deere*

*Co.*, 383 U.S. 1, 17-18 (1966).  While the Court may seek a general verdict from the jury on

the question of obviousness, obviousness remains a question of law.  It is therefore preferable for the jury to also be provided special interrogatories regarding the specific factual issues underlying the question of obviousness, and for the Court to then make the legal conclusion based on those facts. *See Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547 ("When a jury merely reports a general verdict for one of the parties, . . . the decision on a motion for JNOV or on direct appeal requires assumptions respecting its consideration of the evidence. Submission of the obviousness question to the jury should therefore be accompanied by detailed special interrogatories designed to elicit responses to at least all the factual inquiries enumerated in *Graham*, . . . and based on the presentations made in the particular trial."); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339 (Fed. Cir. 2001) (Michel, J., dissenting); Model Patent Jury Instructions for the Northern District of California, Comments Regarding Use of Sample Verdict Form and Sample Verdict Form (Part F) (Nov. 29, 2007).  For example, the Northern District of California's Model Patent Jury Instructions suggest asking the jury: "What difference, if any, existed between the claimed invention and the prior art at the time of the claimed invention?," and then providing each parties contentions for the jury to consider and choose from.  Defendants therefore request that near the close of trial, the parties submit proposed special interrogatories that are narrowly tailored to the underlying factual questions of obviousness that were presented at trial.

A patent claim is invalid for obviousness under 35 U.S.C. § 103 if the differences between it and the prior art are such that the claimed subject matter as a whole would have been obvious to one of ordinary skill in the art at the time the invention was made.  *See Union Carbide Plastics & Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1187 (Fed. Cir. 2002). "Whether a claimed invention is unpatentable as obvious under 35 U.S.C. § 103 is a question

of law based on underlying findings of fact." *Okajima v. Bourdeau*, 261 F.3d 1350, 1354 (Fed. Cir. 2001) (citations omitted). Those facts include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicators of non-obviousness, more commonly termed secondary considerations. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *see also Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1348 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1379 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu Star, Inc.*, 950 F.2d 714 (Fed. Cir. 1991); *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999).

Obviousness may be shown either by a combination of references, or a modification of a single reference. *See Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576-77 (Fed. Cir. 1991). For the purpose of an obviousness inquiry, the hypothetical "person of ordinary skill in the art" is attributed "knowledge of all prior art in the field of the inventor's endeavor and of prior art solutions for a common problem even if outside that field." *In re Nilssen*, 851 F.2d 1401, 1403 (Fed. Cir. 1988).

An "expansive and flexible approach" should be used in evaluating obviousness. The Supreme Court in *KSR Int'l Co. v. Teleflex Inc.* held that "[i]f a person of ordinary skill can implement a predictable variation, § 103 likely bars patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." 127 S. Ct. 1727, 1740-41 (2007). The court may need to consider "interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background

knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *Id.* Although the Court must guard against hindsight bias, such concerns should not deny the Court "recourse to common sense" as part of the obviousness analysis. *Id.* at 1742. A teaching, motivation, or suggestion to combine references may be a "helpful insight," but it is not a requirement for demonstrating obviousness. *Id.* at 1741.

One way to demonstrate that patented subject matter is obvious is to show that "there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *Id.* at 1742. Indeed, "[a]ny need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* In some instances, "the fact that a combination was obvious to try might show that it was obvious under § 103," particularly where there was "a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." *Id.*; *see also Muniauction, Inc. v. Thomson Corp.*, No. 2007-1485, 2008 WL 2717689, at *6 (Fed. Cir. July 14, 2008)

Objective considerations that relate to obviousness or nonobviousness of the subject matter of the asserted claims of the patents include (i) whether products practicing those claims were commercially successful and whether there is a nexus between the invention and any commercial success, (ii) whether there was any long felt need for the claimed invention, and whether the claimed invention satisfied that long felt need, (iii) whether the claimed invention

was or was not praised by others in the field and (iv) whether the accused products were

developed independently.  *See Cross Medical Products*, 424 F.3d at 1322-23; *Ormco Corp. v.*

*Align Tech., Inc.*, No-05-1426, 2006 U.S. App. LEXIS 22306, at *30-33 (Fed. Cir. Aug. 30,

2006).  This list is not exhaustive, however, and may also include additional factors related to

obviousness or nonobviousness.  *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1,

17-18 (1966).

        Objective indications are only relevant to obviousness if there is a logical connection,

or nexus, between them and the specific invention covered by the patent claims.  *Ormco Corp.*,

2006 U.S. LEXIS 22306 at *31.  The patentee bears the burden of showing that a nexus exists.

*See WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999).  A "nexus"

is found when there is a "legally and factually sufficient connection" between the method or

product that is claimed and the method or product that is the subject of the purported objective

indications.  *See Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392

(Fed. Cir. 1988).

        The existence of secondary considerations "does not control the obviousness

determination."  *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed. Cir. 1997).

Where there is a strong prima facie case of obviousness, it cannot be overcome by secondary

considerations.  *See, e.g.*, *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162

(Fed. Cir. 2007); *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008);

*Muniauction, Inc. v. Thomson Corp.*, 2008 WL 2717689, at *7 (Fed. Cir. 2008).

        **E.      Failure to Disclose The Best Mode**

        35 U.S.C. § 112 ¶ 1 states that "[t]he specification … shall set forth the best mode

contemplated by the inventor of carrying out his invention."  "Determining whether a patent

fails to comply with the best mode requirement and is thus invalid involves two factual inquiries." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1064 (Fed. Cir. 1998). "First, it must be determined whether, at the time the patent application was filed, the inventor had a best mode of practicing the claimed invention." *United States Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996). "Second, if the inventor had a best mode of practicing the claimed invention, it must be determined whether the specification adequately disclosed what the inventor contemplated as the best mode so that those having ordinary skill in the art could practice it." *Id.* The first inquiry is subjective and the second is objective. *Nobelpharma*, 141 F.3d at 1064; *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1321 (Fed. Cir. 2006); *see also Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998); *Dana Corp. v. IPC Ltd. P'ship*, 860 F.2d 415 (Fed. Cir. 1988); *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1532 (Fed. Cir. 1991); *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 940 (Fed. Cir. 1990).

It is immaterial whether there is an intent to conceal the best mode. *See United States Gypsum*, 74 F.3d at 1215-16; *Graco, Inc.* v. *Binks Mfg. Co.*, 60 F.3d 785, 789-90 (Fed. Cir. 1995).

A generic disclosure encompassing the best mode may be insufficient: "[e]ven though there may be a general reference to the best mode, the quality of the disclosure may be so poor as to effectively result in concealment." *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1536 (Fed. Cir. 1987).

"Where there exists joint inventorship, a best mode disclosure is equally necessary, even if only one of the inventors contemplates a best mode." *Scaltech, Inc. v. Retec/Tetra, L.L.C.*, No. H-95-4190, 2000 U.S. Dist. LEXIS 21598, at *22 (S.D. Tex. Sept. 8, 2000).

### F.    Failure to Describe The Invention

35 U.S.C. § 112, ¶ 1 states that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same… ." This paragraph also requires in part that the specification contain a "written description" of the invention. Satisfaction of the written description requirement is a question of fact, judged from the perspective of one of ordinary skill in the art as of the relevant filing date. *See Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

In order to fulfill the written description requirement of section 112, the specification must "describe an invention and do so in sufficient detail that one skilled in the art can clearly conclude that 'the inventor invented the claimed invention.'" *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, *119* F.3d 1559, 1566 (Fed. Cir. 1997) (citations omitted). The application itself must describe the invention, and must do so in sufficient detail that one skilled in the art can clearly conclude that the inventor was in possession of the claimed invention as of the filing date sought. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). The test is whether possession of the claimed invention is shown at the time of the earliest application to which priority is claimed. *Vas-Cath*, 935 F.2d at 1563-64. Claims may be no broader than the supporting disclosure, and a narrow disclosure will limit claim breadth. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998); *see also LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005).

To be adequately supported by the disclosure, claimed subject matter must be explicitly or inherently disclosed in the original application. While the meaning of terms, phrases, or

diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled

in the art, the question is not whether a claimed invention is an obvious variant of that which

is disclosed in the specification.  *Martin v. Mayer*, 823 F.2d 500, 504 (Fed. Cir. 1987) (stating

that it is "not a question of whether one skilled in the art might be able to construct the

patentee's device from the teachings of the disclosure … it is a question whether the

application necessarily discloses that particular device.").

## II.     <u>UNENFORCEABILITY OF THE SRI PATENTS-IN-SUIT</u>

Inequitable conduct is a violation of the duty of disclosure as set forth in 37 C.F.R.

§ 1.56 ("Rule 56"), the Rules of Practice of the United States Patent and Trademark Office.

Because a patent by its very nature is infected with the public interest, "[e]ach individual

associated with the filing and prosecution of a patent application has a duty of candor and good

faith in dealing with the [Patent] Office, which includes a duty to disclose to the Office all

information known to that individual to be material to patentability." 37 C.F.R. § 1.56.

Inequitable conduct may occur by omission, such as failing to disclose a material prior art

reference to the Patent Office, or commission, such as by making a material misrepresentation

to a patent examiner.  *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1420 (Fed.

Cir. 1989).  A patent that has been obtained by inequitable conduct is deemed unenforceable.

*Id.* at 1420.  Materiality and intent must both be proven by clear and convincing evidence.

*Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed Cir. 1988).  "A

finding of inequitable conduct is 'an equitable determination' and, therefore, 'is committed to

the discretion of the trial court.'"  *Syngenta Seeds, Inc. v. Monsanto Co.*, 404 F. Supp. 2d 584,

590 (D. Del. 2005).

Inequitable conduct requires a finding that the patentee or one of its agents failed to disclose material information to the patent examiner and that this failure was done with an intent to deceive. *E.g., Molins PCL v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995); *Baxter Int'l. v. McGaw*, 149 F.3d 1321, 1327 (Fed. Cir. 1998). The standard for determining materiality is "based in part on the standard of materiality articulated in the PTO's Rule 56, which describes the duty of candor and good faith, otherwise known as the duty of disclosure, before the PTO." *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006). A misrepresentation or omission is material if there is a substantial likelihood that a reasonable examiner would consider the information important in deciding whether to allow the application to issue as a patent. *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 31 (Fed. Cir. 1999); *see also Digital Control*, 437 F.3d at 1314-16 (discussing the applicability of both the Rule 56 and "reasonable examiner" standards for materiality). Furthermore, "materiality 'is not limited to matters reflected in the claims of a patent.'" *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1132 (Fed. Cir. 2006) (citations omitted).

Generally, evidence of intent to deceive is "inferred from the facts and circumstances surrounding the applicant's overall conduct." *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997). "Direct evidence of intent to deceive or mislead the PTO is 'rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances.'" *Purdue Pharma*, 438 F.3d at 1133-34 (citing *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1329 (Fed. Cir. 1998)).

As the Federal Circuit has stated "this court has inferred the requisite intent to deceive

when a patentee has withheld highly material information such as a key prior art reference and knew or should have known of its materiality." *Purdue Pharma*, 438 F.3d at 1134.  An inference of intent arises when the patentee or its agent fails to provide a credible explanation for its failure to disclose a known material reference. *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005) (upholding finding of intent to deceive where patentee withheld material prior art that it had disclosed to the FDA, and offered no credible, good faith explanation for the withholding); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256-1257 (Fed. Cir. 1997) (upholding finding of intent to deceive where patentee and its counsel knowingly withheld a prior art reference relating to a point of novelty and made no effort to offer a good faith explanation of why it was never cited); *see also Paragon Podiatry Lab.*, 984 F.2d at 1193 (upholding finding of intent to deceive where there was evidence of a knowing failure to disclose pre-critical date commercial sales of the patented device and no explanation was offered).

Although as a general rule a party has no affirmative duty to search for relevant prior art, the Federal Circuit has stated that "one should not be able to cultivate ignorance, or disregard numerous warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art." *FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 526 n.6 (Fed. Cir. 1987); *see also Brasseler, U.S.A., I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) ("Where an applicant knows of information the materiality of which may so readily be determined, he or she cannot intentionally avoid learning of its materiality, even through gross negligence; in such cases the district court may find that the applicant should have known of the materiality of the information.").

Intent to deceive will be more readily inferred if an undisclosed reference is highly

material. *Baxter Int'l*, 149 F.3d at 1327 (noting that the more material the omission, the less evidence of intent will be required in order to find that inequitable conduct has occurred). "[A] patentee facing a high level of materiality and clear proof that it knew or should have known of the materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." *Critikon*, 120 F.3d at 1257.

Conduct pertaining to one patent can taint another patent. *See Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933). This principle has been applied in a variety of contexts. *See, e.g., Consol. Aluminum Corp. v. Foseco Int'l, Ltd*., 910 F.2d 804, 812 (Fed. Cir. 1990) ("Consolidated's concealment of the [best mode] from the '917 patent permeated the prosecution of the other patents-in-suit and renders them unenforceable."); *Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990) ("[T]he duty of candor extends through the patent's entire prosecution history.").

## III.  <u>INFRINGEMENT</u>

35 U.S.C. § 271(a) states:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

A determination of infringement under 35 U.S.C. § 271 (a) requires a two-step analysis. Initially, the claims at issue are interpreted to define their scope. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Claim construction is a matter of law to be decided by the Court. *TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1369 (Fed. Cir. 2002); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-81 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). Next, the evidence must be examined to ascertain whether

the properly interpreted claim has been infringed by the accused product. *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997). Whether the claims, as construed by the Court, are infringed is a question of fact. *TechSearch*, 286 F.3d at 1369; *Markman*, 52 F.3d at 979-81. Infringement requires proof by a preponderance of the evidence. *Kahn v. Gen'l Motors Corp.*, 135 F.3d 1472, 1476-77 (Fed. Cir. 1998); *Kegel,* 127 F.3d at 1425.

### A.    Literal Infringement

"To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001). In other words, the properly construed claim must read on the accused device exactly. *Cortland Line Co. v. Orvis Co.*, 203 F.3d 1351, 1358 (Fed. Cir. 2000). The absence of a single limitation is fatal to the patentee's case. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). If an independent patent claim is not infringed it follows as a matter of law that any claims depending from that claim also are not infringed. *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

Further, all of the limitations of the claim must read on the accused device "as-is." "A device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim… . The question is not what [a device] might have been made to do, but what it was intended to do and did do." *High Tech Med. Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995) (citation omitted ); *see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-12 (Fed. Cir. 2005). A method claim is not infringed by the sale of a device that is merely capable of being used or combined with other devices in an infringing manner. Actual infringement must be shown.

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1322 (Fed. Cir. 2005); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773-75 (Fed. Cir. 1993).

### B.    Infringement Under the Doctrine of Equivalents

Where there is no literal infringement, a patentee may in some circumstances resort to the doctrine of equivalents.  "For infringement by equivalency, all of the elements of the claimed invention or an equivalent thereof must be present in the accused system."  *Netword*, 242 F.3d at 1354.  "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art."  *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1150 (Fed. Cir. 2004) (citation omitted).  The doctrine of equivalents applies if the "substitute element matches the function, way and result of the claimed element."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). "A finding of equivalence is a determination of fact … .  Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence." *Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1324 (Fed. Cir. 2001) (citing *Graver Tank & Mfg. v. Linde Air Prods. Co.*, 339 U.S. 605, 609-10 (1950)).

In a recent opinion, the Federal Circuit has reinforced its holding that generalized evidence in support of infringement under the doctrine of equivalents is insufficient and that specific evidence of equivalents must be presented for each claim limitation:

> The expert declaration and other evidence relied on by [plaintiff] supporting infringement by equivalents are generalized and do not provide particularized testimony and linking argument on a limitation-by-limitation basis. For this reason the evidence did not raise a genuine issue of material fact. Summary judgment of non-infringement under the doctrine of equivalents regarding metafiles was therefore proper.

*Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005); *see also PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

There are legal limitations on the doctrine of equivalents. No range of equivalents is permissible where it encroaches upon the subject matter described by the prior art, or would be obvious in light of the prior art. *Wilson Sporting Goods, Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 684-85 (Fed. Cir. 1990). Because the equivalents inquiry is conducted for each limitation, any theory of equivalents that would result in the vitiation of a claim limitation must fail as a matter of law. *Warner-Jenkinson,* 520 U.S. at 39 n.8; *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998). A patentee may not assert equivalents over an embodiment of the invention that is disclosed in the written description but is not claimed in the patent, because the patentee has dedicated that embodiment to the public by disclosing it and not specifically claiming it. *Maxwell v. J. Baker*, 86 F.3d 1098, 1106-08 (Fed. Cir. 1996). Finally, "where the patent document expressly identifies a role for a claim limitation, the doctrine of equivalents cannot be used to capture subject matter that does not substantially fulfill that role." *K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1367 (Fed. Cir. 1999).

### C.     Direct Infringement

Method claims are not directly infringed by the mere sale of an apparatus that is capable of infringing use. Method claims are only directly infringed when the claimed process is actually performed. *Ormco Corp. v. Align Tech., Inc.*, 2006 U.S. LEXIS 22306, at *28 (Fed. Cir. 2006); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).

Similarly, for system claims, SRI must prove direct infringement by establishing that the claimed combination was actually assembled or constructed and available for use. *See Decca, Ltd.* v. *United States*, 640 F.2d 1156, 1168 (Ct. Cl. 1980) ("Direct infringement does not occur until a system, comprised of two or more transmitters and one or more receivers, has

been constructed and is available for use."); *Strumskis* v. *United States*, 474 F.2d 623, 627 (Ct. Cl. 1973), *cert. denied*, 414 U.S. 1067 (1973).

### D.    Indirect Infringement

#### a.    Proof of Direct Infringement

Liability for indirect infringement requires proof of direct infringement. *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) ("Absent direct infringement of the patent claims, there can be neither contributory infringement, nor inducement of infringement."); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274-76 (Fed. Cir. 2004). Liability for indirect infringement of a method claim or of a claim based on an accused combination of products requires proof of direct infringement.

Such direct infringement may be shown in one of two ways. First, SRI may identify a specific direct infringer and prove that such third party's use of the method or accused combination constitutes direct infringement of an asserted claim. The consequence of proceeding under this theory of indirect infringement is that SRI must "tie their claims for damages or injunctive relief . . . to *the identified act.*" *Dynacore*, 363 F.3d at 1274 (emphasis in original). Alternatively, SRI may prove the necessary direct infringement more broadly by demonstrating that third party customers will inevitably and necessarily use the method or create the accused combination in such a way that infringes an asserted claim. *Id.* at 1274-76. Furthermore, in order to demonstrate direct infringement via an accused combination, SRI must prove that "the claimed combination has been *assembled* and is used or is available for use." *Lemelson v. United States*, 752 F.2d 1538, 1548 (Fed. Cir. 1985) (emphasis added); *see also Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1117-18 (Fed. Cir. 2002). Merely selling components that may be combined in an infringing manner is

22

insufficient proof that an accused combination apparatus has been assembled. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-12 (Fed. Cir. 2005).

### b.    Inducement of Infringement

35 U.S.C § 271(b) states: "Whoever actively induces infringement of a patent shall be liable as an infringer." Active inducement of infringement requires knowledge of the patent. *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). No liability exists for acts that occur before the alleged inducer had knowledge of the patent. *See Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998).

The "mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *DSU Med. Corp*, 471 F.3d at1305 (quoting *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 554 (Fed. Cir. 1990)). The intent requirement for inducement "requires more than just intent to cause the acts that produce direct infringement. . . . [T]he inducer must have an affirmative intent to cause direct infringement." *Id.* at 1306. In other words, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* (citing *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)).