SRI v. ISS and Symantec

Exhibit 17 to the Proposed Pretrial Order

**OTHER MATTERS FOR ENTRY IN THE PRETRIAL ORDER
PURSUANT TO L.R. 16-4(d)(13)**

I.  **OTHER MATTERS**

    A.  **SRI's Selection of Representative Claims**

SRI proposes to select 9 representative claims from the patents-in-suit to narrow the issues to be proved at trial, provided, however, that Defendants are precluded from informing the jury of SRI's effort to narrow the issues.

SRI further proposes that the effect of litigating representative claims should be as follows: (i) SRI need only prove the infringement and defend the validity and enforceability of the representative claims of the '615 patent (claims 1, 13, 14, and 16) to prove the infringement, validity, and enforceability of all asserted claims of the '615 and '203 patents; and (ii) SRI need only prove the infringement and defend the validity and enforceability of the representative claims of the '338 patent (claims 1, 11, 12, 13, and 24) to prove the infringement, validity, and enforceability of all asserted claims of the '338 patent.

Should SRI fail to prove the infringement of the representative claims of the '615 patent, it will stipulate to the non-infringement of all asserted claims of the '615 and '203 patents. Likewise, should SRI fail to prove infringement of the representative claims of the '338 patent, it will stipulate to the non-infringement of all asserted claims of the '338 patent. Similarly, should Defendants prove the invalidity of the representative claims of the '615 patent, SRI will stipulate to the invalidity of all asserted claims of the '615 and '203 patents. Likewise, should Defendants prove the

invalidity of the representative claims of the '338 patent, SRI will stipulate to the invalidity of all asserted claims of the '338 patent.

### B. Defendants Should be Limited to the Three Obviousness Contentions Analyzed and Disclosed by Their Experts

SRI respectfully seeks to limit Defendants to the three obviousness contentions that were specifically identified and analyzed by Defendants during discovery in this matter. Addressing this issue prior to trial will reduce the number of evidentiary disputes that may otherwise require attention before, or during, trial.

The reports of Defendants' experts show that each asserted and actually analyzed one – and only one – contention of obviousness based on a combination of references:

> (i) Heberlein ('615/'203 patents): Emerald 97 + Intrusive Activity 1991 (+NIDES 1994);
>
> (ii) Smaha ('615/'203 patents): NetStalker + HP OpenView;
>
> (iii) Staniford ('338 patent): NSM + IDES (+NetRanger/ISS realsecure).

Neither Messrs. Smaha nor Staniford discussed any other combinations of prior art. SRI presumes, therefore, that these witnesses do not intend to testify as to any combinations of prior art other than the obviousness contentions identified above. Thus, the parties' dispute appears to boil down to whether Symantec's expert Mr. Heberlien can now testify at trial as to a host of new obviousness combinations by merely pointing to:

> (a) claim charts attached to the end of his report that list literally hundreds of references without any meaningful analysis; and
>
> (b) paragraphs from his report merely stating conclusions of obviousness.

2

Defendants' reliance upon catch-all paragraphs along with conclusory "claim charts" listing hundreds of references fails to provide SRI with any meaningful contentions as to which specific elements are present in which specific references, and whether and how those specific elements would be combined to allegedly result in the patented inventions.

Moreover, in their most recently amended statement of proofs (attached to this pretrial order as Exhibits 15 and 16), Defendants have identified numerous new "obviousness references" and purport to reserve the right to make yet more unspecified obviousness contentions based on, for example, "any additional references relied upon in Symantec's expert reports, including but not limited to additional references regarding the Network Security Monitor, the Distributed Intrusion Detection System, the Graph Based Intrusion Detection System, the ISS RealSecure system, and the NetRanger system."[1]  Yet, in their latest papers, like in Mr. Heberlein's report, there are no specific contentions as to specific combinations of prior art, nor is their any element-by-element analysis for even a single claim – i.e., explaining the specific basis for where the alleged elements any particular claim are found in the art or why a person of ordinary skill would have been motivated to combine them in the specific way necessary to arrive at the claimed inventions.

Given their failure to provide specific obviousness contentions and analyses thereof during discovery, Defendants should not be allowed to pursue new or different obviousness contentions for the first time at trial.  Defendants should be limited to the three specific obviousness contentions that were actually analyzed by their experts and

---

[1] Additionally, the Defendants each served lists of asserted prior art they intend to rely on pursuant to 35 U.S.C. § 282 containing hundreds of references.  ISS's list contains 248 separate references, while Symantec's contains 519 separate references.

3

should be precluded from using their "catch all" obviousness verbiage to mask additional new obviousness defenses they apparently now wish to pursue at trial.

### C. Defendants Should Be Compelled to: (1) Identify the Prior Art Upon Which They Will Actually Rely; and (2) Limit the Number of Witnesses They Will Present "Live."

Defendants pretrial filings now list 18 alleged printed publications and 7 separate intrusion detection systems as allegedly *anticipating* the asserted claims. (As noted above, Defendants have not fairly identified any specific obviousness contentions, and so should be precluded from putting on any obviousness defense other than the three sets of obviousness combinations actually analyzed by their respective experts.) The defendants also served lists of prior art they intend to rely on pursuant to 35 U.S.C. § 282. In these lists, ISS and Symantec identify 248 references and 519 references, respectively. Defendants have also identified four fact/expert witnesses to address their asserted art. This, as a practical matter, provides SRI with no notice of the prior art and validity defenses that will actually be presented to the jury, or by whom. Moreover, presentation of this volume of material would not be possible in any reasonable amount of trial time.

SRI has tried to reach an agreement with defendants regarding: (i) a reasonable limitation of the number of representative claims SRI would prove up at trial; (ii) a stipulation of infringement, given the governing claim construction in this matter, and the inability of defendants to offer any meaningful infringement defenses; and (iii) a reasonable limitation of the number of prior art references and witnesses to be presented at trial. While defendants have been eager to see the number of asserted claims reduced, they have refused to concede infringement of any claim, or to limit the number of prior art references/defenses they intend to raise at trial.

SRI therefore requests that:

    (a) defendants be required to limit their invalidity case to no more than 8 references;

    (b) defendants' four validity experts be prohibited from providing overlapping and redundant testimony regarding these references; and

    (c) defendants disclose, for each reference, which witness will present the jury with information regarding that reference.

Defendants have taken the position that they cannot narrow the art on which they will rely until SRI reduces the number of claims it will assert. SRI previously reduced the number of representative claims it is asserting from 89 to 32. Yet no adjustments were made by defendants to their invalidity contentions or witnesses. SRI has since further reduced the total number of claims it is asserting against defendants to 22 and, in the process leading up to the filing of these pretrial papers, has offered to reduce them even further to 9 representative claims. The reduction to 22 claims should have further reduced the number of prior art references the defendants would need to rely on to challenge the validity of the asserted claims. Again, however, defendants failed to reduce the number of prior art references or expert witnesses they intend to rely on at trial in any way.

Independent of the scope of defendants' prior art case, SRI also requests that reasonable limits be placed on the total number of witnesses who will be presented "live" and by deposition. SRI proposes that each side be permitted to present 10 witnesses in its case-in-chief, including witnesses presented live or by deposition.

      **D.**    **ISS Should Be Compelled to Produce Complete Updated Sales Data**

ISS sales are relevant to the issue of commercial success, one of the secondary factors of the non-obviousness of SRI's patents. In 2006, ISS produced 2002-2005 sales data, by customer, for all relevant intrusion detection products and services. In 2008, ISS produced sales data for 2003-2008 for Standalone and Other Fusion sales, and the self-defined and unexplained category of "Accused Sensor" sales. In this second data production, unlike in its first production, ISS appeared to provide more-limited "Accused Sensor" data based on its own analysis of which sensors were sold together with and at the same time as its Fusion line of correlation software.

While both of these productions purport to provide 2003-2005 accused product sales data, the two sets of data differ substantially because of ISS's selective limited production of data in the second set. SRI requests that ISS provide updated (2006-2008) sales data in the same format as produced in 2006 (*i.e.*, by customer for ***all*** relevant intrusion detection products and services).

      **E.**    **Defendants Should Not be Allowed to Rely Upon Materials Belatedly Produced After the Close of Discovery.**

Defendants produced numerous documents after the close of fact discovery and in some cases after the close of expert discovery, apparently to bolster the written opinions rendered by their various experts. In addition, on October 9, 2006, four months after the close of expert discovery, ISS produced a supplemental report of one of its experts. SRI requests the Court limit experts to the opinions, and bases therefore, expressed in their timely-filed written reports and not permit untimely supplementation of those opinions either through unreferenced documents or untimely produced reports.

Specifically, SRI requests the Court:

(a)  preclude Defendants from relying on documents untimely produced by L. Todd Heberlein, including documents first produced on or after June 8, 2006, the second day of Mr. Heberlein's deposition. Despite being factual information that should have been disclosed before the close of fact discovery, and not during expert discovery, these documents appear on Defendants' exhibit lists and Section 282 notices.

(b)  preclude Defendants from relying upon documents untimely produced by Daniel Teal, including, alleged prior art references and supporting materials produced after the close of fact discovery. Despite being factual information that should have been disclosed before the close of fact discovery, and not during expert discovery, these documents appear on Defendants' exhibit lists and Section 282 notices.

(c)  preclude Defendants from relying on any opinion expressed in Mr. Smaha's supplemental expert report, filed more than four months after the close of expert discovery, at a time when SRI was no longer able to depose Mr. Smaha.

(d)  preclude Defendants from referencing or seeking to introduce documents produced after the close of fact discovery, including documents first produced by Symantec on September 13, 2006, more than five months after the close of fact discovery and any additional belatedly-produced material that allegedly corroborates the testimony of experts regarding prior art systems. This information should have been disclosed before the close of fact discovery but nevertheless appears on Defendants' exhibit lists and Section 282 notices.

7

### F. Other Irrelevant And/Or Prejudicial Evidence That Should Be Excluded.

1. Defendants should be precluded from referencing or seeking to introduce evidence regarding the Patent Office's declaration of reexamination as to any of the patents-in-suit, or from referencing or seeking to introduce evidence regarding any intermediate or final ruling or determination from the reexamination proceedings.

2. Defendants should be precluded from referencing or seeking to introduce evidence regarding the Court's resolution of any pending summary judgment motion.

3. Defendants should be precluded from discussing the validity of the '212 patent, including any reference to or attempt to introduce evidence regarding the Court's resolution of Defendants Joint Motion for Summary Judgment of Invalidity, including the Court's finding that the '212 patent was invalid in view of *Emerald '97*, that the posting of the postscript version of the *Live Traffic* paper on SRI's ftp server was a printed publication, and that all the patents-in-suit were invalid in view of that posting.

4. Defendants should be precluded from mentioning anything about the validity of the '212 patent, including any reference to or attempt to introduce evidence regarding the Federal Circuit's opinion upholding the Court's finding that the '212 patent was invalid in view of Emerald '97.

5. Defendants should be precluded from introducing evidence regarding the configuration, directory structure, file structure or contents of SRI's FTP server

or of SRI's World Wide Web server at any time after November 9, 1997, particularly given the fact that the server was reorganized in 2001.

### G. The Scope of Cross Examination Should Be Limited to the Scope of Direct Examination.

As is typical for the plaintiff and patentee, SRI does not plan to introduce evidence relating to the issue of validity in its case-in-chief. SRI therefore requests that cross examination of the witnesses it presents in its case-in-chief be limited to the scope of direct examination, in accordance with the usual rule, and not be used by defendants as a vehicle to present their invalidity defense.

### H. Additional Issues

SRI has withdrawn its infringement allegations that Symantec's currently accused products infringe the '338 patent. Accordingly, Symantec should be required to dismiss its affirmative defenses and counter-claims as to the '338 patent. Also, as noted above, Symantec and ISS should be precluded from introducing evidence that the '338 patent was asserted against Symantec and withdrawn by SRI. The parties are in the process of discussing a stipulation to this effect.

### I. Brief Response to Defendants' Miscellaneous Issues and Motions *in Limine*

Defendants have set forth various motions *in limine* and miscellaneous issues in their pretrial papers.[2] SRI will be prepared to address each of Defendants arguments at the pretrial conference and, in the interim, responds briefly to several of these as follows:

---

[2] While SRI responds here specifically to the points raised in Defendants' respective statements of miscellaneous issues (Exs. 18 and 19), the response applies equally to the other places in Defendants' pretrial papers—including in their issues of law and jury instructions—where they raise the same or similar points.

9

1. "**Limiting instruction" regarding EMERALD 1997 and the '212 patent**:

SRI opposes Symantec's proposal to provide the jury with a "limiting instruction" that disputed claim terms that are similar to those in the dismissed '212 patent be described as anticipated by the EMERALD 1997 paper. First, there is no reason for such an instruction, as SRI has no intention of mentioning the '212 patent—which the Court has dismissed from the case, a dismissal affirmed by the Federal Circuit. Likewise, SRI will not present any argument contradicting any facts that have already been found in this matter, implicitly or explicitly. Just as there is no need for a "limiting instruction" informing the jury that the Live Traffic paper does not anticipate the patents-in-suit as a matter of law, since Defendants will not—and cannot—argue to the contrary, so too there is no need for an instruction regarding the '212 patent.

Second, it would be inappropriate in general for the Court to inform the jury that it has made a determination of validity or invalidity on any particular point. Instead, to the extent relevant facts have been established, the parties should agree to set forth stipulations. Indeed, SRI has proposed certain incontrovertible facts be presented to the jury to streamline the issues regarding Live Traffic. The facts which should be presented to the jury as having been established, and which have been taken directly from the description of undisputed facts in the Federal Circuit's opinion, are the following:

   (i) SRI posted a version of the Live Traffic paper on its FTP server in August of 1997 solely to facilitate peer review in preparation for later publication.

   (ii) At the time the Live Traffic paper was posted on SRI's FTP server, the server did not contain an index or catalogue or other tools for customary and meaningful research. The Live Traffic paper posted on SRI's FTP server was, therefore, not catalogued or indexed in a meaningful way.

   (iii) The posting of the Live Traffic paper on SRI's FTP server was not intended to disseminate the paper to the public.

10

(iv) At the time the Live Traffic paper was posted on SRI's FTP server, neither the directory structure nor the README file in the PUB subdirectory identified the location of papers or explained the mnemonic structure for files in the EMERALD subdirectory.

Although the above facts regarding the Live Traffic reference have been established by the Federal Circuit as a matter of law, Defendants have refused to stipulate to them. Yet, at the same time Defendants insist upon stipulations concerning the disclosures in EMERALD 1997 that likewise stem from the Courts' prior findings. SRI seeks to strike a fair balance by considering both a factual recitation with respect to EMERALD 1997 as well as an appropriate set of facts regarding Live Traffic. Defendants, unfortunately, are willing to consider instructions on facts that only serve to aid their case.

Third, Symantec's request that the Court recite "all the claim limitations of the '615 and '203 patents that were previously determined to be disclosed and enabled by the EMERALD 1997 prior art reference" is unworkable and highly disputed by the parties. It is Defendants' burden to demonstrate to the jury by clear and convincing evidence what limitations, if any, of the patents-in-suit are disclosed by EMERALD 1997. This is not a matter to be determined *ab initio* by the Court.

Fourth, while Symantec argues that its "limiting instruction" aims to "avoid juror confusion as to the '212 patent, which is addressed throughout the expert reports and deposition testimony," expert reports are not admissible at trial, and there is no reason for anyone to introduce any into evidence, deposition testimony or the like regarding the '212 patent.

Finally, if at some point during the trial SRI's assertion of the '212 patent must be disclosed to the jury and the Court determines that a limiting instruction is appropriate at that time, SRI suggests the following: "A fourth patent known as the '212 patent had previously been a part of this case. That patent is no longer at issue in this

11

case, and you should not consider it in your deliberations." For at least these reasons, SRI respectfully urges the Court to deny Symantec's request.

2. **"Limiting instruction regarding the '338 patent":**

Similarly, there is no need for Symantec's requested "limiting instruction" that the Court has determined that Symantec does not infringe the '338 patent – a patent that has been dismissed with respect to Symantec. The parties are currently in the process of agreeing to a stipulation to dismiss the '338 claims and counterclaims with prejudice. Additionally, the parties' list of agreed factual issues – as well as the verdict form itself – make clear that the '338 patent is being asserted only against ISS, not Symantec. Accordingly, there is no possibility of the jury drawing any sort of "adverse inference that Symantec infringes the '338 patent," and there is no reason for the Court to instruct the jury regarding this issue.

3. **Defendants' latest attempt to further cut-up the trial:**

More than two years ago, Defendants sought a complex and unworkable bifurcation scheme that would have involved presentation of validity and enforceability issues followed by separate infringement, damages, and willfulness trials for each defendant. The Court squarely rejected this proposal in 2006 in favor of its typical approach of a single liability trial followed, if necessary, by a damages and willfulness trial. The Court reaffirmed this simple plan in April 2008 at two separate status conferences with the parties, and at neither conference did either Defendant raise the issue of further carving up the trial. Specifically, during the first status conference, counsel for Symantec told the Court that "the amount of time the Court set aside previously [for trial], there's really no reason that ought to be adjusted one way or the other." (4/14/08 Status Conf. Tr. at 9:10-12). Furthermore, during the second status conference, counsel for ISS argued that the only "alternative" to entering summary judgment of invalidity would be "a two-week trial." (4/29/08 Status Conf. Tr. at 18:8-10). Multiple future trials were not even contemplated, let alone discussed. Additionally, during a telephonic conference between the parties prior to the first April

12

2008 status conference, counsel for SRI expressly asked counsel for Defendants whether either defendant intended to pursue further bifurcation, and neither Symantec nor ISS indicated any such intention at that time.

In addition to being untimely, and inconsistent with their previous representations, Defendants' latest attempt to further fragment the trial is impractical and unsupported by the case law.  Three or more trials tax the Court's and the parties' resources far more than the current two trials would.  In addition, given the admitted technical complexity of this case, multiple trials on liability issues run the risk of different juries understanding the technology differently.  By contrast, and contrary to Defendants' argument, SRI's current infringement case can be easily and cleanly presented to the jury, both through SRI's proposal of limiting its case to nine representative claims and through Defendants' succinct grouping of products as presented in their own verdict form.  (*See* Ex. 25 to the Proposed Pretrial Order).  And precisely because SRI's infringement case involves different products made and sold by the two different defendants, the risk of juror confusion is minimal.

Additionally, Defendants' proposal lacks support even in the case law they cite.  In *Stambler,* the court ordered infringement and damages trials *first*, followed by an invalidity trial.  SRI, of course, would have been happy to accept such a proposal, but at this point it is too late to do so.  The *General Patent Corp.* case involved only a single defendant, not two, and therefore involved only two trials, not three.  And in neither of the other cases Defendants cite did the court adopt the complex scheme they urge here.  Instead, this proposal seems to be motivated by Defendants' apparent lack of any serious noninfringement case; unsurprisingly, they wish to first present all issues on which they, not plaintiff SRI, bear the burden of proof.[3]

Finally, Defendants' proposed "alternative" involving them first presenting their invalidity case followed by SRI's infringement case improperly inverts the natural order

---

[3]  Indeed, if Defendants had a serious noninfringement case, there is no reason that the results of an invalidity trial would "enhanc[e] the opportunity for the parties to settle after the first verdict."

13

of this litigation, which was filed by SRI, the plaintiff. Tellingly, Defendants do not explain how this second scheme would somehow lessen juror confusion. Indeed, it would increase juror confusion, since even in a validity-only trial SRI would prove that Defendants infringed the patents in order to establish the nexus required to rely on Defendants' commercial success. Therefore, if further bifurcation made any sense at all, infringement would (as is typical) come before validity. For all of these reasons, SRI respectfully requests that the Court reject Defendants' proposals and adhere to the trial plan it laid out two years ago, that was reaffirmed in April 2008, that comports with precedent, and that is most practicable for the parties, the Court, and the jury.

   4. **Erasing the presumption of validity attached to all issued patents**:

Symantec seeks to overturn decades of case law establishing the presumption of validity for all issued patents—a proposition both legally incorrect and factually inapposite. Contrary to Symantec's argument, *KSR* in no way overturned the presumption of validity for art not considered by the patent examiner. In fact, *every* reported patent case of which SRI is aware that has been decided since *KSR* has continued to apply the presumption, notwithstanding the single sentence in dictum in *KSR* trumpeted by Symantec. By their own admission, "Defendants can point to no prior case holding that the burden of proof should be diminished in light of a reexamination and rejection of claims." They even have to acknowledge two cases to the contrary. Accordingly, the Court should reject Symantec's speculative legal theory that an issued patent can be invalidated by a preponderance of the evidence.

Moreover, any such novel approach would be particularly inappropriate for this case. Here, the very references held anticipating by the examiner during reexamination—namely EMERALD 1997, NSM (*i.e.* papers related to Intrusive Activity 1991), and IDES/NIDES (upon which Ji-Nao was based)—*were* before the examiner during the original prosecution. Also, to the extent Defendants wish to *argue* that the presumption should be overcome here because certain prior art was not considered by the Patent Office, they are, within reason, free to do so. *See Power*

*Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*., 2007 WL 2893391, at *1 (D. Del. 2007) ("To the extent that [Defendant] wishes to make an ***argument*** to the jury that, on the facts of this case, the prior art was not disclosed, and therefore, the presumption of validity is more easily overcome, the Court concludes that such ***argument*** would be appropriate.") (emphasis added). For at least these reasons, SRI respectfully requests that the Court itself not disturb the statutory presumption of validity.

    5. **No deference to examiner's review of prior art:**

Symantec seeks to preclude SRI from even mentioning to the jury the fact that the patent examiner considered, and allowed the patents-in-suit to issue over, certain prior art references that have been the subject of non-final office actions during reexamination proceedings. The indisputable fact that the original examiner allowed the issued claims over these references, however, is a highly relevant fact of which the jury should be able to consider in determining whether Defendants have successfully overcome the clear and convincing burden of proof necessary to invalidate an issued patent.

SRI opposes Symantec's proposal that the non-final reexamination office actions be admitted to counter the fact that the original examiner already allowed the claims over the prior art in question. These office actions form part of an ***ongoing*** *ex parte* proceeding between SRI and the Patent Office, and the jury is unlikely to appreciate that the interim "rejections" in question during reexamination are subject to change once SRI submits its responsive argument and/or any amendments – not to mention that the Patent Office decisions are then subject to a full review by the Federal Circuit. Accordingly, admitting interim reexamination office actions would inject substantial prejudice into the trial that would far outweigh any slight relevance they allegedly have to disputed issues in the case. *See* Fed. R. Evid. 403. Additionally, Symantec cites no authority in support of its contention that reexamination correspondence should be admissible under these circumstances.

**6. Exclusion of evidence of revenues or profits:**

Symantec's attempt to preclude SRI from introducing evidence of revenues and profits associated with the Symantec products accused of infringing the patents-in-suit is similarly misplaced. The commercial success of the claimed invention is one of the most critical secondary indicia of nonobviousness that SRI will be presenting to the jury to counter any argument by Defendants that the patents-in-suit are obvious. While damages will be tried at a later date, the commercial success of the claimed invention is plainly relevant to validity as long as Defendants continue to pursue any allegations of obviousness.

**7. Exclusion of DARPA funding and peer-review evidence:**

Symantec's motion to preclude DARPA funding and peer-review evidence related to the EMERALD project that grew out of the patents-in-suit confuses weight with admissibility. At trial, SRI will demonstrate to the jury the nexus between the claimed invention and the actual EMERALD project that embodied some or all of the claims at issue in this suit.

First, there cannot be any reasonable dispute that the Live Traffic paper is intimately related to the patents-in-suit; the parties agree that its disclosure overlaps nearly entirely with that of the common patent specification. Thus, peer-review of the Live Traffic paper inherently constitutes review of the patented invention itself.

Second, the EMERALD system unquestionably embodies some, if not all, of the asserted claims, as has been made clear throughout the litigation and as Dr. Kesidis's unrebutted expert report and deposition testimony demonstrate. That system and its predecessors resulted in large part from several DARPA grants. Symantec cannot point to any flaw in SRI's proof of nexus, alleging instead, without support, that SRI "cannot make a prima facie case of nexus." Because SRI will do precisely that at trial, Symantec's motion to exclude DARPA funding and peer-review evidence is misplaced.