**EXHIBIT 18**

**SYMANTEC'S STATEMENT OF MISCELLANEOUS ISSUES
AND MOTIONS IN LIMINE (L.R. 16.4(D)(13))**

**A.     INSTRUCTION REGARDING THE '212 PATENT AND EMERALD 1997 REFERENCE**

Symantec requests the Court to give the following instruction regarding the '212 patent and the EMERALD 1997 reference:

> You may hear reference to SRI's '212 patent during the testimony. The '212 patent has been held to be invalid. It has been determined that the Porras and Neumann 1997 reference discloses and enables every limitation of every claim of the '212 patent. You will therefore not be asked to make any determination regarding infringement or invalidity of the '212 patent.
>
> The fact that the '212 patent has been held to be invalid does not mean that any of SRI's other patents are invalid. You must make an independent and separate analysis of each of the other patents based upon their particular claims.
>
> However, because the '212 patent contains the same specification and some of the same claim limitations as the patents-in-suit, wherever one of these common limitations is present in any of the patents-in-suit, you must find that the Porras and Neumann 1997 reference discloses and enables such limitations. The relevant limitations include the following:
>
> 1) "monitoring an enterprise network"

2) "deploying a plurality of network monitors in the enterprise network"

3) "detecting, by the network monitors, suspicious network activity based on analysis of network traffic data"

4) "generating, by the monitors, reports of said suspicious activity"

5) "automatically receiving and integrating the reports of suspicious activity, by one or more hierarchical monitors"

6) [ADDITIONAL LIMITATIONS TO BE DETERMINED BASED ON FINAL SET OF REPRESENTATIVE CLAIMS]

Wherever one of these common limitations is present in any of the asserted claims, you must find that the Porras and Neumann 1997 reference discloses and enables those limitations.

This instruction is necessary because the Court has found as a matter of law that each limitation of all of the claims of the '212 patent is disclosed and enabled by Porras and Neumann 1997, and therefore those limitations that are also present in SRI's other patents must also be disclosed and enabled. This is a critical in this case because of the similarity in the limitations of the '212 patent and the remaining patents-in-suit. For example, all but one of the limitations of '212 claim 1 are identical to '203 claim 1:

| '212 Claim 1 | '203 Claim 1 |
|---|---|
| Method for monitoring an enterprise network, said method comprising the steps of: | A computer-automated method of hierarchical event monitoring and analysis within an enterprise network comprising: |
| deploying a plurality of network monitors in the enterprise network; | deploying a plurality of network monitors in the enterprise network; |

2

| '212 Claim 1 | '203 Claim 1 |
|---|---|
| detecting, by the network monitors, suspicious network activity based on analysis of network traffic data, | detecting, by the network monitors, suspicious network activity based on analysis of network traffic data |
|  | selected from the following categories: {network packet data transfer commands, network packet data transfer errors, network packet data volume, network connection requests, network connection denials, error codes included in a network packet}; |
| generating, by the monitors, reports of said suspicious activity; and | generating, by the monitors, reports of said suspicious activity; and |
| automatically receiving and integrating the reports of suspicious activity, by one or more hierarchical monitors. | automatically receiving and integrating the reports of suspicious activity, by one or more hierarchical monitors. |

Without an instruction, such as the one proposed above, Symantec would unnecessarily have to prove issues that have already been adjudicated by the Court on summary judgment and affirmed by the Federal Circuit. SRI is precluded as a matter of law from relitigating these issues based on collateral estoppel and law of the case. Symantec also will need to refer to the '212 patent because much of the expert reports and deposition testimony was given in the context of the '212 patent, even where it relates to the other patents-in-suit.

Furthermore, because obviousness is determined in light of whether "the subject matter as a whole would have been obvious," the jury should be made aware that all of the "inventions" of the '212 claims are invalid as anticipated. The jury should be allowed to compare the "whole invention" of the '212 claims to the very similar "whole inventions" of the asserted '203 and '615 claims. The jury needs to understand that it is not just particular limitations that are disclosed and enabled by Porras and Neumann 1997, but that very similar "subject matter as a whole" has been previously held to be invalid based upon this reference.

In addition, the Court's prior determination regarding the '212 patent is also strong evidence of secondary considerations of obviousness. If SRI is entitled to submit evidence of

praise of the invention by others, Symantec should be entitled to submit evidence that similar claims containing identical claim language and based on the same specification have been determined to be invalid as a matter of law.

Finally, if SRI argues that the PTO Examiner already considered the Porras and Neumann 1997 reference in the context of the patents-in-suit and found the claims to be valid in light of that reference, Symantec should be allowed to explain that the same PTO Examiner also considered the Porras and Neumann 1997 reference during prosecution of the '212 patent, but that the Examiner's determination that the '212 was valid has been overturned, and the claims held invalid.

### B. BIFURCATION OF INFRINGEMENT ISSUES

Symantec requests the Court to exercise its discretion under Fed. R. Civ. Proc. 42(b) to hold a joint trial with ISS and Symantec concerning the invalidity and unenforceability of the remaining patents-in-suit, and then hold separate trials for ISS regarding infringement, willfulness, and damages and Symantec regarding infringement, willfulness, and damages. This division will be far more efficient than trying invalidity and infringement together, because the infringement cases are entirely different for each Defendant, and are factually intertwined with the damages issues that have already been bifurcated.

Trying the infringement cases with the already-bifurcated damages and willfulness cases for each Defendant would be the most efficient course and will minimize juror confusion. The issue of damages will be directly tied to the proof of infringement, as damages would only be recoverable based on sales of those specific products found to infringe. Thus, it would be most efficient for the same jury that considers the issue of which, if any, products infringe, to also be charged with determining the damages due for that infringement.

4

In multi-defendant patent cases involving complex technology and numerous accused products and claims, courts have exercised their discretion to require that the infringement claims against each defendant be tried separately. *See, e.g.*, *Stambler v. RSA Security, Inc.*, 2003 U.S. Dist. LEXIS 2555, at *6 (D. Del.) (ordering separate trials on infringement and damages as to each defendant, followed by a third trial on invalidity), *aff'd*, 123 Fed. Appx. 982 (Fed. Cir. 2005); *cf. Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 417-18 (D. Del. 2004) (ordering separate infringement trials for each defendant); *General Patent Corp. v. Hayes Microcomputer*, 44 U.S.P.Q.2d (BNA) 1954 (C.D. Cal. 1997) (ordering that invalidity and unenforceability issues be tried first, followed by a separate trial on infringement and damages).

Without separate infringement trials, the risk of jury confusion is high. First, the technology in this case involves complex issues of computer software, hardware, and networking, as well as statistical methods. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2006 U.S. Dist. LEXIS 59620, at *5 ("In complex patent cases, this Court and others have routinely bifurcated the issues of infringement and validity."). Additionally, because the Court found that Symantec does not infringe the '338 "statistical profiling" patent, claims related to that technology are no longer relevant to Symantec, which may increase juror confusion.

Second, the infringement issues are significantly different for each defendant. SRI does not allege that Symantec and ISS are jointly and severally liable for any infringement. Symantec and ISS are separate, unrelated companies with separate products. SRI's infringement allegations against Symantec involve 9 different product series (comprising 20 separate products) and 14 claims, while the infringement allegations against ISS involve 11 different product series and 21 claims. Further adding to the potential for jury confusion, both defendants offer services under exactly the same name — "Managed Security Services" — and SRI has

alleged that these services are evidence that defendants induce infringement by their respective customers.

Since SRI's infringement allegations against each defendant involve different products, different documentary and testimonial evidence will be required. The fact witnesses likely to provide testimony relevant to non-infringement also are different for each defendant, as evidenced by the parties' fact witness lists. Although SRI has elected to use a single expert witness for all issues, the interrogatory responses, expert reports, and summary judgment briefs demonstrate that SRI will rely on different documentary and testimonial evidence to support its infringement allegations against each defendant. These differences in the relevant evidence, as well as the combined volume of evidence, increase the risk of jury confusion unless separate infringement trials are ordered.

To address the problems associated with trying both infringement cases in a single proceeding, Symantec proposes a joint trial on invalidity and unenforceability, followed by separate trials on infringement, willfulness, and damages at a later date. In addition to minimizing jury confusion and prejudice to the parties, this arrangement would promote judicial efficiency by having only one trial for the common invalidity issues and by enhancing the opportunity for the parties to settle after the initial verdict, which may eliminate the need for second trials.

Alternatively, if the Court determines that infringement and invalidity will be tried together in a single trial, Symantec requests that the trial be structured in the following manner: (1) Defendants' invalidity case followed by SRI's rebuttal; (2) SRI's infringement case against ISS followed by ISS's rebuttal; and (3) SRI's infringement case against Symantec followed by Symantec's rebuttal. This approach would lessen jury confusion by presenting the common

issues of invalidity first, and then allowing defendants to provide their own, separate, noninfringement defenses.

### C. PEREMPTORY CHALLENGES

Symantec requests that each party be allocated three peremptory challenges.

### D. DURATION AND PARTITION OF TRIAL TIME

The Court's April 15, 2008 Order provides for a two-week trial, beginning on September 2, 2008. Given that Monday, September 1st is a holiday, Symantec requests that the Court confirm that there will be 10 trial days and also confirm the total number of hours that the Court will provide so the parties may plan accordingly. The division of trial time between plaintiff and defendants should also be addressed at the pretrial conference.

### E. INEQUITABLE CONDUCT DEFENSE

Symantec also has pled an inequitable conduct defense. The timing and procedure for presenting this defense to the Court should be addressed at the pretrial conference.

### F. MOTIONS IN LIMINE

**Motion in limine #1:  Admissibility of reexaminations**

The pending reexaminations of the patents-in-suit should be admissible. Statements made during the reexamination proceedings are part of the prosecution history of the patents, and are therefore relevant to the scope of the claims and the prior art. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) (statements made during a merged reissue/reexamination proceeding are part of the prosecution history).

The certificates of reexamination and non-final office actions rejecting the patents-in-suit are direct evidence of obviousness and are probative of secondary considerations of

obviousness.[1]  If Symantec is forced to bear the presumption of validity and the burden of clear and convincing evidence, it would be highly prejudiced if denied the opportunity to present the reexaminations as direct and probative evidence of obviousness.

The pending reexaminations should also be admissible under the doctrine of completeness.  Under Federal Rule of Evidence 106, when a part of a recorded statement is introduced by a party, the other party may require the introduction of any other part of the writing "which ought in fairness to be considered contemporaneously with it."  SRI will undoubtedly attempt to bolster the validity of its patents with reference to the original Examiner's review of the prior art and finding of allowability.  If SRI is allowed to make these arguments based on portions of the prosecution history, the reexamination proceeding should also be allowed in fairness to Symantec to show that a second Examiner questioned the allowability of the patents based on those same references.

The fact that the office actions currently pending are non-final does not make them inadmissible.  Rather, this fact goes to the weight that the jury should give this evidence.  Any potential juror confusion as to the effect of the pending office actions upon the patents can be cured by an appropriate limiting instruction from the Court explaining the reexamination process.

**Motion in limine #2:  Reexaminations for impeachment**

Symantec should be allowed to use the reexaminations for impeachment of SRI's expert witnesses regarding their conclusions as to the validity of the patents and the scope of the prior

---

[1] Based on USPTO statistics since 1981, patents with claims in reexamination emerge unscathed only 26% of the time.  In 74% of cases, claims are either changed or canceled.  *See Ex Parte* Reexamination Filing Data (12/31/07) at <http://www.schmoller.net/documents/ex_partes_to_20060630.pdf> and at <http://www.fr.com/news/2008/April/Boalt_Reexamination2.pdf>.

art. The reexaminations demonstrate that an independent, objective body made a contrary non-final determination as to the validity of the patents-in-suit.

### Motion in limine #3: Adjustment to the standard jury instructions regarding the presumption of validity and/or burden of proof

All of the patents-in-suit are the subject of pending reexaminations. In addition to declaring the reexaminations based on "substantial questions of patentability," the PTO has also issued non-final office actions rejecting all of the claims as anticipated and/or obvious over the prior art. As discussed more fully in Exhibit 6, Symantec requests that the Court either (1) instruct the jury that Defendants need only prove invalidity by a preponderance of the evidence with respect to those issues on which PTO has initially rejected the claims during reexamination, or (2) instruct the jury that it may consider the PTO's decision to declare re-examinations and initially reject the claims-in-suit when determining whether or not Defendants have rebutted the presumption of validity and proven invalidity by clear and convincing evidence.

### Motion in limine #4: No deference to Examiner's review of prior art

SRI should be precluded from claiming that any deference is owed the Examiner's review of references that have been found during reexamination to render the claims obvious. SRI should also be precluded from arguing that the Examiner previously considered any prior art references that were found during reexamination to render the claims anticipated and/or obvious. If SRI is allowed to make these arguments, it will unfairly bolster the validity of the patents-in-suit. Alternatively, if SRI is permitted to make these arguments, Symantec should be allowed to introduce the reexaminations to demonstrate that, upon review, a new Examiner found the claims anticipated and/or obvious over the art in question.

**Motion in limine #5: Kesidis testimony regarding ordinary skill in the art**

SRI's expert Dr. Kesidis should be precluded from testifying about (a) the level of ordinary skill in the computer security or intrusion detection field prior to November 1998, (b) what would or would not have been obvious to a person of ordinary skill in the art in 1998, and (c) whether the patent disclosure would have enabled a person of ordinary skill in the art to make and use the claimed inventions prior to November 1998. Dr. Kesidis was not one of ordinary skill in the art during the relevant timeframe, and he made no effort to educate himself about the level of ordinary skill in the art during the relevant timeframe. These issues were previously briefed and submitted to the Court. *See* D.I. 289 & 290.

**Motion in limine #6: Exclusion of evidence of revenues or profits**

SRI should be precluded from admitting any evidence of revenues or profits associated with Symantec's products given the Court's decision to bifurcate damages from the liability case. This evidence is irrelevant to issues of invalidity, unenforceability, or infringement.

**Motion in limine #7: Exclusion of evidence of communication between parties**

SRI should be precluded from admitting any evidence of communications between the parties regarding the patents-in-suit given the Court's decision to bifurcate willfulness from the liability case. This evidence is irrelevant to issues of invalidity, unenforceability, or infringement.

**Motion in limine #8: Admission of affidavit of Paul Hickman**

Symantec requests that the Court admit into evidence the affidavits of Paul Hickman, from Internet Archive, attesting to the dates of the public availability of certain relevant material on the Internet. The affidavits of Paul Hickman are attached (without the voluminous supporting exhibits) as Appendices A and B to this Exhibit.

**Motion in limine #9: Exclusion of DARPA funding and peer-reviewed publications as evidence of secondary considerations for lack of nexus to patent claims**

SRI should be precluded from introducing evidence related to DARPA funding and peer-reviewed publications as evidence of secondary considerations of non-obviousness, as neither have a nexus to the patent claims. SRI bears the burden of showing that a nexus exists between the claimed subject matter and the objective evidence offered to show non-obviousness. *See WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999). A "nexus" is found when there is a "legally and factually sufficient connection" between the method or product that is claimed and the method or product that is the subject of the purported objective evidence of non-obviousness. *See Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 11387, 1392 (Fed. Cir. 1988).

SRI cannot provide *any* evidence that DARPA officials responsible for providing SRI's government funding or any peer-reviewer ever knew of or reviewed the patents, much less that they equated any particular government project or publication with the claimed subject matter. Nor can SRI establish that these individuals were persons of ordinary skill in the art, that the project or publication with which they were familiar was the claimed invention, or that any innovation or success arising out of the project or publication was due to differences between the claimed invention and the prior art.

Indeed, mere reference to "EMERALD" in projects or publications, without discussion of the claimed subject matter, does not establish a sufficient nexus between the claimed subject matter and any project or publication — the "EMERALD" project spanned many years and encompassed many different technologies. Because SRI cannot make a prima facie case of nexus between the claimed subject matter and its evidence of DARPA funding or peer-reviewed publications, such evidence is irrelevant and inadmissible.

G.  **STIPULATIONS**

The parties have agreed to a stipulation regarding the authenticity and admissibility of certain documents and the testimony of Mr. Dan Teal at trial.  *See* Appendix C to this Exhibit.

H.  **SYMANTEC'S RESPONSE TO SRI'S MISCELLANEOUS ISSUES**

   1.  **Selection of representative claims**

In its proposed pretrial order, SRI asserted 14 different claims from 2 different patents against Symantec, and 21 different claims from 3 different patents against ISS.  SRI also proposed a set of 9 representative claims to be tried, with no claim selected from the '203 patent.

The number of representative claims should be addressed at the pretrial conference.  Given the time constraints that the Court will impose for trial, Symantec requests that a representative set of no more than 6 claims be selected from the 3 patents-in-suit, including '203 claim 1 and 5 other claims of SRI's choosing, wherein no more than 2 of those claims be selected from the '338 patent.  It is critical to include at least '203 claim 1 in the representative set of claims because much of the expert reports and deposition testimony were provided in the context of the '203 patent.

   2.  **Narrowing of invalidity defenses**

SRI complains of the number of asserted invalidity defenses, and the number of references cited in support of those defenses.  SRI's complaints should be largely alleviated given that Symantec is no longer asserting enablement or indefiniteness defenses, and has specified that its written description defense is related to claims with the "integrating" / "integrate" or "correlating" limitations.  *See* Exhibit 3.

SRI appears to complain about Symantec's short list of obvious modifications and combinations.  All of these obvious modifications or combinations have been disclosed and

discussed in the expert report of Mr. Todd Heberlein. Notably, SRI does not even acknowledge that obviousness may be the result of not only particular combinations, but obvious modifications to particular references or systems, upon which Symantec also relies. In particular, Symantec relies upon the following paragraphs in Mr. Heberlein's report:

   a) Obvious modifications to the 102 references and systems disclosed: *see* Heberlein ¶¶ 149 (NSM), 173 (DIDS), 213 (Grids), 336 (NetRanger), 339 (RealSecure), 354-362 (Emerald 1997).

   b) Emerald 1997 in combination with Intrusive Activity 1991: not contested

   c) Emerald 1997 in combination with additional references regarding the Network Security Monitor, the Distributed Intrusion Detection System, the Graph Based Intrusion Detection System, the ISS RealSecure system, and the NetRanger system, *see* Heberlein ¶¶ 256, 364-366.

   d) Emerald 1997 in combination with SunScreen EFS Configuration and Management Guide, Release 1.1, Rev. A, Sun Microsystems, June 1997: *see* Heberlein ¶ 256.

   e) Emerald 1997 in combination with CERT Advisory CA-1996-21 TCP Syn Flooding and IP Spoofing Attacks; and CERT Advisory CA-1996-26 "Denial-of-Service Attack via Ping, Dec. 18, 1996: *see* Heberlein ¶¶ 254-255.

With respect to the number of documents disclosed by Symantec in support of its invalidity defenses, Symantec's invalidity defenses have been properly pled and disclosed in its expert reports. SRI's complaints about the length of Symantec's § 282 disclosure are also unjustified because the cited documents are not all separate invalidating prior art references, but rather, many are documents that may be used in support of prior art systems. Additionally, Symantec has listed in Exhibit 3 the specific key prior art publications and systems, and the

specific obvious modifications and combinations that it will likely assert at trial, thereby alleviating any potential prejudice resulting from the scope of the § 282 disclosure.

### 3. SRI's request to limit number of witnesses

SRI's request to limit the number of witnesses or to preclude any overlap between the witness's testimony should be denied. A disclosure of four fact/expert witnesses that may address the prior art is hardly an unreasonable disclosure, particularly given the numerous prior art publications and systems that anticipate and/or render the claims obvious. Additionally, if Symantec chooses to have multiple witnesses discuss the same prior art publication or system, it should be free to do so. The time limits that will be imposed by the Court provide the proper mechanism for restricting the duration and scope of trial, not a limitation on the number of witnesses or scope of their testimony.

### 4. SRI's request to preclude use of certain documents

SRI's request to preclude the use of documents produced by L. Todd Heberlein and Daniel Teal should be denied. These documents were produced over two years ago in response to a third party subpoena from SRI itself. SRI should not now be able to preclude the use of the very documents it requested of third parties, particularly given that SRI has had these documents in its possession for over two years and would suffer no prejudice by their use at trial. In the event that these documents are precluded, Symantec should nevertheless be allowed to use these documents to support the witnesses' testimony on redirect examination if SRI improperly asserts at trial that there is no evidence of the facts contained in these documents.

Similarly, SRI's request to preclude use of documents produced on September 13, 2006 should be denied. SRI provides no basis for their preclusion, other than their production date. The lack of particularity makes it impossible for Symantec to adequately address each document

individually. However, some of these documents were merely re-productions of previously produced documents or had not come into existence until after the close of fact discovery. Additionally, SRI failed to show that it would suffer any prejudice by the use of these documents at trial.

### 5. SRI's request to preclude reexamination materials

As discussed in Motions in limine #1-3 and more fully in Exhibit 6, Symantec should not be precluded from referencing or introducing the reexaminations into evidence.

### 6. Discussion of the '212 patent, EMERALD 1997, and Live Traffic

As discussed above, Defendants should not be precluded from discussing the Court's determination and the Federal Circuit's affirmance of invalidity of the '212 patent. Rather, the above limiting instruction regarding EMERALD 1997 should be provided to the jury, and Symantec should not be precluded from referencing the '212 patent or its invalidity.

SRI contends that Defendants should be precluded from proving at trial that the posting of the Live Traffic Analysis paper on SRI's FTP site was a prior art publication that anticipates the patents-in-suit. SRI claims the Federal Circuit's opinion "established" certain facts as a matter of law. The Federal Circuit did not make factual findings and explicitly remanded this issue for trial.

### 7. Evidence regarding SRI's FTP server

SRI's assertion that Defendants' evidence regarding the configuration, directory structure, file structure and content of SRI's FTP and WWW server should be precluded should be denied. SRI's request goes to the weight of the evidence, not its admissibility. Moreover, SRI's assertion that its server was "reorganized in 2001" is neither a proven fact, nor relevant to the admissibility of such evidence.