IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation, | |
| Plaintiff and Counterclaim-Defendant, | |
| v. | C. A. No. 04-1199 (SLR) |
| INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, and SYMANTEC CORPORATION, a Delaware corporation, | |
| Defendants and Counterclaim-Plaintiffs. | |

**SRI'S PROPOSED JURY INSTRUCTIONS**

## **TABLE OF CONTENTS**

**Page No.**

PRELIMINARY JURY INSTRUCTIONS                              3

GLOSSARY OF PATENT TERMS                                  8

1. GENERAL INSTRUCTIONS                                   9

2. THE PARTIES AND THEIR CONTENTIONS                     19

3. INFRINGEMENT                                          23

4. VALIDITY DEFENSES – GENERALLY                         35

7. DELIBERATION AND VERDICT                              66

## PRELIMINARY JURY INSTRUCTIONS

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for guidance on your role as jurors in this case.

<u>The Parties</u>

The case is an action for patent infringement arising under the patent laws of the United States. The parties are SRI International, Inc, the plaintiff, and Internet Security Systems, Inc. a Georgia Corporation, Internet Security Systems, Inc., a Delaware Corporation, and Symantec Corporation, the defendants.

SRI is the owner of three United States Patents. U.S. Patent number 6,321,338, which I will refer to as "the '338 patent;" U.S. Patent number 6,484,203, which I will refer to as "the '203 patent;" and U.S. Patent number 6,711,615, which I will refer to as the "the '615 patent." The lawyers and witnesses may refer to the patents by their last three numbers or refer to all three patents as the patents-in-suit. SRI contends defendants make, use, or sell products and services that infringe the patents-in-suit. Defendants deny that they infringe the patents-in-suit and allege that the patents-in-suit are invalid.

The Court will now play a video that explains what a patent is, how it is obtained, the parts of a patent, the rights a patent gives to its owner, and the defenses available to a company accused of patent infringement. I will provide you with a "Glossary of Patent Terms" along with a copy of these preliminary instructions. Feel free to refer to this Glossary throughout the trial.

Summary of the Patent Issues

In this case, you must decide several things according to the instructions that I shall give you at the end of the trial.  Those instructions will repeat this summary and will provide more detail.  In essence, you must decide:

Whether defendants infringe the asserted claims of the patents-in-suit; and

Whether those claims are valid.

Duty of Jury

It will be your duty to find what the facts are from the evidence as presented at the trial.  You, and you alone, are the judges of the facts.  You will have to apply those facts to the law as I will instruct you at the close of the evidence.  You must follow that law whether you agree with it or not.

You are the judges of the facts.  I will decide which rules of law apply to this case.

Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

Evidence

The evidence from which you will find the facts will consist of the testimony of witnesses, and documents and other things admitted into evidence.  In addition, the evidence may include certain facts as agreed to by the parties or as I instruct you.

Certain things are not evidence.

1.      Statements, arguments, and questions by lawyers are not evidence.

2.      Objections to questions are not evidence.  Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered

into evidence are not admissible under the rules of evidence.  You should not be influenced by a lawyer's objection or by my ruling on the objection.  If I sustain or uphold the objection, and find the matter is not admissible, you should ignore the question or document.  If I overrule an objection and allow the matter in evidence, you should treat the testimony or document like any evidence.  If I instruct you during the trial that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider that evidence for that purpose only.  If this does occur during the trial I will try to clarify this for you at that time.

3.      Anything you see or hear outside the Courtroom is not evidence and must be disregarded.  You are to decide this case solely on the evidence presented here in the Courtroom.  In judging the facts, it will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

### Burden of Proof

This is a civil case. SRI has the burden of proving infringement by what is called a preponderance of the evidence.  That means SRI has to produce evidence which, when considered in the light of all the facts, leads you to believe that what SRI claims is more likely true than not.  To put it differently, if you were to put SRI's and the defendants' evidence on the opposite sides of a scale, the evidence supporting SRI's claims would have to make the scale tip somewhat on SRI's side.  If SRI fails to meet this burden, your verdict must be for defendants.  In this case, defendants are urging that SRI's patents are invalid. A patent, however, is presumed to be valid.  Accordingly, defendants have the burden of proving that the patents-in-suit are invalid by clear and convincing evidence.

Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden then proof by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not the parties have met their respective burdens of proof in this case.

I will give you detailed instructions on the law at the end of the case.  But in order to help you follow the evidence, I will give you a brief summary of the issues.

Conduct of the Jury

Now, a few words about your conduct as jurors.

First, during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves.  If anyone should try to talk to you about the case, bring it to my attention promptly.

Second, do not read or listen to anything touching on this case that is not admitted into evidence.  By that I mean, if there may be a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case.

Finally, do not reach any conclusion as to the claims until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

If you wish, you may take notes. My Courtroom deputy will arrange for pens, pencils and paper. If you do take notes, leave them in the jury room when you leave at night. And remember that they are for your own personal use--they are not to be given or read to anyone else.

<u>Course of the Trial</u>

The trial will now begin. First, each side may make an opening statement. An opening statement is neither evidence nor argument. It is an outline of what that party intends to prove, and is presented to help you follow the evidence as it is offered.

After the opening statements, SRI will present its witnesses, and the defendants may cross-examine them. Then the defendants will present their witnesses, and SRI may cross-examine them.

After all of the evidence is presented, the attorneys will make their closing arguments to summarize and interpret the evidence for you, and I will give you instructions on the law and describe for you the matters you must resolve.

You will then retire to the jury room to deliberate on your verdict. At the end of this trial and before you begin your deliberations, I will read and give you a copy of written instructions on the law.

## <u>GLOSSARY OF PATENT TERMS</u>

<u>Assignment</u>                    Transfer of ownership rights in a patent or patent application from one person or company to another.

<u>Claims</u>                        That part of a patent which defines the metes and bounds of the invention. These are found at the end of the patent specification in the form of numbered paragraphs.

<u>Disclosure of description</u>     That part of the patent specification which explains how the invention works and usually includes a drawing.

<u>File wrapper</u>                  The written record of proceedings in the Patent Office including the original patent application and subsequent communications between the Patent Office and applicant.

<u>Patent Application</u>            The initial papers filed in the United States Patent and Trademark Office (patent Office or PTO) by an applicant. These typically include a specification, drawings and the oath (Declaration) of applicant.

<u>Patent Examiners</u>             Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and the disclosure adequately describes the invention.

<u>Prior art</u>                     Any information which is used to describe public, technical knowledge prior to the invention by applicant or more than a year prior to his/her application.

<u>References</u>                    Any item of prior art (publication or patent) used to determine patentability.

<u>Specification</u>                 That part of the patent application or patent which describes the invention and concludes with one or more claims.

# CHARGE TO THE JURY

## 1.  GENERAL INSTRUCTIONS

### 1.1  INTRODUCTION

See joint set of proposed instructions.

Source: Tracks Del. Model Jury Instruction 1.1.

## 1.2  JURORS' DUTIES

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction No. 1.2.

## 1.3  BURDENS OF PROOF

This is a civil case in which plaintiff SRI International, Inc., which I will refer to as SRI, is charging the defendants, Internet Security Systems, Inc. and Symantec Corporation, with patent infringement.  SRI has the burden of proving patent infringement by what is called a preponderance of the evidence.  That means SRI has to produce evidence which, when considered in light of all of the facts, leads you to believe that what SRI asserts is more likely true than not.  To put it differently, if you were to put SRI's and defendants' evidence of infringement on opposite sides of a scale, the evidence supporting SRI's assertions would have to make the scale tip somewhat to SRI's side.

In this case, defendants are urging that the asserted claims of  the patents-in-suit are invalid.  Patent claims, however, are presumed to be valid.  Accordingly, defendants have the burden of proving, by clear and convincing evidence, that each of the asserted claims is invalid.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not SRI or defendants have met their respective burdens of proof.

Source:  Tracks Del. Model Jury Instruction No. 1.3.

SRI's Proposed Jury Instructions

## 1.4  EVIDENCE DEFINED

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction No. 1.4.

SRI's Proposed Jury Instructions

## **1.5  CONSIDERATION OF EVIDENCE**

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction No. 1.5.

## <u>1.6  DIRECT AND CIRCUMSTANTIAL EVIDENCE</u>

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction No. 1.6.

## 1.7  CREDIBILITY OF WITNESSES

See joint set of proposed instructions.

Source: Tracks Del. Model Jury Instruction No. 1.7.

## **1.8  NUMBER OF WITNESSES**

See joint set of proposed instructions.

Source: Tracks Del. Model Jury Instruction No. 1.8.

SRI's Proposed Jury Instructions

## <u>1.9  EXPERT WITNESSES</u>

See joint set of proposed instructions.

Source: Tracks Del. Model Jury Instruction No. 1.9.

## <u>1.10  DEPOSITION TESTIMONY</u>

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction No. 1.10.

## 2.  THE PARTIES AND THEIR CONTENTIONS

### 2.1  THE PARTIES

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

The plaintiff is SRI International, Inc. or "SRI."

There are three defendants:

Internet Security Systems, Inc., a Delaware Corporation, and Internet Security Systems, Inc., a Georgia Corporation, (which I will refer to collectively as "ISS") and Symantec Corporation, a Delaware Corporation, or ("Symantec")

SRI is the owner of three United States Patents.  U.S. Patent Nos. 6,321,338, which I will refer to as "the '338 patent," 6,484,203, which I will refer to as "the '203 patent," and 6,711,615, which I will refer to as the "the '615 patent."  I may refer to these patents collectively as "the patents-in-suit."

Source:  Tracks Del. Model Jury Instruction No. 2.1.; *Boston Scientific Corp., et al. v. Cordis Corp., et al.*, C.A. 03-283-SLR (June 30, 2005) ("The Parties").

## 2.2  SRI'S CONTENTIONS

SRI contends that defendants infringe claims 1, 2, 4, 6, 12, 13, 15, 17 of the '203 patent, claims 1, 2, 4, 13, 14, 16 of the '615 patent and that ISS infringes claims 1, 4, 5, 11, 12, 13, 24 of the '338 patent .

These claims may be referred to as "the asserted claims."

Source:  Tracks Del. Model Jury Instruction No. 2.2.

## 2.3  DEFENDANTS' CONTENTIONS

Defendants contend they do not infringe any of the asserted claims.

Defendants further contend that the asserted claims are invalid due to anticipation

and obviousness, as well as failure to satisfy the best mode requirement.

Source:  Tracks Del. Model Jury Instruction No. 2.3.

## 2.4.  SUMMARY OF ISSUES

In this case, you must decide several things according to the instructions that I shall give you.

As to infringement:

•        Whether SRI has proven by a preponderance of the evidence that the accused Symantec products and services directly or indirectly infringe any asserted claim of the patents-in-suit either literally or under the doctrine of equivalents.

•        Whether SRI has proven by a preponderance of the evidence that the accused ISS products and services directly or indirectly infringe any asserted claim of the patents-in-suit either literally or under the doctrine of equivalents.

As to validity:

•        Whether defendants have proven by clear and convincing evidence that any asserted claim is invalid as anticipated by the prior art.

•        Whether defendants have proven by clear and convincing evidence that any asserted claim is invalid as obvious in light of the prior art.

•        Whether defendants have proven by clear and convincing evidence that any asserted claim is invalid for failing to satisfy the best mode requirement.

Source:  Tracks Del. Model Jury Instruction No. 2.4.

### 3.  INFRINGEMENT

### 3.1  CLAIM INFRINGEMENT

To decide whether Defendants have infringed the patents-in-suit, you will have to look to the "claims" of the patents-in-suit that have been asserted.  The patent claims are the numbered paragraphs at the end of each patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover.  The claims define the boundaries of the invention described and illustrated in the patent and the patent owner's property rights.  Infringement is the act of trespassing on those rights.  Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of the patent can be infringed.

Each claim in a patent is a separate statement of the patented invention and, therefore, each of the asserted claims must be considered individually.  To show infringement of a particular patent, a plaintiff such as SRI need only establish that one of the asserted claims in that patent has been infringed.

The patent claims involved here are claims 1, 4, 5, 11, 12, 13, and 24 of the '338 patent, beginning at column 14, line 61 of the patent which is Exhibit 1 in evidence. Claims 1, 2, 4, 6, 12, 13, 15, and 17 of the '203 patent, beginning at column 14, line 19 of the patent which is Exhibit 2 in evidence.  And claims 1, 2, 4, 13, 14, and 16 of the '615 patent, beginning at column 15, line 1 of the patent which is Exhibit 4 in evidence.

Source:  Tracks *Syngenta Seeds, Inc. v. Monsanto Co., et al.*, C.A. No. 02-1331-SLR (Dec. 10, 2004) ("The Asserted Claims"); *ArthroCare Corp. v. Smith & Nephew, Inc.*, C.A. No. 01-504-SLR (May 9, 2003) ("The Asserted Claims").

## 3.2  CONSTRUCTION OF CLAIMS

To decide the questions of infringement and validity, you must first understand what the claims of the patent cover. It is my duty under the law to define what the patent claims mean.  You must use the same meaning for each claim for both your decisions on infringement and your decisions on validity.

You must ignore any different interpretation given to these terms by the witnesses or attorneys.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.  I instruct you that the following claim terms have the following definitions:

a. "**Network**":  A collection of software and/or hardware interconnected by communication links for sharing information

b. "**Packet**":  A group of data bytes which represents a specific information unit with a known beginning and end.

c. "**Event**":  An action or occurrence detected by software.

d. "**Network monitors**":  Software and/or hardware that can collect, analyze and/or respond to data.

e. "**Deploying a plurality of network monitors**": Configuring and/or installing two or more network monitors.

f. "**Hierarchical event monitoring [and analysis]**":  Network monitors, arranged in two or more levels, interoperate in order to analyze and respond to network activity.

Source:  Tracks Del. Model Jury Instruction No. 3.2, *IMX v. LendingTree* ("Claim Construction") and the Court's *Markman* Order.

g. "**Hierarchical monitor/hierarchically higher network monitor**": A network monitor that receives data from at least one network monitor that is at a lower level in the analysis hierarchy.

h. "**Service monitor**": A network monitor that provides local real-time analysis of network packets transmitted by a network entity, such as a gateway, router, firewall or proxy server.

i. "**Domain monitor**": A network monitor that receives and analyzes data from service monitors.

j. "**Enterprise monitor**": A network monitor that receives and analyzes data from domain monitors.

k. "**Peer-to-peer relationship**": A relationship between two or more network monitors at the same level in an analysis hierarchy which allows the monitors to share data.

l. "**Automatically receiving and integrating reports of suspicious activity**": Without user intervention, receiving reports of suspicious activity and combining those reports into a different end product; i.e., something more than simply collecting and reiterating data.

m. "**Correlating/correlates**":  Combining the reports to reflect underlying commonalities.

n. "**Responding . . ./invoking countermeasures**": Taking an action in response, including both passive and active responses.

Source:  Tracks Del. Model Jury Instruction No. 3.2, *IMX v. LendingTree* ("Claim Construction") and the Court's *Markman* Order.

o. "**Building at least one long-term and at least one short-term statistical profile from at least one measure of the network packets**":  Generating at least two separate data structures, one a statistical description representative of historical network activity, and one a statistical description of recent network activity, where the statistical descriptions are based on at least one measure of the network packets and are generated through the use of statistical analysis; i.e., something more than simply collecting and retrieving data.

p. "**Determining whether the difference between the short- term statistical profile and the long-term statistical profile indicates suspicious network activity**":  Using the result of the comparison to decide whether the monitored activity is suspicious.

q. "**Statistical detection method**":  A method of detecting suspicious network activity by applying one or more statistical functions in the analysis of network traffic data. This method is not a signature matching detection method.

r. "**Signature matching detection method**":  A method of detecting suspicious network activity by comparing observed network traffic data to known patterns.

s. "**Virtual private network**": A network that uses encryption to securely transmit network packets via a public network. This is an agreed upon construction.

t. "**Firewall**": An interface between two networks that enforces a security policy.

u. "**Proxy server**":" A server that mediates communication between a client application, such as a Web browser, and a real server. It handles requests to the real server to see if it can fulfill the requests itself; if not, it forwards the requests to the real server. The proxy server can serve as a firewall component.

Source:  Tracks Del. Model Jury Instruction No. 3.2, *IMX v. LendingTree* ("Claim Construction") and the Court's *Markman* Order.

v. "**API**":  The interface between the application software and the application

platform, across which all services are provided.

Source:  Tracks Del. Model Jury Instruction No. 3.2, *IMX v. LendingTree* ("Claim
Construction") and the Court's *Markman* Order.

### 3.3  DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in a patent.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read separately to determine its scope.

The second type of claim is called a dependent claim.  A dependent claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.  For example, claim 1 of the '338 patent is an independent claim.  You know this because claim 1 does not refer to any other claims.  Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Claim 2 of the '338 patent, on the other hand, is a dependent claim.  Accordingly, the words of Claims 1 and 2 must be read together in order to determine what the dependent claim, claim 2, covers.

Some claims of the patents-in-suit are broader than other claims.  You are not to imply the limitations or words of a narrower claim into a broader claim, nor of a dependent claim into an independent claim if the broader claim or the independent claim does not include the same limitations.

Source:  Tracks Del. Model Jury Instruction No. 3.3.

## 3.4  PATENT INFRINGEMENT—GENERALLY

A patent owner may enforce its right to exclude others from making, using, offering to sell or selling a patented invention by filing a lawsuit for patent infringement. Here, SRI, the patent owner, has sued ISS and Symantec, the accused infringers, and has alleged that ISS and Symantec's products and services infringe one or more claims of the patents-in-suit.  SRI has the burden of proving, by a preponderance of the evidence, that ISS and Symantec have infringed at least one of the asserted claims either literally or under the doctrine of equivalents.

A company may infringe a patent without knowledge that what it is doing is an infringement of the patent.  A company may also infringe a patent even though, in good faith, it believes that what it is doing is not an infringement of the patent.  Knowledge or intent to infringe is not relevant to infringement.

Source: Tracks *IMX v. LendingTree* C.A. No. 03-1067-SLR (January 20, 2006) ("Patent Infringement Generally").

## **3.6  INDUCING PATENT INFRINGEMENT**

A patent claim may include a combination of components or parts; or a patent claim may cover the use of a particular product which may not infringe the patent if it were used for some other purpose.

Defendants may infringe a patent if they make, use or sell some, but not all, of the components of a product that is covered by the claims of a patent.  In these cases, one would be an infringer if one actively and knowingly aided and abetted someone else to infringe the patent .  This is called inducing infringement.  You must decide whether defendants induced another to infringe SRI's patents by providing, for example, labels, advertising or other instructions or directions to perform an infringing act.

The defendants cannot be liable for inducing infringement unless a patent claim is directly infringed.  However, proof of inducing infringement and the underlying direct infringement by persons allegedly induced to infringe may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

Source:  Tracks Del. Model Jury Instruction No. 3.6.

## <u>3.8  LITERAL INFRINGEMENT</u>

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

SRI asserts that Symantec and ISS literally infringe the asserted claims of the patents-in-suit.  For defendants' products and services to literally infringe one of SRI's patent claims, the subject matter of the patent claim must be found in defendants' device or method.  In other words, one of SRI's patent claims is literally infringed if defendants' make, use, sell or offer for sale a device or method that includes each and every part or that performs each and every step in that patent claim.  If defendants' accused device or method omits any single part or fails to perform any single step recited in the patent claim, defendants do not literally infringe that claim.  You must determine literal infringement with respect to each asserted patent claim individually.

Remember, the question is whether defendants' products infringe any claim of SRI's patents, and not whether defendants' products are similar or even identical to a product made by SRI.  Accordingly, you must be certain to compare defendants' accused product or method with the claim it is alleged to infringe and not with any product made by SRI.

Source: Tracks Del. Model Jury Instruction No. 3.8.

### 3.9  DOCTRINE OF EQUIVALENTS

See joint set of proposed instructions.

Source: Tracks Del. Model Jury Instruction No. 3.9.

### 3.11  OPEN ENDED OR "COMPRISING" CLAIMS

The preamble to the asserted claims uses a transitional phrase that includes the word "comprising."  "Comprising" is interpreted to mean "including" or "containing."  In patent claims, comprising means that the claims are open-ended.  As such, the invention protected by a claim is not limited to only what is in the claim.  In other words, if you find that defendants' accused devices or methods include all of the component parts or perform all of  the steps in any of SRI's patent claims, the fact that they may also include additional component parts or perform additional steps is irrelevant.  The presence of additional component parts or the performance of additional steps in the accused device or method does not mean that the accused device or method does not infringe the patent claim.

Source: Tracks Del. Model Jury Instruction No. 3.11.

### 3.12  "SELECTED FROM" CLAIMS

Some of the asserted claims use the language "network traffic selected from the following categories…."  To be infringed, a patent claim including the "network traffic selected from the following categories" language requires the presence in the accused devices or methods of only one of the listed categories of network traffic.  If you find defendants' device or method includes one or more of the listed categories of network traffic set forth in the patent claim, then this element is met by the defendants' device or method.

Source: *Abbott Laboratories v. Baxter Pharmaceutical Products*, *Inc.*  334 F.3d 1274, 1283 (Fed. Cir. 2003).

## 3.13  INFRINGEMENT DESPITE DEFENDANT'S IMPROVEMENTS OR PATENTS ON IMPROVEMENTS

You may find that defendants' accused device or method represent an improvement over the invention defined in SRI's patent claims.  You may have even seen and heard evidence that defendants obtained a patent on the improvement.  However, you are not to presume that these facts mean that defendants cannot infringe SRI's patent claims.  As long as defendants' accused device or method includes all of the elements of at least one of SRI's patent claims, or if defendants' accused device or method is found to be equivalent under the doctrine of equivalents, then SRI's patent claims are infringed by defendants' device or method despite defendants' improvements or patents.

Source:  Tracks Del. Model Jury Instruction No. 3.16.

## 4.0  VALIDITY DEFENSES – GENERALLY

Defendants contend that all of the asserted claims of the patents-in-suit are invalid.

In considering Defendants' assertions of invalidity, the Court instructs you that the law presumes each claim to be valid, in the absence of clear and convincing evidence to the contrary.  In addition, each claim of a patent is presumed valid independently of every other claim in the patent.  This presumption of validity of the patent claims continues in favor of SRI throughout the trial, and Defendants cannot overcome this presumption except by clear and convincing evidence.

Source:  2003 Draft Del. Model Jury Instructions Nos. 4 and 4.1; *Intuitive Surgical, Inc. et al. v. Computer Motion, Inc.*, C.A. No. 01-203-SLR (Dec. 10, 2002); *Pechiney Rhenalu v. Alcoa, Inc.*, C.A. No. 99-301-SLR (Jan. 18, 2001); *Allied Signal v. Cooper Automotive*, C.A. No. 96-540-RRM (June 10, 1998).

## 4.1  THE WRITTEN DESCRIPTION REQUIREMENT

*[SRI submits this instruction because defendants' have pled this defense.*

*Defendants' experts, however, have offered no opinion on this issue.]*

Defendants contend that the asserted claims are invalid because they lack an adequate written description.

The Patent law requires that a patent application contain an adequate written description of the invention to ensure that the inventor was in possession of the invention at the time the patent application was filed.  In other words, the specification must describe the invention with reasonable clarity to convey to persons of ordinary skill in the art that the inventor was in possession of the claimed invention.  An adequate written description exists for whatever was described in the patent application, including whatever was described by the claims as originally written in the application.

To meet the requirement of providing a description of the patented invention, the patent application must adequately describe the invention as it was finally claimed in the issued patent.  That is, to prove a claim invalid for lack of an adequate written description, defendants must prove by clear and convincing evidence that the patent application does not reasonably convey to a person of ordinary skill in the art that the inventors had possession of the invention at the time of the application as that invention was finally claimed in the issued patent.  No particular form of written description is required.

Source: Tracks 2003 Proposed Del. Model Jury Instruction, No. 4.2 citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) (citing *Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985)).

## 4.3  BEST MODE

Under the Patent Laws the description portion of a patent must also set forth the best mode contemplated by the inventors of carrying out their invention at the time they filed their application.  This is required of patent applicants to prevent concealment from the public of preferred embodiments of their invention.  In attempting to show non-compliance with the best mode requirement, only evidence of concealment (accidental or intentional) is to be considered.  That evidence must tend to show that the quality of an applicant's best mode disclosure is so poor as to effectively result in concealment.  Conversely, compliance with the best mode requirement exists when an inventor discloses his preferred embodiment for practicing an invention.

When an inventor files an application as a continuation of a previously-filed application, he does not need to update or supplement the best mode disclosed in that previous application, even if he has subsequently discovered an improved best mode for practicing the invention.  The best mode that is required in the continuation application is the best mode that was required in the previously-filed application.

Source:  Tracks Del. Model Jury Instruction, No. 4.3.

## 4.4  ANTICIPATION BY PRINTED PUBLICATION OR PRIOR PATENT

Defendants contend the asserted claims are invalid because they are anticipated by certain prior art publications or prior patents.  An invention that is anticipated by such prior art is not entitled to patent protection because the invention is not new.  A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

For an asserted patent claim to be anticipated by such prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication or a prior patent.  You may not find that the prior art anticipates a patent claim by combining two or more items of prior art

There must be no difference between the limitations of the asserted claims and the features of the prior art.  A prior art disclosure that almost meets the claim does not anticipate.  In order to anticipate, the prior art must enable one skilled in the art to practice the invention such that it is available to the public.

There cannot be an accidental or unrecognized anticipation.  A prior duplication of the claimed invention that was accidental, or unrecognized, unappreciated and incidental to some other purpose is not an invalidating anticipation.

In deciding whether a single item of prior art anticipates a patent claim, you should consider both that which is expressly stated or present in the item of prior art, and also that which is inherently present.  Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a person with ordinary skill in the art would understand that to be the case.

## 4.5  PRINTED PUBLICATIONS AS PRIOR ART

Defendants contend the asserted claims were anticipated because the invention defined in those claims was described in a prior publication, such as an article or another patent.  A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a "printed publication" either: (i) before SRI made its invention; or (ii) more than one year before the effective filing date of SRI's patent application.

Defendants bear the burden of proving a document is a "printed publication" by clear and convincing evidence.  A document may be deemed a "printed publication" if it has been disseminated or otherwise made available to the extent that persons interested and of ordinary skill in the subject matter or art, exercising reasonable diligence, can locate it and recognize and comprehend from it the essentials of the claimed invention without need of further research or experimentation.  Public accessibility is the defining characteristic of a "printed publication."  In determining whether a document is a "printed publication," factors such as the intent to make public, activity in disseminating information, production of a certain number of copies, and production by a method allowing reproduction of a large number of copies may be considered.  Confidential documents are not "printed publications."  Confidentiality need not be express so long as the printed materials are distributed with an understanding and expectation of confidentiality.  If defendants cannot prove by clear and convincing evidence that a document is a "printed publication," they cannot prove that the document invalidates any claim in the patents-in-suit.

Source: *Syngenta Seeds, Inc. v. Monsanto Co., et al.,* C.A. No. 02-1331-SLR (Dec. 10, 2004); ("Printed Publications as Prior Art"); 2003 Draft Del. Model Jury Instruction No. 4.5.4; 35 U.S.C. § 102; *In re Wyer,* 655 F.2d 221, 226 (C.C.P.A. 1981) ("While intent to make public, activity in disseminating information, production of a certain number of copies, and production by a method allowing production of a large number of copies may aid in determining whether an item may be termed a 'printed publication,' they are neither always conclusive nor requisite."); *Garrett Corp. v. U. S.,* 422 F.2d 874, 878 (Ct. Cl. 1970) (citing *In re Tenney,* 254 F.2d 619, 627 (C.C.P.A. 1958) ("It seems to me other factors are entitled to consideration, including not only the actual physical process employed in production or reproduction, but also availability, accessibility, dissemination and, perhaps, in some cases, even intent.")); *Bristol-Myers Squibb Co. v. Boehringer Ingelheim Corp.,* 86 F. Supp. 2d 433, 444 (D.N.J. 2000) rev'd on other grounds in *Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.,* 246 F.3d 1368 (Fed. Cir. 2001) ("'Public accessibility,' is the defining characteristic of a printed publication. This determination is made by considering the following factors: (1) the number of copies made; (2) their availability to the "public"; (3) the extent of the document's dissemination; and (4) the intent behind distribution. *See* Donald R. Palladino, The Publication Bar: How Disclosing An Invention to Others Can Jeopardize Potential Patent Rights, 37 Duq. L.Rev. 352, 355 (Winter 1999). To reiterate, the intent behind distribution is key; confidential documents will not bar issuance of a patent. *See id.; Pickering v. Holman*, 459 F.2d 403, 407 (9th Cir. 1972). Confidentiality need not be express so long as the printed materials are distributed 'with an understanding and expectation of confidentiality.' *See Xerox v. 3Com Corp.,* 26 F. Supp. 2d 492, 494 (W.D.N.Y. 1998)); *see also Aluminum Co. of America v. Reynolds Metals Co.,* 14 U.S.P.Q. 2d 1170, 1172, 1989 WL 165064 (N.D. Ill. 1989) ("an understood, even though silent, limitation on access can be every bit as effective as an express one.")); *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.,* 2006 WL 2253130, *5 (S.D. Tex. 2006) ("A court should also consider whether the 'printed publication' was the subject of confidentiality agreements or whether the disclosing party had 'a reasonable expectation that the information [would] not be copied.' '[P]rofessional or behavioral norms [that] entitle a party to a reasonable expectation that the information displayed will not be copied' can also be evidence that something is not a 'printed publication.'"); *Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 936-937 (Fed. Cir. 1990) ("The district court was unable to find that anyone could have had access to the documents [possibly marked 'confidential'] by the exercise of reasonable diligence. See Massachusetts Inst., supra. We are unpersuaded that the evidence shows otherwise. Accordingly, we affirm that these documents were not printed publications.")

## <u>4.6  CORROBORATION REQUIRED</u>

Mere testimonial evidence concerning allegedly invalidating activities without corroborating documentary evidence is insufficient to invalidate a patent claim.  This is because of the possibility that even honest witnesses can convince themselves, after many years, of having invented something they did not.  In addition, inventions are normally documented by tangible evidence such as devices, schematics, or other materials that typically accompany the inventive process.  Such documentation is typically—and optimally—contemporaneous with the invention.  The need for corroboration exists regardless of whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation, for example because that party is the accused infringer or is uninterested but testifying on behalf of an interested party.  Therefore, defendants cannot meet their burden of proving invalidity by clear and convincing evidence on the basis of witness testimony in the absent of documentary evidence corroborating that testimony.

Source:  *Finnigan Corp. v. International Trade Com'n* , 180 F.3d 1354, 1366-67  (Fed. Cir. 1999) ("Mere testimony concerning invalidating activities is received with further skepticism because such activities are normally documented by tangible evidence such as devices, schematics, or other materials that typically accompany the inventive process. While this court has in the past applied the requirement of corroboration more often in the context of priority disputes under 35 U.S.C. § 102(g), corroboration has been required to prove invalidity under other subsections of § 102 as well.  In the context of § 102(f) (derivation) and § 102(g) (priority), we have stated that 'the case law is unequivocal that an inventor's testimony respecting facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof.'  No principled reason appears for applying a different rule when other subsections of § 102 are implicated: a witness's uncorroborated testimony is equally suspect as clear and convincing evidence if he testifies concerning the use of the invention in public before invention by the patentee (§ 102(a)), use of the invention in public one year before the patentee filed his patent (§ 102(b)), or invention before the patentee (§ 102(g))."); *Tex. Digital Sys. v. Telegenix, Inc*., 308 F.3d 1193, 1217 (Fed. Cir. 2002) ("Corroboration is required of any witness whose testimony alone is asserted to invalidate a patent,

regardless of his or her level of interest."); *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993) ("Throughout the history of the determination of patent rights, oral testimony by an alleged inventor asserting priority over a patentee's rights is regarded with skepticism, and as a result, such inventor testimony must be supported by some type of corroborating evidence."); *Juicy Whip v. Orange Bang*, 292 F.3d 728, 743 (Fed. Cir. 2002) (citing *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1373 (Fed.Cir.1998) ("It is rare indeed that some physical record (e.g., a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist.")); *Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 60, (1923) (oral testimony of prior public use "falls short of being enough to overcome the presumption of novelty from the granting of the patent" when "there is not a single written record, letter or specification of prior date to [the patentee's] application that discloses any such discovery by anyone....").

## 4.7  CONTENT OF REFERENCE NOT CHANGED
## BY TESTIMONY OF AUTHOR

Defendants have presented certain prior art references, and in some cases the authors of those references have testified here.  When evaluating what a particular reference discloses, an author's or inventor's testimony concerning their own prior art reference may not be used to enlarge, supplement, expand or clarify what the document itself discloses.  The question to be addressed is what the reference reasonably conveys to a person of ordinary skill in the art.

Source:  Tracks *IMX v. LendingTree*, C.A. No. 03-1067-SLR (Jan. 20, 2006) ("Content of Reference Not Changed by Testimony of Author"); *Syngenta Seeds, Inc. v. Monsanto Co.*, et al., C.A. No. 02-1331-SLR (Dec. 10, 2004) ("Content of Reference Not Changed by Testimony of Author"); *Motorola, Inc. v. Interdigital Technology Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 1997) (citing *In re Spada*, 911 F.2d 705, 708, (Fed. Cir. 1990) ("[T]he [prior art] reference must describe the applicant's claimed invention sufficiently to have placed a person of ordinary skill in the field of the invention in possession of it." (citations omitted)).) ("Although this disclosure requirement presupposes the knowledge of one skilled in the art of the claimed invention, that presumed knowledge does not grant a license to read into the prior art reference teachings that are not there.  An expert's conclusory testimony, unsupported by the documentary evidence, cannot supplant the requirement of anticipatory disclosure in the prior art reference itself.")  *Roche Diagnostics Corp. v. Apex Biotechnology Corp*, 374 F. Supp. 2d 673, 689 (D. Ind. 2005) ("Dr. Turner was clearly one of extraordinary skill in the art of biosensors by 1986.  As such, what the abstracts taught him is not what they would have taught someone of ordinary skill.  Because he testified to what the abstracts taught him, the Court was not persuaded that one of ordinary skill would have made all of the scientific assumptions that Dr. Turner made when he opined that both abstracts anticipated claim 1 of the 564 patented invention."); *SmithKline Beecham Corp. v. Apotex Corp.*, 2005 WL 941671, *29 (E.D. Pa. 2005) ("Dr. Murthy is not a person of ordinary skill in the art, but rather a person of exceptional skill--a highly trained and educated chemist with a Ph.D ., and an inventor who has received numerous patents for developing processes to produce various pharmaceutical products.  As the Federal Circuit has repeatedly instructed, an invention "must be evaluated not through the eyes of [an] inventor, who may have been of exceptional skill, but as by one of 'ordinary skill.'  *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1138 (Fed. Cir. 1985); see also *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 956 (Fed. Cir. 1997).  Thus, it is clearly inappropriate for an expert to rely on the statement of an individual who is not a person of ordinary skill (i.e., Dr. Murthy) to determine what a person of ordinary skill would have understood a term in a claim to mean.").

## 4.8  ON SALE STATUTORY BAR

*[SRI submits this instruction because defendants' have submitted a competing instruction.  SRI does not believe this to be an issue in the case.]*

It is against public policy to allow an inventor to commercially exploit his invention by selling or offering it for sale more than one year before the effective filing date of the patent because this has the effect of extending the term of the patent as fixed by Congress.  Thus, the patents in suit cannot be found valid if you find that all of the inventions claimed in the patents in suit were "on sale" before November 9, 1997.

Although the law uses the phrase "on sale," the law does not require that an actual sale was made.  An offer of sale, even if unaccepted, solicitation of orders, promotional activities or advertisements can constitute being "on sale," even though no actual sale takes place.  What is important is the commercial motive of the person making the offer to sell.  The essential element of "on sale" is an attempt to obtain a commercial benefit.

In order for an invention to be "on sale," the invention must have been developed to the point of demonstrating that it will work for its intended purpose.  The invention need not be fully perfected or in commercial production.  It is not necessary that there be stock or inventory available for sale.

You must determine whether the defendants have established by clear and convincing evidence that any such offers for sale were made before November 9, 1997.  If you find that such offers were made, then the burden shifts to the patent owner to prove that the offers did not involve completely functional machines or processes.  Even one offer for sale of a completed invention, more than one year prior to the filing date of the patent in suit, will render the patent invalid.

Source:  Del. Model Jury Instruction No. 4.5.

## 4.9  EXPERIMENTAL USE EXCEPTION

*[SRI submits this instruction because defendants have submitted a competing*

*instruction.  SRI does not believe this to be an issue in the case.]*

The law recognizes that it is beneficial to permit the inventor the time and

opportunity to develop his invention.  As such there is an "experimental use" exception to

the "on sale" rules.  Even if the claimed inventions were on sale before November 9,

1997, that would not invalidate the patents in suit if the principal purpose of that sale or

offer for sale was for experimentation rather than commercial benefit.  If the primary

purpose was experimental, it does not matter that the inventor incidentally derived profit

from it.

When a sale or offer for sale is shown, the burden is on the patentee to come

forward with evidence to support the experimental use exception.

Only experimentation by or under the control of the inventor of the patent

qualifies for this exception.  Experimentation by a third party, for its own purposes, does

not.  Once the invention leaves the inventor's control, its use is a public one, even if

further experimentation takes place.

The experimentation must relate to the claimed features of the invention.  And it

must be for the purposes of technological improvement, not commercial exploitation.  If

any commercial exploitation does occur, it must be merely incidental to the primary

purpose of experimentation.  A test done primarily for marketing, and only incidentally

for technological improvement, is not experimentation.

Source:  Del. Model Jury Instruction No. 4.6.

## 4.10  PUBLIC USE

*[SRI submits this instruction because defendants' have submitted a competing instruction.  SRI does not believe this to be an issue in the case.]*

Just as placing a claimed invention "on sale" before November 9, 1997 can invalidate the patents-in-suit, making "public use" of the completed inventions before November 9, 1997 can also invalidate the patents-in-suit.  The same policy reasons apply.  A public use by the inventor, even if secret, can be an invalidating public use if done for commercial purposes.  However, if a use of the invention by the inventor is experimental, even though not secret, it cannot be an invalidating public use.

A public use by a person other than the inventor of the patentsin-suit, who is under no limitation, restriction or obligation of secrecy by the inventors may also invalidate the patents-in-suit if it occurred before November 9, 1997.

An invention is publicly used by another when it is made accessible to any member of the public other than the inventor or a person under an obligation of secrecy imposed by the inventor.  Secret non-public use by other than the inventor, however, is not an invalidating public use.  Thus, a patent is not invalidated if the particular device, composition or process if used by someone other than the inventor, under circumstances where it is not made accessible to the public.

Source:  Del. Model Jury Instruction No. 4.7.

## 4.11  OBVIOUSNESS

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made, without the teachings of the patents-in-suit.

In determining obviousness or non-obviousness of the claimed subject matter of each of the patents-in-suit, the following steps should be taken by you:

First, you should determine the scope and content of the prior art relied upon by the party alleging invalidity of the patents-in-suit;

Second, you should then identify the differences, if any, between each claim of the patents-in-suit and the prior art;

Third, you should determine the level of ordinary skill in the pertinent art at the time the invention of the patents-in-suit was made; and

Fourth, you should consider objective evidence of non-obviousness, if any, such as commercial success, long felt but unresolved need, failure of others to solve the problem, acquiescence in the patent by others, and whether the same or similar inventions were made independently by others prior to or at about the same time as the invention of the patents-in-suit.

Source:  Tracks *IMX v. LendingTree*, C.A. No. 03-1067-SLR (Jan. 20, 2006) ("Obviousness"); *Cordis Corp. v. Medtronic Vascular, Inc.*, C.A. No. 97-550-SLR (Mar. 11, 2005) ("Obviousness"); *Boston Scientific Corp., et al. v. Cordis Corp., et al.*, C.A. 03-283-SLR (June 30, 2005) ("Obviousness").

Against this background, you will then make your decision as to whether the claimed subject matter as a whole would have been either obvious or non-obvious to a person of ordinary skill in the pertinent art at the time the invention was made.

Source:  Tracks *IMX v. LendingTree*, C.A. No. 03-1067-SLR (Jan. 20, 2006) ("Obviousness"); *Cordis Corp. v. Medtronic Vascular, Inc.*, C.A. No. 97-550-SLR (Mar. 11, 2005) ("Obviousness"); *Boston Scientific Corp., et al. v. Cordis Corp., et al.,* C.A. 03-283-SLR (June 30, 2005) ("Obviousness").

**<u>4.11.1  SCOPE AND CONTENT OF THE PRIOR ART</u>**

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.  This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced.  The prior art includes the following:

1.    Prior patents that issued before November 9, 1997;

2.    Prior publications having a publication date before November 9, 1997;

3.    U.S. Patents that have a filing date prior to November 9, 1997;

Source:  Tracks Del. Model Jury Instruction, No. 4.8.1.

### 4.11.2  DIFFERENCES OVER THE PRIOR ART

The next factor that you must consider are the differences between the prior art and the claimed invention.  Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as only the differences because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety.

Source:  Tracks Del. Model Jury Instruction, No. 4.8.2.; *Syngenta Seeds, Inc. v. Monsanto Co., et al.*, C.A. No. 02-1331-SLR (Dec. 10, 2004) ("Differences Over the Prior Art").

## **4.11.3  LEVEL OF ORDINARY SKILL**

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction, No. 4.8.3.

### 4.11.4  TESTS FOR OBVIOUSNESS

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, renders the claimed invention obvious.

In determining whether the asserted claims would have been obvious to a person of ordinary skill in the art, you should not apply any rigid test or formula.  Rather, you should use your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known elements to achieve predictable results.

In your analysis, you must be aware of the distortion caused by hindsight bias, that is, of relying upon a hindsight combination of the prior art.  Rather, you must cast your mind back to the time of the invention and consider whether the invention as a whole would have been obvious to a person of ordinary skill in the art, taking into consideration any interrelated teachings of the prior art, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine any known elements in the fashion claimed by the patents at issue.

Source: Tracks 2003 Draft Del. Model Jury Instruction, No. 4.8.4., and the instructions given by Chief Judge Robinson in *Callaway Golf Co. v. Acushnet Co.*, Civ. No. 06-091-SLR

## 4.11.5  OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS
## (SECONDARY CONSIDERATIONS)

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must consider the following examples, among others, of objective evidence which may tend to show non-obviousness of the claims at issue:

1.    Commercial success or lack of commercial success of products covered by the patents in suit;

2.    A long felt need in the art which was satisfied by the invention of the patent in suit;

3.    The inventor proceeded contrary to the accepted wisdom of the art;

4.    The failure of others to make the invention;

5.    Any expressions of disbelief or skepticism that may have been expressed towards the claimed invention;

6.    Unexpected results achieved by the invention;

7.    Copying of the invention by others in the field;

8.    Praise of the invention by the infringer or others in the field;

9.    The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product

Source:  Tracks Del. Model Jury Instruction, No. 4.8.4.; *Cordis Corp. v. Medtronic Vascular, Inc.*, C.A. No. 97-550-SLR (Mar. 11, 2005) ("Objective Criteria Concerning Nonobviousness"); *Boston Scientific Corp., et al. v. Cordis Corp., et al.*, C.A. 03-283-SLR (June 30, 2005) ("Objective Criteria Concerning Nonobviousness").

other than those claimed in the patents-in-suit, then any commercial success may have no relation to the issue of obviousness.

It is inappropriate to disregard any proper evidence relating to the issue of obviousness. Although some parts of the evidence may weigh more heavily than others, your decision of obviousness or non-obviousness should be held in abeyance, until all of the evidence has been introduced.

Source:  Tracks Del. Model Jury Instruction, No. 4.8.4.; *Cordis Corp. v. Medtronic Vascular, Inc.*, C.A. No. 97-550-SLR (Mar. 11, 2005) ("Objective Criteria Concerning Nonobviousness"); *Boston Scientific Corp., et al. v. Cordis Corp., et al.*, C.A. 03-283-SLR (June 30, 2005) ("Objective Criteria Concerning Nonobviousness").

## 4.11.6  OBVIOUSNESS - HINDSIGHT

Obviousness is determined by comparing the prior art to the asserted claims; therefore, it is not improper to review the asserted claims at the start of the obviousness inquiry.  However, a determination of obviousness cannot be based upon the hindsight combination of prior art, despite the strong temptation to rely on hindsight while undertaking this evaluation.  Thus, it is wrong to use each asserted claim as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the asserted claims.  Such a hindsight analysis cannot be used to determine whether the invention as a whole would have been obvious to a person of ordinary skill in the art at the time of the invention.

Source:  Tracks *IMX v. LendingTree*, C.A. No. 03-1067-SLR (Jan. 20, 2006) ("Obviousness – Hindsight"); *Cordis Corp. v. Medtronic Vascular, Inc.*, C.A. No. 97-550-SLR (Mar. 11, 2005) ("Hindsight"); *Boston Scientific Corp., et al. v. Cordis Corp., et al.*, C.A. 03-283-SLR (June 30, 2005) ("Hindsight").

### 4.11.7  NON-OBVIOUSNESS

Expressions of disbelief upon learning of the invention by those skilled in the art constitute strong evidence of non-obviousness.

Source:  Tracks Del. Model Jury Instruction, No. 4.8.6.

## 4.11.8  TEACHING AWAY OF PRIOR ART

If the patentee proceeds contrary to accepted wisdom of prior art, this is strong evidence of non-obviousness.  Thus, in evaluating the content of the prior art, you must consider the nature of the teaching of the prior art, both what the art teaches one should do, as well as what it teaches one should not do.

Source:  Tracks *Syngenta Seeds, Inc. v. Monsanto Co., et al.*, C.A. No. 02-1331-SLR (Dec. 10, 2004) ("Teaching Away of the Prior Art").

## 4.11.10  INDEPENDENT INVENTION BY OTHERS

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction, No. 4.8.9.

# 7.  DELIBERATION AND VERDICT

## 7.1  INTRODUCTION

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction, No. 7.1.

SRI's Proposed Jury Instructions

## 7.2  UNANIMOUS VERDICT

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction, No. 7.2.

SRI's Proposed Jury Instructions

## 7.3  DUTY TO DELIBERATE

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction, No. 7.3.

SRI's Proposed Jury Instructions

## <u>7.4  COURT HAS NO OPINION</u>

See joint set of proposed instructions.

Source:  Tracks Del. Model Jury Instruction, No. 7.4.