**SRI International, Inc.**

**v.**

**Internet Security Systems, et al.**

**Civ. No. 04-1199-SLR**

**JURY INSTRUCTIONS**

ROBINSON, D.J.
SEPTEMBER          2008

## GENERAL INSTRUCTIONS

### INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. Last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

## JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented. I will instruct you about the burden of proof shortly. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

2

## EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence. The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these demonstrative exhibits are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## USE OF NOTES

You may use notes taken during the trial to assist your memory. Remember that your notes are for your personal use. They may not be given or read to anyone else. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial. Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented. Your notes are valuable only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember

8

other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## EXPERT WITNESSES

When knowledge of technical subject matter might be helpful to the jury, a person who has special training or experience in that technical field – he or she is called an expert witness – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

## DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were read into evidence or played on videotape. This testimony is entitled to the same consideration you would give it had the witness personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## THE PARTIES AND THEIR CONTENTIONS

Plaintiff is SRI International, Inc., which I have referred to as "SRI." SRI is a California corporation with its primary offices in Menlo Park, California.

SRI is the owner of U.S. Patent No. 6,321,338, which I will refer to as "the '338 patent," U.S. Patent No. 6,484,203, which I will refer to as "the '203 patent," and U.S. Patent No. 6,711,615, which I will refer to as "the '615 patent."

One defendant is Symantec Corporation, a Delaware corporation (referred to as "Symantec"). Symantec is a company that is engaged in the development and/or sale of network security products.

The other defendants are Internet Security Systems, Inc., a Delaware corporation, and Internet Security Systems, Inc., a Georgia corporation (collectively, referred to as "ISS"). ISS is engaged in the development and/or sale of network security products.

SRI contends that defendants infringe claims 1 and 12 of the '203 patent, claims 1, 13, 14 and 16 and the '615 patent, and that ISS infringes claims 1, 11, 12, 13 and 24 of the '338 patent.

These claims may be referred to as the "asserted claims."

Defendants contend they do not infringe the asserted claims.

Defendants further contend that the asserted claims are invalid due to anticipation and obviousness, and that the '203 and '615 patents are invalid for failure to satisfy the best mode requirement.

13

## SUMMARY OF ISSUES

In this case, you must decide several things according to the instructions that I shall give you.

As to infringement:

-       Whether SRI has proven, by a preponderance of the evidence, that the accused Symantec products and services directly or indirectly infringe any asserted claim of the patents-in-suit literally.

-       Whether SRI has proven, by a preponderance of the evidence, that the accused ISS products and services directly or indirectly infringe any asserted claim of the patents-in-suit literally.

As to validity:

-       Whether defendants have proven, by clear and convincing evidence, that any asserted claim is invalid as anticipated by the prior art.

-       Whether defendants have proven, by clear and convincing evidence, that any asserted claim is invalid as obvious in light of the prior art.

-       Whether defendants have proven, by clear and convincing evidence, that any asserted claim of the '203 or '615 patents is invalid for failure to satisfy the best mode requirement.

14

## BURDEN OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

SRI must prove its claims of patent infringement by a preponderance of the evidence. When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true. To put it differently, if you were to put SRI's and defendants' evidence of infringement on opposite sides of a scale, the evidence supporting SRI's assertions would have to make the scale tip somewhat to SRI's side.

Because patents are presumed valid, defendants must prove their claims that the patents-in-suit are invalid by a higher standard of proof, that is, by clear and convincing evidence. When a party has the burden of proof by clear and convincing evidence, it means that the evidence must produce in your mind a firm belief and conviction that it is highly probable that the matter sought to be established is true.

You may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt." That requirement is the highest burden of proof. It does not apply to a patent case such as this one and you, therefore, should put it out of your mind.

15

## THE PATENT CLAIMS

### PATENT CLAIMS GENERALLY

As I explained to you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.

Claims are usually divided into parts or steps, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

There are two types of claims at issue in this case -- system claims and method claims. A system claim recites a system having certain claimed limitations. A method claim recites a series of steps that must be performed.

16

## DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in a patent. The first type is called an "independent" claim. An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 13 of the '615 patent is an independent claim. You know this because claim 13 does not refer to any other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

On the other hand, claim 14 is a dependent claim. If you look at claim 14, it refers to claim 13. Therefore, to determine what claim 14 covers, you must consider both the words of claims 13 and 14 together.

17

## OPEN ENDED OR "COMPRISING" CLAIMS

Several claims of the patents-in-suit use the transitional term "comprising." "Comprising" is interpreted the same as "including" or "containing." In patent claims, comprising means that the claims are open ended. This means that the claim is not limited to products that include only what is in the claim and nothing else.

If you find that the accused products include all of the limitations in any of the asserted claims that use the term "comprising," the fact that they may also include additional elements or components is irrelevant. The presence of additional elements or components does not mean that the method or product does not infringe a patent claim.

Similarly, if you find that the prior art includes all of the limitations in any of the asserted claims that use the word "comprising," the fact that it may also include additional elements is irrelevant. The presence of additional elements or components does not mean that the prior art does not invalidate a patent claim.

18

## CONSTRUCTION OF CLAIMS

To decide the questions of infringement and validity, you must first understand what the claims of the patent cover. It is my duty under the law to define what the patent claims mean, and I have done so after hearing from the parties in this regard.

You must use the same meaning for each claim for both your decisions on infringement and your decisions on validity. You must ignore any different interpretation given to these terms by the witnesses or attorneys. If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.

I instruct you that the following claim terms have the following definitions:

a. **"Network"**: A collection of software and/or hardware interconnected by communication links for sharing information.

b. **"Packet"**: A group of data bytes which represents a specific information unit with a known beginning and end.

c. **"Event"**: An action or occurrence detected by software.

d. **"Network monitors"**: Software and/or hardware that can collect, analyze and/or respond to data.

e. **"Deploying a plurality of network monitors"**: Configuring and/or installing two or more network monitors. Consistent with the above construction of "network monitor," software is configured and hardware is installed.

f. **"Hierarchical event monitoring [and analysis]"**: Network monitors, arranged in two or more levels, interoperate in order to analyze and respond to network activity.

g. "**Hierarchical monitor/hierarchically higher network monitor**": A network

19

monitor that receives data from at least two other network monitors that are at a lower level in the analysis hierarchy, so that the analysis hierarchy includes a minimum of three monitors.

h. **"Automatically receiving and integrating reports of suspicious activity"**: Without user intervention, receiving reports of suspicious activity and combining those reports into a different end product; i.e., something more than simply collecting and reiterating data.

i. **"Correlating/correlates"**:  Combining the reports to reflect underlying commonalities.

j. **"Responding . . ./invoking countermeasures"**:  Taking an action in response, including both passive and active responses.

k. **"Building at least one long-term and at least one short-term statistical profile from at least one measure of the network packets"**:  Generating at least two separate data structures, one a statistical description representative of historical network activity, and one a statistical description of recent network activity, where the statistical descriptions are based on at least one measure of the network packets and are generated through the use of statistical analysis; i.e., something more than simply collecting and retrieving data.

l. **"Determining whether the difference between the short- term statistical profile and the long-term statistical profile indicates suspicious network activity"**: Using the result of the comparison to decide whether the monitored activity is suspicious.

m. **"API"**:  The interface between the application software and the application platform, across which all services are provided.

## "SELECTED FROM" CLAIMS

Some of the asserted claims use the language "network traffic selected from the following categories." In order to determine both infringement and invalidity, keep in mind that a patent claim including the "network traffic selected from the following categories" language requires the presence in the accused products or methods (in connection with infringement), or in the prior art (in connection with invalidity), of only one of the listed categories of network traffic.

22

## DIRECT INFRINGEMENT GENERALLY

A patent owner may enforce its right to exclude others from making, using, offering to sell or selling a patented invention by filing a lawsuit for patent infringement. Here, SRI, the patent owner, has sued ISS and Symantec, the accused infringers, and has alleged that ISS and Symantec's products and services infringe one or more claims of the patents-in-suit. SRI has the burden of proving, by a preponderance of the evidence, that ISS and Symantec have literally infringed at least one of the asserted claims.

A company may infringe a patent without knowledge that what it is doing is an infringement of the patent. A company may also infringe a patent even though, in good faith, it believes that what it is doing is not an infringement of the patent. Knowledge or intent to infringe is not relevant to direct infringement.

## LITERAL INFRINGEMENT

For an accused product or method to literally infringe an asserted claim, the subject matter of the claim must be found in the accused product or method. In other words, an asserted claim is literally infringed if the accused product or method includes each and every limitation in the patent claim. Literal infringement must be determined with respect to each asserted claim individually by comparing the accused product or method to each of the asserted claims. If the accused product or method omits any single limitation recited in a given claim, that product or method does not literally infringe that claim. You must determine literal infringement with respect to each asserted claim and each accused product or method individually.

In determining whether any accused product or method literally infringes any asserted claim, you should take the following steps:

First, you should determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their ordinary meaning; and

Second, you should compare the accused product or method, element by element, to each of the limitations of the asserted claim.

If you find each and every limitation of the asserted claim in the accused product or method, you must return a verdict of literal infringement as to that claim.

If you did not find each and every limitation of the asserted claim in the accused product or method, you may not return a verdict of literal infringement as to that claim.

You must repeat the above analysis with every asserted claim.

24

Remember the question is whether the accused product or method infringes any of the asserted claims, and not whether the accused product or method is similar or even identical to an SRI product or method. Accordingly, you must be certain to compare the accused product or method with the claims it is alleged to infringe and not with any product or method of SRI.

## INFRINGEMENT DESPITE DEFENDANTS' IMPROVEMENTS

You may find that defendants' accused product or method represents an improvement over the invention defined in the asserted claims. You are not to presume that these facts mean that defendants cannot infringe the asserted claims. As long as defendants' accused product or method includes all of the limitations of at least one of the asserted claims, then the asserted claims are infringed by defendants' product or method despite defendants' improvements.

26

## INDIRECT INFRINGEMENT - INDUCEMENT

The act of encouraging or inducing others to infringe a patent is called "inducing infringement."

In this case, SRI accuses both defendants of knowingly inducing their customers to infringe the asserted claims of the '203 and '615 patents by the use or combination of certain of their products. SRI further accuses ISS of knowingly inducing their customers to infringe the asserted claims of the '338 patent by the use of its products.

SRI must prove that defendants purposefully caused, urged or encouraged their customers to infringe the patents-in-suit. Inducing infringement cannot occur unintentionally. This is different from direct infringement which, as I've just told you, can occur unintentionally. Thus, in order to prove inducement, SRI must prove that defendants knew of the patents-in-suit and encouraged or instructed their customers to use certain of the accused products, or combine certain of the accused products, in a manner that infringes the patents-in-suit. Defendants can be inducers even if they thought that what they were encouraging or instructing their customers to do was not an infringement.

In addition, there can be no inducing infringement unless someone is directly infringing the patent. To prove direct infringement by a customer of either of the defendants, SRI must prove that the customer performed each and every step of a claimed method or made or used a product that satisfied each and every limitation of an asserted claim. If the customer omitted a single step or limitation recited in a claim, then you must find that the customer did not directly infringe that claim. You must consider each of the patent claims separately.

27

Therefore, in order to prove that each defendant induced infringement of any patent-in-suit, SRI must prove four things by the preponderance of the evidence standard:

First, each defendant encouraged or instructed a customer on how to use or combine its accused products in a manner that you, the jury, find infringes at least one asserted claim of the patents.

Second, each defendant knew of the patents asserted against it.

Third, each defendant knew or should have known that its encouragement or instructions would cause direct infringement. In other words, inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that defendant had knowledge of the direct infringer's activities.

Fourth, the customer infringed at least one asserted claim of the patents by using or combining an accused product in a manner that you, the jury, find infringes at least one asserted claim of the patents.

## INVALIDITY

### AFFIRMATIVE DEFENSE OF INVALIDITY GENERALLY

For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious. The terms "new," "useful" and "nonobvious" have special meanings under the patent laws. I will explain these terms to you as we discuss defendants' grounds for asserting invalidity.

Defendants have challenged the validity of the claims of the patents-in-suit on a number of grounds. Although the patents-in-suit were granted by the Patent and Trademark Office, it is your job to determine whether or not the legal requirements for patentability were met; that is, it is your job to determine whether or not the patents are invalid.

I will now explain to you defendants' grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

## PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art." Defendants must prove, by the clear and convincing standard, that these items are prior art. In order to do so, defendants must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

First, anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

Second, anything that was in public use or on sale in the United States more than one year before the application for the patent was filed. In this case, that means anything that was in public use or on sale in the United States before November 9, 1997.

Third, anything that was described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed.

Fourth, anything that was invented by another person in this country before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention.

30

## ANTICIPATION

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. A party challenging the validity of a patent on the basis of "anticipation" must prove anticipation by the clear and convincing standard.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

31

## PRIOR ART- PRINTED PUBLICATIONS

Defendants contend the asserted claims were anticipated because the invention defined in those claims was described in a prior publication. A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a "printed publication" either: (i) before SRI made its invention; or (ii) more than one year before the effective filing date of SRI's patent application.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. However, the description used in an item of prior art does not have to be in the same words or use the same terminology as the patent. What is required is that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field. In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

Defendants bear the burden of proving a document is a "printed publication" by clear and convincing evidence. A document may be deemed a "printed publication" if it has been disseminated or otherwise made available to the extent that persons

32

interested and of ordinary skill in the subject matter or art, exercising reasonable diligence, can locate it and recognize and comprehend from it the essentials of the claimed invention without need of further research or experimentation. Publications may include not only such things as books, periodicals or newspapers, but also publications such as trade catalogues, journal articles, scholarly papers, or website postings that are publicly available. Public accessibility is the defining characteristic of a "printed publication." In determining whether a document is a "printed publication," factors such as the intent to make public, activity in disseminating information, production of a certain number of copies, and production by a method allowing reproduction of a large number of copies may be considered. Confidential documents are not "printed publications." Confidentiality need not be express so long as the printed materials are distributed with an understanding and expectation of confidentiality. If defendants cannot prove, by clear and convincing evidence, that a document is a "printed publication," they cannot prove that the document invalidates any asserted claim.

## CONTENT OF REFERENCE NOT CHANGED BY TESTIMONY OF AUTHOR

The parties have presented certain prior art references, and in some cases the authors of those references have testified here. When evaluating what a particular reference discloses, an author's testimony concerning his or her own prior art reference may not be used to limit, enlarge or supplement what the document itself discloses. The question to be addressed is what the reference reasonably conveys to a person of ordinary skill in the art.

34

## PRIOR ART – PRIOR KNOWLEDGE OR PUBLIC USE

The prior public use of a claimed invention may be prior art to the patent claims under two different circumstances. The first is where the invention was known to or used by someone other than the inventors before the date of invention by the inventors on the patent. In this case, that date would be November 9, 1998. The second is where the invention was publicly used more than one year before the application for the patent was filed. In this case, that date would be November 9, 1997.

In both circumstances, the public use must have been in the United States. Prior public use or knowledge of the claimed invention outside the United States is not prior art to a patent claim.

Use or knowledge by someone other than the inventors may be prior art if it was before the date of invention by the inventor on the patent, or more than one year before the filing of the application for the patent. In either case, a prior use by someone other than the inventors or the patent owner will not be prior art unless it was public. Private or secret knowledge or use by another is not prior art.

If the prior use was more than one year before the filing date of the application for the patent, then the date of invention for the patent claims is irrelevant. A public use more than one year before the patent application was filed will be prior art regardless of the date of invention.

A prior use more than one year before the application filing date by the inventors or the patent owner will be prior art if it was for commercial purposes, even if it was done in secret.

35

## CORROBORATION REQUIRED

Mere testimonial evidence concerning allegedly invalidating activities without corroborating documentary evidence is insufficient to invalidate a patent claim. This is because of the possibility that even honest witnesses can convince themselves, after many years, of having invented something they did not. In addition, inventions are normally documented by tangible evidence such as devices, schematics, or other materials that typically accompany the inventive process. Such documentation is typically-and optimally-contemporaneous with the invention. The need for corroboration exists regardless of whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation, for example because that party is the accused infringer or is uninterested but testifying on behalf of an interested party. Therefore, defendants cannot meet their burden of proving invalidity, by clear and convincing evidence, on the basis of witness testimony in the absent of documentary evidence corroborating that testimony.

## PRIOR ART - ON SALE OR OFFERED FOR SALE

The sale or offer for sale in the United States of a product may be prior art to a patent claim covering the product or a method of making the product if the product was sold or offered for sale more than one year before the application for the patent was filed. In this case, that date is November 9, 1997. The date of invention for the patent claims is irrelevant to this category of prior art. If the sale or offer for sale of a product is more than one year before the patent application was filed, then the product or method of making it may be prior art, regardless of the date of invention.

If the sale or offer for sale was of a product, then it may be prior art regardless of who made the offer.

In order for there to be an offer for sale, two requirements must be met. First, the product must have been the subject of a commercial offer for sale. Second, the product must be "ready for patenting."

Even a single offer for sale to a single customer may be a commercial offer, even if the customer does not accept the offer.

An invention is ready for patenting if the product offered for sale has been developed to the point where there was reason to expect that it would work for its intended purpose. The product may be ready for patenting even if it is not ready for commercial production, or has not been technically perfected.

37

## OBVIOUSNESS

Defendants also contend that the asserted claims are invalid as being obvious. In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made. That is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may deprive prior inventions of their value or utility.

The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or nonobviousness of the asserted claims, the following steps should be taken by you:

First, you should determine the scope and content of the prior art;

Second, you should identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

Third, you should consider the level of ordinary skill in the pertinent art at the time the invention of each asserted claim was made; and

Fourth, you should consider objective evidence of both obviousness and nonobviousness, if any.

Against this background, you will then make your decision as to whether the subject matter of the asserted claims would have been either obvious or nonobvious to a person of ordinary skill in the pertinent art.

38

## SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. A person or ordinary skill in the art is presumed aware of the prior art. The prior art you must consider in this case includes prior publications having a publication date before November 9, 1997, as well as products on sale or in public use before November 9, 1997.

## DIFFERENCES OVER THE PRIOR ART

The next factor that you must consider are the differences between the prior art and the claimed invention. Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as only the differences because the test is whether the claimed invention as a whole would have been obvious over all of the prior art. Each claim must be considered in its entirety.

## LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology and the education of others working in the field.

## OBVIOUSNESS - HINDSIGHT AND THE SUGGESTION
## TO COMBINE OR MODIFY

In determining whether the asserted claims would have been obvious to a

person of ordinary skill in the art and, therefore, are invalid, you should not apply any

rigid test or formula. Rather, you may consider the common sense of a person of

ordinary skill in the art to determine whether the claimed invention is truly innovative, or

merely a combination of known elements to achieve predictable results.

In your analysis, you must be aware of the distortion caused by hindsight bias,

that is, of relying upon a hindsight combination of the prior art. Rather, you must cast

your mind back to the time of the invention and consider whether the invention as a

whole would have been obvious to a person of ordinary skill in the art, taking into

consideration any interrelated teachings of the prior art, the effects of demands known

to the design community or present in the marketplace, and the background knowledge

possessed by a person having ordinary skill in the art, all in order to determine whether

there was an apparent reason to combine any known elements in the fashion claimed

by the patents at issue.

A single prior art reference can satisfy the obviousness inquiry if there is a

sufficient implicit or express suggestion or motivation to modify the teachings of that

reference. However, a patent claim composed of several limitations is not proved

obvious merely by demonstrating that each of its limitations was independently known

in the prior art. In evaluating whether such a claim would have been obvious, you may

consider whether defendants have identified a reason that would have prompted a

person of ordinary skill in the field to combine the elements or concepts from the prior

art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you should consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

## OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS
## (SECONDARY CONSIDERATIONS)

In making your decision as to the obviousness or nonobviousness of the

asserted claims of each patent-in-suit, you must consider the following objective

evidence which may tend to show nonobviousness of the claims at issue:

1.    Commercial success or lack of commercial success of products covered

by the asserted claims;

2.    A long felt need in the art that was satisfied by the invention of the

asserted claims;

3.    The failure of others to make the invention;

4.    Unexpected results achieved by the invention;

5.    Praise of the invention by defendants or others in the field;

6.    The taking of licenses under the patent by others; and

7.    Other evidence tending to show nonobviousness or obviousness.

There must be a nexus or connection between the evidence showing any of

these factors and the inventions of the asserted claims if this evidence is to be given

weight by you in arriving at your conclusion on the obviousness issue. For example, if

commercial success is due to advertising, promotion, salesmanship or the like, or is due

to features of the product other than those described in the asserted claims, any

commercial success may have no relation to the issue of obviousness.

In your determination of obviousness, then, you must consider whether SRI has

demonstrated, by a preponderance of the evidence, not only that such secondary

considerations exist, but also that there is a sufficient nexus or connection between the

44

considerations and the claimed invention — in other words, whether the claimed inventions of the patents-in-suit contributed to these secondary considerations rather than the considerations being due to other factors.

The existence of secondary considerations does not control the obviousness determination. Where there is a strong case of obviousness, it cannot be overcome by secondary considerations.

Keep in mind that defendants continue to bear the ultimate burden of proving invalidity by clear and convincing evidence.

## TEACHING AWAY OF PRIOR ART

If the patentee proceeds contrary to accepted wisdom of prior art, this is strong evidence of nonobviousness. Thus, in evaluating the content of the prior art, you must consider the nature of the teaching of the prior art, both what the art teaches one should do, as well as what it teaches one should not do.

## INDEPENDENT INVENTION BY OTHERS

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of the invention was also invented independently by other persons, either before the inventors of the patents-in-suit or at about the same time. Just as the failure of others to make the invention can be evidence of nonobviousness, independent making of the invention by persons other than the inventors prior to or about the same time can be evidence that the invention would have been obvious.

The simultaneous or near simultaneous invention by two or more persons working independently may or may not be an indication of obviousness when considered in light of all the circumstances.

47

## BEST MODE

If one or more of the inventors knew of a best way, or "mode," of making, using and/or practicing any of the inventions claimed in the patents-in-suit at the time the application for the patent was filed, then the patent specification must contain a description that is sufficient to enable a person of ordinary skill in the art to identify and practice that best mode of the invention.  This is called the "best mode" requirement.

The purpose of the best mode requirement is to ensure that the public obtains a complete disclosure of the best mode of making, using or practicing an invention known to the inventor.  The best mode requirement prevents an inventor from obtaining a patent while, at the same time, withholding from the public his or her preferred way of making or using the claimed invention.

In deciding whether the inventors in this case fulfilled their obligation to disclose the best mode, you must separately address two questions:

(1)  As of the date the patent application was filed on November 9, 1998, did the inventors contemplate a way—or mode—of making, using, or practicing the claimed invention that they preferred or considered to be better than any other mode?

If, as of the date the patent application was filed on November 9, 1998, you find that none of the inventors contemplated the use of a best mode for making, using, or practicing any of the inventions claimed in any of the claims-in-suit – you should stop there.  The patent cannot be invalid for failure to disclose a mode that none of the inventors contemplated as their best mode when the application was filed.  If, however, as of the date the application for patent was filed, you find that one or more of the inventors contemplated the use of a best mode for making, using or practicing any of the inventions claimed in the claims-in-suit, then you must consider the next question.

(2)  Does the patent specification describe the invention in a manner sufficient to

48

enable a person of ordinary skill in the art to identify, make, use and practice the best mode contemplated by the inventors? This question is objective. It depends, not on what the inventors thought or understood, but rather on what a person of ordinary skill in the art would have understood and learned by reading the patent specification at the time the application for patent was filed.

A patent describes the best mode if a person of ordinary skill in the art would have been able to practice or implement the best mode without undue experimentation by reading the patent specification when it was filed. The appropriate question is not whether the inventors referred to the best mode. Rather, the appropriate question is whether the inventors' disclosure was adequate to enable one skilled in the art to make, use and practice the best mode contemplated by the inventors.

Finally, it is not necessary that the inventors have an intent to conceal their best mode. Specific intent to deceive or conceal is not required.

## DELIBERATION AND VERDICT

### INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 5-4, or 6-3, or whatever your vote happens to be. That should stay secret until you are finished.

## UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. The verdict form asks you a series of questions. Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer. When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m. If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations on the next business day. You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among

yourselves or with anyone else during the evening recess. You may talk about the case only while you are in the jury room and everyone on the jury is present. Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30. You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 and 1:30 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 12:30 and 1:30, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

## COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.