IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation, <br><br> Plaintiff and Counterclaim-Defendant, <br><br> v. <br><br> INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, and SYMANTEC CORPORATION, a Delaware corporation, <br><br> Defendants and Counterclaim-Plaintiffs. | C. A. No. 04-1199 (SLR) |

**SRI INTERNATIONAL'S OPENING BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL REGARDING INFRINGEMENT OF THE '338 PATENT**

Dated: November 17, 2008

FISH & RICHARDSON P.C.
Thomas L. Halkowski (#4099)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19889-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110
Tel: (617) 542-5070
Fax: (617) 542-8906

Howard G. Pollack
Katherine D. Prescott
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070
Fax: (650) 839-5071

*Attorneys for Plaintiff and Counterclaim Defendant*
*SRI INTERNATIONAL, INC.*

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

II.    SUMMARY OF THE ARGUMENT ....................................................................... 2

III.   STATEMENT OF FACTS ................................................................................ 2

    A.    The '338 Patent and Claim Construction .......................................................... 2

    B.    The Accused ADS Products .......................................................................... 4

IV.   ARGUMENT ............................................................................................. 5

    A.    Legal Standards Governing Judgment as a Matter of Law ...................................... 5

    B.    The Court Should Enter Judgment as a Matter of Law that ISS Infringes
        Claims 1, 11, 12, 13, and 24 of the '338 Patent. .............................................. 5

       1.    No reasonable jury could find that the ADS products do not infringe
           Claims 1 and 24. ................................................................................ 6

          a.    No reasonable jury could find that ADS does not "receiv[e] network packets" ........ 6

          b.    No reasonable jury could find that ADS does not build statistical profiles ............... 7

             i.    The evidence showed and ISS did not dispute that ADS generates a long-term
                statistical profile ....................................................................... 7

             ii.    The evidence showed that ADS builds a short-term statistical profile; there is
                no competent evidence to support ISS' argument otherwise ............................. 8

          c.    No reasonable jury could find that ADS does not "compar[e] at least one
             long-term and at least one short-term statistical profile" ......................................... 12

          d.    No reasonable jury could find that ADS does not "determine[e] whether the
             difference between the short-term statistical profile and the long-term statistical
             profile indicates suspicious network activity". ........................................................ 12

       2.    No reasonable jury could find that ADS does not infringe Claims 11, 12, and 13 ...... 13

    C.    Alternatively, SRI is Entitled to a New Trial on Infringement of the '338 Patent .......... 14

V.    CONCLUSION .......................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Greenleaf v. Garlock, Inc.*,
   174 F.3d 352 (3d Cir. 1999) ............................................................. 15

*Markman v. Westview Instruments*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)..... 5

*Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888 (Fed. Cir. 1984) ............................. 5

*TA Instruments, Inc. v. Perkin-Elmer Corp.*,
   277 F. Supp. 2d 367 (D. Del. 2003)..................................................... 14


**Rules**

Fed. R. Civ. P. 50(b) ......................................................................... 2

Fed. R. Civ. P. 59(a) ......................................................................... 14

# I. NATURE AND STAGE OF THE PROCEEDINGS

SRI International, Inc. ("SRI") sued Internet Security Systems, Inc., a Delaware corporation, and Internet Security Systems, Inc. a Georgia corporation (collectively, "ISS"), as well as Symantec Corporation ("Symantec"), for infringing U.S. Patent Nos. 6,321,338 ("the '338 patent"), 6,484,203 ("the '203 patent"), 6,711,615 ("the '615 patent"), and 6,708,212 ("the '212 patent"). (D.I. 1, 33). On October 17, 2006, the Court issued its claim construction order (D.I. 468) and granted summary judgment of invalidity of all four patents. (D.I. 461, 471). On appeal, the Court of Appeals for the Federal Circuit upheld the Court's ruling that the '212 patent was invalid, but remanded the case to the Court with respect to the other patents.

Jury trial on the issues of infringement and validity of the '338, '203, and '615 patents (collectively, "the patents-in-suit") began on September 2, 2008. On September 18, 2008, the Jury returned a verdict in favor of SRI upholding the validity of the patents-in-suit, determining that Symantec and ISS infringe all the asserted claims of the '615 and '203 patents, and determining that ISS does not infringe the asserted claims of the '338 patent. (D.I. 558). Subsequently, on September 29, 2008, the Court entered a judgment in SRI's favor "except for the claim of infringement by ISS under the '338 patent . . ." (D.I. 560).

On October 14, 2008, pursuant to Fed. R. Civ. P. 50 and 59, SRI renewed its Motion for Judgment as a Matter of Law that ISS infringes claims 1, 11, 12, 13, and 24 of the '338 patent and moved, in the alternative, for a new trial and/or to alter or amend the Court's September 29, 2008, judgment as to such claims because, *inter alia*, no reasonable jury could conclude that ISS does not infringe the asserted claims of the '338 patent and the jury's verdict of non-infringement of the '338 patent is against the great weight of the evidence. (D.I. 564).

## II. SUMMARY OF THE ARGUMENT

1. SRI moves for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) on the ground that there is no legally sufficient evidentiary basis for a reasonable jury to have found that ISS does not infringe the asserted claims of the '338 patent.

2. Through fact and expert witness testimony, as well as ISS documents describing its Proventia Network Anomaly Detection System (ADS), SRI provided effectively irrefutable evidence showing that ADS meets every limitation of the asserted claims. With one exception, ISS did not even dispute that ADS meets the limitations of the asserted claims of the '338 patent.

3. ISS' sole non-infringement argument was that the current traffic rate is not a short-term statistical profile. This assertion lacks any factual support and is belied by the testimony of ISS' own experts. Given the undisputed fact that the current traffic rate is determined by examining network traffic over a two-minute time period and then by calculating the traffic bit rate for those two minutes, no reasonable jury applying the Court's definition of "statistical profile," could conclude that ADS lacks a "short-term statistical profile."

## III. STATEMENT OF FACTS

### A. The '338 Patent and Claim Construction

SRI accuses ISS' Proventia Network Anomaly Detection System (ADS) products of infringing claims 1, 11, 12, 13, and 24 of the '338 Patent. The '338 patent relates to a particular way to detect suspicious network activity using statistics. (Kesidis Tr. at 667:14-17; Smaha Tr. at 1714:8-25). Claim 1 reads as follows:

A method of network surveillance, comprising:

receiving network packets handled by a network entity;

building at least one long-term and at least one short-term statistical profile from at least

2

one measure of the network packets, the at least one measure monitoring data transfers, errors, or network connections;

comparing at least one long-term and at least one short-term statistical profile; and

determining whether the difference between the short-term statistical profile and the long-term statistical profile indicates suspicious network activity.

PTX-1. Claim 24 includes essentially the same requirements as claim 1; however it is written in the form of a computer program product claim rather than a method claim. *Id.*

The Court construed the requirement of "building at least one long-term and at least one short-term statistical profile from at least one measure of the network packets" to mean

"generating at least two separate data structures, one a statistical description representative of historical network activity, and one a statistical description of recent network activity, where the statistical descriptions are based on at least one measure of the network packets and are generated through the use of statistical analysis; that is, something more than simply collecting and retrieving data."

Jury Instructions Tr. at 2287:20-2288:4. The phrase "determining whether the difference between the short-term statistical profile and the long-term statistical profile indicates suspicious network activity" means "using the result of the comparison to decide whether the monitored activity is suspicious." *Id.* at 2288:5-9.

Dependent claim 11 adds, to the requirements of claim 1, the requirement of "responding based on the determining whether the difference between the short-term statistical profile and the long-term statistical profile indicates suspicious network activity." PTX-1. The phrase "responding" as used in dependent claims 11-13, means "taking an action in response, including both passive and active response." Jury Instructions Tr. at 2287:17-19. Claim 12 further requires that "responding comprises transmitting an event record to a network monitor" and claim 13 adds the limitation of "transmitting the event record to a network monitor comprises transmitting the event record to a hierarchically higher network monitor." PTX-1. The phrase

"network monitor," means "software and/or hardware that can collect/analyze and/or respond to data" and the phrase "hierarchically higher network monitor" means "A network monitor that receives data from at least two other network monitors that are at a lower level in the analysis hierarchy, so that the analysis hierarchy includes a minimum of three monitors."  Jury Instructions Tr. at 2286:20-21; 2287:509.

### B.     The Accused ADS Products

SRI only accuses ISS' ADS of infringing the '338 patent, specifically a feature of ADS referred to as "rate-based anomaly detection" which "[d]etects sudden shifts from baselined traffic levels over time."  PTX-106 at 3; *see also* PTX-107 at 69 (describing "monitored rate alerts").  To perform this detection, ADS determines the current traffic rate.  Mr. Song, the Chief Security Architect at Arbor Networks and lead ADS programmer, explained that the current traffic rate is the traffic rate in bits per second based on observation of traffic over two minutes.  Song Tr. at 484:12-15; 485:7-22; 486:14-17; 497:25-498:3, 498:7-9.  Similarly ISS' expert witness, Mr. Smaha, explained:

> "[ADS] accumulates the total number of bytes that have been seen on a particular connection over a two-minute snapshot.  They use the term "snapshot" at Arbor.  They used -- that name appears in the source code.  It's a snapshot of data.  It's just a total amount of bytes that have been seen, or bits, actually, that have been seen during the last two minutes. ***So they take that two-minute collection of data and convert it into a rate by taking the total number of bits and dividing it by 120***."

Smaha Tr. at 1743:8-17 (emphasis added).  As explained by Mr. Song, in addition to determining the current traffic rate, ADS also determines the historic traffic rate using average traffic rate information from longer periods of time – *e.g.*, a day, week, or month.  Song Tr. at 496:16-497:22; 498:10-499:8.  The current traffic rate and the historic traffic rate are then compared.  *Id.* at 498:4-6; 500:8-11; 501:13-16.  If the two rates differ by a specified threshold amount, an alert is issued.  *Id.* at 501:17-21.  These alerts are typically forwarded to the ISS SiteProtector product

as events.  Tosto Tr. at 481:10-181:22; 483:21-25; Song Tr. at 502:1-4; PTX-106 at 2 and PTX-107 at 6 (Figure showing ADS traffic between ADS Analyzer and SiteProtector).  SiteProtector is a management system for ISS products.  Kesidis Tr. at 639:5-6.  All of the above are undisputed facts concerning the basic operation of the accused system.

## IV.  ARGUMENT

### A.  Legal Standards Governing Judgment as a Matter of Law

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may. . .grant a motion for judgment as a matter of law. . .".  Fed. R. Civ. P. 50(a).  In deciding whether to grant judgment as a matter of law on any issue after a jury has returned a verdict, the court must determine whether substantial evidence exists in the record to support the jury's verdict when applying the correct legal standard.  *Markman v. Westview Instruments*, 52 F.3d 967, 975 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  Substantial evidence is the level of evidence that reasonable jurors would accept as adequate to support a finding.  *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

### B.  The Court Should Enter Judgment as a Matter of Law that ISS Infringes Claims 1, 11, 12, 13, and 24 of the '338 Patent

Infringement analysis involves two steps: first, the court determines the scope and meaning of the asserted patent claims; then the properly construed claims are compared to the accused product.  When the undisputed evidence explaining the operation of ADS is compared to the properly construed claims here, infringement is indisputable.  There is no evidence, let alone the substantial evidence needed to prevent judgment as a matter of law, to support the jury's

verdict to the contrary. ISS' lone attempt at a non-infringement argument – that the ADS current traffic rate is not a short-term statistical profile – is unsupported.

### 1. No reasonable jury could find that the ADS products do not infringe Claims 1 and 24

As detailed below, SRI provided irrefutable evidence that ADS satisfies every limitation of claim 1, including: (i) documentary evidence such as the ADS datasheet (PTX-106) and ADS User Manual (PTX-107); and (ii) testimony of the ISS Product Manager for ADS, Mr. Tosto, the principal ADS programmer, Mr. Song, and SRI's expert, Dr. Kesidis. *See generally*, Tosto Tr. at 477-483; Song Tr. at 484-509; Kesidis Tr. at 667-682; 709-721; 751-753. ISS failed to meaningfully challenge the above basic facts; nor did ISS offer substantial evidence to the contrary. Thus, no reasonable jury could find noninfringement of claim 1. Claim 24 is essentially the same as claim 1, but rather than being written in the form of a method claim requiring the performance of a series of steps, claim 24 is written as a computer program product claim that requires instructions for a processor to perform the same exact steps of claim 1. PTX-1; Smaha Tr. at 1747:22-1748:2 (ISS' expert agreeing that Claims 1 and 24 includes "essentially the same requirements"). As such, all the evidence that supports a judgment as a matter of law that ADS infringes claim 1, similarly requires judgment that ADS infringes claim 24.

### a. No reasonable jury could find that ADS does not "receiv[e] network packets"

The first limitation of claims 1 and 24 requires that the ADS products "receiv[e] network packets handled by a network entity." PTX-1. The evidence showed and ISS did not dispute that ADS meets this limitation. Dr. Kesidis testified that both ADS Analyzers and Collectors can receive network packets. Kesidis Tr. at 669:22-671:9. The ADS User Guide explained the same: "Standalone mode is for smaller deployments in which an Analyzer collects network flow

6

information without using a Collector. In this mode, ***the Analyzer . . . accepts raw packet data***

***from network SPAN ports or TAPs***. . . . Two tier mode is for large deployments using both an

Analyzer and one or more Collector appliances. In this type of deployment, . . . raw ***packet data***

***from SPAN ports or TAPs is directed to Collector appliances***." PTX-107 at 5 (emphasis

added). Additionally, Mr. Song, the lead ADS programmer, confirmed that ADS can receive

network packets. *See e.g.*, Song Tr. at 483:4-13; 489:15-18 ("Question: So in packet capture

mode, the collector itself is receiving the network packets; is that right? "Answer: Yes."); 490:6-

8; 492:8-10. *See also,* Tosto Tr. at 480:13-21. At trial, ISS did not dispute that ADS can receive

network packets handled by a network entity. There is no evidence whatsoever to support a

finding that ADS lacks this limitation.

> **b.** **No reasonable jury could find that ADS does not build statistical profiles**

The next limitation of claims 1 and 24 requires that ADS "build[] at least one long-term

and at least one short-term statistical profile from at least one measure of the network packets,

the at least one measure monitoring data transfers, errors, or network connections." PTX-1. The

evidence showed, and ISS did not dispute, that ADS builds the required long-term statistical

profile. Abundant evidence established that ADS also generates a short-term statistical profile,

but ISS argued otherwise. *See generally* Smaha Tr. at 1745-47; ISS Closing Tr. at 2226-2229.

As detailed below, however, no competent evidence supports ISS' assertions of non-

infringement due to the alleged lack of a short-term statistical profile. Thus, the jury's finding of

non-infringement of the '338 patent must be reversed.

> **i.** **The evidence showed and ISS did not dispute that ADS generates a long-term statistical profile**

ADS builds a long-term statistical profile by observing network traffic over time. Mr

Song testified that based on the amount of traffic observed over a day, week, or month, ADS

determines the average daily, weekly, or monthly traffic rate in bits per second. Song Tr. at 497:1-11. Using weighting factors and these average traffic rates, ADS then generates a "baseline" or "composite" traffic rate. Song Tr. at 497:1-11, 15-21; 498:15-499:8. Dr. Kesidis testified that this baseline is a long-term statistical profile based on a measure of network packets, specifically monitoring data transfers, as required by claim 1. *See e.g.*, Kesidis Tr. at 671:10-673:19. ISS did not dispute that ADS meets the limitation and there is no evidence in the record to support any possible finding that ADS lacks a long-term statistical profile.

### ii. The evidence showed that ADS builds a short-term statistical profile; there is no competent evidence to support ISS' argument otherwise

In addition to determining the baseline traffic rate, ADS also determines the current traffic rate. The evidence, including testimony of ISS experts, showed that the current traffic rate is a short-term statistical profile. ISS did not dispute that the current traffic rate is a short-term profile. Rather, ISS' sole non-infringement argument is limited to the proposition that the current traffic rate is not a "statistical" profile.

The Court construed the phrase "building at least one long-term and at least one short-term *statistical profile* from at least one measure of the network packets" to mean

> "generating at least two separate data structures, one a statistical description representative of historical network activity, and one a statistical description of recent network activity, where *the statistical descriptions* are based on at least one measure of the network packets and *are generated through the use of statistical analysis; that is, something more than simply collecting and retrieving data*."

Jury Instructions Tr. at 2287:20-2288:4 (emphasis added). Both ISS' expert, Mr. Smaha, and SRI's expert, Dr. Kesidis, agree that "statistical descriptions" include averages or means, variances, and standard deviations. Kesidis Tr. at 711:1-11; Smaha Tr. at 1744:9-25. The Court's construction, however, does not require that an accused product use any one, and

certainly not all, of these particular statistical descriptions.  Nor is a statistical profile in any way limited to just these three examples.  In fact, in his tutorial on statistical profiles, Dr. Staniford, another of ISS' experts, used a different example of a statistical profile: "a count, how many times you use your credit card each day."  *See generally*, Staniford Tr. at 862-865.

Relying on Mr. Song's description of the current traffic rate (Song Tr. at 497:25-498:3; 498:7-9), Dr. Kesidis testified that the current traffic rate, a rate in bits per second based on a two-minute sample window, is a short-term statistical profile.  Kesidis Tr. at 673:20-675:6; 713:18-714:4; 714:19-715:4.  He explained that two-minutes is a short period of time (*Id*. at 674:18-675:6) and that the rate in question is an average and thus is a statistical profile.  *Id*. at 674:18-25; 713:18-25; 714:19-715:4.  Dr. Kesidis testified that the current traffic rate is an average, not the actual traffic speed throughout the two minute observation period because, of course, the actual traffic speed varies over those two minutes.  *Id*. at 714:19-715:4.  Dr. Kesidis and Mr. Smaha (ISS' expert) agreed that averages are statistical profiles as construed by the Court.  Kesidis Tr. at 711:1-11; Smaha Tr. at 1744:9-25; Jury Instructions Tr. at 2287:20-2288:4.  Thus the evidentiary record shows that ADS includes a short term statistical profile – the current traffic rate.

Mr. Smaha, ISS' expert, asserted without support that rates, including the current traffic rate, cannot be statistical profiles.  *See generally*, Smaha Tr. at 1741-1748.  He did not explain why.  *Id.*  This assertion, without explanation and without evidentiary support, is insufficient to support the jury's verdict of non-infringement of the '338 patent.  Moreover, Mr. Smaha's own explanation of how ADS calculates the current traffic rate and how to calculate a class's average grade belies his assertion that the current traffic rate is not a short-term statistical profile. *See id.* at 1743:8-17 (operation of ADS); 1745:1-7 (grade "averages").

Given the Court's construction of "statistical profile," Mr. Smaha's assertion that the ADS current traffic rate is ***not*** a statistical profile is an assertion that determining the current traffic rate involves nothing more than collecting and reiterating data. Examining Mr. Smaha's own characterization of the process by which the current traffic rate is calculated, however, illustrates that this process involves more than "simply collecting and retrieving data:"

> "[ADS] accumulates the total number of bytes that have been seen on a particular connection over a two-minute snapshot. They use the term "snapshot" at Arbor. They used -- that name appears in the source code. It's a snapshot of data. It's just a total amount of bytes that have been seen, or bits, actually, that have been seen during the last two minutes. ***So they take that two-minute collection of data and convert it into a rate by taking the total number of bits and dividing it by 120***."

Smaha Tr. at 1743:8-17 (emphasis added). So while ADS must first collect data – the number of bits transferred during a two-minute snapshot – ADS then "convert[s]" that "collection of data" into a "rate" **by dividing the number of observed bits by the number of seconds it took to observe that many bits**. Song Tr. at 497:25-498:3; Smaha Tr. at 1743:8-17. Thus, as described by Mr. Smaha himself, the current rate is not a mere collection and reiteration of data. Rather it is a calculated figure obtained by applying mathematical analysis to convert underlying data into a rate. Thus, it is a statistical profile as defined by the Court and as required by the claims of the '338 patent.

While it is unnecessary under the Court's claim construction for the ADS current traffic rate to be an "average" in order to qualify as a statistical profile, irrefutable evidence showed that the current traffic rate is, in fact, an average. Dr. Kesidis testified that the current traffic rate is an average. Kesidis Tr. at 713:18-714:4; 714:19-715:4. Mr. Smaha's explanation of how to determine a class's grade average was entirely consistent with Dr. Kesidis on this key point. Mr. Smaha provided an example whereby a teacher first (1) adds up all the grades for each student in the class and then (2) divides that value by the number of students in the class to determine the

average grade.  Smaha Tr.. at 1745:1-7.  Similarly, to determine the ADS current traffic rate, Mr.

Smaha explained, ADS first (1) adds up the bit count for each second in the two minutes and

then (2) divides that value by the number of seconds (120) in the two minutes.  *Id.* at 1743:8-17.

A class grade average and a bit rate are determined using precisely the same statistical analysis.

Both are averages.  Both are statistical profiles.  Given that grades in a class will vary by student

and that bit counts will vary by second (traffic sometimes spikes and sometimes lulls), the

calculated average grade and current traffic rate do not describe the actual grade of any one

student or the actual traffic rate at any given second.  Kesidis Tr. at 713:18-25; 714:19-715:4.

Rather, they describe the performance of the entire class and the entire two-minutes of traffic

statistically.

Finally, Mr. Smaha's assertion that a rate cannot be a statistical profile or an average is

inconsistent with the fact that neither ISS, nor Mr. Smaha, disputed that the baseline traffic rate –

a rate that is determined based on observation of bits over days, weeks, or months – is a long-

term statistical profile.  Other than the difference in the length of the observation period (two

minutes v. a period of days, weeks or months), there is nothing that distinguishes between the

manner in which the current and baseline traffic rates are determined.  Both are rates arrived at

by dividing bit counts by a period of time; both are expressed in bits per second.  Song Tr. at

498:7-9; 499:4-8.  ISS offered no explanation as to why a rate would be a statistical profile in the

long-term context and not in the short-term.  This logical fallacy in ISS's position provides

further evidence as to its lack of merit, and further underscores why no reasonable juror could

conclude that the short-term current traffic rate is somehow not a statistical profile.

Thus, no competent evidence supports the sole noninfringement assertion by ISS – that

the ADS "current traffic rate" is not a "short-term statistical profile."  No reasonable jury abiding

by the Court's construction of "statistical profile" – a "statistical description" that is "generated through the use of statistical analysis; that is something more than simply collecting and retrieving data" – could find that ADS lacks the "short-term statistical profile" required by claims 1 and 24.

### c. No reasonable jury could find that ADS does not "compar[e] at least one long-term and at least one short-term statistical profile"

Claims 1 and 24 go on to require that ADS "compare[] at least one long-term and at least one short-term statistical profile." SRI introduced irrefutable evidence that ADS makes such a comparison between the current traffic rate (a short-term statistical profile) and the baseline or composite (a long-term statistical profile). For example, Mr. Song, the lead ADS programmer responded to the question, "The composite historic traffic rate gets compared to the most recent traffic rate; is that correct?," with a straightforward "Yes." Song Tr. at 501:13-501:16. *See also*, PTX-106 at 3, PTX-107 at 69, Song Tr. at 498:4-6; 499:8-500:11; Kesidis Tr. at 675:7-676:3. At trial, ISS did not contest that ADS compares the current network traffic rate to a long-term statistical profile.[1] Therefore, no evidence whatsoever exists to support a finding that the accused ADS product does not make such a comparison.

### d. No reasonable jury could find that ADS does not "determine[e] whether the difference between the short-term statistical profile and the long-term statistical profile indicates suspicious network activity"

The final requirement of claim 1 is that ADS "determine[s] whether the difference between the short-term statistical profile and the long-term statistical profile indicates suspicious network activity." Again, SRI presented uncontested evidence to show that ADS makes this determination. For example, Mr. Song testified that if the short-term statistical profile (recent

---

[1] ISS only disputed whether the "current traffic rate" was a short-term statistical profile.

traffic rate) and the long-term statistical traffic rate differ by the specified amount, an alert is issued.  Song Tr. at 501:13-20.  "An alert . . . describes some sort of attack activity."  *Id.* at 501:9-12.  *See also*, Kesidis Tr. at 676:4-677:6.  Given the absence of any evidence otherwise and ISS' failure to dispute SRI's showing, any reasonable juror would have to conclude that by issuing these alerts, ADS is determining whether the difference between the two statistical profiles indicates suspicious network activity.

### 2. No reasonable jury could find that ADS does not infringe Claims 11, 12, and 13

Given ADS's undisputed ability to issue alerts in multiple formats, including by sending events to SiteProtector, no reasonable jury could find that ADS does not infringe dependent claims 11, 12, and 13.  As explained in the ADS User's Manual, "ADS creates alerts and sends notifications when it observes behaviors on the network that are not allowed.  In Site Protector these alerts show up as "events."  PTX-107 at 20.  In addition to notifying SiteProtector, ADS can alert users by "email, SNMP, and SYSLOG traps."  PTX-107 at 20.  *See also*, Tosto Tr. at 481:12-22; 483:21-25; Song Tr. at 501:13-502:4; 506:19-25; 507:6-13.  Dr. Kesidis testified that all these ways of alerting are ways of "responding," that is "taking an action in response" as required by claim 11.  Kesidis Tr. at 679:21-682:8; Jury Instructions Tr. at 2287:17-19.  Based on the evidence of record, no reasonable jury could find non-infringement of claim 11.

When ADS sends events to SiteProtector, which according to the ADS Product Manager, Mr. Tosto, is the normal ADS response (Tosto Tr. at 481:16-22), ADS is "transmitting an event to a network monitor" and specifically a "hierarchically higher network monitor" as required by claims 12 and 13, respectively.  SiteProtector gathers data from many ISS intrusion detection products, including ADS Analyzers which in turn gather data from ADS Collectors and thus is a "network monitor" and "hierarchically higher network monitor" as those phrases have been

construed.  Stewart Tr. at 455:16-457:12;  Tosto Tr. at 481:10-22; 483:21-25; Song Tr. at 502:1-4; Kesidis Tr. at 638:24-639:6; 680:21-682:10; Jury Instructions Tr. at 2286:20-21; 2287:509; PTX-106 at 2; PTX-107 at 6; PTX-287 at 4.  For example, Figure 1 of the ADS User Manual shows the ADS Analyzer sending event information to a hierarchically higher SiteProtector. PTX-107 at 6.  *See also* PTX-106 at 2; Kesidis Tr. at 682:1-4.  Moreover, in its finding of infringement of the '203 and '615 patents (D.I. 558), the jury implicitly found that the combination of SiteProtector and Fusion was a network monitor and a hierarchical monitor and thus a hierarchically higher network monitor.  PTX-2 and PTX-4 at claim 1 (requiring "automatically receiving and integrating the reports of suspicious activity, ***by one or more hierarchical monitors***.") (emphasis added),  Jury Instructions Tr. at 2286:20-21; 2287:509. Given the evidence of record regarding ADS's notification features, no reasonable jury could find that ADS does not include the additional limitations of dependent claims 11, 12, and 13 of the '338 patent.

### C. Alternatively, SRI is Entitled to a New Trial on Infringement of the '338 Patent

"A new trial may be granted . . . in any action in which there has been a trial by jury, for any of the reasons for which new trial have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59(a)  "[T]he most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent."  *TA Instruments, Inc. v. Perkin-Elmer Corp.*, 277 F. Supp. 2d 367, 372 (D. Del. 2003).  The decision whether to grant a new trial is "within the sound discretion of the trial court and, unlike the standard for

determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner." *Id*. The Court has the authority to "critically evaluate the evidence and exercise its discretion in favor of a new trial because the probative evidence [is overwhelmingly in the movant's] favor." *Greenleaf v. Garlock, Inc*., 174 F.3d 352, 354 (3d Cir. 1999).

For all the same reasons detailed above in support of SRI's request for judgment as a matter of law, SRI is entitled to a new trial. The jury's verdict of non-infringement of the '338 patent is against the weight of the evidence. Accordingly, to the extent the jury's verdict of non-infringement regarding the '338 patent is not reversed, a new trial concerning infringement of the '338 patent is appropriate.

## V.     CONCLUSION

For the above reasons, SRI respectfully requests that this Court enter judgment as a matter of law that ISS literally infringes claims 1, 11, 12, 13, and 24 of the '338 patent, or alternatively, that the Court order a new trial as to ISS' infringement of claims 1, 11, 12, 13, and 24.

Dated:  November 17, 2008        FISH & RICHARDSON P.C.

By: */s/ Thomas L. Halkowski*
     Thomas L. Halkowski (#4099)
     222 Delaware Avenue, 17th Floor
     P.O. Box 1114
     Wilmington, DE 19889-1114
     Telephone:  (302) 652-5070
     Facsimile:  (302) 652-0607

     Frank E. Scherkenbach
     225 Franklin Street
     Boston, MA  02110
     Telephone:  (617) 542-5070
     Facsimile:  (617) 542-8906

     Howard G. Pollack
     John N. Farrell
     Katherine D. Prescott
     500 Arguello St., Ste. 500
     Redwood City, CA 94063
     Telephone:  (650) 839-5070
     Facsimile:  (650) 839-5071

Attorneys for Plaintiff/Counterclaim-Defendant
SRI INTERNATIONAL, INC.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 17, 2008, I electronically filed with the Clerk of Court

the attached **SRI INTERNATIONAL'S OPENING BRIEF IN SUPPORT OF ITS**

**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE**

**ALTERNATIVE, MOTION FOR NEW TRIAL REGARDING INFRINGEMENT OF**

**THE '338 PATENT** using CM/ECF which will send electronic notification of such filing(s) to

the following Delaware counsel:

| | |
|---|---|
| Richard L. Horwitz<br>David E. Moore<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>1313 North Market Street, 6th Floor<br>P.O. Box 951<br>Wilmington, DE  19899<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com | *Attorneys for*<br>*Defendant/Counterclaim Plaintiffs*<br>*Internet Security Systems, Inc., a*<br>*Delaware corporation, and Internet*<br>*Security Systems, Inc., a Georgia*<br>*corporation* |
| Richard K. Herrmann<br>Morris James Hitchens & Williams LLP<br>500 Delaware Avenue, 15th Floor<br>P.O. Box 2306<br>Wilmington, DE  19899-2306<br>rherrmann@morrisjames.com | *Attorneys for*<br>*Defendant/Counterclaim Plaintiff*<br>*Symantec Corporation* |

I also certify that on November 17, 2008, I electronically mailed the above document(s)

to the following non-registered participants:

| | |
|---|---|
| Paul S. Grewal<br>Renee DuBord Brown<br>Day Casebeer Madrid & Batchelder, LLP<br>20300 Stevens Creek Boulevard, Suite 400<br>Cupertino, CA  95014<br>pgrewal@daycasebeer.com<br>rbrown@daycasebeer.com | *Attorneys for*<br>*Defendant/Counterclaim Plaintiff*<br>*Symantec Corporation* |

Holmes J. Hawkins, III
Natasha H. Moffitt
King & Spalding LLP
1180 Peachtree Street
Atlanta, GA 30309
hhawkins@kslaw.com
nmoffitt@kslaw.com

*Attorneys for
Defendant/Counterclaim Plaintiffs
Internet Security Systems, Inc., a
Delaware corporation, and Internet
Security Systems, Inc., a Georgia
corporation*

*/s/ Thomas L. Halkowski*
Thomas L. Halkowski