## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SRI INTERNATIONAL, INC.,                    )
a California Corporation,                    )
                                             )
    Plaintiff and Counterclaim-Defendant,    )
                                             )
      v.                                  )
                                             )   C.A. No. 04-1199-SLR
INTERNET SECURITY SYSTEMS, INC.,             )
a Delaware Corporation, INTERNET             )
SECURITY SYSTEMS, INC., a Georgia            )
Corporation, and SYMANTEC                    )
CORPORATION, a Delaware Corporation,         )
                                             )
    Defendants and Counterclaim-Plaintiffs.  )

## DEFENDANT ISS'S BRIEF IN OPPOSITION TO SRI'S MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL REGARDING INFRINGEMENT OF THE '338 PATENT

OF COUNSEL:

Holmes J. Hawkins III
Natasha H. Moffitt
Latif Oduola-Owoo
Charles A. Pannell, III
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 572-4600

Scott T. Weingaertner
Allison H. Altersohn
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100

Adam M. Conrad
KING & SPALDING LLP
227 W. Trade Street, Suite 600
Charlotte, NC 28202
Tel: (704) 503-2600

Dated: January 16, 2009

Richard L. Horwitz (#2246)
David E. Moore (#3983)
D. Fon Muttamara-Walker (#4646)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*INTERNET SECURITY SYSTEMS, INC.,*
*a Delaware corporation; and*
*INTERNET SECURITY SYSTEMS, INC.,*
*a Georgia corporation*

# TABLE OF CONTENTS

STATEMENT OF THE CASE...............................................................................1

SUMMARY OF THE ARGUMENT .....................................................................2

STATEMENT OF FACTS ....................................................................................3

      A.     The '338 Patent .......................................................................4

      B.     The Accused ADS Product ......................................................5

            1.     Data Collection and Modes of Operation ........................5

            2.     ADS Data Analysis ........................................................7

ARGUMENT .......................................................................................................8

    I.     Standard of Review .........................................................................8

    II.    Substantial Evidence Supports The Jury's Verdict That The ADS Product Does Not Directly Infringe Any Asserted Claim Of The '338 Patent.....................9

      A.     The Current Traffic Rate Is Not A Short-Term Statistical Profile Because It Is Not A "Statistical Description Of Recent Network Activity ... Generated Through The Use Of Statistical Analysis"............10

      B.     The Current Traffic Rate Maintained By The ADS Product Is Not An "Average"....................................................................13

      C.     A Reasonable Jury Could Conclude That ISS Does Not Directly Infringe The Method Claims; SRI Did Not Present Any Evidence That ISS Practices The Claimed Method....................................17

    III.   SRI Has Abandoned Its Inducement Argument.....................................18

    IV.   The Trial Record Does Not Warrant A New Trial ...............................20

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**CASES**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*,
    501 F.3d 1307 (Fed. Cir. 2007)...........................................................................18

*Cohesive Techs., Inc. v. Waters Corp.*,
    543 F.3d 1351 (Fed. Cir. 2008)...........................................................................17

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) (en banc)......................................................18, 19

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004)...........................................................................19

*E-Pass Techs., Inc. v. 3COM Corp.*,
    473 F.3d 1213 (Fed. Cir. 2007)...........................................................................17

*Embrex, Inc. v. Serv. Eng'g Corp.*,
    216 F.3d 1343 (Fed. Cir. 2000).............................................................................9

*Fatir v. Dowdy*,
    C.A. No. 95-677-GMS, 2002 WL 2018824 (D. Del. Sept. 4, 2002).....................18

*Lucent Techs., Inc. v. Gateway, Inc.*,
    543 F.3d 710 (Fed. Cir. 2008).............................................................................19

*Marra v. Philadelphia Hous. Auth.*,
    497 F.3d 286 (3d Cir. 2007)............................................................................3, 20

*Moba, B.V.  v. Diamond Automation, Inc.*,
    325 F.3d 1306 (Fed. Cir. 2003).........................................................................8, 9

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998).............................................................................8

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
    511 F.3d 1186 (Fed. Cir. 2008).............................................................................1

*Verdegaal Bros., Inc. v. Union Oil Co.*,
    814 F.2d 628 (Fed. Cir. 1987)...............................................................................8

*Water Techs. Corp. v. Calco, Ltd.*,
    850 F.2d 660 (Fed. Cir. 1988).............................................................................19

*Williamson v. Consol. Rail Corp.*,
    926 F.2d 1344 (3d Cir. 1991)...................................................................8

**STATUTES**

35 U.S.C. § 102 ..........................................................................................1

35 U.S.C. § 271(b) ....................................................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50(b) ..................................................................................8

# STATEMENT OF THE CASE

On August 26, 2004, plaintiff SRI International, Inc. ("SRI") filed this patent

infringement suit against defendants Internet Security Systems, Inc. ("ISS") and Symantec

Corporation ("Symantec"). SRI alleged that each defendant infringed certain of United States

Patent Nos. 6,708,212 ("the '212 patent"); 6,484,203 ("the '203 patent"); 6,711,615 ("the '615

patent"); and 6,321,338 ("the '338 patent").

In October 2006, this Court held on summary judgment that all four asserted patents were

invalid under 35 U.S.C. § 102, and that co-defendant Symantec did not infringe the '338 patent.

D.I. 469 at 10-14; D.I. 471. On appeal, the Federal Circuit affirmed the invalidity of the '212

patent, but remanded the case after holding that there was a genuine issue of material fact

whether the prior art reference used to invalidate the '203, '615, and '338 patents was a printed

publication under Section 102. *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186 (Fed. Cir.

2008).

From September 2, 2008 until September 17, 2008, the parties tried their infringement

and invalidity cases on the remaining three patents-in-suit to a jury. SRI accused ISS of literally

infringing claims 1, 11, 12, 13, and 24 of the '338 patent by selling the Proventia Anomaly

Detection System ("ADS").[1] D.I. 558 at 7, 9; 9/4/08 Tr. 667:18-25, 677:22-682:10. During trial,

SRI abandoned its '338 patent infringement claims arising under the Doctrine of Equivalents, in

light of ISS's motion for judgment as a matter of law on this issue based on SRI's failure to

present sufficient evidence to support such a claim. 9/12/08 Tr. 1949:2-17, 1951:21-1952:1;

9/15/08 Tr. 1959:18-20; D.I. 542.

---

[1]     SRI also accused ISS of infringing certain claims of the '615 and '203 patents.

At trial, SRI and ISS contested ISS's alleged infringement of the asserted claims, and presented testimony concerning how the ADS product operates and whether it infringes the '338 patent. On September 18, 2008, the jury found, *inter alia*, that ISS did not infringe the '338 patent. D.I. 558. On October 14, 2008, SRI renewed its motion for judgment as a matter of law and new trial regarding ISS's alleged infringement of the '338 patent. D.I. 564. SRI filed its opening brief in support of its motion on November 17, 2008, D.I. 569, and ISS now files this opposition brief.[2]

## SUMMARY OF THE ARGUMENT

SRI's motion for judgment as a matter of law on infringement of the '338 patent should be denied because substantial evidence supports the jury's verdict of non-infringement. The parties' primary dispute at trial on infringement turned on whether the accused ADS product builds a "short-term statistical profile," as required by each of the asserted claims. Under the Court's claim construction, a "short-term statistical profile" is "a *statistical* description of recent network activity ... generated through the use of *statistical analysis.* In other words, something more than simply collecting and retrieving data." 9/16/08 Tr. 2287:22-2288:4 (emphasis added).

ISS presented substantial evidence at trial, through the testimony of its experts and fact witnesses, that the current traffic rate (in bits per second) maintained by the accused ADS product is not a "short-term statistical profile" as construed by the Court. In particular, ISS's expert, Steve Smaha, testified that a "statistical description" requires, at a minimum, both an average and a variance of data, and that, based on his review of the ADS product, there is no average or variance associated with the current traffic rate. Accordingly, ISS's expert concluded

---

[2]     ISS's opening brief requesting judgment as a matter of law regarding the non-infringement of the '203 and '615 patents and the invalidity of the '338 patent was filed on November 17, 2008. D.I. 570.

that the ADS product does not infringe the '338 patent. Notably, SRI's expert agreed that a statistical description requires both an average and a variance, and that the ADS product does not store any variance in connection with the current traffic rate. 9/4/08 Tr. 675:3-6, 710:8-711:20

Moreover, SRI failed to present any evidence at trial that ISS actually practices the method steps of claims 1, 11, 12, and 13. SRI also failed to present any evidence that ISS's customers directly infringe the '338 patent, or that ISS specifically intended that its customers infringe the '338 patent by using the ADS product. Accordingly, on this record, a reasonable jury could conclude -- and did conclude -- that ISS does not directly or indirectly infringe the '338 patent, and SRI's motion for judgment as a matter of law should be denied.

SRI also asks this Court, in the alternative, to grant its motion for new trial because the jury verdict is against the weight of the evidence. A motion for new trial based upon an argument that the verdict is against the weight of the evidence is "proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 309 n. 18 (3d Cir. 2007) (citation and quotation marks omitted). As demonstrated above, the jury's verdict of non-infringement was based upon substantial evidence that the ADS product does not satisfy each and every claim limitation of the '338 patent. Accordingly, a new trial is unwarranted on this record, and SRI's motion for a new trial should be denied.

## STATEMENT OF FACTS

This lawsuit involves three separate patents for computer network intrusion detection technology. The patents generally describe a system that examines a computer network for malicious attacks. All three patents at issue have the same written description. They only differ by what is claimed in each patent.

## A.    THE '338 PATENT

The parties commonly refer to the '338 patent as the "statistical detection" patent because it claims a system that compares short-term and long-term statistical profiles of data to detect suspicious network activity.  SRI contends that ISS infringes independent claims 1 and 24, and dependent claims 11, 12, and 13 of the '338 patent.  D.I. 569 at 2.

Independent claims 1 and 24 essentially claim the same elements, except that claim 1 is directed to a "method of network surveillance," and claim 24 is directed to a "computer program product, disposed on a computer readable medium." PTX-1, col. 16, ll. 25-26.  Representative claim 1 reads as follows (disputed limitations underlined):

> 1.  A method of network surveillance, comprising:
>
> receiving network packets handled by a network entity;
>
> building at least one long-term and at least one <u>short-term statistical profile</u> from at least one measure of the network packets, the at least one measure monitoring data transfers, errors, or network connections;
>
> comparing at least one long-term and at least one <u>short-term statistical profile</u>; and
>
> determining whether the difference between the <u>short-term statistical profile</u> and the long-term statistical profile indicates suspicious network activity.

PTX-1 col. 14, l. 62 - col. 15, l. 5 (emphasis added).

The parties' primary dispute concerning the alleged infringement of the '338 patent turns on whether the ADS product builds and uses a "short-term statistical profile."  The Court construed the claim language "building at least one long-term and at least one short-term statistical profile from at least one measure of the network packets" to mean

> [G]enerating at least two separate data structures, one a statistical description representative of historical network activity, and one a statistical description of recent network activity, where the statistical descriptions are based on at least one measure of the network packets and are generated through the use of statistical analysis; i.e., something more than simply collecting and retrieving data.

4

9/16/08 Tr. 2287:22-2288:4; *see also* D.I. 468 at 5. Accordingly, a "short-term statistical profile," under the Court's construction, is

> a *statistical description* of recent network activity, where the statistical description[] [is] based on at least one measure of the network packets and *[is] generated through the use of statistical analysis. In other words, something more than simply collecting and retrieving data.*

9/16/08 Tr. 2287:22-2288:4 (emphasis added); *see also* D.I. 468 at 5.

### B.    THE ACCUSED ADS PRODUCT

#### 1.    *Data Collection and Modes of Operation*

The accused ADS product is a device manufactured by a third party, Arbor Networks, and rebranded by ISS as part of the Proventia product family.[3]  9/3/08 Tr. 479:19-480:9; 9/4/08 Tr. 712:8-12; 9/10/08 Tr. 1319:5-9, 1321:2-5; 9/12/08 Tr. 1808:4-8.  The ADS product can monitor computer network traffic for evidence of network attacks.  9/3/08 Tr. 496:7-9, 501:10-12.  If the ADS product detects unusual activity on a network, it can send a report to a system administrator or take other actions depending on how it has been configured.  9/3/08 Tr. 501:22-502:4, 506:21-507:18; PTX-107 at 7.

The ADS product can collect at least two types of network data -- raw network packets and netflow.  9/3/08 Tr. 488:3-15, 481:4-6, 489:19-490:8, 491:14-492:10; PTX-107 at 5-6. Packets are groups of data bytes that represent specific pieces of information traveling on a network.  *See* 9/16/08 Tr. 2286:15-17 (Court Construction of "packet"); *see also* D.I. 468 at 2; 9/4/08 Tr. 584:22-585:23; 9/5/08 Tr. 873:16-886:8 (describing the routing of packets on a network).  The ADS product can monitor network packets directly through a SPAN/TAP port on

---

[3]    Though SRI accused other Proventia sensors of infringing the '203 and '615 patents, SRI accused only the Proventia ADS product of infringing the '338 patent. *See* D.I. 562 at 2; 9/4/08 Tr. 667:18-25; *see also* 9/4/08 Tr. 638:1-15 (identifying the accused sensors for SRI's separate patent infringement claims).

the device. 9/3/08 Tr. 489:24-490:8, 491:14-492:10; PTX-107 at 5. Arbor Networks does not recommend that customers use the SPAN/TAP port because of scalability issues that can lead to information loss. 9/3/08 Tr. 492:15-25.

Netflow provides summary information about network packets. 9/3/08 Tr. 488:6-8. More particularly, netflow is a record of connections going through a router. 9/3/08 Tr. 488:5-15. Common network devices, such as routers and switches, can generate netflow. 9/3/08 Tr. 488:3-15; PTX-107 at 5-6. ADS "collector" devices (described below) can also generate netflow. 9/3/08 Tr. 489:19-23, 481:4-6; PTX-107 at 5-6.

The ADS product can operate in two different configurations -- two-tier mode and standalone mode. 9/3/08 Tr. 483:4-13; 9/4/08 Tr. 670:4-6; PTX-107 p. 5. In two-tier mode, two different types of devices, an analyzer and one or more collectors, can be deployed in a network. The collectors can receive network packets from a SPAN/TAP port or netflow data from routers and switches, and "report summary information to the Proventia Network ADS Analyzer appliance." PTX-107 at 5; 9/3/08 Tr. 483:10-20, 487:25-488:4, 489:3-23, 490:1-492:10, 493:15-17; 9/4/08 Tr. 752:13-19, 670:16-671:9.

More specifically, when a collector is configured to receive packets directly from a network, it generates a netflow summary of the packets and forwards the netflow to the analyzer. 9/3/08 Tr. 481:2-6, 489:15-23, 493:12-14; 9/4/08 Tr. 752:13-19; PTX-107 p. 5 ("The Collector appliances then forward consolidated traffic data to an Analyzer appliance."). In this way, the collectors operate like network routers or switches that also generate netflow. 9/3/08 Tr. 489:19-23, 481:4-6; PTX-107 at 5. The analyzer (sometimes referred to as the "controller" (9/3/08 Tr. 487:19-20)) analyzes the netflow information received from the collectors to determine whether

6

unusual activity is occurring on a network. *See* 9/3/08 Tr. 481:10-22, 494:21-22, 496:7-497:8; *see also* 9/4/08 Tr. 672:9-11.

For small deployments, a user can use the ADS product in standalone mode where the collectors and analyzer are contained in one ADS device. PTX-107 p. 5; Tr. 483:6-9, 494:25-495:2, 504:11-14; 9/4/08 Tr. 670:4-6. The standalone ADS device can receive netflow information from network devices and/or raw packet data from its SPAN/TAP port. PTX-107 p. 5. The collected information can then be analyzed on the single device. 9/3/08 Tr. 483:6-9, 494:25-495:2.

At trial, SRI accused the ADS product of infringing the '338 patent when it collects packets through a SPAN/TAP port in standalone mode and two-tier mode.[4] 9/4/08 Tr. 717:1. ADS deployments that receive only netflow information from network routers and switches are not accused. 9/4/08 Tr. 669:25-671:9, 752:1-25; PTX-107 at 6; *see also* D.I. 569 at 6-7.

## 2. *ADS Data Analysis*

Once the netflow information is received by the analyzer, the analyzer can use one of eight different algorithms (called "heuristics") to determine whether an attack or suspicious activity is occurring on the network. 9/3/08 Tr. 496:7-9; 9/12/08 Tr. 1743:1-2. Only one of the heuristics -- Heuristic 8 -- is relevant to SRI's infringement claim. 9/12/08 Tr. 1743:3-7.

Heuristic 8 is a form of rate-based detection that compares network traffic rates. 9/3/08 Tr. 498:7-9; 499:4-8; 9/12/08 Tr. 1743:8-1744:5; 1794:15-17. Under Heuristic 8, the ADS product determines a current traffic rate (in bits per second ("bps")) by counting the number of bits traveling on the network over a two minute (120 second) time period (or "snapshot"). 9/3/08

---

[4] Up until trial, SRI had only accused the ADS product operating in standalone mode of infringing the '338 Patent. As ISS pointed out at trial on cross-examination of SRI's expert, Dr. George Kesidis, Dr. Kesidis previously testified during his deposition that he only accused the ADS product operating in standalone mode of infringing the '338 patent. 9/4/08 Tr. 720:12-16.

Tr. 499:8-15; 9/4/08 Tr. 674:21-24; 9/12/08 Tr. 1743:8-14. The ADS product also determines a historical traffic baseline by calculating the average traffic rate (in bps) for specific time slots within a day, week, and/or month, and multiplying those averages by a weighting factor. 9/3/08 Tr. 497:1-499:8. The ADS product compares the current traffic rate to the computed, weighted historical traffic baseline for a particular time interval. 9/3/08 Tr. 497:14-500:15. If the current traffic rate differs from the historical traffic baseline by a certain percentage set by an administrator, the ADS alerts the administrator to a potential problem. *Id.*

## ARGUMENT

### I.    STANDARD OF REVIEW

To prevail on its motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), SRI "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (citations omitted)(alteration in original). "A district court may overturn a jury's verdict only if upon the record before the jury, reasonable jurors could not have reached that verdict." *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1312 (Fed. Cir. 2003).

In assessing the sufficiency of the evidence, a court must give the non-moving party "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). A court may not determine the credibility of the witnesses or "substitut[e] its choice for that of the jury's in deciding between conflicting elements of the evidence." *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631 (Fed. Cir. 1987). A court also must afford substantial

deference to a jury's factual application of a claim to an accused device in an infringement inquiry. *See Moba*, 325 F.3d at 1312; *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1348-49 (Fed. Cir. 2000).

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S VERDICT THAT THE ADS PRODUCT DOES NOT DIRECTLY INFRINGE ANY ASSERTED CLAIM OF THE '338 PATENT

All of the asserted claims of the '338 patent require, among other things, that the accused device build at least one long-term and at least one short-term statistical profile, compare the long-term and short-term statistical profiles, and determine whether the difference between the short-term and long-term statistical profiles indicates suspicious network activity. *See, e.g.,* PTX-1, col. 14, l. 62 - col. 15, l. 5. ISS presented substantial evidence at trial that the accused ADS product does not build or otherwise use a short-term statistical profile.

At trial, SRI argued, through the testimony of its expert (Dr. Kesidis), that the current traffic rate (in bps) maintained by the ADS product is a "short-term statistical profile" because the traffic rate represents an "average," and an "average" is a statistical profile. *See* 9/4/08 Tr. 674:21-675:6, 711:12-20, 713:18-25; *see also* 9/15/08 Tr. 2119:2-2122:14 (SRI Closing Argument).

ISS presented substantial rebuttal evidence, through the testimony of its experts (Mr. Stephen Smaha and Dr. Stuart Staniford), that an average is not a "statistical description of recent network activity ... generated through the use of statistical analysis," as required by the Court's claim construction, and that, in any event, the current traffic rate maintained by the ADS product is not an average. In light of the evidence and testimony presented at trial, a reasonable jury could conclude -- and did conclude -- that the ADS product does not infringe the '338 patent.

**A. THE CURRENT TRAFFIC RATE IS NOT A SHORT-TERM STATISTICAL PROFILE BECAUSE IT IS NOT A "STATISTICAL DESCRIPTION OF RECENT NETWORK ACTIVITY ... GENERATED THROUGH THE USE OF STATISTICAL ANALYSIS"**

ISS presented substantial evidence at trial that the current traffic rate (in bps) is not a "statistical description of recent network activity ... generated through the use of statistical analysis," as required by the Court's construction of "short-term statistical profile," and that ISS, therefore, does not infringe the '338 patent. ISS's expert, Mr. Smaha, explained that a statistical average or mean by itself is not a "statistical description" of data because a "statistical description" requires, at a minimum, both an average and a variance of the data.[5] 9/12/08 Tr. 1744:21-25, 1746:17-21, 1747:2-5; *see also* 9/5/08 Tr. 862:19-865:17, 872:5-873:2 (Dr. Staniford's testimony explaining the difference between the measure or count and statistical profiles).

As illustrated in Mr. Smaha's trial demonstrative (Figure 1 below), an average or mean only identifies the central point of a bell-shaped curve. 9/12/08 Tr. 1744:9-17. A variance or standard deviation is needed to describe the dispersion of the data around that center. 9/12/08 Tr. 1744:17-25.

---

[5] ISS does not contend that the only possible statistical description is a calculation of an average and a variance. Other, more complex statistical analyses are contemplated by the patent (e.g., NIDES). 9/12/08 Tr. 1747:5-6. ISS does contend, however, that an average alone is not a "statistical description" of data.



**Figure 1: Bell-shaped Curve from Smaha
Demonstrative DDX-2203**

Mr. Smaha also testified, based upon his review and understanding of the ADS product, that the ADS product does not make any "statistical calculations" of a mean or variance in connection with the current traffic rate. 9/12/08 Tr. 1746:16-21. As a result, Mr. Smaha testified that the current traffic rate is not a "short-term statistical profile" because it is not a "statistical description of recent network activity … generated through statistical analysis," as required by the Court's construction. 9/12/08 Tr. 1746:6-1747:10. Indeed, the current traffic rate is simply a reiteration of the number of bits counted by the ADS product over a two minute window. 9/12/08 Tr. 1743:8-14. Mr. Smaha thus concluded that because the current traffic rate is not a short-term statistical profile, the ADS product does not infringe the '338 patent. 9/12/08 Tr. 1748:3-7; 9/11/08 Tr. 1608:24-1609:11.

Importantly, SRI's expert, Dr. Kesidis, agreed at trial that a statistical description requires both an average and a variance:

> Q.   And I believe you were telling the jury that on the left-hand side was an example of a long-term statistical profile?
>
> A.   Very highly simplified, yes.
>
> Q.   I understand. And the right-hand side was an example of a short-term statistical profile?
>
> A.   Ditto.

Q. Now, my recollection, my notes at least say that when you gave the example of the long-term profile example, although it says average nine packets per hour, you actually said nine packets plus or minus one per hour.

A. That's right.

Q. Do you recall that?

A. Yes.

Q. What did you mean by the plus or minus one?

A. *Well, these things being statistical are not deterministic, so when you take a long-term profile of a statistical quantity, you find you're getting the same number every time you do it, then it's deterministic.*

Q. *What does "deterministic" mean?* I apologize.

A. *There's no variation.*

Q. So statistics have some variation built into them?

A. *Statistical analysis has to deal with variations in data, variations in features and decisions under uncertainty.*

9/4/08 Tr. 710:1-25 (emphasis added); *see also* 9/4/08 Tr. 675:4-6 ("[Y]ou could look at a select measure of data transfer, *find its mean, its variance, create a statistical profile for it in the short-term.*") (emphasis added).

Equally as important, Dr. Kesidis agreed that the ADS product does not store any variance in connection with the current traffic rate:

Q. *Now, the ADS product does not store any variance with what you accuse of being the short-term statistical profile; correct?*

A. *I think it just deals with the average.*

Q. Just takes a simple count, doesn't it?

A. It's an average, right.

Q. *There's no variance with that; correct?*

A. *I don't think it looks at variability over the short-term.*

9/12/08 Tr. 711:12-20 (emphasis added).

Notwithstanding SRI's expert's agreement with Mr. Smaha on these two critical and dispositive points, SRI unfairly criticizes Mr. Smaha, claiming that he had no support for his

opinion that the current traffic rate cannot be a statistical profile. D.I. 569 at 9. Yet, Mr. Smaha provided substantial trial testimony concerning what a statistical description is, and why the current traffic rate is not a statistical description. *See generally* 9/12/08 Tr. 1744:9-1747:10; *see also* 9/5/08 Tr. 862:19-865:17, 872:5-873:2 (Dr. Staniford's testimony explaining the difference between the measure or count and statistical profiles). Mr. Smaha further explained how the ADS product works based on his review of the product and his discussions with Arbor Networks' employees. 9/11/08 Tr. 1608:24-1609:11; 9/12/08 Tr. 1742:15-1743:17, 1793:13-1795:15. SRI's counsel fully explored Mr. Smaha's bases for his opinions on cross examination, and notably did not challenge him on this testimony.[6] *See generally* 9/12/08 Tr. 1792:16-1800:2. SRI also did not introduce any testimony or evidence that directly rebutted Mr. Smaha's testimony on statistical descriptions.

In light of the foregoing testimony and evidence at trial, a reasonable jury could conclude on this record that the ADS product does not infringe the '338 patent.

## B. THE CURRENT TRAFFIC RATE MAINTAINED BY THE ADS PRODUCT IS NOT AN "AVERAGE"

ISS also presented substantial evidence at trial that, contrary to SRI's claim, the current traffic rate (in bps) is not an average. ISS's expert, Mr. Smaha, testified that to calculate an average for statistical purposes "you add up the sum of N items and you divide by N." 9/12/08 Tr. 1745:2-3. Thus, if a statistician wants to determine the average grade in a class of twenty students, he or she would add together the twenty grades, and then divide the total by twenty (the number of individual grades (N) added together). 9/12/08 Tr. 1745:3-5.

---

[6] SRI also had an opportunity to depose Mr. Smaha on this analysis during trial but before he testified. D.I. 539.

Mr. Smaha further testified, based upon his review of the ADS product and his discussions with Arbor Networks' employees, that the ADS product does not calculate any such average.[7] In particular, Mr. Smaha testified that the ADS product does not, as SRI alleges, count the number of bits *per second* for 120 seconds, add together the total number of bits calculated for each second "interval," and then divide the total number of bits by (N) "intervals" -- in this case, 120, since there are 120 second "intervals" in a 120 second window. 9/12/08 Tr. 1742:15-1743:20, 1793:13-1795:15; 9/11/08 Tr. 1608:24-1609:11. In fact, the ADS product does not count bits on a per second basis. 9/3/08 Tr. 499:9-15; 9/12/08 Tr. 1743:8-17. Rather, as Mr. Smaha testified, the ADS product simply determines the current traffic rate by counting the number of bits that pass by over a 120 second window, and expresses this rate in bits per second. 9/12/08 Tr. 1743:8-1744:5; *accord* 9/3/08 Tr. 499:8-15; 9/4/08 Tr. 674:21-24. This rate is not a statistical average. 9/12/08 Tr. 1743:17-22. It is merely a reiteration of the number of bits passing by over a 120 second window that is expressed in a bits per second unit of measure. 9/12/08 Tr. 1743:8-1744:5.

Mr. Smaha's demonstrative used at trial (Figure 2 below) illustrates this critical difference between a statistical average and a mere rate or count:

---

[7]     SRI incorrectly contends in its motion that Mr. Smaha agreed that "averages are statistical profiles as construed by the Court." D.I. 569 at 9 (citing 9/12/08 Tr. 1744:9-25). The record testimony to which SRI cites reveals that Mr. Smaha testified that in order to have a "statistical description" of data, one would have to have not only an average, but a measure of the dispersion of the data: "So *you have to have* a measure of the central part of it [(e.g., the average or mean)] *and* a measure of the dispersion of it [(e.g., the variance or standard deviation)] to have a statistical description of that particular curve." 9/12/08 Tr. 1744:22-25 (emphasis added).



**Figure 2: Average and Rate Calculation Differences
from Smaha Demonstrative DDX-2203**

Contrary to SRI's claim in its motion, Dr. Staniford (ISS's second technical expert) did not testify that a count is a statistical profile. D.I. 569 at 9 (citing 9/5/08 Tr. 862-865). Indeed, the portion of the record cited by SRI reveals that Dr. Staniford never testified that a count is a statistical profile within the meaning of the claims. 9/5/08 Tr. 863:3-12. ("And so a simple example of a measure in this domain is how many [credit card] transactions occur each day…. So that's the measure. Credit card transactions per day."). In fact, Dr. Staniford **distinguished** a count from a profile, and explained how a count of credit card transactions **is not** a short-term statistical profile. 9/5/08 Tr. 868:9-12 ("But then instead of looking at just the measure, an individual [credit card] transaction, we build a short-term profile, which is over let's say, for the sake of argument, three days."), 872:23-873:10 ("Again, a single access to a database, who knows what that means, if you just compare the measure to the long-term profile. But if you've got a short-term profile . . . .").

Also contrary to SRI's claim in its motion, Mr. Smaha's testimony that the current traffic rate is not a statistical profile or an average is consistent with ISS's strategic decision not to

dispute the long-term statistical profile limitation at trial. D.I. 569 at 11. The ADS product's determination of a historical traffic baseline is far more complex than its determination of the current traffic rate, as it involves both the calculation and scaling of averages. *See* 9/3/08 Tr. 497:2-499:3

More specifically, the ADS product generates a historical traffic baseline by *averaging* traffic rates for specific time slots of a day, week, or month, and then calculating a composite weighted score based on those averages. 9/3/08 Tr. 497:2-24; 9/4/08 Tr. 712:13-713: 4. The Chief Security Architect for Arbor Networks, Douglas Song, described how the ADS product generates the historical traffic baseline:

> Question: Okay. What is a baseline?
>
> Answer: A baseline is basically just a set of averages, historical averages that we've maintained. Well, basically, for a day, week, and month time frame. We keep an average for what we've actually seen for that given user traffic type. User defined traffic type. And that's basically -- that's basically what we consider to be sort of a baseline of activity for that given traffic type.
>
> Question: And when you say average, are you referring to the average traffic rates?
>
> Answer: Yes.
>
> Question: And what does the baseline get compared to?
>
> Answer: The baseline? The baseline doesn't actually get compared to anything. We take the values that comprise the baseline, the day, week and month averages for the given time slot in question, so, for instance, if we're looking at traffic for, you know, noon on, you know, today or something, we'll find the appropriate day, week and month averages and can posit them into this composite weighted score that we then multiply times the user defined threshold percentage. And if the current traffic that we see at the time exceeds that, that threshold, then we'll actually throw the alert.

9/3/08 Tr. 497:1-24. Accordingly, there is a significant difference between how the ADS product determines a current traffic rate and a historical traffic baseline. In this case, SRI simply cannot carry its burden of proving that the ADS product builds short-term statistical profiles by

relying on the fact that ISS elected not to dispute that the ADS product builds long-term statistical profiles.

In contrast to ISS's experts, SRI's expert took an extreme position at trial, arguing that any measurement of rate or speed is an average, including a current speed measured by a speedometer. 9/4/08 Tr. 714:1-716:1. Dr. Kesidis did not provide any explanation or support for such an extreme position. 9/4/08 Tr. 589:4-590:10, 674:15-675:6. He only makes a conclusory statement that the current traffic rate is a short-term statistical profile. 9/4/08 Tr. 674:15-675:6.

On this record, there is substantial evidence from which a reasonable jury could conclude that the ADS product does not infringe the '338 patent. Indeed, Mr. Smaha's testimony about his understanding of the Court's construction of "short-term statistical profile," and his opinion that the ADS product does not satisfy this construction based upon his review of the product, is sufficient evidence to permit a reasonable jury to conclude that the ADS product does not infringe the '338 patent. *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1362 (Fed. Cir. 2008) (affirming the district court's denial of a motion for judgment as a matter of law on non-infringement, where an expert explained his understanding of the court's construction and testified that the accused product satisfied the construction based upon his testing of the accused product).

### C. A REASONABLE JURY COULD CONCLUDE THAT ISS DOES NOT DIRECTLY INFRINGE THE METHOD CLAIMS; SRI DID NOT PRESENT ANY EVIDENCE THAT ISS PRACTICES THE CLAIMED METHOD

At trial, SRI failed to present any evidence that ISS actually practices the steps of the asserted method claims (claims 1, 11, 12, and 13). *See E-Pass Techs., Inc. v. 3COM Corp.*, 473 F.3d 1213, 1221-23 (Fed. Cir. 2007) (affirming summary judgment where patentee presented no evidence the patented method was ever practiced on an accused device). In order to infringe the

'338 patent method claims, the ADS product must be connected to a network and, among other things, "receiv[e] network packets handled by a network entity." *See* PTX-1, col. 14, l. 63. Once connected, the ADS product also must build at least one short-term and one long-term statistical profile, and compare the statistical profiles to determine whether there is suspicious network activity. *See* PTX-1, col. 14, l. 64 - col. 15, l. 2. In short, an ADS product that is not connected to and operating on a network cannot practice the claimed method steps.

At trial, SRI did not present any evidence that ISS ever connected the ADS product to a network, and configured it to receive network packets and use Heuristic 8 to build the alleged "statistical profiles." Accordingly, on this record, a reasonable jury could conclude that ISS does not infringe the method claims of the '338 patent.

## III.  SRI HAS ABANDONED ITS INDUCEMENT ARGUMENT

SRI's motion is limited to the jury's finding that ISS does not directly infringe the '338 patent. Accordingly, ISS respectfully submits that SRI has waived any argument that the jury's finding of no induced infringement should be overturned. *See Fatir v. Dowdy*, C.A. No. 95-677-GMS, 2002 WL 2018824, at *9 n.8 (D. Del. Sept. 4, 2002) (considering an issue not briefed by the party as waived). To the extent any part of SRI's motion could be construed to raise the issue of infringement by inducement, ISS contends that SRI failed to present any evidence at trial that ISS induced the infringement of the '338 patent.

To prove infringement by inducement under 35 U.S.C. § 271(b), SRI has the burden of proving "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007)(citation omitted); *accord DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir.

2006) (en banc). At trial, SRI failed to present any evidence that ISS's customers directly infringe or that ISS knowingly induced their infringement with specific intent.

First, in addition to SRI's failure to prove the "short-term statistical profile" limitation discussed above, SRI failed to demonstrate that any ISS customer actually installed the ADS product in a manner that infringed the '338 patent, or used the accused Heuristic 8 in the manner claimed. "In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 723 (Fed. Cir. 2008) (citation omitted); *accord Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004). Here, the ADS product does not necessarily infringe claims 1, 11, 12, and 13 because, as explained in section II.C. above, these claims require that the ADS product actually be installed on a network. More specifically, these claims require that the ADS product be configured by a customer to use the SPAN/TAP port to receive network packets and to use Heuristic 8. 9/3/08 Tr. 489:24-493:8; 9/4/08 Tr. 670:16-671:9; 9/12/08 Tr. 1742:23-1743:14. SRI did not offer any evidence or testimony concerning any ISS customer's use of the ADS product, or any evidence that demonstrates a customer actually used the SPAN/TAP configuration and Heuristic 8.

Second, SRI did not present any evidence at trial that ISS specifically intended its customers to infringe the '338 patent. "[A] patent holder must prove that once the defendants knew of the patent, they 'actively and *knowingly* aid[ed] and abett[ed] another's direct infringement.'" *DSU*, 471 F.3d at 1305 (quoting *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (emphasis and alterations in original)). "However, knowledge of the acts alleged to constitute infringement is not enough." *Id.* at 1305 (citation omitted). There must

be some "evidence of culpable conduct, directed to encouraging another's infringement. . . ." *Id.* at 1306.

In light of SRI's failure to carry its burden on induced infringement at trial, a reasonable jury could conclude -- and did conclude -- on this record that ISS has not induced the infringement of the '338 patent.

## IV.   THE TRIAL RECORD DOES NOT WARRANT A NEW TRIAL

SRI asks this Court to grant its motion for new trial because the jury verdict is against the weight of the evidence. A motion for new trial based upon an argument that the verdict is against the weight of the evidence is "proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Marra*, 497 F.3d at 309 n. 18 (citation and quotation marks omitted). As demonstrated above, the jury's verdict of non-infringement was based on substantial evidence that the ADS product does not satisfy each and every claim limitation of the '338 patent. To the extent that the parties presented conflicting testimony concerning the operation of the ADS product or whether the ADS product satisfies each claim limitation, the jury chose to resolve those factual disputes in favor of ISS. Accordingly, a new trial is unwarranted on this record, and SRI's motion for a new trial should be denied.

## CONCLUSION

For the foregoing reasons, there was substantial evidence for a reasonable jury to find that ISS does not directly or indirectly infringe claims 1, 11, 12, 13 and 24 of the '338 patent. ISS respectfully requests that the Court uphold the jury's verdict of non-infringement regarding the '338 patent, and deny SRI's motion for judgment as a matter of law and for a new trial.

OF COUNSEL:

Holmes J. Hawkins III
Natasha H. Moffitt
Latif Oduola-Owoo
Charles A. Pannell, III
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
Tel: (404) 572-4600

Scott T. Weingaertner
Allison H. Altersohn
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100

Adam M. Conrad
KING & SPALDING LLP
227 W. Trade Street, Suite 600
Charlotte, NC 28202
Tel: (704) 503-2600

Dated: January 16, 2009
899032 / 28434

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
  Richard L. Horwitz (#2246)
  David E. Moore (#3983)
  D. Fon Muttamara-Walker (#4646)
  Hercules Plaza 6th Floor
  1313 N. Market Street
  Wilmington, DE 19801
  Tel: (302) 984-6000
  rhorwitz@potteranderson.com
  dmoore@potteranderson.com
  fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*INTERNET SECURITY SYSTEMS, INC.,*
*a Delaware corporation; and*
*INTERNET SECURITY SYSTEMS, INC.,*
*a Georgia corporation*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 16, 2009, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on January 16, 2009, the attached document was Electronically

Mailed to the following person(s):

| | |
|---|---|
| Thomas L. Halkowski | Richard K. Herrmann |
| Kyle Wagner Compton | Mary B. Matterer |
| Fish & Richardson P.C. | Morris James LLP |
| 222 Delaware Avenue, 17th Floor | 500 Delaware Avenue, Suite 1500 |
| P.O. Box 1114 | Wilmington, DE  19899 |
| Wilmington, DE  19899-1114 | rherrmann@morrisjames.com |
| halkowski@fr.com | mmatterer@morrisjames.com |
| kcompton@fr.com | |
| | |
| Howard G. Pollack | Paul S. Grewal |
| Steven C. Carlson | Renee DuBord Brown |
| John N. Farrell | Katie J.L. Scott |
| Fish & Richardson P.C. | Day Casebeer Madrid & Batchelder LLP |
| 500 Arguello Street, Suite 500 | 20300 Stevens Creek Blvd, Suite 400 |
| Redwood City, CA  94063 | Cupertino, CA  95014 |
| pollack@fr.com | pgrewal@daycasebeer.com |
| steven.carlson@fr.com | rbrown@daycasebeer.com |
| jfarrell@fr.com | kscott@daycasebeer.com |

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

683314 / 28434