# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL, INC., a California Corporation, <br><br> Plaintiff, <br><br> v. <br><br> INTERNET SECURITY SYSTEMS, INC., a Delaware corporation, INTERNET SECURITY SYSTEMS, INC., a Georgia Corporation, and SYMANTEC CORPORATION, a Delaware corporation, <br><br> Defendants. | Civil Action No. 04-CV-1199 (SLR) |

## REPLY IN SUPPORT OF SYMANTEC CORPORATION'S
## MOTION FOR JUDGMENT AS A MATTER OF LAW OF NON-INFRINGEMENT

Richard K. Herrmann (#405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800
Fax: (302) 571-1751
rherrmann@morrisjames.com

*Attorneys for Defendant Symantec Corporation*

OF COUNSEL:

Robert M. Galvin (*pro hac vice*)
Paul S. Grewal (*pro hac vice*)
Renee DuBord Brown (*pro hac vice*)
Geoffrey M. Godfrey (*pro hac vice*)
DAY CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014
Tel: (408) 873-0110
Fax: (408) 873-0220

TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................1

II. UNDER *ACCO* AND *LUCENT*, SRI'S UNDISPUTED FAILURE TO
ESTABLISH NECESSARY INFRINGEMENT OR ANY SPECIFIC
INSTANCE OF INFRINGEMENT BY A SYMANTEC CUSTOMER
COMPELS JUDGMENT AS A MATTER OF LAW OF NO INDUCEMENT .........1

III. SRI FURTHER FAILED TO PROVIDE SUFFICIENT EVIDENCE OF
DIRECT INFRINGEMENT BY SYMANTEC'S IT DEPARTMENT .......................7

IV. CONCLUSION.........................................................................................8

TABLE OF AUTHORITIES

PAGE. NO.

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
 501 F.3d 1307 (Fed. Cir. 2007) ........................................................................... 1, 6

*Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*,
 No. 2008-1333, 2009 WL 291184 (Fed. Cir. Feb. 9, 2009). ......................... 1, 2, 7, 8

*DSU Med. Corp. v. JMS Co.*,
 471 F.3d 1293 (Fed. Cir. 2006) ................................................................................ 7

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
 363 F.3d 1263 (Fed. Cir. 2004) ...................................................................... 1, 5, 6, 7

*E-Pass Techs., Inc. v. 3Com Corp.*,
 473 F.3d 1213 (Fed. Cir. 2007) .............................................................................. 3, 6

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
 287 F.3d 1108 (Fed. Cir. 2002) ................................................................................ 8

*Lucent Techs., Inc. v. Gateway, Inc.*,
 543 F.3d 710 (Fed. Cir. 2008) .............................................................................. 1, 6

*Moleculon Res. Corp. v. CBS, Inc.*,
 793 F.2d 1261 (Fed. Cir. 1986) ................................................................................ 3

*Moleculon Res. Corp. v. CBS, Inc.*,
 594 F. Supp. 1420 (D. Del. 1984) ............................................................................ 4

*Ormco Corp. v. Align Tech., Inc.*,
 463 F.3d 1299 (Fed. Cir. 2006) ................................................................................ 8

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
 522 F.3d 1279 (Fed. Cir. 2008) ................................................................................ 3

**Statutes**

35 U.S.C. § 102(b) ............................................................................................................ 6

## I. INTRODUCTION

It is undisputed Symantec's accused SGS and Manager Products have numerous non-infringing uses and do not "necessarily infringe" the asserted claims. It is also undisputed SRI failed to identify any specific Symantec customer who infringed the asserted claims. Under *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307 (Fed. Cir. 2007) and *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710 (Fed. Cir. 2008), these facts compel judgment as a matter of law of no inducement. The inference urged by SRI—that "at least some customers" likely infringed—is not only unsupported by the record, but it is precisely the kind of hypothetical direct infringement the Federal Circuit has repeatedly rejected.

SRI further failed to establish direct infringement by Symantec's IT department. "Reasonably capable of infringement" is not the correct legal standard to determine direct infringement of SRI's system claims. Nor is there sufficient evidence to establish Symantec IT deployed SGS and Manager Products in the type of large enterprise network required under SRI's infringement theory.

Because SRI failed to provide sufficient evidence in support of its infringement theories, the Court should grant judgment as a matter of law of no inducement and no direct infringement involving Symantec's accused SGS and Manager Products.

## II.     UNDER *ACCO* AND *LUCENT,* SRI'S UNDISPUTED FAILURE TO ESTABLISH NECESSARY INFRINGEMENT OR ANY SPECIFIC INSTANCE OF INFRINGEMENT BY A SYMANTEC CUSTOMER COMPELS JUDGMENT AS A MATTER OF LAW OF NO INDUCEMENT

To prove inducement, a patentee must establish "specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO*, 501 F.3d at 1313 (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004)); *Lucent*, 543 F.3d at 723. The Federal Circuit recently reaffirmed this requirement and rejected a "reasonably capable" standard for direct infringement. *See Ball Aerosol & Specialty*

*Container, Inc. v. Limited Brands, Inc.*, No. 2008-1333, 2009 WL 291184, at *8 (Fed. Cir. Feb. 9, 2009). SRI does not dispute that the accused SGS and Manager Products have numerous non-infringing uses and do not "necessarily infringe," even if deployed together in the same network. D.I. 572 at 6-7. Thus, the relevant issue is whether SRI presented evidence sufficient to establish any "specific instance of direct infringement" by a Symantec customer. SRI failed to do so.

It is undisputed that SRI failed to establish infringement by any ***specific*** Symantec customer. There is no evidence in the record that identifies any specific customer who made the accused system or practiced the claimed method. D.I. 572 at 7-8. In fact, SRI concedes there is no evidence in the record that any specific customer even purchased the SGS and Manager Products needed to potentially infringe SRI's claims. D.I. 579 at 8 n.4.[1] SRI's own expert acknowledged this failure of proof:

> Q. Now, your infringement expert report didn't identify a customer who bought and deployed both SGS and Manager, and at your deposition, you also weren't aware of any customer who had deployed, purchased and deployed both Manager and SGS product[s]; is that correct?
>
> A. You read these things better than I have, so I will take your word for it. Yes.
>
> . . . .
>
> Q. In fact, Dr. Kesidis, isn't it true that the customers deposed by SRI didn't even purchase any SGS or Manager product?
>
> A. That may be true at the time — at the time they were deposed.

9/4/08 T. Tr. 741:3-9, 742:1-5 (Kesidis). These undisputed facts compel judgment as a matter of

---

[1] SRI's request for a new trial on inducement based on the Court's exclusion of PTX-302 and PTX-302A is meritless. SRI never moved to admit PTX-302 and PTX-302A during its infringement case, and these exhibits were properly excluded during the invalidity case because SRI failed to establish nexus. Symantec did not cause SRI's failure to establish nexus. Even assuming *arguendo* these exhibits had been improperly excluded from SRI's infringement case, such error would be harmless because these exhibits do not establish infringement by any customer. *See* D.I. 572 at 6-7 (explaining why substantial non-infringing uses make it unreasonable to assume infringement based on purchase).

2

law of no inducement for the SGS and Manager Products.

SRI seeks to frame the issue as whether a patentee may rely on circumstantial evidence to establish specific instances of direct infringement. D.I. 579 at 7. But Symantec never suggested circumstantial evidence was inadequate. *See* D.I. 572 at 3. SRI's inducement case fails because there was **no** evidence—circumstantial or otherwise—from which a reasonable jury could find that any specific customer directly infringed SRI's claims.

SRI contends it was reasonable for the jury to infer specific instances of direct infringement based on alleged evidence that the SGS and Manager Products were designed to be used together in an enterprise network and that Symantec promoted this use. D.I. 579 at 8. SRI's argument fails for several reasons.

First, SRI's cited cases do not support its position. In *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279 (Fed. Cir. 2008), the defendant's promotion of an infringing use was sufficient circumstantial evidence of direct infringement by its customers because the accused products had no non-infringing uses. *See id.* at 1293. Under these circumstances, promotion of the infringing use was sufficient to establish necessary infringement by every customer. But the Federal Circuit expressly noted the limited scope of its holding: "This is not a case where the customers may be using the product in either an infringing way or a non-infringing way; [Defendant's] customers can only use the EAV products in an infringing way." *Id.* Similarly, in *Moleculon Res. Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986), the accused product "was intended to be used in only one way—to practice the infringing method . . . ." *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007). The holdings in *Symantec* and *Moleculon* do not extend to cases such as this one, where the accused products have substantial non-infringing uses, because evidence of promotion is inadequate to identify

3

which specific customers, if any, practiced an infringing use as opposed to a non-infringing use.[2]

Second, SRI's assertion that Symantec "promoted" the combined use of SGS and Manager Products and "specifically instructed its customers how to infringe," D.I. 579 at 8-10, overstates the record. SRI did not identify any advertising or marketing of the accused combination of SGS and Manager Products.[3] Nor did SRI identify any product manuals that instruct customers how to make the accused system or practice the accused method. In fact, contrary to SRI's characterizations (D.I. 579 at 6, 10), PTX-167 and PTX-34 do not even mention SGS. The only cited document that mentions both SGS and Manager Products, PTX-33, does not teach, depict, or otherwise promote the accused system (i.e., two or more SGS Products with a Manager Product, deployed in an enterprise network, where the Manager Product is adapted to receive and integrate reports from the SGS Products).[4] Dr. Kesidis' testimony that Symantec "provide[d] detailed instruction and guides to teach its customers [how] to use these products together," 9/4/08 T. Tr. 743:16-19, is entirely unsupported by the record.

Third, SRI's "evidence" of promotion does not render *Lucent*, *ACCO*, and *Dynacore* inapposite. Nothing in those cases suggests that evidence of promotion relieves a patentee of its burden to establish specific instances of direct infringement in cases where the accused products have non-infringing uses. To the contrary, the Federal Circuit has made clear that vicarious liability for inducement must be limited to the specific instances in which a third party has

---

[2] *Moleculon* is further distinguishable because the patentee in that case presented eyewitness testimony concerning actual infringement by customers, as well as evidence of extensive sales of the accused device. *Moleculon Res. Corp. v. CBS, Inc.*, 594 F. Supp. 1420, 1440-41 (D. Del. 1984). SRI presented no such evidence here.

[3] It is undisputed the SGS and Manager Products are sold separately. D.I. 572 at 6.

[4] Furthermore, the documents cited by SRI were allegedly shown only to two potential customers—Costco and JPMorganChase, D.I. 579 at 6, 10—neither of which purchased the SGS and Manager Products needed to infringe SRI's claims. *See* PTX-302; PTX-302A.

4

actually infringed. *See, e.g.*, *Dynacore*, 363 F.3d at 1274 ("A defendant's liability for indirect infringement must relate to the identified instances of direct infringement. Plaintiffs who identify individual acts of direct infringement must restrict their theories of vicarious liability— and tie their claims for damages or injunctive relief—to the identified act.") (emphasis omitted). On the present record, it is impossible to identify any specific instances of direct infringement for which SRI might be entitled to damages.

Even assuming *arguendo* SRI had established that an infringing use was mentioned in documents provided to Symantec customers, that would not support an inference that any particular customer practiced the infringing use as opposed to one of the numerous undisputed non-infringing uses.[5] It would be improper to allow SRI to seek damages based on sales to specific customers when at the liability phase SRI failed to establish the identity of a single customer that directly infringed.

SRI contends it was reasonable—indeed, "common sense"—for the jury to have inferred that "at least some customers" used these products in an infringing manner. D.I. 579 at 7. But that misses the point. In a case such as this one, where it is undisputed the accused products have numerous non-infringing uses for which Symantec is not vicariously liable, a general inference that some unidentified customer likely infringed does not provide a sufficiently specific basis upon which to assess damages. Having conceded that Symantec's customers do not necessarily infringe, it was SRI's burden to provide evidence upon which a jury reasonably could find that specific, identified customers infringed. There is no such evidence in the record.[6]

---

[5] *See generally* D.I. 572 at 6-7 (describing non-infringing uses).

[6] SRI's contention that Symantec relied on the same inference in its anticipation case, D.I. 579 at 7, is both incorrect and irrelevant. First, Symantec did not rely on any inference to establish that RealSecure was in public use and/or on sale before the critical date—SRI stipulated to this fact. JTX-1 at ¶ 16. Second, Symantec's invalidity and non-infringement positions were not at all inconsistent. To establish anticipation, Symantec did not need to identify specific customers

5

A relevant application of "common sense" suggests that if Symantec's customers directly infringed, then SRI—having received hundreds of thousands of pages of Symantec documents and deposed numerous Symantec employees and customers, 9/4/08 T. Tr. 741:10-25 (Kesidis)—should have been able to identify at least one such infringing customer. *See E-Pass*, 473 F.3d at 1222-23 ("If, as E-Pass argues, it is 'unfathomable' that no user in possession of one of the accused devices and its manual has practiced the accused method, E-Pass should have had no difficulty in meeting its burden of proof and in introducing testimony of even one such user.") (citations omitted); *Lucent*, 543 F.3d at 723 ("[I]f running of the High Quality encoder was so common and so routine, then certainly Lucent could have produced evidence of at least one instance when the High Quality encoder had run.").

SRI's inference that "at least some customers" likely infringed is the kind of hypothetical direct infringement the Federal Circuit has repeatedly rejected. *See Lucent*, 543 F.3d at 722-24 (affirming JMOL of no inducement where patentee failed to show specific instances of direct infringement and instead relied on expert testimony that the accused software was designed and programmed to operate in an infringing manner under conditions that were probably "very common" in practice); *ACCO*, 501 F.3d at 1312-14 (holding JMOL of no inducement where patentee failed to show specific instances of direct infringement and instead relied on product instructions that described an optional infringing mode of operation which patentee's expert testified was the "natural and intuitive way to employ the device"); *Dynacore*, 363 F.3d at 1274-

---

who used the prior art RealSecure system. Under Symantec's theory, RealSecure anticipated if it was "on sale" or "in public use" in the United States before the critical date. 35 U.S.C. § 102(b). The only disputed issue was whether RealSecure's event combination functionality satisfied the claim limitation "integrating." 9/12/08 T. Tr. 1934:2-1936:20 (Kesidis). In contrast, because it was undisputed that the SGS and Manager Products have substantial non-infringing uses and do not satisfy every claim limitation unless combined in a particular manner, SRI needed to identify specific customers who directly infringed in order to establish inducement.

76 (affirming summary judgment of no inducement where patentee failed to prove any specific instance of direct infringement and relied instead on "hypothetical direct infringement"); *Ball Aerosol*, 2009 WL 291184, at *8 (reversing summary judgment of infringement where patentee failed to prove any specific instance of direct infringement and relied instead on the accused product's capability of operating in an infringing manner). Because SRI failed to prove any specific instances of direct infringement, the Court should grant judgment as a matter of law of no inducement involving the SGS and Manager Products.[7]

### III. SRI FURTHER FAILED TO PROVIDE SUFFICIENT EVIDENCE OF DIRECT INFRINGEMENT BY SYMANTEC'S IT DEPARTMENT

SRI does not dispute that Symantec's sale of the SGS and Manager Products does not constitute direct infringement of either the system or the method claims. D.I. 572 at 11-12. Rather, SRI contends Symantec directly infringed by deploying SGS and Manager Products in its IT department. D.I. 579 at 1-4.[8] SRI's evidence is insufficient as a matter of law.

For the system claims, SRI improperly assumed that because Manager Products were capable of being configured to receive and integrate SGS events, SRI did not need to establish whether the Manager Product deployed by Symantec IT actually was adapted in this manner.

---

[7] While SRI's failure to prove direct infringement is alone sufficient to warrant JMOL of no inducement, SRI also failed to establish the requisite intent. *See* D.I. 572 at 9-10. There was no evidence in the record that Symantec knew of any customer who had actually combined the SGS and Manager Products in an infringing manner, no evidence Symantec knew of any customer who had purchased the SGS and Manager Products needed to infringe, and no evidence Symantec advertised the infringing use, or provided detailed instruction to its customers on how to make and use the accused system. *See supra* p. 4. At most, SRI's evidence established that Symantec knew the SGS and Manager Products—in addition to their numerous non-infringing uses—were capable of being combined to make a system that satisfied every limitation of SRI's claims. This does not establish intent to cause infringement. *See Dynacore*, 363 F.3d at 1276 n.6 ("[S]ale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement."); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

[8] Accordingly, even if JMOL were denied, SRI could not seek direct infringement damages for any activity beyond this specific allegedly infringing Symantec IT test deployment.

7

D.I. 579 at 2. The Federal Circuit recently reaffirmed that SRI's position is legally incorrect. *See Ball Aerosol*, 2009 WL 291184, at *8. The line of cases cited by SRI "is relevant only to claim language that specifies that the claim is drawn to capability." *Id.*; *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1307 (Fed. Cir. 2006); *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1117-18 (Fed. Cir. 2002). Here SRI's system claims require hierarchical monitors adapt*ed*—not merely capable of being adapted, or adapt*able*—to automatically receive and integrate reports from the lower-level monitors.

SRI also improperly assumed that because "Symantec itself is undoubtedly a large enterprise," the accused test deployment by Symantec IT must have been in a large network. D.I. 579 at 3-4. It is undisputed the SGS Products were designed and marketed for use in a variety of networks, including small networks that would not infringe under SRI's definition of the claim limitation "enterprise network." D.I. 572 at 6-7. SRI, however, cites no evidence that establishes the size or type of network Symantec IT used for the accused test deployment—even though SRI's own expert testified he would need to examine network topologies to determine whether a network was an "enterprise network" covered by the claims. 9/4/08 T. Tr. 736:3-7 (Kesidis). The size of Symantec in terms of employee headcount is a separate issue from the size of the network Symantec IT used for this particular deployment, which was a preliminary, "Alpha 1" test deployment. PTX-31 at SYM_P_0281836. SRI identified no reasonable basis for the jury to infer that Symantec's test network was different from the hypothetical network SRI's expert conceded would not infringe. *See* D.I. 572 at 6-7.

## IV. CONCLUSION

For the reasons explained above and in Symantec's opening brief (D.I. 572), Symantec respectfully requests the Court grant judgment as a matter of law of no inducement and no direct infringement involving the SGS and Manager Products.

Dated: February 17, 2009
By: */s/ Richard K. Herrmann*
Richard K. Herrmann (#405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800
Fax: (302) 571-1751
rherrmann@morrisjames.com

*Attorneys for Defendant Symantec Corporation*

OF COUNSEL:

Robert M. Galvin (*pro hac vice*)
Paul S. Grewal (*pro hac vice*)
Renee DuBord Brown (*pro hac vice*)
Geoffrey M. Godfrey (*pro hac vice*)
DAY CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014
Tel: (408) 873-0110
Fax: (408) 873-0220