IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRI INTERNATIONAL INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTERNET SECURITY SYSTEMS, INC., a Georgia corporation, SYMANTEC CORPORATION, a Delaware corporation, and INTERNET SECURITY SYSTEMS, INC., a Delaware corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 04-1199-SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Thomas L. Halkowski, Esquire, and Kyle Wagner Compton, Esquire of Fish & Richardson P.C., Wilmington, Delaware, Counsel for Plaintiff. Of Counsel: Frank E. Scherkenbach, Esquire, Howard G. Pollack, Esquire, Todd G. Miller, Esquire and Michael M. Rosen, Esquire of Fish & Richardson P.C.

Richard L. Horwitz, Esquire and David E. Moore, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendants Internet Security Systems, Inc., a Delaware corporation and Internet Security Systems, Inc., a Georgia corporation. Of Counsel: Alison H. Altersohn, Esquire, Scott T. Weingaertner, Esquire, Adam M. Conrad, Esquire, Holmes J. Hawkins III, Esquire, Natasha H. Moffitt, Esquire, and Charles A. Pannell, Esquire of King & Spalding, LLP.

Richard K. Herrmann, Esquire and Mary Matterer, Esquire of Morris James LLP, Wilmington, Delaware. Counsel for Defendant Symantec Corporation. Of Counsel: Robert M. Galvin, Esquire, Geoffrey M. Godfrey, Esquire, and S. Dennis Wang, Esquire of Wilmer Cutler Pickering Hale and Dorr LLP; Stefani E. Shamberg, Esquire, Robin L. Brewer, Esquire, Constance J. Choi, Esquire and Ryan R. Smith, Esquire of Wilson Sonsini Goodrich & Rosati P.C.

**MEMORANDUM OPINION**

Dated: October 4, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On August 26, 2004, plaintiff SRI International, Inc. ("SRI") brought suit against defendants Symantec Corporation ("Symantec") and Internet Security Systems, Inc. ("ISS") (collectively, "defendants") charging infringement of four patents: United States Patent Nos. 6,484,203 ("the '203 patent"), 6,708,212 ("the '212 patent"), 6,321,338 ("the '338 patent"), and 6,711,615 ("the '615 patent"). On April 13, 2005, the court denied defendants' motions to dismiss, sever and transfer. (D.I. 31) Following discovery, Symantec moved for summary judgment of non-infringement (D.I. 286), ISS moved for summary judgment of non-infringement and invalidity (D.I. 282, 291, 364), and defendants jointly moved for summary judgment that each of the patents in suit is invalid pursuant to 35 U.S.C. § 102 and § 103 (D.I. 297). Plaintiff filed motions for summary judgment of validity. (D.I. 270, 276, 279) The court issued its claim construction opinion on October 17, 2006. (D.I. 468) On the same date, the court held each of the asserted patents invalid as anticipated by SRI's prior art publication "Live Traffic Analysis of TCP/IP Gateways" ("Live Traffic") pursuant to 35 U.S.C. § 102. The court also found the '212 patent invalid as anticipated by a paper entitled "EMERALD: Event Monitoring Enabling Responses To Anomalous Live Disturbances" ("EMERALD 1997") pursuant to 35 U.S.C. § 102. (D.I. 471[1]) On appeal, the Federal Circuit affirmed the court's decision with respect to the '212 patent and vacated and remanded the court's determination that the remaining patents were rendered invalid by Live Traffic. *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186 (Fed. Cir. 2008). The court

---

[1] *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 456 F. Supp. 2d 623 (D. Del. 2006).

denied defendants' renewed motion for summary judgment of invalidity (D.I. 297) on August 21, 2008. (D.I. 525)

A jury trial commenced September 2, 2008. Plaintiff asserted that defendants infringe claims 1 and 12 of the '203 patent and claims 1, 13, 14, and 16 of the '615 patent. Plaintiff asserted that ISS also infringes claims 1, 11, 12, 13 and 24 of the '338 patent. Defendants challenged the validity of the asserted patents. On September 18, 2008, the jury found that Symantec and ISS infringed each asserted claim of the '615 and '203 patents, that ISS did not infringe the '338 patent, and that each of the '203, '615 and '338 patents are valid. (D.I. 558) Post-trial, on August 20, 2009, the court reversed the jury verdict with respect to Symantec's infringement of the '203 and '615 patents by one product combination (the SGS and Manager Products), reversed the verdict that ISS infringes the '203 and '615 patents, and affirmed the jury's other findings. (D.I. 609) On appeal, the Federal Circuit affirmed without opinion. (D.I. 632) Thereafter, on August 2, 2011, Symantec filed a motion to amend its answer and counterclaims to add allegations of inequitable conduct. (D.I. 654) That motion is currently pending before the court. A damages trial is scheduled to commence in this court on November 7, 2011.

## II. BACKGROUND

As this case has been thoroughly addressed in the court's (and Federal Circuit's) prior opinions cited above, the court iterates only those facts most pertinent to the motion at bar. On July 7, 2006, Symantec filed third party requests for *ex parte* reexamination of the '203 and '615 patents with the PTO. (Reexam. Nos. 90/008125, 90/008113) This court held in October 2006 that all claims of SRI's U.S. Patent No.

2

6,708,212 ("the '212 patent") were anticipated by EMERALD 1997. In so holding, the court had construed the claim term "service monitor" to mean "[a] network monitor that provides local real-time analysis of **network packets** transmitted by a network entity, such as a gateway, router, firewall or proxy server." (D.I. 468) (emphasis added) The Federal Circuit affirmed in January 2008. On April 25, 2008, International Business Machines Corporation ("IBM") and Symantec jointly filed a second set of requests for reexamination of the '203 and '615 patents with the PTO. (Reexam. Nos. 90/009126, 90/009127) The reexamination proceedings were subsequently merged. Unbeknownst to the court, the reexaminations were ongoing concurrently with the litigation at bar.

The anticipated '212 patent shares the same specification and many identical limitations to the '203 and '615 patents, for example, the limitation "said plurality of said network monitors detecting suspicious network activity based on an analysis of **network traffic data**." (D.I. 654, ex. 1 at ¶ 49) (emphasis added) Following the court's prior ruling that EMERALD 1997 anticipated the patent claims, SRI stipulated (on August 29, 2008) that EMERALD 1997 described and enabled "detecting, by the network monitors, suspicious network activity based on analysis of **network traffic data**." (*Id.* at ¶ 50) (D.I. 533, ex. 1, ¶ 15(c) (addendum to pretrial order)) (emphasis added) A jury trial was held in this court in September 2008, after which the jury found that Symantec infringed the '203 and '615 patents, which are not invalid. (D.I. 558) Also in September 2008, the examiner issued final rejections of the '203 and '615 patent claims as unpatentable as obvious in view of Emerald 1997[2] in view of other

---

[2]A prior art reference discussed at length in the court's prior opinions.

3

references.

On December 5, 2008, reexamination counsel W. Karl Renner and George P. Bonanto[3] represented to the PTO that "[t]he proposed combination of EMERALD 1997 and Intrusive Activity 1991[[4]] fails to describe or suggest detecting, by the network monitors, suspicious network activity based on **direct packet examination**, as required by claim 1 and discussed above." (D.I. 654, ex. 1 at ¶¶ 52, 55-56) (emphasis added) SRI reiterated its positions in its briefs on appeal to the Board of Patent Appeals and Interferences ("BPAI"). Before the appeal was heard by the BPAI, however, the examiner withdrew the rejections. During this time, the Federal Circuit affirmed the court's post-trial opinion (following the jury's September 2008 verdict) in December 2010. The examiner issued reexamination certificates for both the '203 and '615 patents in January 2011, stating that all independent claims require detecting suspicious network activity "based on analysis of network traffic data," which would be interpreted (by the skilled artisan) as analysis of network packets, and EMERALD 1997 "fails to teach direct examination of packet data." (D.I. 654, ex. 1 at ¶¶ 58, 60)

This court entered a scheduling order for the damages phase of this litigation following the Federal Circuit's remand on June 6, 2011. (D.I. 649) Symantec filed the present motion to add an inequitable conduct counterclaim on August 2, 2011. Symantec argues that the PTO would not have issued reexamination certificates confirming the patentability of all claims of SRI's patents in suit "but for" counsel's

---

[3]Reexamination counsel are not of record in the litigation at bar.

[4]Another prior art reference discussed at length in the court's prior opinions.

4

representations. By its motion, Symantec also seeks to depose two attorneys purportedly responsible for the representations.

## III. STANDARD[5]

"[L]eave to amend 'shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). The court may exercise its discretion to deny leave to amend in situations in which the moving party has delayed seeking leave and the delay "is undue, motivated by bad faith, or prejudicial to the opposing party." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citation omitted). Put another way, where the non-moving party will not suffer "substantial or undue prejudice," "denial [of leave to amend] must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004) (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993)). Delay is "undue" when an unwarranted burden is placed on the court or when the requesting party has had previous opportunities to amend. *See Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010) (citation omitted).

---

[5]Symantec's motion presents what appears to be an issue of first impression: whether leave to amend between the liability and damages phases of a bifurcated patent trial is subject to the liberal standard set forth in Federal Rule of Civil Procedure 15(a) or, as SRI suggests, the more conservative standard set forth in Federal Rule of Civil Procedure 15(b). Rule 15(b) permits amendments to pleadings ("after trial") based on objections at trial and for issues tried by consent. Insofar as neither circumstance is presented here, Symantec's motion would be denied under this standard. The court need not conclusively determine this issue, however, because it denies Symantec's motion under the rubric of Rule 15(a), as discussed *infra*.

## IV. DISCUSSION

The court emphasizes at the outset that the alleged inequitable conduct occurring in this case is SRI's counsel's inconsistent statements to the PTO and to this court regarding the disclosures of EMERALD1997 – a reference before the examiner on reexamination. According to SRI, the question of whether EMERALD 1997 **generally** teaches "analysis of network traffic data" was never at issue during the reexaminations, rather, the issue framed by the examiner was whether the prior art specifically taught analysis of the claimed **categories** of network data.[6] (D.I. 668 at 6) The court need not delve into the parties' substantive arguments in these regards, however, for several reasons.

The complained-of mischaracterizations of EMERALD 1997 to the examiner occurred in December 2008.[7] While the ultimate effect of the statements was (perhaps) unknown at that time,[8] Symantec admits it was closely monitoring the progress of the reexamination and was aware of its position on inequitable conduct when SRI made the comments at issue in December 2008. On December 16, 2008, Symantec drafted a letter to Mr. Renner stating that Symantec was concerned with SRI's failure to disclose to the PTO the stipulation in the pretrial order at bar. (D.I. 654, ex. 1 at ¶ 54) SRI

---

[6]While SRI does not specifically oppose Symantec's motion to amend on the basis of futility, futility is the gravamen of its arguments that Symantec's proposed claim is without basis.

[7]Symantec does not state that the reexamination records were not open to the public. In fact, rather than provide the full record in support for its motion, Symantec directs the court to specific portions of the file wrapper accessible in public PAIR.

[8]To the extent the effects are relevant in the first instance to inequitable conduct (intent and materiality). The court does not so presume.

6

attempted to submit Symantec's letter to the PTO, but its interview summary provides that the PTO would not accept into its record a (non-prior art) letter from a third party requester. (D.I. 669, ex. B) Nevertheless, SRI provided the PTO an Information Disclosure Statement including a copy of the stipulated protective order at issue. (*Id.*) Symantec does not dispute the foregoing, and argues that there is no specific indication that the examiner considered the substance of its letter. (D.I. 673 at 9[9])

As is the case with most defendants involved in copending reexaminations and litigation, the timing of the events at issue suggests that Symantec strategically planned its actions in both fora to its advantage. The first set of reexamination requests was not filed commensurate with this suit in 2004, but filed in July 2006, on the heels of the parties' completion of claim construction and summary judgment briefing. The second set of reexamination requests was filed in April 2008, two months after the Federal Circuit reversed the court's holding of invalidity of the patents based on Live Traffic. The motion to amend Symantec's answer and counterclaims to add allegations of inequitable conduct was filed after the Federal Circuit's affirmance of the 2008 jury verdict of infringement and validity (in 2010). Symantec addressed the issue of filing its motion to amend in a teleconference with the court on July 9, 2011, at which time the court warned counsel that it would award costs if the allegations proved frivolous in view of *Therasense, Inc. v. Becton, Dickinson & Co.*, —— F.3d ——, 2011 WL 2028255 (Fed. Cir. May 25, 2011). (D.I. 670, ex. E) Symantec filed its motion to amend on August 2,

---

[9]An examiner's interview summary cited by Symantec in public PAIR (but not docketed) includes a timeline of litigation and reexamination proceedings considered by the examiner. Symantec's letter is not specifically cited therein.

7

2011, the day after the court entered a scheduling order governing discovery and motion practice with respect to the damages phase of trial.[10] There is no particular explanation for why Symantec did not address SRI's alleged inequitable conduct (in 2008) with the court prior to August 2011. It would appear, based on the chronology of events, that inequitable conduct was an ace in the hole to be used if Symantec's other attempts to avoid liability in this case failed. Based upon the foregoing, the court would deny the motion at issue on the bases of unexplained delay as well as dilatory motives.

The foregoing also supports the denial of Symantec's motion based on futility. Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. See *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

To prove inequitable conduct, Symantec must demonstrate that reexamination counsel had the specific intent to mislead the PTO, which intent cannot be solely inferred from materiality. See *Therasense*, 2011 WL 2028255 at *10. "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Id.* (quotation omitted). Regardless of what the deposition testimony may reveal, Symantec cannot

---

[10]The August 1, 2011 scheduling order superceded a schedule entered on June 10, 2011, providing dates for the pretrial conference and trial. (D.I. 649) Neither scheduling order contemplated a deadline for amending pleadings under Rule 15.

8

meet this burden in view of the fact that SRI disclosed to the PTO a copy of the allegedly inconsistent characterizations of EMERALD 1997 during reexamination.

It is not the case that Symantec alleges that SRI committed inequitable conduct by, for example, intentionally withholding material prior art from the PTO. The prior art allegedly mischaracterized – EMERALD 1997 – was a focus of the reexamination proceedings. The asserted inequitable conduct concerns inconsistent statements by counsel about the import of the prior art already before the examiner. In this regard, the court notes additional policy considerations evoked by the motion at bar. Symantec elected to file a concurrent, *ex parte* reexamination in which it was not permitted to participate. Regardless of this fact, having so elected to file a reexamination in the first instance, Symantec elected to pursue its invalidity claims in two separate – and by their nature, very different – fora. The court is now asked to undertake a thorough review of the record of concurrent (and now-concluded) PTO proceedings and compare the advocacy of counsel during those proceedings to that at bar. The court's limited judicial resources are not best expended in this manner. Consistent with the foregoing, the court finds that leave to amend should not be granted under these circumstances.

## V. CONCLUSION

For the aforementioned reasons, Symantec's motion to amend is denied. An appropriate order shall issue.

9